BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
LAUREN DAVIS - # 357292
ldavis@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
EVA BITRAN - # 302081
ebitran@aclusocal.org
OLIVER MA - # 354266
oma@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5000

BRISA VELAZQUEZ OATIS - # 339132
bvoatis@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

AJAY S. KRISHNAN - # 222476
akrishnan@keker.com
FRANCO MUZZIO - # 310618
fmuzzio@keker.com
ZAINAB O. RAMAHI - # 332139
zramahi@keker.com
JULIA GREENBERG - # 333864
jgreenberg@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

*Attorneys for Plaintiff Oscar Morales Cisneros*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| UNITED FARM WORKERS, et al., | Case No. 1:25-cv-00246-JLT-BAM |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
| v. | |
| KRISTI NOEM, et al., | |
| Defendants. | Date:        April 11, 2025<br>Time:        9:00 a.m.<br>Dept.:       Courtroom 4, 7th Floor<br>Judge:      Hon. Jennifer L. Thurston |
| | Date Filed: February 26, 2025 |
| | Trial Date:  None set |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND .............................................................................................................3

        A.      Border Patrol's Pattern or Practice of Stopping and Arresting People
                Indiscriminately and Without Valid Basis Is Unlawful.......................................3

        B.      Classwide Relief Is Appropriate Because Border Patrol Has Harmed And
                Will Continue Harming Proposed Class Members By Conducting
                Suspicionless Stops and Warrantless Arrests Throughout the Central
                Valley.....................................................................................................................6

III.    LEGAL STANDARD......................................................................................................8

IV.     ARGUMENT...................................................................................................................9

        A.      The Proposed Classes meet the requirements of Rule 23(a)..................................9

                1.      Numerosity.................................................................................................9

                2.      Commonality............................................................................................10

                3.      Typicality .................................................................................................12

                4.      Adequacy .................................................................................................13

        B.      The Proposed Classes meet the requirements of Rule 23(b)(2)..........................14

V.      CONCLUSION..............................................................................................................16

MPA ISO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION
CASE NO. 1:25-cv-00246-JLT-BAM

2884010

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.B. v. Haw. State Dep't of Educ.*,
   30 F.4th 828 (9th Cir. 2022) ...............................................................................10

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ...................................................................................8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................13

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   568 U.S. 455 (2013) ..................................................................................................8

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .............................................................................11, 12

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
   317 F.R.D. 91 (N.D. Cal. 2016) ...............................................................................9

*Cath. Soc. Servs., Inc. v. Ashcroft*,
   206 F.R.D. 654 (E.D. Cal. 2002) ..............................................................................8

*Criswell v. Boudreaux*,
   2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) ...........................................................8

*Cruz v. MM 879, Inc.*,
   329 F.R.D. 639 (E.D. Cal. 2019) .......................................................................11, 12

*Doe #1 v. Trump*,
   335 F.R.D. 415 (D. Or. 2020) .................................................................................11

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ..................................................................................8

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...................................................................................11

*Evon v. Law Offs. of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) .................................................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................................13

*Gilbert v. MoneyMutual, LLC*,
   318 F.R.D. 614 (N.D. Cal. 2016) .............................................................................9

*Gonzalez v. ICE*,
    975 F.3d 788 (9th Cir. 2020) ...............................................2, 11, 12, 13

*Hernandez Roman v. Wolf*,
    829 F. App'x 165 (9th Cir. 2020) ...............................................8

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ...............................................10

*Jiahao Kuang v. U.S. Dep't of Def.*,
    340 F. Supp. 3d 873 ...............................................14

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ...............................................13

*Kaiser v. Cnty. of Sacramento*,
    780 F. Supp. 1309 (E.D. Cal. 1991) ...............................................8

*Kidd v. Mayorkas*,
    343 F.R.D. 428 (C.D. Cal. 2023) ...............................................3

*Kincaid v. City of Fresno*,
    244 F.R.D. 597 (E.D. Cal. 2007) ...............................................9

*Maney v. Brown*,
    516 F.Supp.3d 1161 (D. Or. 2021) ...............................................8

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ...............................................8

*Ms. L v. U.S. Immigration and Customs Enforcement*,
    331 F.R.D. 529 (S.D. Cal. 2018) ...............................................11

*N.S. v. Hughes*,
    335 F.R.D. 337 (D.D.C. 2020) ...............................................3

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982) ...............................................10

*Ortega-Melendres v. Arpaio*,
    836 F.Supp.2d 959 (D. Ariz. 2011) ...............................................3, 11

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................... *passim*

*Perez Cruz v. Barr*,
    926 F.3d 1128 (9th Cir. 2019) ...............................................1

*Rivera v. Holder*,
    307 F.R.D. 539 (W.D. Wash. 2015) ...............................................10

iii

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975) ....................................................................................1, 4

*United States v. Rodriguez*,
    976 F.2d 592 (9th Cir. 1992) ...............................................................4

*Villalpando v. Exel Direct Inc.*,
    303 F.R.D. 588 (N.D. Cal. 2014) .........................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..............................................................10, 11, 15

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .............................................................15

*Wilson v. Mercado*,
    2022 WL 5235404 (E.D. Cal. 2022) .....................................................8

**Federal Statutes**

8 U.S.C. § 1357(a)(2) ............................................................... *passim*

**Federal Rules of Civil Procedure**

Rule 23(a) ................................................................................ *passim*

Rule 23(a)(1) ............................................................................9, 10

Rule 23(a)(2) ...............................................................10, 11, 12

Rule 23(a)(3) ...............................................................12, 13

Rule 23(a)(4) ...............................................................13, 14

Rule 23(b) ................................................................................8

Rule 23(b)(2) ............................................................... *passim*

**Federal Regulations**

8 C.F.R. § 287.5(c) ................................................................................1

8 C.F.R. § 287.8(b) ................................................................................6

8 C.F.R. § 287.8(b)(2) ........................................................................1, 4

8 C.F.R. § 287.8(c) ................................................................................6

8 C.F.R. § 287.8(c)(2)(i) .......................................................................5

8 C.F.R. § 287.8(c)(2)(ii) ...............................................................5, 12

iv

## Other Authorities

*Castanon Nava v. DHS*, No. 1:18-cv-03757 (N.D. Ill., Feb. 7, 2022), ECF No.
  155-1 (Appendix A: Broadcast Statement of Policy) .................................................. 6

DHS's "Broadcast Statement of Policy" ........................................................................ 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

This action arises from a nearly weeklong campaign during which Border Patrol agents from the El Centro Sector traveled hundreds of miles to Kern County and the surrounding area to target community members for suspicionless stops and warrantless arrests. Border Patrol broadly assumed that Latinos and other people of color whom they encountered lacked legal status to be in the United States, in some cases sweeping up U.S. citizens and lawful permanent residents for arrest and detention with no valid basis. Border Patrol bulldozed over people's rights in a blatant effort to round them up and quickly expel them from the U.S. without due process.

Plaintiffs seek to provisionally certify two classes to challenge the legality of Border Patrol's discriminatory and unlawful campaign against people of color in Kern County. The classes, respectively, seek to resolve these two issues of common fact and law: *First*: Does Border Patrol's practice of conducting roving immigration stops, without regard to whether there is reasonable suspicion that the person stopped is unlawfully in the United States, violate the U.S. Constitution? *Second*: Does Border Patrol's practice of conducting warrantless arrests, without assessing the flight risk that the arrestee poses, violate federal law?

Binding legal standards—the U.S. Constitution, federal statutes, and regulations—constrain how Border Patrol agents enforce immigration laws. *See, e.g.,* 8 U.S.C. § 1357(a)(2); 8 C.F.R. §§ 287.5(c), 287.8(b)(2); *United States v. Brignoni-Ponce*, 422 U.S. 873, 882–83 (1975) (holding Fourth Amendment prohibits Border Patrol from stopping private vehicles near the border absent reasonable suspicion that someone in the vehicle is unlawfully in the United States); *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019) (holding regulations governing seizures by immigration agents, including Border Patrol, are "at least as stringent as those imposed by the Fourth Amendment").

But Border Patrol flouted these laws, and insists it will do so again, thus posing both current and imminent risks to Plaintiffs and putative class members throughout this District. Classwide injunctive relief is necessary to protect their rights. This motion seeks to provisionally certify the relevant classes, while a contemporaneously filed motion sets forth the basis for

issuing the necessary preliminary injunction. *See* Plaintiffs' Mot. for Preliminary Injunction ("PI Motion").

Plaintiffs seek provisional certification of two classes (together, "the Proposed Classes"):

1. **Suspicionless Stop Class**: All persons who, since January 6, 2025, have been or will be subjected to a detentive stop by Border Patrol in this district pursuant to a practice of conducting stops without warrants and without an individualized assessment of reasonable suspicion whether the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States.

2. **Warrantless Arrest Class**: All persons whom Border Patrol, since January 6, 2025, has arrested or will arrest without a warrant in this district.

Plaintiffs propose three class representatives—Oscar Morales Cisneros, Wilder Munguia Esquivel, and Yolanda Aguilera Martinez (collectively, "Individual Plaintiffs")—who each seek to represent both the Suspicionless Stop Class and the Warrantless Arrest Class. Each proposed class representative shares the same injuries, and seeks the same relief, as absent class members in each class.

The Proposed Classes meet the requirements of Federal Rules of Civil Procedure 23(a)(1)–(4) and 23(b)(2). *First*, each class is sufficiently numerous that joinder would be impracticable. Even counting conservatively, the Proposed Classes comprise at least dozens of individuals each, and likely hundreds. *Second*, all class members in each Proposed Class are bound together by common questions of fact and law focused on the nature of Border Patrol's policies or practices and whether those policies or practices are unlawful. *Third* and *fourth*, the proposed class representatives for each class are proper because their claims are typical of unnamed class members, and because the proposed class representatives and proposed class counsel will adequately represent the class. *Finally*, Defendants have acted and, absent relief, will continue to act on grounds that are generally applicable to each Proposed Class as a whole by carrying out policies that violate putative class members' rights, and failing to maintain policies that ensure Border Patrol's compliance with federal laws that protect those rights.

Additionally, courts have previously provisionally certified classes exactly like the Proposed Classes in prior cases involving unlawful detention and arrest. *See, e.g., Gonzalez v. ICE*, 975 F.3d 788, 812 (9th Cir. 2020) (upholding certification of class subjected to immigration

detainers based on ICE's unlawful practice of making probable cause determinations based on "only a check of an online database"); *Kidd v. Mayorkas*, 343 F.R.D. 428, 443 (C.D. Cal. 2023) (certifying classes where ICE conducted or would in the future conduct warrantless civil immigration enforcement operations); *N.S. v. Hughes*, 335 F.R.D. 337, 352, 355-56 (D.D.C. 2020), *as modified in N.S. Dixon*, No. 1:20-cv-101-RCL, 2020 WL 6701076, at *4 (D.D.C. Nov. 13, 2020) (provisionally certifying a class and preliminarily enjoining the U.S. Marshalls from "arresting and detaining people for suspected civil immigration violations"); *Ortega-Melendres v. Arpaio*, 836 F.Supp.2d 959, 992 (D. Ariz. 2011) (certifying a class of "[a]ll Latino persons who . . . have been or will be in the future, stopped, detained, questioned or searched" unlawfully).

Individual Plaintiffs seek urgent preliminary relief on a classwide basis because Border Patrol has openly proclaimed that it plans to replicate its unlawful policies and practices throughout California imminently, posing a grave and immediate threat to all putative class members. Accordingly, and for the reasons further set forth below, Individual Plaintiffs respectfully request that the Court certify the Proposed Classes under Rules 23(a) and (b)(2).

## II.    BACKGROUND

### A.    Border Patrol's Pattern or Practice of Stopping and Arresting People Indiscriminately and Without Valid Basis Is Unlawful

As set forth in the Complaint, in January 2025, Border Patrol sent shockwaves of terror across the Central Valley when it launched "Operation Return to Sender," a nearly weeklong sweep through predominantly Latino areas of Kern County and the surrounding region. *See* Dkt. 1 ¶¶ 1-14, 47-245; PI Motion, at 3-6. Border Patrol agents conducted roving immigration stops, targeting Latino neighborhoods, farm roads in agricultural areas, and businesses that serve farmworkers and day laborers. *See id.* ¶¶ 2, 5-7, 234-36, 251-52. They detained members of the public based on their apparent race, ethnicity, or occupation, whether or not the agents had reasonable suspicion the person was unlawfully present in the United States. *See id.*

Border Patrol agents escalated these suspicionless stops to warrantless arrests, without an individualized determination that the arrestee posed a flight risk. Border Patrol sent busloads of arrestees hundreds of miles south to the El Centro Border Patrol Station and held them there for

days in freezing rooms without the ability to call their loved ones or a lawyer; and without beds, bedding, or basic hygiene items like toothbrushes. *See id.* ¶¶ 58-59, 80, 115-117, 142-145. At the detention center, immigration agents used deception and intimidation to extract "voluntary departure" agreements from the people they had arrested, to trick them into waiving their legal rights unknowingly and involuntarily, and to expel them to Mexico as quickly as possible. *See id.* ¶¶ 4, 9-11, 58-64, 117-25, 145-62, 173-80, 242-245.

Border Patrol's operation deeply harmed putative class members and terrified community members who feared they, too, might be abruptly separated from their homes, livelihoods, and families. It was also unlawful.

***First***, the Fourth Amendment and federal regulations prohibit Border Patrol agents from stopping people to question them about their immigration status without "reasonable suspicion, based on specific, articulable facts," that the individual "is, or is attempting to be, engaged in an offense against the United States or is [a noncitizen] illegally in the United States." 8 C.F.R. § 287.8(b)(2); *see Brignoni-Ponce*, 422 U.S. at 882–83. But during its January operation, Border Patrol stopped individuals without the required reasonable suspicion. *See* PI Motion at 10-13. For example, when Individual Plaintiff Oscar Morales Cisneros was trying to back out of a parking spot on his way home after work, Border Patrol deliberately blocked his car from behind and interrogated him about his immigration status. *See* Decl. of Oscar Morales Cisneros ISO PI Motion ("Morales Cisneros Decl.") ¶¶ 4–6. Border Patrol stopped Mr. Morales Cisneros before ever speaking to him, and without a warrant. Before stopping him, the only facts they knew about Mr. Morales Cisneros were the vehicle he drives and that he appears to be Latino. This falls short of the "specific, articulable facts" required to form reasonable suspicion under 8 C.F.R. § 287.8(b)(2) or the Fourth Amendment. *See Brignoni-Ponce*, 422 U.S. at 885–86 (driver or passenger's perceived ethnicity or national origin, based on their physical characteristics, cannot justify a vehicle stop); *United States v. Rodriguez*, 976 F.2d 592, 596 (9th Cir. 1992), *as amended on denial of reh'g*, 997 F.2d 1306 (9th Cir. 1993) (the type of vehicle a person is driving cannot, without more, create reasonable suspicion). As described in the PI Motion, Border Patrol repeatedly stopped residents of Kern County and the surrounding area without reasonable

suspicion, including: Plaintiffs Munguia Esquivel, Aguilera Martinez, Juan Vargas Mendez, and Maria Guadalupe Hernandez Espinoza as well as Mr. Jesus Ramirez, Mr. Ernesto Campos Gutierrez, Mr. Luis Perez Cruz, and United Farm Workers ("UFW") members "Alicia," "Benjamin," and "Carlos." *See* PI Motion at 10-13.

***Second***, federal law prohibits immigration agents from effecting warrantless arrests unless they have "reason to believe" *both* that (a) the person "is in the United States in violation of any [immigration] law or regulation," *and* that (b) the person "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(i)–(ii) (articulating identical standard). But when Border Patrol agents performed warrantless arrests, they did not ask questions that would have allowed them to assess the statute's second prong, likelihood of escape. *See* 8 U.S.C. § 1357(a)(2). For example, when a Border Patrol agent arrested Individual Plaintiff Wilder Munguia Esquivel, the agent did not ask any questions that would have allowed him to learn that Mr. Munguia Esquivel has a pending family-based immigration petition, and that he has lived in the same home—which his brother owns—for the last dozen years. *See* Decl. of Wilder Munguia Esquivel ISO PI Motion ("Munguia Esquivel Decl.") ¶¶ 2, 6, 8. Without asking such questions, Border Patrol could not have reached a reasoned decision that Mr. Munguia Esquivel was likely to escape before a warrant could be obtained, as the law requires prior to a warrantless arrest. Likewise, when Border Patrol arrested Individual Plaintiff Yolanda Aguilera Martinez, the agents did not ask her any questions that would have allowed them to learn that she had lived in Kern County for almost 45 years and had been a lawful permanent resident for 35 years or more. *See* Decl. of Yolanda Aguilera Martinez ISO PI Motion ("Aguilera Martinez Decl.") ¶¶ 2, 3, 7, 8. Had they asked Ms. Aguilera Martinez such questions, it would have become patently obvious that any contention that she was a flight risk was absurd. Border Patrol's arrests of Individual Plaintiffs Morales Cisneros, Vargas Mendez, and Hernandez Espinoza as well as Mr. Ramirez, Mr. Campos Gutierrez, Mr. Perez Cruz, and UFW members "Alicia," "Benjamin," and "Carlos" were similarly without reasonable suspicion. *See* PI Motion at 17-19.

As these accounts show, Border Patrol consistently disregarded whether reasonable

2884010

suspicion existed for conducting a stop and similarly failed to assess flight risk when effecting a

warrantless arrest, in blatant violation of the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and

8 C.F.R. §§ 287.8(b)–(c). Border Patrol's illegal policies, practices, and patterns caused anguish,

fear, physical suffering, and trauma among putative class members. It also resulted in the

unlawful summary expulsion from the United States of approximately 40 people, if not more,

who were expelled without a chance to say goodbye to their families, including children; collect

any of their belongings left behind in Kern County; or otherwise put their affairs in order. *See*

Dkt. 1 ¶ 322; *see e.g.*, Decl. of Juan Vargas Mendez ISO PI Motion ¶¶ 19–22 (20-year resident of

Kern County expelled to Mexico, leaving behind American wife and four American children);

Decl. of Maria Guadalupe Hernandez Espinoza ISO PI Motion ¶¶ 20–23 (10-year resident of

Kern County expelled to Mexico, leaving behind partner, children, and grandchild).

Moreover, Border Patrol *lacks* a policy to ensure its agents comply with the Constitution

and federal law when conducting stops and arrests. Border Patrol's parent agency, Customs and

Border Protection ("CBP"), has promulgated little to no guidance to its agents about what

constitutes reasonable suspicion for a stop, or about how to assess flight risk before performing a

warrantless arrest. Recently, CBP's sister agency, Immigration and Customs Enforcement

("ICE") entered into a settlement where it acknowledged that its agents must, to comply with 8

U.S.C. § 1357(a)(2), evaluate a person's likelihood of escape before making a warrantless arrest,

and document the particularized facts and circumstances surrounding the warrantless arrest in the

person's immigration file. *See* Appendix A: Broadcast Statement of Policy, *Castanon Nava v.

DHS*, No. 1:18-cv-03757 (N.D. Ill., Feb. 7, 2022), ECF No. 155-1. While Border Patrol agents

are equally bound by § 1357(a)(2), neither Border Patrol nor CBP has promulgated any similar

policy to ensure compliance with the statute, the Constitution, or federal regulations.

**B.      Classwide Relief Is Appropriate Because Border Patrol Has Harmed And
Will Continue Harming Proposed Class Members By Conducting
Suspicionless Stops and Warrantless Arrests Throughout the Central Valley**

Classwide relief is necessary to protect the rights of the Proposed Class Members, who

have been, or will be, subjected to Border Patrol's illegal practices of conducting stops without

reasonable suspicion of unlawful presence in the country and arrests without assessment of flight

risk. Border Patrol's unlawful practices pose a threat to the rights of *all* people it encounters during such immigration raids, regardless of immigration status: citizens, lawful permanent residents, people with temporary authorization, and undocumented individuals alike. This means *all* class members are at risk of being harmed by the same unlawful policies, practices, and/or patterns; and *all* class members require relief.

Border Patrol has boldly proclaimed it will conduct further immigration sweeps throughout California—especially around the Central Valley—using the unlawful policies or practices that comprised "Operation Return to Sender." *See* PI Motion at 6-7, 13, 22-23; *see* Decl. of Reaghan E. Braun ISO Plaintiffs' Mot. for Preliminary Injunction ("Braun Decl."), Exs. 1-14. In the aftermath of Border Patrol's sweeps in and around Kern County, the Chief of the El Centro Sector, which conducted "Operation Return to Sender," repeatedly declared on social media that similar operations were imminent, could again stretch well beyond the border, and would again *not* be narrow or targeted. *See id.* A representative sample of statements from the U.S. Border Patrol El Centro Sector social media posts include:

- "You bet!" in response to a comment about "return to sender round 2." Ex. 1.

- "We plan on coming back [to Bakersfield]!" in response to a comment stating, "Here in Bakersfield you guys forgot to raid some people." Braun Decl., Ex. 3.

- "[W]e will try and catch even more [people] next time." Braun Decl., Ex. 4.

- "[E]very U.S. city [is] a border town." Braun Decl., Ex. 7.

- "Bakersfield is now a dyed in the wool border town." Braun Decl., Ex. 9.

- "We are planning operations for other locals (sic) such as Fresno and especially Sacramento." Braun Decl., Ex. 10.

- "More to come on this. Much more." Braun Decl., Ex. 12.

As explained below, provisional certification of the Proposed Classes is necessary to protect all putative class members from further violations of their legal rights.

## III. LEGAL STANDARD

"Courts in the Ninth Circuit routinely grant provisional class certification for purposes of entering injunctive relief." *Maney v. Brown*, 516 F.Supp.3d 1161, 1171 (D. Or. 2021) (quotations omitted); *see Wilson v. Mercado*, No. 1:22-cv-00278-ADA-SAB, 2022 WL 5235404 at *1 (E.D. Cal. 2022) (collecting cases).[1] Plaintiffs seeking provisional class certification must satisfy the requirements of Federal Rule of Civil Procedure 23. *See id*. Under Federal Rule of Civil Procedure 23, the party moving for class certification must meet each of the four requirements of Rule 23(a) ((1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation) and at least one subsection of Rule 23(b). Fed. R. Civ. Proc. 23.

Although the Court's analysis under Rule 23 "may entail some overlap with the merits of the plaintiff's underlying claim," "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* at 466. "In resolving a dispute about whether class certification is proper, the district court may consider material beyond the pleadings." *Maney*, 516 F.Supp.3d at 1172 (citation omitted).

---

[1] *See, e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1069 (9th Cir. 2020) (denying motion to stay district court's grant of nationwide preliminary injunction on behalf of a provisionally certified nationwide class); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n. 4 (9th Cir. 2020) (noting Ninth Circuit has "approved provisional class certification for purposes of preliminary injunction proceedings"); *Hernandez Roman v. Wolf*, 829 F. App'x 165, 173 (9th Cir. 2020) (holding "district court did not err by provisionally certifying a class" of detained noncitizens); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (finding district court did not abuse its discretion by provisionally certifying class for purpose of entering preliminary injunction); *see also, e.g.*, *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675, at *12 (E.D. Cal. Sept. 2, 2020) (provisionally certifying class of people incarcerated in Tulare County jails); *Cath. Soc. Servs., Inc. v. Ashcroft*, 206 F.R.D. 654, 658 (E.D. Cal. 2002) (describing court had previously granted provisional class certification for noncitizens challenging policies of federal immigration agency for purposes of granting preliminary injunctive relief, which Ninth Circuit affirmed); *Kaiser v. Cnty. of Sacramento*, 780 F. Supp. 1309, 1312 (E.D. Cal. 1991) (describing court's previous grant of provisional class certification for purposes of granting preliminary injunctive relief).

2884010

# IV.    ARGUMENT

Plaintiffs easily meet the Rule 23(a) and Rule 23(b)(2) requirements. Individual Plaintiffs and unnamed class members require a mandatory and uniform answer to their merits question: whether Border Patrol's stop and arrest policies or practices violate the constitution and federal law. Without class treatment, judicial efficiency will suffer, potentially meritorious claims will go unaddressed, and potentially inconsistent decisions will sow confusion.

## A.    The Proposed Classes meet the requirements of Rule 23(a).

Rule 23(a) requires plaintiffs to show that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Individual Plaintiffs' Proposed Classes satisfy each of these requirements.

### 1.    Numerosity

Under Rule 23(a)(1), a class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25 class members." *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016) (alterations in original) (internal quotation marks omitted); *see also Villalpando v. Exel Direct Inc.,* 303 F.R.D. 588, 605–06 (N.D. Cal. 2014) (noting courts "routinely" find numerosity where class comprises 40 or more members). Plaintiffs need only "show some evidence of or reasonably estimate the number of class members." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007) (internal quotation marks omitted). Additionally, where only declaratory or injunctive relief is sought, "the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members" makes joinder impracticable. *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016) (alterations in original) (internal quotation marks omitted) (citing *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)).

Here, the numerosity requirement is easily met. Each Proposed Class is currently comprised of *at least* dozens of people. Border Patrol claims its agents arrested 78 people in Kern or Tulare counties between January 7 and 10, 2025. Braun Decl., Exs., 17, 18, 22. Other local reports estimate the number of arrested individuals may have been higher. *See* Dkt. 1 ¶¶ 4, 322. Even if Border Patrol's number is correct, the Warrantless Arrest Class is currently comprised of approximately 78 people, and the Suspicionless Stops Class is even larger, as not all suspicionless stops were escalated to arrests. *See, e.g.*, Morales Cisneros Decl. ¶ 7 (describing stop of vehicle whose passengers were not arrested). Thus, each Proposed Class is so numerous that joinder of the individuals in each class is impracticable.

Indeed, these estimates understate the size of the Proposed Classes. The Classes consist of numerous *future* class members who will be subjected to the challenged practices or patterns. When a "class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable." *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022); *see also J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (observing "classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such members, much less joining them") (internal quotation marks omitted); *Rivera v. Holder*, 307 F.R.D. 539, 550 (W.D. Wash. 2015) (holding a class of 40 noncitizens was sufficiently numerous, "especially given the transient nature of the class and the inclusion of future class members"); *cf. Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

Accordingly, the Proposed Classes meet the numerosity requirement of Rule 23(a)(1).

## 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs' claims "must depend upon a common contention." *Wal-Mart Stores*, 564 U.S. at 350. A contention is common where "it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Even a single common question" will

satisfy Rule 23(a)(2). *Id.* at 359 (cleaned up); *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (construing Rule 23(a)(2) requirements "permissively"). Indeed, "[a]ll questions of fact and law need not be common to satisfy the commonality requirement. The existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez*, 975 F.3d at 807 (internal quotation marks and alterations omitted). "Thus, '[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

In the Ninth Circuit, commonality is satisfied where, as here, Plaintiffs are "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005); *see also* 7A Wright, Miller & Kane, Fed. Practice & Proc. § 1763, at 226 (3d ed. 2005) ("[C]lass suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2).").[2] In particular, the Ninth Circuit has held that "Fourth Amendment claims concerning government policies, practices or procedures for probable cause determinations are plainly suitable for classwide resolution." *Gonzalez*, 975 F.3d at 809. This logic applies with equal force to reasonable suspicion determinations, which are also governed by the Fourth Amendment.

Here, the Proposed Classes satisfy the commonality requirements, because they present common questions of law and fact for all class members. In particular, each class member has, or will be, subjected to the same practices that Border Patrol employs, which has affected each class

---

[2] *See, e.g.*, *Gonzalez*, 975 F.3d at 807–09 (affirming finding that commonality requirement was met where plaintiffs alleged the government had an unlawful policy and practice of basing probable cause determinations on "only a check of an online database"); *Cruz v. MM 879, Inc.*, 329 F.R.D. 639, 645–46 (E.D. Cal. 2019) (finding commonality requirement satisfied where Plaintiffs challenged common compensation scheme and meal break policy); *Doe #1 v. Trump*, 335 F.R.D. 415, 433–34 (D. Or. 2020) (finding commonality requirement satisfied "in cases involving challenges to systemic immigration policies and procedures, even though immigration decisions ultimately involve discretionary decisions by consular officers"); *Ms. L v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 529, 539 (S.D. Cal. 2018) (finding commonality requirement satisfied where plaintiffs challenged government's "practice of separating migrant parents and children and keep them separate without a showing the parent is unfit"); *Ortega-Melendres v. Arpaio*, 836 F.Supp.2d 959, 989 (D. Ariz. 2011) (finding commonality requirement satisfied where plaintiffs challenged government racial-profiling policy and practice for conducting vehicle stops).

member. "A future determination as to the legality of those common policies will resolve class-wide claims 'in one stroke.'" *Cruz*, 329 F.R.D. at 646 (quoting *Wal-Mart Stores*, 564 U.S. at 350). For the Suspicionless Stop Class, the common questions of law and fact include:

- Whether Border Patrol has a pattern or practice of conducting stops without regard to whether reasonable suspicion exists that the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States; and

- Whether Border Patrol's pattern or practice of conducting stops without regard to whether reasonable suspicion exists that the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States violates the Fourth Amendment.

For the Warrantless Arrest Class, the common questions of law and fact include:

- Whether Border Patrol has a pattern or practice of conducting warrantless arrests without probable cause that an individual is likely to escape before a warrant can be obtained for the arrest;

- Whether Border Patrol's pattern or practice of conducting warrantless arrests without probable cause that an individual is likely to escape before a warrant can be obtained for the arrest violates 8 U.S.C. § 1357(a)(2); and

- Whether Border Patrol's pattern or practice of conducting warrantless arrests without probable cause that an individual is likely to escape before a warrant can be obtained for the arrest violates 8 C.F.R. § 287.8(C)(2)(ii).

Accordingly, the Proposed Classes satisfy the commonality requirement of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that the claims "of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685. The inquiry "'focuses on the *nature of the claim*'" the proposed class representative brings, and not "'the specific facts from which it arose.'" *Gonzalez*, 975 F.3d at 809; *see, e.g.*, *Armstrong*, 275 F.3d at 868 (Typicality is "'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'").

Like commonality, the typicality requirement "is permissive and requires nothing more

12

than that a class plaintiff's claims be reasonably coextensive with those of absent class members." *Gonzalez* at 809 (internal quotation marks omitted). Typicality "is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Here, the claims of the Individual Plaintiffs are typical of those of the members of the Proposed Classes, because they all arise from Border Patrol's illegal immigration policies, practices, or patterns pertaining to suspicionless stops and warrantless arrests in this District. The challenged immigration policies and practices at issue in this suit, as demonstrated by "Operation Return to Sender," are "not unique" to the Individual Plaintiffs. *Parsons*, 754 F.3d at 685. All members of the Proposed Classes they seek to represent "have been," or will be, "injured by the same course of conduct." *Id.* The fact that some putative class members experienced different *outcomes* flowing from Border Patrol's unlawful actions because of their differing immigration status does not defeat typicality because *all* class members have suffered, or will suffer, the same harms. *See Just Film*, 847 F.3d at 1118. Namely, all members in each class were subjected to an unlawful stop or arrest. Because all putative class members experienced, or will experience, those harms, the claims of the Individual Plaintiffs are typical of the claims of all members in the Proposed Classes they seek to represent.

Accordingly, the Proposed Classes satisfy the typicality requirement of Rule 23(a)(3).

### 4. Adequacy

Under Rule 23(a)(4), the Court must be satisfied the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This is determined by answering two questions: "'(1) [D]o the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). This requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (alteration in original); *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)

(explaining commonality and typicality "serve as guideposts" to ensure "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

*Representative Plaintiffs.* The Individual Plaintiffs seeking to represent the Proposed Classes meet both aspects of adequacy. *First*, there is no conflict between the Individual Plaintiffs and the Proposed Class Members. All have suffered the same injury and all seek the same relief. *See Jiahao Kuang v. U.S. Dep't of Def.*, 340 F. Supp. 3d 873, 892 (finding adequacy requirement met in part because "named Plaintiffs have a similar alleged injury as the rest of the proposed class"). *Second*, the proposed class representatives, Oscar Morales Cisneros, Wilder Munguia Esquivel, and Yolanda Aguilera Martinez, will vigorously prosecute this action on behalf of all class members in each class. *See* Morales Cisneros Decl. ¶ 23; Mungia Esquivel Decl. ¶ 21; Aguilera Martinez Decl. ¶ 15. They seek preliminary injunctive relief on behalf of each respective Proposed Class as a whole, share a common interest in ensuring the protection of their constitutional rights, and have no interest that is actually or potentially antagonistic to other members of each respective Proposed Class. Accordingly, Individual Plaintiffs meet the adequacy of representative requirement of Rule 23(a)(4).

*Proposed Class Counsel.* Counsel representing the named Plaintiffs include experienced civil rights attorneys and practitioners in federal constitutional litigation, class actions, and complex litigation involving immigrants' rights. *See* Decl. of Bree Bernwanger ISO Plaintiffs' Mot. for Provisional Class Certification ("Bernwanger Decl."), at ¶¶ 2, 4-13; Decl. of Ajay S. Krishnan ISO Plaintiffs' Mot. for Provisional Class Certification ("Krishnan Decl."), at ¶¶ 3-5, 7-13. Plaintiffs' counsel have adequately and thoroughly investigated the claims prior to bringing this suit, and they will vigorously prosecute this action on behalf of the Proposed Classes. For these reasons, class counsel also meet the requirements of Rules 23(a)(4) and 23(g).

In sum, the Proposed Classes satisfy each requirement of Rule 23(a).

**B.      The Proposed Classes meet the requirements of Rule 23(b)(2).**

In addition to satisfying the requirements of Rule 23(a), the Proposed Classes should be provisionally certified because they meet the requirements of Rule 23(b)(2). "[T]he primary role

of [Rule 23(b)(2)] has always been the certification of civil rights actions." *Parsons*, 754 F.3d at 686 (quoting *Amchem Products, Inc.*, 521 U.S. at 614). Under Rule 23(b)(2), class certification is warranted when the opposing party "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"The key to [a] (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 564 U.S. at 360. This standard is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. The Court need not examine "the viability or bases of the class members' claims for relief" nor find "that all members of the class have suffered identical injuries." *Id*. "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The Proposed Classes in this suit are quintessential Rule 23(b)(2) classes. *First,* Border Patrol has acted on grounds generally applicable to each class because they have subjected, or will subject, all members of the Proposed Classes to the same unlawful policies or practices— namely, the ways in which Border Patrol conducts suspicionless stops and warrantless arrests. *See* Complaint ¶¶ 1–13; PI Motion at 8-14, 17-19. *Second*, the prospective forms of relief Plaintiffs request for each Proposed Class for the preliminary injunction are appropriate for each class as a whole, because they all target Border Patrol's central and systemic failures. Plaintiffs request an injunction that requires: (i) Border Patrol agents in this District to refrain from detentive stops without reasonable suspicion that the person stopped is unlawfully present and warrantless arrests without probable cause that the person is likely to escape before a warrant can be obtained; (ii) Border Patrol agents in this District to timely document the reasonable suspicion that underlies detentive stops they make; (iii) Border Patrol agents to comply with DHS's "Broadcast Statement of Policy" concerning § 1357(a)(2) when they make warrantless arrests in this District, including documenting the probable cause that underlies those arrests; (iv) Defendants to provide that

reasonable suspicion and probable cause documentation to Plaintiffs' counsel on a regular schedule; (v) Defendants to develop guidance concerning how Border Patrol agents should determine whether "reasonable suspicion" exists when conducting detentive stops; and (vi) Defendants train Border Patrol agents in this District on these requirements.. Because these remedies will provide preliminary relief to all members of each Proposed Class, certification under Rule 23(b)(2) is appropriate. *See Parsons*, 754 F.3d at 689 (finding Rule 23(b)(2) requirements met where "every [person] in the proposed class is allegedly suffering from the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in [the agency's] policy and practice").

Accordingly, Individual Plaintiffs respectfully request that the Court provisionally certify the Proposed Classes as injunctive relief classes under Rule 23(b)(2).

## V. CONCLUSION

For the foregoing reasons, the Court should provisionally certify the Proposed Classes under Federal Rules of Civil Procedure 23(a) and 23(b)(2). Additionally, Individual Plaintiffs request that the Court provisionally appoint the American Civil Liberties Union Foundation of Northern California, the American Civil Liberties Union Foundation of Southern California, the American Civil Liberties Union Foundation of San Diego and Imperial Counties, and Keker, Van Nest & Peters LLP as class counsel pursuant to Rule 23(g).


Dated: March 7, 2025                    AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION OF NORTHERN
                                        CALIFORNIA


                             By:    */s/ Bree Bernwanger*
                                    BREE BERNWANGER
                                    MICHELLE (MINJU) Y. CHO
                                    LAUREN DAVIS
                                    SHILPI AGARWAL

2884010

Dated: March 7, 2025

By: AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA

*/s/ Mayra Joachin*
MAYRA JOACHIN
EVA BITRAN
OLIVER MA

Dated: March 7, 2025

By: AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES

*/s/ Brisa Velazquez Oatis*
BRISA VELAZQUEZ OATIS

*Attorneys for Plaintiffs*

Dated: March 7, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Ajay S. Krishnan*
AJAY S. KRISHNAN
FRANCO MUZZIO
ZAINAB O. RAMAHI
JULIA GREENBERG

*Attorneys for Plaintiff Oscar Morales
Cisneros*

2884010