YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
SAMUEL P. GO
Assistant Director
MARY L. LARAKERS
Senior Litigation Counsel
OLGA Y. KUCHINS
Trial Attorney
CAROLYN D. DILLARD
Trial Attorney
TIM RAMNITZ
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-616-2686

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, SECRETARY OF HOMELAND SECURITY, et al.,<br><br>Defendants. | No. 1:25-cv-00246-JLT-CDB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br><u>Scheduled Hearing</u>: April 28, 2025, at 1:30 p.m., Courtroom 4, before Hon. Jennifer L. Thurston |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.    Procedural History ...............................................................................................2

    II.    Factual Background ............................................................................................2

        A.    Named Plaintiffs' Allegations................................................................2

        B.    USBP Guidance and Training................................................................4

    III.    Statutory Background..........................................................................................4

STANDARD OF REVIEW.....................................................................................................5

ARGUMENT...........................................................................................................................6

    I.    Plaintiffs Fail to Establish a Likelihood of Success on Merits..............................6

        A.    The Court Lacks Jurisdiction to Review Plaintiffs' Claims Under 8 U.S.C. 1252(a)(5) and (b)(9)..........................................................................6

        B.    This Court Lacks Jurisdiction to Issue an Injunction to Anyone Other Than the Named Plaintiffs .......................................................................9

        C.    The Plaintiffs' Claims Are Moot............................................................10

    II.    Plaintiffs Cannot Meet Their Burden to Show They Would be Irreparably Harmed Absent the Prospective Injunction They Seek......................................................12

    III.    The Balance of Equities and the Public Interest Favor the Denial of Preliminary Relief...................................................................................................................13

CONCLUSION........................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Abel v. United States*,
  362 U.S. 217 (1960) ................................................................................................................ 4

*Al Otro Lado v. Exec. Office of Immigr. Rev.*,
  120 F.4th 606 (9th Cir. 2024) ................................................................................................ 10

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................................................ 6

*Araujo v. U.S.*,
  301 F.Supp.2d 1095 (N.D. Cal. 2004) .................................................................................... 9

*Earth Island Inst. v. Carlton*,
  626 F.3d 462 (9th Cir. 2010) .................................................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .............................................................................................................. 11

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .................................................................................................. 5

*Garland v. Aleman Gonzalez*,
  596 U.S.542 (2022) ...................................................................................................... 8, 9, 10

*INS v. Lopez-Mendoza*,
  468 U.S. 1032 (1984) ............................................................................................................ 13

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ............................................................................................ 7, 9

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ................................................................................................. 6, 7, 8, 9

*Kansas v. Nebraska*,
  574 U.S. 445 (2015) .............................................................................................................. 13

*Leal-Burboa v. Garland*,
  2022 WL 17547799 (9th Cir. 2022) ....................................................................................... 7

*Loper v. Brewer*,
  680 F.3d 1068 (9th Cir. 2012) ................................................................................................ 5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) .................................................................................................. 6

*Nava v. Department of Homeland Security*,
   435 F.Supp.3d 880 (N.D. Ill. 2020) .................................................................. 7, 8, 9, 11

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................. 13

*Pettibone v. Russell*,
   59 F.4th 449 (9th Cir. 2023) ...................................................................................... 9

*Preiser v. Newkirk*,
   422 U.S. 395 (1975) ............................................................................................ 11, 12

*Rajah v. Mukasey*,
   544 F.3d 427 (2d Cir. 2008) ...................................................................................... 7

*Recycle for Change v. City of Oakland*,
   856 F.3d 666 (9th Cir. 2017) ..................................................................................... 5

*Sanchez v. Sessions*,
   904 F.3d 643 (9th Cir. 2018) ................................................................................. 6, 7

*Stanley v. University of S. Cal.*,
   13 F.3d 1313 (9th Cir. 1994) ..................................................................................... 6

*Tejeda-Mata v. I.N.S.*,
   626 F.2d 721 (9th Cir. 1980) ..................................................................................... 4

*U.S. v. W. T. Grant Co.*,
   345 U.S. 629 (1953) ............................................................................................ 12, 13

### STATUTES

### Immigration and Nationality Act of 1952, as amended:

Section 231,
   8 U.S.C. § 1221 ......................................................................................................... 10

Section 232,
   8 U.S.C. § 1222 ......................................................................................................... 10

Section 233,
   8 U.S.C. § 1223 ......................................................................................................... 10

Section 234,
   8 U.S.C. § 1224 ......................................................................................................... 10

Section 235,
   8 U.S.C. § 1225 ......................................................................................................... 10

Section 236,
 8 U.S.C. § 1226 ............................................................................................................... 5, 8

Section 236A,
 8 U.S.C. § 1226a .............................................................................................................. 10

Section 237,
 8 U.S.C. § 1227 ................................................................................................................ 10

Section 238,
 8 U.S.C. § 1228 ................................................................................................................ 10

Section 239,
 8 U.S.C. § 1229 ................................................................................................................ 10

Section 240,
 8 U.S.C. § 1229a .............................................................................................................. 10

Section 240A,
 8 U.S.C. § 1229b .............................................................................................................. 10

Section 240B,
 8 U.S.C. § 1229c .............................................................................................................. 10

Section 240C,
 8 U.S.C. § 1230 ................................................................................................................ 10

Section 241(a),
 8 U.S.C. § 1231 .................................................................................................................. 5

Section 242,
 8 U.S.C. § 1252 ................................................................................................. 6, 7, 8, 9, 10

Section 287
 8 U.S.C. § 1357 ................................................................................................. 1, 2, 4, 10, 11

**REGULATIONS**

8 C.F.R. § 287.10 ......................................................................................................................... 9

8 C.F.R. § 287.3(a) ...................................................................................................................... 5

8 C.F.R. § 287.3(b) ..................................................................................................................... 5

8 C.F.R. § 287.3(d) ..................................................................................................................... 5

# INTRODUCTION

Named Plaintiffs, Oscar Morales Cisneros, Wilder Munguia Esquivel, and Yolanda Aguilera Martinez, in the instant putative class action, move the Court to enjoin the United States Border Patrol ("USBP") from conducting unlawful stops and arrests in the Eastern District of California. The Court should deny their motion. First and foremost, Plaintiffs cannot show a likelihood of success on the merits because the Court lacks jurisdiction to consider Plaintiffs' claims and, moreover, lacks jurisdiction to enter a class-wide injunction restraining USBP's enforcement operations. Second, the claims subject of Plaintiffs' motion for preliminary injunction have, in any event, been resolved. Plaintiffs allege that in an operation conducted between January 7, 2025, and January 9, 2025, in the Eastern District of California, USBP violated the Fourth Amendment and the statutory requirements of 8 U.S.C. § 1357(a)(2). Complaint at ¶¶ 1-3, 326-45. On April 4, 2025, USBP's El Centro Sector issued policy and guidance (termed a "Muster") and committed to providing training thereon. Exhibit A (Muster); Exhibit B (Declaration of Sergio Guzman). The Muster is materially identical to DHS's "Broadcast Statement of Policy." *See* Plaintiffs' Proposed Order (requesting the Court enjoin USBP from stops in violation of the Fourth Amendment and arrests in violation of 8 U.S.C. § 1357(a)(2) and to order USBP to comply with DHS's "Broadcast Statement of Policy"); Complaint Appendix A. Accordingly, USBP's prompt, responsive, and demonstrated commitment to forestalling similar alleged violations in the future renders an injunction inappropriate, either as a matter of mootness or lack of a cognizable continued and future irreparable injury.[1]

---

[1] Plaintiffs also allege that USBP engaged in a pattern or practice of coercing detained individuals into accepting voluntary departure, but this is not part of their motion for preliminary injunction. Complaint at ¶¶4, 272-75, 346-50 (Claim IV).

OPPOSITION TO PRELIMINARY INJUNCTION

1

**BACKGROUND**

**I.     Procedural History**

On February 26, 2025, Plaintiffs filed a complaint for declaratory and injunctive relief alleging that, in an operation conducted between January 7, 2025, and January 9, 2025, USBP violated the Fourth Amendment and the statutory requirements of 8 U.S.C. § 1357(a)(2). Complaint at ¶¶ 1-3, 326-45 (Claims I, II. and III).  Specifically, Plaintiffs allege that USBP agents engaged in a pattern and practice of warrantless race-based stops, and a pattern or practice of warrantless arrests without assessing flight risk.  Complaint at ¶¶ 3, 236, 239; Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction ("Memo") at 1-2.  Plaintiffs also claim to represent two classes under Federal Rules of Civil Procedure 23(b)(2).  Complaint at ¶¶ 17, 312-18.  On March 7, 2025, Plaintiffs filed a motion for preliminary injunction and a motion to provisionally certify a Suspicionless Stop Class and a Warrantless Arrest Class.

**II.    Factual Background[2]**

    **A.     Named Plaintiffs' Allegations**

On January 7, 2025, named Plaintiff Oscar Morales Cisneros left work to head home, parking outside of a liquor store to fill up empty water jugs. Cisneros Declaration at ¶ 4.  He was about to reverse out of his parking spot when an unmarked Chevrolet Tahoe pulled up behind his truck and blocked him in.  *Id.*  Cisneros put his truck back in park and lowered his driver's side window.  *Id.*  Two men in Border Patrol uniforms approached his window and one of the men asked Cisneros if he had papers and was here legally.  *Id.* at ¶¶ 4-5.  Cisneros did not answer. *Id.* at ¶ 5.  Cisneros provided his driver's license when asked for it and one of the officers walked back to the Tahoe with the license.  *Id.*  When the agent returned, he told Cisneros he was in the United States illegally and arrested him.  *Id.* at ¶

---

[2]  Facts in this section are as alleged by named Plaintiffs in their declarations.  Defendants do not concede these allegations.

OPPOSITION TO PRELIMINARY INJUNCTION

2

5-6. Cisneros was transported to a detention facility in El Centro and, on January 10, 2025, provided with a monitoring device and released. *Id.* at ¶¶ 9, 18-19. It is undisputed Cisneros lacks status in the United States.

On January 7, 2025, around noon, named Plaintiff Wilder Munguia Esquivel was outside a Home Depot in Bakersfield, standing with a group of other day laborers, when several unmarked vehicles pulled up and at least ten plain-clothed men, most wearing masks covering all but their eyes, exited the vehicles and aggressively "swarmed around us." Esquivel Declaration at ¶¶ 4-5. One of the men asked Esquivel about his status – "Do you have papers? Do you have identification? Where are you from?" *Id.* at ¶5. When Esquivel did not answer, the man asked again, but louder, and then asked again, louder still. *Id.* Esquivel turned away from the man and walked away. *Id.* The man followed Esquivel, continuing to ask Esquivel questions. *Id.* Esquivel did not respond, and the man ordered Esquivel to stop. *Id.* Esquivel realized the man was a federal immigration agent and stopped, telling the agent "I have the right to remain silent." *Id.* at ¶¶ 5-6. The agent asked Esquivel for identification and ordered Esquivel to take out his wallet. *Id.* at ¶ 6. Before Esquivel could comply, the agent removed the wallet from Esquivel's back pocket, looked through it, and arrested him. *Id.* at ¶¶ 7-9. It is undisputed that Esquivel lacks status in the United States.

On January 8, 2025, at around 4:30 pm, named Plaintiff Yolanda Aguilera Martinez was driving in a vehicle when she saw two vehicles, one with flashing police lights, pulled over to the right side of the road with three men standing near the vehicles. Martinez Declaration at ¶¶ 4-5. The men were in plain-clothes, but with holstered firearms, and one of the men raised his hand and flagged Martinez to pull over her vehicle. *Id.* Once she pulled over, the man who flagged Martinez down approached her window and asked about her immigration status. *Id.* at ¶ 6. Martinez produced a driver's license, but the man questioned its authenticity. *Id.* at ¶6. The man told Martinez to exit the vehicle. *Id.* at ¶ 7. She exited, the man pushed her to the ground, placed handcuffs on her, then placed her in the back of his

OPPOSITION TO PRELIMINARY INJUNCTION

3

vehicle. *Id.* Martinez requested an opportunity to use her phone to obtain a photograph of her permanent resident card. *Id.* at ¶ 10. The man agreed, she obtained her phone from her vehicle, showed the agent a photograph of her permanent resident card, and she was released from custody. *Id.*

### B. USBP Guidance and Training

On April 4, 2025, the El Centro Sector of Border Patrol issued a "Muster." Exhibit ("Ex") A. The Muster contains guidance on the requirement for reasonable suspicion for traffic stops conducted throughout the Eastern District of California, guidance on assessing flight risk using factors such as "family, home, or employment" (that is, community ties), and guidance on documenting the facts and circumstances surrounding a warrantless arrest in an alien's Form I-213 as soon as practicable. *See* Ex. A. USBP El Centro Sector plans to conduct training sessions to ensure compliance with the Muster within 60 days for the more than 900 El Centro Sector Border Patrol Agents, supervisors, and command staff on report writing, compliance with the Fourth Amendment and 8 U.S.C. § 1357, and compliance with Supreme Court and Ninth Circuit law on conducting vehicle stops, consensual encounters, and warrantless arrests.[3] Ex. B (Declaration of Sergio Guzman) at ¶¶ 10-16.

### III. Statutory and Regulatory Background

Under the INA, immigration officials are authorized to perform the warrantless arrest of:

> [A]ny alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrestee shall be taken without unnecessary delay . . . before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2); *see Abel v. United States*, 362 U.S. 217, 232-37 (1960) (discussing longstanding administrative arrest procedures in deportation cases). "Reason to believe" has been equated with the constitutional requirement of probable cause. *Tejeda-Mata v. I.N.S.*, 626 F.2d 721, 725 (9th Cir. 1980)

---

[3] El Centro Sector will endeavor to train all such employees within 60 days. However, it may not be practicable to do so because of, for example, employees being on detail or extended leave.

OPPOSITION TO PRELIMINARY INJUNCTION

(internal citations omitted).

The regulations implementing this statute require that "[w]ith respect to an alien arrested and administratively charged with being in the United States in violation of law, the arresting officer shall adhere to the procedures set forth in 8 C.F.R. § 287.3 if the arrest is made without a warrant." 8 C.F.R. § 287.8(c)(2)(iv). That regulation provides that "an alien arrested without a warrant of arrest . . . will be examined by an officer other than the arresting officer." 8 C.F.R. § 287.3(a). "If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." *Id.* "If the examining officer is satisfied that there is prima facie evidence that the arrested alien . . . is present in the United States in violation of the immigration laws, the officer will either refer the case to an immigration judge for further inquiry . . ., order the alien removed . . . , or take whatever other action may be appropriate or required under the laws or regulations applicable to the particular case. *Id.* at § 287.3(b). DHS ordinarily will make an initial determination within 48 hours of the apprehension whether the alien will remain in custody, be paroled, be released on bond or be released on recognizance. 8 C.F.R. § 287.3(d). In addition, DHS will decide whether to issue a notice to appear and arrest warrant. *Id.*

The general detention authority for aliens in removal proceedings is governed by 8 U.S.C. § 1226(a). Under this section, "an alien may be arrested and detained," on issuance of a warrant, "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). After a removal becomes final, 8 U.S.C. § 1231(a) authorizes detention.

## **STANDARDS OF REVIEW**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Loper v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). This is a "heavy" burden. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469

(9th Cir. 2010) (internal quotation omitted). "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation omitted). The court evaluates "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (internal citations omitted). When the balance of equities "tips sharply in the plaintiff's favor," the plaintiff must raise only "serious questions" on the merits - a lesser showing than likelihood of success. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Mandatory injunctions, which order a party to take action, are "particularly disfavored," *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009), and should be denied "unless the facts and law clearly favor the moving party," *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal citations omitted).

## ARGUMENT

**I.    Plaintiffs Fail to Establish a Likelihood of Success on Merits**

    **A.    The Court Lacks Jurisdiction to Review Plaintiffs' Claims Under 8 U.S.C. § 1252(a)(5) and (b)(9)**

Pursuant to 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provision, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final [removal] order." And a petition for review filed in the appropriate court of appeals is the sole and exclusive means for judicial review of a final removal order. *See* 8 U.S.C.§ 1252(a)(5). In other words, if a claim challenges a "decision to detain [an alien] in the first place or seek removal," a district court lacks jurisdiction to consider that claim and it instead must be reviewed through the administrative process. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

OPPOSITION TO PRELIMINARY INJUNCTION

The stops and detentions that Plaintiffs challenge were actions taken to remove them from the United States, that is, to "detain [them] in the first place and seek their removal." *Jennings*, 138 S. Ct. at 841. Plaintiffs challenge the questions of law and fact behind these actions, specifically, whether USBP had reasonable suspicion for the stops and probable cause for the arrests. Because Plaintiffs challenge questions of law and fact arising from these actions taken to remove them, 8 U.S.C. § 1252(a)(5) & (b)(9) require that they bring these claims in petitions for review in the court of appeals. Indeed, petitions for review commonly consider challenges related to whether immigration authorities had reasonable suspicion to stop, or probable cause to arrest, an alien. *Sanchez v. Sessions*, 904 F.3d 643 (9th Cir. 2018); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016) (8 U.S.C. § 1252(a)(5) and (b)(9) bars district courts from reviewing legal questions "routinely raised in petitions for review"). And these same legal questions are commonly raised by aliens in removal proceedings asking administrative and federal courts of appeal to suppress evidence of their removability due to Fourth Amendment or regulatory violations, or terminate proceedings due to the same. *Sanchez*, 904 F.3d at 653-54 (alleged race-based stop by Coast Guard challenged in removal proceedings) (citing *Rajah v. Mukasey*, 544 F.3d 427, 446-47 (2d Cir. 2008)); *Leal-Burboa v. Garland*, No. 21-70279, 2022 WL 17547799 (9th Cir. 2022) (alleged race-based stop challenged in removal proceedings). If the legal remedy for unlawful stops and arrests is provided in removal proceedings, ipso facto these challenges are part of the decision to remove an alien. It does not matter that a class remedy "might be more efficient than requiring each applicant to file a PFR," or preferred as a method to challenge "policy and practice," as 8 U.S.C. § 1252(b)(9) plainly precludes "all district court review of any issue raised in a removal proceeding." *J.E.F.M.*, F.3d at 837 at 1034-35, 1038; *Nava*, 435 F.Supp.3d at 894 (rejecting application of 8 U.S.C. § 1252(b)(9) because removal proceedings "are not structured to provide . . . system-wide reforms").

Defendants acknowledge that in *Nava v. Department of Homeland Security*, 435 F.Supp.3d 880 (N.D. Ill. 2020), a case relied upon by Plaintiffs as similar litigation, the court rejected an argument that

OPPOSITION TO PRELIMINARY INJUNCTION

8 U.S.C. § 1252(a)(9) precluded it from reviewing a class challenge to alleged unlawful stops and arrests by Immigration and Customs Enforcement ("ICE").  Complaint at ¶¶ 280-83; Memo at 16.  This is a single district court case that is not remotely binding on this Court.  It is also not persuasive.  First, the district court incorrectly interpreted the Supreme Court's decision in *Jennings* as holding that 8 U.S.C. § 1252(a)(9) applied only to reviewing "lawful" actions taken to remove an alien from the United States.  *Id.* at 890-91.  The Supreme Court did nothing of the sort.  Indeed, many challenges brought by aliens in a petition for review allege some variation of the claim that the decision to remove them is unlawful.  This is particularly true for aliens charged with deportability under 8 U.S.C. § 1227 (describing the grounds for deportation), but even when aliens concede removability, they often allege that the denial of relief was unlawful.  The district court ignored that the precise claims Plaintiffs raise here – Fourth Amendment challenges to their original arrest – may be reviewed in a petition for review.  Holding that § 1252(b)(9) only applies to "lawful" actions would lead to absurd results and claim splitting wherein aliens could challenge their arrest in several Article III forums.  Further, since the district court's decision in *Nava*, the Supreme Court rejected a related argument with regard to § 1252(f)(1).  *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 552-54 (2022) (rejecting an argument that 8 U.S.C. § 1252(f)(1) applies only to the operation of "properly interpreted" statutory provisions, noting that statutes can be operated "unlawfully" or "improperly").

  Second, the *Nava* court held that, in any event, the plaintiffs' factual and legal challenges to their stops and arrests of aliens were "too remote" from "the removal process," citing *Jennings*, 138 S. Ct. at 840 & 841 n.3.  435 F.Supp.3d at 891-92.  First, this analysis plainly contradicts the analysis in *J.E.F.M.*, 837 F.3d at 1033, in which the Ninth Circuit held that the test for whether § 1252(b)(9) applies is whether the claims are "routinely raised in petitions for review" – a test Defendants can easily demonstrate.  *See supra* at 7.  Regardless, the "remote," collateral challenges described in *Jennings*, however, were challenges to injuries entirely unrelated to the decision to detain or remove an alien –

OPPOSITION TO PRELIMINARY INJUNCTION

conditions of confinement, assault by a detention guard or fellow detainee, a car crash, or prolonged detention. *Jennings*, 138 S. Ct at 840. It was too "expansive" to "cram[]" these actions into action "arising from a decision to remove an alien." *Id.* But the stop and arrest of an alien is directly, linearly part of the process to remove an alien – the stops occurred to investigate immigration status rendering an alien removable, and the arrests because of probable cause of removability. The "legal questions" in this case challenging the stops and arrests are directly part of the removal process. *Jennings*, 138 S. Ct. at 841 n.3; Complaint at ¶¶ 3, 7. Accordingly, the Court lacks jurisdiction pursuant to 8 U.S.C. § 1252(a)(5) and (b)(9). [4]

**B.    This Court Lacks Jurisdiction to Issue an Injunction to Anyone Other Than the Named Plaintiffs**

That these claims must be brought in petitions for review underscores, moreover, that a class wide injunction is inappropriate. But 8 U.S.C. § 1252(f)(1), in any event, bars the court from granting Plaintiffs' request to preliminarily enjoin USBP's detention and removal operations. In *Aleman Gonzalez*, 596 U.S. at 544, the Supreme Court held that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." The specified statutory provisions are 8 U.S.C. §§ 1221-1232, as amended by the Immigration and Nationality Act. *See Al Otro Lado v. Exec. Office of Immigr. Rev.*, 120 F.4th 606, 627 n.16 (9th Cir. 2024). 8 U.S.C. § 1226, a covered statute, concerns the apprehension and detention of aliens. 8 U.S.C. § 1229, another covered statute, concerns the initiation of removal proceedings against an alien. Enjoining these provisions is barred even if a court determines that the agency's "operation" of a covered provision is unlawful or incorrect. *Aleman Gonzalez*, 596 U.S. at 552-54. To the extent Plaintiffs allege they are seeking to enjoin 8 U.S.C. § 1357, the actions under this statute cannot be untangled from apprehension and

---

[4] To the extent Plaintiffs argue 8 U.S.C. § 1252(b)(9) does not apply to aliens not in removal proceedings, this is a problem with their class.

OPPOSITION TO PRELIMINARY INJUNCTION

9

removal operations. Consequently, Plaintiffs' request to restrain USBP's allegedly unlawful detention and removal operations necessarily seeks to enjoin operation of provisions covered by 8 U.S.C. § 1252(f)(1). A class-wide injunction is, therefore, prohibited and any injunctive remedy must be individualized to named Plaintiffs.

## C. The Plaintiffs' Claims Are Moot

Plaintiffs' claims are moot in light of new guidance issued by USBP providing nearly all the relief Plaintiffs seek in their motion. Plaintiffs allege that, in an operation conducted between January 7, 2025, and January 9, 2025, USBP violated the Fourth Amendment and the statutory requirements of 8 U.S.C. § 1357(a)(2). Complaint at ¶¶ 1-3, 326-45. Plaintiffs seek declaratory and injunctive relief claiming Border Patrol will replicate these alleged unlawful acts because the agency lacks policy and guidance for ensuring compliance with the Fourth Amendment and 8 U.S.C. § 1357(a)(2). Complaint at ¶¶ 249-50, 276-77, 329-30, 336, 340. Pointing to an example of sufficient guidance issued by DHS (the "Broadcast"), Plaintiffs move the Court to enjoin USBP from conducting warrantless stops and arrests in the Eastern District of California that do not comply with the DHS Broadcast, and order USBP to develop guidance similar to the Broadcast and conduct training thereon. PI Motion at 1-2; Memo at 16, 19, 23; Complaint at ¶¶ 278-83, Prayer for Relief ¶¶ 4-5, 8-10, Appendix A. In the meantime, Plaintiffs continue, they will suffer "continued and future irreparable injury." Complaint at ¶¶ 333, 339, 345.

However, on April 4, 2025, the El Centro Sector USBP issued a "Muster" to all Sector employees that is in all material respects identical to the Broadcast issued in *Castanon Nava*. *Compare* El Centro Muster, Exhibit ("Ex.") A, *with* Complaint Appendix A. The Muster contains guidance on the requirement for reasonable suspicion for traffic stops conducted throughout the Eastern District of California, guidance on assessing flight risk using factors such as "family, home, or employment" (that is, community ties), and guidance on documenting the facts and circumstances surrounding a warrantless arrest in an alien's Form I-213 as soon as practicable. *See* Ex. A; Complaint at ¶ 278

OPPOSITION TO PRELIMINARY INJUNCTION

10

(stating USBP should provide its officers guidance on the requirement for reasonable suspicion for traffic stops in the interior, away from the border, and guidance on assessing flight risk using factors such as "family, home, or employment," that is, community ties).  El Centro Sector USBP is moreover taking steps to implement training on the Muster.  Ex. B.  USBP will conduct training sessions to ensure compliance with the Muster within 60 days for the more than 900 El Centro Sector Border Patrol Agents, supervisors, and command staff on report writing, compliance with the Fourth Amendment and 8 U.S.C. § 1357, and compliance with Supreme Court and Ninth Circuit law on conducting vehicle stops, consensual encounters, and warrantless arrests.  Ex. B. at ¶¶ 10-16.

USBP's issuance of guidance and commitment to training thereon constitutes a change in circumstances forestalling a "substantial controversy . . . of sufficient immediacy and reality." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (the party asserting mootness bears the burden of showing subsequent events have "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur").  This is "more than a mere voluntary cessation of allegedly illegal conduct where [USBP is]. . . free to return to [their] old ways." *Preiser*, 422 U.S. at 402.  Pursuant to the Muster,  Border Patrol agents "may stop a vehicle to enforce civil immigration laws only if they are aware of specific, articulable facts that reasonably warrant suspicion that the vehicle contains alien(s) who may be illegally in the country" and, "[i]n considering 'likelihood of escape' . . .[,] must consider the totality of the circumstances known to the agent before making the arrest." Ex. A.  Further, Border Patrols agents "must document the facts and circumstances surrounding the vehicle stop" and "the facts and circumstances surrounding th[e] warrantless arrest" in the narrative section of the alien's I-213 as soon as practicable. *Id.*  "[W]hile there is always the possibility that [USBP] might disregard the [Muster and training thereon], such speculative contingencies afford no basis for [the court] passing on the substantive issues [Plaintiffs] would have [the court] decide." *Preiser*, 422 U.S. at 403 (internal

OPPOSITION TO PRELIMINARY INJUNCTION

11

citations omitted).  Indeed, USBP's prompt and responsive actions in light of Plaintiffs' complaint forcefully demonstrates its commitment to forestall similar alleged violations in the future.  "[T]here is now no reasonable expectation that the [alleged] wrong will be repeated," *Preiser*, 422 U.S. at 402, and, again, this is the relief Plaintiff's requested, *see* PI Motion at 1-2; Memo at 16, 19, 23; Complaint at ¶¶ 278-83, Prayer for Relief ¶¶ 4-5, 8-10, Appendix A.  Plaintiffs, therefore, lack a continuing interest in pursuing their motion and, consequently, the Court lacks a controversy to adjudicate.  Individual allegedly aggrieved aliens can seek remedies through the administrative process described in Part I.A.

## II.   Plaintiffs Cannot Meet Their Burden to Show They Would be Irreparably Harmed Absent the Prospective Injunction They Seek

To the extent the Court has jurisdiction, and Plaintiffs claims are not moot, Plaintiffs nonetheless cannot demonstrate that they will be irreparably harmed absent a preliminary injunction in light of USBP's issuance of new guidance providing nearly all the relief Plaintiffs seek in their motion and rendering any alleged future harm unlikely.  "The purpose of an injunction is to prevent future violations" and, therefore, requires the movant establish a "cognizable danger of recurrent violation" and not just "the mere possibility" of future harm.  *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).  Where the defendants proffer a "bona fide[] . . . expressed intent to comply" with plaintiffs' request and "discontinue" the alleged past violations, plaintiffs no longer possess a cognizable danger of recurrent violation.  *Id.*  By issuing the Muster and committing to training thereon, USBP has provided the remedy Plaintiffs requested for alleged past violations.  *See* Ex. A; Ex. B.  There has meanwhile been no "intransigence," or "following one adjudicated violation with others," which might serve to undermine the bona fides of USBP's expressed commitments.  *W.T. Grant Co.*, 345 U.S. at 634.  On the contrary, USBP addressed the complaint promptly, responsively, and with demonstrated commitment to forestall "similar [alleged] violations in the future."  *W.T. Grant Co*, 345 U.S. at 634; *Kansas v. Nebraska*, 574 U.S. 445, 466 (2015) (defendant's "new compliance measures, so long as followed," and which were "implemented in good faith," preclude a "cognizable danger of recurrent violation") (citing *W.T. Grant*

OPPOSITION TO PRELIMINARY INJUNCTION

*Co.*, 345 U.S. at 633). Accordingly, Plaintiffs cannot establish a cognizable "continued and future irreparable injury" absent an injunction. Complaint at ¶¶ 333, 339, 345.

### III.     The Balance of Equities and the Public Interest Favor the Denial of Preliminary Relief

When the Government is a party, the balancing of equities and public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The equities do not favor granting Plaintiffs' motion because, again, their claims have been resolved. Indeed, the public interest should favor an agency taking prompt, responsive action in light of a complaint against it. This is a favorable result and granting a preliminary injunction despite such actions would provide little incentive for agencies to take prompt, responsive actions in the future. Meanwhile, it is undisputed that two of the three named plaintiffs (Cisneros and Esquivel) are illegally present in the United States. An alien's unlawful presence in the United States is a continuing violation of the law and the government has a legitimate and significant interest in ensuring that immigration laws are enforced. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1047 (1984) (discussing that "a person whose unregistered presence in this country, without more, constitutes a crime" and while "[t]he constable's blunder may allow the criminal to go free, [] we have never suggested that it allows the criminal to continue in the commission of an ongoing crime"). And this public interest is served by allowing USBP to continue to conduct its operations without premature intervention by the Court. Accordingly, the balance of the hardships and the public interest weigh against granting Plaintiffs' motion.

### CONCLUSION

The Court should, accordingly, dismiss Plaintiffs' motion for lack of jurisdiction or, alternatively, to the extent the Court finds jurisdiction, it should deny the instant motion because Plaintiffs cannot meet the standard for a preliminary injunction.

DATED:  April 7, 2025

OPPOSITION TO PRELIMINARY INJUNCTION

Respectfully submitted

YAAKOV M. ROTH
Acting Assistant Attorney General Civil Division

MICHELLE G. LATOUR
Acting Director
Office of Immigration Litigation

SAMUEL P. GO
Assistant Director
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 353-9923
Samuel.go@usdoj.gov

MARY L. LARAKERS
Senior Litigation Counsel
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 353-4419
Mary.l.larakers@usdoj.gov

/s/ Tim Ramnitz
TIM RAMNITZ
Senior Litigation Counsel
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 616-2686
Tim.ramnitz@usdoj.gov


Attorneys for Defendants

OPPOSITION TO PRELIMINARY INJUNCTION

14