1  YAAKOV M. ROTH
   Acting Assistant Attorney General
2  Civil Division
   SAMUEL P. GO
3  Assistant Director
   MARY L. LARAKERS
4  Senior Litigation Counsel
   TIM RAMNITZ
5  Senior Litigation Counsel
   OLGA Y. KUCHINS
6  Trial Attorney
   CAROLYN D. DILLARD
7  Trial Attorney
   U.S. Department of Justice
8  Office of Immigration Litigation
   General Litigation and Appeals Section
9  P.O. Box 878, Ben Franklin Station
   Washington, DC 20044
10 202-514-7013
   MI Bar No. P78090
11 Carolyn.D.Dillard@usdoj.gov
12
   Attorneys for Defendants
13

14

15                UNITED STATES DISTRICT COURT

16             EASTERN DISTRICT OF CALIFORNIA

17                      FRESNO DIVISION

18 | UNITED FARM WORKERS, et al.,      | No. 1:25-cv-00246-JLT-CDB

19 |            Plaintiffs,             | **DEFENDANTS' OPPOSITION TO**
                                        | **PLAINTIFFS' MOTION FOR**
20 |            v.                      | **PROVISIONAL CLASS CERTIFICATION**

21 | KRISTI NOEM, SECRETARY OF
22 | HOMELAND SECURITY, et al.,
                                        | Scheduled Hearing: April 28, 2025, at 1:30 p.m.,
23 |            Defendants.             | Courtroom 4, before Hon. Jennifer L. Thurston

24

25

26

27

28

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................ii

**INTRODUCTION** .......................................................................................................1

**STATEMENT OF THE FACTS** ..................................................................................2

   *1. Proposed Three Class Representatives* ...............................................................2

      A. Proposed Representative Oscar Morales Cisneros ........................................2

      B. Proposed Representative Wilder Munguia Esquivel ......................................3

      C. Proposed Representative Yolanda Aguilera Martinez ....................................3

   *2. Additionally Named and Unnamed Plaintiffs* .....................................................4

      A. Named Plaintiff Juan Vargas Mendez .........................................................4

      B. Named Plaintiff Maria Guadalupe Hernandez Espinoza ..............................5

      C. Plaintiff Jesus Ramirez .............................................................................5

      D. Plaintiff Ernesto Campos Gutierrez ...........................................................6

      E. Plaintiff Luis Perez Cruz ...........................................................................6

**ARGUMENT** ......... ...................................................................................................7

     I.     Plaintiffs' Motion to Certify their Proposed Classes Should be Denied Because They Lack Standing to Seek Injunctive relief .............................................9

     II.    Plaintiffs' Proposed Classes Cannot be Certified Because They Are Impermissibly Defined as "Fail-Safe" Classes, and the "Warrantless Arrest Class" is Impermissibly Overbroad .............................................................................................10

     III.   Plaintiffs Have Not Satisfied Their Burden to Demonstrate Numerosity .................11

     IV.   Plaintiffs Cannot Identify a Common Question That Would Drive Resolution of This Litigation .............................................................................................................12

     V.    The Named Plaintiffs' Claims or Defenses Are Not Typical of the Putative Class .......16

     VI.   The Named Plaintiffs are Not Shown to Be Adequate Representatives ....................18

     VII.  Plaintiffs Cannot Satisfy the Requirements for an Injunctive-Relief Class Under Rule 23(b)(2) .............................................................................................................18

**CONCLUSION** ..........................................................................................................19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gonzales v. Comcast Corp.*,
1:10-CV-01010-LJO,
  2012 WL 217708 (E.D. Cal. Jan. 23, 2012) ........................................................................ 11

*Gonzales v. Comcast Corp.*,
10-CV-01010-LJO-BAM,
  2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ............................................................................. 11

*United States v. Shepherd*,
  2024 WL 4931677 (E.D. Cal. Dec. 2, 2024) ........................................................................ 11

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994) .......................................................................................... 11

*Crawford v. Honig*,
  37 F.3d 485 (9th Cir. 1994) ................................................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ......................................................................................... passim

*Gen. Telephone Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................. 8, 13, 17

*Genenbacher v. CenturyTel Fiber Co. II*,
  244 F.R.D. 485 (C.D. Ill. 2007) ............................................................................................. 7

*Gonzalez v. United States Immigr. & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) ...................................................................................... 9, 15, 16

*Gutierrez v. Webcollex, LLC*, No. 2:23-CV-00988 AC,
  2024 WL 4527329 (E.D. Cal. Oct. 18, 2024) ......................................................................... 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 12

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................................. 17

*James v. Uber Techs. Inc.*,
  338 F.R.D. 123 (N.D. Cal. 2021) ........................................................................................... 15

*Jara-Navarrete v. I.N.S.*,
  813 F.2d 1340 (9th Cir. 1986) ............................................................................................... 19

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Jones v. Tirehub LLC*,
   No. 2:21-CV-0564 DB, 2024 WL 2132611 (E.D. Cal. May 13, 2024) ............................................. 8

*Justus v. Doerer*, No. 1:25-CV-00138-JLT-S,
   AB (PC), 2025 WL 811145 (E.D. Cal. Mar. 13, 2025) ........................................................... 8

*Kamar v. RadioShack Corp.*,
   375 F. App'x 734 (9th Cir. 2010) ............................................................................. 7, 11

*Kim v. Allison*,
   87 F.4th 994 (9th Cir. 2023) .................................................................................. 18

*Lightfoot v. D.C.*,
   273 F.R.D. 314 (D.D.C. 2011) ................................................................................ 13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 7

*McCurley v. Royal Seas Cruise, Inc.*,
   331 F.R.D. 142 (S.D. Cal. 2019) ............................................................................. 11

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ................................................................................ 4

*Morales v. Bondi*,
   No. 23-274, 2025 WL 763479 (9th Cir. Mar. 11, 2025) ...................................................... 19

*Moreno v. Napolitano*,
   213 F. Supp. 3d 999 (N.D. Ill. 2016) ..................................................................... 13, 15

*Olean  Grocery Coop., Inc., v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ................................................................................ 15

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................................ 16

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ............................................................................... 19

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ......................................................................... 7, 10, 11

*Rutledge v. Elec. Hose & Rubber Co.*,
   511 F.2d 668 (9th Cir. 1975) ................................................................................. 9

*Sibron v. New York*,
   392 U.S. 40 (1968) ......................................................................................... 15

*Tinnin v. Sutter Valley Med. Found.*,
    647 F. Supp. 3d 864 (E.D. Cal. 2022) ...................................................................... 11

*Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) .......................................................................... 9, 14

*U.S. v. Rodriguez*,
    976 F.2d 592 (9th Cir. 1992) ...................................................................... 1, 13, 14

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ........................................................................ 8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ passim

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ............................................................................ 9

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .......................................................................... 16

**Statutes**

8 U.S.C. § 1226 ................................................................................................ 19
8 U.S.C. § 1226(c) ........................................................................................... 19
8 U.S.C. § 1357 ................................................................................... 10, 13, 19

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................... passim
Fed. R. Civ. P. 23(a)(1) ............................................................................... passim
Fed. R. Civ. P. 23(a)(3) ................................................................................... 16
Fed. R. Civ. P. 23(b)(2) ............................................................................... passim
Fedeal Rule of Civil Procedure 5(b)(2) ................................................................... 21

1

## INTRODUCTION

Plaintiffs move to certify two broad and distinct putative classes: the "Suspicionless Stop Class" and the "Warrantless Arrest Class" (collectively "the Proposed Classes").[1]  The fundamental flaw in Plaintiffs' Proposed Classes is that they do not account for the many factors that are involved in assessing probable cause and flight risk where there exists no pattern, practice, or policy of U.S. Border Patrol ("USBP") conducting unlawful stops and arrests in the Eastern District of California. This is because assessing "reasonable suspicion"—a *sine quo non* for both determinations—is a singularly discretionary determination based on the unique circumstances of each stop and arrest.  *U.S. v. Rodriguez*, 976 F.2d 592, 595 (9th Cir. 1992).  This flaw renders the Proposed Classes defective, and Plaintiffs cannot meet their burden to satisfy the requirements of Fed. R. Civ. P. 23.

The Court should deny Plaintiffs' motion for provisional class certification for three specific reasons.  *First*, the Proposed Classes are what is known as "fail-safe" classes, because they are impermissibly circular in nature and defined in a way that precludes membership unless liability of the defendant is established.  *Second*, the Proposed Classes are not sufficiently numerous, encompass dissimilarly situated individuals whose claims are not common, whose injuries are not typical, and who differ in their ability to challenge their claims through the administrative process.  Crafting an injunction on the basis of the Proposed Classes to provide classwide relief would be impossible because to determine whether the alien is a member of the proposed class would require and individualized assessment of whether the alien was illegally stopped and arrested by Border Patrol. Plaintiffs therefore have not met their burden to show the numerosity, commonality, typicality, or adequacy requirements under Fed. R. Civ. P. 23(a).  *Third*, Plaintiffs have not made the required showing that Defendants acted or refused to act on grounds generally applicable to the Proposed Classes, so that final injunctive relief or corresponding declaratory relief could be appropriate for the Proposed Classes as a whole, as required under Fed. R. Civ. P. 23(b)(2).  For these reasons, Plaintiffs' motion for provisional class certification should be denied.

---

[1] Defendants use terminology consistent with the terminology used in Plaintiffs' motion. *See* ECF No. 14-1 at 2.

1

## STATEMENT OF THE FACTS

Plaintiffs seek provisional certification of two proposed classes.  The first proposed class, which Plaintiffs name the "Suspicionless Stop Class," comprises:

> All persons who, since January 6, 2025, have been or will be subjected to a detentive stop by Border Patrol in this district pursuant to a practice of conducting stops without warrants and without an individualized assessment of reasonable suspicion whether the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States.

ECF No.  14-1 at 2.  The second proposed class, which Plaintiffs name the "Warrantless Arrest Class," comprises: "All persons whom Border Patrol, since January 6, 2025, has arrested or will arrest without a warrant in this district."  *Id.*

### 1.    *Proposed Three Class Representatives.*

Plaintiffs propose three class representatives—Oscar Morales Cisneros, Wilder Munguia Esquivel, and Yolanda Aguilera Martinez—to represent both the Suspicionless Stop Class and the Warrantless Arrest Class.  *Id.*  These three proposed class members have attached declarations to Plaintiffs' related motion for a preliminary injunction.  *See* ECF Nos. 15-9, 15-10, 15-11.  Below are summaries relating to these three representatives of the Proposed Classes, as alleged in Plaintiffs' Complaint. *See generally* ECF No. 1, Compl.

### A.    Proposed Representative Oscar Morales Cisneros

On January 7, 2025, Border Patrol stopped and detained Oscar Morales Cisneros ("Cisneros") during a vehicle stop.  *See* ECF No. 15-9 ("Cisneros Decl.") ¶ 4.  Cisneros alleges he was about to reverse out of his parking spot when an unmarked Chevrolet Tahoe pulled up behind his truck and blocked him in.  *Id.*  Cisneros put his truck back in park and lowered his driver's side window.  *Id.*  Two men in Border Patrol uniforms approached his window, and one of the men asked Cisneros if he had papers and was here legally.  *Id.* at ¶¶ 4-5.  Cisneros did not answer.  *Id.* at ¶ 5.  After Cisneros exercised his right to remain silent, Cisneros voluntarily gave one of the agents his driver's license, and one of the agents walked back to the Tahoe with his license.  *Id.*  When the agent returned, he told Cisneros he was in the United States illegally and arrested him.  *Id.* at ¶¶ 5-6.  Cisneros was transported to a detention facility in El Centro and, on January 10, 2025, provided with a monitoring device and released.  *Id.* at ¶¶ 9, 18-19.

2

**B.    Proposed Representative Wilder Munguia Esquivel**

On January 7, 2025, Border Patrol stopped and detained Wilder Munguia Esquivel ("Esquivel") around 12:00 p.m., while he was outside of a Home Depot in Bakersfield, CA, standing with a group of other day laborers, when several unmarked vehicles pulled up and at least ten plain-clothed men, most wearing masks covering all but their eyes, exited the vehicles and aggressively "swarmed around us." *See* ECF No. 15-10 ("Esquivel Decl.") ¶¶ 4-5.  One of the men asked Esquivel about his status—"Do you have papers?  Do you have identification?  Where are you from?"  *Id.* at ¶ 5.  When Esquivel did not answer, the man asked again, but louder, and then asked again, louder still.  *Id.*  Esquivel turned away from the man and walked away.  *Id.*  The man followed Esquivel, continuing to ask Esquivel questions.  *Id.*  Esquivel did not respond, and the man ordered Esquivel to stop.  *Id.*  Esquivel realized the man was a federal immigration agent and stopped, telling the agent "I have the right to remain silent."  *Id.* at ¶¶ 5-6. The agent asked Esquivel for identification and ordered him to take out his wallet. *Id.* at ¶ 6. Before Esquivel could comply, the agent removed the wallet from Esquivel's back pocket, looked through it, and arrested him.  *Id.* at ¶¶ 7-9.

**C.    Proposed Representative Yolanda Aguilera Martinez**

On January 8, 2025, Border Patrol stopped and detained Yoland Aguilera Martinez ("Martinez") during a vehicle stop in Bakersfield, CA around 4:30 pm. *See* ECF No. 15-11 ("Martinez Decl.") ¶ 4. Martinez was driving to a doctor's appointment when she saw two vehicles, one with flashing police lights, pulled over to the right side of the road with three men standing near the vehicles.  *Id.* ¶¶ 4-5. The men were in plain-clothes, but with holstered firearms, and one of the men raised his hand and flagged Martinez to pull over her vehicle.  *Id.*  Martinez pulled over, and the man who flagged Martinez down approached her window and asked about her immigration status.  *Id.* at ¶ 6.  Martinez produced a driver's license, but the man questioned its authenticity.  *Id.* at ¶ 6.  The man placed handcuffs on Martinez and took her to his vehicle.  *Id.* at ¶ 7.  After Martinez produced an image on her phone of her green card and showed it to the agents, the agents released her.  *Id.* at ¶ 10.  Martinez alleges to be a Lawful Permanent Resident ("LPR").  *Id.* at ¶ 2.

3

1

2          **2.      *Additionally Named and Unnamed Plaintiffs.***

Plaintiffs additionally identify other Plaintiffs in their Complaint. Specifically, Plaintiffs'

3   Complaint identifies Juan Vargas Mendez and Maria Guadalupe Hernandez Espinoza, who are named

4   Plaintiffs, in the caption of the Complaint. *See generally* ECF No. 1. The Complaint also references

5   other unnamed Plaintiffs such as Jesus Ramirez, Ernesto Campos Gutierrez, and Luis Perez Cruz. *See,*

6   *e.g.*, ECF No. 1, Compl., at 37-42. These additional named and unnamed Plaintiffs have attached

7   declarations relating to the allegations raised in Plaintiffs' Complaint. ECF Nos. 15-4 through 15-8. It

8   is important for the Court to consider the declarations of these Plaintiffs to verify whether the proposed

9   class representatives adequately represent the class as a whole. *Melendres v. Arpaio*, 784 F.3d 1254, 1261

10  (9th Cir. 2015) ("Class certification . . . is meant to ensure that named plaintiffs are adequate

11  representatives of the unnamed class."). Below are summaries of the allegations of these additional

12  Plaintiffs.[2]

13         **A.      Named Plaintiff Juan Vargas Mendez**

14         On January 8, 2025, at approximately 5:00 p.m., Juan Vargas Mendez ("Mendez") was driving

15  with five of his coworkers in a van when an SUV with flashing lights pulled the van over. *See* ECF No.

16  15-6 ("Mendez Decl.") ¶¶ 4-5. Mendez described the people who pulled the van over as four people

17  wearing regular clothing. *Id*. at ¶ 6. Mendez stated one of the men approached the van and demanded

18  that the driver and front passenger show their license and proof of residency. *Id*. at ¶ 7. He further states

19  that as the agent was reviewing the identifications, two other agents opened the van door without consent

20  from any of the passengers and shouted for identification. *Id*. at ¶ 8. Mendez alleges he did not show his

21  identification to the agent because he was not carrying it with him. *Id*. at ¶ 9. Mendez alleges the agents

22  arrested him without telling him the reason for his arrest and without a warrant. *Id*. at ¶10. Eventually,

23  one of the agents told Mendez that he was arrested because he was in the United States illegally and that

24  he would be deported. *Id*. ¶15. Mendez claims he signed his name on a pad provided to him by Border

25  Patrol agents, but he did not understand what he was signing. *Id*. at ¶ 19. On January 9, 2025, Mendez

26

27         [2] The United Farm Worker Plaintiffs are "Alicia," "Benjamin," "Carlos," and "Fernando" who

28  are using pseudonyms. *See e.g.*, ECF No. 1 at ¶ 327. These Plaintiffs have not provided their
    declarations. Thus, Defendants do not provide summaries for them here.

departed the U.S. to Mexico under an order of Voluntary Departure pursuant to the form he signed.  *Id.* ¶¶ 19-20.

**B.    Named Plaintiff Maria Guadalupe Hernandez Espinoza**

On January 7, 2025, Maria Guadalupe Hernandez Espinoza ("Espinoza"), her coworker, and her partner were driving together on CA-58.  *See* ECF No. 15-8 ("Espinoza Decl.") ¶ 4.  Espinoza's partner was driving a vehicle registered in his name, and without any "stickers or decals."  *Id.*  She alleges her partner was getting ready to exit when the car was approached from behind by an unmarked white Ford pickup truck, and the truck flashed its lights and turned on its siren.  *Id.*  She alleges a man ordered her partner to exit the vehicle without the man identifying himself, presenting a warrant, or asking any questions.  *Id.* at ¶ 5.  The agents also searched the car without consent.  *Id.* at ¶ 8.  She alleges one of the agents asked her for identification, which she did not show because she was not carrying it.  *Id.* at ¶ 7.  The agents did not arrest Espinoza but put her into the back seat of the white Ford truck.  *Id.* at ¶ 9.  Espinoza alleges she "impulsively" agreed to voluntary departure.  *Id.* at ¶ 14.  She signed her name on a small digital device without seeing the documents she was signing.  *Id.* at ¶ 18.  On January 9, 2025, Espinoza departed the U.S. to Mexico under an order of Voluntary Departure. *Id.* ¶¶ 14, 20.

**C.    Plaintiff Jesus Ramirez**

On January 7, 2025, Border Patrol stopped and detained Jesus Ramirez ("Ramirez") at a Home Depot in Bakersfield, CA around 11:00 am.  *See* ECF No. 15-5 ("Ramirez Decl.") ¶ 4.  Ramirez stated he knew he was stopped by Border Patrol agents because they had badges on their vest.  *Id.*  He alleges the agents arrived in multiple vehicles and some of them had sirens."  *Id.*  Ramirez alleges the Border Patrol agents demanded that "we"[3] show "our" papers.  *Id.* at ¶ 5.  He asserts one of the agents snatched his wallet, took and retained his identification from the wallet, and returned the wallet to him.  *Id.*  He states the agent did not have a warrant.  *Id.* at ¶ 7.  He states that he was loaded into a vehicle with several other people.  *Id.* at ¶ 8.  He states that he was detained for 7 or 8 hours at a makeshift processing station.  *Id.* at ¶ 10.  He states a Border Patrol agent at El Centro ordered him to sign a document, which was in English—a language that he does not understand.  *Id.* at ¶ 12.  On January 9, 2025, Ramirez was moved

---

[3] Ramirez did not specifically state who was with him when he was stopped by Border Patrol.

1  from El Centro into an ICE Detention center where he asserts he remains as of the time of his February

2  13, 2025, declaration. *Id*. at ¶¶ 13, 14.

3      **D.    Plaintiff Ernesto Campos Gutierrez**

4      Ernesto Campos Gutierrez ("Gutierrez"), a United States citizen, and his passenger, were stopped

5  by Border Patrol on January 8, 2025, during a vehicle stop. *See* ECF No. 15-4 ("Gutierrez Decl.") ¶¶ 2,

6  3. He states he was driving in Bakersfield, CA around 9:40 a.m. on his way to a gardening job. *Id*. at ¶

7  3. He asserts the vehicle he was driving is registered in his name and has no "stickers or decal." *Id*. at ¶

8  3. He also asserts he was driving within the speed limit. *Id*. Gutierrez states that an unmarked, white

9  Chevrolet Tahoe followed him when the Tahoe turned on flashing lights and signaled for him to pull

10  over. *Id*. at ¶ 4. He stated that an agent wearing a vest with the word "POLICE" approached his driver's

11  side door and asked for his identification and his keys. *Id*. at ¶¶ 4-5. Gutierrez asserts that he provided

12  the agent with his identification, but he did not give the agent his keys. *Id*. at ¶ 5. He asserts the agent

13  then slashed his tires with a knife, and another agent blocked his truck by parking in front of his vehicle.

14  *Id*. at ¶¶ 6-7. Gutierrez alleges another agent arrived and stated he was under arrest for "alien smuggling"

15  *Id*. at ¶ 9. Gutierrez alleges the agent did not have a warrant or explain why he stopped him. *Id*. at ¶ 4.

16  He alleges the agents detained him for four hours and then drove him to his home and dropped him off.

17  *Id*. at ¶ 13.

18      **E.    Plaintiff Luis Perez Cruz**

19      On January 7, 2025, Border Patrol stopped and detained Luis Perez Cruz ("Cruz") at a Home

20  Depot. ECF No. 15-7 ("Cruz Decl.") ¶ 3. He stated that he ran into two of his cousins, and he began

21  chatting with them when two men wearing civilian clothing approached them. *Id*. Cruz asserts that the

22  two men identified themselves as Border Patrol agents and demanded his identification showing that he

23  had legal status in the United States. *Id*. Cruz asserts that he remained silent, and one of the agents then

24  grabbed him by the hand and arrested him. *Id*. He states that the agents put him in a truck and transported

25  him in a van along with other people. *Id*. at ¶ 5. He states that they took him to a holding center in El

26  Centro, CA. *Id*. Cruz asserts the agents tried to make him sign documents without showing him what he

27  was signing, but Cruz refused to sign them. *Id*. at ¶ 6. He asserts the agents eventually gave him a wrist

28  monitor and documents pertaining to immigration court, and released him into a shelter in Calexico. *Id*.

6

**ARGUMENT**

As an initial matter, a motion to certify a class should be denied when Plaintiffs do not have standing to seek injunctive relief. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978-79 (9th Cir. 2011). "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision.'" *Id.* at 978 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To meet these requirements, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 979. If Plaintiffs cannot demonstrate standing to seek injunctive relief, then the motion to certify the class should be denied. *Id.* at 978 (explaining that in a class action, Plaintiffs have the burden to prove standing exists).

A motion to certify a class should also be denied when the proposed class is a fail-safe class. That is, a class that is defined in a way that precludes membership unless liability of the defendant is established. *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). "[O]nce it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Id.* Such classes are impermissible and would make it impossible for the defendants to comply with the notice requirements set forth in Fed. R. Civ. P. 23(c)(2). *Id.*; *see also Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) (where the court held fail-safe classes are impermissible because they define a class in such a way that "the class members either win or are not in the class" thus "the Court cannot enter an adverse judgment against the class."). Furthermore, the proposed class cannot be impermissibly overbroad. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016).

Assuming Plaintiffs have standing, the proposed classes are not fail-safe, and the proposed classes are not impermissibly overbroad, a party seeking class certification must also satisfy the four elements of Fed. R. Civ. P. 23(a), which provides that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are common questions of law and fact, (3) the representative party's claims or defenses are typical of the class claims or defenses, and (4) the representative party will fairly and adequately protect the class

7

interests.

*Justus v. Doerer*, No. 1:25-CV-00138-JLT-SAB (PC), 2025 WL 811145, at *1 (E.D. Cal. Mar. 13, 2025) (citing Fed. R. Civ. P. 23(a)). "The court must verify the putative class's 'actual, not presumed, conformance with Rule 23(a) . . . .'" *Gutierrez v. Webcollex, LLC*, No. 2:23-CV-00988 AC, 2024 WL 4527329, at *2 (E.D. Cal. Oct. 18, 2024) (quoting *Gen. Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). These class certification requirements are generally "intimately involved with the merits of the claims," and "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis*, 657 F.3d at 980-81 (emphasis in original). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Jones v. Tirehub LLC*, No. 2:21-CV-0564 DB, 2024 WL 2132611, at *4 (E.D. Cal. May 13, 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

In addition to satisfying the requirements set forth under Fed. R. Civ. P. 23(a), the party seeking certification must also satisfy one of the elements of Fed. R. Civ. P. 23(b). *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co*., 593 F.3d 802, 806 (9th Cir. 2010). "Rule 23(b) provides that

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . [.]

*ConocoPhillips Co*., 593 F.3d at 806. Here, Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(2) because they seek a single preliminary injunction for the Proposed Classes. *See* ECF No. 14-1

at 2; *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 812 (9th Cir. 2020) ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). Thus, Plaintiffs must prove that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 966 (9th Cir. 2019) (quoting Fed. R. Civ. P. 23(b)(2)); *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010) ("The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.").

Failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975). "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Here, the Proposed Classes do not satisfy any of the requirements of Fed. R. Civ. P. 23(a) nor do they satisfy the requirements of Fed. R. Civ. P. 23 (b)(2).

## I.    Plaintiffs' Motion to Certify their Proposed Classes Should be Denied Because They Lack Standing to Seek Injunctive Relief.

As stated above, in order to have standing to certify a class, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Ellis*, 657 F.3d at 979. Here, even assuming the allegations raised in Plaintiffs' complaint are true—which Defendants do not concede—Plaintiffs lack standing because they cannot demonstrate any sufficient likelihood that they will be wronged again in a similar way because the issues raised in their Complaint have been resolved. On April 4, 2025, USBP's El Centro Sector issued policy and guidance and committed to providing training thereon. *See* Ex. A ("Muster"); *see also* Ex. B (Declaration of Sergio Guzman). This Muster is in all material respects identical to the Broadcast issued in *Castanon Nava*. *Compare* El Centro Muster, Exhibit ("Ex.") A, *with* Complaint Appendix A. The Muster contains guidance on the requirement for reasonable suspicion for traffic stops conducted throughout the Eastern District of California, guidance on assessing flight risk using factors such as "family, home, or employment" (that is, community ties), and guidance on documenting the facts and circumstances surrounding a warrantless arrest in an alien's Form I-213 as

9

soon as practicable. *See* Ex. A; ECF No. 1, Compl. at ¶ 278 (stating USBP should provide its officers guidance on the requirement for reasonable suspicion for traffic stops in the interior, away from the border, and guidance on assessing flight risk using factors such as "family, home, or employment," that is, community ties). El Centro USBP is moreover taking steps to implement training on the Muster. *See* Ex. B. USBP will endeavor to conduct training sessions to ensure compliance with the Muster within 60 days for the more than 900 El Centro Border Patrol Agents, supervisors, and command staff on report writing, compliance with the Fourth Amendment and 8 U.S.C. § 1357, and compliance with Supreme Court and Ninth Circuit law on conducting vehicle stops, consensual encounters, and warrantless arrests. *See* Ex. B. at ¶¶ 13-19. Accordingly, in light of these actions and commitments, Plaintiffs cannot demonstrate any sufficient likelihood that they will be wronged again in a similar way. *Ellis*, 657 F.3d at 979. Thus, this Court should deny Plaintiffs' motion to certify the Proposed Classes because they lack standing to seek injunctive relief.[4]

## II. Plaintiffs' Proposed Classes Cannot be Certified Because They are Impermissibly Defined as "Fail-Safe" Classes, and the "Warrantless Arrest Class" is Impermissibly Overbroad.

As referenced above, the Proposed Classes are called the "Suspicionless Stop Class" and the "Warrantless Arrest Class." ECF No. 14-1 at 2. Membership in the "Suspicionless Stop Class" depends on whether Plaintiffs can prove the Defendants had a practice of conducting stops without warrants and without an individualized assessment of reasonable suspicion for an individual. Membership in the "Warrantless Arrest Class," on the other hand, broadly depends on whether Plaintiffs can prove that Defendants has arrested or will arrest an individual without a warrant in this district. *Id*.

The Proposed Classes are prime examples of impermissible "fail-safe" classes because they can only be certified upon a determination of the merits. Because proving that Defendants are liable is necessary in order to have membership in either the "Suspicionless Stop Class" or the "Warrantless Arrest Class," this Court must deny Plaintiffs' motion for provisional class certification because the Proposed Classes are "fail-safe" classes. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n. 7 (9th Cir.

---

[4] To the extent that the Court believes that unresolved issues remain, Defendants are amenable to a stay of the litigation to explore resolution of the remaining issues without further litigation or intervention of the court.

2016) (explaining that a "fail-safe" class is defined so narrowly that it "precludes membership unless the liability of the defendant is established.") (quoting *Kamar*, 375 Fed. Appx. at 736); *Tinnin v. Sutter Valley Med. Found.*, 647 F. Supp. 3d 864, 874 (E.D. Cal. Dec. 27, 2022) (same).

The "Warrantless Arrest Class" should also not be certified because it is impermissibly overly broad. "[P]ursuant to Rule 23, the court's task at certification is to ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.'" *Ruiz*, 835 F.3d at 1138. Arresting someone without a warrant is not necessarily unlawful conduct. *United States v. Shepherd*, No. 2:24-CR-00083-DJC-1, 2024 WL 4931677, at *5 (E.D. Cal. Dec. 2, 2024) ("To justify an arrest [without a warrant], officers must have probable cause based on the facts available to them at that time for the arrest."). Because the "Warrantless Arrest Class" may include some lawful arrests and may thus include a great number of members who could not have been harmed, this class is impermissibly overbroad. *See Gonzales v. Comcast Corp.*, No. 10-CV-01010-LJO-BAM, 2012 WL 10621, at *20 (E.D. Cal. Jan. 3, 2012), *report and recommendation adopted*, No. 1:10-CV-01010-LJO, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012) (finding plaintiffs' class definitions are overbroad, as it included class members who were never injured by defendants' conduct).

### III.    Plaintiffs Have Not Satisfied Their Burden to Demonstrate Numerosity.

Numerosity requires the Court to determine whether the class is so numerous that it would make joinder impracticable, Fed. R. Civ. P. 23(a)(1), which "depends on the facts and circumstances of each case." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). "Generally, the numerosity factor is satisfied if the class comprises 40 or more members and courts will find that it has not been satisfied when the class comprises 21 or fewer." *McCurley v. Royal Seas Cruise, Inc.*, 331 F.R.D. 142, 167 (S.D. Cal. 2019) (cleaned up).

Here, the Proposed Classes, as defined by Plaintiffs, are not so numerous that they render "joinder of all members [] impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs aver that each class is currently comprised of "*at least* dozens of people"; that Border Patrol arrested 78 people in Kern or Tulare counties between January 7 and January 10, 2025; and that the classes "consist of *numerous future* class members who will be subjected to the challenged practices or patterns." ECF No. 14-1 at 10 (original and added emphasis). However, Plaintiffs do not attempt to even estimate the number of aliens who will

prospectively be "subjected to [BP's] challenged practices or patterns." *Id.* Plaintiffs point to only a dozen[5] examples in which the proposed class representatives claim justify certification of a class. *See* ECF Nos. 1; 14-1. Furthermore, Plaintiffs' motion for provisional class certification does not clearly specify which Plaintiffs—among the 12 in which they have provided examples—would represent each proposed class. Plaintiffs here have failed to show that 12 investigative stops and arrests are indicative of a "systemic" problem justifying a class, or why joinder of all known members of the class is impracticable. ECF No. 15-1 at 21; *see* Fed. R. Civ. P. 23(a)(1). Plaintiffs have thus failed to meet the numerosity requirement.

## IV.    Plaintiffs Cannot Identify a Common Question That Would Drive Resolution of This Litigation.

Even if the proposed putative classes satisfied the numerosity requirement, Plaintiffs have not established that there is a common question capable of providing common answers across the Proposed Classes. To satisfy Fed. R. Civ. P. 23(a)(2)'s commonality requirement, the proposed class members must "have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. This does not mean that class members merely "suffered a violation of the same provision of law" or raise some common questions. *Id.*; *Ellis*, 657 F.3d at 981 ("[I]t is insufficient to merely allege any common question . . . ."). Rather, class members' claims must depend upon a common contention, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Although "[t]he existence of shared legal issues with divergent factual predicates" can establish commonality, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), where a plaintiff alleges that there is a "common pattern and practice that could affect the class *as a whole*," plaintiffs must provide evidence that the common policy or practice actually exists; otherwise, there is "no question common to

---

[5] The dozen of Plaintiffs are the three proposed class representatives, the two named Plaintiffs, the three unnamed Plaintiffs, and the four representatives of the United Farm Workers. *See supra* at 6.

12

the class." *Ellis*, 657 F.3d at 983 & n.7 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 355-56)); *see also Lightfoot v. D.C.*, 273 F.R.D. 314, 326 (D.D.C. 2011) (commonality cannot be established by identifying "a constellation of disparate but equally suspect [alleged] practices . . . distilled from the varying experiences of the class" and then asking the court to enjoin them all as a "policy or custom[.]").

The Proposed Classes lack commonality for three reasons. *First*, the evidence belies Plaintiffs' argument that a systemic policy, pattern, or practice in violation of the Fourth Amendment and 8 U.S.C. § 1357 exists, or that such pattern or practice occurred during "Operation Return to Sender." *See, e.g.*, ECF Nos. 1 at 62-63; 15-1 at 21. Plaintiffs aver that "all class members in each Proposed Class are bound together by common questions of fact and law focused on the nature of Border Patrol's policies or practices and whether those policies or practices are unlawful." ECF No. 14-1 at 8. However, this justification is an insufficient basis for establishing commonality under Fed. R. Civ. P. 23(a)(2). The Supreme Court has held that a class action "may only be certified if the trial court is satisfied, after *rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161 (emphasis added). In *Falcon*, a district court certified a class in a plaintiff-employee's Title VII action against his employer where the plaintiff claimed, without offering any evidence, that the company had a policy of racial discrimination. *Id.* at 149-52. The Court of Appeals for the Fifth Circuit affirmed the class certification. *Id.* at 147. The Supreme Court, however, reversed the Court of Appeals order affirming the class certification and held that there was "a wide gap" between (1) an individual claim of discrimination and an unsupported allegation that a company had a policy of discrimination, and "(2) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact." *Id.* at 157. Same here. As in *Falcon*, Plaintiffs' unsupported allegations of Border Patrol's unlawful policies or practices are insufficient absent a rigorous analysis of those claims, particularly because, as described below, whether Border Patrol agents have reasonable suspicion to effectuate investigative stops and probable cause to effectuate arrests is an inherently fact-specific and individualized inquiry. *See Rodriguez*, 976 F.2d at 595; *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1008 (N.D. Ill. 2016).

In fact, the differences surrounding each alien's stop and arrest go to the heart of whether USBP actually has a common practice or policy to begin with. And the evidence of differing individual

circumstances negate a finding of a systemic practice or policy.  Also, the factual differences surrounding each encounter would be material to the resolution of the claim because they affect the inquiry into whether USBP has failed to comply with the Constitution and pertinent statutes and regulations.  *See B.K. v. Snyder*, 922 F.3d 957, 976-78 (9th Cir. 2019) (finding district court abused discretion in certifying subclass on theory of failure to comply with the Medicaid statute where it was not clear that the elements of the claim could be evaluated on a classwide basis).

*Second*, the Proposed Classes definitions simply cannot address the many factors that are involved in making an assessment of probable cause and flight risk.  This is because, as noted above, assessing "reasonable suspicion" is a singularly discretionary determination based on the unique circumstances of each stop.  *Rodriguez*, 976 F.2d at 595 ("Reasonable suspicion is an individualized inquiry that must be founded upon a particularized and objective basis for suspecting the particular person stopped.").

In the cases of the proposed class representatives and the other named Plaintiffs, there are various facts and circumstances concerning each alleged detention.  For instance, some Border Patrol agents were wearing plain clothes and some were wearing uniform.  *E.g., compare* Mendez Decl. ¶ 6 stating that the Border Patrol agents were wearing plain clothing *with* Gutierrez Decl., ¶ 4, which states the Border patrol agent was wearing a vest that said "POLICE."  Another example is that some of the individuals who were detained presented the Border Patrol agents with identification whereas some individuals did not.  *E.g., compare* Mendez Decl. ¶ 9 (where Mendez states he did not present his identification) *with* Ramirez Decl. ¶ 7 (where Ramirez asserts the Border Patrol agent took his identification).  Furthermore, some of the individuals were detained for several hours or days whereas other individuals were released at the site of the alleged detention.  *E.g., compare* Ramirez Decl. ¶ 10 (where he asserts he was detained for seven or eight hours) *with* Martinez Decl. ¶ 10 (where Martinez states she was released after she presented her green card to the agents).  *Fourth*, some of the individuals who were detained allege that they were being detained for being in the United States without any legal status where at least one individual was told he was being detained because of a crime.  *Compare* Cisneros Decl. ¶¶ 5-6 (where Cisneros asserts the agent stated the agent arrested him after telling him that he was in the United States illegally) *with* Gutierrez Decl., ¶ 9 (where Gutierrez states the agent detained him for "alien smuggling").  Similarly, some of the individuals were stopped while driving in a vehicle while other individuals were stopped while at a Home

14

Depot.  *Compare* Cisneros Decl., ¶ 5-6 (where he states he was stopped while in a vehicle) *with* Esquivel Decl., ¶¶ 4-5 (where he states he was stopped at a Home Depot).

Assessing the reasonableness of each of these separate stops and encounters is an individualized determination, and class actions are antithetical to individualized determinations.  *See, e.g.*, *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 142 (N.D. Cal. 2021) ("Determining Uber's liability for wages cannot be determined on a class-wide basis and individualized determinations would be complex and manifold.").  Class actions are instead for common questions of fact and injury, *see* Rule 23(a)(2)-(3), and the different fact patterns for each of the proposed class representatives and named Plaintiffs that may or may not show injury, underscores the unsuitability of challenging USBP's operation between January 7, 2025, and January 9, 2025, in a class action and, conversely, why Congress channeled these types of claims into separate petitions for review.  *See Olean Wholesale Grocery Coop., Inc., v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.15 (9th Cir. 2022) (cautioning against certifying a class which circularly depends upon, or does not exist without, proving the injury).  Indeed, the lack of commonality between the investigative stops in this case overlaps with the merits of Plaintiffs' claim and undermine Plaintiffs' claim that USBP engaged in a pattern or practice of unlawful stops.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 348.

The Proposed Classes also lack commonality because members will have widely varying fact patterns regarding the circumstances of their investigative stops and warrantless arrests.  Some will undoubtedly be detained following traffic stops/tactical checkpoints or consensual stops, like Martinez and Cisneros, respectively.  *See* ECF Nos. 15-11 (Martinez Decl.); 15-9 (Cisneros Decl.).  Others, like Gutierrez, may have been detained following collateral arrests during operations related alien smuggling (Gutierrez Decl. ¶ 9).  This is because the determination of whether an alien is a flight risk and whether there is probable cause are inherently individualized determinations.  *See Moreno*, 213 F. Supp. 3d at 1008 (describing the necessity of individualized determinations of flight risk); *see also Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020) (noting that "we have no doubt that '[t]he constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of [an] individual case[.]'") (quoting *Sibron v. New York*, 392 U.S. 40, 58 (1968)).  The Proposed Classes also fail because class members will have widely varying fact patterns regarding familial ties, employment status, and other community connections.  All of these

1    factors are important to the flight risk determination.  Thus, the lack of commonality of the Proposed
2    Classes defeats class certification.

3         Plaintiffs argue that "[t]he existence of shared legal issues with divergent factual predicates is
4    sufficient," *Gonzalez*, 975 F.3d at 807 (quotation marks and citation omitted), and  that "where the
5    circumstances of each particular class member vary but retain a common core of factual or legal issues
6    with the rest of the class, commonality exists[,]" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).
7    ECF No. 14-1 at 17.  However, as discussed above, Plaintiffs have not shown that there exists a common
8    core of factual or legal issues here because of the inherently subjective nature of the assessment of
9    probable cause and flight risk.  *Gonzales* is distinguishable because the district court found, and the Ninth
10   Circuit affirmed, that the Probable Cause subclass plaintiffs sought to certify was based on the core issue
11   of whether ICE "has an 'unlawful policy to base probable cause determinations on only a check of an
12   online database.'"  *Id.* at 808.  Thus, in *Gonzales*, the class was sufficiently common because the probable
13   cause determination was pegged solely to the checks of online database.  975 F.3d at 808 ("Because the
14   class is defined as those individuals against whom ICE issued a detainer based solely on searches of
15   electronic databases, ICE's policy of making probable cause determinations based solely on such searches
16   is the 'glue' that holds the class together."); *Parsons v. Ryan*, 754 F.3d at 678 (explaining that the "policy
17   and practices . . . to which all members of the class are subjected . . . are the 'glue' that holds together the
18   putative class and the putative subclass; either each of the policies and practices is unlawful as to every
19   inmate or it is not.").  Not so here.  As explained, the determination of probable cause relevant to both
20   the stop and arrest proposed putative classes, is a fact-specific, individualized inquiry which negates
21   commonality.

22        In sum, the Proposed Classes encompass a broad range of individuals with differing unique set of
23   circumstances as bases for their claims.  Plaintiffs have thus not met their burden to show that common
24   questions predominate to provide common answers.

25   **V.    The Named Plaintiffs' Claims or Defenses Are Not Typical of the Putative Class.**

26        Typicality requires a party to show that "the claims or defenses of the representative parties are
27   typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This requirement "assure[s] that
28   the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land*

*Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation omitted). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Falcon*, 457 U.S. at 156. A named plaintiff does not satisfy the typicality requirement when his "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiffs have not shown that the claims of the proposed class representatives or other named Plaintiffs are typical of the members of the Proposed Classes. Plaintiffs assert that "the claims of Individual Plaintiffs are typical of those of the members of the Proposed Classes, because they all arise from Border Patrol's illegal immigration policies, practices, or patterns pertaining to suspiciousness stops and warrantless arrests in this District." ECF No. 14-1 at 13. They argue that "[t]he fact that some putative class members experienced different *outcomes* flowing from Border Patrol's unlawful actions because of their differing immigration status does not defeat typicality because *all* class members have suffered, or will suffer, the same harms,"—namely, unlawful stop or arrest. *Id.* (original emphasis). This argument does not withstand scrutiny. As discussed above, the asserted harms here are inexplicably intertwined with wildly differing underlying factual circumstances necessary to the determination of probable cause and flight risk. For instance, all three proposed class representatives provided the agents with their identification. *See* Cisneros Decl. at ¶ 5, Esquivel Decl. at ¶¶ 7-9, Martinez Decl. at ¶¶ 6,12. In contrast, the other Plaintiffs did not provide their identification to the agents. Mendez Decl. at ¶ 9, Espinoza Decl. at ¶ 7. This alone shows that the proposed putative classes representatives' claims or defenses cannot be typical of the members of the Proposed Classes.

Indeed, the Proposed Classes lack typicality for the same reasons they lack commonality: The proffered classes definitions cannot address the many factors that are involved in making an individualized assessment of probable cause and flight risk. This is because an individualized assessment is a necessary component for determining whether class members have the same or similar injury: *unlawful* stop and arrest. For example, a flight risk determination may include factors such as whether

17

1    individuals are eligible for relief from removal, have criminal convictions which bar them from relief, or

2    have final removal orders or have been previously removed, in addition to the circumstances of their

3    warrantless arrests.  Because these individualized circumstances are relevant to a court's consideration

4    of whether class members share similar injury—because they are necessary to the probable cause and

5    flight risk analysis—Plaintiffs proposed putative classes fail to meet the typicality requirement.

6    **VI.    The Named Plaintiffs are Not Shown to Be Adequate Representatives.**

7        Plaintiffs have also not presented evidence that the three proposed class representatives would

8    "fairly and adequately protect the interests of the class."  *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir.

9    2023) (quoting Fed. R. Civ. P. 23(a)(4)).  The nature of class certification under Fed. R. Civ. P. 23(b)(2)

10   amplifies the need to confirm the commitment of the class representatives, because members of a Rule

11   23(b)(2) class are not afforded the right to opt out of the class and are bound by any judgment.  *See*

12   *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995)

13   ("In a Rule 23(b)(2) class action for equitable relief, the due process rights of absent class members

14   generally are satisfied by adequate representation alone.").

15       The three proposed class representatives and other named Plaintiffs here will fail to fairly and

16   adequately protect the class interests because, like the discussion in the commonality and typicality

17   requirements, the Proposed Classes encompass a broad range of individuals with different factual bases

18   for their claims, different avenues of possible relief, etc.  As an example, Plaintiffs cannot fairly and

19   adequately protect the interests of those arrested in different circumstances from their own, such as those

20   arrested as a result of anti-human trafficking or alien smuggling operations, worksite enforcement, those

21   arrested at a border or airport attempting to unlawfully enter the United States, or those aliens who entered

22   the United States lawfully but illegally overstayed a visa.  Put simply, claiming a few examples of

23   allegedly unlawful stops and arrests is insufficient to justify a case proceeding as a class action.

24   **VII.    Plaintiffs Cannot Satisfy the Requirements for an Injunctive-Relief Class Under**
25   **Rule 23(b)(2).**

26       Under Fed. R. Civ. P. 23(b)(2), Plaintiffs must demonstrate that Defendants have "acted or refused

27   to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

28   declaratory relief is appropriate respecting the class as a whole."  These requirements cannot be met.

First, because there is no pattern and practice of failure to comply with the Fourth Amendment's probable cause requirements and 8 U.S.C. § 1357 flight risk assessment, Plaintiffs cannot show that the government has "acted or refused to act on grounds that apply generally to the class." *Id.*

Classwide relief would not be appropriate. This is because, again, each alien presents a unique set of circumstances. As demonstrated by the declarations Plaintiffs submitted with their Complaint, the type of alleged harm resulting from the warrantless detention differs from person to person on the basis of each person's individual circumstances. Thus, each alien detained by USBP has a unique set of circumstances and unique avenues for seeking relief. Some will undoubtedly apply for immigration relief including asylum and cancellation of removal. *See, e.g.*, *Morales v. Bondi*, No. 23-274, 2025 WL 763479, at *2 (9th Cir. Mar. 11, 2025) (citing *Jara-Navarrete v. I.N.S.*, 813 F.2d 1340, 1342 (9th Cir. 1986) showing that an individual may seek cancellation of removal if the alien can show eligibility including but not limited to extremely and unusual hardship)). Of those, some may have plausible claims that may lead to relief in the near future. Others may have criminal convictions that may bar them from relief and require their detention without bond under 8 U.S.C. § 1226(c). *Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013) (stating that 8 U.S.C. § 1226 "subjects certain aliens who are deportable or inadmissible on account of their criminal history to mandatory detention pending proceedings to remove them from the United States.").

For all these reasons, classwide relief is not suitable for making Plaintiffs whole, and Plaintiffs therefore have not satisfied Rule 23(b)(2). For certification under Rule 23(b)(2), Plaintiffs must show that "relief is available to the class as a whole" and that the challenged conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.

These widely differing circumstances belie Plaintiffs' argument that highly individualized questions regarding the encounters can be characterized as actions or a refusal to act generally applicable to the class as a whole. Because Plaintiffs fail to allege a specific act or refusal to act applicable to the class as a whole, injunctive relief on a classwide basis is inappropriate.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for provisional class certification.

1

2   DATED:     April 7, 2025            Respectfully Submitted,

3                             YAAKOV M. ROTH
Acting Assistant Attorney General
4                             United States Department of Justice
Civil Division
5

6                             MICHELLE G. LATOUR
Acting Director
7                             Office of Immigration Litigation

8                             SAMUEL P. GO
Assistant Director
9                             NYS Bar No. 4234852
10                          U.S. Department of Justice
Civil Division
11                          Office of Immigration Litigation
General Litigation and Appeals Section
12                          Ben Franklin Station PO Box 878
Washington, DC 20044
13                          Tel.: (202) 353-9923
14                         Fax: (202) 305-7000
Email: Samuel.Go@usdoj.gov
15

16                          MARY LYNN LARAKERS
Senior Litigation Counsel
17                        United States Department of Justice Civil Division
Office of Immigration Litigation
18                        P.O. Box 878
Washington, DC 20044
19                      Tel.: (202) 353-4419
20                      Fax: (202) 305-7000
Mary.L.Larakers@usdoj.gov
21

22                        OLGA Y. KUCHINS
Trial Attorney
23                      United States Department of Justice
Civil Division
24                      Office of Immigration Litigation
General Litigation and Appeals Section
25                      P.O. Box 878, Ben Franklin Station
Washington, DC 20044
26                      Tel.: (771) 202-1392
27                      Fax: (202) 305-7000
Email: Olga.Y.Kuchins@usdoj.gov
Bar No. 312901
28

By: */s/ Carolyn D. Dillard*
      CAROLYN D. DILLARD
      Trial Attorney
      United States Department of Justice
      Civil Division
      Office of Immigration Litigation
      General Litigation and Appeals Section
      P.O. Box 878, Ben Franklin Station
      Washington, DC 20044
      Tel.: (202) 514-7013
      Fax: (202) 305-7000
      Email: Carolyn.D.Dillard@usdoj.gov
      MI Bar No. P78090

      *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

On April 7, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of California, using the electronic case filing system of the Court. I hereby certify that I have served counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Carolyn D. Dillard*
CAROLYN D. DILLARD
Trial Attorney
