BRETT A. SHUMATE
Assistant Attorney General
Civil Division
SAMUEL P. GO
Assistant Director
MARY L. LARAKERS
Senior Litigation Counsel
TIM RAMNITZ
Senior Litigation Counsel
OLGA Y. KUCHINS
Trial Attorney
CAROLYN D. DILLARD
P78090 (MI Bar No.)
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-514-7013

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al., | No. 1:25-cv-00246-JLT-CDB |
| Plaintiffs, | **DEFENDANTS'MOTION TO DISMISS AND MEMORANDUM IN SUPPORT PURSUANT TO FED. R. CIV. P. 12(b)(1) and (b)(6)** |
| v. | |
| KRISTI NOEM, Secretary of the United States Department of Homeland Security, et al., | Date: August 25, 2025 Time: 9:00 a.m. Place: Courtroom 4, 7th Floor Judge: Hon. Jennifer L. Thurston |
| Defendants. | |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................ IV

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

LEGAL BACKGROUND .................................................................................................. 4

    A.    Reasonable Suspicion……………………………………………………4

    B.    Warrantless Arrests ................................................................................. 5

    C.    Voluntary Department .............................................................................. 6

    D.    Class Certification ................................................................................... 6

STANDARDS OF REVIEW ............................................................................................ 7

    A.    Federal Rule Civil Procedure 12(b)(1) ................................................... 7

    B.    Federal Rule Civil Procedure 12(b)(6) ................................................... 8

ARGUMENT ................................................................................................................... 8

    A.    Plaintiffs Lack Standing to Seek the Prospective Equitable Relief in their
        Complaint……………………………………………………………………8

    B.    Plaintiff UFW Lacks Associational Standing ...................................... 12

    C.    This Court Should Dismiss the Complaint Because Plaintiffs' Claims Are Moot
        ....................................................................................................................15

        1.    *The Reasonable Suspicion and Voluntary Departure Musters Issued by
                USBP Render Plaintiffs' Entire Complaint Moot*..................................... 15

        2.    *The Voluntary Cessation Doctrine Does Not Preserve This Court's
                Jurisdiction* ............................................................................................ 18

    D.    Plaintiffs' Voluntary Departure Claim (Claim IV) Fails Because They Have Not
        Established a Liberty Interest Nor Have They Demonstrated Prejudice ............. 20

    E.    Alternatively, this Court Should Dismiss Plaintiffs' Complaint Under Rule 12(b)(6)
        Because None of the Three Classes Can Be Certified……………………………23

        1.    *The Suspicionless Stop and Warrantless Arrest Classes Are Fatally
                Overbroad* ............................................................................................. 23

i

2.    *The Voluntary Departure Class Facially Requires Individualized Analysis that Precludes Certification* ...................................................................... 27

CONCLUSION ................................................................................................................ 28

CERTIFICATE OF SERVICE ........................................................................................ 29

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                      **Pages**

3

*Abel v. United States,*
    362 U.S. 217 (1960) ............................................................................................... 5

*Aguayo v. Garland,*
    78 F.4th 1210 (10th Cir. 2023) ............................................................................. 27

*Am. Cargo Transp., Inc. v. U.S.,*
    625 F.3d 1176 (9th Cir. 2010) ............................................................................. 19

*Ass'n of Christian Sch. Int'l v. Stearns,*
    678 F. Supp. 2d 980 (C.D. Cal. 2008) ................................................................ 12

*B.C. v. Plumas Unified Sch. Dist.,*
    192 F.3d 1260 (9th Cir. 1999) ............................................................................... 9

*Baton v. Ledger SAS,*
    740 F. Supp. 3d 847 (N.D. Cal. 2024) ................................................................ 24

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................... 8

*Bell v. City of Boise,*
    709 F.3d 890 (9th Cir. 2003) ............................................................................... 20

*Board of Regents v. Roth,*
    408 U.S. 564 (1972) ............................................................................................. 21

*Brackeen v. Haaland,*
    994 F.3d 249 (5th Cir. 2021) ............................................................................... 20

*Calleja Leyva v. Gonzales,*
    215 F. App'x 582 (9th Cir. 2006) ........................................................................ 21

*Cevilla v. Gonzales,*
    446 F.3d 658 (7th Cir. 2006) ............................................................................... 22

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ............................................................................... 7

*Chen v. U.S. I.N.S.,*
    105 F. App'x 214 (9th Cir. 2004) ........................................................................ 21

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ........................................................................................... 9,11

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*CSE Safeguard Ins. Co. v. Hyundai Motor Am.*,
   2024 WL 1832423 (C.D. Cal. Jan. 12, 2024) ............................................................... 28

*De Martinez v. Ashcroft*,
   374 F.3d 759 (9th Cir. 2004) ........................................................................................ 6

*Dep't of Homeland Security Sec. v. Regents of the Univ. of California*,
   591 U.S. 1, 19 (2020)……………………………………………………………20, 24, 26, 27

*Do No Harm v. Pfizer, Inc*,
   96 F.4th 106 (2d Cir. 2024) ......................................................................................... 15

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ......................................................................................................... 2

*Espinoza v. Union of Am. Physicians & Dentists*,
   2023 WL 6971456 (9th Cir. Oct. 23, 2023) ................................................................ 18

*Everest & Jennings, Inc. v. American Motorists Ins. Co.*,
   23 F.3d 226 (9th Cir. 1994) ........................................................................................... 8

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2015 WL 12912337 (C.D. Cal. Mar. 16, 2015) .......................................................... 24

*Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.*,
   30 F.Supp.3d 1358, 1364 (M.D. Fla. 2014)………………………………………………..18

*Friends of the Earth, Inc. v. Laidlaw Env'l Servs., Inc.*,
   528 U.S. 167 (2000) ............................................................................................. 8-9, 12

*Gebhardt v. Nielsen*,
   879 F.3d 980 (9th Cir. 2018) ....................................................................................... 21

*Gonzalez v. United States Immigr. & Customs Enf't*,
   975 F.3d 788 (9th Cir. 2020) ............................................................................... 7, 9, 26

*Grigoryan v. Barr*,
   959 F.3d 1233 (9th Cir. 2020) ..................................................................................... 23

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) ................................................................................. 9, 10

*HPG Corp. v. Aurora Loan Servs.*,
   436 B.R. 569 (E.D. Cal. 2010) .................................................................................... 13

*Hussain v. Rosen*,
   985 F.3d 634, 645 (9th Cir. 2021) ............................................................................... 23

*Hyuk Joon Lim v. Holder*,
    710 F.3d 1074 (9th Cir. 2013) .................................................................................. 22

*Ibarra-Flores v. Gonzales*,
    439 F.3d 614 (9th Cir. 2006) .................................................................................... 21

*In re Walls*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001) ...................................................................... 23

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ...................................................................... 23

*Jacobson v. Hughes Aircraft*,
    105 F.3d 1288 (9th Cir. 1997) .................................................................................... 8

*Jenkins v. McKeithen*,
    395 U.S. 411 (1969) .................................................................................................... 8

*Jennings v. Rodriguez*,
    583 U.S. 281, 294 (2018). ............................................................................. 24, 25, 27

*Justus v. Doerer*, No. 1:25-CV-00138-JLT-S,
    AB (PC), 2025 WL 811145 (E.D. Cal. Mar. 13, 2025) ............................................. 6

*Katris v. INS*,
    562 F.2d  (2d Cir. 1977) ........................................................................................... 26

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .................................................................................................... 7

*Lacsina Pangilian v. Holder*,
    568 F.3d 708 (9th Cir. 2009) ............................................................................... 21, 22

*Leal-Burboa v. Garland*,
    No. 21-70279, 2022 WL 17547799 (9th Cir. 2022)................................................. 27

*Lopez-Venegas v. Beers*,
    2013 WL 12474081 (C.D. Cal. Dec. 27, 2013).................................................. 10, 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 15

*Maria S. as Next Friend for E.H.F. v. Garza*,
    912 F.3d 778 (5th Cir. 2019) ...................................................................................... 6

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ...................................................................................... 9

*Medley v. Garland*,
　　71 F.4th 35 (2d Cir. 2023) ................................................................. 27

*Mendez-Garcia v. Lynch*,
　　840 F.3d 655 (9th Cir. 2016) .............................................................. 22

*Mi Familia Vota v. Fontes*,
　　129 F.4th 691 (9th Cir. 2025) ............................................................. 15

*Miranda v. Clark County, Nev.*,
　　279 F.3d 1102 (9th Cir. 2002) .............................................................. 8

*Morales-Izquierdo v. Gonzales*,
　　486 F.3d 484 (9th Cir. 2007) .......................................................... 22, 23

*Moran v. Godinez*,
　　57 F.3d 690 (9th Cir. 1995) ............................................................... 21

*Nelsen v. King Cnty.*,
　　895 F.2d 1248 (9th Cir. 1990) ............................................................ 11

*Nicacio v. INS*,
　　797 F.2d 700 (9th Cir. 1985) ............................................................. 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
　　31 F.4th 651 (9th Cir. 2022) .............................................................. 26

*O'Shea v. Littleton*,
　　414 U.S. 488 (1974) .................................................................... 10, 11

*Padilla v. Ashcroft*,
　　334 F.3d 921 (9th Cir. 2003) .............................................................. 23

*Pilgrim v. Universal Health Card, LLC*,
　　660 F.3d 943 (6th Cir. 2011) .............................................................. 28

*Pruell v. Caritas Christi*,
　　645 F.3d 81 (1st Cir. 2011) ............................................................... 26

*Rajah v. Mukasey*,
　　544 F.3d 427 (2d Cir. 2008) ........................................................... 25, 27

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
　　908 F.3d 476 (9th Cir. 2018) .............................................................. 20

*Regents of Univ. of California v. United States Dep't of Homeland Sec.*,
　　279 F. Supp. 3d 1011 (N.D. Cal. 2018) .................................................... 27

*Religion Found., Inc. v. Orange Cnty. Sch. Bd.*,
  30 F.Supp.3d 1358 (M.D. Fla. 2014)............................................................................. 19

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ........................................................................... 16, 19, 20

*Sanchez v. Sessions*,
  904 F.3d 643 (9th Cir. 2018) ................................................................................. 24, 25

*Sanchez*,
  908 F.3d ......................................................................................................................... 26

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ........................................................................................ 7

*Slayman v. FedEx Ground Package Sys., Inc.*,
  765 F.3d 1033 (9th Cir. 2014) ...................................................................................... 18

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ................................................................................. 12, 14

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir.) ................................................................................................... 8

*Stevens v. Harper*,
  213 F.R.D. 358 (E.D. Cal. 2002) .................................................................................... 9

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ...................................................................................................... 14

*Tejeda-Mata v. I.N.S.*,
  626 F.2d 721 (9th Cir. 1980) .......................................................................................... 5

*Tirado v. Victoria's Secret Stores*, LLC,
  2025 WL 859878 (E.D. Cal. Mar. 19, 2025).................................................................. 24

*United Farm Workers*,
  2025 WL 1235525 ..................................................................................................... 25, 26

*United States v. Brignoni-Ponce*,
  422 U.S. 873 (1975) ..................................................................................................... 4, 5

*United States v. Montero-Camargo*,
  208 F.3d 1122 (9th Cir. 2000) ........................................................................................ 4

*United States v. Shepherd*,
  No. 2:24-CR-00083-DJC-1, 2024 WL 4931677, at *5 (E.D. Cal. Dec. 2, 2024)..........................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2000) ................................................................ 20

*United States v. Valdes-Vega*,
   738 F.3d 1074 (9th Cir. 2013) ...................................................... 5

*United States v. Venzor-Castillo*,
   991 F.2d 634 (10th Cir. 1993) ...................................................... 5

*Vacek v. United States Postal Serv.*,
   447 F.3d 1248 (9th Cir. 2006) ...................................................... 7

*Vasquez-Lopez v. Ashcroft*,
   343 F.3d 961 (9th Cir. 2003) ....................................................... 6

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) .............................................. 7, 23, 24

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir.1998) ...................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338
   (2011)……………………………………………………………………….27

*Watson v. Crumbl LLC*,
   736 F. Supp. 3d 827 (E.D. Cal. 2024) ............................................. 20

*Western Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ....................................................... 8

*Westover v. Reno*,
   202 F.3d 475 (1st Cir. 2000) ...................................................... 26

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................. 7, 19

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004) ....................................................... 7

*Zamora v. Penske Truck Leasing Co., L.P.*,
   2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ........................................ 24

*Zolotukhin v. Gonzales*,
   417 F.3d 1073 (9th Cir. 2005) ..................................................... 22

**Statutes**

8 U.S.C. § 1229b(b) ................................................................ 14

8 U.S.C. § 1229c(a)(1) ........................................................................................... 6
8 U.S.C. § 1229c(d) ............................................................................................... 6
8 U.S.C. § 1231(b)(3) ........................................................................................... 22
8 U.S.C. § 1252 ............................................................................................... 25, 27
8 U.S.C. § 1252(a)(5) ................................................................................. 24, 25, 27
8 U.S.C. § 1252(b)(9) ................................................................................. 24, 26, 27
8 U.S.C. § 1357 ........................................................................................ 1, 2, 10, 26
8 U.S.C. § 1357(a)(2) ..................................................................................... passim
U.S.C. § 1357 ...................................................................................................... 26

**Rules**

FED. R. CIV. P. 12(b)(1) .................................................................................. passim
Fed. R. Civ. P. 23(b) .............................................................................................. 7
Federal Rule Civil Procedure 12(b)(6) ................................................................. i, 8
Federal Rule Civil Procedure 12(f) .......................................................................... i
Rule 23(a)(1) ...................................................................................................... 26

**Regulations**

8 C.F.R. § 240.25(c) ............................................................................................. 6
8 C.F.R. § 287.8 ............................................................................................. 19, 26
8 C.F.R. § 287.8(b)(2) ................................................................................. 5, 24, 25
C.F.R. § 208.16(d)(1) ........................................................................................... 22

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on Monday August, 25 2025, at 9:00 a.m., in the Courtroom of the Honorable Jennifer L. Thurston, Defendants, Kristi Noem, Secretary of the Department of Homeland Security, Rodney S. Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection, Micheal W. Banks, Chief of U.S. Border Patrol, and Gregory K. Bovino, Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol, will respectfully move this Court for an order dismissing this action pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion. Defendants also make this motion after counsel for the parties conferred via Teams pursuant to this Court's Standing Order. Although counsel for Defendants had not finalized their arguments at the time of the conference, counsel for Defendants advised counsel for the Plaintiffs that Defendants' Motion to Dismiss would include similar arguments, which were previously raised in its opposition to Plaintiffs' preliminary injunction, that is, mootness and jurisdictional issues. That Teams conference call took place on Friday July 11, 2025, at 12:30 p.m. EST. Plaintiff's counsel confirmed that Plaintiff would oppose Defendants' Motion to Dismiss.

1    Dated: July 14, 2025                    Respectfully submitted,

2                                            BRETT A. SHUMATE
                                             Assistant Attorney General
3

4                                            SAMUEL P. GO
                                             Assistant Director
5

6                                            MARY L. LARAKERS
                                             Senior Litigation Counsel
7

8                                            TIM RAMNITZ
                                             Senior Litigation Counsel
9
                                             OLGA Y. KUCHINS
10                                           Trial Attorney

11                                           */s/ Carolyn D. Dillard*
                                             CAROLYN D. DILLARD
12                                           Trial Attorney
                                             P78090 (MI Bar No.)
13                                           U.S. Department of Justice, Civil Division
                                             Office of Immigration Litigation
14                                           General Litigation and Appeals Section
                                             P.O. Box 878, Ben Franklin Station
15                                           Washington, D.C. 20044
                                             Tel: (202) 514-7013
16                                           Fax: (202) 305-7000
                                             Carolyn.D.Dillard@usdoj.gov
17                                           Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS

                                             v

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This Court should dismiss Plaintiffs' Complaint in its entirety. Plaintiffs seek classwide prospective injunctive and declaratory relief to remedy for what they allege is a "policy, pattern and/or practice" of violating the Fourth and Fifth Amendment and 8 U.S.C. § 1357. *See generally* Compl. They base their pattern and practice claims on alleged events that occurred in a single operation conducted by U.S. Border Patrol ("USBP") over three days in the Eastern District of California. *See* Complaint ("Compl.") at 1-2, 43, 64-67 ¶¶ 3, 236-39, 326-50. However, these allegations are insufficient to confer standing for the prospective injunctive and declaratory relief they seek. The named Plaintiffs cannot demonstrate an imminent threat of future injury and, rather, their claims rely on speculation. Moreover, United Farm Workers ("UFW") cannot establish associational standing because its members lack standing themselves, and the Plaintiffs' claims require extensive individual participation, making them unsuitable for collective litigation. Even if Plaintiffs did have standing to seek prospective relief, their claims are moot because USBP has taken considerable steps to reaffirm their commitment to comply with the law including issuing guidance relevant to Plaintiffs' claims and training their agents.

Finally, even if this Court finds it has jurisdiction, it should still dismiss Plaintiffs' class allegations because Plaintiffs fail to state a claim for relief, which can be granted. First, with respect to Plaintiffs' Fifth Amendment claim (Claim IV), Plaintiffs have not identified a protected liberty interest nor have they identified that they were prejudiced, which are both required for Plaintiffs to prevail on this constitutional claim. In any event, however, the whole Complaint should be dismissed under Rule 12(b)(6) because none of the three putative classes that Plaintiffs propose can be certified. Plaintiffs' Suspicionless Stop and Warrantless Arrest Classes are fatally overbroad because named Plaintiffs Cisneros's and Esquivel's claims are exclusively the subject of administrative process and petitions for review filed in the court of appeal. Plaintiffs' Voluntary Departure Class, meanwhile, predominately requires individualized analysis of members' claims.

## BACKGROUND[1]

Between January 7, 2025, and January 9, 2025, United States Border Patrol, El Centro Sector, conducted an interior operation in Kern County, California, to locate and arrest individuals identified as criminal undocumented aliens.  On February 26, 2025, Plaintiffs filed a Complaint for declaratory and injunctive relief alleging that, over the course of this operation, USBP engaged in a "pattern and practice" of violating the Fourth and Fifth Amendment and 8 U.S.C. § 1357. Specifically, Plaintiffs allege that USBP agents engaged in a pattern and practice of race-based stops of warrantless arrests without assessing flight risk. Compl. at ¶¶ 1-3, 236, 239, 326-45 (Claims I, II, and III). Plaintiffs further allege that, after USBP transferred arrestees to the El Centro Station, USBP agents engaged in a pattern and practice of coercing them into accepting voluntary departure to Mexico. Compl. at ¶¶ 234, 242-45 (Claim IV).

On March 7, 2025, Plaintiffs filed a motion for preliminary injunction seeking to enjoin Border Patrol from conducting further operations in violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2). *See generally* ECF 15, 15-1. Plaintiffs specifically argued that Border Patrol should adopt guidance on assessing flight risk and reasonable suspicion that is in line with the "Broadcast Statement of Policy," guidance, which was issued in *Castanon Nava v. DHS*, No. 1:18-cv-03757 (N.D. Ill., Feb. 7, 2022), which generally provides that Immigration and Customs Enforcement ("ICE") officers who make a warrantless arrest are to document the facts and circumstances surrounding the warrantless arrest as soon as practicable and requires ICE to train its agents on these requirements. *See* ECF 15-1 at 16-17; *see also* Compl., App. A. Plaintiffs also sought reporting on stops and arrests conducted by USBP in this district and petitioned the Court to order USBP to train agents within 90 days of the Court's order on

---

[1] Defendants refer herein to the allegations in the Complaint, acknowledging that the Court must consider those allegations in the light most favorable to Plaintiff on this 12(b)(6) motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Those references do not, however, constitute a concession by Defendants that those allegations are accurate representations of the facts.

various reasonable suspicion requirements. *See* ECF 15 at 2. Defendants opposed, citing guidance (a "Muster") USBP issued on April 4, 2025, addressing the requirements for assessing flight risk and reasonable suspicion for vehicle stops, as well as the need to document the reasons for these stops and arrests as soon as practicable, and committing to training its approximately 900 agents on the Muster. *See* Ex. E. On March 7, 2025, Plaintiffs also moved to provisionally certify a Suspicionless Stop Class and a Warrantless Arrest Class. *See* ECF No. 14. Defendants also opposed that motion arguing Plaintiffs had not satisfied the requirements of Rule 23(a) or Rule 23 (b)(2). *See generally* ECF No. 32.

On April 29, 2025, the Court granted Plaintiffs' motions. *See* ECF No. 47. The Court enjoined Border Patrol from conducting detentive stops in the absence of reasonable suspicion of unlawful presence and effecting warrantless arrests without considering flight risk, which includes assessing factors such as community ties. *Id*. at 86-87. The Court also ordered that Border Patrol agents must document the facts and circumstances surrounding each stop, whether vehicular or on foot, as soon as practicable and document the facts and circumstances surrounding each arrest as soon as practicable. *Id.* The Court ordered that Border Patrol must also (1) release to Plaintiffs' counsel documentation on Border Patrol's detentive stops and warrantless arrests in E.D. Cal. (within 60 days and every 60 days thereafter), (2) serve on Plaintiffs' counsel a directive setting forth guidance on determining "reasonable suspicion" when conducting vehicular and pedestrian stops, including that refusal to answer questions does not, without more, justify reasonable suspicion in E.D. Cal. (within 60 days), and (3) serve on Plaintiffs' counsel documentation showing that they have trained Border Patrol agents charged with making detentive stops and warrantless arrests in E.D. Cal. on the "requirements articulated above" (within 90 days and every 30 days thereafter until all agents are trained). *Id*. at 87-88

On June 17, 2025, consistent with this Court's order and in addition to its April 4, 2025, Muster, USBP issued a second Muster discussing factors to consider when assessing reasonable suspicion in all contexts, not just vehicle stops. Ex. B. The Muster adds that an individual's refusal to answer questions

does not, by itself, constitute reasonable suspicion, and that in areas where Hispanic individuals are common, an individual's apparent Hispanic race or ethnicity is not a relevant factor for reasonable suspicion. *Id*. On July 11, 2025, USBP also issued a Voluntary Return Muster ("VR Muster"). Ex. C. The VR muster is aimed at resolving the allegations in Plaintiffs' Complaint. Specifically, it reminds USBP of the foundational principle that "Voluntary Return must be made knowingly, intelligently, and voluntarily" without coercion or pressure. To ensure that any voluntary return is knowing and voluntary, the Muster instructs officers to (1) provide aliens with an opportunity to read the Notice of Rights and Advisals on the Form I-826 and confirm understanding of the form with the alien, (2) provide the alien with an opportunity to consult with counsel prior to electing voluntary return, including providing the alien with a list of free and low-cost legal services (3) whenever an agent goes over the Form in digital format, the agent should also provide the alien with a physical copy of the Form, (4) fully document the process provided to the alien, (5) and allow the alien to can cancel his or her election of voluntary return up until the moment of repatriation. *Id.*

## LEGAL BACKGROUND

**A. Reasonable Suspicion**

Border Patrol must have reasonable suspicion of an immigration violation before executing a stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-84 (1975). There are a number of factors Border Patrol can consider in assessing reasonable suspicion including the characteristic appearance of persons who live in Mexico such as the mode of dress and haircut. *Id*. at 885. However, Border Patrol cannot base a stop on race alone, particularly Hispanic ethnicity. *Id.* at 885-86. Even when considered amongst other factors, "Hispanic appearance is, in general, of such little probative value that it may not be considered as a relevant factor where particularized or individualized suspicion is required." *United States v. Montero-Camargo*, 208 F.3d 1122, 1135 (9th Cir. 2000). Proximity to the border is also a factor in determining whether reasonable suspicion exists. *Id*. at 885. However, "*Brignoni-Ponce* does

not imply agents cannot stop cars over 100 miles from the border or need more than reasonable suspicion for a stop." *United States v. Venzor-Castillo*, 991 F.2d 634, 638 (10th Cir. 1993). Rather, in considering whether an agent had reasonable suspicion for an investigative stop, the court must consider the totality of the circumstances including the agent's training and experience. *See United States v. Valdes-Vega*, 738 F.3d 1074, 1080 (9th Cir. 2013). Officers require "far less" information to make a stop based on reasonable suspicion than what is required to arrest an individual based on probable cause. *Id.*; *Brignoni-Ponce*, 422 U.S. at 881 (same).

## B. Warrantless Arrests

Under the INA, immigration officials are authorized to perform the warrantless arrest of:

> [A]ny alien in the United States, if he has *reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrestee shall be taken without unnecessary delay . . . before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2); *see Abel v. United States*, 362 U.S. 217, 232-37 (1960) (discussing longstanding administrative arrest procedures in deportation cases) (emphasis added). "Reason to believe" has been equated with the constitutional requirement of probable cause. *Tejeda-Mata v. I.N.S.*, 626 F.2d 721, 725 (9th Cir. 1980) (internal citations omitted).  Thus, "[t]o justify an arrest [without a warrant], officers must have probable cause based on the facts available to them at that time for the arrest.". *United States v. Shepherd*, No. 2:24-CR-00083-DJC-1, 2024 WL 4931677, at *5 (E.D. Cal. Dec. 2, 2024).

The implementing regulations similarly explain that a warrantless arrest "shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States" and "has reason to believe that the person is likely to escape before a warrant can be obtained."  8 C.F.R. § 287.8(c)(2)(i)-(ii).  Furthermore, an immigration officer must have reasonable suspicion of an immigration violation before performing a detentive stop without an arrest.  8 C.F.R. § 287.8(b)(2).

**C. Voluntary Departure**

"An administrative 'voluntary departure' under the statute is something that occurs with the permission of the Attorney General in lieu of removal proceedings." *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 974 (9th Cir. 2003). "Voluntary return' is a term of art for 'administrative voluntary departure,' a process whereby an alien can leave the country without formal removal proceedings." *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 782 n. 2 (5th Cir. 2019) (citing 8 U.S.C. § 1229c(a)(1)). An alien may elect and be granted voluntary return if he or she has not been convicted of an aggravated felony.  8 U.S.C. § 1229c(a)(1).

Voluntary return may not be granted unless the alien requests it and agrees to its terms and conditions. *See* 8 C.F.R. § 240.25(c). An alien permitted to voluntarily depart the country must be informed of the penalties for failing to depart under 8 U.S.C. § 1229c(d). *De Martinez v. Ashcroft*, 374 F.3d 759, 762 (9th Cir. 2004) (citing 8 U.S.C. § 1229c(d)). Penalties include potential civil monetary penalty and being ineligible for a period of 10 years for certain relief from removal.  *See* 8 U.S.C. § 1229c(d). An alien unlawfully present in the United States for more than 180 days and less than one year and who departs the United States is inadmissible for a period of three years, and an alien unlawfully present in the United States for one year or more and who departs or is removed from the United States is inadmissible for a period ten years. 8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II).

**D. Class Certification**

A party seeking class certification must satisfy the four elements of Rule 23(a), which provides that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are common questions of law and fact, (3) the representative party's claims or defenses are typical of the class claims or defenses, and (4) the representative party will fairly and adequately protect the class interests.

*Justus v. Doerer*, No. 1:25-CV-00138-JLT-SAB (PC), 2025 WL 811145, at *1 (E.D. Cal. Mar. 13, 2025) (citing Fed. R. Civ. P. 23(a)). The party seeking certification must also satisfy one of the elements

of Fed. R. Civ. P. 23(b), specifically here, subsection (2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 812 (9th Cir. 2020). Although rare, courts retain discretion to dismiss or strike a class at the pleading stage, in advance of a motion for certification, if the Complaint demonstrates the proposed class is facially defective. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted") (cleaned up).

## STANDARDS OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

A district court must dismiss an action if it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Because federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A Rule 12(b)(1) motion may be facial, where the inquiry is confined to the allegations in the Complaint, or factual, where the court is permitted to look beyond the Complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Where, as here, a party raises a factual challenge to subject matter jurisdiction, the court may review other evidence to resolve the factual dispute concerning jurisdiction.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Challenges to a plaintiff's Article III standing are properly raised in a Rule 12(b)(1) motion because standing is required for a federal court to exercise jurisdiction. *See e.g., Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Mootness is also properly raised under Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction

under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).").

**B.  Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For purposes of such a motion, the Complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ( "conclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

## ARGUMENT

**A.  Plaintiffs Lack Standing to Seek the Prospective Equitable Relief in their Complaint.**

Plaintiffs lack standing to pursue prospective equitable relief because they have not demonstrated that their isolated encounters with USBP are likely to recur or that they will again be subjected to any unlawful conduct. "A plaintiff must demonstrate standing separately for each form of relief sought." *See Friends of the Earth, Inc. v. Laidlaw Env'l Servs., Inc.*, 528 U.S. 167, 185 (2000). "[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not

MOTION TO DISMISS

necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (citing *Friends of the Earth*, 538 U.S. at 185-86; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "A class of plaintiffs does not have standing to sue if the named plaintiff does not have standing." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). That is, "[u]nless the named plaintiffs are themselves entitled to seek, they may not represent a class seeking that relief." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (en banc).

When a plaintiff seeks prospective equitable relief, the standing analysis involves two distinct components. *See Hodgers-Durgin*, 199 F.3d at 1042. First, the court considers the constitutional requirements for standing, under which a plaintiff must show a credible threat of future injury that is sufficiently concrete and particularized to meet the "case or controversy" requirement of Article III. *See Lyons*, 461 U.S. at 101-04.  Second, courts consider whether a plaintiff has established an entitlement to prospective equitable relief. *Hodgers-Durgin*, 199 F.3d at 1042. "[A] past injury does not provide standing to seek prospective injunctive relief 'absent a sufficient likelihood that the plaintiff will again be wronged in a similar way.'" *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (quoting *Lyons*, 461 U.S. at 111) (internal alterations omitted). This means establishing the imminent threat constitutes irreparable injury.  *Id.* (citing *Lyons*, 416 U.S. at 111). And, "where the named plaintiffs fail to establish imminent injury for the purposes of injunctive relief, their related claims for declaratory relief must be dismissed as unripe." *Stevens v. Harper*, 213 F.R.D. 358, 367 (E.D. Cal. 2002) ("where the named plaintiffs fail to establish imminent injury for the purposes of injunctive relief, their related claims for declaratory relief must be dismissed as unripe"). Finally, "[a]ny injury unnamed members . . .may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin*, 199 F.3d at 1045.

In this case, the named Plaintiffs have failed to show any real and immediate threat of being harmed again under the Fourth Amendment, Fifth Amendment, or § 1357. Without such a showing, their claims lack the necessary foundation, and the Complaint should be dismissed in its entirety. Each named Plaintiff alleges a single interaction with Border Patrol agents all of which occurred over the course of a few days in an area USBP does not frequent. *See* Compl. at 6-10, 15- 32, ¶¶ 27-31, 48-233. The allegations in Plaintiffs' Complaint amount to nothing more than speculation that they might encounter USBP again and be subjected to unlawful conduct—far from the concrete and imminent harm required to establish standing. *See O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a . . . case or controversy" sufficient to support a prospective injunction.). And, a "single occurrence is insufficient to establish a likelihood that the challenged action will occur again in the future." *See Lopez-Venegas v. Beers*, 2013 WL 12474081, at *9 (C.D. Cal. Dec. 27, 2013); *see also Hodgers-Durgin*, 199 F.3d at 1043 (two named plaintiffs each alleging one instance of an injury was "patently inadequate" to show immediate irreparable injury warranting injunctive relief, particularly "sweeping system-wide relief"). Rather, courts generally require multiple occurrences before finding that a plaintiff has standing to seek a prospective injunction. *See e.g., id.; Nicacio v. INS,* 797 F.2d 700 (9th Cir. 1985) ("The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented.), *overruled on other grounds by Hodgers-Durgin,* 199 F.3d at 1042. Accordingly, Plaintiffs lack standing to pursue prospective equitable relief because they have not demonstrated that their isolated encounters with USBP are likely to recur or that they will again be subjected to any unlawful conduct.

Additionally, Plaintiffs' Fifth Amendment, voluntary return claim (Claim IV) especially alleges speculative injuries. Plaintiffs have alleged "a single interaction with . . . Border Patrol agents . . . [where] each alleges that, during that interaction he or she was coerced into choosing voluntary departure." *Lopez-Venegas v. Beers*, 2013 WL 12474081, at *9. "Each individual Plaintiff has failed to

allege, however, that he or she will again interact with . . . a Border Patrol agent . . . and be coerced again into accepting voluntary departure." *Id.* "Indeed, for any of the individual plaintiffs to be harmed in the future," in this way, Plaintiffs would have to: (i) either unlawfully reenter the United States or enter lawfully and overstay their lawful admission; (ii) be encountered by Border Patrol; (iii) be detained due to a lack of lawful presence; *and* (iv) be coerced by Border Patrol into choosing voluntary return, despite knowing about the voluntary return process and the rights they could waive by accepting voluntary return again. *Id*. The prospect that such a chain of events will happen is speculative at best and not sufficient to confer standing to seek prospective relief. *Id.* (citing *Nelsen v. King Cnty.*, 895 F.2d 1248, 1252 (9th Cir. 1990) ("Both the Supreme Court and [the Ninth] circuit have repeatedly found a lack of standing where the litigant's claim relies upon a chain of speculative contingencies"). Moreover, Plaintiffs have the ability to avoid unlawfully reentering the United States or overstaying a lawful admission, and therefore remain in control of the very circumstances that would trigger the speculative chain of events they allege. *See O'Shea*, 414 U.S. at 497 ("We assume that respondents will conduct their activities within the law and so avoid . . . the challenged course of conduct said to be followed by petitioners"). Meanwhile, "[t]he severity of the claimed legal violations is not probative of the likelihood that it will recur." *Lopez-Venegas*, 2013 WL 12474081, at *9 n.4.

The likelihood of Plaintiffs being subject to an unlawful stop, arrest, or voluntary return is rendered even more speculative by USBP's issuance of Musters which, collectively, are aimed to ensure compliance with the law. *See infra* at 15-20 (citing Exs. A-E); *see also* Ex. F. Consequently, in the absence of a realistic threat of future injury, Plaintiffs cannot "demonstrate a case or controversy with [Border Patrol] that would justify the equitable relief sought" and this Court should dismiss the complaint. *Lyons*, 416 U.S. at 105.

**B.    Plaintiff UFW Lacks Associational Standing.** [2]

UFW cannot establish associational standing because its members lack standing themselves, and the Plaintiffs' claims require extensive individual participation, making them unsuitable for collective litigation. Thus, Plaintiffs' inclusion of an organizational plaintiff does not preserve their claims. To establish associational standing, an organization must establish that (1) one or more of an organization's members would have Article III standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires participation by the individual members in the lawsuit. *Friends of the Earth*, 528 U.S. at 180-81.[3]

Here, however, resolving the claims in Plaintiffs' Complaint necessarily requires the direct involvement of the individual members, underscoring yet another reason why UFW lacks associational standing. *Friends of the Earth*, 528 U.S. at 180-81. Determining whether the claims require participation of individual members is necessarily an assessment of whether the case involves a "pure question of law" or, conversely, requires "an ad hoc factual inquiry" or "individualized proof" for each member. *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 985-86 (C.D. Cal. 2008), *aff'd*, 362 F. App'x 640 (9th Cir. 2010). While declaratory and injunctive relief naturally lend themselves to associational standing, such is not the case where individualized factual inquiries remain necessary to resolve the merits. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (organization lacked associational standing "[b]ecause of . . . multiple variations, specific to individual members of [the organization] . . . the violations of which [the organization] complains are not susceptible to judicial treatment as systematic policy violations that make extensive individual participation unnecessary") (cleaned up).

Plaintiffs allege USBP violated the rights of UFW members demonstrating a policy, pattern or

---

[2]  United Farm Workers does not proffer any organizational injury.

[3] For the reasons discussed *supra,* the individual plaintiffs cannot establish standing for the prospective relief sought in the Complaint; thus, UFW cannot establish standing. *See id.*; *see also Supra* § "A."

practice entitling them to prospective injunctive relief. *See* Compl. at 64-69. But these allegations require the Court to delve into the individual members' experiences. *See* Compl. at 33-37, ¶¶ 165-94.  It is therefore impossible to determine Plaintiffs' policy, pattern, or practice claims without an individualized analysis of whether USBP violated the law when it stopped, arrested, and processed the voluntary return for each member. *See HPG Corp. v. Aurora Loan Servs.*, 436 B.R. 569, 581-82 (E.D. Cal. 2010) (denying associational standing where the organization sought declaratory and injunctive relief regarding mortgage practices because adjudicating the claims would have required "individualized proof in order to both determine liability and accord relief" in connection with each member's mortgage transaction, as well as evidence concerning each member's conduct and motives, and not "a pure issue of law"). For example, UFW alleges that their members "Alicia," "Benjamin," "Carlos," and "Fernando"(using pseudonyms) were subject to vehicular stops by Border Patrol without reasonable suspicion that they violated a law Border Patrol has the authority to enforce. *See* Compl. at 33-36. Meanwhile, UFW alleges member Jesus Ramirez was subject to pedestrian stop at a day labor gathering spot without reasonable suspicion. *See* Compl. at 37. They allege that in each of these separate stops, Border Patrol did not assess flight risk before arresting them for unlawful presence without a warrant. *See* Compl. at 33, 38. And in particular to "Benjamin" and "Carlos," UFW alleges that Border Patrol coerced them into accepting voluntary return by, among other things, displaying weapons when they indicated they wanted to see an immigration judge rather than voluntarily depart and then presenting them only with a small digital screen to sign. *See* Compl. at 34. Which, Plaintiffs claim, prejudiced "Benjamin" and "Carlos" because they had a "plausible claim to contest removal." Compl. at 62, ¶ 319. These are all specific fact patterns requiring "individualized proof[s] regarding whether the agents engaged in unlawful conduct and whether these facts demonstrate a pattern or practice sufficient to

justify equitable relief. Therefore, the participation of UFW's members in this lawsuit is indispensable.[4]

The Ninth Circuit's decision in *Spindex Physical Therapy USA* is instructive. In that case, a nonprofit association of chiropractors sought declaratory and injunctive relief against a healthcare company for refusing to pay for certain therapies. 770 F.3d at 1292. The court found that differences in treatment and payment issues among members meant the claims could not be resolved without individual participation, and thus the association lacked standing. *Id.* at 1292–93. The court emphasized that such claims were not akin to "systemic policy violations" that could be adjudicated without member-specific involvement. *Id.* at 1293. The same principle applies here. There are significant variations alleged by Plaintiffs regarding the Border Patrol agents' alleged wrongful conduct during process at the El Centro Sector Central Processing Center. *Compare* ECF No. 15-8, Espinosa Decl. at ¶¶ 14-17 (alleging the Border Patrol agent did not permit her to change her mind about accepting voluntary departure) *with* ECF No. 15-6, Mendez Decl. at ¶ 18 (alleging the Border Patrol agent threatened him with "months or years" in prison); *and with* ECF No. 15-3 Elizabeth Strater Decl. at ¶ 32 (alleging that that two of its members were threatened with guns). And there may be significant variations in their eligibility for relief, if any at all.  *See* 8 U.S.C. § 1229b(b).

Moreover, Plaintiff UFW plainly fails to satisfy the requirements for associational standing on Claim IV—the voluntary departure claim—because it does not identify even a single member by name who would have standing to assert such a claim individually. The Supreme Court has made clear that to establish associational standing, an organization must "name the individuals . . . harmed by the challenged . . . program," and cannot rely on statistical probabilities. *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009). While the Ninth Circuit has allowed pseudonyms to be used by organizations

---

[4] Additionally, the participation of UFW members "Benjamin" and "Carlos" is also required to determine whether they "had a plausible basis to contest their removal" and therefore can appropriately represent the voluntary departure class. Compl. at 62, ¶¶ 319.  The facts in the complaint alone which do not dispute their lack of lawful status do not explain why they had such a basis and can represent the class.

where it is not necessary to defend against the organization's claims. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708-09 (9th Cir. 2025), it is necessary here—as explained *supra*—to determine Plaintiffs' claims. *See Do No Harm v. Pfizer, Inc*, 96 F.4th 106, 116 (2d Cir. 2024) ("[a] member's name does not merely check a box; it is a demonstration of the sincerity of the member's interest in applying," a "quintessential Article III standing concern[]."). Specifically, with regard to Plaintiffs' voluntary departure claim, Defendants require the real names of UFW's allegedly injured members in order to address whether these members (1) have a plausible basis to contest removal and (2) whether they unknowingly and involuntarily waived his or her rights to a removal proceeding due to a coercive environment beyond the applicable procedures – that is, Defendants require the members' identities to defend against Plaintiff UFW's claims.[5]

In sum, Plaintiffs lack standing because individualized issues dominate and will necessarily require the participation of its members. Additionally, Plaintiffs attempt to base its standing on unnamed individuals—despite the fact that those same individuals would not be permitted to proceed anonymously if they were bringing claims on their own behalf. *Do No Harm*, 96 F.4th at 117.

## C.    This Court Should Dismiss the Complaint Because Plaintiffs' Claims Are Moot.

### 1.    *The Reasonable Suspicion and Voluntary Departure Musters Issued by USBP Render Plaintiffs' Entire Complaint Moot.*

Even if Plaintiffs could establish that they have suffered a sufficient injury to confer standing to seek prospective equitable relief, Plaintiffs' claims fail because they are moot. Collectively, Plaintiffs seek relief to remedy —via declaratory and injunctive relief —what they perceive to be a policy, pattern

---

[5] The fact that *Summers* involved an appeal from summary judgment, rather than a Rule 12(b)(1) motion, does not excuse Plaintiffs' failure to name an injured member. Although the Supreme Court has noted that "the manner and degree of evidence [of standing] required at the successive stages of the litigation" may vary, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), Defendants do not argue that Plaintiff UFW has submitted insufficient evidence. Rather, Defendants argue that, even taking Plaintiff UFW's allegations as true, it does not allege an essential piece of information: the name of an injured member. Should the Court disagree, Defendants reserve reiterating this argument later in proceedings.

MOTION TO DISMISS

or practice of violating the Fourth and Fifth Amendment and § 1357. But USBP has already issued multiple new guidance Musters affirming their commitment to following the law in precisely the ways Plaintiffs seek, which renders Plaintiffs' Complaint moot. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("A case becomes moot - and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome") (internal citations omitted).

Plaintiffs' claims I-III concerning stops and arrests are moot because, on April 4, 2025, USBP issued a Muster and ordered training recommitting to consistent enforcement of Fourth Amendment protections and protections under 8 U.S.C. 1357(a)(2). *See* Exs. A, D (Decl. of Sergio Guzman). This Muster discusses traffic stops and reasonable suspicion, factors to consider when assessing flight risk, and how agents should document the facts and circumstances surrounding a warrantless arrest in an alien's Form I-213 as soon as practicable. *See* Ex. A; *see also* Compl. at 53, ¶ 278 (stating USBP should provide its officers guidance on the requirement for reasonable suspicion for traffic stops in the interior, away from the border, and guidance on assessing flight risk using factors such as "family, home, or employment," that is, community ties). And USBP commits to continuing training until all agents are trained. Ex. D, (Decl. of Sergio Guzman). at ¶¶ 10-16. Moreover, on June 27, 2025, following the Court's April 29, 2025, order, USBP issued a second Muster discussing factors to consider when assessing reasonable suspicion in all contexts, not just vehicle stops; that an individual's refusal to answer questions does not, by itself, constitute reasonable suspicion; and that in areas where Hispanic individuals are common, an individual's apparent Hispanic race or ethnicity is not a relevant factor for reasonable suspicion. *See* Ex. B.

Plaintiffs' Fifth Amendment due process claim (Claim IV) is also moot. Plaintiffs allege that, during Operation Return to Sender, Border Patrol agents engaged in a pattern of processing arrested individuals for voluntary departure without obtaining a knowing and voluntary waiver of their right to

removal proceedings before an immigration judge, in violation of the Fifth Amendment. *See* Compl. at 3-4, 44-45, 67-68, ¶¶ 9, 242-44, 346-50. Named Plaintiffs Espinosa and Mendez describe how Border Patrol agents presented them with a small digital device showing only a signature page, how they were not permitted to touch the digital device or see other pages of the document, and how they were not otherwise provided with physical copies of the documents that they were digitally signing. *See* Compl. at 4, 31, 34, 44, ¶¶ 11, 151-52, 176, 243; ECF No. 15-8, Espinosa Decl. at ¶¶ 17-18; ECF No. 15-6, Mendez Decl. at ¶ 19. They also claim that Border Patrol agents did not orally explain voluntary departure and its consequences to them in Spanish. ECF No. 15-8, Espinosa Decl. ¶¶ 18-21; ECF No. 15-6, Mendez Decl. at ¶¶ 19-20. These allegations form the basis of Plaintiffs' policy and practice claim.

On July 11, 2025, USBP issued a Voluntary Return Muster recommitting to consistently informing aliens of their right to a hearing before an immigration judge and the consequences of alternatively choosing to voluntarily depart, which renders Plaintiffs Fifth Amendment claim (Claim IV) moot. The VR muster explains that Border Patrol agents must provide aliens with an opportunity to read the Notice of Rights and Advisals on the Form I-826, which advises an alien of the consequences of accepting voluntary return. *Id.* The VR Muster also states that, where an agent goes over the Form in digital format, the agent should also provide the alien with a physical copy of the Form, in both English and Spanish. *Id.* Agents should also document adherence to the proper procedures in the Form I-213 Record of Deportable/Inadmissible Alien. *Id.* The purpose of the VR Muster is to ensure the alien has made a knowing, voluntary, and intelligent waiver of their right to removal proceedings and election of voluntary return. *Id.* That is, this guidance ensures that, to the extent Plaintiffs' claims are true, they will not reoccur in the future thereby rendering Plaintiffs' claims moot. *Espinoza v. Union of Am. Physicians & Dentists*, 2023 WL 6971456, at *2 (9th Cir. Oct. 23, 2023) ("Where circumstances change after commencement of a suit such that the wrongful behavior is no longer likely to recur against the plaintiff

1    . . . 'his claims for prospective relief [become] moot . . .'") (citing *Slayman v. FedEx Ground Package*

2    *Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014).

3         *2.    The Voluntary Cessation Doctrine Does Not Preserve this Court's Jurisdiction.*

4         Because USBP has committed to strictly adhere to an existing policy of consistent law

5    enforcement within this circuit, the voluntary cessation doctrine renders this case moot. "The voluntary

6    cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness

7    would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock*, 45

8    F.3d at 971. Consequently, the party asserting mootness bears a "heavy burden." *Id.* When that party is

9    the government, however, it is presumed the government acts in good faith. *Id.* The government "still

10   must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to

11   start up again," but the particular type of voluntary cessation impacts the strength of the presumption

12   and the necessity of procedural safeguards against recurrence. *Id.* at 971-74. Where, as here, the

13   "Government's 'voluntary cessation' is more aptly described as reemphasizing, or recommitting to, an

14   existing policy of consistent enforcement of longstanding regulation" or law, rather than a change in

15   policy, this is a "distinci[ve]" context where the presumption of good faith "is at an apex," as concerns

16   regarding recurrence present in other contexts are "not present here." *Id*. 973 (citing *Am. Cargo Transp.,*

17   *Inc. v. U.S.*, 625 F.3d 1176, 1180 (9th Cir. 2010), and *White v. Lee*, 227 F.3d 1214, 1244 (9th Cir.

18   2000)); *Freedom from Religion Found., Inc. v. Orange Cnty. Sch. Bd.*, 30 F.Supp.3d 1358, 1364 (M.D.

19   Fla. 2014) (recognizing that "a voluntary cessation more aptly described as reemphasizing, or

20   recommitting to, an existing policy of consistent enforcement of a longstanding regulation," rather than

21   "a policy change[,]" is a "distinct[]" type of voluntary cessation) (quoting *Rosebroc*k, 745 F.3d at 973)),

22   *aff'd*, 610 F. App'x 844 (11th Cir. 2015). "Consequently, when the Government has "recommit[ted] to a

23   preexisting policy in favor of consistent[] enforce[ment]," where the presumption of good faith is

24   "especially strong," the Government can meet its "heavy burden" of mootness without having to satisfy

25

26

27

28

MOTION TO DISMISS

"procedural safeguards" against recurrence or "the ease of changing course." *Id.* at 973-74 (internal citations omitted).

Here, USBP's response to Plaintiffs' claims is on all fours with the Court's conclusions in *Rosebrock*. Border Patrol agent trainees are provided over 100 hours of legal instruction at the United States Border Patrol academy, which includes training on stops under the Fourth Amendment and warrantless arrests under 8 U.S.C. § 1357(a)(2). *See* Ex. E (Eduardo Cantu Decl.) at ¶¶ 4-5. Plaintiffs allege that Border Patrol agents nonetheless engaged in a pattern of violating the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8 (implementing the Fourth Amendment and 8 U.S.C. § 1357). In response, Border Patrol El Centro Sector has issued Musters broadcasting the law applicable to assessing reasonable suspicion and for assessing flight risk under § 1357(a)(2), as well as the need to document the reasons for these stops and arrests as soon as practicable, and is training its approximately 900 agents on the Musters. Exs. A, B, C. Similarly, in response to Plaintiffs' Fifth Amendment claims, USBP has issued a Muster ensuring compliance with the Fifth Amendment in the way it obtains a knowing and voluntary waiver of rights through the Form I-826. Indeed, to ensure compliance with the law and to assuage Plaintiffs' concerns, USBP has instructed officers on best practices that should preclude the very allegations in this suit.

These actions do not establish new policies; rather, they demonstrate USBP's commitment to remedy any prior 'inconsistent enforcement' and to strictly adhere to an existing policy of consistent law enforcement within this circuit. *Rosebrock*, 745 F.3d at 973-74 (internal citation omitted). And because the presumption of good faith is "especially strong" in this distinct type of voluntary cessation, the USBP can meet its "heavy burden" of mootness without having to satisfy "procedural safeguards" against recurrence or "the ease of changing course." [6] *Id.* at 974 (explaining that, "in light of the

_____

[6] The court in *Rosebrock* "[n]onetheless" analyzed five factors applicable to mootness in other contexts to assess whether the voluntary cessation was "procedurally protected" from recurrence. 745 F.3d at

presumption" applicable to the distinct type of voluntary cessation where an agency recommits to

preexisting law, the government can meet its "heavy burden of demonstrating mootness" without having

to satisfy "*procedural safeguards or the ease of changing course*") (emphasis added) (citing *Bell v. City

of Boise*, 709 F.3d 890, 900-01 (9th Cir. 2003)); *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 839 (E.D.

Cal. 2024) (where the court found Plaintiff's Complaint moot given that the Defendant voluntarily

ceased the conduct at issue and the exception to mootness did not apply even where the government was

not a party).

**D.    Plaintiffs' Voluntary Departure Claim (Claim IV) Fails Because They Have Not
Established a Liberty Interest Nor Have They Demonstrated Prejudice.**

Plaintiffs have not demonstrated that they have a constitutionally protected liberty interest to

remain in the United States, and thus their Fifth Amendment due process claim necessarily fails.

"[I]mmigration proceedings must conform to the Fifth Amendment's due process requirement." *Lacsina

Pangilian v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009). However, "[t]o bring a successful procedural

due process claim, a plaintiff must point to (1) the deprivation of a constitutionally protected liberty or

---

973. But this was not essential to its holding, as ultimately the court concluded by reiterating the
"especially strong" presumption of good faith applicable in cases where the Government is
"recommitting to consistent enforcement of one of its own longstanding regulations" or laws, rather than
changing policy, and how mootness in this context does not require a demonstration of procedural
safeguards against recurrence. *Id.* In any event, the Musters are "broad in scope and unequivocal
in tone." *Id.* at 972. The Musters broadly apply to all El Centro Border Patrol agents that are the subject
of the complaint, *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2000) (following "the principle of
party presentation[,]" courts "rely on the parties to frame the issues for decision" and should not assume
a larger problem), and states that Border Patrol agents "should" document the facts of an arrest as soon
as practicable, *see Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 502
(9th Cir. 2018) (the term "'should' is fully capable of expressing obligation or necessity") (citing
*Garner's Dictionary of Legal Usage* (3d ed. 2011)), *rev'd in part, vacated in part sub nom. Regents*, 591
U.S. 1); *Brackeen v. Haaland*, 994 F.3d 249, 430-31 (5th Cir. 2021) ("the term 'should' often 'create[s]
mandatory standards'") (quoting *Garner's Dictionary of Legal Usage* (3d ed. 2011)). The Musters also
fully address all the objectionable stops and arrests allegedly perpetrated by Border Patrol during
Operation Return to Sender. *See Rosebrock*, 745 F.3d at 972. That is, the Musters discuss reasonable
suspicion requirements in all contexts and discuss factors to assess for flight risk. Exs. A-B, D
Moreover, the first Muster has been in place since April 2025, and Border Patrol El Centro Sector has
not engaged in any alleged similar conduct since Operation Return to Sender. *Id.*

property[7] interest." *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018). Thus, it is insufficient to allege a denial of adequate procedural protections alone. *Id.*; *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006); *Moran v. Godinez*, 57 F.3d 690, 698 (9th Cir. 1995) ("[P]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement"). In order to demonstrate a valid liberty interest, Plaintiffs must show an *entitlement* to a constitutionally protected interest, not a mere desire for it. *See Chen v. U.S. I.N.S.*, 105 F. App'x 214, 215 (9th Cir. 2004); *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, Plaintiffs have failed to show that they possess a constitutionally protected liberty interest in remaining in the United States, so their Fifth Amendment due process claim must fail. Notably, Plaintiffs' Complaint does not adequately allege any entitlement to a liberty interest or protection from removal. Had they claimed a right to relief from removal, they would need to establish a plausible entitlement to mandatory, rather than discretionary, relief. *Calleja Leyva v. Gonzales*, 215 F. App'x 582, 583 (9th Cir. 2006) ("aliens have no fundamental right to discretionary relief from removal for purposes of due process"); *Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016) (quoting *Hyuk Joon Lim v. Holder*, 710 F.3d 1074, 1076 (9th Cir. 2013) ("Discretionary immigration relief gives rise to no 'substantive interest protected by the Due Process Clause.'")); *Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006) (finding no liberty interest in cancellation of removal, even if all statutory requirements are satisfied"). It is undisputed that Plaintiffs Mendez and Espinosa, who are the Plaintiffs named in the voluntary departure claim (Claim IV), lack legal status in the United States and are, therefore, removable. *See* Compl. at ¶¶ 103-64; ECF No. 15-8, Espinosa Decl. at ¶¶ 2-3; ECF No. 15-6, Mendez Decl. at ¶¶ 2-3. Plaintiffs have also not shown that UFW are not removable. Consequently, Plaintiffs

---

[7] In the immigration context, a deprivation of a property interest is rarely asserted in a Fifth Amendment due process claim, and Plaintiffs do not allege a depravation of property. Thus, Defendants' Motion to Dismiss focuses on whether a liberty interest exists.

have not alleged in their Complaint that they are plausibly entitled to any mandatory relief from removal such as Withholding, protection under the Convention against Torture, or a right or privilege of citizenship. *See* 8 U.S.C. § 1231(b)(3); *see also* C.F.R. § 208.16(d)(1). For this reason, their voluntary departure claim (Claim IV) must fail.

Even if Plaintiffs had established a liberty interest—which they have not—they would still need to demonstrate prejudice in order to prevail on their Fifth Amendment due process claim. *See e.g., Lacsina Pangilinan*, 568 F.3d 708, 709 (9th Cir. 2009) (explaining that in order to prevail on a due process claim "the alien [must] demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation. (internal quotations and citations omitted). Specifically, Plaintiffs "must present 'plausible scenarios in which the outcome of the proceedings would have been different' if a more elaborate process were provided." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc) (quoting *Walters v. Reno*, 145 F.3d 1032, 1044 (9th Cir.1998); *see also Zolotukhin v. Gonzales*, 417 F.3d 1073, 1077 (9th Cir. 2005) (prejudice requires a showing "that the outcome of the proceeding may have been affected by the alleged violation.") (internal quotations and citations omitted). In the context of abbreviated removal procedures—like voluntary departure—the alien must demonstrate that they had a "plausible ground for relief" to demonstrate prejudice arising from the lack of formal removal proceedings. *Padilla v. Ashcroft,* 334 F.3d 921, 924-25 (9th Cir. 2003); *see* Compl. at ¶ 319(defining class by aliens who have a "plausible basis to contest their removal").

Here, Plaintiffs have not plausibly alleged that the outcome in their removal proceedings would have been different if Defendants afforded them a "more elaborate process" prior to their voluntary return. *See Morales-Izquierdo*, 486 F.3d at 495. That is, they have not alleged a "plausible ground for relief" from removal. *See Padilla*, 334 F.3d at 924-25. Rather, Plaintiffs vaguely assert "Border Patrol did not inform people in their custody of the penalties that voluntary departure carries, including a three- or ten-year period of "inadmissibility" for reentry to the United States, either verbally or in writing. *See*

8 U.S.C. § 1182(a)(9)(B)(i)(I)–(II)." *See* Compl. at ¶ 243. However, in order to prove prejudice, Plaintiffs would have to show that they would not have been subjected to the three- or ten-year inadmissibility bar if their due process rights had not been violated. Thus, because Plaintiffs have not alleged that they would have been entitled to some mandatory form of relief that would have prevented them from being subject to the three- or ten-year period of "inadmissibility," they cannot show prejudice, and their Fifth Amendment due process claim still fails. *Hussain*, 985 F.3d at 645 ("To prevail on a due process challenge to deportation proceedings, [the petitioner] must show [both] error and substantial prejudice.") (quoting *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020)).

**E.    Alternatively, this Court Should Dismiss Plaintiffs' Complaint Under Rule 12(b)(6) Because None of the Three Classes Can Be Certified.**

Courts may dismiss or strike a class at the pleading stage, in advance of a motion for certification, if the Complaint demonstrates the proposed class is facially defective.  *Vinol.*, 571 F.3d at 942 ("District courts have broad discretion to control the class certification process, including whether discovery is needed"); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("dismissal of class allegations at the pleading stage should be done rarely"); *In re Walls*, 262 B.R. 519, 524 (Bankr. E.D. Cal. 2001) (reviewing a motion to deny class certification based on the pleadings, prior to discovery, as a Rule 12(b)(6) motion to dismiss); *Tirado v. Victoria's Secret Stores*, LLC, 2025 WL 859878, at *3-4 (E.D. Cal. Mar. 19, 2025) ("Rule 12 motions seeking to dismiss or strike class allegations are common enough, in fact, that federal courts have often been asked to decide whether to entertain the question at the pleadings stage or to defer the issue until the plaintiffs seek class certification").  The pleadings alone will "often" fall short of showing whether claims can be certified for class litigation.  *Vinole*, 571 F.3d at 942.  But a complaint must have some "factual support" beyond a bare assertion that the plaintiffs bring claims on behalf of a class.  *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021).  "[I]f a class action omplaint could survive a motion to dismiss based merely on the need for class discovery, then many, if not all, class action complaints would have expansive class allegations and definitions to permit a fishing expedition during discovery." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 2015 WL 12912337, at *4 (C.D. Cal.

Mar. 16, 2015). Thus, when the problem with the class allegations is "facially evident, it makes sense to address the issue early on." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 883 (N.D. Cal. 2024).

### 1. The Suspicionless Stop and Warrantless Arrest Classes Are Fatally Overbroad

Section 1252(b)(9) bars district court review of challenges to "an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Security Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018)). These claims are instead reviewed *exclusively* through administrative process and a petition for review filed in the appropriate court of appeal. *Jennings*, 583 U.S. at 294; 8 U.S.C. § 1252(a)(5).[8] Fourth Amendment claims alleging race-based stops by immigration authorities prior to removal proceedings are reviewed as part of the removal process. *Sanchez v. Sessions*, 904 F.3d 643, 649-54 (9th Cir. 2018) (addressing a Fourth Amendment challenge, and challenge under 8 C.F.R. § 287.8(b)(2), based on an alleged race-based stop arising prior to removal proceedings, with remedy being either suppression or termination without prejudice of removal proceedings); *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008) (hearing four tandem petitions for review alleging a pattern of Fourth and Fifth Amendment violations prior to removal proceedings). Indeed, in *Sanchez*, the Ninth Circuit asserted it had jurisdiction over the alien's Fourth Amendment claim as a challenge to removability appropriately brought in a petition for review. 904 F.3d at 649 ("Sanchez timely petitioned us for review" and "[w]e have jurisdiction over final orders of removal pursuant to 8 U.S.C. § 1252"). That the claimed violations occurred prior to the initiation of proceedings did not matter. The stop and arrest were part of the removal process and considered by the immigration judge—indeed, the Ninth Circuit could not have asserted jurisdiction under 8 U.S.C. § 1252

---

[8] Pursuant to 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provision, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final [removal] order." And a petition for review filed in the appropriate court of appeals is the "sole and exclusive means for judicial review" of a final removal order. 8 U.S.C.§ 1252(a)(5).

MOTION TO DISMISS

otherwise. And the courts of appeal have "exclusive" jurisdiction over any challenge to the removal process. *Jennings*, 583 U.S. at 293; 8 U.S.C. § 1252(a)(5).

It is undisputed that, just like the alien in *Sanchez*, named Plaintiffs Cisneros and Esquivel were issued Notices to Appear because of their stops and arrests and placed in removal proceedings. *See* Complaint at ¶¶ 63-65, 84-86; Cisneros Declaration ¶¶ 4-6, 17-18; Esquivel Declaration ¶¶ 17-18; Tr. Arg. at 36. Also like the alien in *Sanchez*, Plaintiffs Cisneros and Esquivel claim that their stops were race-based Fourth Amendment violations and violations of 8 C.F.R. § 287.8(b)(2). Compl. at ¶¶ 3, 285, 289. And just like the alien in *Sanchez*, these claims are challenges to their removal process and are exclusively the subject of administrative proceedings and a petition for review filed in the court of appeals. .  It is, therefore, incorrect to assert that (1) unlike *Sanchez*, no Plaintiffs challenge part of the removal process, and (2) *Sanchez* leaves open whether "an immigration court was the exclusive forum for [Sanchez's] claims." *United Farm Workers*, 2025 WL 1235525, at *17. And the Suspicionless Stop and Warrantless Arrest Classes are, therefore, impermissibly overbroad because they include claims by individuals over which the court lacks jurisdiction. [9] *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (assessing whether 8 U.S.C. § 1252(b)(9) precluded the district court's "jurisdiction over the claims of noncitizen claims members" and, therefore, precluded class certification due to atypicality with the citizen class representative) (citing *Pruell v. Caritas Christi*, 645 F.3d 81, 84 (1st Cir. 2011) (where the "district court [does not] ha[ve] jurisdiction over the claim of the class representative . .

---

[9] The administrative process can similarly consider a pre-removal proceeding violation under 8 U.S.C. § 1357(a)(2). The First Circuit has suggested that, if Fourth Amendment violations can result in termination of removal proceedings, a similar statutory violation under 8 U.S.C. § 1357(a)(2) would provide the same relief. *Westover v. Reno*, 202 F.3d 475, 479-80 (1st Cir. 2000). The First Circuit ultimately held termination of removal proceedings was not an available remedy for Fourth Amendment violations, but this was before *Sanchez* and, indeed, the court relied upon caselaw that predated the promulgation of regulations implementing 8 U.S.C. § 1357. *Compare Westover*, 202 F.3d at 480 (citing *Katris v. INS*, 562 F.2d 886, 869 (2d Cir. 1977)) with *Sanchez*, 908 F.3d at 651 (relying on the promulgation of 8 C.F.R. § 287.8 in 1994). In any event, the Suspicionless Stop class is overbroad.

MOTION TO DISMISS

.  it ha[s] no jurisdiction over the class action either even if the claims of some of the members of the class were within its jurisdiction").

This overbreadth is moreover not de minimus. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022). The majority of the named Plaintiffs are in removal proceedings and able and therefore *must* bring their Fourth Amendment claim in removal proceedings. *See* Compl. at ¶¶ 200-01, 229-30. This Court lacks jurisdiction over these named Plaintiffs and corresponding members of the proposed class' claims. This overbreadth is "fatal" to certification. *Olean*, 31 F.4th at 669 n.14. And even if not fatal, the classes require redefinition to exclude aliens in removal proceedings, which seems likely to render them insufficiently numerous for purposes of Rule 23(a)(1). *See Gonzalez*, 975 F.3d at 810 (8 U.S.C. § 1252(b)(9) did not bar a "Probable Cause Subclass" because it was "defined to *exclude* individuals against whom there is a final order of removal as well as any individual subject to ongoing removal proceedings") (emphasis in original).

*Regents,* 140 S. Ct. 1891, is not to the contrary. *United Farm Workers*, 2025 WL 1235525, at *18-19. *Regents* simply reiterates that 8 U.S.C. § 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." 591 U.S. at 19 (citing *Jennings*, 583 U.S. at 293) (internal quotations omitted). *Sanchez* states that challenging an unlawful stop that results in initiation of removal proceedings challenges the removal process and, pursuant to *Regents*, 8 U.S.C. § 1252(b)(9) is, therefore, a bar to district court review. *Regents* moreover involved a procedural challenge to the recission of the Deferred Action for Child Arrivals ("DACA") program and did not involve anyone in removal proceedings or any part of the removal process—it was a programmatic challenge. [10] *Regents*, 591 U.S. at

---

[10] It makes sense, then, that the courts of appeal continue to consider Fourth Amendment challenges, or other alleged violations occurring prior to initiation of removal proceedings, without consideration of *Regents*. *Medley v. Garland*, 71 F.4th 35, 40-50 (2d Cir. 2023); *Aguayo v. Garland*, 78 F.4th 1210,

10-16; *Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1027 (N.D. Cal. 2018) (discussing individual plaintiffs). Meanwhile, it is not for plaintiffs Cisneros and Esquivel to decide whether their claims are "challenging any removal proceedings" and pick their preferred forum. *Regents*, 591 U.S. at 19. They are in removal proceedings and their race-based Fourth Amendment claims, in fact, challenge part of their removal process and their forum is, consequently, administrative process and the court of appeal, per *Sanchez*.[11]

Therefore, because the proposed Suspicionless Stop and Warrantless Arrest classes include individuals in removal proceedings whose claims are barred from the court's review by §§ 8 U.S.C. 1252(a)(5) and (b)(9), these classes should be dismissed as fatally overbroad.

    2.  *The Voluntary Departure Class Facially Requires Individualized Analysis that Precludes Certification.*

For the same reasons discussed *supra* (§ "B") the Court should dismiss Plaintiffs' Voluntary Departure Class allegations because the face of the Complaint reveals that individual issues predominate over common ones. *CSE Safeguard Ins. Co. v. Hyundai Motor Am.*, 2024 WL 1832423, at *2-3 (C.D. Cal. Jan. 12, 2024) (class allegations which, on their face, are "riddled with individualized questions defeat[s] predominance" under Fed. R. Civ. P. 23(b)(3) and can be struck on the pleadings) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011)). It is impossible to determine "in one stroke" (1) whether each class member was coerced into voluntary departure and (2) whether each class member has a" plausible basis to contest removal." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); *CSE Safeguard Ins. Co.*, 2024 WL 1832423, at *2 (class allegations should be dismissed at the pleading stage only if an action cannot "possibly proceed on a classwide basis");

---

1216-21 (10th Cir. 2023); *Leal-Burboa v. Garland*, No. 21-70279, 2022 WL 17547799 (9th Cir. 2022) (alleged race-based stop challenged in removal proceedings).

[11] Indeed, there can be little doubt that Cisneros and Esquivel will bring the same Fourth Amendment and Warrantless arrest claims before the immigration judge – perhaps even the same allegations of a pattern or practice of unlawful stops and arrests, for nothing in 8 U.S.C. § 1252 exempts pattern or practice claims from its jurisdictional provisions and, in *Rajah*, 544 F.3d at 432, four aliens requested the Second Circuit hear their petitions for review in tandem in order to allege a pattern of Fourth and Fifth Amendment violations (although the court ultimately rejected the claims on the merits).

Compl. at ¶ 319. "[N]o amount of discovery" will overcome the individualized question of whether class

members are have a plausible basis to contest relief. *Pilgrim*, 660 F.3d at 949. Accordingly, because

individualized questions predominate, the Court should dismiss the Voluntary Departure Class

allegations on the pleadings. *CSE Safeguard Ins. Co.*, at *3.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint under Rule 12(b)(1)

and Rule 12 (b)(6).


Dated: July 14, 2025                                      Respectfully submitted

                                                         BRETT A. SHUMATE
                                                         Assistant Attorney General Civil Division

                                                         ANTHONY NICASTRO
                                                         Acting Director
                                                         Office of Immigration Litigation

                                                         MARY L. LARAKERS
                                                         Senior Litigation Counsel

                                         By:    /s/ *Carolyn D. Dillard*
                                                CAROLYN D. DILLARD
                                                U.S. Department of Justice, Civil Division
                                                Office of Immigration Litigation
                                                General Litigation and Appeals Section
                                                P.O. Box 878, Ben Franklin Station
                                                Washington, D.C. 20044
                                                Tel: (202) 514-7013
                                                Fax: (202) 305-7000
                                                Carolyn.D.Dillard@usdoj.gov

                                         By:    /s/ Tim Ramnitz
                                                TIM RAMNITZ
                                                Senior Litigation Counsel
                                                United States Department of Justice Civil
                                                Division
                                                Office of Immigration Litigation
                                                P.O. Box 878
                                                Washington, DC 20044
                                                (202) 616-2686
                                                Tim.ramnitz@usdoj.gov

MOTION TO DISMISS

1

*Attorneys for Defendants*

2

3

4

## <u>CERTIFICATE OF SERVICE</u>

5

On July 14, 2025, I electronically submitted the foregoing document with the Clerk of Court for

6

the U.S. District Court, Eastern District of California, using the electronic case filing system of the

7

court.  I hereby certify that I have served counsel of record electronically through the Court's filing

8

system.

9

<u>s/Carolyn Dillard</u>
Carolyn Dillard

10

Trial Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS