# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, *et. al.,*<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary of the United States Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 25-cv-00246-JLT-CDB<br><br>**DECLARATION OF SERGIO GUZMAN** |

I, Sergio Guzman, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Acting Patrol Agent in Charge (PAIC), El Centro Sector (ELC) Intelligence Unit (SIU), U.S. Border Patrol (USBP), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have held this position since May 2025.

2. In my position as the Acting PAIC of SIU, I oversee all operational and administrative functions of SIU. I provide guidance and direction to over 100 intelligence agents, in line with the vision of the ELC Chief Patrol Agent (CPA) and the goals of the USBP Intelligence Division. SIU is responsible for developing operational, tactical, and actionable intelligence in support of ELC operations and intelligence collection plans. I brief my chain of command which includes the Division Chief of Operations (DCO), the Deputy CPA, and the CPA on significant matters related to SIU. As a collateral duty, I also serve as the primary ELC point of contact for matters pertaining to this litigation.

3. Prior to holding this position, I served as the Acting Executive Officer (XO) from November 2024 to May 2025. In that role I assisted the DCO with overseeing ELC's administrative and operational functions including critical incident responses and law enforcement operations occurring within the sector. The DCO has direct oversight of the El Centro, Calexico, and Indio stations, the Special Operations Detachment, the Foreign Operations

1

1  Branch, and SIU. Prior to serving as the XO, I held the position of Deputy Patrol Agent in
2  Charge at the Calexico Station (CAX) from March 2022 to November 2024. In that role I
3  oversaw and ran the operational components of the station and made all station-wide decisions in
4  the absence of the Patrol Agent in Charge. I led four senior leaders and approximately 46 first-
5  line supervisors assigned to CAX, supporting CAX agents with the resources, infrastructure,
6  technology, and knowledge to assist them in performing their job at a higher level and in a safe
7  manner.

8      4. I am submitting this declaration in support of Defendants' Motion to Dismiss. I
9  submit this declaration to describe the guidance issued to ELC Border Patrol Agents (BPAs) since
10  the inception of this lawsuit. This declaration is based on my personal knowledge, information
11  made known to me from official records reasonably relied upon, and information conveyed to me
12  by my staff and other knowledgeable CBP personnel in the course of my official duties.

13      5. As previously described in my declarations of April 7, 2025, and April 25, 2025,
14  ELC issued a muster to all ELC employees on Friday, April 4, 2025, to provide instructions for
15  warrantless arrests effected by El Centro Sector BPAs under 8 U.S.C. § 1357(a)(2) in the Eastern
16  District of California.

17      6. ELC subsequently issued a muster to all ELC employees on Friday, June 27, 2025,
18  to provide instructions regarding the laws and policies applicable to investigative detentions, also
19  known as detentive stops, in compliance with the Court's Order Granting Plaintiffs' Motion for
20  Provisional Class Certification and Granting Plaintiffs' Motion for a Preliminary Injunction dated
21  April 29, 2025. This muster provided BPAs with instructions concerning how to determine
22  whether reasonable suspicion exists when conducting detentive stops, including vehicle stops, in
23  the Eastern District of California. A true and correct copy of the June 17, 2025, muster is attached
24  as Exhibit 1.

25      7. Most recently, on July 11, 2025, ELC issued a muster to all ELC employees to
26  provide instructions regarding the underlying legal bases applicable to Voluntary Departure under
27  INA § 240B and 8 C.F.R. § 240.25(c) (also known as Voluntary Return), to include the authority
28

1  to grant Voluntary Departure, the immigration consequences of Voluntary Departure, and
2  instructions for ensuring that an alien's election of Voluntary Departure is knowing, intelligent,
3  and voluntary. A true and correct copy of the July 11, 2025, muster is attached as Exhibit 2.

4      8.    The three musters described above constitute instructions to ELC BPAs regarding
5  warrantless arrests, investigative detentions, and Voluntary Departure, respectively. These
6  musters are not intended to go beyond what the law requires in the Ninth Circuit. ELC periodically
7  issues information to all ELC BPAs by email, to include instructions like the musters identified
8  above, directing BPAs in the performance of their duties. As a general matter, ELC does not
9  rescind such instructions that focus on compliance with legal requirements, other than to the extent
10 to which such issuances may be superseded by subsequent changes to law. Accordingly, ELC will
11 not withdraw or revise these musters unless there are changes to relevant law or policy. ELC
12 intends to keep these musters in place without revision.

13     9.    ELC has also arranged for the provision of legal training on the topics addressed in
14 the musters described above. To date, ELC has provided training to over 220 BPAs on
15 requirements for consensual encounters, investigative detentions, warrantless arrests, and
16 associated documentation, and has provided training to 46 BPAs and other employees currently
17 assigned to processing duties regarding requirements for Voluntary Departure and instructions for
18 ensuring that an alien's election of Voluntary Departure is knowing, intelligent, and voluntary.
19 ELC will continue providing training regarding consensual encounters, investigative detentions,
20 warrantless arrests, and associated documentation requirements until all ELC BPAs have received
21 this training, and will not abandon this training effort even in the absence of a legal requirement
22 to continue it.
23 //
24 //
25 //
26 //
27 //
28

10. I declare under penalty of perjury that the foregoing is true and correct. Executed on July 14, 2025, at El Centro, California.

*[signature]* 7/14/25

Sergio Guzman
Acting Patrol Agent in Charge
El Centro Sector
U.S. Border Patrol

# EXHIBIT 1

**June 17, 2025, Muster**

**El Centro Sector Muster**

**This Muster states the underlying laws and policies applicable to investigative detentions initiated by El Centro Sector Border Patrol Agents pursuant to the Fourth Amendment in the Eastern District of California, and is to be interpreted consistently with all controlling Supreme Court and Ninth Circuit case law.**

The guidance contained herein applies to all investigative detentions, also known as detentive stops, *Terry* stops, or roving patrol stops, conducted pursuant to INA § 287 [8 U.S.C. § 1357].

U.S. Border Patrol Agents ("BPAs") may briefly detain a person if the agent has reasonable suspicion, based on specific articulable facts, that the person stopped is, was, or is about to be, engaged in a violation of a law the BPA has the authority to enforce. An investigative detention is a temporary seizure of a person to investigate a specific reasonable suspicion of unlawful activity. The BPA's actions during the stop must be geared toward confirming or eliminating the BPA's reasonable suspicion of unlawful activity.

BPAs must develop reasonable suspicion before initiating an investigative stop. To develop reasonable suspicion, BPAs must identify specific, articulable facts, that when taken together with rational inferences from those facts, would lead a reasonable, objective BPA to believe that the person stopped is, was, or is about to be, engaged in a violation of a law the BPA has the authority to enforce. BPAs must evaluate the totality of the circumstances when assessing whether they have developed reasonable suspicion. BPAs may use their training and experience to provide meaning and context for the facts used to develop reasonable suspicion.

Information that may be considered when developing reasonable suspicion includes, but is not limited to:

- the location of an individual or vehicle in proximity to the border;
- the characteristics of the area in which the individual or vehicle is encountered;
- the previous travel patterns of the area, including foot or vehicle traffic;
- recent illegal border crossings in the area;
- the time of day an individual or vehicle is encountered;
- the association of the area with criminal activity;
- attempts to evade law enforcement, such as flight on foot or dangerous or erratic driving patterns;
- details revealed from records checks.

In the context of roving patrol stops, BPAs may also consider whether a certain type of vehicle is frequently used to transport contraband or illegal aliens, whether a vehicle contains components capable of smuggling aliens, and whether a vehicle appears heavily loaded with passengers. In areas where Hispanic individuals are common, an individual's apparent Hispanic race or ethnicity is not a relevant factor supporting reasonable suspicion. However, indicators that an individual is a foreign national based on mode of dress or haircut may be considered in developing reasonable suspicion, along with the presence of other, relevant factors.

An individual's refusal to answer a BPA's questions does not, without additional articulable facts, constitute a basis for reasonable suspicion to justify an investigative detention.

# EXHIBIT 2

**July 11, 2025, Muster**

**El Centro Sector Muster**

**This Muster provides the underlying legal bases applicable to all aliens processed for Voluntary Return under INA § 240B [8 U.S.C. § 1229c(a)(1)] and 8 C.F.R. § 240.25(c) by El Centro Sector Border Patrol Agents and is to be interpreted consistently with all implementing regulations and controlling Supreme Court and Ninth Circuit case law.**

A. Voluntary Return Authority

Aliens may elect and be granted Voluntary Return if they have not been convicted of an aggravated felony. INA § 240B(a)(1) [8 U.S.C. § 1229c(a)(1)]. For purposes of this Muster, the terms Voluntary Departure and Voluntary Return are used interchangeably.

To effectuate Voluntary Returns, El Centro Sector utilizes Form I-826, which contains the Notice of Rights and Advisals. Form I-826 allows the alien to select one of three options: (1) request a hearing before an immigration judge; (2) claim a fear of persecution upon return to his or her country; or (3) request to be returned to his or her country as soon as arrangements can be made to effect his or her departure. The election of Voluntary Return on the Form I-826 must be made by the alien after he or she has had an opportunity to read and understand the Notice of Rights and Advisals on the Form.

Voluntary Return may not be granted unless the alien requests it and agrees to its terms and conditions. 8 C.F.R. § 240.25(c).

B. Voluntary Return Consequences

An alien unlawfully present in the United States for more than 180 days and less than one year and who departs the United States is inadmissible for a period of 3 years; and an alien unlawfully present in the United States for one year or more and who departs or is removed from the United States is inadmissible for a period 10 years. INA § 212(a)(9)(B)(i)(I)-(II) [8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II)].

C. Voluntary Return Best Practices

An alien's election of Voluntary Return must be made knowingly, intelligently, and voluntarily. Agents cannot coerce or pressure an alien into electing Voluntary Return. Agents should:

- Provide Form I-826 to the alien in a language he or she understands to allow the alien to make an informed decision about electing Voluntary Return;
- When providing Form I-826 to the alien digitally, also provide a physical copy of Form I-826 to assist the alien in reviewing the Form;
- Ensure the alien has an opportunity to review Form I-826 in its entirety, and confirm that the alien understands the rights and advisals contained on the Form;
- Provide the Department of Justice list of free and low-cost legal service providers for the applicable area to the alien when he or she is presented with Form I-826, and provide the alien an opportunity to consult with an attorney or BIA Accredited Representative prior to making an election on Form I-826;
- Fully document the processing of the alien, including the provision of Form I-826 and list of free and low-cost legal service providers, on the Form I-213 pertaining to the alien;
- Allow the alien to cancel his or her election of Voluntary Return up until the alien is repatriated.