1   BREE BERNWANGER - # 331731
    bbernwanger@aclunc.org
2   MICHELLE (MINJU) Y. CHO - # 321939
    mcho@aclunc.org
3   LAUREN DAVIS - # 357292
    ldavis@aclunc.org
4   SHILPI AGARWAL - # 270749
    sagarwal@aclunc.org
5   AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN
6   CALIFORNIA
    39 Drumm Street
7   San Francisco, CA 94111
    Telephone: (415) 621-2493
8
    MAYRA JOACHIN - # 306065
9   mjoachin@aclusocal.org
    EVA BITRAN - # 302081
10  ebitran@aclusocal.org
    OLIVER MA - # 354266
11  oma@aclusocal.org
    AMERICAN CIVIL LIBERTIES UNION
12  FOUNDATION OF SOUTHERN
    CALIFORNIA
13  1313 West 8th Street
    Los Angeles, CA 90017
14  Telephone: (213) 977-5000

    BRISA VELAZQUEZ OATIS - # 339132
    bvoatis@aclu-sdic.org
    AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF SAN DIEGO &
    IMPERIAL COUNTIES
    P.O. Box 87131
    San Diego, CA 92138-7131
    Telephone: (619) 398-4199

    AJAY S. KRISHNAN - # 222476
    akrishnan@keker.com
    JASON GEORGE - # 307707
    jgeorge@keker.com
    JULIA L. GREENBERG - # 333864
    jgreenberg@keker.com
    REAGHAN E. BRAUN - # 340526
    rbraun@keker.com
    KEKER, VAN NEST & PETERS LLP
    633 Battery Street
    San Francisco, CA 94111-1809
    Telephone:    415 391 5400
    Facsimile:    415 397 7188

    *Attorneys for Plaintiffs*

15

16                  UNITED STATES DISTRICT COURT

17                  EASTERN DISTRICT OF CALIFORNIA

18                         FRESNO DIVISION

19   UNITED FARM WORKERS, et al.,              Case No. 1:25-cv-00246-JLT-CDB

20              Plaintiffs,                     **PLAINTIFFS' OPPOSITION TO
                                                DEFENDANTS' MOTION TO DISMISS**
21        v.
                                                Dept.:     Courtroom 4, 7th Floor
22   KRISTI NOEM, IN HER OFFICIAL              Judge:     Hon. Jennifer L. Thurston
     CAPACITY AS SECRETARY OF THE
23   DEPARTMENT OF HOMELAND                     Date Filed: February 26, 2025
     SECURITY; et al.,
24                                              Trial Date:  None set
              Defendants.
25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

   A.   Defendants conduct sweeping immigration raids in Kern County pursuant
        to an unlawful policy and practice. ........................................................... 2

   B.   Plaintiffs bring this lawsuit and obtain preliminary injunctive relief against
        Defendants' unlawful conduct. .................................................................. 5

   C.   Despite this Court's preliminary injunction order, Defendants continue to
        conduct suspicionless stops and mass warrantless arrests. ........................ 6

III.  STANDARDS OF REVIEW ............................................................................... 7

   A.   Federal Rule of Civil Procedure 12(b)(1) ................................................... 7

   B.   Federal Rule of Civil Procedure 12(b)(6) ................................................... 8

IV.   ARGUMENT ...................................................................................................... 8

   A.   Plaintiffs have standing to seek the relief they seek. .................................. 8

        1.   Each of the individual Plaintiffs has standing. ............................... 9

        2.   Plaintiff UFW has associational standing. ..................................... 12

             a.   UFW's members face real and immediate threats. ................ 12

             b.   UFW's mission includes protecting its members from
                  unlawful immigration practices. .......................................... 12

             c.   UFW's members need not participate in this suit. ................ 13

   B.   Defendants' made-for-litigation musters do not moot Plaintiffs' claims. ............ 14

        1.   The musters do not sufficiently address Defendants' unlawful
             conduct. ........................................................................................ 15

        2.   Defendants' implementation of the musters does not show a
             permanent or entrenched change in conduct. ................................. 18

   C.   Plaintiffs have sufficiently pled their Fifth Amendment claim. ....................... 21

        1.   Plaintiffs have adequately alleged a violation of their Fifth
             Amendment due process right to a full and fair removal hearing. .......... 21

        2.   Plaintiffs are not required to show prejudice but have done so here. ....... 23

   D.   Defendants provide no basis to dismiss the class claims. ............................ 25

i

1             1.     This Court has jurisdiction over the stop and arrest claims of
individuals in removal proceedings. ....................................................... 26

2.

            2.     Individualized inquiries are not required for the voluntary departure
class claims. ........................................................................................... 28

V.       CONCLUSION ................................................................................................ 30

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
Case No. 1:25-cv-00246-JLT-CDB

3004944

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.O. v. Cuccinelli*,
    457 F.Supp.3d 777 (N.D. Cal. 2020) ................................................................. 19

*ArcBest II, Inc. v. Oliver*,
    593 F. Supp. 3d 957 (E.D. Cal. 2022) ............................................................... 19

*Arrey v. Barr*,
    916 F.3d 1149 (9th Cir. 2019) ..................................................................... 22, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 8, 19

*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013) ............................................................... 15, 19, 21

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ......................................................................... 29

*Cal. Rest. Ass'n v. City of Berkeley*,
    89 F.4th 1094 (9th Cir. 2024) .......................................................................... 12

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
    917 F.2d 1171 (9th Cir. 1990) ......................................................................... 13

*Cervantes v. City of San Diego*,
    5 F.3d 1273 (9th Cir. 1993) ............................................................................... 8

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................... 9, 10, 12

*Cole v. City of Memphis*,
    839 F.3d 530 (6th Cir. 2016) ........................................................................... 29

*Columbia Basin Apartment Ass'n v. City of Pasco*,
    268 F.3d 791 (9th Cir. 2001) ........................................................................... 13

*Comm. of Cent. Am. Refugees v. INS*,
    795 F.2d 1434 (9th Cir. 1986) ......................................................................... 24

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
    911 F.2d 242 (9th Cir. 1990) ............................................................................. 8

*DHS v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ................................................................................................ 26

*Dillingham v. I.N.S.*,
   267 F.3d 996 (9th Cir. 2001), *overruled on other grounds by Nunez-Reyes v.*
   *Holder*, 646 F.3d 684 (9th Cir. 2011) ................................................................ 23

*Doe #1 v. Trump*,
   335 F.R.D. 416 (D. Or. 2020) ............................................................................ 30

*Doe v. Hagee*,
   473 F. Supp. 2d 989 (N.D. Cal. 2007) .............................................................. 10

*Estrada v. INS*,
   775 F.2d 1018 (9th Cir. 1985) ........................................................................... 23

*Fikre v. FBI*,
   904 F.3d 1033 (9th Cir. 2018) .................................................................... *passim*

*Fla. State Conf. of NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) ......................................................................... 12

*Florida v. Royer*,
   460 U.S. 491 (1983) ........................................................................................... 18

*Forest Guardians v. Johanns*,
   450 F.3d 455 (9th Cir. 2006) ............................................................................. 15

*Gluth v. Kangas*,
   951 F.2d 1504 (9th Cir. 1991) ........................................................................... 20

*Gonzalez v. ICE*,
   975 F.3d 788 (9th Cir. 2020) ................................................................. 11, 26, 28

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) ........................................................................... 11

*Hunt v. Wash. St. Apple Adver. Comm'n*,
   432 U.S. 333 (1977) ........................................................................................... 12

*Ibarra-Flores v. Gonzales*,
   439 F.3d 614 (9th Cir. 2006) ............................................................................. 22

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ........................................................................... 27

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ........................................................................................... 27

iv

*King v. Nat'l Gen. Ins. Co.*,
  2021 WL 2400899 (N.D. Cal. June 11, 2021) ................................................................ 25

*L.A. Cnty. v. Davis*,
  440 U.S. 625 (1979).......................................................................................................... 15

*LaDuke v. Nelson*,
  762 F.2d 1318 (9th Cir. 1985), amended 796 F.2d 309 (9th Cir. 1986)........................... 9, 10

*Larin-Dominguez v. Holder*,
  524 Fed. App'x 370 (9th Cir. 2013) ................................................................................. 24

*Lee v. Hertz Corp.*,
  330 F.R.D. 557 (N.D. Cal. 2019) ..................................................................................... 25

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014)............................................................................................ 8

*Lengen v. Gen. Mills, Inc.*,
  185 F. Supp. 3d 1213 (E.D. Cal. 2016).............................................................................. 25

*Lopez-Venegas v. Beers*,
  2013 WL 12474081 (C.D. Cal. Dec. 27, 2013)..................................................... 11, 22, 23

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012).................................................................................... 8, 9, 10

*Moran v. Burbine*,
  475 U.S. 412 (1986).......................................................................................................... 23

*NAACP v. Ala. ex. Rel. Patterson*,
  357 U.S. 449 (1958).......................................................................................................... 13

*Nasrallah v. Barr*,
  590 U.S. 573 (2020).......................................................................................................... 26

*Nava v. DHS*,
  435 F. Supp. 3d 880 (N.D. Ill. 2020) ............................................................................... 26

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001).............................................................................................. 8

*Nicacio v. INS*,
  797 F.2d 700 (9th Cir. 1985).............................................................................................. 11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, Inc.*,
  31 F.4th 651 (9th Cir. 2022)............................................................................................... 28

*Orantes-Hernandez v. Smith*,
  541 F. Supp. 351 (C.D. Cal. 1982) ............................................................................. 16, 22

*Orantes-Hernandez v. Thornburgh*,
    919 F.2d 549 (9th Cir. 1990) ............................................................................ 22

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) ............................................................................. 27

*Reno v. Flores*,
    507 U.S. 292 (1993) .................................................................................... 22, 23

*Reynolds v. Preston*,
    2023 WL 2825932 (N.D. Cal. Mar. 15, 2023), *rev'd on other grounds* 2024
    WL 2891205 (9th Cir. June 10, 2024) .............................................................. 21

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014) ................................................................ 15, 20, 21

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ............................................................................ 8

*Sanchez v. Sessions*,
    904 F.3d 643 (9th Cir. 2018) ....................................................................... 25, 27

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973) .......................................................................................... 17

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015) ............................................................................. 29

*Shook v. El Paso Cnty.*,
    386 F.3d 963 (10th Cir. 2004) ......................................................................... 29

*Singh v. Gonzales*,
    499 F.3d 969 (9th Cir. 2007) ........................................................................... 27

*Snyder v. TAMKO Bldg. Prods., Inc.*,
    2018 WL 3241805 (E.D. Cal. July 2, 2018) .................................................... 25

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
    770 F.3d 1282 (9th Cir. 2014) .................................................................... 13, 14

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
    108 F.4th 1128 (9th Cir. 2024) ........................................................................ 13

*Stevens v. Harper*,
    213 F.R.D. 358 (E.D. Cal. 2002) ..................................................................... 11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) .................................................................................... 12, 14

vi

3004944

*Thomas v. County of Los Angeles*,
   978 F.2d 504 (9th Cir. 1992)...................................................................................... 9

*B.K. ex rel. Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ..................................................................................... 10

*Torres v. DHS.*,
   411 F. Supp. 3d 1036 (C.D. Cal. 2019) .................................................................... 24

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   582 U.S. 449 (2017)................................................................................................... 15

*U.S. v. Melendez-Castro*,
   671 F.3d 950 (9th Cir. 2012) ..................................................................................... 24

*United Farm Workers v. Noem*,
   --- F. Supp. 3d ---, 2025 WL 1235525 (E.D. Cal. Apr. 29, 2025)....................10, 11

*United States v. Brignoni-Ponce*,
   422 U.S. 873 (1975) .................................................................................................. 18

*United States v. Brown*,
   925 F.3d 1150 (9th Cir. 2019) ................................................................................... 18

*United States v. Manzo-Jurado*,
   457 F.3d 928 (9th Cir. 2006).................................................................................17, 18

*United States v. Mendenhall*,
   446 U.S. 544 (1980) .................................................................................................. 18

*United States v. Montero-Camargo*,
   208 F.3d 1122 (9th Cir. 2000) ................................................................................... 17

*United States v. Ramos*,
   623 F.3d 672 (9th Cir. 2010) ..................................................................................... 22

*United States v. Wahchumwah*,
   710 F.3d 862 (9th Cir. 2013)...................................................................................25, 26

*Vasquez Perdomo v. Noem*,
   --- F.4th ---, 2025 WL 2181709 (9th Cir. 2025)......................................... *passim*

*Vasquez Perdomo v. Noem*,
   --- F. Supp. 3d ---, 2025 WL 1915964 (C.D. Cal. 2025) ............................... *passim*

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009)..................................................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................................... 29

3004944

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ..................................................................22, 24, 28

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977) ............................................................................ 8

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972) ......................................................................... 30

*In re Yahoo Mail Lit.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ................................................................... 30

*Yamataya v. Fisher*,
    189 U.S. 86 (1903) ....................................................................................21, 23

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ........................................................................................ 23

*Zolotukhin v. Gonzales*,
    417 F.3d 1073 (9th Cir. 2005) ........................................................................ 24

**Federal Statutes**

8 U.S.C. § 1182 ..................................................................................................... 16

8 U.S.C. § 1229 ................................................................................................22, 24

8 U.S.C. § 1231 ..................................................................................................... 22

8 U.S.C. § 1252 ............................................................................................6, 26, 27

8 U.S.C. § 1357 ....................................................................................................... 3

**Rules**

Fed. R. Civ. Proc. 12 .......................................................................................... 7, 8

Fed. R. Civ. Proc. 23 ..................................................................................... *passim*

**Regulations**

8 C.F.R. § 1240.49 ............................................................................................... 24

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
Case No. 1:25-cv-00246-JLT-CDB

3004944

## I.    INTRODUCTION

In January 2025, U.S. Border Patrol agents traveled hundreds of miles inland to this district to indiscriminately detain and arrest people of color in and around Kern County. Border Patrol made these detentions and arrests—including of U.S. citizens and lawful permanent residents—on assumptions about skin color or occupation and without the individualized assessments that the Constitution and federal law require. Border Patrol also tricked and coerced detained individuals, without providing an explanation of their rights or the consequences of departure, into "voluntary" expulsion from the country. Despite these flagrant violations of well-settled law, Defendants hailed this pilot program, known as "Operation Return to Sender," as a "success from day one." Compl. ¶ 246; Dkt. 15-2, Ex. 11. This Court enjoined further unlawful stops and arrests. *See* Dkt. 47.

In the months following this proof-of-concept, federal officials have doubled down: they've publicly exclaimed their continued goals of increasing arrests and removals with "a minimum of 3,000 arrests . . . every day." Decl. of Julia L. Greenberg ("Greenberg Decl."), Ex. 1 at 2. Border Patrol agents have expressed their ongoing intent to deploy similar tactics in Bakersfield, Fresno, Sacramento, and other areas. *See* Compl. ¶¶ 247-48; Dkt. 15-2, Exs. 2, 3, 10, 17. Indeed, they've done exactly that. In June and July 2025, federal agents led by the El Centro Border Patrol Sector followed the same playbook with "Operation at Large," stopping Latinos in and around Sacramento and Los Angeles without reasonable suspicion and arresting them without the necessary probable cause. *See* Greenberg Decl., Exs. 2, 3; *Vasquez Perdomo v. Noem*, --- F.4th ---, 2025 WL 2181709, at *1-8 (9th Cir. 2025); Decl. of Filiberto de Jesus Rivera-Molina ("Rivera-Molina Decl."); Decl. of Isael Lopez Mazariegos ("Lopez Mazariegos Decl.").

Although federal officials brazenly continue to violate federal law, Defendants now move to dismiss the claims against them, rehashing many of the same arguments this Court rejected in granting Plaintiffs' motion for a preliminary injunction. *See* Dkt. 47. So too have Defendants lost many of these very arguments before the Central District and the Ninth Circuit. *See Vasquez Perdomo v. Noem*, --- F. Supp. 3d ---, 2025 WL 1915964, at *1 (C.D. Cal. 2025) (granting temporary restraining order to enjoin similar defendants from detaining and arresting Latinos

without reasonable suspicion in similar operations); *Vasquez Perdomo*, 2025 WL 2181709, at *1 (denying motion to stay temporary restraining order). And yet Defendants ignore the court orders, misstate the law, and attempt to shut their eyes to Plaintiffs' allegations.

This Court should reject Defendants' attempt to evade the law. At the outset, Defendants' challenges to this Court's jurisdiction fail. Plaintiffs have standing to seek relief against Border Patrol's ongoing policies and practices. Defendants also cannot carry their heavy burden of showing mootness—which requires Defendants to prove that it is ***absolutely clear*** that the alleged conduct cannot reasonably be expected to recur—by issuing non-binding, inaccurate, and made-for-litigation "muster" policy documents. On the merits, Defendants lose too. Plaintiffs have adequately alleged that Defendants violate the Fifth Amendment by deceiving and coercing detained individuals into accepting voluntary departure, and nothing in the law requires, as Defendants contend, proof that Plaintiffs would win relief from removal to vindicate that right. Finally, Defendants' procedurally mislabeled motion to strike Plaintiffs' class allegations are based on jurisdictional arguments this Court has already rejected and class principles inapplicable to the Rule 23(b)(2) classes at issue here.

Accordingly, the Court should deny Defendants' motion to dismiss.

## II.    BACKGROUND

### A.    Defendants conduct sweeping immigration raids in Kern County pursuant to an unlawful policy and practice.

In January 2025, over sixty Border Patrol agents from the El Centro Sector traveled hundreds of miles north of the border where they fanned out to raid the community. *See, e.g.*, Compl. ¶¶ 1-4; Dkt. 15-2, Exs. 17, 18. Agents put into operation a policy and practice: stop without reasonable suspicion, arrest without assessing flight risk, and coerce "voluntary" departures to remove as many people as possible.

Plaintiffs allege (and have submitted declarations showing) nearly a dozen unlawful stops from this "Operation Return to Sender."[1] Each documented encounter began with a detentive stop

---

[1] Since the filing of the complaint, Plaintiffs have learned at least 77 of the 78 arrests (and countless other stops) under "Operation Return to Sender" were conducted pursuant to Border Patrol's same lawless practices. *See* Compl. ¶¶ 4, 138, 245; Dkt. 38-1, Ex. 1. Moreover, this operation took place in dozens of locations over multiple days. *See* Compl. ¶¶ 4-7.

3004944

without an individualized determination of reasonable suspicion that the person stopped was unlawfully in the country. As a result, Border Patrol agents stopped people who are lawfully in the country—such as Mr. Ernesto Campos Gutierrez, a U.S. citizen, and Plaintiff Yolanda Aguilera Martinez, a lawful permanent resident—and failed to provide justification for these stops, even when asked. Compl. ¶¶ 90-102; Dkt. 15-4 ("Campos Gutierrez Decl.") ¶¶ 2, 5-9; Dkt. 15-11 ("Aguilera Martinez Decl.") ¶¶ 2, 6-7, 11. Likewise, each of the documented arrests was performed without an individualized determination of probable cause that the person was likely to escape before a warrant could be obtained. *Id.*

In conducting vehicle stops during the raids, Border Patrol targeted Latino neighborhoods and farm roads in agricultural areas, indiscriminately pulling over cars with non-white drivers and passengers. *See, e.g.*, Compl. ¶¶ 51-55, 90-94, 128-36, 165-69, 187-191; Dkt. 15-8 ("Hernandez Espinoza Decl.") ¶¶ 4, 22; Dkt. 15-6 ("Vargas Mendez Decl.") ¶ 4; Dkt. 15-3 ("Strater Decl.") ¶¶ 26, 37-38; Campos Gutierrez Decl. ¶¶ 2, 15. In each instance, Border Patrol agents stopped vehicles that were properly registered, driving well within the speed limit, and obeying traffic laws. *See, e.g.*, Compl. ¶¶ 91, 105, 166, 188, 205; Campos Gutierrez Decl. ¶ 3; Vargas Mendez Decl. ¶ 5; Hernandez Espinoza Decl. ¶ 4; Aguilera Martinez Decl. ¶ 4; Strater Decl. ¶¶ 26, 38. Similarly, Border Patrol agents targeted the parking lots for businesses in Latino neighborhoods and those that serve farm workers and day laborers. *See* Compl. ¶¶ 235-37. There, agents approached non-white people without warrants and questioned them about their immigration status. *See, e.g.*, Compl. ¶¶ 71-77, 195-97; Dkt. 15-5 ("Ramirez Decl.") ¶¶ 4, 7 (stopped while standing in Home Depot parking lot); Dkt. 15-10 ("Munguia Esquivel Decl.") ¶¶ 5-8 (same); Dkt. 15-7 ("Perez Cruz Decl.") ¶¶ 3-4 (same). Agents provided no explanation for their stops except to demand "papers" or identification. Compl. ¶¶ 51, 58, 73, 92, 167-68 197, 264.

Following these unlawful stops, Border Patrol carried out warrantless arrests without performing any individualized evaluation of flight risk pursuant to 8 U.S.C. § 1357(a)(2). Compl. ¶¶ 8, 239, 249, 280, 283, 327. None of the declarants conceivably posed a flight risk—each of them had families, jobs, and residences in the community for which they were financially responsible. Compl. ¶¶ 26-31. Nevertheless, Border Patrol failed to ask any questions to perform

the requisite individualized inquiry. For example, Border Patrol arrested Plaintiff Vargas Mendez, without a warrant and without asking about his family or community ties, and kept him in custody even after he pleaded with the agents that he has lived in the area for 20 years and his wife and children are U.S. citizens. *Id.* ¶¶ 103-13; Vargas Mendez Decl. ¶¶ 2, 3, 10-11. Likewise, Border Patrol arrested Mr. Jesus Ramirez, who is the primary caretaker of his minor son, without any inquiry regarding his family and community ties or information to perform an assessment of Mr. Ramirez's flight risk. Compl. ¶¶ 195-199; Ramirez Decl. ¶¶ 6-7. These are not outliers. *See also* Compl. ¶¶ 8, 239, 249, 280, 283, 327; Perez Cruz Decl. ¶ 4; Morales Cisneros Decl. ¶ 6; Campos Gutierrez Decl. ¶¶ 4, 9; Aguilera Martinez Decl. ¶¶ 6-8; Strater Decl. ¶¶ 29, 41.

These unlawful warrantless arrests had significant consequences. Border Patrol transported individuals it arrested 300 miles south to the El Centro Border Patrol Station. *See* Compl. ¶¶ 1, 241. At the El Centro Station, agents held people in windowless, cold cells without beds or warm blankets, access to showers, hygiene products, or sufficient food, and deprived them of adequate sleep—all while ignoring the person's requests to make phone calls or speak to attorneys. *See, e.g.*, Compl. ¶ 142; Vargas Mendez Decl. ¶¶ 16-19; Hernandez Espinoza Decl. ¶¶ 12-19; Strater Decl. ¶¶ 31-32. During the same period, Border Patrol agents pressured people in their custody to sign documents without providing the documents in a language or format they could view or read, explaining their rights, or informing them of the immigration consequences of signing such documents—at times using deceit to coerce people to sign them. *See, e.g.*, Compl. ¶¶ 243-44. These documents were apparently voluntary departure agreements, which waived the individuals' rights to immigration hearings and facilitated their immediate removal from the country. *Id.* Dozens of district residents, including Plaintiffs Vargas Mendez and Hernandez Espinoza, are now stranded in Mexico after Border Patrol coerced them to accept voluntary departure, leaving behind their families, communities, homes, and livelihoods. *See, e.g.*, Compl. ¶ 245; Hernandez Espinoza Decl. ¶ 21; Vargas Mendez Decl. ¶ 21.

Border Patrol immediately made clear it planned to replicate "Operation Return to Sender" across the state, including announcing plans to continue to conduct unlawful raids of Latino, farm worker, and day laborer communities. Compl. ¶¶ 246-59. El Centro Border Patrol's

Chief Patrol Agent Gregory Bovino issued a press statement concerning "Operation Return to Sender," declaring Border Patrol "is no stranger to operations in places like Bakersfield, Stockton, Modesto, Fresno, and Sacramento." *Id.* ¶ 248; Dkt. 15-2, Ex. 17. El Centro Border Patrol also announced, "We are planning operations for other locals [sic] such as Fresno and especially Sacramento," as well as a return to Bakerfield. *Id.* ¶ 248; Dkt. 15-2, Exs. 3, 10. And in public posts promoting "Operation Return to Sender," El Centro Border Patrol likewise stated that there is "more to come," including ***return to sender round 2***." Dkt. 15-2, Exs. 1, 12.

Border Patrol has also declared its intent to increase the scope of its unlawful activity. Compl. ¶¶ 246-59. In response to a Facebook post about "Operation Return to Sender," the El Centro Border Patrol account stated that the agency "will try and catch even more people next time." Dkt. 15-2, Ex. 4. Chief Bovino has publicly committed to increasing the volume of arrests in Border Patrol's sweeps, agreeing that "Operation Return to Sender['s]" arrests were "rookie numbers" and that El Centro Border Patrol should "pump those numbers up." *Id.*, Ex. 14.

**B.    Plaintiffs bring this lawsuit and obtain preliminary injunctive relief against Defendants' unlawful conduct.**

On February 26, Plaintiffs brought this lawsuit challenging Defendants' unlawful conduct. Plaintiffs assert four causes of action, each alleging that the El Centro Border Patrol has a policy and practice of conducting warrantless arrests without probable cause that the person is a flight risk in violation of federal law (Claims 1 and 2); stopping people without reasonable suspicion in violation of the Fourth Amendment (Claim 3); and administering voluntary departures without a knowing and voluntary waiver of rights in violation of the Fifth Amendment (Claim 4). *See* Compl. ¶¶ 326-50. Plaintiffs seek this relief on behalf of themselves and three separate classes covering warrantless arrests (the "Warrantless Arrest Class"), detentive stops (the "Suspicionless Stop Class"), and voluntary departure (the "Voluntary Departure Class").

Plaintiffs sought preliminary class certification of the Warrantless Arrest and Suspicionless Stop classes, Dkt. 14, and preliminary injunctive relief to stop Defendants' policy and practice of detentive stops without reasonable suspicion and warrantless arrests without probable cause of flight risk. *See* Dkt. 15. Rather than meaningfully challenge the merits of the motion for preliminary injunction, Defendants' opposition primarily argued that (1) Plaintiffs'

claims were moot because Defendants had issued a muster days earlier, addressing the standard

for warrantless arrests and vehicle stops (the "Warrantless Arrest Muster"); and (2) that this Court

lacked jurisdiction because 8 U.S.C. §§ 1252(a)(5) and (b)(9) require removability to be

addressed solely through immigration proceedings. Dkt. 31. The Court rejected those arguments,

provisionally certified the Warrantless Arrest and Suspicionless Stop classes, and issued a

preliminary injunction. *See* Dkt. 47 ("PI Order").

As part of its order, the Court ordered Defendants to, within 60 days, issue guidance for

"Border Patrol agents concerning how they should determine whether 'reasonable suspicion'

exists when conducting detentive stops, including vehicle stops, in this District." *Id.* at 87. On

June 27, Defendants issued a muster, pursuant to the Court's order, purporting to address the

reasonable suspicion standard for detentive stops in the district ("Reasonable Suspicion Muster").

Soon thereafter, Plaintiffs met and conferred with Defendants and explained the deficiencies in

the Reasonable Suspicion Muster, and its failure to accurately describe Fourth Amendment law or

provide guidance that would remedy the violations alleged in this case. Greenberg Decl. ¶ 3.

Meanwhile, on July 11, just one business day before Defendants filed the instant motion,

Defendants issued a new muster, with a general list of "best practices" for processing voluntary

departure elections ("Voluntary Departure Muster"). Dkt. 64-3 at 3.

### C.     Despite this Court's preliminary injunction order, Defendants continue to conduct suspicionless stops and mass warrantless arrests.

Following the Court's order, Border Patrol agents have not stopped violating the law.

Throughout June, Border Patrol, along with ICE and other federal agencies, conducted a series of

immigration raids across Central California which federal officials described as "the largest Mass

Deportation Operation . . . in History." *Vasquez Perdomo*, 2025 WL 2181709, at *3. As part of

the operation (nicknamed "Operation At Large"), federal agents in "roving patrols"—with El

Centro Sector's Chief Bovino leading the charge—unlawfully stopped, detained, and arrested

Latinos, including U.S. citizens, throughout Los Angeles and the surrounding region. *See id.* *4-

6. These incidents follow the same patterns as "Operation Return to Sender." And, Border Patrol

agents admit that they target certain types of businesses, including car washes, "because past

experiences have demonstrated that [noncitizens] utilize and seek work at these locations." *Id.* at

*16. After a lawsuit was filed, the Central District of California held on July 11 that Border Patrol and ICE engaged in rampant violations of the Fourth Amendment by stopping people without individualized reasonable suspicion, and instead relying on a "broad profile." *Vasquez Perdomo*, 2025 WL 1915964, at *25. The district court issued a temporary restraining order against such conduct, *id.* at *28, and the Ninth Circuit has denied the defendants' request to stay that injunction, *see Vasquez Perdomo*, 2025 WL 2181709, at *1.

This conduct aligns with the commands from top officials: Border Czar (and former Acting Director of ICE) Tom Homan recently promised that undocumented immigrants, regardless of individual circumstances, are "going to get arrested" "if they're in the country illegally." Dkt. 15-2, Ex. 15. And Stephen Miller, the White House Deputy Chief of Staff for Policy and Homeland Security Advisor, recently told Fox News, "Under President Trump's leadership, we are looking to set a goal of a minimum of 3,000 arrests for ICE every day." Greenberg Decl., Ex. 1 at 2.

"Operation At Large" has also expanded to this District in violation of this Court's preliminary injunction order. On July 17, Border Patrol targeted Latinos in and around a Home Depot parking lot and nearby shopping area in Sacramento. Greenberg Decl., Exs. 2, 3; Rivera-Molina Decl. ¶¶ 2-3; Lopez Mazariegos Decl. ¶¶ 3-6. As in Kern County and Los Angeles, Border Patrol agents targeted individuals based on their appearance or location with no reason to believe the specific individuals they stopped, detained, and arrested were in the country unlawfully. *See id.* The parties are currently meeting and conferring regarding Defendants' failure to comply with the Court's prohibition on unlawful stops and warrantless arrests, requirements for the Reasonable Suspicion Muster, and documentation requirements. *See* Dkt. 47.

## III.    STANDARDS OF REVIEW

Defendants move to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Rule 12(b)(1) applies to Defendants' jurisdictional challenges. *See* Sections IV.A-B. Rule 12(b)(6) applies to Defendants' other challenges. *See* Sections IV.C-D.

### A.    Federal Rule of Civil Procedure 12(b)(1)

Defendants claim to mount a "factual challenge to subject matter jurisdiction." Mot. at 7.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
Case No. 1:25-cv-00246-JLT-CDB

3004944

1  Under Rule 12(b)(1), "in a factual attack, the challenger disputes the truth of the allegations that,

2  by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373

3  F.3d 1035, 1039 (9th Cir. 2004).[2] In this posture, "the district court may review evidence beyond

4  the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

5  But "a court must leave the resolution of material factual disputes to the trier of fact when the

6  issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's

7  claim." *Leite v. Crane Co.*, 749 F.3d 1117, 1122, n.3 (9th Cir. 2014).[3]

8      **B.    Federal Rule of Civil Procedure 12(b)(6)**

9          A Rule 12(b)(6) motion "tests the legal sufficiency of a claim" based on the allegations in

10  the Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to

11  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

12  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

13  Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

14  pleads factual content that allows the court to draw the reasonable inference that the defendant is

15  liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citations omitted).[4] Under

16  Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d

17  1273, 1276 (9th Cir. 1993). "Dismissal is proper only where there is no cognizable legal theory or

18  an absence of sufficient facts alleged to support" one." *Navarro*, 250 F.3d at 732.

19  **IV.    ARGUMENT**

20      **A.    Plaintiffs have standing to seek the relief they seek.**

21          Defendants challenge whether Plaintiffs have standing to seek prospective relief. Mot. at

22  18-15. They plainly do. To do so, "a plaintiff must demonstrate 'that he is realistically threatened

23  by a repetition of the violation.'" *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (citing

24

25  [2] Unless otherwise indicated, internal punctuation, footnotes, emphases, and citations were omitted from, and any emphases were added to, quotations.

26  [3] To the extent there is any question about jurisdiction here (which there shouldn't be), the Court should permit discovery to proceed before deciding the issue. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (explaining "discovery . . . should be granted where pertinent facts bearing on the question of jurisdiction are controverted").

27

28  [4] If pleading deficiencies can be cured by Plaintiffs alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

1  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)); *see also Vasquez Perdomo,* 2015 WL

2  2181914, at *9-10 (holding plaintiffs had standing to assert similar claims for prospective

3  injunctive relief "because there is a realistic threat that each will be stopped without reasonable

4  suspicion as part of [Border Patrol's operation]"). Plaintiffs first address standing for the

5  individual plaintiffs, and then address UFW's standing on behalf of its members.

**1.    Each of the individual Plaintiffs has standing.**

7  To demonstrate that a plaintiff "is realistically threatened by a repetition of [a] violation"

8  such that he has standing for prospective injunctive relief, he "may demonstrate that the harm is

9  part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' federal rights.'"

10  *Melendres*, 695 F.3d at 997-98; *Vasquez Perdomo*, 2015 WL 218709, at *10 (same).

11  *Vasquez Perdomo* is on all fours. In *Vasquez Perdomo*, five individual plaintiffs (and three

12  membership associations, including UFW, a plaintiff here) alleged that federal officials had "an

13  ongoing policy, pattern, and/or practice of conducting detentive stops . . . without reasonable

14  suspicion." 2025 WL 2181709, at *2, *4-6. Plaintiffs alleged "a pattern of conduct" by providing

15  "sworn declarations" that described "stops based on less than reasonable suspicion—targeting

16  Hispanic or Latino people in public places and at businesses." *Id.* at *10. In addition, Plaintiffs

17  provided statements from "the Chief Patrol Agent for the El Centro Sector of [Border Patrol]"

18  suggesting "'approval or authorization' of the challenged stop-and-arrest practices." *Id.* With this

19  record, the Ninth Circuit held "that Plaintiffs have shown that the challenged conduct is 'part of a

20  pattern of officially sanctioned behavior' and thus that the alleged injury is 'likely to recur.'" *Id.*

21  (quoting *Melendres*, 695 F.3d at 997-98).[5] Plaintiffs thus had standing.

22  Here, Plaintiffs point to nearly identical evidence. *See, e.g.*, Compl. ¶¶ 47-245; Dkts. 15-2

23  through 15-11. As this Court found in its PI Order, Plaintiffs have alleged—and "establishe[d]"—

24  that five individual plaintiffs (and the members of Plaintiff UFW) have been subject to "a pattern

---

[5] *See also Melendres*, 695 F.3d at 990 (holding plaintiffs previously stopped by law enforcement had standing to seek injunction against stops based on suspicion of immigration violations); *Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992) (holding individuals had standing to seek an injunction against officials' excessive use of force during arrests and unlawful home searches); *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985), amended 796 F.2d 309 (9th Cir. 1986) (holding farm housing residents had standing to seek an injunctive against INS's suspicionless searches).

3004944

and practice of agents performing detentive stops without reasonable suspicion in this District." *United Farm Workers v. Noem*, --- F. Supp. 3d ---, 2025 WL 1235525, at *46 (E.D. Cal. Apr. 29, 2025). "[T]he evidence [also] shows a pattern and practice of warrantless arrests without Border Patrol agents performing individual flight risk assessments to have probable cause for the arrest as required." *Id.* Moreover, the existence of these practices makes future injury "sufficiently likely" for standing, even if the likelihood of "a particular individual plaintiff" being subjected to a future violation is not itself "high," especially in light of Defendants' repeated goals of arresting more people in future operations. *Melendres*, 695 F.3d at 998 (finding three incidents of challenged conduct enough to establish "pattern or practice"); *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 974 (9th Cir. 2019) (finding five occasions of challenged conduct enough to establish standing). Thus, taking Plaintiffs' allegations as true, "Plaintiffs have shown that the challenged conduct is 'part of a pattern of officially sanctioned behavior' and thus that the alleged injury is 'likely to recur.'" *Perdomo*, 2025 WL 2181709, at *10 (quoting *Melendres*, 695 F.3d at 997-98).

Defendants' arguments are inapposite. Defendants primarily argue that Plaintiffs "have not demonstrated that their isolated encounters with [Border Patrol] are likely to recur." Mot. at 8. But they ignore the law. As explained above, Plaintiffs have extensively alleged that Defendants have a practice of unlawful detentions, warrantless arrests, and illegal "voluntary" departure practices. Moreover, Plaintiffs allege—and provide undisputed evidence—establishing that Defendants intend to replicate (and, in fact, already have replicated) "Operation Return to Sender" in this District. *See* Compl. ¶¶ 246-259; Dkt. 15-2, Exs. 3, 10, 17; *see also* Greenberg Decl., Exs. 2, 3; Lopez Mazariegos Decl. ¶¶ 3-6. Border Patrol (and other federal officials) also publicly "condoned" the operation, declaring it a "success from day one" and claiming that Border Patrol's tactics complied with the law. *See* Compl. ¶¶ 246-259; Dkt. 15-2, Exs. 3, 10, 17.[6] And, indeed, Border Patrol has launched similar operations in Sacramento and elsewhere in California. *See* Greenberg Decl., Exs. 2, 3; *see Vasquez Perdomo*, 2025 WL 2181709, at *3-6.

---

[6] *See Doe v. Hagee*, 473 F. Supp. 2d 989, 997 (N.D. Cal. 2007) (distinguishing *Lyons* because plaintiffs' alleged likelihood of encounter with Marines recruiter and Marines "condoned" the challenged "practice"); *see also LaDuke v. Nelson,* 762 F.2d 1318, 1324 (9th Cir. 1985) (same, because of the absence "of any written or oral pronouncements by the [*Lyons* defendant] sanctioning" the unlawful conduct).

Moreover, Plaintiffs' Fifth Amendment voluntary departure claim does not allege speculative injuries. In Defendants' primary cited case, *Lopez-Venegas v. Beers*, the Central District found individuals did not have standing for prospective relief requiring a forward-looking change in defendants' practices because they each made "allegations about a single interaction" with officials. 2013 WL 12474081, at *9 (C.D. Cal. Dec. 27, 2013). But the relief Plaintiffs seek here is different from *Lopez-Venegas*: whereas in *Lopez-Venegas*, all Plaintiffs sought prospective equitable relief, the individual plaintiffs here seek only equitable relief to redress their past and ongoing harms. Compl., Prayer for Relief ¶¶ 6, 11-12. Only Plaintiff UFW seeks prospective equitable relief for the voluntary departure claim, *id.* ¶ 7, which it has standing to do because its membership includes thousands of people in this District who fit the profile that Defendants target for their unlawful practices. Compl. ¶¶ 16-17, 21-22, 26, 290-301; *cf. Lopez-Venegas*, 2013 WL 12474081, at *10 (plaintiff organizations had standing to seek prospective equitable relief because they would continue to suffer harm from unlawful voluntary departure practices).[7]

Finally, Defendants contend that Plaintiffs cannot show a "realistic threat of future injury" because Border Patrol has issued musters. Mot. at 11. But, as this Court previously found, the existence of musters does not necessarily mean that activity will not recur. *See United Farm Workers,* 2025 WL 1235525, at *50. Indeed, as addressed in Section IV.B below, the musters do not clearly articulate the law, appear to have been written for the purposes of this litigation, could be withdrawn by Defendants at any time, and otherwise may not be followed. *See also id.* at *49-50. The musters thus have no bearing on Plaintiffs' standing for prospective injunctive relief.

Accordingly, like in *Vasquez Perdomo*, the individual plaintiffs have made a sufficient showing to establish standing to seek injunctive relief.

---

[7] Defendants' other cited cases are off base. For example, in *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999), two individual plaintiffs alleged they saw Border Patrol agents "nearly every day," but had only each been "stopped only once in 10 years." Here, Plaintiffs have not alleged that they otherwise regularly see Border Patrol. Rather, they contend that a new Border Patrol practice, beginning in January 2025 and continuing to this day, and which is likely to continue absent this Court's injunction, seeks to target people who fit their exact profile for unlawful stops, arrests, and expulsions. *See also, e.g., Stevens v. Harper*, 213 F.R.D. 358, 367 (E.D. Cal. 2002) (finding no future injury so thus no standing, but without alleging a policy or pattern). Meanwhile, *Nicacio v. INS*, 797 F.2d 700, 702 (9th Cir. 1985) and *Gonzalez v. ICE*, 975 F.3d 788, 803 (9th Cir. 2020) found that the plaintiffs had standing.

3004944

2.    **Plaintiff UFW has associational standing.**

To establish "associational" standing and bring suit on behalf of its members, an association must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Below, Plaintiffs address each factor, which shows that UFW has associational standing.

a.    **UFW's members face real and immediate threats.**

First, UFW's "individual members can establish standing to seek injunctive relief based on a real and immediate threat of future injury." *Vasquez Perdomo*, 2025 WL 2181709, at *12 (citing *Lyons*, 461 U.S. at 105). UFW has thousands of similarly situated members with many residing in the Eastern District. *See* Comp. ¶¶ 21-22; Strater Decl., ¶ 6. UFW also alleged its individual members experienced unlawful detentive stops, arrests, and forced expulsions. See Comp. ¶¶ 25-26, 165-86 290-301. The large scale of UFW's memberships in the District thus "increases the threat of future harm to [the association plaintiffs'] members." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024). Thus, it is highly likely that at least one member of UFW will be subject to Defendants' challenged practices. *See id.*; *see also, e.g., Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1163 (11th Cir. 2008) (concluding that associations had standing to seek prospective relief where it was "highly unlikely" that not a single member would be harmed).

b.    **UFW's mission includes protecting its members from unlawful immigration practices.**

Second, "[t]he interests [UFW] seek[s] to protect are germane to [its] purpose." *Vasquez Perdomo*, 2025 WL 2181709, at * 11. UFW's mission is to improve the lives, wages, and working conditions of agricultural workers and their families. Strater Decl., ¶ 11. It is also a leader in the national movement for immigration reform and immigrants' rights. *See* Compl. ¶ 21. Thus, as in *Vasquez Perdomo* where UFW is also an associational plaintiff, UFW's stated "institutional goal[]" of protecting "a broad range of rights" for its members, including rights

12

3004944

1  related to their immigration statuses, is sufficient to establish associational standing. 2025 WL

2  2181709, at *11 (quoting *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171,

3  1174 (9th Cir. 1990)).

4             **c.    UFW's members need not participate in this suit.**

5             Finally, "neither the claim asserted nor the relief requested requires the participation of the

6  associations' individual members in this lawsuit." *Vasquez Perdomo*, 2025 WL 2181709, at *12.

7  "As a general matter, membership organizations may bring constitutional claims on behalf of

8  their members." *Id.* (holding UFW, among others, had associational standing to seek injunctive

9  relief to protect its members' Fourth and Fifth Amendment rights); *see, e.g.*, *Stavrianoudakis v.*

10  *U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143 (9th Cir. 2024) (holding organization had

11  associational standing to seek injunctive relief to protect its members' rights).

12             Like in *Vasquez Perdomo*, Plaintiffs allege an ongoing pattern of unconstitutional

13  detentive stops, warrantless arrests, and coerced departures. This "demonstrate[es] the likelihood

14  of future such [harm] does not require the participation of individual members." *Vasquez*

15  *Perdomo*, 2025 WL 2181709, at *12. "And because Plaintiffs seek only prospective injunctive

16  relief (not damages), individual participation is not necessary for effective relief." *Id.* Moreover,

17  associational standing is particularly appropriate where the "constitutional rights of persons who

18  are not immediately before the Court," like here, "could not be effectively vindicated except

19  through an appropriate representative before the Court." *NAACP v. Ala. ex. Rel. Patterson*, 357

20  U.S. 449, 459 (1958); *see, e.g.*, *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791,

21  799 (9th Cir. 2001) (holding that claims for injunctive relief "do not require individualized proof"

22  of harm). As in *Vasquez Perdomo*, "the intense fear of discriminatory stops that Defendants'

23  roving patrols have provoked may prevent the association plaintiffs' members from active

24  participation in the lawsuit." 2025 WL 2181709, at *12. This, too, favors standing for UFW, as its

25  members have already suffered from Defendants' unconstitutional practices.

26             Defendants' primary argument is that "resolving the claims" in this case "necessarily

27  requires the direct involvement of the individual members," because "individualized factual

28  inquiries remain necessary to resolve the merits." Mot. at 12. They primarily point to *Spinedex*

*Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014). But *Spindex* did not concern "systematic policy violations." *Id.* In contrast, Plaintiffs have sufficiently alleged a practice and pattern of unconstitutional conduct such that the Court need not delve into the details of each class member's individual experience. Rather, the question here is whether "Alicia," "Benjamin," "Carlos," and "Fernando" were subject to an unlawful pattern or practice. If they were, the inquiry ends there.

Defendants are also wrong that UFW cannot provide pseudonyms for its affected members. Mot. at 15. Rather, UFW permissibly and appropriately identified a number of members whom "Border Patrol agents coerced . . . into 'voluntary' departure and expelled . . . to Mexico." Strater Decl., ¶ 25. Given the heightened risk and fear of an immigration enforcement action against them, UFW members had good cause to shield their names. *See Vasquez Perdomo*, 2025 WL 2181709, at *12. Without this protection, they might otherwise be unwilling to participate in this litigation—and such a chilling effect is not necessary under the law for associational standing, as discussed above, nor is it outweighed by the Defendants' apparent interest to investigate the removal status of UFW's members. *See* Mot. at 15. Indeed, in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, the Supreme Court held that an organization had standing to sue on behalf of its members because they were "identifiable," 600 U.S. 181, 201 (2023), even though the suit excluded its impacted member's name. *See* No. 1:14-cv-14176, Complaint ECF 1 ¶¶ 15-24 (D. Mass. Nov. 17, 2024).

Accordingly, all Plaintiffs—individuals and UFW—have established their standing.

**B.    Defendants' made-for-litigation musters do not moot Plaintiffs' claims.**

Next, Defendants argue that Plaintiffs' case should be dismissed in its entirety as moot, based solely on three "muster" policy documents that purport to provide Border Patrol agents with "guidance" on warrantless arrests, reasonable suspicion, and voluntary departure. Mot. at 15-20. As noted above, the Court has ***already rejected*** this argument as to the April 4 Muster (the "Warrantless Arrest Muster") because Defendants' issuance of that muster did not demonstrate a permanent or entrenched change in behavior. Dkt. 47 at 76-85. Defendants now attempt to renew that flawed argument, and apply it to the June 27 Muster (the "Reasonable Suspicion Muster")

1    and the July 11 Muster (the "Voluntary Departure Muster").

2         A party asserting mootness "bears the burden of establishing that there is no effective

3    relief that the court can provide." *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir.

4    2006). That only occurs "when the issues presented are no longer 'live' or the parties lack a

5    legally cognizable interest in the outcome." *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979). The

6    voluntary cessation of challenged conduct "does not ordinarily render a case moot." *Bell v. City of*

7    *Boise*, 709 F.3d 890, 898 (9th Cir. 2013). Instead, Defendants carry a "heavy burden" under a

8    "stringent" standard to demonstrate that it is ***absolutely clear*** that the allegedly wrongful

9    behavior could not reasonably be expected to recur." *Id.*; *see also Trinity Lutheran Church of*

10   *Columbia, Inc. v. Comer,* 582 U.S. 449, 457 n.1 (2017).

11        To demonstrate mootness, the government must show that (1) "the new policy addressed

12   *all* of the objectionable measures the officials took against the plaintiffs," *Bell*, 709 F. 3d at 900;

13   and (2) the "change in its behavior is entrenched or permanent," including because "procedural

14   safeguards insulat[e] the new state of affairs from arbitrary reversal," *Fikre v. FBI*, 904 F.3d

15   1033, 1037, 1039 (9th Cir. 2018). A finding of mootness is less likely where a policy change is

16   not "broad in scope and unequivocal in tone," has been in place for a short period of time, and

17   where similar misconduct has occurred after its adoption. *Id.* at 1039 (citing *Rosebrock v. Mathis,*

18   745 F.3d 963, 971 (9th Cir. 2014)). Here, Defendants have not carried their heavy burden.

19        **1.    The musters do not sufficiently address Defendants' unlawful conduct.**

20        As an initial matter, the content of the musters are not "broad in scope and unequivocal in

21   tone" and fail to address "all of the objectionable measures" alleged in the complaint. *Fikre*, 904

22   F.3d at 1039. The content of all three musters preclude a finding of mootness.

23        **Warrantless Arrest Muster**. As this Court previously held, the Warrantless Arrest

24   Muster is "neither broad in scope nor unequivocal in tone" because it is only applicable to arrests

25   in the Eastern District and uses permissive "should" language regarding Border Patrol agent

26   obligations to document the facts and circumstances surrounding warrantless arrests. Dkt. 47 at

27

28

79. Defendants offer no new information that would alter the Court's prior conclusion.[8]

**Voluntary Departure Muster**. The Voluntary Departure Muster is deficient because it offers no clear or mandatory guidance to Border Patrol agents on how to administer voluntary departure in a manner that involves a knowing and voluntary waiver of rights. It generally states that agreement to voluntary departure must be "knowingly, intelligently, and voluntarily" and no "coerc[ion] or pressure" can be applied. Dkt. 64-3 at 2. But it offers no guidance to Border Patrol agents on what those terms mean or the rights that are implicated. The muster does not, for example, explain that because electing voluntary departure is a ***waiver*** of the right to a removal hearing, an agreement to voluntary departure is only valid if the person knows they are giving up that right and the consequences of doing so. *See, e.g.*, *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 374 n.27 (C.D. Cal. 1982) (holding that voluntary departure is permissible "only when the [noncitizen] voluntarily, knowingly, and intelligently waives the right to a hearing"). Likewise, the muster does not explain what "coercion or pressure" means and what conduct is forbidden.

Rather than provide clear requirements, the muster instead provides a permissive list of "Best Practices" that Border Patrol agents "should" employ. Dkt. 64-3 at 3. As this Court previously held, such permissive language is far from "unequivocal in tone." Dkt. 47 at 81. That permissive list also fails to address "all of the objectionable measures" alleged in the Complaint. *Fikre*, 904 F.3d at 1039. The muster does not address, for example, the allegations that Border Patrol agents failed to inform people of their right to a hearing or of the consequences of agreeing to departure, such as the potential for a 3- or 10-year bar on reentry to the United States. Compl. ¶¶ 174, 243; 8 U.S.C. § 1182(a)(9)(B)(i)(I)–(II). Instead, it merely states that Border Patrol agents should provide a Form I-826 to a person and "confirm" that the person understands it. Dkt. 64-3 at 3. Nor does it anticipate accommodations for individuals literate in rare languages or not literate at all. Form I-826 explains the right to a removal hearing, but says nothing about the consequences of voluntary departure. *See* Greenberg Decl., Ex. 4.

---

[8] Defendants cite cases noting that "should" can sometimes entail a mandatory obligation, *see* Mot. at 21 n.7, but Defendants offer no evidence that "should" language is treated as mandatory by El Centro Border Patrol agents, especially when placed in contrast to mandatory "must" language used elsewhere in the musters and in the DHS Broadcast Statement of Policy addressing warrantless arrests. *See* Dkt. 47 at 79.

The muster also does not address the manipulative and coercive practices that Border Patrol agents employ. The muster says nothing of the "coercive atmosphere" applied by detaining people for up to three days in frigid, constantly-lit holding cells with nowhere to sleep, no bedding, no hygiene items, no warm clothes, and no access to counsel or family. Compl. ¶¶ 59, 116, 143-44; *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (relevant factors when considering voluntariness include length of detention and deprivation of sleep). The list does not address the numerous coercive statements Border Patrol agents made to detainees, including that they would be deported if they exercised their right to a hearing, Compl. ¶ 115, that they would be imprisoned for multiple years if they asked for a removal hearing, *id.* ¶¶ 117, 244, and that voluntary departure would help their immigration case, *id.* ¶ 174. And the muster does not address requests to speak to friends or family prior to the voluntary departure decision. *Id.* ¶ 241. In short, the muster is not a clear, unequivocal, and broad statement correcting the alleged violations.

**Reasonable Suspicion Muster**. The Reasonable Suspicion Muster cannot moot Plaintiffs' Fourth Amendment claim because it does not accurately portray the reasonable suspicion analysis in the Eastern District or address "all of the objectionable measures" alleged. *Fikre*, 904 F.3d at 1039. For this reason, Plaintiffs initiated a meet and confer process regarding Defendants' failure to comply with the PI as relates to this muster, and will move to enforce the PI if the issues are not resolved. Greenberg Decl. ¶¶ 3, 10. We highlight two key deficiencies.

First, the muster does not address the principle emphasized in the Court's PI Order that "an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006); Dkt. 47 at 74. This means that if a "substantial number of people" who are lawfully in the country share a characteristic, "that characteristic is of little or no probative value." *United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000); *see also Vasquez Perdomo*, 2025 WL 2181709, at *17 (forbidding stops based on a "broad profile"). Here, the muster appears deliberately misleading. It states that "indicators that an individual is a foreign national based on mode of dress or haircut may be considered" with "other relevant factors," Dkt. 64-2 at 2, but

3004944

does not explain that such indicators are "of . . . low probative value" if common to people lawfully in the country. *Manzo-Jurado*, 457 F.3d at 937. While the muster states that "in areas where Hispanic individuals are common, . . . apparent Hispanic race or ethnicity is not a relevant factor," it does not explain that the Eastern District includes many such areas.

Second, the muster lists factors that it claims can be considered in developing reasonable suspicion, but these factors are designed for use "***in the border area***"—which the Eastern District is not. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). For example, the muster lists "proximity to the border" and "recent border crossings" as factors that can affect reasonable suspicion, but ignores that these factors must weigh ***against*** reasonable suspicion in this District because it is "within this country's interior." *Manzo-Jurado*, 457 F.3d at 936. There is likewise no explanation regarding how or whether factors like "time of day" of the encounter and the "type of vehicle['s]" potential for use in smuggling have any relevance in this District. The muster even defines the reasonable suspicion standard in terms of what an "objective [***Border Patrol agent***]" would deem sufficient, and not an officer with training and experience in the country's interior.[9]

Overall, the content of the musters are not broad in scope, are not unequivocal in tone, and do not offer specific guidance to correct the violations alleged in the Complaint, and thus offer no basis to satisfy Defendants' high burden to show mootness.

### 2. Defendants' implementation of the musters does not show a permanent or entrenched change in conduct.

Even if the content of the musters were sufficient, the timing and implementation of the musters would still preclude mootness. As of the filing of this Opposition, the Warrantless Arrest Muster has been in place less than five months (since April 4), the Reasonable Suspicion Muster has been in place for less than two months (since June 27), and the Voluntary Departure Muster

---

[9] Other deficiencies in the muster include (1) allowing reasonable suspicion for any "violation" a Border Patrol agent "has the authority to enforce" without defining the limits on that authority and without explaining the standard or relevant factors for the civil immigration violations at issue here; (2) failing to provide guidance on what interactions are Fourth Amendment stops that trigger the muster's requirements, that is, interactions where a "reasonable person would not feel free to leave," *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980), and (3) including "flight on foot" as a factor without explaining that people *have the right* to go about their business and walk away from questioning, *Florida v. Royer*, 460 U.S. 491, 498 (1983), and that "flight" has minimal or nil probative value when aggressive tactics are used, such as when masked men with guns exit unmarked vehicles, *see Vasquez Perdomo*, 2025 WL 1915964, at *23 n.30 (citing *United States v. Brown*, 925 F.3d 1150, 1157 (9th Cir. 2019)).

was issued one business day before Defendants filed this Motion (on July 11). Multiple courts, including this Court's preliminary injunction order, hold that such "short duration[s] . . . render[] it impossible for the Court to find the terms of the Muster are now 'entrenched' in the practices of Border Patrol's El Centro Sector." Dkt. 47 at 80; *see also A.O. v. Cuccinelli*, 457 F.Supp.3d 777, 789 (N.D. Cal. 2020) (six months insufficient); *ArcBest II, Inc. v. Oliver*, 593 F. Supp. 3d 957, 966 (E.D. Cal. 2022) (less than one year prior).

Defendants also point to no "procedural safeguards" that would prevent the withdrawal, revision, or failure to enforce the musters. *Fikre*, 904 F.3d at 1039. In *Bell*, the Ninth Circuit held that "the ease with which the Chief of Police" could alter a "Special Order" issued to his department to curb unlawful conduct "counsels against a finding of mootness." 709 F.3d at 900. So too here. As this Court previously acknowledged, the musters are "internal polic[ies]" that could be withdrawn, altered, or ignored once this case is dismissed. Dkt. 47 at 80. Border Patrol claims it "intends to keep these musters in place without revision," but acknowledges they might be changed if there "are changes to relevant law *or policy*." Dkt. 64-4 ¶ 8. There is also nothing stopping Border Patrol from abandoning its partly completed efforts to train its agents, which the Court's preliminary injunction order currently requires Defendants to complete. *Id.*

Defendants have also provided no "unambiguous renunciation of [their] past actions," *Fikre*, 904 F.3d at 1039, and instead claim that the musters "do not establish new policies" but merely demonstrate "commitment" to adhere to "existing policy," Dkt. 64 at 19. As this Court held for the Warrantless Arrest Muster, agents engaged in unlawful conduct violating "well-established constitutional rights" and so a muster re-stating those policies "offers little support to find mootness." Dkt. 47 at 81-82. That reasoning applies to the other musters as well, which Defendants assert merely restate "existing policies." Defendants' sparse description of additional training it plans to provide, Dkt. 64-4 ¶ 8, offers no reason to think the musters will have any impact on agents who purportedly had already received "legal training," Dkt. 64-5 ¶¶ 6, 8.

Defendants also cannot possibly sustain their burden of showing mootness because they have submitted no evidence that agent behavior has changed with the issuance of the musters and, in fact, the evidence indicates that Border Patrol agents have continued conduct similar to that

1  challenged. *See Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) (rejecting mootness "based

2  entirely on the mere promulgation of a new policy" where the defendant had "provided no *facts* to

3  support its claim" that the behavior at issue had changed). Border Patrol has, over the past two

4  months, participated in mass immigration operations in California, including a raid in Sacramento

5  on July 17 that appears to have violated this Court's PI Order. *See* Greenberg Decl., Exs. 2-3;

6  Rivera-Molina Decl. ¶¶ 2-3; Lopez Mazariegos Decl. ¶¶ 3-6. In the Sacramento operation, Border

7  Patrol agents used apparent race as a proxy for immigration status, surrounding Latino-presenting

8  people (who agents assumed to be day laborers) in a Home Depot parking lot, grabbing them, and

9  demanding papers without knowing anything about them. *See id.*[10] This race and occupation

10  based "broad profil[ing]" violates the law. *Vasquez Perdomo*, 2025 WL 2181709, at *3. Border

11  Patrol's continuing "conduct similar to that challenged" thus precludes mootness. *Fikre*, 904 F.3d

12  at 1039.

13      Defendants argue, citing *Rosebrock v. Mathis*, 745 F.3d at 973, that it need not show

14  anything other than a general commitment to follow their "existing policy" of following the law

15  to moot the case. Dkt. 64 at 17-19. Defendants are wrong. In *Rosebrock*, the plaintiff challenged

16  inconsistent enforcement of a regulation forbidding the posting of material on federal government

17  property, resulting in viewpoint discrimination. 745 F.3d at 973. The case was mooted because

18  the government issued a "clear" and "unequivocal" directive to stop any material from being

19  posted, and the undisputed evidence at summary judgment showed that the police "strictly

20  enforce[ed]" that rule, and did so for three years. *Id.* at 970, 973. Here, unlike *Rosebrock*, the

---

22  [10] After Plaintiffs requested records of these raids, Defendants sent Plaintiffs eleven I-213 forms that

23  purport to document the bases for the stops and arrests. Greenberg Decl. ¶ 7; *see, e.g., id.*, Exs. 5, 6. The
statements in the I-213s, however, are overwhelmingly boilerplate language and contradicted by firsthand

24  accounts of the raid, and do not include stops that did not lead to arrests. *See, e.g., id.*, Exs. 5, 6. For
example, Isael Lopez Mazariegos and Filberto de Jesus Rivera-Molina were stopped and arrested by the

25  government, but did not flee when approached. *See* Lopez Mazariegos Decl. ¶¶ 1-6 and Rivera-Molina
Decl. ¶¶ 1-3 (stating they were grabbed by masked men armed with guns). Plaintiffs thus do not view this

26  official documentation as reliable.

27  While the parties are meeting and conferring about the inadequacies in this documentation, *see* Greenberg
Decl. ¶¶ 7, 10-11, the Court need not determine here whether Defendants violated its preliminary

28  injunction by conducting this raid and providing inadequate reporting. Rather, these ongoing disputes
show that Defendants' musters simply do not moot this case, and live disputes about Defendants'
compliance with the law continue.

musters have been in place mere weeks, and Plaintiffs allege that Defendants continue to enforce a "policy and practice" of violating constitutional and statutory rights when stopping people, conducting warrantless arrests, and inducing departures. *See, e.*g., Compl. ¶¶ 249, 260-77. In addition, unlike in *Rosebrock*, where the other factors favored mootness, all of the mootness factors here weigh in favor of this case proceeding to discovery. *See Reynolds v. Preston*, 2023 WL 2825932, at *6 (N.D. Cal. Mar. 15, 2023) (distinguishing *Rosebrock* because the factors weighed against mootness), *rev'd on other grounds* 2024 WL 2891205 (9th Cir. June 10, 2024).[11] *Rosebrock* does not, as Defendants argue, require the Court to just accept Defendants' purported policy change without additional evidence. And, here, Plaintiffs allege (and evidence indicates that) Defendants' conduct still violates the constitution and federal law.

Thus, Defendants have not made it "***absolutely clear*** that the allegedly wrongful behavior could not reasonably . . . recur." *Bell*, 709 F.3d at 898. The Court should reject this argument.

### C.  Plaintiffs have sufficiently pled their Fifth Amendment claim.

Plaintiffs allege that Defendants have a policy and practice of coercing agreements to voluntary departure without a knowing and voluntary waiver of the right to a removal hearing in violation of the Fifth Amendment guarantee of due process. Compl. ¶¶ 272-75. Defendants do not dispute that Plaintiffs have adequately alleged flagrant violations of the right to removal proceeding. Instead, Defendants argue that Plaintiffs' claim fails because they have not alleged the right to a protected "liberty interest" or prejudice. Mot. at 20-23. Their arguments fail.

#### 1.  Plaintiffs have adequately alleged a violation of their Fifth Amendment due process right to a full and fair removal hearing.

Plaintiffs have adequately alleged a Fifth Amendment due process claim. The Supreme Court has held that noncitizens present in the United States cannot be removed without "opportunity to be heard [regarding their] right to be and remain in the United States." *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Thus, "[i]t is well established that the Fifth Amendment

---

[11] Defendants argue that *Rosebrock* found any consideration of the mootness factors unnecessary and thus should not be considered. Mot. at 21 n.7. But *Rosebrock* explicitly held that the factors were "instructive." *Rosebrock*, 745 F.3d at 973. Indeed, the mootness factors merely list the types of facts relevant to the mootness inquiry and *Rosebrock*'s holding cannot be divorced from the clear and effective directive at issue in that case that resulted in changed behavior for over three years.

entitles [noncitizens] to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), including a "right to a full and fair hearing," *Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019). This Fifth Amendment right to a removal hearing is codified in the Immigration and Nationality Act (INA), which states that hearings before an immigration judge (IJ) are the "exclusive procedure" to determine if an individual may be removed.[12] *See* 8 U.S.C. §§ 1229a(a)(1), (a)(3), (c)(1)(A).

The due process right to a full and fair removal hearing cannot be waived unless the waiver is knowing and voluntary. *See, e.g.*, *United States v. Ramos*, 623 F.3d 672, 682-83 (9th Cir. 2010) (because waiver of right to removal hearing must be "knowing and voluntary," "stipulated removal" order process violated due process). These principles apply to acceptance of voluntary departure, which requires a knowing and intelligent waiver of the fundamental right to a removal hearing. *See Orantes-Hernandez*, 541 F. Supp. at 374 n.27 ("Voluntary departure in lieu of a deportation hearing is of course permissible but only when the [noncitizen] voluntarily, knowingly, and intelligently waives the right to a hearing."); *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006) (same).

Based on these principles, courts have upheld Fifth Amendment due process claims based on allegations that the government failed to provide a full and fair hearing prior to removal, including because the waiver of the right to such a hearing was not knowing and voluntary. For example, the Ninth Circuit has affirmed a permanent injunction based on such a claim alleging use of "coerc[ive]" tactics to secure "voluntary departure agreements." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 563 (9th Cir. 1990) (affirming *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1494 (C.D. Cal. 1988)); *see also Lopez-Venegas*, 2013 WL 12474081, at *19 (finding likelihood of success of due process claim where potential bar on reentry associated with voluntary departure was not disclosed); *Walters v. Reno*, 145 F.3d 1032, 1037 (9th Cir. 1998) (affirming injunction based on waiver of hearing on document fraud allegations).

---

[12] Although the law permits certain discrete classes of noncitizens to be removed without removal hearings even if they were arrested within the United States, those authorities do not apply to Plaintiffs here. *See, e.g.*, 8 U.S.C. §§ 1231(a)(5) (permitting reinstatement of prior removal order for certain individuals who re-entered the United States after prior removal order); 1228(b) (permitting summary removal orders to certain noncitizens with aggravated felony convictions, but allowing judicial review and other relief).

1    Here, Defendants do not challenge the adequacy of Plaintiffs' allegation that Border

2  Patrol's policy and practice is to coerce voluntary departures without a knowing and voluntary

3  waiver of the right to a full and fair removal hearing.[13] Instead, Defendants argue that, regardless

4  of whether such practices exist, Plaintiffs have not alleged deprivation of a "liberty interest"

5  because the Complaint does not affirmatively allege that Plaintiffs are entitled to remain in the

6  United States. Mot. at 20-22. Putting aside that this is not appropriate standard by which to

7  consider Plaintiffs' Fifth Amendment claim—which challenges Defendants' practice of depriving

8  Plaintiffs of a fundamental right without a knowing and voluntary waiver—this argument lacks

9  merit. As discussed above, binding Supreme Court and Ninth Circuit authority confirms the right

10  to due process in a full and fair hearing prior to removal. *Yamataya*, 189 U.S. at 101; *Flores*, 507

11  U.S. at 306; *Arrey*, 916 F.3d at 1157. These due process rights exist because "[t]he ***private liberty***

12  ***interests involved*** in deportation proceedings are indisputably substantial." *Dillingham v. I.N.S.*,

13  267 U.S. 996, 1010 (9th Cir. 2001), *overruled on other grounds by Nunez-Reyes v. Holder*, 646

14  F.3d 684 (9th Cir. 2011). And that due process requirement of a full and fair hearing applies to

15  "all persons within the United States, including [noncitizens], whether their presence here is

16  lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). In any

17  such hearing, it is the government's burden to prove that the person is removable by "clear and

18  convincing evidence." *Estrada v. INS*, 775 F.2d 1018, 1020 (9th Cir. 1985). Plaintiffs have been

19  deprived of their interest in remaining in the United States unless and until the government has

20  satisfied its burden in such a hearing.[14]

21    **2.    Plaintiffs are not required to show prejudice but have done so here.**

22    Defendants next argue that Plaintiffs needed to, but did not, allege "prejudice" from the

---

23  [13] Nor could they. For a waiver to be knowing and voluntary, it must be "made with a full awareness of

24  both the nature of the right being abandoned and the consequences of the decision to abandon it" and must
   be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v.*

25  *Burbine*, 475 U.S. 412, 421 (1986). Through numerous accounts, Plaintiffs allege Border Patrol's practice
   of withholding information about the right to a removal hearing and the consequences of waiving it, and of

26  using coercive conditions, misrepresentations about deportation proceedings, and intimidation to secure a
   voluntary departure. Compl. ¶¶ 60-62, 64-65, 115-19, 121, 145, 148, 150-154, 159, 243. Similar facts have

27  been found sufficient to state a due process claim. *See, e.g.*, *Lopez-Venegas*, 2013 WL 12474081 at *14.

   [14] Defendants' proposed requirement would also inject a heightened "prejudice" requirement into the
28  elements of a due process claim even though, as discussed below, "prejudice" is inapplicable outside of
   direct review of immigration orders.

alleged violation by demonstrating that, but for Defendants' unlawful voluntary departure practices, Plaintiffs would have been entitled to long-term relief from deportation. As a threshold matter, Plaintiffs need not allege prejudice. Although prejudice is required *to overturn a removal order* on Fifth Amendment grounds, the Ninth Circuit does not require prejudice when evaluating an immigration agency's waiver practices.[15]

But even if a showing of "prejudice" were necessary, Plaintiffs have adequately alleged it. To show prejudice, a noncitizen must show only that the violation "potentially" could have affected the outcome of the proceedings. *Walters*, 145 F.3d at 1045; *see also Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005) ("prejudice . . . means that the outcome of the proceeding *may have been affected* by the alleged violation"). Here, Plaintiffs have a constitutional right to removal proceedings, and yet were deprived of those proceedings. Absent Defendants' unlawful practices, Plaintiffs would have chosen to exercise their right to a hearing in immigration court, which would have offered ample possibilities at a different outcome than their summary expulsion. Compl. ¶¶ 124, 161. An IJ would have been required to inform them of all forms of relief for which they were potentially eligible, *see* 8 C.F.R. § 1240.49(a), and they would have had a right to apply for all such forms of relief, *see U.S. v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012).[16] As Defendants repeatedly point out in their motion, Plaintiffs also would have had the opportunity to move to terminate their removal proceedings on the basis that they were stopped and arrested in an egregious violation of federal law. *See* Mot. at 24-25;

---

[15] *Walters*, 145 F.3d at 1044 n.8 ("Neither party cites to a case in which a[] [noncitizen] who received constitutionally inadequate notice and was therefore deprived of a hearing was required to demonstrate prejudice in order to obtain relief."); *see also Torres v. DHS.*, 411 F. Supp. 3d 1036, 1063–64 (C.D. Cal. 2019) (holding that prejudice is not required to prevail on a Fifth Amendment claim that does not challenge the decision of an IJ or the BIA, and citing *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1439 (9th Cir. 1986)). With the exception of *Walters v. Reno*, which expressly *declined* to require a showing of prejudice, 145 F.3d at 1044, Defendants' motion cites only to decisions on petitions for review seeking to overturn removal orders, which are inapplicable here. Mot. at 22-23.

[16] For example, an IJ would have been required to inform Mr. Vargas Mendez that he was eligible to apply for cancellation of removal, a pathway to lawful permanent residence. *See* 8 U.S.C. § 1229b(b) (eligibility requirements for cancellation of removal); *see also Larin-Dominguez v. Holder*, 524 Fed. App'x 370, 372-73 (9th Cir. 2013) (noncitizen prejudiced by procedural flaws that prevented him from applying for cancellation of removal). Mr. Vargas Mendez easily meets the threshold eligibility requirements: he had lived in Kern County for 20 years, has no criminal history, is married to a U.S. citizen, and has four U.S. citizen children, including one with special needs. *Compare* Compl. ¶¶ 103-104 *with* 8 U.S.C. § 1229b(b).

1    *see also Sanchez v. Sessions*, 904 F.3d 643, 655 (9th Cir. 2018) (termination of removal

2    proceedings proper in certain "truly egregious cases" violating regulatory rights).

3        Thus, Defendants offer no valid basis to dismiss the Fifth Amendment due process claim.

4        **D.    Defendants provide no basis to dismiss the class claims.**

5        Defendants argue that the Court should "dismiss" Plaintiffs' class allegations because

6    "none of the three classes can be certified." Mot. at 23.[17] Their arguments fail.

7        "While a court has the authority to grant a motion to strike class claims at the pleading

8    stage, such motions are rarely successful." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 562 (N.D. Cal.

9    2019) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)).

10   Courts in this Circuit have overwhelmingly held that motions to strike class actions are disfavored

11   and the sufficiency of class allegations are better addressed through class certification motions

12   after discovery. *See, e.g.*, *Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213, 1223 (E.D. Cal.

13   2016); *Snyder v. TAMKO Bldg. Prods., Inc.*, 2018 WL 3241805, at *1 (E.D. Cal. July 2, 2018)

14   (noting the Ninth Circuit disfavors striking class allegations at pleading stage); *King v. Nat'l Gen.*

15   *Ins. Co.*, 2021 WL 2400899, at *14 (N.D. Cal. June 11, 2021) (collecting cases).

16       Moreover, the Court has had an early opportunity to test the sufficiency of Plaintiffs' class

17   allegations and to review numerous sworn declarations and other evidence supporting them. The

18   Court concluded, following extensive analysis, that the proposed Suspicionless Stop and

19   Warrantless Arrest Classes provisionally satisfied the requirements of Federal Rules of Civil

20   Procedure 23(a) and (b)(2), and granted provisional certification of those classes. Dkt. 47 at 46-

21   70. Nothing in Defendants' motion—which does not mention any of the Rule 23 factors, much

22   less challenge their application in this case—undermines this Court's analysis.[18]

23       Instead, Defendants challenge Plaintiffs' class claims by arguing that: (1) the

24

25   _____
     [17] Defendants appear to argue that their success on these arguments would require the Court to dismiss the
26   Complaint in its entirety. Mot. at 23. But Plaintiffs have each adequately pleaded a cause of action
     separate from the class claims. If the Court somehow finds Plaintiffs' class allegations deficient, Plaintiffs'
27   claims would still proceed as a *non*-class action.

     [18] Because Defendants do not contest whether Plaintiffs' proposed classes meet the Rule 23(a) or Rule
28   23(b)(2) requirements, any such arguments are waived. *See United States v. Wahchumwah*, 710 F.3d 862,
     868 n.2 (9th Cir. 2013) ("[A]rguments not raised in a party's opening brief are deemed waived.").

1    Suspicionless Stop and Warrantless Arrest Classes are "overbroad" because the Court lacks

2    jurisdiction over named Plaintiffs and class members; and (2) the Voluntary Departure Class will

3    improperly require individualized analysis. Neither argument has merit.

4                    **1.    This Court has jurisdiction over the stop and arrest claims of
                           individuals in removal proceedings.**

5

6        Defendants contend that 8 U.S.C. §§ 1252(a)(5) and (b)(9) deprive this Court of

7    jurisdiction over named Plaintiffs Oscar Morales Cisneros and Wilder Munguia Esquivel and

8    putative members of the Suspicionless Stop and Warrantless Arrest Classes that have been placed

9    in removal proceedings.[19] Defendants' argument, however, relies on interpretations of the INA

10   that the Supreme Court has repeatedly rejected and that this Court already rejected at the

11   preliminary injunction stage. This Court should reject them again now.

12       Sections 1252(a)(5) and (b)(9) consolidate "a noncitizen's various challenges arising from

13   [a] removal proceeding" that has resulted in a final order of removal. *Nasrallah v. Barr*, 590 U.S.

14   573, 580 (2020). Section 1252(a)(5) confers exclusive jurisdiction to review removal orders in the

15   courts of appeals, and § 1252(b)(9) channels "[j]udicial review . . . arising from action taken or

16   proceeding brought to remove [a noncitizen]" into that review. Where, as here, the plaintiffs do

17   not seek "review of an order of removal, the decision to seek removal, or the process by which

18   removability will be determined," the provisions do not apply. *DHS v. Regents of the Univ. of

19   Cal.*, 591 U.S. 1, 19 (2020) (cleaned up); *see also Gonzalez v. ICE*, 975 F.3d 788 (9th Cir. 2020);

20   *Vasquez Perdomo*, 2025 WL 1915964 at *17; *Nava v. DHS*, 435 F. Supp. 3d 880, 888-95 (N.D.

21   Ill. 2020). Nothing in Defendants' motion disturbs this Court's well-reasoned holding that it has

22   jurisdiction over the claims brought by Plaintiffs Morales Cisneros and Munguia Esquivel and the

23   Suspicionless Stop and Warrantless Arrest Classes. Dkt. 47 at 24-33.

24       Defendants' expansive reading of § 1252(b)(9) would render all policies remotely related

25   to immigration enforcement—no matter how attenuated from removal proceedings or plainly

26   unlawful they are—"effectively unreviewable" and immunized from forward-looking judicial

27   ─────────────
     [19] Defendants do not contest Plaintiff Yolanda Aguilera Martinez's suitability as a class representative, and
     thus waive any such argument. *Wahchumwah,* 710 F.3d at 868 n.2. Thus, even if this Court agrees with

28   Defendants' arguments as to Mr. Morales Cisneros or Mr. Munguia Esquivel, the Suspicionless Stop Class
     and the Warrantless Arrest Class could proceed with Ms. Aguilera Martinez as the representative plaintiff.

1    intervention. *Jennings v. Rodriguez,* 583 U.S. 281, 293 (2018) (rejecting this "extreme"

2    interpretation of § 1252(b)(9)). Sections 1252(a)(5) and (b)(9) are "channel[ing]" statutes, not

3    jurisdiction-stripping provisions, *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016), that

4    apply only to "claims seeking judicial review of orders of removal," *Singh v. Gonzales*, 499 F.3d

5    969, 978 (9th Cir. 2007). Thus, sections 1252(a)(5) and (b)(9) require individual noncitizens who

6    seek to invalidate their *removal orders* on Fourth Amendment grounds to do so through petitions

7    for review. But they do not insulate Fourth Amendment claims from judicial review where, as

8    here, "Plaintiffs do not petition the Court for review of—or make any argument related to—any

9    removal order," and instead seek only forward-looking relief. Dkt. 47 at 27.

10        The cases on which Defendants rely involve challenges to removal orders and are,

11   therefore, inapposite. In *Rajah v. Mukasey*, 544 F.3d 427, 446 (2d Cir. 2008), individuals seeking

12   judicial review of their removal orders on Fourth and Fifth Amendment grounds were confined to

13   three possible remedies: invalidation of the removal orders, suppression of unlawfully obtained

14   evidence, or termination of the removal proceedings. *See also Sanchez*, 904 F.3d at 657 (similar).

15   Neither *Rajah* nor *Sanchez* addresses whether petitioners could have sought injunctive relief

16   challenging an unlawful enforcement policy or practice in district court while challenging their

17   removal orders through petitions for review. The cases address only whether to vacate the

18   petitioners' removal orders—which no Plaintiff asks this Court to do.[20] As this Court recognized,

19   "*Sanchez* in no way suggests that a plaintiff is precluded from raising constitutional claims in the

20   district court when the claim does not arise from removal proceedings." Dkt. 47 at 27.[21]

21

22

23   [20] Defendants' claim that Mr. Munguia Esquivel and Mr. Morales Cisneros will replicate this litigation in

24   their removal proceedings, Mot. at 27 n.11, is farfetched and unsupported by law. First, equitable relief is
     unavailable in removal proceedings and petitions for review. Second, the legal standard for invalidating a

25   removal order based on an unlawful stop is completely different. In the removal context, to invalidate a
     removal order based on a constitutional violation, a petitioner must show the violation was "egregious;"

26   and to prevail on a claim involving a regulatory violation, a petitioner must show it was "promulgated for
     the benefit of petitioners" and that the violation prejudiced the petitioner. *Sanchez*, 904 F.3d at 650.

27   [21] *See also Vasquez Perdomo*, 2025 WL 1915964, at *17 ("*Sanchez* does not stand for the provision that
     all such constitutional claims may only be brought in removal proceedings. . . . This would mean that U.S.

28   citizens—who Plaintiffs allege have also been unlawfully stopped, arrested, and detained—would have no
     venue to raise their claims. This cannot be.").

Defendants' reliance on *Gonzalez v. ICE* is also misplaced. In that case, the plaintiffs brought a class action challenging, under the Fourth Amendment, ICE's policy of issuing immigration detainers based only on the results of database checks. *Gonzalez*, 975 F.3d at 798. One of the certified subclasses excluded individuals who already had final removal orders or were in removal proceedings *when the detainer was issued*, because ICE had an independent basis to issue a detainer for them. *Id.* at 801. In fact, *Gonzalez* supports jurisdiction because the *Gonzalez* class **included** people who were in removal proceedings as a result of the challenged detainers and subsequent arrests, just as Plaintiffs Morales Cisneros and Munguia Esquivel are in removal proceedings following the unlawful stops and warrantless arrests alleged here. *See id.* at 812.

Defendants assert Plaintiffs' proposed classes are overbroad "because they include claims by individuals over wh[om] the court lacks jurisdiction"—in their view, anyone who is currently in removal proceedings. Mot. at 25-26.[22] For the reasons explained, Defendants are incorrect. But even if they were somehow correct, there is no authority for the proposition that a court must determine whether it has jurisdiction over an unknown number of unnamed putative class members, especially at the pleading stage. *Gonzalez*, the only case Defendants cite in support of their novel argument, does *not* hold that plaintiffs must establish the court's jurisdiction over unidentified class members. *Gonzalez*, 975 F.3d at 810. Rather, "[t]he usual rule in class actions is that to establish subject matter jurisdiction one looks only to the named plaintiffs." *Id.*

### 2. Individualized inquiries are not required for the voluntary departure class claims.

Defendants' argument that the Voluntary Departure Class allegations should be dismissed because the class will require "individualized inquiry," Mot. at 27, also lacks merit. First, Defendants claim that Plaintiffs fail to meet the standard for "predominance" of common questions, *id.*, but that requirement applies to Rule 23(b)(3) classes and not the (b)(2) classes at issue here, Dkt. 47 at 68 (under Ninth Circuit law, a Rule 23(b)(2) class need not "satisfy a Rule

---

[22] Overbreadth arguments typically assert that a class definition sweeps in uninjured individuals. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, Inc.*, 31 F.4th 651, 669 n.14 (9th Cir. 2022). Defendants do *not* allege that the proposed classes here include uninjured class members. But even if they did, that would not preclude class certification because a Rule 23(b)(2) class seeking only equitable relief may include potentially uninjured members. *Walters,* 145 F.3d at 1047.

23(b)(3)-like predominance class"); Fed. R. Civ. P. 23 ("predomina[nce]" and "superior[ity]" requirements apply solely to subsection (b)(3)). Indeed, the cases on which Defendants rely analyze predominance only in the context of Rule 23(b)(3). *See* Mot. at 27 (citing cases).

"The procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are . . . unnecessary *to a (b)(2) class.*" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-63 (2011). Because Plaintiffs do not seek "individualized monetary claims," but rather allege that Defendants "ha[ve] acted or refused to act on grounds that apply generally to [each] class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting [each] class as a whole," there can be no reasonable dispute that Plaintiffs' proposed classes each fall under Rule 23(b)(2), where the predominance inquiry does not apply. Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores*, 564 U.S. at 362.

Second, Defendants imply that class certification is not possible unless *class membership* can be determined "in one stroke." Mot. at 27. But that is not the rule. *Wal-Mart's* "one stroke" test for determining the appropriateness of a Rule 23(b)(2) class turns on whether "the validity of each one of *the claims*" can be determined "in one stroke." *Wal-Mart*, at 350. That "one stroke" requirement is satisfied here, where Plaintiffs' claims are premised on proving a policy or practice violates the law. Defendants' attempt to tie *Wal-Mart*'s "one stroke" language to the issue of determining class membership is unmoored from the law. *See id.*

Even if Defendants' intended argument is that the membership of a (b)(2) class must be readily identifiable, that position would be squarely contradicted by a mountain of case law. Even plaintiffs in a Rule *23(b)(3)* class need not show "an administratively feasible way to identify putative class members." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). And courts have consistently reasoned that feasibility requirements constraining (b)(3) classes apply with less force to (b)(2) classes. *See, e.g.*, *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("ascertainability is not an additional requirement for . . . (b)(2) class"); *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) ("[R]equirement that the class be [ascertainable] . . . serves . . . objectives [for (b)(3)]" but not "(b)(2) classes."); *Shook v. El Paso Cnty.*, 386 F.3d 963,

972 (10th Cir. 2004) (same); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (same).[23]

Third, even if ascertainability were required, Plaintiffs' proposed class definitions would suffice. "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *In re Yahoo Mail Lit.*, 308 F.R.D. 577, 597 n.8 (N.D. Cal. 2015). With respect to the Voluntary Departure Class specifically, "class member self-identification may be more reliable in the instant case than in others," as potential class members possess sufficient information to assess, with the assistance of counsel, whether they have a plausible basis to contest removal. *Id.* Plaintiffs' proposed class definitions easily clear this bar. *See* Dkt. 47 at 86 (defining provisionally certified Suspicionless Stop and Warrantless Arrest Classes); Compl. ¶ 319 (proposing class definition for Voluntary Departure Class).

Accordingly, Defendants provide no basis to dismiss the class allegations and claims.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Dated:  August 25, 2025

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

By:    *Bree Bernwanger* (as authorized August 25, 2025)
BREE BERNWANGER
MICHELLE (MINJU) Y. CHO
LAUREN DAVIS
SHILPI AGARWAL

---

[23] Although the Ninth Circuit has not squarely addressed the question in the (b)(2) context, district courts in this Circuit have also rejected Defendants' position. *See, e.g.*, *Doe #1 v. Trump*, 335 F.R.D. 416, 436 (D. Or. 2020) (declining to apply ascertainability requirement to a (b)(2) class); *Yahoo Mail*, 308 F.R.D. at 597, 599 (explaining "ascertainability requirement serves little purpose in Rule 23(b)(2) classes").

3004944

1    Dated:  August 25, 2025              By:    AMERICAN CIVIL LIBERTIES UNION
2                                                FOUNDATION OF SOUTHERN
                                                 CALIFORNIA
3                                                *Mayra Joachin* (as authorized August 25,
4                                                2025)
                                                 MAYRA JOACHIN
5                                                EVA BITRAN
                                                 OLIVER MA
6

7

8    Dated:  August 25, 2025              By:    AMERICAN CIVIL LIBERTIES UNION
9                                                FOUNDATION OF SAN DIEGO &
                                                 IMPERIAL COUNTIES
10
                                                 *Brisa Velazquez Oatis* (as authorized
11                                               August 25, 2025)
                                                 BRISA VELAZQUEZ OATIS
12

13

14

15   Dated:  August 25, 2025                     KEKER, VAN NEST & PETERS LLP

16                                        By:    *Ajay S. Krishnan*
17                                               AJAY S. KRISHNAN
                                                 JASON GEORGE
18                                               JULIA L. GREENBERG
                                                 REAGHAN E. BRAUN
19
                                                 *Attorneys for Plaintiffs*
20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
Case No. 1:25-cv-00246-JLT-CDB

3004944