BRETT A. SHUMATE
Assistant Attorney General
Civil Division
SAMUEL P. GO
Assistant Director
MARY L. LARAKERS
Senior Litigation Counsel
TIM RAMNITZ
Senior Litigation Counsel
OLGA Y. KUCHINS
Trial Attorney
CAROLYN D. DILLARD
Trial Attorney
P78090 (MI Bar No.)
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-514-7013

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED FARM WORKERS, et al.,

        Plaintiffs,

        v.

KRISTI NOEM, Secretary of the United States
Department of Homeland Security, et al.,

        Defendants.

No. 1:25-cv-00246-JLT-CDB

**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.      Plaintiffs' entire Complaint should be dismissed for lack of subject matter jurisdiction because none of the named Plaintiffs have standing……………………………….2

        A.  Plaintiffs lack standing because they cannot demonstrate they have a real and immediate threat of being harmed again……………………………………….2

        B.  Organizational Plaintiff UFW lacks associational standing to sue on behalf of its members…………………………………………………………………………..5

    II.     Alternatively, Plaintiffs' entire Complaint should be dismissed for lack of subject matter jurisdiction because it is moot…………………………………...……………..6

    III.    Plaintiffs' entire Complaint may also be dismissed for failure to state a claim because none of the three putative classes can be certified…………………………………11

    IV.   At a minimum, Plaintiffs' Fifth Amendment due process claim must be dismissed for failure to state a claim because the named Plaintiffs representing the Voluntary Departure Class have not established a liberty interest nor have they established prejudice…… 13

CONCLUSION.................................................................................................. ….15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alderman v. United States,*
    394 U.S. 165 (1969) ........................................................................................................ 12

*ArcBest II, Inc. v. Oliver,*
    593 F. Supp. 3d 957 (E.D. Cal. 2022) ............................................................................ 11

*Bilbrey v. Brown,*
    738 F.2d 1462 (9th Cir.1984) ........................................................................................... 4

*Board of Regents v. Roth,*
    408 U.S. 564 (1972) ........................................................................................................ 13

*Chen v. U.S. I.N.S.,*
    105 F. App'x 214 (9th Cir. 2004) ................................................................................... 13

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .......................................................................................................... 2

*Dillingham v. I.N.S.,*
    267 F.3d 996 (9th Cir. 2001) .......................................................................................... 14

*Do No Harm v. Pfizer, Inc,*
    96 F.4th 106 (2d Cir. 2024) .............................................................................................. 5

*E. Bay Sanctuary Covenant v. Trump,*
    950 F.3d 1242 (9th Cir. 2020) .......................................................................................... 5

*E.O.P., Petitioner, v. Tonya Andrews, Facility Administrator of Golden State Annex et al., Res*pondents.,
    No. 1:25-CV-00721-KES-SKO (HC), 2025 WL 2624197 (E.D. Cal. Sept. 11, 2025) ........................ 13

*Flores v. EMC Mort. Co.,*
    997 F.Supp.2d 1088 (E.D. Cal. 2014) .............................................................................. 4

*Gebhardt v. Nielsen,*
    879 F.3d 980 (9th Cir. 2018) .................................................................................... 13, 14

*Hernandez v. Gonzales,*
    437 F.3d 341 (3d Cir. 2006) ..................................................................................... 13, 14

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999) .......................................................................................... 4

ii

*Hunt v. Wash. St. Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................ 5

*Illinois v. Wardlow*,
  528 U.S. 119 (2000) ............................................................................................................ 9

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) .......................................................................................................... 12

*Justus v. Doerer*, No. 1:25-CV-00138-JLT-S,AB (PC),
  2025 WL 811145 (E.D. Cal. Mar. 13, 2025) ..................................................................... 12

*Lopez-Venegas v. Beers*,
  2013 WL 12474081 (C.D. Cal. Dec. 27, 2013) .................................................................. 4

*Los Angeles v. Lyons*,
  461 U. S. 95 (1983) ................................................................................................... 1, 2, 3, 6

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941) ............................................................................................................ 4

*Morales-Izquierdo v. Gonzales*,
  486 F.3d 484 (9th Cir. 2007) ........................................................................................ 14, 15

*Noem v. Vasquez Perdomo*,
  606 U.S. ___, 2025 WL 2585637 (Sept. 8, 2025) ...................................................... passim

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ....................................................................................................... 3, 5

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ...................................................................................... 7, 8, 11

*Sanchez v. Sessions*,
  904 F.3d 643 (9th Cir. 2018) ............................................................................................ 12

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ............................................................................................ 6

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ............................................................................................................ 6

*Tejeda-Mata v. I.N.S.*,
  626 F.2d 721 (9th Cir. 1980) .............................................................................................. 9

*U.S. v. Magana*,
  797 F.2d 777 (9th Cir. 1986) .............................................................................................. 8

iii

*United States v. Brignoni-Ponce,*
    422 U.S. 873 (1975) ................................................................................................... 7

*United States v. Shepherd,*
No. 2:24-CR-00083-DJC-1, 2024 WL 4931677, at *5 (E.D. Cal. Dec. 2, 2024) ............................. 9

*United States v. Dempsey,*
    449 F. App'x 568 (9th Cir. 2011) ............................................................................. 9

*United States v. Valdes-Vega,*
    738 F.3d 1074 (9th Cir. 2013) ............................................................................. 7, 9

*United States v. Venzor-Castillo,*
    991 F.2d 634 (10th Cir. 1993) ............................................................................... 8

*Vasquez Perdomo v. Noem,*
    148 F.4th 656 (9th Cir. 2025) ............................................................................ 3, 5

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009) ................................................................................ 11

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) .............................................................................. 15

**Statutes**

8 U.S.C. § 1252 ............................................................................................................. 12

8 U.S.C. § 1357 ............................................................................................................ 1,9


**Rules**

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 12

**Regulations**

8 C.F.R. § 287.8(b)(2) ................................................................................................... 12

8 C.F.R. § 1240.49(a) .................................................................................................... 15

iv

## INTRODUCTION

Plaintiffs allege that U.S. Border Patrol ("USBP" or "Border Patrol") has a "policy, pattern and/or practice" of violating the Fourth Amendment, the Fifth Amendment, and 8 U.S.C. § 1357 ("Section 1357") when they stop and arrest individuals for immigration violations. *See generally* ECF No. 1 ("Complaint" or "Compl."). As explained in Defendants' Motion to Dismiss (ECF No. 64, "Motion" or "Mot."), this Court should dismiss Plaintiffs' entire Complaint for lack of subject matter jurisdiction because the named Plaintiffs, including United Farm Workers ("UFW"), lack standing given that they cannot demonstrate an imminent threat of future injury. *See Noem v. Vasquez Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *6 (Sept. 8, 2025) (Kavanaugh, J., concurring); *Los Angeles v. Lyons*, 461 U. S. 95, 111 (1983). Furthermore, UFW—an organizational Plaintiff with thousands of members— cannot establish the necessary associational standing to sue on behalf of its members. Even if Plaintiffs had standing, this Court lacks subject matter jurisdiction because their complaint is moot in light of the Reasonable Suspicion Muster ("Reasonable Suspicion Muster" or "Muster") that USBP issued on June 29, 2025, and in light of the Voluntary Return Muster ("Voluntary Return Muster") that USBP issued on July 11, 2025. *See* Mot. at 15-20, Ex. B-C. These musters moot Plaintiffs' complaint seeking compliance with the Fourth and Fifth Amendments and Section 1357.

Plaintiffs' Opposition (*see generally* ECF No. 74, "Opposition" or "Opp.") fails to defeat Defendants' Motion because it does not explain how the named Plaintiffs representing the putative classes have demonstrated an imminent threat of future injury sufficient to confer standing to seek prospective injunctive relief. *See e.g.*, *Vasquez Perdomo*, 2025 WL 2585637, at *4; *Lyons*, 461 U.S. 95, 111. Plaintiffs are likewise incorrect that their members need not participate in this litigation in order to determine liability. Plaintiffs further assert the voluntary cessation of the challenged conduct does not render the Complaint moot because Defendants have not made it "absolutely clear" that the conduct will not reoccur. *See* Opp. at 15. This argument is unavailing because it must be presumed that the

government issued the musters in good faith and because Defendants have met its burden to demonstrate

the challenged conduct cannot be reasonably expected to reoccur given that USBP has recommitted

itself to adhering to the law by following the musters.

Plaintiffs' Complaint may be alternatively dismissed for failure to state a claim because they do

not establish that their three putative classes may be certified. [1] And, on their Fifth Amendment Claim,

Plaintiffs' Opposition fails to specify what, if any, protected interest(s) the named Plaintiffs on the

putative Voluntary Departure Class have, and Plaintiffs inaccurately state they are not required to

demonstrate prejudice. For these reasons, this Court should reject Plaintiffs' arguments and grant

Defendants' Motion to Dismiss for lack of subject matter jurisdiction or alternatively for failure to state

a claim.

## **ARGUMENT**

I.    **Plaintiffs' entire Complaint should be dismissed for lack of subject matter jurisdiction because none of the named Plaintiffs have standing.**

A.    *Plaintiffs lack standing because they cannot demonstrate they have a real and immediate threat of being harmed again.*

Plaintiffs must establish Article III standing to seek prospective injunctive relief.  *See Clapper v.

Amnesty Int'l USA*, 568 U.S. 398 (2013). As the Supreme Court recently clarified by granting the

government's stay in *Vasquez Perdomo,* Plaintiffs cannot establish standing unless they can show "a

sufficient likelihood that [they] will again be wronged in a similar way." *Vasquez Perdomo*, 2025 WL

2585637, at *4 (Kavanaugh, J., concurring) (citing *Lyons*, 461 U.S. 95, 111) (cleaned up). Standing to

seek an injunction against future unlawful conduct does not exist merely because Plaintiffs experienced

past harm and fear its recurrence.  *Lyons*, 461 U.S. at 111. As explained in Defendants' Motion,

---

[1] On April 29, 2025, this Court granted Plaintiffs' motions to provisionally certify a "Suspicionless Stop Class" and a "Warrantless Arrest Class" and Plaintiffs' motion for a preliminary injunction enjoining further violations of the Fourth Amendment and further violations of Section 1367. *See* ECF Nos. 14,15, 47. Plaintiffs have not moved to certify the putative "Voluntary Departure Class" nor have they sought a preliminary injunction for this putative class.

Plaintiffs' lack standing "to pursue prospective equitable relief because they have not demonstrated that their isolated encounters with USBP are likely to recur or that they will again be subjected to any unlawful conduct." Mot. at 8; *see also Lyons*, 461 U.S. at 107, n. 8.

With respect to the Fourth Amendment and Section 1357 claims, Plaintiffs primarily rely on the Ninth Circuit's now defunct decision in *Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) to argue that the "pattern of conduct," they have alleged is likely to reoccur and confers standing. *See* Opp. at 9-10; *Vasquez Perdomo*, 148 F.4th at 674. The Supreme Court did not find this argument persuasive in *Vasquez Perdomo* and this Court should not find it persuasive here. Standing to seek prospective objective relief "does not exist merely because plaintiffs experienced past harm and fear its recurrence. What matters is the '*reality* of the threat of the repeated injury,' not 'subjective apprehensions.'" *Vasquez Perdomo*, 2025 WL 2585637, at *2 (Kavanaugh, J., concurring) (quoting *Lyons,* 461 U.S. at 107, n. 8). Plaintiffs lack standing because "plaintiffs have no good basis to believe that law enforcement will unlawfully stop *them* in the future based on the prohibited factors—and certainly no good basis for believing that any stop of the plaintiffs is imminent." *Id.* (emphasis in original).

Here, as in *Vasquez Perdomo,* "Plaintiffs' standing theory is especially deficient." *Id.* at *3. Even if Plaintiffs could establish that they are likely to be stopped again—which is purely conjectural— Plaintiffs cannot show that they are likely to be stopped *in violation* of the Fourth Amendment again. As Justice Kavanaugh explained, "immigration officers also use their experience to stop suspected illegal immigrants based on a variety of factors" so there is an insufficient likelihood that Plaintiffs "will again be wronged in a similar way." *Id.* at *2. None of the named Plaintiffs can demonstrate a reasonable basis that law enforcement will unlawfully stop *them* in the future, which makes their perceived threat of future injury merely conjectural. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (explaining that "[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical.") (cleaned up). In order to have standing, the individual named Plaintiffs must show that they are

imminently likely to be stopped and arrested again by Border Patrol; that the stop will occur without

reasonable suspicion; and that they will be arrested without consideration of flight risk. Plaintiffs have

not and cannot do this as the Supreme Court recently confirmed by granting a stay of the injunction in

*Vasquez Perdomo.* Accordingly, all named Plaintiffs including UFW, lack standing with respect to their

Fourth Amendment and Section 1357 allegations.

Plaintiffs likewise lack standing for prospective injunctive relief or equitable relief on their Fifth

Amendment claim for the same reason: UFW and the named Plaintiffs representing the "Voluntary

Departure Class" have not demonstrated "a sufficient likelihood that they will similarly be wronged

again." *Vasquez Perdomo*, 2025 WL 2585637, at *4. Plaintiffs argue that the named Plaintiffs

representing the Voluntary Departure Class need not show a real and immediate threat of injury because

they do not seek prospective relief; rather, they seek equitable relief to redress their past and "ongoing

harms." Opp. at 11. This is incorrect. Plaintiffs seek declaratory relief—on behalf of an entire class of

individuals—which is prospective in nature. *See* Compl. at 68, ¶¶6-7; *Flores v. EMC Mort. Co.,* 997

F.Supp.2d 1088, 1111 (E.D. Cal. 2014) ("A declaratory relief claim operates 'prospectively,' not to

address past wrongs.") (quoting *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir.1984)). As

such, they must show that there is sufficient "immediacy and reality to warrant the issuance of a

declaratory judgment." *Id.* (*quoting Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273

(1941)). As explained in Defendants' Motion, there is no immediacy nor is there any reality in which

Plaintiffs will be harmed again in the same way. *See* Mot. at 8-11. Specifically, Plaintiffs have not

shown any likelihood that they will illegally re-enter the United States and be coerced into accepting

voluntary return, especially notwithstanding the July 11, 2025, Voluntary Return Muster that remains in

place. *See* Mot. at 10-11, Ex. C; *see also Lopez-Venegas v. Beers*, 2013 WL 12474081, at *9 (C.D. Cal.

Dec. 27, 2013); *see also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1043 (9th Cir. 1999) (en banc).

Indeed, Plaintiffs make no real attempt to argue that there is any likelihood that Plaintiffs Mendez and

Espinosa will again suffer the same alleged harm. Plaintiffs cannot, by virtue of seeking prospective relief, distinguish their case from *Lopez-Venegas.* Accordingly, this Court should dismiss their claims to the extent they seek prospective declaratory relief.

> B.  *Organizational Plaintiff UFW lacks associational standing to sue on behalf of its members.*

Associational standing requires the organization to prove, among other things, that "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977). For the reasons discussed *supra,* any risk of future harm for named members of UFW is speculative and therefore UFW lacks standing to seek prospective relief on that basis alone. *See O'Shea*, 414 U.S. at 494 (explaining that "[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical.") (cleaned up). And with respect to the Plaintiffs' Fifth Amendment claim, UFW further lacks associational standing because the named members use pseudonyms. *See Do No Harm v. Pfizer, Inc*, 96 F.4th 106, 116 (2d Cir. 2024) ("[a] member's name does not merely check a box; it is a demonstration of the sincerity of the member's interest in applying," a "quintessential Article III standing concern[].").

In arguing to the contrary, Plaintiffs heavily rely on *Vasquez Perdomo*, 148 F.4th 656. *See* Opp. 13-14. As an initial matter, this case is not binding authority because of its procedural posture: the Ninth Circuit denied Defendants' motion to stay a temporary restraining order. *Id*. at 664; *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1264-65 (9th Cir. 2020) ("Given the preliminary stage of the appellate process at which the motions panel issued the order denying the government's stay motion and the panel's stated reservations, we treat the motions panel's decision as persuasive, but not binding"). Furthermore, the Supreme Court subsequently granted a stay in *Vasquez Perdomo* pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit. *See Vasquez Perdomo*, 2025 WL 2585637, at *1. This is another reason this Court should not rely on the Ninth

Circuit's decision in *Vasquez Perdomo.*

Plaintiffs also assert their claim is distinguishable from *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.,* 770 F.3d 1282 (9th Cir. 2014). *See* Opp. at 13; *see also* Mot. at 14. They specifically state that case "did not concern 'systematic policy violations'" and that "Plaintiffs have sufficiently alleged a practice and pattern of unconstitutional conduct such that the Court need not delve into the details of each class member's individual experience." Opp. at 14. However, as explained above, the ultimate issue is whether the named Plaintiffs have established "a sufficient likelihood that [they] will again be wronged in a similar way." *Vasquez Perdomo*, 2025 WL 2585637, at *4; *Lyons*, 461 U. S., at 111. In order to make this determination, it is critical that each UFW member's claim is considered. In any event, Plaintiffs' argument is circular because to prove a pattern, they would need individual participation in order to prove what happened at each stop.

Plaintiffs' remaining arguments rely on statistical probability which the Supreme Court has expressly disallowed. *See* Opp. at 21; *Summers v. Earth Island Institute,* 555 U.S. 488, 498 (2009). It is not enough to allege that there is a high likelihood that a member of an organization will be harmed. *Summers,* 555 U.S. at 497-98 (rejecting the "statistical probability" approach to standing because it would "make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified class member had suffered or would suffer harm"). Because the participation of UFW members is critical to determine liability on the Fourth Amendment, Section 1357, and the Fifth Amendment claims, UFW does not have associational standing to sue on behalf of its members.

## II.     Alternatively, Plaintiffs' entire Complaint should be dismissed for lack of subject matter jurisdiction because it is moot.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III —when the issues presented are no longer "live" or the parties lack a legally cognizable

interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (cleaned up). In this

case, Plaintiffs' entire Complaint is moot because of the steps Border Patrol took subsequent to Plaintiffs

filing the instant action, which remedies the harm they allege. Plaintiffs' claims relating to the Fourth

Amendment and Section 1357 are moot because on June 29, 2025, Border Patrol's El Centro Sector

issued guidance and ordered training recommitting to consistent enforcement of Fourth Amendment

protections and protections under Section 1357(a)(2). *See* Mot., Ex. 2. Plaintiffs argue these claims are

not moot because this Court previously rejected a different muster, which USBP issued on April 4,

2025. *See* Opp. at 14; *see also* Mot., Ex.1; ECF No. 47 at 76-82. This Court concluded, in part, that the

April 4, 2025, muster did not render the Complaint moot because it was not "broad in scope." *See* ECF

No. 47 at 79. However, the June 29, 2025, Muster is broad in scope because it applies to all

provisionally certified class members and relies on reasonable suspicion factors, which consider the

totality of the circumstances. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881-84 (1975).

Specifically, the Muster states Border Patrol agents may use factors such as:

> "the location of an individual or vehicle in proximity to the border; the characteristics of
> the area in which the individual or vehicle is encountered; the previous travel patterns of
> the area, including foot or vehicle traffic; recent illegal border crossings in the area; the
> time of day an individual or vehicle is encountered; the association of the area with criminal
> activity; attempts to evade law enforcement, such as flight on foot or dangerous or erratic
> driving patterns; and details revealed from records checks."

Mot., Ex. B; *see also Brignoni-Ponce*, 422 U.S. at 881-84. The purpose of including these factors is to

demonstrate that an agent may consider the totality of the circumstances in determining whether

reasonable suspicion exists prior to conducting a stop. *See United States v. Valdes-Vega*, 738 F.3d 1074,

1080 (9th Cir. 2013).

Despite their argument that USBP's original muster was not "broad in scope" Plaintiffs now

complain that the June 29, 2025, Muster is *too broad* in scope asserting that it should only list factors

they perceive as applicable to the Eastern District of California ("this District") and exclude factors they

perceive as only applicable to areas with greater proximity to the border. *See* Opp. at 17-18. Factors

REPLY ISO DEFENDANTS' MOTION TO DISMISS

pertaining to proximity to the border, however, are factors that may be applicable in a location outside of the immediate border area depending on the totality of the circumstances in any case, and "*Brignoni-Ponce* does not imply agents cannot stop cars over 100 miles from the border or need more than reasonable suspicion for a stop." *United States v. Venzor-Castillo*, 991 F.2d 634, 638 (10th Cir. 1993); *U.S. v. Magana*, 797 F.2d 777, 780 (9th Cir. 1986) (rejecting that a stop made beyond the 100-mile border area forecloses inquiry under *Brignoni-Ponce*). Furthermore, Plaintiffs' argument ignores that the June 29, 2025, Muster includes other instructions, including the instruction that, "[i]n areas where Hispanic individuals are common [*e.g.*, areas within this District], an individual's apparent Hispanic race or ethnicity is not a relevant factor supporting reasonable suspicion." Mot., Ex. 2. Because the updated Reasonable Suspicion Muster is both "broad in scope" *and* contains instructions specific to areas like this District, the Muster moots Plaintiffs' Fourth Amendment and Section 1357 claims.

Plaintiffs further argue that their claims are not moot because they allege that USBP engaged in similar unlawful conduct on July 17, 2025, in Sacramento, CA when BP carried out Operation at Large. *See* Opp. at 1, 6-7, *see also Rosebrock*, 745 F.3d at 971 (explaining that one factor in determining mootness is whether the agency officials have engaged in conduct similar to that challenged by the plaintiffs since the time the policy was implemented.). To support this argument, Plaintiffs rely on declarations by Isael Lopez Mazariegos (ECF No. 74-8, "Lopez Mazariegos Decl.") and Filiberto de Jesus Rivera-Molina, (ECF No. 74-9, "Rivera-Molina Decl."), who allege they were arrested by USBP during Operation at Large. They also rely upon other declarations, news articles, and other Department of Homeland Security "DHS") Forms. *See* ECF No. 74-1-7[2].

---

[2] The entirety of the documents at ECF No. 74-6-7 have been filed under seal. *See* ECF Nos. 79, 90. They are stamped "Preliminary Injunction Order 4(d) 0008 through 0011" and "Preliminary Injunction Order 4(d) 0028 through 0031." *See* ECF No. 74-1, ¶¶ 8-9. Mr. Lopez Mazariegos states he has worked as a construction worker for 12 years. Lopez Mazariegos Decl, ¶ 2. He states that he felt someone grab his arm, and he saw masked men grabbing day laborers. *Id*. at ¶ 3.

REPLY ISO DEFENDANTS' MOTION TO DISMISS

Plaintiffs' claims that this evidence demonstrates that USBP violated the Fourth and Fifth Amendment are without merit. First, notwithstanding Plaintiffs' contentions, Border Patrol agents had reasonable suspicion when they stopped Mr. Lopez Mazariegos and Mr. Rivera-Molina in Sacramento, CA. The Form I-213s documenting their arrests describe how, pre-stop, the agents developed reasonable suspicion of an immigration violation based on prior surveillance of the site identifying the presence of unlawfully present aliens, as well as unprovoked flight from USBP agents as soon as the individuals at the site saw Border Patrol insignia. *See* ECF No. 81-7 at 009-11, 0028-31; *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (explaining that "[h]eadlong flight -- wherever it occurs -- is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *United States v. Dempsey*, 449 F. App'x 568, 569 (9th Cir. 2011) (explaining that flight among other factors was sufficient to show reasonable suspicion); *Valdes-Vega*, 738 F.3d at 1080 (explaining that the court must consider the totality of the circumstances including the agent's training and experience in determining whether reasonable suspicion existed).

The agents also complied with Section 1357's requirements that they must have "reason to believe" or probable cause that the alien arrested is in the United States in violation of the law. *See* 8 U.S.C. § 1357(a)(2); *Tejeda-Mata v. I.N.S.,* 626 F.2d 721, 725 (9th Cir. 1980) (explaining that "[r]eason to believe" has been equated with the constitutional requirement of probable cause.). The Form I-213s supporting Mr. Mazariegos and Mr. Rivera-Molina's arrest state that when the Border Patrol agents stepped out of their vehicles, both aliens fled. ECF No. 81-7 at 009-11, 0028-31. The agents determined that both Mr. Mazariegos and Mr. Rivera-Molina would be likely to escape before a warrant could be obtained because they had both *just* fled from USBP. *Id*. Accordingly, contrary to Plaintiffs' argument, USBP's conduct during Operation at Large does not defeat Defendants' mootness arguments. *See Valdes-Vega*, 738 F.3d at 1080; *see also United States v. Shepherd*, No. 2:24-CR-00083-

DJC-1, 2024 WL 4931677, at *5 (E.D. Cal. Dec. 2, 2024) ("[t]o justify an arrest [without a warrant], officers must have probable cause based on the facts available to them at that time for the arrest.").

Plaintiffs' claims relating to the Fifth Amendment are also moot because on July 11, 2025, Border Patrol El Centro Sector issued guidance recommitting to consistently informing aliens of their right to a hearing before an immigration judge and the consequences of choosing to voluntarily depart. *See* Mot., Ex. C. Plaintiffs allege the Voluntary Return Muster does not moot out their Fifth Amendment claim because "it offers no guidance to Border Patrol agents on what those terms mean or the rights that are implicated" and that the Voluntary Return Muster does not explain "the consequences of agreeing to departure, such as the potential for a 3- or 10-year bar on reentry to the United States." Opp. at 16. However, what is relevant is that the Form I-826, which is provided to the alien, specifically states the potential for a three- or ten-year bar on reentry to the United States. *See* Defs' Mot. at Ex. F. Furthermore, the Voluntary Return Muster states that agents should "[p]rovide the [alien with a]list of free and low-cost legal service providers for the applicable area to the alien when he or she is presented with Form I-826, and provide the alien an opportunity to consult with an attorney or BIA Accredited Representative prior to making an election on Form I-826." Mot., Ex. C. Indeed, the "Notice of Rights and Advisals" contained on the Form I-826 provided to aliens who request Voluntary Return states in part:

> You have the right to contact an attorney or other legal representative to represent you at your hearings, or to answer any questions regarding your legal rights in the United States. The officer who gave you this notice will provide you with a list of legal organizations that may represent you for free or for a small fee. You have the right to communicate with the consular or diplomatic officers from your country. You may use a telephone to call a lawyer, other legal representative, or consular officer at any time prior to your departure from the United States.

Mot., Ex. C. Plaintiffs also complain that the Voluntary Return Muster does not define the terms "coercion or pressure." *See* Opp. at 16. However, again, what is relevant is that the aliens understand the advisals in the Form I-826 and that the Voluntary Return Muster states the agents should "[p]rovide

[the] Form I-826 to the alien in a language [the alien] understands." Mot. at Ex. C.; *see also* ECF No. 74-5 (showing that the Notice of Rights on the Form I-826 is in both English and Spanish). The language that already exists in the Voluntary Return Muster is sufficient to remedy the prospective relief Plaintiffs seek in their Complaint as it is consistent with the advisals in the Form I-826. *Compare* Mot., Ex. C *with* Mot., Ex. F. As such, this Court should find that their Fifth Amendment claim is moot.

Plaintiffs further argue that both the June 29, 2025, Reasonable Suspicion Muster and the July 11, 2025, Voluntary Return Muster do not moot out the Complaint because of the timing in which each muster was issued. *See* Opp. at 18-21; *see also Rosebrock*, 745 F.3d at 971 (explaining that one factor in determining whether a policy moots a claim is whether "the policy has been in place for a long time when [the court] consider[s] mootness."). As of the date of this filing, the Reasonable Suspicion Muster has been in place for approximately 90 days, and the Voluntary Return Muster has been in place for approximately 75 days. But these musters are not "new policies" based on some new interpretation of the law. The musters merely reiterate established law in the Ninth Circuit that all Border Patrol Agents operating in this District have been and continue to be bound by. There is simply no reason to believe that Border Patrol would depart from these musters that merely reflect established law in this circuit. *See ArcBest II, Inc. v. Oliver*, 593 F. Supp. 3d 957, 966 (E.D. Cal. 2022) ("The court is less likely to find a policy change moots a claim when the "new policy . . . could be easily abandoned or altered in the future."). Accordingly, this Court should dismiss Plaintiffs' claims because they are moot.

### III.    Plaintiffs' entire Complaint may also be dismissed for failure to state a claim because none of the three putative classes can be certified.

As explained in Defendants' Motion, courts may dismiss or strike a class at the pleading stage, in advance of a motion for certification, if the complaint demonstrates the proposed class is facially defective. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted") (cleaned up); Mot. at 23. Here, the "Suspicionless Stop Class" and the "Warrantless Arrest

Class" cannot be certified because they are both fatally overbroad. Plaintiffs Cisneros and Esquivel were issued Notices to Appear because of their stops and arrests and placed in removal proceedings. *See* Complaint at ¶¶ 63-65, 84-86; Cisneros Declaration ¶¶ 4-6, 17-18; Esquivel Declaration ¶¶ 17-18; Mot. at 25. Consequently, these claims must be reviewed *exclusively* through the administrative process and a petition for review filed in the appropriate court of appeals. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); 8 U.S.C. § 1252(a)(5); *Sanchez v. Sessions*, 904 F.3d 643, 649-54 (9th Cir. 2018) (addressing a Fourth Amendment challenge, and challenge under 8 C.F.R. § 287.8(b)(2), based on an alleged race-based stop arising prior to removal proceedings, with remedy being either suppression or termination without prejudice of removal proceedings). Plaintiffs' opposition on this point asserts that this Court still has jurisdiction over the claims of Plaintiffs Cisneros and Esquivel even if they are in removal proceedings. *See* Opp. at 26-27. But this is not true. These Plaintiffs *must* bring their Fourth Amendment and Section 1357 claims in removal proceedings, and this Court lacks jurisdiction over their claims. §§ 8 U.S.C. 1252(a)(5) and (b)(9). And for the same reasons discussed *supra* (§ "I") the Court should dismiss all three putative classes because the individual members representing each class would need to participate in this litigation in order to show there are common questions of law and fact. *See* Fed. R. Civ. P. 23(a)(2); *Justus v. Doerer*, No. 1:25-CV-00138-JLT-SAB (PC), 2025 WL 811145, at *1 (E.D. Cal. Mar. 13, 2025) (citing Fed. R. Civ. P. 23(a)). Moreover, with respect to the Fourth Amendment and Section 1357 claims, it is inappropriate for the organizational Plaintiff—UFW—to  assert standing and allege Fourth Amendment violations based on their group's members because it is well-known that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Thus, this Court should dismiss Plaintiffs' Complaint for failure to state a claim because none of the three putative classes can be certified.

**IV.    At a minimum, Plaintiffs' Fifth Amendment due process claim must be dismissed for failure to state a claim because the named Plaintiffs representing the Voluntary Departure Class have not established a liberty interest nor have they established prejudice.**

"The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." *E.O.P., Petitioner, v. Tonya Andrews, Facility Administrator of Golden State Annex et al., Respondents.*, No. 1:25-CV-00721-KES-SKO (HC), 2025 WL 2624197, at *3 (E.D. Cal. Sept. 11, 2025). In order to prevail on their due process claim, they would first need to show an *entitlement* to a constitutionally protected life, liberty, or property interest, not a mere desire for it. *See Chen v. U.S. I.N.S.*, 105 F. App'x 214, 215 (9th Cir. 2004); *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). As explained in Defendants' Motion, Plaintiffs cannot prevail on their Fifth Amendment Claim because they have not established they have a liberty interest or another protected interest. *See* Mot. at 20-22.

Plaintiffs' arguments to the contrary miss the mark. They focus on their allegation that the named Plaintiffs who represent the putative Voluntary Departure Class did not get a "full and fair hearing prior to removal." *See* Opp. at 23. However, the first step in analyzing a due process claim is first determining whether a liberty interest exists *before* determining whether procedural due process was denied. *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) (explaining that a due process claim requires the plaintiff to prove, "(1) the deprivation of a constitutionally protected liberty or property interest, and (2) the "denial of adequate procedural protections."); *Hernandez v. Gonzales*, 437 F.3d 341, 345 (3d Cir. 2006) ("The necessary first step in evaluating any procedural due process claim is determining whether a constitutionally protected interest has been implicated."). Plaintiffs attempt to skip over this first critical step by asserting without authority that it "is not [the] appropriate standard by which to consider Plaintiffs' Fifth Amendment claim." *See* Opp at 23. It is indeed the correct standard, and this Court should not even reach the issue of whether there was a procedural due process violation

without first determining whether Plaintiffs have established a protected interest. *Gebhardt*, 879 F.3d at 988; *Hernandez*, 437 F.3d at 345.

Next, Plaintiffs argue that even if they must demonstrate a liberty interest, their due process claim is valid because "[t]he ***private liberty interests involved*** in deportation proceedings are indisputably substantial." *See* Opp. at 23 (citing *Dillingham v. I.N.S.*, 267 F.3d 996, 1010 (9th Cir. 2001), *overruled on other grounds by Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011)) (emphasis in original). Plaintiffs' argument is misguided. Plaintiffs do not have a legitimate expectation of entitlement to removal proceedings in a vacuum without any allegation that they seek to apply for relief in removal proceedings, and *Dillingham* does not hold otherwise. *Dillingham* simply stated "[t]he private liberty interests involved in deportation proceedings are indisputably substantial." *Id*. (emphasis added). *Dillingham* did not say **what** the private liberty interest(s) were in that case. Here, Plaintiffs seem to assume that because there is a deportation or a removal proceeding, there must necessarily be a liberty interest. Not so. They do not acknowledge that the very next paragraph in *Dillingham* states "[s]ignificantly, it is the alien who bears the burden of demonstrating that he or she is eligible for admission into the United States." *Id*. In this case, Plaintiffs have not demonstrated they are entitled to admission to the United States or to apply for any relief from removal. Therefore, their due process claim fails at step one.

Even if Plaintiffs did have a constitutionally protected interest in being placed in removal proceedings, they have not demonstrated the requisite prejudice to state a due process claim. *See e.g.*, *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (Plaintiffs "must present 'plausible scenarios in which the outcome of the proceedings would have been different if a more elaborate process were provided."). Plaintiffs incorrectly assert they do not need to demonstrate prejudice because they are channeling their claim through district court proceedings rather than on an appeal from a removal order. *See* Opp. at 24. However, Plaintiffs cite to absolutely no authority in reaching this conclusion. Indeed,

they acknowledge *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) in their opposition. *Id. Walters* declined to reach the issue of whether the plaintiffs needed to demonstrate prejudice in order to prevail on their due process claims because neither party raised the issue. *Id*. at 1044. However, *Walters* did not hold that the plaintiffs need not allege prejudice unless they were overturning a removal order. Thus, despite Plaintiffs' contentions, Plaintiffs must demonstrate prejudice in order to prevail on their Fifth Amendment due process claim. *See e.g., Morales-Izquierdo*, 486 F.3d at 495.

Finally, Plaintiffs argue that they have demonstrated prejudice even though—according to their belief— they were not required to do so. *See* Opp. at 24-25. Plaintiffs vaguely state, they had "ample possibilities at a different outcome" as opposed to voluntary return. *Id*. at 24. In doing so, they cite to 8 C.F.R. § 1240.49(a), which states an alien may apply for adjustment of status in order to suspend his or her deportation proceedings. *Id*. However, Plaintiffs have not plead in their Complaint nor have they demonstrated in their Opposition how either of the named Plaintiffs who represent the Voluntary Departure Class has established prima facie eligibility to adjust status nor have they demonstrated that these named plaintiffs are prima facie eligible for the "ample" other opportunities for relief from removal. Because Plaintiffs have not demonstrated prejudice, they cannot prevail on their due process claim and this Court should dismiss it.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in Defendants' Motion to Dismiss, this Court should dismiss Plaintiff's Complaint under Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6).

DATED:  September 25, 2025                             Respectfully submitted

                                                      BRETT A. SHUMATE
                                                      Assistant Attorney General Civil Division

                                                      SAMUEL P. GO
                                                      Assistant Director
                                                      United States Department of Justice Civil

REPLY ISO DEFENDANTS' MOTION TO DISMISS

Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 353-9923
Samuel.go@usdoj.gov

MARY L. LARAKERS
Senior Litigation Counsel
United States Department of Justice Civil
Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 353-4419
Mary.l.larakers@usdoj.gov

/s/ Carolyn D. Dillard
CAROLYN D. DILLARD
Trial Attorney
P78090 (MI Bar No.)
United States Department of Justice Civil
Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 514-7013
Carolyn.D.Dillard@usdoj.gov


Attorneys for Defendants