1   BREE BERNWANGER - # 331731
    bbernwanger@aclunc.org
2   MICHELLE (MINJU) Y. CHO - # 321939
    mcho@aclunc.org
3   LAUREN DAVIS - # 357292
    ldavis@aclunc.org
4   SHILPI AGARWAL - # 270749
    sagarwal@aclunc.org
5   AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN
6   CALIFORNIA
    39 Drumm Street
7   San Francisco, CA 94111
    Telephone: (415) 621-2493
8
    MAYRA JOACHIN - # 306065
9   mjoachin@aclusocal.org
    EVA BITRAN - # 302081
10  ebitran@aclusocal.org
    AMERICAN CIVIL LIBERTIES UNION
11  FOUNDATION OF SOUTHERN
    CALIFORNIA
12  1313 West 8th Street
    Los Angeles, CA 90017
13  Telephone: (213) 977-5000

14  BRISA VELAZQUEZ OATIS - # 339132
    bvoatis@aclu-sdic.org
15  AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF SAN DIEGO &
16  IMPERIAL COUNTIES
    P.O. Box 87131
17  San Diego, CA 92138-7131
    Telephone: (619) 398-4199
18
    *Attorneys for Plaintiffs*

AJAY S. KRISHNAN - # 222476
akrishnan@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA L. GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

19              UNITED STATES DISTRICT COURT
20            EASTERN DISTRICT OF CALIFORNIA
                      FRESNO DIVISION
21

22  UNITED FARM WORKERS, et al.,          Case No. 1:25-cv-00246-JLT-CDB

23              Plaintiffs,                **DECLARATION OF BREE
                                           BERNWANGER IN SUPPORT OF
24          v.                             PLAINTIFFS' OPPOSITION TO
                                           DEFENDANTS' MOTION TO STAY**
    KRISTI NOEM, IN HER OFFICIAL
25  CAPACITY AS SECRETARY OF THE           Dept.:      Courtroom 4, 7th Floor
    DEPARTMENT OF HOMELAND                 Judge:      Hon. Jennifer L. Thurston
26  SECURITY; et al.,
                                           Date Filed: February 26, 2025
27              Defendants.
                                           Trial Date:  None set
28

                                           1
DECLARATION OF BREE BERNWANGER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS'
                                MOTION TO STAY
                        Case No. 1:25-cv-00246-JLT-CDB
3119440

I, Bree Bernwanger, declare as follows:

1.      I am attorney licensed to practice in the State of California. I am a Senior Staff Attorney at the ACLU Foundation of Northern California and am counsel of record for Plaintiffs in this matter. I make this declaration in support of Plaintiffs' Opposition to Defendants' Motion to Stay in Light of Lapse of Appropriations. I have personal knowledge of the following facts and, if called as a witness, I could and would testify competently thereto.

2.      Attached to this declaration as **Exhibit 1** is a true and correct copy of the U.S. Department of Justice FY 2026 Contingency Plan, dated September 29, 2025, which is also available at: https://www.justice.gov/jmd/media/1377216/dl.

3.      Attached to this declaration as **Exhibit 2** is a true and correct copy of the U.S. Office of Personnel Management Guidance for Shutdown Furloughs, dated September 2025, which is also available at: https://www.opm.gov/policy-data-oversight/pay-leave/reference-materials/guidance-for-shutdown-furloughs-sep-28-2025/.

4.      Attached to this declaration as **Exhibit 3** is a true and correct copy of the Department of Homeland Security Procedures Relating to a Lapse in Appropriations, dated September 29, 2025, which is also available at: https://www.dhs.gov/sites/default/files/2025-09/2025_0930_dhs_procedures_related_to_a_lapse_in_appropriations.pdf.

5.      Attached to this declaration as **Exhibit 4** is a true and correct copy of a September 30, 2025, 8:37 PM social media post by U.S. Department of Homeland Security Secretary Kristi Noem on the social media platform X using the handle @KristiNoem, which is available at: https://x.com/KristiNoem/status/1973230844098859376. The post includes the following statement from Secretary Noem: "Our [DHS] law enforcement officers will continue to work throughout the Democrats' Shutdown to make sure out homeland is safe and secure."

6.      Attached to this declaration as **Exhibit 5** is a true and correct copy of an October 1, 2025, 1:52 PM social media post by U.S. Customs and Border Protection Commissioner Rodney Scott on the social media platform X using the handle @CBPCommissioner, which is available at: https://x.com/CBPCommissioner/status/1973491275409105150. The post includes the following statement from Commissioner Scott: "Rest assured that @CBP continues to report

DECLARATION OF BREE BERNWANGER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
Case No. 1:25-cv-00246-JLT-CDB

3119440

for duty and protect America 24/7/365 regardless of the failures in the Legislative Branch."

7.    Attached to this declaration as **Exhibit 6** is a true and correct excerpted copy of the docket report in *State of Rhode Island, et al. v. Trump et al,* No. 25-cv-00128-JJM-AEM, wherein the pertinent docket entry, the court's October 2, 2025, Text Order denying the Government's Motion to Stay, has been highlighted by counsel. The Text Order states: "The Court is required to continue its constitutional functions, and therefore the Motion to Stay is DENIED. Department of Justice contingency plan states: 'If a court denies such a request [to stay or continue] and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue.'"

8.    Attached to this declaration as **Exhibit 7** is a true and correct excerpted copy of the docket report in *United States of America et Al V. Google LLC*, No. 20-cv-03010-APM, wherein the pertinent docket entry, the court's October 2, 2025, Minute Order denying the Government's Motion for a Temporary Stay of Further Proceedings in Light of Lapse of Appropriations, has been highlighted by counsel. The Minute Order states: "The United States' request to stay this matter is denied. *See Kornitzky Grp. v. Elwell*, 912 F.3d 637, 638 (D.C. Cir. 2019) (Srinivasan, J., Edwards, J., concurring) (explaining reasons for denying government request to stay oral argument because of government shut down); *United States v. US Airways Grp.*, 979 F. Supp. 2d 33, 34-35 (D.D.C. 2013) (denying government request to stay merger action because of government shut down); *see also* U.S. Department of Justice FY 2026 Contingency Plan 3 (Sept. 29, 2025), https://www.justice.gov/jmd/media/1377216/dl ('If a court denies such a [stay] request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue.')."

I declare under penalty of perjury that the foregoing is true and correct. This declaration was executed on October 3, 2025 in Berkeley, California.

_____
Bree Bernwanger

DECLARATION OF BREE BERNWANGER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO STAY
Case No. 1:25-cv-00246-JLT-CDB

3119440

# Exhibit 1

# U.S. Department of Justice FY 2026 Contingency Plan

- September 29, 2025 -

This FY 2026 Contingency Plan covers Department of Justice (DOJ or the Department) operations during a lapse in appropriations.

The Antideficiency Act restricts the Federal Government's ability to obligate funds in advance of appropriations or beyond appropriated levels. During a lapse in appropriations, the Department will only continue the following categories of activities:

1.  Those funded by a source that has not lapsed, such as permanent indefinite appropriations and carryover of no-year funds appropriated in a prior year;

2.  Those for which there is an express authority to continue during an appropriations lapse;

3.  Those for which authority to continue during an appropriations lapse arises by necessary implication;

4.  Those related to the discharge of the President's constitutional duties and powers; and

5.  Those related to "emergencies involving the safety of human life or the protection of property," *i.e.,* where there is a reasonable likelihood that the safety of human life or the protection of property would be compromised, in some significant degree, by delay in the performance of the function in question.

The Department of Justice is comprised of components that have a broad array of national security, law enforcement, and criminal justice system responsibilities. The Department's mission is to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

Therefore, a significant portion of the Department's mission relates to the safety of human life and the protection of property, and primarily for this reason, the Department has a high percentage of activities and employees that are excepted from the Antideficiency Act restrictions and can continue during a lapse in appropriations. Other activities and employees are excepted because they are funded with multi-year or no-year appropriations, or because they are Presidential appointees, most of whom are excepted from furlough because they are not covered by the leave system in 5 U.S.C. Chapter 63.[1] Note that the contingency plan assumes that, at the

---

[1] Note: Former career Senior Executive Service (SES) appointees who receive a Presidential appointment that would

time of a shutdown, all Components and Subcomponents normally headed by a Presidential appointee are in fact headed by a Presidential Appointee.   If at the time of shutdown, the Department does not have Presidential appointees in one or more of those positions, the Department will determine the excepted status of those who are acting in those positions in accordance with the criteria above.

## Agency Summary

The total number of agency employees on board at the time the Department initially issued this Contingency Plan was 115,131[2] (see Table 2).  Based on onboard personnel data as of May 31, 2025, for a lapse in appropriations for the first five calendar days of FY 2026, beginning on October 1, 2025, 102,291 DOJ employees would be excepted from furlough (see Table 1), representing 89% of DOJ on-board employees.

**Table 1: Department of Justice FY 2026 Contingency Plan Exceptions
Employees Excepted from Furlough**

| Categories | | Total Excepted Employees |
|---|---|---|
| Category 1 | Employees whose compensation is financed by a resource other than annual appropriation (also referred to as "exempt employees") | 4,930 |
| Category 2 | Employees necessary to perform activities expressly authorized by law to continue during a lapse in appropriations | 1,408 |
| Category 3 | Employees necessary to perform activities necessarily implied by law | 3,190 |
| Category 4 | Employees necessary to the discharge of the President's constitutional duties and powers | 30 |
| Category 5 | Employees necessary to protect life and property | 92,733 |
| **Total** | | **102,291** |

normally convey an exemption from the leave system may be eligible to elect to retain SES leave benefits under 5 U.S.C. § 3392(c).  If SES leave benefits are so elected, such a Presidential Appointee would be subject to furlough under 5 CFR part 359, subpart H, unless otherwise excepted.

[2] With limited exceptions, onboard staffing data are derived from DOJ's payroll system and reflect information from pay period 10, 2025.

The Department's plan is consistent with Office of Legal Counsel (OLC) opinions and Office of Management and Budget (OMB) guidance and conforms to the following general principles:

- The law enforcement capacity of the U.S. Government should not be impaired or perceived to be impaired. To do so could constitute an imminent threat to the safety of human life and the protection of property.

- Components may call some employees back to work if the need for their services becomes critical, and furlough others as conditions change.

- Ancillary support services will be maintained to the extent necessary to support excepted operations. These ancillary functions include legislative affairs and other congressional support activities, public affairs activities, and community outreach, which may be conducted to the extent the failure to perform those functions prevents or significantly damages the functioning of a funded component, the operations of other funded parts of the Government, or the performance of an excepted function.

- Employees may not be reassigned or given new duties, and offices may not be restructured, in order to move individuals from a non-excepted function into an excepted function (although some rotational coverage of excepted positions will occur).

With respect to litigation, the Department's plan assumes that the Judicial Branch will continue to operate, though possibly at a reduced level, through the lapse. Therefore:

- Criminal litigation will continue without interruption as an activity essential to the safety of human life and the protection of property. Domestic and international extraditions are also necessary to protect life and property and therefore excepted. Extradition requests are made pursuant to bilateral and multilateral treaties which carry obligations to extradite within a treaty deadline timeframe that cannot be extended due to a lapse in appropriation.

- Civil litigation will be curtailed or postponed to the extent that this can be done without compromising to a significant degree the safety of human life or the protection of property. Litigators will approach the courts and request that active cases, except for those in which a delay would compromise to a significant degree the safety of human life or the protection of property, be postponed until funding is available. If a court denies such a request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue. The Department will limit its civil litigation staffing to the minimum level needed to comply with the court's order and to protect life and property. Receipt of summonses, pleadings and motions by mail may be delayed.

Assumptions relating to training activities (where the funding for those training activities has lapsed) are as follows:

- To ensure the proper execution of the Department's emergency functions, components may determine that the training of new employees in positions that have been designated as "emergency" is an excepted function.

- To the extent that the training of new "emergency" employees is in process or about to begin when a lapse occurs, components should consider whether a short delay (for example, over the weekend) in the training will compromise emergency functions. If such a delay will not compromise emergency functions, components should consider keeping the employees at the training center but delaying the training itself or not sending the employees to the training during the brief delay. If at any point the component determines that the delay in training might impact emergency functions, the training should resume.

- New employees who are not in positions designated as "emergency" should not start work during the lapse and should not be trained.

- In-service training of current employees, even those excepted from furlough, will be cancelled.

- Generally, training of state and local officers should be cancelled during a lapse of appropriations. However, components should use their judgment to determine whether, in exceptional circumstances, there is a reasonable and articulable connection between the training and the safety of human life or the protection of property, and there is a reasonable likelihood that the safety of human life or the protection of property would be significantly compromised if the training were delayed. If so, such training may continue.

- Generally, training for international law enforcement officers occurring in the United States will be cancelled. However, with respect to training international law enforcement officers abroad (such as the training of officers who will be working in a combat zone), components will use their judgment to determine whether such training needs to occur immediately to protect human life or property. If so, such training may continue.

- For those components who use the Federal Law Enforcement Training Center (FLETC) for training, shutdown and reengagement plans will be coordinated with the Department of Homeland Security and FLETC personnel.

Employee relocations will, for the most part, be postponed during a lapse. Exceptions will be made for employees performing emergency functions who were in the process of moving and/or

4

had their relocation authorizations approved prior to the lapse, but reimbursements for their expenses may be delayed. New relocations will not be approved unless: (a) they are being paid from a funded source (e.g., Diversion fees or Federal Bureau of Investigation (FBI) no-year funding) or (b) they are necessary to continue emergency functions.

With respect to overseas operations, the Department will defer to the Chief of Mission (COM) for all employees (DOJ and contract) who are posted at an embassy or installation and will ensure its employees comply fully with all applicable directives of the COM related to the continued or suspended business of the embassy or installation.

Department programs funded with permanent indefinite appropriations or other funding not subject to annual appropriation (e.g., Diversion Control, Health Care Fraud and Abuse Control, Debt Collection, Assets Forfeiture Fund, Federal Prison Industries) are displayed in the plan as excepted positions (and are also referred to as "exempted positions" in other contexts), because their funding is not dependent upon an enacted appropriation. Also included within the accounts that have funding are the Bureau of Prisons' (BOP) Buildings and Facilities and Commissary accounts, which have carryover funding from their multi-year authority. Employees paid from these funding sources are not dependent upon an enacted appropriation and are therefore considered excepted. In light of the continued availability of these funding sources, approximately 4,930 excepted employees will be paid, at least initially, in the event of a lapse. The rest of the excepted employees will work without pay.

The Department notes that certain components are in the process of being eliminated as standalone components as part of the Department's Agency Reduction In Force (RIF) and Reorganization Plan (ARRP). Employees in these components who qualify for an exception will be excepted. These component eliminations are expected to occur after October 1, 2025, and this plan is subject to updates after that time. The excepted employee charts reflect these ARRP transitions as much as possible, but are based on the Department's current, not future, state.

## Individual DOJ Component Summaries

The following is a synopsis of the DOJ components' plans, including the nature of the agency activities in which excepted employees will be engaged. The attached Table 2 provides the total number of employees in the component on-board when the plan was issued; the total number of component employees excepted from furlough under each of the recognized exceptions; and the agency's legal basis for each of its determinations to except employees.

**Department Leadership Offices**: These offices are funded through the Justice Operations, Management, and Accountability (JOMA) account and include Presidential Appointees, who are not subject to furlough by virtue of their appointment status, while a sizeable number of employees in these organizations will be furloughed. The excepted employees will provide overall Departmental leadership and policy management for ongoing operations that protect life

and property and for other excepted activities during the lapse of appropriations.

**Justice Management Division:** The JOMA account also funds a portion of the functions and staff of the Justice Management Division (JMD).  Excepted JOMA-funded JMD employees will support ongoing operations that protect life and property, including IT support and building security at the Main Justice Building.  The Working Capital Fund (WCF) is funded by reimbursements from a variety of sources, but primarily from sources that are appropriated annually and will not be available if there is a lapse in appropriations; many of these functions will be curtailed during the lapse.  In addition, a number of JMD employees are funded by the Three Percent Fund for debt collection, which is not subject to annual appropriation, and thus these employees are excepted under Category 1 and therefore continue to work during a lapse in appropriations.

JMD also oversees the Justice Information Sharing Technology (JIST) and the WCF Information Technology accounts.  Excepted employees in these areas are needed to operate the 24/7 Justice Security Operations Center, which provides information security for the Department's systems, including those required for exempted and excepted functions.  In addition, these employees are needed for information technology operations and systems that support ongoing law enforcement operations that will continue during any lapse in appropriations.

**Executive Office for Immigration Review (EOIR)**:  A national emergency was declared by President Trump citing the threat to the national security and economy of the United States caused by illegal migration.  EOIR's primary mission is to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws.  EOIR currently has a backlog approaching four million cases which would be greatly exacerbated during a shutdown absent excepted activities.  EOIR staff, including administrative oversight and support staff, that are needed to process immigration cases and appeals involving detained respondents, including criminal aliens, are excepted employees in the event of a shutdown.  Non-court employees, including general counsel, policy and human relations employees, will be reduced to the minimum necessary to support excepted operations.  Employees are excepted on the basis of the recognized exceptions to the Antideficiency Act, including the exception for activities necessary to protect life and property.

**General Legal Activities (GLA)**: The GLA account includes the following components: Office of the Solicitor General, Criminal Division, Civil Division, Environment and Natural Resources Division, Office of Legal Counsel, and Civil Rights Division.  The Solicitor General and the Assistant Attorneys General are Presidential Appointees and are not subject to furlough.  Three organizations that are impacted by the Department's ARRP were also funded through GLA in FY 2025: INTERPOL Washington, the Tax Division, and the Office for Access to Justice.

The excepted employees are necessary to provide legal advice on ongoing excepted functions of

the Executive Branch, including matters of national security and presidential authority, to the Attorney General, the Deputy Attorney General, others within the Department, the White House, the National Security Council, and the Departments of State and War.   Excepted employees will also review Attorney General Orders, Executive Orders and Proclamations, and presidential memoranda and directives; ensure that criminal litigation continues uninterrupted; seek continuances for civil and appellate litigation, except as necessary for the immediate protection of life or property; proceed with civil and appellate litigation should attempts to secure continuances fail; provide administrative advice and resource allocation guidance to Civil Rights Prosecution personnel and the Assistant Attorney General, Civil Rights Division, in the event of civil disorder; respond to and investigate complaints of alleged criminal civil rights violations involving endangerment of life or property and handle complaints from institutionalized persons concerning life-threatening situations.  Also, excepted employees are needed to provide uninterrupted communications among federal, state, local and international law enforcement entities in furtherance of, among other things, criminal investigations and the apprehension of fugitives and criminal and illegal aliens.  If a court denies a litigator's request to postpone a case and orders it to continue, the litigation will become an excepted activity that can continue during the lapse.

**U.S. Marshal Service (USMS)**: As a Presidential Appointee, the Director of USMS is not subject to furlough.  The ninety-four U.S. Marshals in the Federal Districts are Presidential Appointees, but are subject to the leave system in 5 U.S.C. Chapter 63 and, therefore, are subject to furlough.  However, since they all have duties directly related to the protection of life and property, they are excepted from furlough and will continue working.  The excepted employees, including the U.S. Marshals, are needed to carry out duties associated with judicial security; prisoner custody, security, and transportation; and fugitive apprehension.  Some Headquarters personnel are also excepted as their functions are critical to the support of the U.S. Marshals and Deputy U.S. Marshals in the field – this support includes integrity assurance, oversight of investigative operations and judicial security, tactical operations, witness security, Basic Deputy U.S. Marshal training, and management functions that include law and policy, budget and finance, procurement, information technology, human resource administration, and security. In the event of an extended lapse in appropriations, the USMS would require additional excepted positions across its Divisions.

**Office of the Inspector General (OIG)**: As a Presidential Appointee, the Inspector General is not subject to furlough.  The excepted employees are needed to investigate allegations of bribery, fraud, abuse, civil rights violations and violations of other criminal laws and administrative procedures arising from the conduct of Department employees, contractors and grantees; support law enforcement functions; oversee emergency operations and provide legal advice and issue subpoenas; continue work on time-sensitive national security investigations; and provide security and administrative support for excepted personnel and emergency services.  In addition, OIG has

excepted personnel under Category 1 who perform audits whose compensation is financed from sources other than direct appropriations. In the event of an extended lapse in appropriations, additional personnel may be needed.

**Office of the Pardon Attorney (PARDON)**: PARDON's mission is to assist the President in the exercise of his constitutional clemency power, which falls within exception 4, enabling the "discharge of the President's constitutional duties and powers." This mission includes preparing warrants for clemency, providing recommendations to the President, undertaking investigations in pending clemency matters, and providing data and information to the President on individual clemency cases, the collective clemency caseload, and historical acts of clemency. PARDON is the sole office within the federal government that has expertise in this subject matter and is the only entity that can provide this key information to the President. Should the President wish to act on any pending clemency matter, or even to seek further information about pending or historical clemency cases, PARDON alone provides this vital service and data to the President. Without PARDON, presidential clemency decisions may be delayed for individuals who would otherwise receive clemency.

**U.S. Attorneys (USA)**: Excepted employees are needed to address ongoing criminal matters and civil matters of urgency throughout the Nation. Criminal litigation will continue without interruption as an excepted activity to maintain the safety of human life and the protection of property. Civil litigation will be curtailed or postponed to the extent this can be done without compromising to a significant degree the safety of human life or the protection of property. If a court denies a litigator's request to postpone a case and orders it to continue, the litigation will become an excepted activity that can continue during the lapse. Headquarters support is maintained only to the extent necessary to support excepted operations. The Executive Office for United States Attorneys also expects that it will need to except additional employees in the event of an extended lapse.

**Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)**: As a Presidential Appointee, the Director of ATF is not subject to furlough. Excepted employees include: all agents in ATF's field divisions, who conduct the full range of criminal investigations in the firearms, arson, explosives, alcohol, and tobacco program areas; Industry Operations Investigators who conduct compliance inspections of Federal firearms and Federal explosives licensees (including those mandated under the Safe Explosives Act), as well as application inspections; and other personnel who collect, review and analyze intelligence data in support of criminal investigations. Headquarters support will be maintained only to the extent necessary to support excepted operations.

**Drug Enforcement Administration (DEA)**: DEA's Administrator is a Presidential Appointee and not subject to furlough, and agents in DEA field organizations are excepted from furlough

because they support active counternarcotics investigations, particularly in light of recent authoritative actions – including the Department of Homeland Security Memorandum issued on January 22, 2025, expanding immigration enforcement authority – and Presidential directives, such as *Guaranteeing the States Protection Against Invasion* and *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*. It is critical that DEA's operational activities be maintained in the event of a lapse in appropriations given its essential roles in national security, public safety, and health. Headquarters personnel who provide critical support to excepted activities in the field will be maintained to the extent necessary to support those operations, which would include providing direction and priorities, legal support, and integrity assurance and investigative oversight.

**Antitrust Division (ATR)**: As a Presidential Appointee, the Assistant Attorney General is not subject to furlough. The excepted employees are needed to conduct or directly support ongoing criminal trials, prepare for criminal proceedings that have been scheduled for court (including the handling of arraignments, pleas, and sentencing hearings), and conduct or support ongoing civil litigation in which a continuance cannot be obtained. They will also prepare cases that must be filed due to statutory deadlines, but only when an extension or waiver cannot be obtained and ATR leadership determines that allowing a proposed merger to go forward without objection would pose a reasonable likelihood of peril to property in which the United States has an immediate interest. The work conducted by the Division is funded from no-year appropriations, as are the employees. As a result, these activities may continue during a lapse as long as sufficient carryover funds remain and based upon input from Department leadership regarding mission requirements. However, for the sake of the FY 2026 contingency exercise, the Division is reflecting the level of personnel that would be needed if they had to reduce the personnel to only those most critical during a shutdown, 457 positions (60% of the total 761 positions on board),

**U.S. Trustees Program (USTP)**: The USTP has excepted personnel who would continue to work without pay throughout the lapse. These excepted employees are needed to protect bankruptcy estate property through the appointment and oversight of fiduciaries and through other means. Excepted employees are responsible for coordinating meetings of debtors and creditors, as well as civil and criminal matters, including cases with the U.S. Attorneys and the FBI. Excepted employees are limited to performing only those functions in which there is a definite risk of substantial property loss or violation of law. Of the excepted staff about fifty-eight percent of staff would be attorneys, primarily in Program field offices, and forty-two percent would be other staff. Other staff include auditors in the field, as well as primary and back-up support for ongoing bankruptcy fee collection duties, statutory trustee oversight responsibilities and public affairs activities. In addition, this period would necessitate coverage in the areas of budget, physical security, and facilities support for our excepted field operations.

**National Security Division (NSD)**: As a Presidential Appointee, the Assistant Attorney General is not subject to furlough. The excepted employees are needed to ensure the Department's national security investigations and prosecutions continue, that the Department's national security activities are coordinated both within the Department and with other government agencies, and to represent the Intelligence Community before the Foreign Intelligence Surveillance Court, which will remain open to facilitate the national security activities of the United States in a manner consistent with the law. NSD will also provide legal advice to the Intelligence Community with respect to ongoing national security matters and oversee the Department's administration of the U.S. Government's authorities under the Foreign Intelligence Surveillance Act. In addition, excepted employees will continue work on pending counterterrorism, espionage, export control, sanctions violations and cybersecurity prosecutions and investigations; coordinate and supervise the Department's international terrorism, domestic terrorism, and weapons of mass destruction matters; and continue to review Committee on Foreign Investment in the United States matters, including responding to time-sensitive inquiries regarding the national security implications of corporate conduct in compliance with National Security Agreements. In the event of an extended lapse in appropriations, NSD has indicated the need for 31 additional excepted employees. The majority of the thirty-one positions would fall under the Other Staff category. These positions would include paralegals, security, IT, and travel staff who would be needed for excepted activities.

**Federal Bureau of Investigation (FBI)**: As a Presidential Appointee, the FBI Director is not subject to furlough. All FBI agents and support personnel in the field are excepted from furlough because they directly address and/or provide essential assistance to mitigate imminent threats to human life or property through the FBI's national security and law enforcement operations. In addition, headquarters personnel will be excepted to the extent that they support excepted functions, including field operations. All work conducted will focus on excepted functions in support of national security and law enforcement operations, which includes personnel that provide fingerprint identification services, name check services for criminal and national security investigations, gun checks through the National Instant Criminal Background Check System, critical law enforcement surge efforts, and other essential functions. Non-excepted functions will not proceed during a lapse in appropriations.

**Office of Community Oriented Policing Services (COPS)**: As a Presidential Appointee, the COPS Director is not subject to furlough. The grants awarded by the Department are funded from no-year appropriations, as are the employees who administer those grants. As a result, these activities may continue during a lapse as long as sufficient Salaries and Expenses (S&E) carryover funds remain and based upon input from Department leadership regarding mission requirements. However, for the sake of the FY 2026 contingency exercise, the grant programs are reflecting the level of personnel who would be needed if they had to reduce the personnel to only those most critical during a shutdown.

10

**Office of Justice Programs (OJP)**: As a Presidential Appointee, the Assistant Attorney General for OJP is not subject to furlough.  The grants awarded by the Department are funded from no-year appropriations, as are the employees who administer those grants.  As a result, these activities may continue during a lapse as long as sufficient S&E carryover funds remain and based upon input from Department leadership regarding mission requirements.  However, for the sake of the FY 2026 contingency exercise, the grant programs are reflecting the level of personnel who would be needed if they had to reduce the personnel to only those most critical during a shutdown.

**Office on Violence Against Women (OVW)**: As a Presidential Appointee, the OVW Director is not subject to furlough.  The grants awarded by the Department are funded from no-year appropriations, as are the employees who administer those grants.  As a result, these activities may continue during a lapse as long as sufficient S&E carryover funds remain and based upon input from Department leadership regarding mission requirements.  However, for the sake of the FY 2026 contingency exercise, the grant programs are reflecting the level of personnel who would be needed if they had to reduce the personnel to only those most critical during a shutdown.  For OVW, this level of personnel is approximately sixteen (or thirteen percent of the total 120 current on-board staff).

**Bureau of Prisons (BOP)**: All staff at the Federal prisons, including Public Health Service Officers necessary to provide medical care of inmates, are considered excepted since they have direct daily inmate custody responsibilities.  Employees are also needed to continue inmate custody responsibilities for over 28,800 inmates in contract facilities and process all new designations to federal prisons from the Courts.  Regional and headquarters support will be maintained only to the extent necessary to support excepted operations.  BOP's Buildings and Facilities, Prison Industries, and Commissary accounts have multi-year authority and should have adequate carry-over funding to meet expenses during a lapse in appropriations.

**Foreign Claims Settlement Commission (FCSC)**: As Presidential Appointees, the Commissioners are not subject to furlough.  All staff would be furloughed; therefore, staff activity related to the settlement of foreign claims would be postponed.

**U.S. Parole Commission (USPC)**: The USPC has a total of twenty-six excepted employees: four Attorneys, two Commissioners, and twenty senior staff, hearing examiners, and case analysts.  The excepted USPC employees are needed to respond to requests for emergency warrants and process parole certificates.  Due to the constitutional prohibitions against the suspension of the writ of habeas corpus, this litigation has continued and is expected to continue in all judicial districts.

**Table 2: FY 2026 Department of Justice Contingency Plan On-Board vs. Excepted Employees[3]**

| Name | Total On Board | Excepted | | | | |
|---|---|---|---|---|---|---|
| | | Total | Special Agent | Intel Analyst | Attorney | Other Staff |
| ATF | **5,146** | 4,050 | 2,370 | 287 | 51 | 1,342 |
| ATJ | **33** | 0 | 0 | 0 | 0 | 0 |
| ATR | **761** | 457 | 0 | 0 | 321 | 136 |
| BOP | **36,019** | 34,745 | 15,903 | 0 | 202 | 18,640 |
| CIV | **1,439** | 829 | 0 | 0 | 677 | 152 |
| COPS | **83** | 9 | 0 | 0 | 1 | 8 |
| CRM | **1,060** | 899 | 0 | 0 | 608 | 291 |
| CRS | **53** | 0 | 0 | 0 | 0 | 0 |
| CRT | **632** | 136 | 0 | 0 | 96 | 40 |
| DEA | **8,875** | 7,581 | 4,063 | 651 | 121 | 2,746 |
| ENRD | **506** | 245 | 0 | 0 | 220 | 25 |
| EOIR | **2,559** | 2,314 | 0 | 0 | 1,092 | 1,222 |
| FBI | **36,755** | 36,755 | 13,288 | 3,180 | 222 | 20,065 |
| FCSC | **8** | 3 | 0 | 0 | 1 | 2 |
| INTERPOL | **65** | 65 | 0 | 0 | 2 | 63 |
| LEADERSHIP & JMD | **1,069** | 261 | 0 | 0 | 24 | 237 |
| NSD | **360** | 242 | 0 | 3 | 189 | 50 |
| OCDETF | **52** | 14 | 0 | 4 | 3 | 7 |
| OIG | **554** | 329 | 119 | 0 | 5 | 205 |
| OJP | **796** | 41 | 0 | 0 | 2 | 39 |
| OLC | **23** | 21 | 0 | 0 | 18 | 3 |
| OSG | **48** | 38 | 0 | 0 | 22 | 16 |
| OVW | **120** | 16 | 0 | 0 | 2 | 14 |
| PARDON | **33** | 8 | 0 | 0 | 3 | 5 |
| TAX | **412** | 218 | 0 | 0 | 174 | 44 |
| USA | **11,191** | 7,368 | 40 | 45 | 4,802 | 2,481 |
| USMS | **5,535** | 5,201 | 3,820 | 30 | 22 | 1,329 |
| USPC | **40** | 26 | 0 | 0 | 4 | 22 |
| USTP | **904** | 420 | 0 | 0 | 242 | 178 |
| **TOTAL** | **115,131** | **102,291** | **39,603** | **4,200** | **9,126** | **49,362** |

[3] This chart includes components that will be eliminated on October 1, 2025, because it reflects the number of personnel onboard at the time the FY 2026 Contingency Plan was developed.

**Table 3: FY 2026 Department of Justice Contingency Plan Excepted Employees by Category**

| Categories | Employees Excepted from Furlough | | | | |
|---|---|---|---|---|---|
| | Total | Agent | Intel Analyst | Attorney | Other |
| Category 1 | 4,930 | 390 | 97 | 902 | 3,541 |
| Category 2 | 1,408 | 0 | 0 | 1,016 | 392 |
| Category 3 | 3,190 | 259 | 36 | 300 | 2,595 |
| Category 4 | 30 | 0 | 0 | 9 | 21 |
| Category 5 | 92,733 | 38,954 | 4,067 | 6,899 | 42,813 |
| **TOTAL** | **102,291** | **39,603** | **4,200** | **9,126** | **49,362** |

**Category 1** = Employees whose compensation is financed by a resource other than annual appropriations.

**Category 2** = Employees necessary to perform activities expressly authorized by law.

**Category 3** = Employees necessary to perform activities necessarily implied by law (including Presidentially-appointed and Senate-confirmed employees).

**Category 4** = Employees necessary to the discharge of the President's constitutional duties and powers.

**Category 5** = Employees necessary to protect life and property.

# Exhibit 2

# Guidance for Shutdown Furloughs




U.S. Office of
Personnel Management

**SEPTEMBER 2025**

# Overview

The U.S. Office of Personnel Management (OPM) has prepared human resources guidance for agencies and employees on shutdown furloughs (also called emergency furloughs). A shutdown furlough occurs when there is a lapse in annual appropriations. Shutdown furloughs can occur at the beginning of a fiscal year, if no funds have been appropriated for that year, or upon expiration of a continuing resolution, if a new continuing resolution or appropriations law is not passed.

In a shutdown furlough, an affected agency would have to shut down any activities funded by annual appropriations that are not excepted by law. Typically, an agency will have very little to no lead time to plan and implement a shutdown furlough.

This guidance has been updated to incorporate the requirements of the Government Employee Fair Treatment Act of 2019 (Public Law 116-1, January 16, 2019). That Act amended section 1341 of title 31, United States Code, to provide retroactive pay for Federal employees affected by a lapse in appropriations as soon as possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse.

NOTE: This guidance applies to activities that are funded by annual appropriations. Some agency functions have alternative funding sources and, as a result, are not directly affected by a lapse in annual appropriations. Employees performing those functions will generally continue to be governed by the normal pay, leave, and other civil service rules. Agencies should consult with their legal counsel if they have further questions concerning this distinction. Employees should consult with their Human Resources office.

# Table of Contents

Overview ........................................................................................................... i

Table of Contents ............................................................................................. ii

Frequently Asked Questions ............................................................................ 1

    A.   General ................................................................................................ 1

    B.   Employee Coverage ........................................................................... 2

    C.   Working, and Work Schedules, During Furlough ............................. 5

    D.   Pay ...................................................................................................... 7

    E.   Performance Awards and Within-Grade Increases ......................... 13

    F.   Leave and Other Time Off ............................................................... 14

    G.   Holidays ............................................................................................ 27

    H.   Benefits ............................................................................................. 29

        Federal Employees Health Benefits Program—General ................... 30

        FEHB Program—Open Season Enrollments/Changes ...................... 30

        Other Insurance Programs ................................................................. 31

    I.   Employee Assistance ........................................................................ 33

    J.   Service Credit for Various Purposes ................................................ 34

    K.   Federal Employees on Military Duty ............................................... 34

    L.   Retirement ........................................................................................ 36

    M.   Retirement Services: Government Closure ...................................... 37

    N.   Payments upon Separation from Federal Service ............................ 38

    O.   Benefits under the Federal Employees' Compensation Act (FECA) ....................39

    P.   Procedures ........................................................................................ 40

    Q.   Labor Management Relations Implications ..................................... 48

    R.   Reductions in Force ......................................................................... 50

Sample Shutdown Furlough Decision Notice Due to a Lapse in Appropriations ........... 52

Sample Notice of Furlough During Holiday to Excepted Employee Due to a Lapse in Appropriations ................................................................ 56

Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee Due to a Lapse in Appropriations .......................................... 60

Table of Recent Changes ................................................................. 64

# Frequently Asked Questions

Note: Certain Q's and A's in this document, "Guidance for Shutdown Furloughs," assume coverage under provisions of law or regulation specified in the given Q and A. To the extent that a particular employee is not covered by those specified provisions, the guidance in the Q and A may not be applicable.

## A. General

1. **What is a furlough?**

   **A.** A furlough is the placing of an employee in a temporary nonduty, nonpay status because of lack of work or funds, or other nondisciplinary reasons.

2. **What is a shutdown furlough and why is a shutdown furlough necessary?**

   **A.** In the event that funds are not available through an appropriations law or continuing resolution, a "shutdown" furlough occurs. A shutdown furlough is necessary when an agency no longer has the necessary funds to operate and must shut down those activities which are not excepted pursuant to the Antideficiency Act (31 U.S.C. 1341-1342). (See guidance from the Office of Management and Budget (OMB) and the Department of Justice (DOJ) for further information on appropriation matters.)

3. **May an employee use government equipment during a shutdown furlough?**

   **A.** Yes, an employee may use government equipment for reasons such as:

   - Accessing their personal employee records;

   - Completing a background investigation;

   - Checking the status of the shutdown furlough;

   - Checking for any Reduction in Force (RIF) updates, or providing additional RIF information;

   - Updating personal contact information;

   - Completing or submitting Federal Employee Health Benefit changes; and

   - Completing or submitting a retirement application.

## B. Employee Coverage

**1. Who are "excepted" employees?**

**A.** In the context of shutdown furloughs, the term "excepted" is used broadly to refer to employees whose work is funded through annual appropriations but who are not furloughed because they are performing tasks that, by law, are allowed to continue during a lapse in appropriations. Those tasks are referred to as "excepted work." Such tasks may include emergency work involving the safety of human life or the protection of property or the performance of certain other types of "excepted work activities" as defined in DOJ and OMB guidance.

In addition to emergency work involving the safety of human life or the protection of property, work performed "by necessary implication" as described in DOJ and OMB guidance is considered to be excepted work. For example, an employee's performance of authorized orderly shutdown activities (as described in OMB and DOJ guidance) is considered excepted work. In addition, work necessary to implement a funded function, where the suspension of such work during the lapse would prevent or significantly damage the execution of the terms of the applicable statutory authorization or appropriation is considered "excepted work" (e.g., cutting the checks for a benefit program for which funding remains available during the lapse and from which the law requires payments to be made).

Agency legal counsel, working with senior agency managers, determine which employees are designated to be handling "excepted" and "non-excepted" functions. (See Shutdown Furlough Guidance for copies of the applicable OMB and DOJ issuances, which provide guidance on the application of these criteria.)

An employee may be required to perform excepted work activities during part of a lapse period and furloughed for the rest of the time. The use of paid leave is also permissible in certain situations, if taken pursuant to 31 U.S.C. 1341(c)(3). (See Questions D.1a. and F.2. for more information.)

(Note: Presidential appointees who are not covered by the leave system in 5 U.S.C. chapter 63 are not "excepted" as discussed above. However, they are not subject to furlough because their salary is an obligation incurred by the year, without consideration of hours of duty required, so they cannot be placed in a nonduty, nonpay status.)

**1a. To the extent that agencies need employees to be available to help process Form 931s, Request for Wage and Separation Information, or other requests from State unemployment offices, can agencies except employees who are furloughed due to the lapse in annual appropriations to assist with this?**

**A.** Yes. Agencies can except employees who have previously been furloughed due to the lapse in annual appropriations in order to come back into work to assist with processing Form 931s and other related unemployment issues. It is up to the discretion of the agency to identify which employees and the number of employees that are needed to be called back into work for this purpose.

2. **Are all employees who qualify as "emergency employees" for the purpose of weather emergencies considered to be "excepted employees" for the purpose of a shutdown furlough?**

   **A.** Not necessarily. "Emergency employees" are those employees who must report for work in emergency situations—e.g., severe weather conditions, air pollution, power failures, interruption of public transportation, and other situations in which significant numbers of employees are prevented from reporting for work or which require agencies to close all or part of their activities. Emergency employees are not automatically deemed excepted employees for purposes of shutdown furloughs. Each agency must determine which employees are excepted employees based on the law.

3. **Who are "exempt" employees?**

   **A.** Employees are "exempt" from furlough if they are not affected by a lapse in appropriations. This includes employees whose functions are not funded by annually appropriated funds. Employees performing those functions will generally continue to be governed by the normal pay, leave, and other civil service rules.

4. **What about employees whose work is neither "excepted" nor "exempt"?**

   **A.** Employees whose work is funded through annual appropriations but is not designated as excepted work are barred from working during a shutdown, other than to perform minimal activities as necessary to execute an orderly suspension of agency operations related to non-excepted activities. These employees will be furloughed.

5. **How will employees be notified whether they have been designated to be handling "excepted" functions or not?**

   **A.** Each agency will determine the method and timing of notifying employees of whether their work has been determined to be excepted.

6. **Why are leave-exempt Presidential appointees not subject to furlough?**

   **A.** Individuals appointed by the President, with or without Senate confirmation, who are not covered by the leave system in 5 U.S.C. chapter 63, or an equivalent

formal leave system, are not subject to furlough. An exemption from the chapter 63 leave system may be based on 5 U.S.C. 6301(2)(x) or (xi). (See also OPM regulations at 5 CFR 630.211.) These leave-exempt Presidential appointees are not subject to furloughs because they are considered to be entitled to the pay of their offices solely by virtue of their status as an officer, rather than by virtue of the hours they work. In other words, their compensation is attached to their office, and, by necessary implication of the President's authority to appoint such employees, their service under such an appointment creates budgetary obligations without the need for additional statutory authorization. Based on opinions of the Office of Legal Counsel, Department of Justice, the Antideficiency Act prohibition on creating a budgetary obligation before an appropriation is made is not applicable if the obligation is otherwise "authorized by law." (See 31 U.S.C. 1341 and 36 Op. O.L.C. 1, April 8, 2011.)

A leave-exempt Presidential appointee cannot be placed on nonduty status. Thus, the appointee's pay cannot be reduced based on placement in nonduty status, including via the mechanism of a furlough. As explained above, a leave-exempt Presidential appointee is entitled to the established pay of the position based on the holding of the office, not on the hours of duty.

Presidential appointees who are covered by the chapter 63 leave system are not considered to be entitled to pay based solely on their status as officers; thus, these individuals are subject to furlough in the same manner as other Federal employees. (See 5 U.S.C. 5508.) Any Presidential appointee who is a member of the Senior Executive Service (SES) or in a senior level (SL/ST) position paid under 5 U.S.C. 5376 is not exempt from the chapter 63 leave system (unless specifically designated for exemption under 5 U.S.C. 6301(2)(xi) and 5 CFR 630.211). All SES and SL/ST employees covered by the chapter 63 leave system are subject to furlough on the same basis as other employees. (The furlough of career SES members is subject to the procedures in 5 CFR 359, subpart H, and the furlough of SL/ST employees is subject to the procedures in 5 CFR 752, subpart D, or 5 CFR part 351, as applicable.)

While employees may be subject to furlough, the applicable procedures depend on the type of employee in question. For example, all Presidential appointees are excluded from the adverse action procedures in 5 U.S.C. chapter 75, based on 5 U.S.C. 7511(b)(1) and (3). In addition, Presidential appointees subject to Senate confirmation are excluded from reduction in force procedures, based on 5 CFR 351.202(b). If a Presidential appointee is subject to furlough but not subject to adverse action or reduction in force procedures, the agency should follow any administrative procedures required by any applicable internal personnel policies.

Note: A former career Senior Executive Service (SES) appointee who receives a

Presidential appointment that would normally convey an exemption from the leave system may be eligible to elect to retain SES leave benefits under 5 U.S.C. 3392(c). If SES leave benefits are so elected, such a Presidential appointee would be subject to furlough under 5 CFR 359, subpart H.

## C. Working, and Work Schedules, During Furlough

**1. May an employee volunteer to do his or her job on a nonpay basis during a shutdown furlough?**

**A.** No. Unless otherwise authorized by law, an agency may not accept the voluntary services of an employee. (See 31 U.S.C. 1342.)

**2. What happens to employees scheduled for training during a shutdown furlough?**

**A.** Employees who are neither excepted nor exempt and are scheduled for training during a shutdown furlough must be placed in a furlough status and ordered not to attend the scheduled training.

**3. May employees take other jobs while on furlough?**

**A.** While on furlough, an individual remains an employee of the Federal Government. Therefore, executive branch-wide standards of ethical conduct and rules regarding outside employment continue to apply when an individual is furloughed (specifically, the executive branch-wide standards of ethical conduct (the standards), at 5 CFR part 2635). In addition, there are specific statutes which prohibit certain outside activities, and agency-specific supplemental rules that require prior approval of, and sometimes prohibit, outside employment. Therefore, before engaging in outside employment, employees should review these regulations and then consult their agency ethics official to learn if there are any agency-specific supplemental rules governing the employee.

**4. If an employee receives a temporary appointment in another agency while furloughed, what happens to his/her benefits (e.g., retirement, health benefits, life insurance, leave)?**

**A.** Retirement, health benefits, and life insurance are handled as if the employee had actually transferred to the new agency. Leave balances are transferred as if the employee had actually transferred. (See Comptroller General opinion B-167975, September 1, 1970.)

**5. How should an agency determine the number of furlough hours for alternative work schedule (AWS) employees during a shutdown furlough? Can an employee**

**reschedule a non-workday that occurred during the furlough?**

**A.** Employees are furloughed based on the number of hours they are scheduled to work on the days for which there is a shutdown furlough. There are two types of alternative work schedules —a flexible work schedule and a compressed work schedule. Normally, once a compressed work schedule is established, the days and hours are fixed and cannot be changed; however, changes in an employee's flexible work schedule may be made under agency policies and collective bargaining agreements (if applicable). For example, in appropriate circumstances, the AWS day off for an employee with a flexible work schedule may be changed to a different day in the same biweekly pay period.

Once a lapse in appropriations begins, a furloughed employee must not be permitted to reschedule an AWS day off under a flexible work schedule that was scheduled to occur during the lapse—except when rescheduling is related directly to the timing of the employee's orderly shutdown activities. Thus, if the lapse ends in the middle of a pay period, a furloughed employee may not move an AWS day off that was scheduled to occur during the portion of the pay period covered by the lapse.

However, if a furloughed employee's AWS day off was scheduled to occur during the portion of the pay period that falls after the lapse in appropriations has ended, it may be possible for the employee to move the AWS day off to a later date in that same pay period. For example, an employee may want to move an AWS day off scheduled to occur after the lapse has ended to a later date because the employee needs more time to reestablish child- care arrangements after the lapse ended. Any changes to an employee's AWS day off are subject to agency policies and collective bargaining agreements, as applicable.

After the lapse in appropriations has ended, retroactive pay at the standard rate of pay is based on each employee's established (standard) schedule. No retroactive pay is provided for an AWS day off. An employee cannot move an AWS day off in order to obtain retroactive pay for a normal day off under the employee's established schedule. (See section D (Pay) for additional information on retroactive pay after a lapse of appropriation ends.)

## 5a. What happens to employees on detail during a shutdown furlough?

**A.** Detailed employees remain officially assigned to their permanent position of record during the detail. During a shutdown furlough, each agency will determine the status of their employees on detail, either within the agency or to another agency. This determination is driven by the funding source of the work performed by the detailed employees.

In the case of any detailee under an authorized non-reimbursable agreement whose permanent work the home agency designates as excepted and whose home agency agrees to continue the detail, the home and receiving agencies should carefully consult with one another about what, if any, activities are appropriate for the detailee to perform during a lapse. Any such activities must be consistent with the reasons why the home agency designated the employee's work as excepted. This communication is especially important in the event that the activities of the receiving agency are not subject to the lapse.

6. **How are personnel working for Federal agencies under mobility agreements pursuant to the Intergovernmental Personnel Act (IPA) treated in a shutdown furlough?**

   **A.** The specific authority for furloughing personnel who are working under mobility agreements pursuant to the IPA, either inside the Federal Government or with other organizations, will depend upon the nature of individual agreements, the status of the appointments, and/or the funding arrangements for the assignments. As a general rule, the following principles are applicable in determining whether to furlough personnel on IPA mobility assignments:

   - Personnel from non-Federal organizations on appointments to the Federal Government are subject to furlough in the same manner as other employees if the Federal agencies hosting them are paying their salaries and benefits.

   - Personnel from non-Federal organizations on detail to Federal agencies may continue working and are not subject to furlough, provided that the non-Federal organizations are paying the total costs of their details.

   - Personnel on detail to Federal agencies from non-Federal organizations that share part of the costs of the detail may continue to work if the Federal portion of the costs was previously obligated from amounts available at the time of the IPA mobility agreements. In the event that a shutdown furlough takes place during a time for which no funds are available, the assignment should be terminated.

   - Personnel on detail to Federal agencies from non-Federal organizations that do not pay or share the costs of the detail are subject to furlough in the same manner as other employees because the Federal agency is covering the costs of the detail.

## D. Pay

1. **Will employees performing excepted work be paid for performing such work**

**during a shutdown furlough? If so, when will excepted employees receive such payments?**

**A.** Yes. After the lapse in appropriations has ended, employees who were required to perform excepted work during the lapse will receive retroactive pay for those work periods. (See 31 U.S.C. 1341(c)(2).) Retroactive pay is provided at the employee's "standard rate of pay." If the retroactive pay cannot be provided on the normal pay date for the given pay period, it must be provided at the earliest date possible after the lapse ends.

(Note: Presidential appointees who are not covered by the leave system in 5 U.S.C. chapter 63 are not subject to furlough, but are also barred from receiving pay during a lapse in appropriations. These Presidential appointees will be paid after the lapse in appropriations has ended. See Question B.6.)

**1a. How is the "standard rate of pay" computed for employees whose work is excepted?**

**A.** Employees who perform excepted work during a lapse in appropriations must receive retroactive pay for that work at the employee's "standard rate of pay" (31 U.S.C. 1341(c)(2)). The "standard rate of pay" for excepted hours of work is the pay to which the employee normally is entitled for actual hours of work under the applicable pay rules. For example, if an excepted employee performs authorized overtime work beyond the normal requirements for his or her job, he/she will be paid for that actual authorized overtime work. All excepted hours of work are treated as time in a pay status for pay, leave, and benefit purposes.

Excepted employees who elect to use paid leave under 31 U.S.C. 1341(c)(3) to cover an authorized absence from work during a lapse in appropriations will receive pay for that leave under the normal leave rules when the lapse ends. (See Question F.2.) Consistent with the normal leave rules, an excepted employee may not use paid leave during periods when the employee is found to be absent without leave (AWOL). The standard rate of pay during AWOL periods is zero. If an otherwise excepted employee has an authorized absence from work during the lapse and elects not to use paid leave under 31 U.S.C. 1341(c)(3), the employee will be placed in furlough status during the authorized absence. The employee will be paid for the furlough time when the lapse ends as described in Questions D.3. and D.4. The employee will not be charged paid leave or other paid time off for authorized periods of absence from duty during the lapse, except as provided under 31 U.S.C. 1341(c)(3). (See Question F.2.)

**2. May an employee who performs excepted work be permitted to earn premium pay**

8

**(e.g., overtime pay, Sunday premium pay, night pay, availability pay) during the furlough period?**

**A.** Yes. An employee who performs excepted work and who meets the conditions for overtime pay, Sunday premium pay, night pay, availability pay, and other premium payments will be entitled to receive payment in accordance with applicable rules, subject to any relevant payment limitations, once the lapse ends. Premium pay may be earned during the lapse but cannot be paid until Congress passes and the President signs a new appropriation or continuing resolution.

3. **Will employees who are furloughed get paid?**

   **A.** Yes. After the lapse in appropriations has ended, employees who were furloughed as the result of the lapse will receive retroactive pay for those furlough periods. (See 31 U.S.C. 1341(c)(2).) Retroactive pay will be provided on the earliest date possible after the lapse ends, regardless of scheduled pay dates. (See 31 U.S.C. 1341(c)(2).) If retroactive pay cannot be provided by the normal pay date for the given pay period, it will be provided as soon as possible thereafter. Retroactive pay is provided at the employee's "standard rate of pay." (See Question D.4. Note that retroactive pay may be zero if an employee was scheduled (before the lapse took effect) to be in a nonpay status during the period when the lapse was in effect.)

4. **How is the "standard rate of pay" computed for furloughed employees?**

   **A.** For periods of time during which an employee was furloughed during the lapse in appropriations, the "standard rate of pay" is the pay the employee would have received for the furlough hours had the lapse in appropriations not occurred and had the employee performed work. Therefore—

   - An employee is entitled to receive his or her rate of basic pay for the furlough time to the extent that he or she would have been in a basic pay status but for the lapse in appropriations. (See 31 U.S.C. 1341(c)(2).)

   - An employee receives retroactive pay for furlough time without being charged paid leave or other paid time off, since a lapse in appropriations generally prevents the use of paid leave or other paid time off. (However, an excepted employee may seek approval of paid leave under 31 U.S.C. 1341(c)(3). See Questions D.1a and F.2.)

   - All furlough hours for which retroactive pay is received are treated as time in a pay status for pay, leave, and benefit purposes. For example, for the purpose of applying General Schedule waiting periods associated with within-grade increases, the furlough time during the lapse in appropriations is treated as time

in pay status.

- A furloughed employee who, during the lapse in appropriations, had been regularly scheduled to perform overtime work or to perform work at night or during a period for which any other form of premium pay would otherwise be payable is entitled to receive overtime pay, night pay, or other premium pay as if the work had been performed.

- Allowances, differentials, and other payments otherwise payable on a regular basis (e.g., administratively uncontrollable overtime pay and law enforcement availability pay) must be paid as if the furloughed employee actually continued to work.

- All periods of time during which a furloughed employee would, but for the lapse in appropriations, have been in a pay status (including regularly scheduled overtime hours and standby duty) must be considered "hours of work" for pay administration purposes under the Fair Labor Standards Act.

- A furloughed employee is not entitled to retroactive pay for furlough periods if the employee had been previously scheduled (i.e., scheduled before the lapse) to be in nonpay status during those periods. For example, an employee may have scheduled leave without pay (LWOP) for an extended period or be in a suspension status (i.e., pay suspended based on an adverse action). In effect, those already-in-place periods of nonpay status override the furlough status. The "standard rate of pay" for such previously scheduled periods of nonpay status is zero. In addition, an employee who was directed to perform excepted work during a lapse in appropriations but failed to report to duty could have been placed in absent-without-leave (AWOL) status for missed work hours, in accordance with agency policy and procedures. For such an employee, the "standard rate of pay" for AWOL hours is also zero.

### 4a. Are intermittent employees entitled to retroactive pay following a lapse in appropriations?

**A.** Intermittent employees—i.e., employees without a regularly scheduled tour of duty (see 5 CFR 340.401)—may be furloughed during a lapse in appropriations. Intermittent employees are covered by the definition of "furlough" in the adverse action regulations at 5 CFR 752.402. Under 31 U.S.C. 1341(c)(2), an employee who is furloughed as the result of a lapse in appropriations must be paid for furlough periods that occurred during the lapse. After the lapse ends, retroactive pay is provided at the employee's "standard rate of pay." (See Question D.4.)

If an agency furloughs an intermittent employee, the agency must provide

retroactive pay at the employee's standard rate of pay for the period of the lapse. This should be based on an estimate of the hours the intermittent employee would have worked had the lapse not occurred. Agencies should use their best judgment to determine the hours the intermittent employee would have worked. They may use the employee's recent work history and/or any agency plans for the lapse period.

5. **Will employees receive a paycheck for hours worked prior to a lapse in appropriations?**

   **A.** Yes. Although the payroll for the last pay period before the lapse will be processed potentially during the lapse, the minimum number of payroll staff necessary for this process will be excepted for the minimum time required to issue the checks, including checks for the last pay period before the lapse. (See OMB M-96-01, Planning for Agency Operations (Nov. 9, 1995); and OMB, Bulletin No. 80-14, Shutdown of Agency Operations Upon Failure by the Congress to Enact Appropriations (Aug. 28, 1980).)

6. **When an employee's pay is insufficient to permit all deductions to be made because a lapse in appropriations occurs in the middle of a pay period and the employee receives a partial paycheck, what is the order of withholding precedence?**

   **A.** Agencies will follow the guidance on the order of precedence for applying deductions from the pay of their civilian employees when gross pay is insufficient to cover all authorized deductions.

7. **If an employee's pay is insufficient to permit all deductions to be made because a lapse in appropriations occurs in the middle of a pay period and the employee receives a partial paycheck, will the amount of the deductions taken from the employee's partial paycheck be the same as normal?**

   **A.** Some deductions that are based on the amount of an employee's gross pay (or basic pay) will be reduced in size. For example, deductions for the Federal Employees Retirement System (FERS) Basic Benefit are a percentage of basic pay paid to an employee. Other deductions, such as health insurance premiums, may be a fixed dollar amount and will not be affected. Consequently, the amount of money an employee normally sees in their paycheck will be different than what they might expect.

8. **If an employee's pay is insufficient to permit deductions for health or other insurance premiums or deductions for flexible spending accounts because the**

**employee receives a partial paycheck or no pay during a lapse in appropriations, will this affect the employee's enrollment or coverage in these benefit programs?**

**A.** An employee's enrollment and coverage under such programs generally will not be affected if the employee is unable to make the required deductions for insurance and other benefits due to receiving a partial paycheck or no pay during a lapse of appropriations. The one exception is that if an employee is enrolled in a health care flexible spending account through FSAFEDS, they can't be reimbursed for eligible health care claims until they return to pay status and payroll deductions can be made. (See section H. Benefits for additional information on how missed insurance premiums and flexible spending account deductions will be paid after the lapse of appropriations ends.)

9. **If an employee receives a partial paycheck during a lapse in appropriations, may the employee's agency or payroll provider defer deductions for allotments previously designated by the employee to be taken from retroactive pay when the lapse of appropriations ends in order to provide the employee with a larger partial paycheck?**

   **A.** Any changes in an allotment amount or cancelation of an allotment that was previously designated by an employee to be taken from their pay must be personally authorized by the employee under 5 CFR 550.312. Additionally, any changes to an allotment for dues to a labor organization must be taken under regulations prescribed by the Federal Labor Relations Authority (see 5 CFR 550.321) and any applicable collective bargaining agreements.

10. **How will deductions for allotments be affected if an employee's pay is insufficient to permit such deductions because the employee receives a partial paycheck or no pay during a lapse in appropriations?**

    **A.** Employees should consult their agency or payroll provider for information on how missed allotment deductions will be handled. Employees may want to review their allotments to determine whether they need to make alternative arrangements (e.g., if using allotments to pay loans, alimony, etc.).

    Any allotment for dues to a labor organization previously designated by an employee and which was deferred by the agency or payroll provider during the lapse in appropriations because the employee's pay was insufficient to cover the dues allotment deduction would be taken from retroactive pay when the lapse in appropriations ends.

11. **How will deductions for court-ordered garnishments be affected if an employee's pay is insufficient to permit garnishment deductions because the employee**

receives a partial paycheck or no pay during a lapse in appropriations?

**A.** Employees should consult their agency or payroll provider for information on how missed garnishment deductions will be handled and may need to make alternative arrangements. If a payroll provider is unable to effectuate the garnishment, it should provide a notice to that effect to affected employees and indicate how the provider intends to handle the missed garnishments going forward. We should note that some payroll providers will need to confer with counsel about how much to collect at any given time in any make-up payments.

## E. Performance Awards and Within-Grade Increases

1. **If agency performance management policies and practices require the payment of performance awards to employees, can the payment be delayed until after the shutdown furlough?**

   **A.** Yes. Neither law nor regulation requires agencies to pay performance awards granted under 5 U.S.C. chapters 43 and 45 and 5 CFR 451.104(a)(3). If agency performance management policies and practices require the payment of performance awards, agencies may delay payment until after the furlough when funds are available.

2. **Are agencies required to pay performance awards to Senior Executive Service (SES) career appointees during a shutdown furlough?**

   **A.** No. The applicable law (5 U.S.C. 5384) and regulation (5 CFR 534.405) do not specify when an SES performance award must be paid to a career appointee, nor do they provide a basis to pay awards when no appropriated funds are available for that purpose. Therefore, if a shutdown furlough intervenes, an agency may defer payment of SES performance awards until after the furlough, when funds are available.

3. **May agencies deny or delay within-grade or step increases for General Schedule and Federal Wage System employees who are furloughed during a lapse in appropriations?**

   **A.** Once the lapse in appropriations ends and retroactive pay is payable, employees will be considered to be in pay status during the furlough period. Thus, the effective date of within-grade or step increases for eligible General Schedule and Federal Wage System employees based on service is not affected by time in a furlough status. Quality step increases cannot be retroactively approved and made effective as of a retroactive date absent a nondiscretionary agency policy or collective bargaining agreement that requires a specific effective date.

## F. Leave and Other Time Off

1. **May a furloughed employee take previously approved paid time off (e.g., annual leave, sick leave, paid parental leave, disabled veteran leave, court leave, military leave, or leave for bone marrow/organ donor leave, or compensatory time off, including religious compensatory time off) during a lapse in appropriations?**

   **A.** No, a furloughed employee may not use previously approved paid time off during a lapse in appropriations. Consistent with the Constitution, the Antideficiency Act does not allow authorization of any expenditure before an appropriation is made. Also, the Antideficiency Act does not allow the Government to incur budgetary obligations before an appropriation is made—unless authorized by law (31 U.S.C. 1341(a)(1)(B)). Based on law and OMB and DOJ guidance, certain types of obligations (but not expenditures) are allowed during a lapse in appropriations. The use of previously approved paid time off during a lapse in appropriations would create an obligation or a debt owed by the Government that is not authorized by the Antideficiency Act or other law during a lapse (except under a special provision for excepted employees in 31 U.S.C. 1341(c)(3)), and is thus prohibited. (See Question F.2. regarding paid time off for excepted employees.)

2. **May an excepted employee take previously approved paid time off or be granted new requests for paid time off during a shutdown furlough?**

   **A.** A lapse in appropriations cancels an excepted employee's previously approved paid leave or other paid time off, for the same reasons that apply to furloughed employees. (See Question F.1.) This does not mean that an excepted employee cannot seek approval to be excused from duty during a lapse. An agency may excuse an excepted employee from duty and place the employee in furlough status for approved periods. An agency may allow an excepted employee to be off duty during periods when the employee was previously scheduled to be on paid leave. That off-duty time may be accommodated by workplace arrangements. (See Question F.2a. for information on use of workplace flexibilities.)

   If that off-duty time cannot be accommodated by workplace flexibilities, the excepted employee will be placed in a furlough status for any approved absence unless the employee requests to use paid leave under 31 U.S.C. 1341(c)(3). We expect that excepted employees generally will not choose to use paid leave under 31 U.S.C. 1341(c)(3) because 31 U.S.C. 1341(c)(2) provides retroactive pay for furlough periods without charge to leave. Under either approach, any payment will be delayed until after the lapse ends.

   If an excepted employee chooses to request leave under 31 U.S.C. 1341(c)(3) instead

14

of the default approach of being placed in a furlough status, the employee may make new requests to use paid leave under 5 U.S.C. chapter 63 (or under other applicable law governing the use of leave if chapter 63 is not applicable). Such "paid leave" does not include the various types of paid time off found outside chapter 63 (e.g., compensatory time off, time off award, credit hours). Use of paid leave is subject to the normal rules for the applicable leave program, including leave request and approval procedures. While the paid leave can be used (i.e., resulting in a Government obligation of funds), compensation for the leave cannot be paid until after the lapse ends.

An excepted employee cannot use paid leave under 31 U.S.C. 1341(c)(3) to cover an unauthorized period of absence. If an excepted employee is directed to perform excepted work but fails to report to duty, the employee may be placed in absent without leave (AWOL) status for missed work hours, in accordance with agency policy and procedures. For such an excepted employee, the "standard rate of pay" for AWOL hours is zero. In other words, no retroactive pay is provided for AWOL hours after the lapse in appropriations ends.

### 2a. Are excepted employees allowed to have intermittent absences from work during a shutdown furlough?

**A.** Yes. As explained in Question F.2., an excepted employee may be excused from duty for intermittent periods during a shutdown furlough. While excused from performing excepted duties, the employee will be placed in furlough status (default approach) unless the employee elects to use paid leave under 31 U.S.C. 1341(c)(3). (See Question F.7. for specific guidance on employees scheduled to take leave under the Family and Medical Leave Act.)

However, if an excepted employee needs to be absent from work for brief periods, agencies are encouraged to explore the use of workplace flexibilities such as alternative work schedules and telework (subject to applicable laws, regulations, agency policies, and collective bargaining agreements) to accommodate the employee's need to be absent. (See Question C.5. for guidance on alternative work schedules.) If use of workplace flexibilities is not appropriate for the situation, excepted employees must be furloughed for any brief absence or allowed to request paid leave under 31 U.S.C. 1341(c)(3), as explained in Question F.2. (See Question F.2b. for guidance on excepted employees who must be furloughed during an approved absence from work. Also see Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee.)

In making determinations regarding whether to grant requests for time off that result in placement in furlough status, agencies are encouraged to consider the

same principles that guide the granting of various types of paid leave during normal periods of funded operations, while keeping in mind any special work requirements for excepted employees during the lapse in appropriations.

**2b. If an agency is willing to approve intermittent absences from work for an excepted employee and use of workplace flexibilities is not appropriate, does the excepted employee have to be placed in a furlough status for these intermittent absences?**

**A.** Generally, when excepted employees are authorized to be absent from work they must be furloughed. As explained in Question F.2, however, excepted employees have the option to request approval to use paid leave under 31 U.S.C. 1341(c)(3). We expect that in most circumstances excepted employees will choose to have the default furlough status applied to any approved absence because that status provides retroactive pay without charge to leave. These furlough periods must be documented by a shutdown furlough notice with applicable appeal rights. Any time an excepted employee is absent from work must be properly documented by a shutdown furlough notice that spells out whatever appeal rights are applicable.

One option would be for the agency to issue a furlough notice for the period of time when the employee will be absent, and then recall the employee when the employee is once again available to come to work and perform excepted activities.

Another option, which may be easier to administer for an employee who will have multiple intermittent absences over a period of time, would be for the agency to issue a modified shutdown furlough notice, which states that the employee is excepted from furlough except for those periods of time they are not working but would otherwise be scheduled to work. (See Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee.) The periods of time an employee is not working should be listed and clearly identified in the modified shutdown furlough notice. As with any modified furlough notice, agencies should issue such notices as soon as practicable.

The above options are examples of two approaches to consider to ensure appropriate procedural rights are provided to furloughed employees. If agency officials elect to pursue an alternative approach in providing a furlough notice to excepted employees approved to be absent from work intermittently, they should consult with their legal counsel to ensure appropriate procedural rights are provided to furloughed employees.

**3. May an employee work during the furlough period to accumulate religious compensatory time off hours for religious observances?**

**A.** An employee who is not "excepted" may not work during the furlough period, even to accrue religious compensatory time. However, an excepted employee may work additional hours to earn compensatory time off for religious purposes if the employee is performing excepted activities, though the employee may not use those hours until after the lapse in appropriations is over.

4. **If an employee is scheduled to take approved unpaid leave during a shutdown furlough, should the agency provide the employee with a furlough notice?**

   **A.** It depends. If the employee is not expected to work during the furlough period (e.g., a 1-year period of leave without pay to accompany a military spouse overseas), then agencies are not required to provide the employee with a furlough notice. If, however, the employee is scheduled to return from unpaid leave to Federal service during the furlough period, the employee should be provided with a furlough notice (effective on the date of scheduled return), unless the employee is expected to be at work performing an excepted activity.

   In the case of an employee who was on preapproved leave without pay (LWOP) during the lapse in appropriations, the employee must continue to be charged LWOP for all periods of such preapproved LWOP that occurred during the lapse.

5. **If an employee is scheduled to take unpaid leave under the Family and Medical Leave Act (FMLA) during a shutdown furlough, should the agency provide the employee with a furlough notice?**

   **A.** It depends. If the employee is not expected to work during the furlough period (e.g., has requested 12 weeks of unpaid leave (leave without pay (LWOP) under the FMLA), the agency is not required to provide the employee with a furlough notice. If, however, the employee is scheduled to return from LWOP to Federal service during the furlough period, the employee should be provided with a furlough notice (effective on the date of scheduled return), unless the employee is expected to be at work performing an excepted activity. An employee scheduled to take FMLA LWOP throughout the furlough period continues to be charged LWOP. However, the LWOP will not be treated as FMLA leave to the extent it occurs during a furlough period unless the employee chooses to use leave under 31 U.S.C. 1341(c)(3). (As stated in Question F.2., we expect that employees generally will not choose to use leave under 31 U.S.C. 1341(c)(3) since 31 U.S.C. 1341(c)(2) provides retroactive pay for furlough periods without charge to leave.) Thus, the days of LWOP during a furlough period will not count against the employee's 12-week FMLA leave limit. The employee is not entitled to receive retroactive pay for scheduled LWOP periods that occur during a furlough period, since the standard rate of pay for LWOP is zero.

6. **Does leave under FMLA that is scheduled to be taken during a shutdown furlough period count toward the employee's 12-week FMLA leave entitlement?**

**A.** No. OPM considers any previously scheduled FMLA leave that occurs during a lapse in appropriations to be canceled—unless the employee is an excepted employee who elects to use leave under 31 U.S.C. 1341(c)(3). (See Question F.2.) Any LWOP that was previously scheduled to be used under FMLA during a period when there is a lapse in appropriations will remain as LWOP, but the LWOP will not be considered FMLA leave and will not count against the FMLA 12-week limit. If an employee had previously scheduled to substitute qualifying paid leave for unpaid FMLA leave during a period covered by a lapse, the paid leave must be canceled (see Questions F.1. and F.2.) and converted to a furlough period—unless the employee performs excepted work or elects to use leave under 31 U.S.C. 1341(c)(3). We anticipate that excepted employees generally will not choose to use paid leave under 31 U.S.C. 1341(c)(3) since 31 U.S.C. 1341(c)(2) provides retroactive pay for furlough periods without charge to leave. Under either approach, any payment will be delayed until after the lapse ends. The canceled FMLA unpaid leave periods (converted to regular LWOP) and the canceled periods of paid leave substitution (converted to furlough time) will not be considered FMLA leave and will not count against the FMLA leave 12-week limit.

7. **If an employee is scheduled to take appropriate paid leave under FMLA during a shutdown furlough, should the employee be furloughed? Will the employee be paid for the periods scheduled to be in paid leave status by substituting paid leave under FMLA?**

**A.** During the lapse in appropriations, affected employees who would otherwise be in pay status must be (1) furloughed or (2) at work performing excepted activities—unless an excepted employee elects to seek approval to use paid leave during the lapse under 31 U.S.C. 1341(c)(3). (See Question F.2.) Any previously scheduled paid leave (including paid leave substituted for FMLA LWOP) during the furlough period must be automatically canceled. Thus, any periods of scheduled paid leave or other paid time off must be documented as furlough periods.

For any hours during the lapse in appropriations for which an employee was previously scheduled to be in FMLA LWOP status, the employee will remain in LWOP status, but will not be considered to be using FMLA leave. (See Questions F.5. and F.6.) For any hours during the lapse in appropriations for which the employee was scheduled to be in paid leave status by substituting paid leave for FMLA LWOP, the employee will be provided retroactive pay and will not be charged paid leave, consistent with the treatment of other employees who had previously scheduled paid leave that was canceled due to the lapse in appropriations. (See Question F.14.

regarding employees who had scheduled use of donated annual leave substituted for FMLA LWOP.)

**7a. What should an agency do if an excepted employee faces FMLA-qualifying circumstances?**

**A.** During a lapse in appropriations, an excepted employee must either be (1) working (i.e., excepted from furlough) —unless he or she elects to seek approval to use paid leave during the lapse under 31 U.S.C. 1341(c)(3), or (2) in a furlough status, as referenced in Question F.7. An excepted employee may face circumstances that would normally qualify him or her for unpaid leave under FMLA. The employing agency should allow such an excepted employee to be placed in a furlough status (a form of unpaid leave) for appropriate periods, consistent with his or her rights under FMLA.

**8. Are employees who are not excepted from the furlough allowed to take paid leave or other paid time off during periods when other employees are performing work necessary for an orderly suspension of agency operations?**

**A.** No. For such employees, all paid leave or other paid time off is canceled during a period when a lapse in appropriations is in effect. There is no authority to obligate funds for paid time off during a lapse in appropriations. Employees who are not excepted from the furlough are allowed to perform minimal activities as necessary to execute an orderly suspension of agency operations related to non-excepted activities. Being on paid leave is not an activity necessary to execute an orderly shutdown of agency operations. Agencies should determine on a case-by-case basis whether it is necessary to require employees who had been scheduled to take paid time off to report to duty to perform orderly suspension activities or whether to direct such employees to conduct their orderly shutdown activities on the first day after they had originally planned to return to work.

**9. May an excepted employee be permitted to earn compensatory time off and credit hours (under flexible work schedules) during the shutdown period?**

**A.** Yes. With agency approval, excepted employees may earn compensatory time off and/or credit hours subject to requirements found in 5 U.S.C. 5543 and 6120–6133; 5 CFR 550.114, 551.531, and part 610, subpart D; or other applicable authority. Each agency is responsible for approving the number of hours an excepted employee can work related to the performance of excepted activities. Employees will not be permitted to use earned compensatory time off or credit hours during the shutdown period.

10. **If an employee has properly scheduled "use-or-lose" annual leave before the start of the third biweekly pay period prior to the end of the leave year, but is unable to use some or all of the scheduled leave because of the furlough, does the furlough constitute an "exigency of the public business" that would permit an agency to restore the leave after the beginning of the new leave year?**

**A.** Yes. Employees in this situation should make every effort to reschedule "use-or-lose" annual leave for use before the end of the current leave year. However, OPM and OMB have determined that a lapse in appropriations qualifies as an exigency of the public business for purposes of annual leave restoration. (See OPM CPM 2019-02, Restoration of Annual Leave for Employees Affected by the Lapse in Appropriations (January 9, 2019).) Therefore, as long as the leave was properly scheduled in advance, agencies must restore any annual leave that was forfeited because of the lapse in appropriations—regardless of whether the affected employees were furloughed or excepted from the furlough.

In order for forfeited annual leave to be considered for restoration under 5 U.S.C. 6304(d)(1)(B), it must have been scheduled in writing before the start of the third biweekly pay period prior to the end of the leave year, in accordance with 5 CFR 630.308(a). Employing agencies are responsible for determining whether an employee met the advance scheduling requirement, based on OPM regulations and agency policies and procedures. As allowed by those agency policies and procedures, the "in writing" requirement may be met in various ways, including electronic communications such as email, electronic calendar scheduling, or submissions to a time and attendance system.

11. **If an employee has properly scheduled use of "restored annual leave" that is due to expire at the end of the leave year (because it is the end of the 2-year restoration period) but that leave is canceled and lost due to lapse in appropriations, may the employing agency restore that leave again?**

**A.** Unfortunately, no—unless Congress enacts legislation providing otherwise. There is nothing in existing law or regulation that allows restored annual leave to be restored a second time. In fact, the Comptroller General has determined that unused restored annual leave may not be restored after expiration of the 2-year period. (See B-188993, December 12, 1977.) Any previously restored annual leave that was due to expire at the end of the leave year, and was subsequently forfeited, may not be restored again—even if the forfeiture was due to the lapse in appropriations.

12. **Does a shutdown furlough affect the accrual of annual leave and sick leave?**

**A.** No. Under 31 U.S.C. 1341(c)(2), after the lapse in appropriations has ended, an

employee is entitled to be paid the employee's standard rate of pay during any furlough period. If the employee was scheduled to be in a pay status but for the furlough, the employee will receive the employee's regular pay for furlough periods, and there will be no effect on the accrual of annual and sick leave. However, if an employee was previously scheduled to be in a nonpay status without regard to the furlough, the employee's standard rate of pay will be zero, and the employee will remain in the scheduled nonpay status, which can affect the accrual of annual and sick leave under normally applicable rules governing the treatment of nonpay status periods.

Excepted employees earn pay and accrued leave during the periods they perform excepted work activities—even though no payments can be made during the lapse. With the payment of retroactive pay, agencies should ensure that excepted employees' leave accrual is properly credited.

13. **How are employees affected if, during a shutdown furlough, their Federal office is closed or announces a change in operating status due to an emergency, severe weather condition, natural disaster, and other incident causing disruption of agency operations?**

**A.** Furloughed employees will not be affected if their Federal office is closed or announces a change in operating status during a shutdown furlough and will remain in furlough status.

Exempt employees are not affected by a shutdown furlough and will follow normal operating status announcements and emergency procedures.

Excepted employees will follow normal operating status announcements and emergency procedures during a Federal office closure or change in operating status, which may result in excepted employees being placed in furlough status for any hours of work not performed. This is because during a shutdown furlough, excepted employees must be either (1) working (i.e., excepted from furlough) — unless he or she elects to seek approval to use paid leave during the lapse under 31 U.S.C. 1341(c)(3) or (2) in a furlough status. Furlough of an excepted employee must be documented by a shutdown furlough notice with applicable appeal rights. (See Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee.) Excepted employees who are required to and do perform work on a day their Federal office is closed during a shutdown furlough (e.g., employees required to report even during an emergency or telework) will be paid after Congress passes and the President signs a new appropriations bill or continuing resolution. If necessary due to a disruption of agency operations, a furlough may be documented after the fact. However, a written notice of decision to furlough must be provided as

21

soon as possible after the furlough begins. (See Question P.2.)

**14. What effect does a Government shutdown based on a lapse in appropriations have on an employee who had scheduled use of donated annual leave?**

**A.** Just as with other paid leave, any donated annual leave that is scheduled to be used during a lapse in appropriations must be canceled and converted to furlough status time—unless the employee performs excepted work or elects to use leave under 31 U.S.C. 1341(c)(3). If the employee is furloughed during periods when the employee had been scheduled to use donated annual leave, the employee is entitled to retroactive pay for the furlough periods under 31 U.S.C. 1341(c)(2). (This is a change from previous OPM policy.)

**15. What happens to compensatory time off in lieu of overtime that expires during a shutdown furlough?**

**A.** Although there is no authority to extend the use of compensatory time off in-lieu-of overtime not used within the 26 pay period limitation, payment for the unused compensatory time off must be made at the overtime rate in effect when earned in the following circumstances:

- For FLSA-exempt (i.e., not covered) employees, under 5 CFR 550.114(d)(2), payment must be made if an exigency of the service beyond the employee's control prevented the employee from using the compensatory time off within the regulatory time limits. A lapse in appropriations is considered an exigency of the service beyond the employee's control; thus, if an agency determines that the lapse prevented the employee from using the compensatory time off that would otherwise be forfeited, the agency must provide payment for the unused compensatory time off. (See OPM CPM 2019-06, Pay and Benefits for Employees Affected by the Lapse in Appropriations (January 27, 2019).)

- For FLSA-nonexempt (i.e., covered) employees, under 5 CFR 551.531(d), if, for any reason, earned compensatory time off is not taken within 26 pay periods during which it was earned, the employee must be paid for the overtime work.

**16. What happens to compensatory time off for travel that expires during a shutdown furlough?**

**A.** If an employee fails to use his or her accrued compensatory time off for travel before the end of the 26th pay period after the pay period during which it was earned due to an exigency of the service beyond the employee's control under 5 CFR 550.1407(e), the head of an agency, at his or her sole and exclusive discretion,

22

may extend the time limit for using compensatory time off for travel for up to an additional 26 pay periods.

OPM considers a shutdown furlough to be an exigency of the service beyond the employee's control.

**17. What happens to credit hours in excess of 24 credit hours that were earned in the days prior to shutdown that could not be used because of the shutdown?**

**A.** Unfortunately, any credit hours earned by an employee in the days prior to the lapse in appropriations that were in excess of 24 credit hours cannot be carried over into the next pay period and are lost. Under 5 U.S.C. 6126(a), the number of credit hours an employee may carry over from a biweekly pay period to a succeeding biweekly pay period is limited to 24 hours for a full-time employee. There is no authority to provide payment for excess credit hours. The law does not provide for any exceptions.

**18. How are advanced annual and sick leave treated during a shutdown furlough?**

**A.** Advanced annual and advanced sick leave are automatically canceled during a lapse in appropriations. Since employees would have been scheduled to be in a pay status during any advanced leave period, they will receive retroactive pay under 31 U.S.C. 1341(c)(2) during any such period once the lapse has ended.

**19. Can agencies grant administrative leave to employees who are not able to return to work on the next workday immediately following the end of a shutdown?**

**A.** Agencies are encouraged to be as flexible as possible for employees returning to work following the end of a shutdown. Some employees may face extenuating circumstances or personal challenges that impact their ability to return to work on their next workday immediately following the end of a lapse in appropriations. Accordingly, we encourage managers to take these individual challenges into consideration, and to the extent possible, provide appropriate flexibility to employees who are facing difficulties that may delay their return to work.

Agencies have the flexibility to grant limited amounts of excused absence (administrative leave) for nonwork periods after the lapse is over if deemed necessary based on extenuating personal circumstances that delay the employee's return to duty.

23

**20. Does a shutdown furlough cancel all leave scheduled before the lapse in appropriations, even if the leave occurs after the lapse is over?**

**A.** No. Approval remains in effect for leave approved before a lapse in appropriations that is scheduled for use on a date occurring after the lapse is over. Only paid leave scheduled to be taken during the lapse is canceled.

However, an agency may cancel previously approved leave prospectively under its normal authority. An employee may also cancel a leave request prospectively.

**21. How does a shutdown furlough affect an employee who is scheduled to take approved paid parental leave (PPL) in substitution for unpaid FMLA leave? Does PPL that is scheduled to be taken during a shutdown furlough period count toward the employee's entitlement to 12 weeks of FMLA leave and 12 weeks of PPL in an applicable 12-month period?**

**A.** In order to receive paid parental leave (PPL), an employee must invoke unpaid leave under the Family and Medical Leave Act (FMLA) for the birth of a child or placement of a child with the employee for adoption or foster care. PPL is a form of paid leave provided via substitution for FMLA unpaid leave.

During the lapse in appropriations, affected employees who would otherwise be in pay status must be (1) furloughed or (2) at work performing excepted activities—unless an excepted employee elects to seek approval to use paid leave during the lapse under 31 U.S.C. 1341(c)(3). (See Question F.2.) Any previously scheduled paid leave (including PPL substituted for FMLA LWOP) during the furlough period must be automatically canceled. Thus, any absences on days of scheduled PPL, other paid leave, or other paid time off are documented as furlough days.

For any hours during the lapse in appropriations for which the employee was scheduled to be in paid leave status by substituting PPL for FMLA LWOP, the employee will be provided retroactive pay and will not be charged paid leave, consistent with the treatment of other employees who had previously scheduled paid leave that was canceled due to the lapse in appropriations. (See Question F.14. regarding employees who had scheduled use of donated annual leave substituted for FMLA LWOP.) For any hours during the lapse in appropriations for which an employee was previously scheduled to be in FMLA LWOP status, the employee will

remain in LWOP status, but will not be considered to be using FMLA leave. (See Questions F.5. and F.6.)

If an employee had previously scheduled to substitute PPL for unpaid FMLA leave during a period covered by a lapse, the paid leave must be canceled (see Questions F.1. and F.2.) and converted to a furlough period—unless the employee performs excepted work or elects to use leave under 31 U.S.C. 1341(c)(3). We anticipate that employees generally will not choose to use paid leave under 31 U.S.C. 1341(c)(3) since 31 U.S.C. 1341(c)(2) provides retroactive pay for furlough periods without charge to leave. Under either approach, any payment will be delayed until after the lapse ends. The canceled periods of paid leave substitution (converted to furlough time) will not be considered FMLA leave and will not count against the FMLA leave 12-week limit in a 12-month period.

22. **In order to be eligible for FMLA leave (and to substitute paid parental leave (PPL) or other paid leave for FMLA unpaid leave), an employee must have 12 months of creditable Federal civilian service as specified in 5 U.S.C. 6381(1)(B). Does time spent in furlough status count towards this 12 months of required Federal service?**

    **A.** Yes, furlough time counts toward the FMLA 12-months-of-Federal-service eligibility requirement in 5 U.S.C. 6381(1)(B). Neither the title 5 FMLA law or regulations provide for excluding furlough time or any other nonpay status time in determining whether an employee has 12 months of creditable service for purposes of FMLA eligibility. A Federal employee who is furloughed continues to be employed; the placement of the employee in a temporary nonduty, nonpay status does not terminate the employment relationship. (See also Question J.1. for more information on the creditability of nonpay status periods for various purposes.) We note that under 31 U.S.C. 1341(c)(2) furlough periods are generally retroactively converted to pay status periods once the lapse has ended.

23. **Under the title 5 paid parental leave (PPL) law, an employee who has substituted PPL for unpaid FMLA leave is required to work for the applicable employing agency (i.e., the agency employing the employee at the time paid parental leave concludes) for 12 weeks after the day on which use of PPL concludes. Does time spent in furlough status count towards the required 12 weeks of work?**

    **A.** No. By definition, a furlough period is a period on non-duty status. It does not count as a period of work meeting the 12-week work obligation. See the definition of "work" in the PPL regulations at 5 CFR 630.1705(b)(2).

24. **Will the 12-month period following the birth or placement of a child during which an employee may use paid parental leave in substitution of unpaid FMLA leave be**

**extended due to the furlough?**

**A.** The 12-month period following the birth or placement during which paid parental leave (PPL) may be used in substitution of unpaid FMLA leave is established by statute and regulations (see 5 U.S.C. 6382(a)(2) and 5 CFR 630.1703(b)(1)). PPL must be used during the 12-month period beginning on the date of birth or placement. There is no authority to extend this 12-month period.

PPL must be substituted for unpaid leave granted under the Family and Medical Leave Act (FMLA). FMLA unpaid leave is limited to 12 weeks in any 12-month period. The commencement of a 12-month FMLA period is triggered by the use of FMLA unpaid leave, and that period may or may not correspond to the 12-month period for using PPL (which commences based on the birth or placement of a child), since FMLA unpaid leave may be used for other purposes. A lapse-related furlough does not affect the running of the 12-month clock for a 12-month FMLA period.

For more information on how a lapse-related furlough affects administration of PPL, see Questions F.21., F.22., and F. 23.

## 25. Will the 12-month eligibility period during which disabled veteran leave may be used be extended due to the furlough?

**A.** The 12-month eligibility period for the use of disabled veteran leave (DVL) is established by statute and regulations (see 5 U.S.C. 6329(a), 5 CFR 630.1303, 630.1304(a) and 630.1308(a)). DVL must be used during this 12-month eligibility period. There is no authority to extend this 12-month period.

## 26. Will the advanced scheduling of annual leave requirement in 5 CFR 630.308(a) for annual leave restoration purposes be waived/suspended in the event of a shutdown furlough?

**A.** No. In order for forfeited annual leave to be considered for restoration under 5 U.S.C. 6304(d)(1), it must have been scheduled in writing before the start of the third biweekly pay period prior to the end of the leave year, in accordance with 5 CFR 630.308(a). An agency may consider restoring annual leave that was forfeited due to an exigency of the public business or sickness of the employee **only** if the annual leave was scheduled in writing before the start of the **third biweekly pay period prior to the end of the leave year**. OPM maintains a listing of pertinent leave year dates on our website.

Employing agencies are responsible for determining whether an employee met the advance scheduling requirement, based on OPM regulations and agency policies and procedures. As allowed by those agency policies and procedures, the "in

writing" requirement may be met in various ways, including electronic communications such as email, electronic calendar scheduling, or submissions to a time and attendance system. As provided in CPM 2019-02 issued on January 9, 2019, OPM and the Office of Management and Budget determined that a lapse in appropriations qualifies as an exigency of the public business for purposes of annual leave restoration. Therefore, as long as the leave was properly scheduled in advance, agencies must restore any annual leave that was forfeited because of the lapse in appropriations—regardless of whether the affected employees were furloughed or excepted from the furlough.

## G. Holidays

1. **Will an employee "exempt" from furlough be paid for a holiday that occurs during a shutdown based on a lapse in appropriations?**

   **A.** Employees are "exempt" from furlough if the work they perform has a separate source of funding and is not affected by a lapse in appropriations. For that reason, an "exempt" employee will be paid for a holiday according to the normal rules governing holidays.

2. **Will employees affected by a lapse in appropriations be paid for a holiday that occurs during the lapse?**

   **A.** Lapse-affected employees—whether excepted or furloughed—will not receive pay for a holiday that occurs during a lapse in appropriations until after the lapse had ended. After the lapse has ended, an employee affected by the lapse will, except as otherwise provided below, receive his or her regular holiday pay for a holiday (or an "in lieu of" holiday, if applicable) and, if applicable, an excepted employee will receive holiday premium pay for work performed during his or her normal hours of duty on the holiday, and overtime pay for work in excess of the normal hours of duty on the holiday. (See 31 U.S.C. 1341(c)(2).) Also, if an employee was regularly scheduled to work on a holiday and was instead furloughed, the employee is now entitled to holiday premium pay, as discussed in Question D.2.

   An employee who was on preapproved LWOP during the lapse in appropriations must continue to be charged LWOP for the duration of the period approved as LWOP. If such an employee was on LWOP on both the last workday before a holiday and the first workday after the holiday, he or she will not be paid for the holiday. This rule is consistent with OPM's longstanding guidance and a Comptroller General decision (56 Comp. Gen. 393 (1977)).

3. **What is the status of an "excepted" employee who does not perform work on a holiday that occurs during a lapse in appropriations?**

   **A.** An "excepted" employee who does not perform work on a holiday during a lapse must be placed in a furlough status for the holiday and must be provided written notice of the agency's decision to furlough in accordance with the guidance in section P (Procedures). This is because during a lapse in appropriations all affected employees must be (1) at work performing excepted activities or (2) furloughed. This applies with respect to any period of time that is part of an affected employee's regularly scheduled administrative workweek, including a holiday. (See Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee.)

4. **Will an "excepted" employee who does not work on a holiday that occurs during a lapse in appropriations be paid for the holiday?**

   **A.** Yes, after the lapse has ended. (See 31 U.S.C. 1341(c)(2).) An "excepted" employee who does not work on a holiday that occurs during a lapse will be placed in a furlough status for the holiday and will receive retroactive pay for the holiday as soon as possible after the lapse ends. (See Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee Due to a Lapse in Appropriations.)

5. **Can an "excepted" employee voluntarily report to work on the holiday?**

   **A.** No. Each agency must determine which excepted activities must be performed on a holiday, and which employees are needed to perform those functions. Employees who are not otherwise needed to perform excepted functions on the holiday must be placed in furlough status for that day.

6. **Can "excepted" employees be required to perform work on a holiday that occurs during a lapse in appropriations?**

   **A.** Yes. Each agency is responsible for determining which excepted activities must be performed on a holiday in order to carry out functions related to such excepted activities. Failure to report to duty on a holiday is no different than failure to report to work on any other day (see Question F.2).

7. **What pay entitlements will accrue to an "excepted" employee who performs work on a holiday during a shutdown furlough?**

   **A.** The Federal Government will be obligated to pay an excepted employee who performs work on a holiday according to the normal rules governing pay for work on a holiday. For example, under 5 U.S.C. 5546(b), a covered employee would

receive his or her rate of basic pay, plus holiday premium pay at a rate equal to the employee's rate of basic pay. In addition, if such an employee performs officially ordered or approved overtime work on a holiday (i.e., work in excess of his or her basic non-overtime work requirement for that day), the employee would receive overtime pay (or compensatory time off) for that work. As explained under Question G.2., an excepted employee cannot receive payment for working on a holiday until an appropriations act or a continuing resolution is enacted. Please note, holiday premium pay and overtime pay are not applicable to certain employees, such as heads of agencies and members of the Senior Executive Service.

8. **How do the "in lieu of" holiday rules apply during a lapse in appropriations?**

   **A.** Under normal circumstances, all full-time employees, including those on flexible or compressed work schedules, are entitled to an "in lieu of" holiday when a holiday falls on a nonworkday. See OPM guidance on "in lieu of" holidays.

   During a shutdown furlough, generally—

   - The normal "in lieu of" holiday rules apply to employees "exempt" from furlough.

   - The "in lieu of" holiday rules do not apply to furloughed employees (i.e., employees do not receive an "in lieu of" holiday if they are in a furlough status on a holiday).

   - When scheduling holidays for "excepted" employees, the normal "in lieu of" holiday rules apply. However, as explained in Questions G.4., G.5., and G.6., otherwise excepted employees must be furloughed on the "in lieu of" holidays unless they are working.

## H. Benefits

1. **What happens if agency employees responsible for processing Federal Employees Health Benefits (FEHB) or Federal Employees' Group Life Insurance (FEGLI) transactions are furloughed?**

   **A.** Agencies will continue to process FEHB and FEGLI transactions during a lapse in appropriations. Employees responsible for processing FEHB or FEGLI transactions must be excepted to perform this work because the law designates the processing of these transactions as emergency services that must continue under the Antideficiency Act. (See 5 U.S.C. 8702(d), 8905(i); 5 CFR 870.106, 890.113.)

*Federal Employees Health Benefits Program—General*

2. **Will an enrolled employee continue to be covered under the FEHB Program during a lapse in appropriations if the agency is unable to make its premium payments on time?**

   **A.** Yes. The employee's FEHB coverage will continue even if an agency does not make the premium payments on time. Following the lapse, each employee who returns to pay status will automatically begin to repay their share of FEHB premium that accumulated during the lapse through payroll withholding. If FEHB premiums are not withheld from retroactive pay, one additional payment in addition to the current pay period amount will be withheld in each subsequent pay period until the employee's accumulated share of premiums have been paid.

3. **What happens if an employee wants to terminate FEHB coverage while in a non-pay status in order to avoid the expense?**

   **A.** Unlike other types of non-pay status, employees in a non-pay status due to a lapse in appropriations (shutdown furlough) will not have the opportunity to terminate or cancel FEHB coverage outside of Open Season or experiencing a qualifying life event. The employee will remain covered; the enrollee's share of their FEHB premium will accumulate and be withheld from pay upon return to pay status.

4. **Can an employee who has been furloughed enroll or make changes to their FEHB enrollment during a furlough due to a lapse in appropriations?**

   **A.** Yes. An employee who is furloughed and experiences a qualifying life event can enroll or make changes in enrollment in the FEHB Program. (See 5 CFR 890.301.) Employees can also enroll or make changes during the annual Open Season. Employees are encouraged to contact appropriate agency human resources staff to ensure they follow the proper processes.

*FEHB Program—Open Season Enrollments/Changes*

5. **Would a lapse in appropriations alter the effective date of an FEHB Open Season enrollment change if an enrollment request was fully processed by an agency and submitted to the health plan prior to the lapse?**

   **A.** No. If an enrollment change request was submitted to the health plan and processed, the effective date of an FEHB Open Season change would still be the first day of the first full pay period in January.

30

6. **An employee is in a non-pay status due to a shutdown furlough and is enrolled in a new FEHB plan effective at the beginning of the plan year because their current plan is terminating participation in the FEHB Program. Which carrier is responsible for providing benefits for covered services in January?**

**A.** It depends upon the date in January that services are needed. Coverage under the new plan begins on the first day of the first pay period that begins on or after January 1. Before that coverage effective date, the terminating plan is responsible for providing benefits for covered services.

### *Other Insurance Programs*

7. **What happens to an employee's Federal Employees' Group Life Insurance (FEGLI) Program coverage if furloughed?**
**A.** The employee can maintain their FEGLI coverage for up to 12 months in a non-pay status. When the lapse ends, the employee will receive retroactive pay under 31 U.S.C. 1341(c)(2) and retroactive FEGLI premiums may be withheld from that pay. If FEGLI premiums are not withheld from retroactive pay, no more than one additional payment will be withheld in each subsequent pay period until all premiums have been paid.

8. **What happens to an employee's Flexible Spending Account (FSAFEDS) coverage if furloughed?**

**A.** Payroll deductions will cease for any employee that does not receive pay. The employee remains enrolled in FSAFEDS, but claims for eligible health care expenses incurred during a non-pay status will not be reimbursed until the employee returns to a pay status following the lapse and allotments are successfully restarted. The remaining allotments are recalculated over the remaining pay periods to match the participant's election amount. However, any claim submitted with dates of service prior to an employee entering non-pay status will be paid in accordance with existing procedures, up to the balance of the employee's annual election.

Eligible dependent care expenses incurred during a non-pay status may be reimbursed up to whatever balance is in the employee's dependent care account—as long as the expense incurred during the non-pay status allows the employee (or spouse if married) to work, look for work, or attend school full-time.

9. **Will the effective date of my FSAFEDS enrollment be affected?**

**A.** No.

10. **What happens to an employee's Federal Long Term Care Insurance Program (FLTCIP) coverage if furloughed?**

    **A.** FLTCIP coverage will continue for enrollees who are furloughed or excepted from furlough and working without pay during a shutdown furlough based on a lapse in appropriations. In addition, FLTCIP coverage may not be canceled as a result of non-payment of premiums or other periodic charges due to a lapse in appropriations. (See 5 CFR 875.302.) Employees paying premiums via Direct Bill or Automatic Bank Withdrawal will continue to be billed, but the insurer will not terminate for non-payment of premium during the lapse in appropriations. Regarding claims eligibility requests for FLTCIP during a shutdown furlough, claim benefits will not be reimbursed to the enrollee until all past due premiums are paid. At the end of the shutdown, FLTCIP premiums will be paid from retroactive pay provided under 31 U.S.C. 1341(c)(2) or may be paid back from another source (i.e., automatic bank withdrawal) for FLTCIP enrollees who elected to make payments directly to the Carrier.

    If missed premium payments are unable to be collected via automatic bank withdrawal or deductions from the enrollee's payroll or annuity/pension, enrollees will be billed directly for the premium amount due. After the shutdown, if the enrollee elected to pay their premium via automatic bank withdrawal, past due premiums will be collected by withdrawing up to two months of premiums from the enrollee's bank account each month until it is current. For enrollees who did not elect to make payment directly, FLTCIP premiums will be paid to the Carrier from enrollees' retroactive pay made available as soon as practicable upon the end of the lapse.

11. **What happens to an employee's Federal Employees Dental and Vision Insurance Program (FEDVIP) coverage if furloughed?**

    **A.** Coverage will continue for an individual enrolled in FEDVIP who is furloughed or excepted from furlough and working without pay during a lapse in appropriations, and an enrollment may not be canceled as a result of nonpayment of premiums or other periodic charges due to a lapse. (See 5 CFR 894.405.) Payroll deductions will temporarily cease for any employee that does not receive pay.

    Employees are entitled to retroactive pay under 31 U.S.C. 1341(c)(2) for excepted work performed during the lapse and for furlough periods at the standard rate of compensation. At the end of the shutdown, the accumulated FEDVIP premium for this period will be withheld from their pay. If FEDVIP premiums are not withheld from retroactive pay, no more than one additional payment will be withheld in each subsequent pay period until all premiums have been paid.

**12. Will the effective date of my FEDVIP Open Season enrollment be affected?**

**A.** No.

## I. Employee Assistance

**1. Are employees entitled to unemployment compensation while on furlough?**

**A.** It is possible that furloughed employees may become eligible for unemployment compensation. State unemployment compensation requirements differ. Some States require a 1-week waiting period before an individual qualifies for payments. In general, the law of the State in which an employee's last official duty station in Federal civilian service was located will be the State law that determines eligibility for unemployment insurance benefits. (See the Department of Labor website "Unemployment Compensation for Federal Employees.") Agencies or employees should submit questions to the appropriate State (or District of Columbia) office.

The Department of Labor's website provides links to individual State offices (See Department of Labor's website at Unemployment Benefits Finder | CareerOneStop). States will require you to provide your Agency's Federal Identification Code when you file your application.

**2. Can I take a Thrift Savings Plan (TSP) loan while I'm furloughed?**

**A.** A lapse in appropriations does not prevent TSP participants from requesting a new TSP loan. The established eligibility requirements continue to apply. TSP participants can go to TSP loans or read the TSP Loans booklet for more information about eligibility requirements.

**2a. Where can agencies and employees find information on Thrift Savings Plan (TSP) accounts, loans, and loan payments during a lapse in appropriations?**

**A.** Should there be a lapse in appropriations, TSP communications will be posted on the TSP website.

**3. What resources are available if a Federal employee needs financial assistance during a Government shutdown?**

**A.** Some agency employee assistance programs (EAP) include financial consultation services. In addition, employees may want to contact their financial institution, credit union, or learn about their options through the Thrift Savings Plan.

4. **How will Federal employees access Employee Assistance Program (EAP) services in the event of a Government shutdown?**

**A.** EAP services can be helpful in providing confidential counseling and coaching with experienced, licensed counselors—including legal and financial consultation. Federal employees are advised to contact their agency's EAP office to determine whether services will be available in the event of a lapse in appropriations. Employees may use OPM's website to find more information on EAPs. Many Federal agency EAPs are serviced by Federal Occupational Health (FOH), a division of the Department of Health and Human Services (HHS). Employees who know that their agency uses FOH as a provider may contact FOH's toll free EAP phone number, (800) 222-0364 (TTY (888) 262-7848), to find out how to access EAP services during a lapse in appropriations. Agency websites can also be consulted to identify the contact information of other EAP providers and to receive program details.

## J. Service Credit for Various Purposes

1. **Is furlough or leave without pay (LWOP) considered a break in service?**

**A.** No. Both terms mean that the employee continues to be employed but in a nonpay, nonduty status for those days/hours. Under normal circumstances, an extended period of nonpay status could affect the calculation of creditable service for certain purposes. However, under 31 U.S.C. 1341(c)(2), furlough periods are generally retroactively converted to pay status periods once the lapse has ended. (An employee who was in a scheduled nonpay status (e.g., LWOP, AWOL, suspension status) during a furlough period will not be placed in a pay status. Also, an employee who refused to perform excepted work during a furlough period may be placed in AWOL status.) For all employees who are retroactively placed in a pay status during a furlough period, the time will be fully creditable service.

2. **To what extent does nonpay status affect Federal employee benefits and programs?**

**A.** See answer to Question J.1.

## K. Federal Employees on Military Duty

1. **Can employees who have previously scheduled military leave under 5 U.S.C. 6323 for days covered by a lapse in appropriations take this leave during the lapse?**

**A.** No. As with other types of paid leave, paid military leave must be canceled for days covered by the furlough. An employee who had previously scheduled

military leave under any of the provisions in 5 U.S.C. 6323 for absences during a lapse in appropriations would have been in a pay status but for the lapse. Accordingly, such an employee is entitled to receive retroactive pay at the employee's "standard rate of pay" after the lapse in appropriations ends.

For employees on active military duty, their status as Absent-Uniformed Service (formerly Leave Without Pay-Uniformed Service (LWOP-US)) is unchanged by periods of intermittent annual or military leave, per the guidance in the Frequently Asked Questions on Military Leave.

2. **Will employees continue to receive a reservist differential payment (5 U.S.C. 5538) while on active duty when they are furloughed from their Federal civilian employment?**

   **A.** No. The reservist differential payments are intended to make up the difference between the employee's customary civil service compensation and his or her military pay, and are made from the funds of the employing agency appropriated for the payment of employees' salaries. Since funds are not available for employees' salaries during a furlough, no funds may be obligated towards any type of payment for reservist differential. However, after the lapse in appropriations ends and employees receive retroactive pay for the period of the furlough pursuant to 31 U.S.C. 1341(c)(2), it will be necessary for the agency to calculate any reservist differential payments that may be owed.

3. **Will there be an impact on an employee's General Schedule or Federal Wage System within-grade increase (WGI) waiting period due to an employee being in an Absent-Uniformed Service status during a shutdown furlough?**

   **A.** No. The furlough has no impact on an employee's General Schedule or Federal Wage System WGI waiting period if the employee is in an Absent-Uniformed Service status. An absence for the purpose of engaging in military service is creditable service in the computation of waiting periods for successive WGIs when the employee returns to a pay status through the exercise of a restoration right provided by law, Executive order, or regulation. (See 5 CFR 531.406(c)(1)(i) and 5 CFR 532.417(c)(4).)

4. **Can employees retroactively substitute military leave under 5 U.S.C. 6323 for Absent-US LWOP (absent uniformed services leave without pay) on a day before or after a holiday during a lapse in appropriations in order to receive pay for the holiday?**

   **A.** No. Employees may not retroactively substitute military leave for LWOP during

the furlough period since furloughed employees generally may not be charged any other form of paid leave (i.e., annual leave, sick leave, or other paid leave), compensatory time off in lieu of overtime, compensatory time off for travel, religious compensatory time off, or credit hours under a flexible work schedule during the furlough period. (See Questions F.1. and F.4.) Any military leave that had been scheduled (before the lapse in appropriations) for use during the lapse is canceled during the lapse, and the employee generally would be furloughed during the time the employee was scheduled to be on military leave. After the lapse in appropriations ends, employees are entitled to retroactive pay at the standard rate of pay pursuant to 31 U.S.C. 1341 for any furlough period. Thus, if an employee was scheduled to use military leave on the day before or after a holiday but the military leave was canceled due to a lapse in appropriations, and the employee was instead furloughed on the holiday, the employee will receive retroactive pay for that holiday equal to the normal paid time off for a holiday. However, if an employee was scheduled to be on Absent-US LWOP on the workdays before and after a holiday, the employee will not receive retroactive pay for the holiday.

5. **Must agencies recredit military leave canceled during a shutdown?**

**A.** Yes. As a result of the cancellation of scheduled military leave during the lapse in appropriations, agencies must recredit an employee's military leave account. This recredited military leave may be used after the end of the lapse in appropriations.

## L. Retirement

1. **If a shutdown furlough occurs during the employee's highest years of salary, what effect will time in a furlough status have on an employee's high-3 average pay?**

**A.** Once the lapse in appropriations ends, employees who would have been in pay status but for the lapse will receive retroactive pay for furlough periods pursuant to 31 U.S.C. 1341(c)(2). Thus, there will be no effect on such an employee's high-3 average pay.

2. **Are the retirement rules concerning the effect of a shutdown furlough the same for employees under the Civil Service Retirement System (CSRS) and the Federal Employees Retirement System (FERS)?**

**A.** Yes.

3. **What will happen to employees who would have retired during a shutdown**

furlough?

A. For employees who, on or before the requested retirement date, submitted some notice of their desire to retire, agencies should, when the lapse in appropriations ends, make the retirement effective as of the date requested. The retirement request may be informal (such as a letter requesting retirement), and can be either mailed or personally submitted to the agency. Any additional required paper work, such as the formal retirement application form, may be completed when the agency reopens. No time spent by the retiree in such actions after the effective date of the retirement may be considered as duty time, since the individual would no longer be an employee of the agency.

4. **If an employee is scheduled to retire before the end of the leave year with an annual leave balance of over the maximum leave ceiling (e.g., 240, 360, or 720 hours, as applicable) and the furlough prevents the employee's retirement from getting processed until January, does the employee lose his or her annual leave above the maximum leave ceiling?**

A. No. The employee's retirement would be retroactively applied to a date prior to the end of the leave year, and the employee would receive the full amount of accumulated and accrued annual leave in a lump-sum payment.

## M. Retirement Services: Government Closure

1. **I'm a Federal retiree. Will I still receive my monthly annuity payment during a Government shutdown?**

A. Yes. Federal retirees under the CSRS and FERS retirement systems will still receive their scheduled annuity payments on the first business day of the month.

2. **How can I make updates or changes to my retirement benefits?**
A. OPM's Retirement Services is available to assist you with your retirement benefits. As always, you can make many of these changes online through Services Online or by calling Retirement Services at (888) 767-6738. Due to the volume of calls, we recommend that you first use the online services site to make immediate updates and changes. You can also find general information online.

3. **How do I report the death of a family member during a Government shutdown?**

A. You can refer to our website Annuitant Death Index - RS Reporting (opm.gov) for information on reporting the death of a current retiree and applying for any benefits, or by calling us directly at (888) 767-6738. If the family member was a Federal employee at the time of death, survivors must contact the agency for which

the deceased worked. If the employing agency is closed, you may need to wait until after the shutdown ends to begin the process.

**4. I recently retired from Federal service. Will my retirement application be delayed by a Government shutdown?**

**A.** If your agency or payroll center submitted your retirement application to OPM, you will begin receiving interim annuity payments while OPM Retirement Specialists process your application. Because OPM Retirement Services is funded by the trust fund it manages, OPM Retirement Services employees will still be working normal operating hours during a Government shutdown.

If your agency or payroll center has not yet submitted your retirement application or the application is incomplete, you will likely experience some delay as OPM must wait on other agencies to submit all the information needed to process your retirement. Some functions of these agencies may not be operating during a Government shutdown.

**5. I applied for disability benefits. Will my application still be processed?**

**A.** Employees in Retirement Services at OPM will continue working on your application. If the application requires additional information from other agencies, expect delays during a Government shutdown.

**6. Can I submit a court order that awards a retirement benefit to OPM during a Government shutdown?**

**A.** Yes. OPM employees will continue working to process court ordered retirement benefits.

## N. Payments upon Separation from Federal Service

**1. If there is a shutdown furlough, how does this impact a separating employee's lump-sum payment for their unused annual leave?**

**A.** In the event of a shutdown furlough, any payments incurred by the agency for an employee's lump-sum payment will be delayed until funds are available.

**2. How are separated employees' entitlements to severance pay affected by a shutdown furlough?**

**A.** Funds for severance pay are obligated on a day-to-day basis as the recipient accrues continuing entitlement to severance pay by not being reemployed by the Government of the United States. (Severance pay is suspended or terminated when the individual is reemployed by the Federal Government.) Severance pay is paid at

38

the same pay period intervals as if the recipient were still employed. Any severance payment (on a payroll payday) is linked to the corresponding pay period during which the recipient accrued continuing entitlement to severance pay. If the recipient is reemployed by the Federal Government during a pay period, he or she is entitled to a prorated severance payment covering the days in the period prior to reemployment (e.g., 2/5 of one week's pay if the recipient was reemployed on the third workday of the pay period).

Thus, in the case of a shutdown furlough, accrued but unpaid severance pay represents an obligation to be paid from funds available before the lapse in appropriations occurred. Just as payroll checks for work performed prior to a lapse in appropriations can be processed as part of the orderly suspension of nonexcepted activities, severance pay checks covering days before the lapse may also be processed.

No funds may be authorized for severance payments for days during the lapse until an appropriation is enacted.

See [additional information on severance pay](#) (including eligibility criteria and payment formulas).

## O. Benefits under the Federal Employees' Compensation Act (FECA)

### 1. How is Continuation of Pay (COP) under the Federal Employees' Compensation Act affected by a Government shutdown?

**A.** The Department of Labor's Office of Workers' Compensation Programs, which administers the Federal Employees' Compensation Act (FECA), advises that, in the event of a Government shutdown, an employee who is disabled due to his or her injury is to be maintained in COP status during the shutdown unless the agency does not have monies available to pay the salary of that employee. When funding is restored, COP can be retroactively paid, but it cannot be paid for the same period as retroactive salary is paid. In the event an agency is legally unable to pay COP to an employee because of a lapse in appropriations, the employee may file a claim for regular FECA wage loss compensation for that period.

Employees in COP status will not receive retroactive pay under the Government Employee Fair Treatment Act of 2019 (31 U.S.C. 1341(c)(2)). They are already receiving pay for the time periods under the workers' compensation program. Even if agencies coded employees in COP status as being in furlough status, or gave them a furlough notice, the COP status was unaffected and thus excused absences do not apply.

2. **Are employees who are injured while on furlough or LWOP eligible to receive workers' compensation?**

**A.** No. Workers' compensation is paid to employees only if they are injured while performing their duties. Employees on furlough or LWOP are not in a duty status for this purpose. An employee who is receiving workers' compensation payments will continue to receive workers' compensation payments during a furlough and will continue to be charged LWOP.

**Note to Section O:** Any additional questions regarding Federal workers' compensation benefits should be directed to the Division of Federal Employees', Longshore and Harbor Workers' Compensation, Office of Workers' Compensation Programs, U.S. Department of Labor.

## P. Procedures

1. **How is a shutdown furlough documented?**

**A.** Unlike an administrative furlough, agencies should *not* prepare an SF-50, "Notification of Personnel Action" (or a List Form of Notice for a group of employees who are to be furloughed on the same day or days each pay period) at the outset of a shutdown furlough. Instead, employees will receive a shutdown furlough notice citing the reasons for the furlough because the ultimate duration of a shutdown furlough is not known by agencies at the outset of the furlough. Once an appropriation has been signed by the President, agencies will be instructed on the appropriateness of preparing documentation consistent with Chapters 15 and 16 of *The Guide to Processing Personnel Actions*.

1a. **In addition to a shutdown furlough notice, what other documentation should be provided to furloughed employees?**

**A.** Agencies should provide each furloughed employee a Form SF-8 (Notice to Federal Employee about Unemployment Insurance). This form provides information on filing unemployment compensation claims, including the agency's mailing address and Federal identification code. Employees may be asked to provide or refer to this form when they file a claim with their State unemployment insurance agency.

2. **In the event of a shutdown furlough, can an employee be furloughed without first receiving a written notice of decision to furlough?**

**A.** While an employee must ultimately receive a written notice of decision to furlough, it is not required that such written notice be given prior to effecting the emergency furlough or in person, although it is recommended. Advance written

notice (including through email) is preferable, but when prior written notice is not feasible, then any reasonable notice (e.g., telephonic, oral, personal email, or by mail promptly after the furlough) is permissible when the furlough decision is made. However, a written notice of decision to furlough must be provided as soon as possible after the furlough begins. See Question P.2a. for providing electronic notice of a furlough action.

## 2a. May employees conduct orderly shutdown activities remotely? May an agency provide an employee electronic notice of a furlough action?

**A.** In many cases, orderly shutdown activities (including the distribution of furlough notices and, where necessary, the adjustment of voicemail and email messages to reflect the agency's operating status) may be conducted remotely. Agencies that issue furlough notices should consult with their legal counsel to ensure each step of the process is consistent with legal requirements. If an agency determines it will electronically notify affected employees of a furlough action, OPM recommends that the agency include each employee's name, address, and/or e-mail address on the decision notification so that it is clear that an employee is receiving personal notification. Agencies should also consider including in the body of the electronic correspondence, the requirement that the employee provide an email acknowledgement of receipt. If an agency does not receive a requested acknowledgement of receipt of an e-mail notification, it should consider delivering a paper copy of the decision notification to the employee at his or her home address by registered mail with a return receipt requested. Similarly, agencies must deliver hard copy furlough notices to those employees without email access.

Additionally, OPM recommends that agencies consider informing employees as soon as practicable whether or not an employee is subject to the furlough and provide a contact person who can answer questions related to this issue. Finally, agencies with bargaining unit employees are reminded that they must provide notice and opportunity to bargain over negotiable procedures and appropriate arrangements to any unions representing their employees.

## 2b. What are an agency's regulatory obligations in providing an appellant the Merit Systems Protection Board (MSPB) appeal information in the adverse action furlough decision notice?

**A.** An agency must satisfy the obligation to provide a copy of the MSPB appeal form when issuing a decision notice. (5 CFR 1201.21). Providing a link to the MSPB appeal form electronically will typically satisfy the requirement of ensuring that employees subject to a decision appealable to MSPB will have effective access to the MSPB regulations and appeal form. However, if the employee informs the agency

that he or she lacks Internet access, the agency is required to take steps to ensure that the employee has actual access to the MSPB's regulations and the appeal form, including providing the employee with a hard copy of these documents upon the employee's request. See Sample Notice for sample decision notice language.

**2c. What is the treatment of employees who are serving, or about to serve, a suspension during a lapse in appropriations?**

**A.** If an employee is serving a suspension or scheduled to serve a suspension when a shutdown furlough becomes effective, agencies have the option of holding the suspension in abeyance during the period of shutdown, or delaying the commencement of suspension until after the shutdown ends. During the shutdown, such employees should be properly designated by the agency as exempt, excepted, or non-excepted and treated accordingly. If the employee is subject to furlough, the employee should receive the appropriate shutdown adverse action furlough notice.

**2d. What is the treatment of employees who are in AWOL status at the beginning of the lapse in appropriations?**

**A.** If an employee is AWOL at the beginning of the lapse in appropriations, and the employee is otherwise subject to furlough during the shutdown, he or she should be provided a furlough notice and placed in a temporary non-duty, non-pay status because of the lack of appropriated funds. Thus, the employee cannot be AWOL during this time, despite any belief the employee would not have otherwise reported to work. The employee should be coded the same as all other employees who are furloughed during this time. If the employee fails to report to work following the end of the shutdown, he or she will be considered AWOL, and subject to any consequences that may follow from being AWOL after the end of the shutdown. Conversely, if the employee is *excepted* from furlough, ordered to report to work during the shutdown yet failed to do so, he or she would be considered AWOL during this time, and subject to any consequences that may follow from being AWOL.

**3. What information should be included in the notice of decision of a shutdown furlough when no advance notice is issued?**

**A.** The notice must specify the reason for the furlough and state that the usual 30 calendar days advance notice was not possible due to the emergency requiring curtailment of agency operations. If some employees in a competitive level will not be furloughed because they are performing one of the excepted activities defined by OMB standards, OPM recommends a statement such as the following:

"If employees are being retained in your competitive level, they are required for

42

orderly suspension of agency operations, or they are performing one of the excepted activities defined by law."

For career members (except reemployed annuitants) of the Senior Executive Service (SES), the written notice must provide the reason for the furlough; the expected duration of the furlough and the effective dates; the basis for selecting the appointee when some but not all SES appointees in a given organizational unit are being furloughed; the location where the appointee may inspect the regulations and records pertinent to the action; and, if the notice period is less than 30 calendar days, the reason for the shortened period. For an SES probationer, the notice should also explain the effect (if any) on the duration of the probationary period. See Question P.6a. regarding noncareer, limited term, or limited emergency appointees and reemployed annuitants holding career appointments.

All notices must include a statement of applicable appeal and grievance rights. An agency must satisfy the obligation to provide a copy of the MSPB appeal form when issuing a decision notice. Providing a link to the MSPB appeal form electronically will typically satisfy the requirement of ensuring that employees subject to a decision appealable to MSPB will have effective access to the MSPB regulations and appeal form. However, if the employee informs the agency that he or she lacks Internet access, the agency is required to take steps to ensure that the employee has actual access to the MSPB's regulations and the appeal form including providing the employee with a hard copy of these documents upon the employee's request.

See "Sample Shutdown Furlough Decision Notice Due to Lapse in Appropriations." This sample can be used for SES and non-SES employees.

### 3a. How should the decision letter for a shutdown furlough be framed if the specific number of furlough days is unknown?

**A.** While it is desirable when possible to inform the affected employee of a specific number of furlough days in the decision letter, the agency needs only to set out the maximum time that may be involved, so employees have as much information as possible.

### 3b. What procedural rights apply to employees who are veterans covered under 5 U.S.C. chapter 75 and 5 CFR part 752 for a shutdown furlough?

**A.** For a shutdown furlough of a covered veteran employee, the law (5 U.S.C. 7513) gives a covered veteran employee the same procedural rights as other covered employees. Employees should consult with their agency Human Resources office to determine whether they are covered by 5 U.S.C. 7513 and what procedures may apply to them.

43

**3c. If an employee decides to challenge a shutdown furlough, from what point would the time for appeal to the Merit Systems Protection Board run?**

**A.** Employees must file an appeal within 30 days after the effective date of their first furlough day, or 30 days after the date of their receipt of the decision notice whichever is later.

4. **In addition to statutory and regulatory procedural requirements, what other forms of communication should an agency consider when implementing a shutdown furlough?**

   **A.** Considering the uncertain and changing circumstances surrounding a shutdown furlough, agencies should make efforts to ensure that employees are provided with up-to-date and accurate information. If time permits before a furlough starts, this may be done through effective union-management communication, employee briefings, periodic bulletins, and newsletters. Once a furlough begins, agencies can also consider using toll-free hotlines and emails to home email accounts.

5. **How does the length of a shutdown furlough affect the procedures that are used to implement the furlough of employees?**

   **A.** The length of a shutdown furlough does not affect the procedures that are used.

   For most employees, shutdown furloughs lasting 30 calendar days or less (22 workdays) are covered by OPM regulations under 5 CFR part 752, adverse action procedures. Shutdown furloughs lasting 30 calendar days or less (22 workdays) for career appointees in the Senior Executive Service (except reemployed annuitants) are covered under 5 CFR part 359, subpart H. See Question P.6a. regarding noncareer, limited term, or limited emergency appointees in the SES and reemployed annuitants holding career appointments.

   Shutdown furloughs lasting more than 30 calendar days (22 workdays) are also covered by OPM regulations under 5 CFR part 752, adverse action procedures or 5 CFR part 359, subpart H, as applicable. When the shutdown furlough goes beyond 30 days, agencies should treat it as a second shutdown furlough and issue another adverse action or furlough notice.

   **Note:** Reductions in force (RIF) furlough regulations and SES competitive furlough requirements are not applicable to emergency shutdown furloughs because the ultimate duration of an emergency shutdown furlough is unknown at the outset and is dependent entirely on Congressional action, rather than agency action. The RIF

furlough regulations and SES competitive furlough requirements, on the other hand, contemplate planned, foreseeable, money-saving furloughs that, at the outset, are planned to exceed 30 days.

**6.  What procedures and appeal rights are applicable for noncareer, limited term and limited emergency employees in the SES and reemployed annuitants holding career SES appointments?**

**A.**  Noncareer, limited term, and limited emergency SES appointees and reemployed SES annuitants holding career appointments are not covered by 5 CFR part 359, subpart H, and they may be furloughed under agency designated procedures, which should include certain minimum features, e.g., whenever possible, a written notice at least 1 day before the furlough that states the reason for, duration of, and effective dates of the furlough.

**6a. What impact does the shutdown have on employees whose probationary period ended during the lapse in appropriations? Can the probationary period be extended?**

**A.**  Placement of a probationary employee in a non-duty status due to a shutdown furlough does not extend the probationary period (for either non-SES or SES employees). This is because the Government Employee Fair Treatment Act of 2019 (31 U.S.C. 1341(c)(2)) ensures that all furloughed and excepted employees "shall be paid" for the period of the lapse, and in accordance with regulations, periods of absence while in a pay status count toward completion of probation. Once an individual completes the probationary period, s/he is covered by relevant adverse action procedural and appeal rights.

**6.b. What impact does a shutdown have on the probationary or trial period certification required under 5 CFR 11.5?**

**A.** Agencies are not relieved from completing certifications for continued employment of their employees serving a probationary or trial period. Where an agency decides not to issue a certification, the probationary or trial period employee's employment will terminate before the end of the tour of duty on the last day of their probationary or trial period.  Where an agency has not processed its certification of a probationary or trial period employee, it may do so as part of its orderly shutdown activities. For employees not certified before the end of their probationary or trial period and where the agency wants to retain them, they should furlough the employees and petition the Director of OPM to reinstate the employees under 5 CFR 11.5. Petitions should be submitted to probationaryappeal@opm.gov.

**6.c. Is the processing of certifications, terminations, and petitions to the Director of OPM under 5 CFR 11.5 permitted during a shutdown?**

**A.** Yes, agencies may process certifications, terminations, and petitions under this rule as part of their orderly shutdown procedures. This includes providing advance written notice of the effective date of termination if the agency did not previously provide this notice.

**7. How do agencies implement a shutdown furlough for Administrative Law Judges?**

**A.** The Antideficiency Act applies to Administrative Law Judges (ALJs). Accordingly, they should be furloughed unless they are performing functions that are not funded by annual appropriations or meet one of the Antideficiency Act's exceptions. The Merit Systems Protection Board (MSPB) has adopted procedures for implementing furloughs for ALJs, which are described in 5 CFR 1201.137–141. Those procedures, however, do not specifically address the unique issues raised by an emergency furlough necessitated by a Government shutdown. Accordingly, agencies should consult their legal counsel about how to implement a furlough of ALJs.

**8. What happens to new employees who are scheduled to report to work for the first time during a shutdown furlough?**

**A.** By law, individuals do not become Federal employees until they report for work and are sworn in. Agencies should consider delaying the entrance-on-duty (EOD) date for new employees who are scheduled to report to work for the first time during a shutdown furlough.

**9. At the time of an appropriations lapse, an employee who is funded through a lapsed appropriation is on temporary duty assignment away from the employee's normal duty station. The agency notifies the employee to return to the employee's normal duty station. Can the employee elect to delay the return? If the employee decides to delay the return, and as a result the employee incurs additional travel costs, who is liable for those additional travel costs?**

**A.** Employees who are notified to return home should do so as soon as practicable. When an employee returns promptly, the travel expenses that the employee incurs in the return are properly-incurred obligations of the agency (as part of the agency's orderly-shutdown activities), and the agency will reimburse these travel costs after appropriations are enacted and are available for that purpose. If, however, an employee elects not to return promptly and, as a result of this decision, the employee incurs additional travel expenses, those additional travel expenses are not obligations of the agency, and will not be reimbursed (instead, the employee is

personally liable for the additional travel expenses); while the employee will be personally liable for the additional travel expenses, the agency will continue to incur the obligation for those travel costs that would have been incurred if the employee had returned promptly, and the agency will reimburse such "prompt return" travel costs after appropriations are enacted and are available for that purpose. Finally, in the case of those employees who are notified by their agency that they are to remain on travel, because the continuation of their travel is in direct support of an excepted agency activity, their travel expenses are properly-incurred obligations of the agency (as part of the agency carrying out an excepted activity), and the agency will reimburse the travel costs after appropriations are enacted and are available for that purpose.

**10. What happens to current Federal employees who are scheduled to transfer to a new agency during a shutdown furlough?**

**A.** Agencies should consider delaying the entrance-on-duty date for employees who are scheduled to transfer to a new agency during a shutdown furlough. Such employees would remain on the rolls of their former agency until the new transfer effective date can be redetermined by the former agency and the new employing agency once the lapse in appropriations has ended.

**11. Will the Merit Systems Protection Board (MSPB) be addressing furlough related appeals during the shutdown?**

**A.** Please consult the MSPB website for additional information on the processing of appeals during any lapse in appropriations.

**12. If a Government shutdown occurs, how will furloughed employees be informed when it is over?**

**A.** Employees should follow their agency procedures, including any applicable collective bargaining agreements, which may include monitoring OPM's website and media outlets for notification that a continuing resolution or appropriation has been signed by the President.

**13. When a Government shutdown ends, when are furloughed employees expected to return to work?**

**A.** If a shutdown were to occur, guidance concerning when furloughed employees should come back to work at the conclusion of the shutdown would have to be tailored to the specific situation. In the absence of such guidance, agencies should apply a rule of reason in requiring employees to return to work as soon as possible, taking into account the disruption in the lives and routines of furloughed

employees that a shutdown causes.

## Q. Labor Management Relations Implications

1. **When a lapse in appropriations requires a shutdown furlough, what is an agency's obligation to bargain?**

   **A.** The decision whether to furlough employees and which activities are excepted from a furlough are management rights that are not subject to bargaining. (See 5 U.S.C. 7106(a).) However, when an agency determines that a shutdown furlough is necessary, agencies have a duty to notify their exclusive representatives and, upon request, bargain over any negotiable impact and implementation proposals the union may submit, unless the matter of furloughs is already "covered by" a collective bargaining agreement.

   In the event of unforeseeable circumstances, such as sudden emergencies requiring immediate curtailment of activities due to a Government shutdown, whatever bargaining that can occur prior to taking action should occur to the extent possible before furlough actions are necessary. However, if agreement is not reached in the time allowed, the agency should tell the union what actions it will take and offer to continue bargaining on a post implementation basis.

2. **Do agencies have an obligation to bargain before it is known whether a lapse in appropriations will occur?**

   **A.** The law requires an agency to bargain during the term of a collective bargaining agreement on negotiable union-initiated proposals concerning matters that are not expressly contained in, or otherwise covered by, the collective bargaining agreement, unless the union has waived its right to bargain about the subject matter involved. Accordingly, there may be a bargaining obligation if a union makes negotiable proposals in advance of a shutdown that address procedures and appropriate arrangements for affected employees. Agencies should evaluate the circumstances of their situation to determine whether there is a duty to bargain on union proposals concerning furlough procedures.

3. **What is the agency's obligation in responding to a union request under 5 U.S.C. 7114 seeking the agency's furlough plan and a list of excepted and nonexcepted employees?**

   **A.** An agency is required to provide data that is normally maintained, reasonably available and necessary to perform the representational duties of a union. A union requesting information must establish a particularized need for the information by articulating, with specificity, why it needs the requested information, including the

uses to which the union will put the information and the connection between those uses and the union's representational responsibilities under the statute. The union must establish that the requested information is required in order for the union to adequately represent its members. An agency denying a request for information must assert and establish any countervailing anti-disclosure interests. An agency may not satisfy its burden by making conclusory or bare assertions; its burden extends beyond simply saying "no." With this in mind, agencies will have to evaluate the circumstances of their situation to determine whether they should provide the requested information.

**4. Can union officials perform representational work on "official time" during a shutdown?**

**A.** Exempted employees (i.e., employees not affected by a lapse in appropriations—see Question B.3. explaining "exempt" employees) serving as union officials may continue to be granted official time to the same extent and in the same manner as they would under non-shutdown conditions. In general, other employees serving as union officials may not work on official time during a shutdown, because they would be authorized to work official time only while they are in a duty status. Union officials, like other employees, may utilize up to four (4) hours to participate in the orderly suspension of operations.

There may be a narrow set of circumstances where exercise of a union's statutory rights could itself constitute an excepted activity and thereby fall within the Antideficiency Act's exceptions. If an agency official who is excepted (i.e., an individual paid by annual appropriations who is excepted from furlough because he or she is performing work that may continue to be performed during a lapse in appropriations—see Question B.1. explaining "excepted" employees) has determined, for example, that an investigation or the initiation of a personnel action is necessary to protect life and property, and must be undertaken prior to the enactment of appropriations, such an action could also fall within excepted activity. If this excepted activity triggers union representational rights under 5 U.S.C. chapter 71 (e.g., a formal discussion, a *Weingarten* interview, or the representation of an employee in connection with an adverse personnel action), a union's representational function would be required in order for the Agency to move forward with such an action and would, itself, in that narrow circumstance, constitute excepted activity. In such a case, therefore, official time should be granted to employees to serve in this representational function. With this in mind, agency officials should consult with Human Resources representatives and their legal counsel to evaluate whether contemplated management actions are necessary during the shutdown and whether they will trigger statutory representation rights.

49

5. **Will union officials have access to their union offices if they are in furlough status?**

**A.** Generally, access to facilities during a furlough may be restricted based on funding, security, or other issues. Depending on agency operations, a particular facility, or portions of a facility, may be fully or partially operational.

If a facility is operational and accessible, and a union official is either an exempt employee or is engaged in an excepted activity (in accordance with the requirements discussed in Question Q.4.), he or she would have access to the union office to engage in representational work in an official time capacity.

# R. Reductions in Force

**Reminder to agencies:** Agencies are encouraged to prepare decisional documents to document and support RIF-related decision-making. OPM encourages agencies to consult with their legal staff regarding what documents are necessary and what information they should contain.

1. **What is the difference between a reduction in force (RIF) and a furlough?**

   **A.** A reduction in force is a process to separate or reassign employees when positions have been abolished. A furlough is the placing of an employee in a temporary non-duty, non-pay status because of lack of work or funds, or other non-disciplinary reasons.

2. **Can an agency run a RIF during a shutdown furlough?  If so, can an agency issue RIF notices during the period of orderly shutdown before a shutdown furlough?**

   **A.** Yes, an agency can run a RIF and may issue RIF notices (prepared in accordance with the requirements in 5 CFR part 351, subpart H) when preparing for a shutdown furlough. OMB has determined that agencies are authorized to direct employees to perform work necessary to administer the RIF process during the lapse in appropriations as excepted activities.

3. **What happens if the RIF effective date occurs during a shutdown furlough?**

   **A.** The RIF notice period continues during a lapse in funding (i.e., the effective date of release occurs as planned).  OMB has determined that agencies are authorized to direct employees to perform the work necessary to administer the RIF process during the lapse in appropriations as excepted activities.

4. **Is a furlough notice different than a RIF notice?**

   **A.** Yes, furlough notices and RIF notices require different information.

A furlough notice provides information about the reason for the furlough, information about appeal rights and a Form SF-8 (Notice to Federal Employee about Unemployment Insurance). This form provides information on filing unemployment compensation claims, including the agency's mailing address and Federal identification code. Employees may be asked to provide or refer to this form when they file a claim with their State unemployment insurance agency. A RIF notice provides information about the RIF, how the employee is impacted, the benefits available to the employee and appeal rights. RIF notices must be created in accordance with 5 CFR 351 Subpart F. Sample templates for RIF notices are available on OPM's website at RIF Resources and Templates.

**5. Are there any additional notice requirements for RIFs of 50 or more employees in a competitive area?**

**A.** Yes, when an agency separates 50 or more employees by RIF from a competitive area, the agency must provide additional notification in accordance with 5 CFR 351.803(b) and the Workforce Investment Act of 1998.

**6. Are there any restrictions on establishing or changing competitive area definitions?**

**A.** Yes. An agency must establish competitive areas at least 90 days prior to the RIF effective date. Establishment or changes to competitive areas within 90 days of the RIF effective date must be approved by OPM. To request an exception to the 90-day competitive area requirement, please send a completed request template to the OPM Workforce Policy and Innovation's RIF Policy Advisory Team at WPIntake@opm.gov.

# Sample Shutdown Furlough Decision Notice Due to a Lapse in Appropriations

[Ensure that an SF-8 is attached to this notice]

This notice would be used for a "shutdown" furlough, where the agency no longer has the necessary funds to operate and must curtail those activities not excepted by OMB standards. In such instances there is no advance written notice proposing the action (see 5 CFR 752.404(d) and 359.806(a)), although a written furlough decision notice should be given as soon as possible after the furlough starts.

**NOTICE**

In the absence of either a Fiscal Year (FY) [state year] appropriation, or a continuing resolution for [agency name], no further financial obligations may be incurred by [agency name], except for those related to the orderly suspension of [agency's name] operations or performance of excepted activities as defined in the Office of Management and Budget (OMB) memorandum for Heads of Executive Departments and Agencies dated November 17, 1981. Because your services are no longer needed for orderly suspension of operations and you are not engaged in one of the excepted functions, you are being placed in a furlough status effective [enter date]. This furlough, i.e., nonduty, nonpay status, is an action of 30 days or less under 5 CFR part 752. Therefore, this furlough notice expires on [enter date]. You should monitor public broadcasts and the Internet. When a continuing resolution or an FY [state year] appropriation for [agency name] is approved, you will be expected to return to work on your next regular duty day.

This action is being taken because of a sudden emergency requiring curtailment of the agency's activities; therefore, no advance notification is possible. The customary 30-day advance notice period and opportunity to answer are suspended under the provisions of 5 CFR 752.404(d)(2). The 30 day-advance notice otherwise required by 5 CFR 359.806(a) for Senior Executive Service (SES) career appointees (other than reemployed annuitants) may be shortened or waived.

If employees are being retained in your competitive level or competitive area, they are required for orderly suspension of agency operations or they are performing one of the excepted activities defined in the OMB memorandum.

During the furlough period, you will be in a nonduty, nonpay status and you may not work at your workplace or other alternative worksite unless and until recalled. You will

not be permitted to work as an unpaid volunteer. Any paid leave (annual, sick, court, etc.) approved for use during the furlough period is canceled. After the lapse ends, you will receive your "standard rate of pay" for the furlough period in accordance with 31 U.S.C. 1341(c) as soon as possible. (This means that employees who would have been in pay status but for the lapse in appropriations will receive their full regular pay for any furlough period.)

Employees who have completed a probationary or trial period or 1 year of current continuous employment in the competitive service under other than a temporary appointment may appeal this action to the Merit Systems Protection Board (MSPB). Employees in the excepted service who have veterans preference may appeal to MSPB if they have completed 1 year of current continuous service in the same or similar positions as the one they now hold. Employees in the excepted service who do not have veterans preference and who are not serving a probationary or trial period under an initial appointment pending conversion to the competitive service may appeal to MSPB if they have completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less.

Career SES appointees (except reemployed annuitants) who believe requirements of 5 CFR part 359, subpart H, or the agency's procedures have not been correctly applied may also appeal to MSPB. Career SES appointees may inspect the regulations and records pertinent to this action at the following location: [identify location and times, as appropriate].

The process to exercise your appeal, grievance, and complaint rights are set forth below. Carefully read the explanations for how to exercise your options and the effects of an election as you may elect only **one** avenue for redress.

**MSPB Appeal:** If you have the right of appeal to MSPB and wish to appeal this action to MSPB, you must file the appeal within 30 calendar days after the effective date of your furlough, or 30 days after the date of your receipt of this decision notice, whichever is later. If you wish to file an appeal, you may obtain information about the appeals process and a copy of the appeals form from the MSPB website at http://www.mspb.gov/appeals/appeals.htm. If you cannot access the internet, please notify [insert name and contact information] and a paper copy of MSPB's appeal form and regulations will be provided to you. MSPB requires an appeal to be filed with the MSPB regional or field office serving the area where your duty station was located

53

when the action was taken. Based upon your duty station, the appropriate field office is [identify appropriate regional office]. You may wish to check MSPB's website for its operating status during this time. MSPB encourages employees to file electronically with MSPB's e-Appeal electronic filing system at https://e-appeal.mspb.gov/. Employees have a right to representation in this matter and may be represented by an attorney or other person of their choosing. MSPB requires that attorney representatives register as e-filers with MSPB and file all pleadings using MSPB's e-Appeal. If you submit an appeal to MSPB, the agency official to whom MSPB should send the Acknowledgment Order and copy of the appeal is [insert the official's name or title, physical mailing address, email address, telephone, and fax number].

**Grievance Under Collective Bargaining Agreement:** Bargaining unit employees may grieve this action in accordance with the applicable negotiated agreement [provide citation to negotiated agreement] or may appeal to MSPB in accordance with the procedures outlined above, but not both. An employee is deemed to have exercised an option when the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the negotiated grievance procedure, whichever event occurs first. Inquiries about pursuing the grievance process cannot alter the MSPB deadlines referenced above. However, the election of the negotiated grievance procedure will not prejudice the employee's right to request MSPB review of the final decision with respect to allegations of discrimination as defined in 5 U.S.C. 2302(b)(1). To obtain information on filing a grievance under the negotiated grievance procedure, contact [name of exclusive union representative].

**Discrimination Complaint:** If you believe this action involves discrimination based on race, color, religion, sex, national origin, handicapping condition, or age, you have the right to file a complaint under the provisions of 29 C.F.R. Part 1614. To do so, you must contact an Equal Employment Opportunity (EEO) counselor within forty-five (45) calendar days of your receipt of this letter. For further information or assistance, you may contact [insert name, address, e-mail address, and phone number of agency's EEO contact]. Use of the pre-complaint process described in 5 C.F.R. § 1614.105 does not constitute an election, but the filing of a complaint does.

**Office of Special Counsel Complaint:** You may file a prohibited personnel action complaint to seek corrective action through the Office of Special Counsel in accordance with subchapters II and III of 5 U.S.C. chapter 12. However, your appeal rights to MSPB will be limited to protected whistleblower disclosures under 5 U.S.C.

§ 2302(b)(8) or retaliation for engaging in certain protected activities under 5 U.S.C. § 2302(b)(9). Visit https://osc.gov/ for more information.

Attached is the SF-8, *Notice to Federal Employee about Unemployment Insurance*. Please be aware that you may be required to repay any unemployment insurance payments once an appropriations bill is enacted and you receive pay for the period of the furlough. Additional information about unemployment insurance is available at https://www.careeronestop.org/LocalHelp/service-locator.aspx.

We recognize the difficult financial implications of any furlough, no matter how limited its length. We will make every effort to keep you informed as additional information regarding the agency funding level becomes available. If you have questions, contact [contact name, phone number, and email address].

_____    _____
Deciding Official    Date


I acknowledge receipt of this decision.


_____    _____
Employee's signature    Date


Attachment: SF-8

# Sample Notice of Furlough During Holiday to Excepted Employee Due to a Lapse in Appropriations

[Ensure that an SF-8 is attached to this notice]

In the absence of either a Fiscal Year (FY) [state year] appropriation, or a continuing resolution for [agency name], no new financial obligations may be incurred by the Agency for functions funded through annual appropriations, except with respect to certain personnel who are otherwise authorized to continue to work.

As you are aware, as an employee who has been excepted from furlough and continued to work during the shutdown, you are required to work on those days you would normally be scheduled to work. The upcoming [state holiday] on [state date], is not a day you would normally be scheduled to work, and we are not requiring you to work on that day. Because of the operation of the shutdown furlough rules, we must place you in a furlough status for the [state holiday] holiday. As an excepted employee, you are expected to return to work on your next regularly scheduled workday following the [state holiday] holiday. For the vast majority of you, this means you would return to work on [state date].

If you have a work schedule that does not include [state date], as a workday, you will follow the normal holiday rules for an "in lieu of" holiday. All full-time employees, including those on flexible or compressed work schedules, are entitled to an "in lieu of" holiday when a holiday falls on a non-workday. For example, if you have a Monday through Friday alternative work schedule (AWS), and [state holiday] is your regularly scheduled AWS day off, you will do as you have generally done for previous holidays and take your "in lieu of" holiday the work day immediately preceding Monday. For example, if the holiday is Monday, [insert date], your "in lieu of" holiday would be Friday, [insert date]. You would be in furlough status on Friday instead of Monday in this example. You would return to work on Tuesday, [insert date], because your regular day off is on Monday, [insert date].

This can be a bit confusing, so if you do not fall in the category above of working a Monday through Friday schedule and/or are unclear of when your "in-lieu of" holiday is to occur, please consult with your supervisor. In the event your supervisor is unavailable, please call or email [state agency] Human Resources.

This action is being taken because of a sudden emergency requiring curtailment of the agency's activities; therefore, no advance notification is possible. The customary

30-day advance notice period and opportunity to answer are suspended under the provisions of 5 CFR 752.404(d)(2). The 30 day-advance notice otherwise required by 5 CFR 359.806(a) for Senior Executive Service (SES) career appointees (other than reemployed annuitants) may be shortened or waived.

If employees are being retained in your competitive level or competitive area, they are required for orderly suspension of agency operations or they are performing one of the excepted activities defined in the OMB memorandum.

During the furlough period, you will be in a nonduty, nonpay status and you may not work at your workplace or other alternative worksite unless and until recalled. You will not be permitted to work as an unpaid volunteer. Any paid leave (annual, sick, court, etc.) approved for use during the furlough period is canceled. After the lapse ends, you will receive your "standard rate of pay" for the furlough period in accordance with 31 U.S.C. 1341(c) as soon as possible. (This means that employees who would have been in pay status but for the lapse in appropriations will receive their full regular pay for any furlough period.)

Employees who have completed a probationary or trial period or 1 year of current continuous employment in the competitive service under other than a temporary appointment may appeal this action to the Merit Systems Protection Board (MSPB). Employees in the excepted service who have veterans preference may appeal to MSPB if they have completed 1 year of current continuous service in the same or similar positions as the one they now hold. Employees in the excepted service who do not have veterans preference and who are not serving a probationary or trial period under an initial appointment pending conversion to the competitive service may appeal to MSPB if they have completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less.

Career SES appointees (except reemployed annuitants) who believe requirements of 5 CFR part 359, subpart H, or the agency's procedures have not been correctly applied may also appeal to MSPB. Career SES appointees may inspect the regulations and records pertinent to this action at the following location: [identify location and times, as appropriate].

The process to exercise your appeal, grievance, and complaint rights are set forth below. Carefully read the explanations for how to exercise your options and the effects of an election as you may elect only **one** avenue for redress.

**MSPB Appeal:** If you have the right of appeal to MSPB and wish to appeal this action to MSPB, you must file the appeal within 30 calendar days after the effective date of your furlough, or 30 days after the date of your receipt of this decision notice, whichever is later. If you wish to file an appeal, you may obtain information about the appeals process and a copy of the appeals form from the MSPB website at http://www.mspb.gov/appeals/appeals.htm. If you cannot access the internet, please notify [insert name and contact information] and a paper copy of MSPB's appeal form and regulations will be provided to you. MSPB requires an appeal to be filed with the MSPB regional or field office serving the area where your duty station was located when the action was taken. Based upon your duty station, the appropriate field office is [identify appropriate regional office]. You may wish to check MSPB's website for its operating status during this time. MSPB encourages employees to file electronically with MSPB's e-Appeal electronic filing system at https://e-appeal.mspb.gov/. Employees have a right to representation in this matter and may be represented by an attorney or other person of their choosing. MSPB requires that attorney representatives register as e-filers with MSPB and file all pleadings using MSPB's e-Appeal. If you submit an appeal to MSPB, the agency official to whom MSPB should send the Acknowledgment Order and copy of the appeal is [insert the official's name or title, physical mailing address, email address, telephone, and fax number].

**Grievance Under Collective Bargaining Agreement:** Bargaining unit employees may grieve this action in accordance with the applicable negotiated agreement [provide citation to negotiated agreement] or may appeal to MSPB in accordance with the procedures outlined above, but not both. An employee is deemed to have exercised an option when the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the negotiated grievance procedure, whichever event occurs first. Inquiries about pursuing the grievance process cannot alter the MSPB deadlines referenced above. However, the election of the negotiated grievance procedure will not prejudice the employee's right to request MSPB review of the final decision with respect to allegations of discrimination as defined in 5 U.S.C. 2302(b)(1). To obtain information on filing a grievance under the negotiated grievance procedure, contact [name of exclusive union representative].

**Discrimination Complaint:** If you believe this action involves discrimination based on race, color, religion, sex, national origin, handicapping condition, or age, you have the right to file a complaint under the provisions of 29 C.F.R. Part 1614. To do so, you must

58

contact an Equal Employment Opportunity (EEO) counselor within forty-five (45) calendar days of your receipt of this letter. For further information or assistance, you may contact [insert name, address, e-mail address, and phone number of agency's EEO contact]. Use of the pre-complaint process described in 5 C.F.R. § 1614.105 does not constitute an election, but the filing of a complaint does.

**Office of Special Counsel Complaint:** You may file a prohibited personnel action complaint to seek corrective action through the Office of Special Counsel in accordance with subchapters II and III of 5 U.S.C. chapter 12. However, your appeal rights to MSPB will be limited to protected whistleblower disclosures under 5 U.S.C. § 2302(b)(8) or retaliation for engaging in certain protected activities under 5 U.S.C. § 2302(b)(9). Visit https://osc.gov/ for more information.

Attached is the SF-8, *Notice to Federal Employee about Unemployment Insurance*. Please be aware that you may be required to repay any unemployment insurance payments once an appropriations bill is enacted and you receive pay for the period of the furlough. Additional information about unemployment insurance is available at https://www.careeronestop.org/LocalHelp/service-locator.aspx.

We recognize the difficult financial implications of any furlough, no matter how limited its length. We will make every effort to keep you informed as additional information regarding the agency funding level becomes available. If you have questions, contact [contact name, phone number, and email address].


_____        _____
Deciding Official                                          Date



I acknowledge receipt of this decision.


_____        _____
Employee's signature                                    Date


Attachment: SF-8

# Sample Notice of Furlough During Intermittent Absences and Holidays to Excepted Employee Due to a Lapse in Appropriations

[Ensure that an SF-8 is attached to this notice]

In the absence of either a Fiscal Year (FY) [state year] appropriation, or a continuing resolution for [agency name], no new financial obligations may be incurred by the Agency for functions funded through annual appropriations, except with respect to certain personnel who are otherwise authorized to continue to work.

As you are aware, as an employee who has been excepted from furlough and continued to work during the shutdown, you are required to work on those days you would normally be scheduled to work. Because of the operation of the shutdown furlough rules, however, we must place you in a furlough status for the following dates: [state applicable date(s)]. As an excepted employee, you are expected to return to work on your next regularly scheduled workday following [state date]. This means you would return to work on [state date].

This action is being taken because of a sudden emergency requiring curtailment of the agency's activities; therefore, no advance notification is possible. The customary 30-day advance notice period and opportunity to answer are suspended under the provisions of 5 CFR 752.404(d)(2). The 30 day-advance notice otherwise required by 5 CFR 359.806(a) for Senior Executive Service (SES) career appointees (other than reemployed annuitants) may be shortened or waived.

If employees are being retained in your competitive level or competitive area, they are required for orderly suspension of agency operations or they are performing one of the excepted activities defined in the OMB memorandum.

During the furlough period, you will be in a nonduty, nonpay status and you may not work at your workplace or other alternative worksite unless and until recalled. You will not be permitted to work as an unpaid volunteer. Any paid leave (annual, sick, court, etc.) approved for use during the furlough period is canceled. After the lapse ends, you will receive your "standard rate of pay" for the furlough period in accordance with 31 U.S.C. 1341(c) as soon as possible. (This means that employees who would have been in pay status but for the lapse in appropriations will receive their full regular pay for any furlough period.)

Employees who have completed a probationary or trial period or 1 year of current continuous employment in the competitive service under other than a temporary appointment may appeal this action to the Merit Systems Protection Board (MSPB). Employees in the excepted service who have veterans preference may appeal to MSPB if they have completed 1 year of current continuous service in the same or similar positions as the one they now hold. Employees in the excepted service who do not have veterans preference and who are not serving a probationary or trial period under an initial appointment pending conversion to the competitive service may appeal to MSPB if they have completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less.

Career SES appointees (except reemployed annuitants) who believe requirements of 5 CFR part 359, subpart H, or the agency's procedures have not been correctly applied may also appeal to MSPB. Career SES appointees may inspect the regulations and records pertinent to this action at the following location: [identify location and times, as appropriate].

The process to exercise your appeal, grievance, and complaint rights are set forth below. Carefully read the explanations for how to exercise your options and the effects of an election as you may elect only **one** avenue for redress.

**MSPB Appeal:** If you have the right of appeal to MSPB and wish to appeal this action to MSPB, you must file the appeal within 30 calendar days after the effective date of your furlough, or 30 days after the date of your receipt of this decision notice, whichever is later. If you wish to file an appeal, you may obtain information about the appeals process and a copy of the appeals form from the MSPB website at http://www.mspb.gov/appeals/appeals.htm. If you cannot access the internet, please notify [insert name and contact information] and a paper copy of MSPB's appeal form and regulations will be provided to you. MSPB requires an appeal to be filed with the MSPB regional or field office serving the area where your duty station was located when the action was taken. Based upon your duty station, the appropriate field office is [identify appropriate regional office]. You may wish to check MSPB's website for its operating status during this time. MSPB encourages employees to file electronically with MSPB's e-Appeal electronic filing system at https://e-appeal.mspb.gov/. Employees have a right to representation in this matter and may be represented by an attorney or other person of their choosing. MSPB requires that attorney representatives register as e-filers with MSPB and file all pleadings using MSPB's

e-Appeal. If you submit an appeal to MSPB, the agency official to whom MSPB should send the Acknowledgment Order and copy of the appeal is [insert the official's name or title, physical mailing address, email address, telephone, and fax number].

**Grievance Under Collective Bargaining Agreement:** Bargaining unit employees may grieve this action in accordance with the applicable negotiated agreement [provide citation to negotiated agreement] or may appeal to MSPB in accordance with the procedures outlined above, but not both. An employee is deemed to have exercised an option when the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the negotiated grievance procedure, whichever event occurs first. Inquiries about pursuing the grievance process cannot alter the MSPB deadlines referenced above. However, the election of the negotiated grievance procedure will not prejudice the employee's right to request MSPB review of the final decision with respect to allegations of discrimination as defined in 5 U.S.C. 2302(b)(1). To obtain information on filing a grievance under the negotiated grievance procedure, contact [name of exclusive union representative].

**Discrimination Complaint:** If you believe this action involves discrimination based on race, color, religion, sex, national origin, handicapping condition, or age, you have the right to file a complaint under the provisions of 29 C.F.R. Part 1614. To do so, you must contact an Equal Employment Opportunity (EEO) counselor within forty-five (45) calendar days of your receipt of this letter. For further information or assistance, you may contact [insert name, address, e-mail address, and phone number of agency's EEO contact]. Use of the pre-complaint process described in 5 C.F.R. § 1614.105 does not constitute an election, but the filing of a complaint does.

**Office of Special Counsel Complaint:** You may file a prohibited personnel action complaint to seek corrective action through the Office of Special Counsel in accordance with subchapters II and III of 5 U.S.C. chapter 12. However, your appeal rights to MSPB will be limited to protected whistleblower disclosures under 5 U.S.C. § 2302(b)(8) or retaliation for engaging in certain protected activities under 5 U.S.C. § 2302(b)(9). Visit https://osc.gov/ for more information.

Attached is the SF-8, *Notice to Federal Employee about Unemployment Insurance*. Please be aware that you may be required to repay any unemployment insurance payments once an appropriations bill is enacted and you receive pay for the period of the furlough. Additional information about unemployment insurance is available at

https://www.careeronestop.org/LocalHelp/service-locator.aspx.

We recognize the difficult financial implications of any furlough, no matter how limited its length. We will make every effort to keep you informed as additional information regarding the agency funding level becomes available. If you have questions, contact [contact name, phone number, and email address].

_____    _____

Deciding Official                                      Date

I acknowledge receipt of this decision.

_____    _____

Employee's signature                               Date

Attachment: SF-8

# Table of Recent Changes

(Changes made on September 28, 2025)

| Question | Change | Description |
|---|---|---|
| A.3 | New | Use of Government equipment in a shutdown furlough |
| P.6.b. | New | Probationary and trial period certifications and petitions |
| P.6.c. | New | Certifications, terminations, and petitions under 5 CFR 11.5 |
| R.1 – R.6 | New | Reductions in force |

(Changes made by Addendum dated January 29, 2024)

| Question | Change | Description |
|---|---|---|
| D.4a | New | Intermittent employees and retroactive pay |
| D.6 | Revised | Order of precedence for deductions when pay is insufficient to cover all deductions |
| D.7 | New | Amount of deductions taken from an employee's partial paycheck |
| D.8 | New | Effect on insurance and flexible spending account enrollment and coverage |
| D.9 | New | Changes to allotments previously designated by the employee |
| D.10 | New | Amount of deductions taken for allotments |
| D.11 | New | Effect on deductions for court-ordered garnishments |
| F.6 | Revised | Previously scheduled FMLA leave and 12-week entitlement |
| F.7 | Revised | Employee scheduled to take paid leave under FMLA |
| F.21 | New | Employee scheduled to take paid parental leave in substitution for unpaid FMLA leave |
| F.22 | New | Furlough time and FMLA service time eligibility requirement |

| F.23 | New | Furlough time and required weeks of work for purposes of paid parental leave |
|------|-----|------|
| F.24 | New | Effect on 12-month period following the birth or placement of a child for paid parental leave |
| F.25 | New | Effect on 12-month eligibility period for disabled veteran leave |
| F.26 | New | Advanced scheduling of annual leave for annual leave restoration purposes |
| I.1 | Revised | Unemployment compensation |
| I.2 | Revised | TSP loans during furlough |
| I.2a | New | TSP information |

| Question | Change | Description |
|----------|--------|-------------|
| M.2 | Revised | Making updates or changes to retirement benefits |
| M.3 | Revised | Reporting the death of a family member |
| M.4 | Revised | Retirement applications |
| M.6 | Revised | Submitting court order that awards a retirement benefit |
| Note to Section O | Revised | Federal workers' compensation benefits |
| Sample Notice | Revised | Notice of furlough |
| Sample Notice | Revised | Notice of furlough during holiday for excepted employee |
| Sample Notice | Revised | Notice of furlough during intermittent absences and holidays for excepted employee |

Note: This table of changes does not include minor language revisions, editorial corrections, and URL revisions.



**U.S. Office of Personnel Management**

**Workforce Policy & Innovation (WPI)**
1900 E Street NW, Washington DC 20415

OPM.gov

# Exhibit 3



# U.S. Department of Homeland Security

# Procedures Relating to a Lapse in Appropriations

September 29, 2025



# Procedures Relating to a Federal Lapse in Appropriations

# Table of Contents

Table of Contents ..................................................................................................................1

I.    Requirements and Limitations ......................................................................................3

II.   Definitions; Determinations for Exempt and Excepted Functions and Employees..........4

III.  Procedures for an Orderly Closure ...............................................................................9

IV.   Procedures in the Event of an Incident Requiring Recall ...............................................27

VI.   Appendix: Exempt/Excepted Employees .......................................................................33
       Office of the Secretary and Executive Management .......................................................34
       Management Directorate...............................................................................................35
       Office of Intelligence and Analysis ...............................................................................36
       Office of Homeland Security Situational Awareness.......................................................37
       Office of Inspector General ...........................................................................................38
       U.S. Customs and Border Protection .............................................................................39
       U.S. Immigration and Customs Enforcement .................................................................41
       Transportation Security Administration .........................................................................42
       U.S. Coast Guard ..........................................................................................................43
       U.S. Secret Service .......................................................................................................44
       Cybersecurity and Infrastructure Security Agency..........................................................45
       Federal Emergency Management Agency .......................................................................46
       U.S. Citizenship and Immigration Services.....................................................................47
       Federal Law Enforcement Training Centers.....................................................................48
       Science and Technology Directorate ..............................................................................49
       Countering Weapons of Mass Destruction Office ...........................................................50

VII.  Total Employees: On-Board vs. Exempt/Excepted ........................................................51

VIII. Appendix: Template Recall Request...............................................................................52

IX.   Appendix: Memo for DHS Employees Not in a Furlough Status ....................................54

X.    Appendix: Financial Assistance Supplemental Information.............................................58
       Table of Contents: Financial Assistance Contingency Plan .............................................59

I.    Purpose ................................................................................................................60
II.   Relationship to DHS-Wide and Government-Wide Guidance ................................60
III.  DHS Financial Assistance Policy Regarding the Issuance of General Guidance to Recipients in the Event of a Federal Funding Lapse ................................................61
IV.   Fundamental Statutory Requirements (Anti-Deficiency Act) ...............................61
V.    Imminent Funding Lapse – Identifying Financial Assistance Supporting Exempt/Excepted and Non-Exempt/Non-Excepted Functions.................................62
VI.   Lapse Staffing Plan ...............................................................................................63
VII.  Procedures for an Orderly Closure and Support Following Notification of a Lapse in Appropriations ..................................................................................................64
VIII. Actions Necessary to Mitigate the Effects of a Lapse in Appropriations ..............65
IX.   Procedures Following Reauthorization of Funds after a Funding Lapse .................66
X.    Examples of Financial Assistance Awards that may be Awarded as a New Award During a Funding Lapse........................................................................................67
XI.   Continuing or Delaying Performance of a Pre-existing Funded Financial Assistance Award during a Funding Lapse (for a non-exempt/non-excepted activity)...............69
Attachment 1 - Sample Informal Notices to Financial Assistance Recipients .............71
Attachment 2 - Example Letter Template A/Independently Funded ...........................72
Attachment 3 - Example Letter Template B/Independently Funded ...........................73
Attachment 4 - Example Letter Template/NOTICE OF TERMINATION ...................74

# I.    Requirements and Limitations

During a lapse in appropriations, also referred to a federal funding hiatus, the Department of Homeland Security (DHS) must be able to cease its government operations in an orderly fashion. Only those functions and activities that are exempt or excepted from the work restrictions specified in the Anti-Deficiency Act (ADA) may continue during a lapse in appropriations.

The ADA essentially codifies the Constitutional requirement that "No Money shall be drawn from the Treasury, but in consequence of appropriations made by Law." Federal officials are prohibited from incurring obligations, to include entering into contracts or grants, or performing activities in the absence of a currently available appropriation, unless authorized by law. The Act further restricts acceptance of voluntary services or personal services beyond authorized levels "except for emergencies involving the safety of human life or the protection of property." As a result, only activities that are exempt or qualify as excepted may continue to operate during a lapse in appropriations.

In accordance with Section 124 of Office of Management and Budget (OMB)'s 2024 Circular A-11, "Agency Operations in the Absence of Appropriations," the Department has developed the procedures outlined in this document as its contingency plan. Included, and as also specified by the A-11 guidance, is the identification of the following information:

1. An estimate, to the nearest half-day, of the time necessary to accomplish an orderly closure.
2. The total number of DHS employees on-board before implementation of the plan.
3. The total number of employees expected to be exempt or excepted from a lapse in appropriations.

Upon notification from OMB and subsequent direction from the DHS Under Secretary for Management (USM), DHS Components must adhere to the guidelines as set forth in the following pages. This includes the preparation of employee notices of furlough, the processing of personnel and pay records in connection with furlough actions, and the release of employees subject to a furlough in accordance with applicable law and regulations of the Office of Personnel Management (OPM).

Failure to maintain and adhere to these procedures may result in a violation of the ADA.

| Lapse Plan Summary Overview | |
|---|---:|
| Estimated time (to nearest half day) required to complete shutdown activities: | 5 Days |
| Total number of agency employees expected to be on board before implementation of the plan: | 271,927 |
| Total number of agency employees expected to be furloughed under the plan (unduplicated count): | 22,862 |
| **Total number of employees to be retained under the plan for each of the following categories:** | |
| Compensation is financed by a resource other than annual appropriations: | 44,466 |
| Necessary to perform activities expressly authorized by law: | 43,053 |
| Necessary to perform activities necessarily implied by law: | 154 |
| Necessary to the discharge of the President's constitutional duties and powers: | 183 |
| Necessary to protect life and property: | 161,209 |

3

| Brief summary of significant agency activities that will continue during a lapse: |
| --- |

- Activities necessary by law, the Constitution, or necessary for Safety of Human Life or Protection of Property
- Maintaining law enforcement operations, including drug interdiction and irregular migration management
- Continuing passenger processing and cargo inspection functions at ports of entry
- Providing the protective functions of the U.S. Secret Service
- Maintaining counter-terrorism watches or intelligence gathering or dissemination in support of terrorist threat warnings
- Retaining minimal personnel to maintain telecommunications necessary for excepted activities
- Disaster Relief Fund activities will continue operations
- Fee-funded activities such as those funded by the Immigration Examinations Fee Account

| Brief summary of significant agency activities that will cease during a lapse: |
| --- |

- Planning (such as strategic or business activities)
- Research and development activities
- Most policy functions, administrative, as well as programmatic, unless those functions are justified by an exception
- Auditing
- Most regulatory, legislative, public affairs, and intergovernmental affairs unless those functions are justified by an exception
- Training and development not deemed an excepted activity

# II.  Definitions; Determinations for Exempt and Excepted Functions and Furloughed Employees

## A.  Definitions

The Department uses the terms "exempt" and "excepted" to describe functions and activities that may be required to continue operating during a federal funding hiatus.  The following definitions are based on OPM's "Guidance for Shutdown Furloughs – January 2024":

Exempt: Functions and activities funded by appropriations that have neither lapsed nor been exhausted, such as unobligated carryover balances (e.g. Disaster Relief Fund) and permanent appropriations (e.g. Immigration Examinations Fee Account).

Excepted: Functions and activities funded by lapsed (e.g. annual appropriations) or exhausted appropriations which may nonetheless continue because the  function or activity by law, may continue to be performed during a lapse in appropriations. Such functions and activities include those necessary to perform emergency work involving the safety of human life or the protection of property.

Non-Exempt/Non-Excepted: Functions and activities which are funded by lapsed or exhausted appropriations and do not fit within any authorized exception, are neither exempt, nor excepted,

4

and are therefore considered "non-exempt/non-excepted." Non-exempt/non-excepted functions and activities will not continue in the event of a lapse in appropriations.

Furloughed:  A furlough is the placing of an employee in a temporary nonduty, nonpay status because of lack of work or funds, or other nondisciplinary reasons. In the event that funds are not available because of a federal funding hiatus, employees who do not perform exempt or excepted functions and activities will be furloughed.  Additionally, either an "emergency furlough" or a "federal funding hiatus" may be used to refer to a lapse in appropriations during which employees may be furloughed or may be exempt from furlough because they perform exempt or excepted functions and activities.

**Employee Status Example:**



## B.    Exempt Functions

Guidelines for exempt activities follow.  Proposals to continue activities that do not fit in the guidelines should be directed immediately to Component Counsel, and where appropriate after consulting with Component counsel, to the DHS Office of the General Counsel (OGC).

1.  Funded by Sources Other than Annual Appropriated or Exhausted Funds.

    Some functions are covered by fee revenues or by multi-year, no-year, or revolving funds (when the authority to establish the revolving fund has not expired), or advance appropriations, and if those accounts have sufficient carry-over balance, they would not be affected by a lapse of annual appropriations.  Agencies may continue to incur obligations and disburse funds from such non-lapsed funding sources where personnel paid from such sources are available to perform these functions.  Note that revolving funds that operate almost entirely on offsetting collections from other federal entities may be forced to close, unless sufficient retained earnings are available to forestall the closure. Employees paid directly from a funding source that has not lapsed during a lapse in appropriations may continue to perform normal duties and will receive pay for work performed during the lapse.

---

**EXAMPLES:**

- The Disaster Relief Fund, which is funded by a no-year appropriation and may have sufficient balances available to continue operations
- Fee-funded activities such as those funded by the Immigration Examinations Fee Account

---

See Appendix IX for additional information regarding work that may be performed by exempt and excepted employees during a lapse in appropriations.

## C.   Excepted Functions

The following activities and/or functions may continue during a lapse in appropriations even when ordinarily funded by now lapsed (e.g. annual appropriations) or exhausted appropriations:

1. <u>Authorized under Law to Continue Even without Funding.</u>

   Functions authorized by law to proceed during an appropriations lapse include "those functions as to which express statutory authority to incur obligations in advance of appropriations has been granted."

   For example, active duty military members are excepted because their entitlement to pay is provided under 37 U.S.C. § 204.  This entitlement means that DHS is authorized by law to incur obligations for their pay.  These active duty service members may perform normal duties during a lapse.

2. <u>Implied by Law as Necessary to Continue Even without Funding</u>

   Functions authorized by law to proceed during an appropriations lapse also include "those functions for which such authority arises by necessary implication."  Presidentially Appointed and Senate Confirmed Officers and other political appointees who are <u>not</u> subject to the Annual and Sick Leave Act, 5 U.S.C. § 6301, 5 C.F.R. § 630.211, are excepted from a furlough during a lapse in appropriations.  These appointees are entitled to compensation based on their status.  This entitlement means that DHS is authorized by law to incur obligations for their pay.  These appointees may perform normal duties during a lapse.

3. <u>Necessary to the Discharge of the President's Constitutional Duties and Powers.</u>

   Employees who may be detailed to the Executive Office of the White House may be excepted.

   Those who are engaged in the conduct of foreign relations essential to national security are excepted.

4. <u>Necessary for Safety of Human Life or Protection of Property.</u>

To qualify under the exception of protection of human life or property, there must be some reasonable likelihood that the safety of human life or protection of property would be compromised in some significant degree by the delay in the performance of the function in question. Specifically, the risk should be real, not hypothetical or speculative, and must be sufficiently imminent that delay is not permissible.

Any activity and/or function that qualifies for the protection of human life or property exception must be limited only to the extent that the Component Head determines that imminent danger to life or property would result from their termination or diminution. Administrative, research, or other support functions related to an excepted activity should also continue, but only to the extent that they are essential to maintain the effectiveness of those activities and/or functions that are engaged in the protection of life or property, and at a minimum level.

For example, law enforcement officers (LEOs) whose duties include protecting human life or protecting property are excepted. However, LEOs who perform administrative functions that do not directly and demonstrably contribute to such activities are not excepted unless their work is necessary to support activities that protect life or property. While law enforcement activities are excepted, the pivotal factor is the work being performed, not the law enforcement officer status of any particular employee.

---

**EXAMPLES:**

- Maintaining law enforcement operations, including drug interdiction and irregular migration management
- Continuing passenger processing and cargo inspection functions at ports of entry
- Providing the protective functions of the U.S. Secret Service
- Maintaining counter-terrorism watches or intelligence gathering or dissemination in support of terrorist threat warnings
- Retaining minimal personnel to maintain telecommunications necessary for excepted activities
  Personnel required to provide direct staff support to execution of Public Law 119-21.

---

5. <u>Necessary for the Orderly Cessation of Functions.</u>

Agencies may obligate funds during periods of lapsed appropriations to bring about the orderly cessation of non-exempt/non-excepted activities, which OMB has determined should generally take no more than four hours. During this time, employee activities must be wholly devoted to de-activating the function and upon completion, these employees would be released.

---

**EXAMPLES:**

- Performing payroll functions for the period just prior to the appropriation lapse
- Completing inventories of property and records to ensure protection of the Federal Government's interests and claims of affected private entities and individuals
- For "partially exempt or excepted" activities, the transferring of any ongoing work necessary to support an exempted or excepted function.
- Personnel functions to process furlough/reduction in force notices

---

See Appendix IX for additional information regarding work that may be performed by exempt and excepted employees during a lapse in appropriations. Appendix VI identifies the total estimated exempt and excepted employees within each DHS Component.

## D.  Non-Exempt/Non-Excepted Functions

Non-exempt/non-excepted activities are all activities that do not fall within any of the categories of exempt or excepted functions described above.  No obligations should be incurred to carry out non-exempt/non-excepted activities during a lapse in appropriations.  Employees who are neither excepted nor exempt must be furloughed during a lapse in appropriations.  This could include employees who may have to be recalled at a later date, if the furlough continues for more than a week.

---

**EXAMPLES:**

- Planning (such as strategic or business activities)
- Research and development activities
- Most policy functions, administrative, as well as programmatic, unless those functions can be justified by the above exceptions
- Auditing
- Most regulatory, legislative, public affairs, and intergovernmental affairs unless those functions can be justified by the above exceptions
- Most training and development

---

## E.  Exempt/Excepted vs. Essential Functions

Exempt and excepted functions are those which may continue to operate during an appropriations lapse.  Exempt and excepted functions and activities are described in this guidance.

Essential functions are a limited set of mission-essential or mission-critical functions that must be performed to provide Continuity Of Operations (COOP).  Each DHS Component has identified and defined its mission-essential functions separately.  The identification of essential activities is different than the determination of exempt and excepted activities.

Section IV provides additional guidance on the differences between exempt and excepted employees for the purpose of a lapse in appropriations and essential employees for the purpose of a COOP event.

## F.  Employees:  Exempt/Excepted vs. Furloughed

Exempt/Excepted employees have been designated by their supervisors to perform functions or activities that are exempt or excepted from work restrictions specified in the ADA and may continue to operate during a lapse in appropriations.  Reference to an "exempt employee" for the purpose of government shutdown is not to be confused with an employee designated as an "exempt" employee under the Fair Labor Standards Act.

8

Employees who perform non-exempt/non-excepted functions that may not continue during a lapse in appropriations will be furloughed. Employees subject to an "emergency" furlough are not permitted to work. Furloughed employees may be involved in the orderly cessation of functions. However, once it is determined that furloughed employees have completed all tasks related to the orderly cessation of functions, those employees can no longer perform work in the absence of appropriations. Furloughed employees may not voluntarily perform any work or other services during an "emergency" furlough. Doing so may violate the ADA.

## G. Designating Exempt or Excepted Employees

Components must designate in advance (before any potential furlough) those employees who must perform functions or activities that are exempt/excepted from work restrictions specified in the ADA and may continue to operate during a lapse in appropriations. DHS maintains standard notification templates, which may be used to notify employees that they are exempt or excepted and will not be required to stop working during an emergency furlough.

Excepted employees shall only work on excepted activities during the funding lapse. Excepted employees will be paid when a full-year appropriation or Continuing Resolution is enacted. Exempt employees may be paid during a lapse in appropriations because there are funds available to pay those employees.

The activities and funding of employees on detail to other Federal Government agencies and to Congressional offices must be reviewed as well to determine whether these detailed employees and activities will be designated exempt/excepted or non-exempt/non-excepted based on the function and the availability of funds. In making such a designation, the detailee's home agency supervisor should coordinate with the supervisor at the place of the detail. Similar to home agency employees, exempt/excepted detailees shall only work on exempt/excepted functions and must be included in the *U.S. Department of Homeland Security Procedures Relating to a Lapse in Appropriations Supplemental Materials* as an exempt/excepted employee. To ensure compliance with this requirement, home agency supervisors must coordinate with the supervisor at the place of the detail to determine if the exempt/excepted detailee should return to their home agency to work on exempt/excepted functions. The employee's home agency must include the detailees in their lapse plans. For example, if a Component has an employee deployed as part of the Surge Capacity Force, then that Component must include that employee on their exempt/excepted list.

# III. Procedures for an Orderly Closure

At the direction of the Secretary through the Deputy Secretary, USM is responsible for implementing the Department's general procedures for an orderly closure. The Head of each Component is responsible for ensuring that Component's compliance with the Department's procedures and should not endeavor to make changes to such procedures without advance consultation with USM.

Given that the duration of an appropriations hiatus is inherently uncertain, and consistent with OMB guidance, the plan that follows describes Departmental procedures to be taken during the commencement and the first five days of a lapse.

USM, in coordination with OGC and the Chief Financial Officer, will adjust the Department's procedures as necessary should the lapse continue beyond five calendar days.  USM will also provide direction as necessary should external factors require changes to the Department's operations, such as may be caused by a natural disaster, catastrophe, or terrorist incident.


## A. Implementation of an Emergency Furlough

1. <u>General Guidance</u>.  Upon receipt of a notice from OMB through either the Office of the Secretary or USM that there is a lapse in appropriations, Component Heads must notify their employees that an emergency shutdown furlough has been activated.

2. <u>Notices to Exempt/Excepted Employees</u>.  Components must notify their exempt/excepted employees of their status in advance of an emergency furlough.  The preferred notification process is by email.  Notification also may be by telephone, by letter, or in person, if email is not feasible.  Components may tailor this process to the degree needed to meet Component-specific requirements.  Email messages to exempt/excepted employees do not require delivery receipt, read receipt, and return email.

   Components should ensure that information on facilities, reporting officials, and systems available to employees working during a furlough is available and distributed to all of their exempt/excepted employees.

3. <u>Report for Work</u>.  Exempt and excepted employees should discuss any previously planned leave with their supervisors, to determine whether they will still be permitted to take leave or whether they will be required to work during a lapse in light of changes in coverage. Exempt and excepted employees must report for work during an emergency furlough, unless authorized to take leave by their supervisor.  An employee who refuses to report for work after being ordered to do so will be considered to be in an absence without leave status and may be subject to administrative or disciplinary action for not reporting for work.  During a lapse in appropriations, all excepted employees must be either (1) at work performing excepted activities,  (2) on documented approved leave, or (3) in a furlough status.

   If an excepted employee is unable to report for work during a furlough and the supervisor or other management official approves the absence, the supervisor may change the status of the excepted employee to a leave status or furlough the employee to allow the employee to be "absent" from work.  When an employee is not working and performing excepted activities in compliance with the ADA, he or she must either be on documented approved leave or furloughed and the furlough must be documented by a furlough notice.

4. <u>Employee Pay</u>. Excepted employees who work during a lapse in appropriations will not be paid during the lapse period if their salaries are funded through appropriations.  However, excepted employees will be paid when Congress passes and the President signs a new full-year appropriation or Continuing Resolution. Exempt employees whose salaries are funded by other than annual appropriations (i.e. fee funded) may receive pay as regularly scheduled.  Human resource organizations must also be prepared to respond in the event legislation is enacted during the lapse that permits some excepted employees such as military personnel to continue to receive pay during the lapse.

Military Pay:  Consistent with title 37 of the U.S. Code, United States Coast Guard (USCG) payroll liability accrues on a monthly basis.  Thus the pay of USCG members will depend on the timing of the appropriation lapse.

5.  <u>Employee Leave</u>.  Exempt and excepted employees (i.e. employees who are exempt from furlough by reason of being funded by other than annual appropriations) may take paid leave (e.g., annual or sick leave) during a furlough.  Under 31 U.S.C. 1341(c)(3), an *excepted* employee is permitted to use paid leave under 5 U.S.C. chapter 63 (or other applicable law, if the employee is not covered by chapter 63) during a lapse in appropriations—but payment for that leave cannot be made until after the lapse has ended.  Such use of paid leave during a lapse in appropriations is subject to the normally applicable leave request and approval procedures.  While *excepted* employees have the option of requesting paid leave during a lapse, they are not required to use paid leave to cover an absence from duty.  The default approach is to treat any authorized absence from duty during a lapse as a furlough period under 31U.S.C. 1341(c)(2) for those paid hours for which employees are absent from duty.

6.  <u>"Use or Lose" Annual Leave</u>.  Many excepted and furloughed employees may have accumulated annual leave that exceeds their applicable maximum annual leave ceiling.  (Most employees are subject to the 30-day maximum annual leave ceiling. Members of the Senior Executive Service (SES) are subject to a 90-day maximum annual leave ceiling.  Employees stationed overseas are subject to a 45-day annual leave ceiling.)  Since furloughed employees may not use annual leave during a lapse in appropriations, and since excepted employees may not be able to take leave, any unused annual leave in excess of the employee's applicable leave ceiling at the end of the leave year is subject to forfeiture.

Employees may request restoration of forfeited annual leave, if the annual leave was scheduled and approved in advance (see Component's internal procedures), later cancelled by the supervisor due to "exigencies of the public business," and the annual leave could not be rescheduled and used before the end of the leave year.  A lapse in appropriations has previously been determined by OPM/OMB to be "an exigency of the public business," and employees' forfeited annual leave can be restored.  (Also see the OPM fact sheet on "Annual Leave (General Information)" at http://www.opm.gov/oca/leave/HTML/ANNUAL.asp.)

7.  <u>Weather-Related Leave</u>.  Excepted employees are required to report for work on time even if, during a lapse in appropriations, OPM announces that "Federal agencies are operating under an unscheduled leave" policy because of emergency weather conditions.  Although "essential employees" who have been furloughed because they are not designated as exempt or excepted employees should not come to work during a weather emergency occurring in the middle of a furlough, they should be aware that their non-exempt/non-excepted designation may change to excepted based on conditions and they could be recalled from furlough and required to report for work.  Should an excepted employee be unable to report for work because of emergency conditions, including performing  duty  under an approved telework agreement, he or she must be placed in a furlough status until such time as the employee is able to report for work.

## B. Furlough of Employees Performing Non-Exempt/Non-Excepted Functions

1. <u>General Guidance</u>.  The procedures outlined as follows apply to DHS operations that are non-exempt/non-excepted during a lapse in appropriations.  They should be implemented by Component Heads upon receipt of a notice from OMB through either the Office of the Secretary or the USM.

   If a funding lapse begins at midnight on a Friday, furlough notices should be issued on Saturday to employees performing non-exempt/non-excepted functions whose next scheduled workday is on Saturday, on Sunday to employees whose next scheduled workday is on Sunday, and on Monday for employees whose next scheduled workday is on Monday. If Monday is a Federal Holiday, furlough notices should be issued on the employees' next scheduled workday.

2. <u>Employee Notices</u>.  Components must be sure to contact all employees who have not been designated as exempt or excepted, including those on detail, on travel, in training/conferences, overseas, on leave, etc.  Those employees should be provided advance notice that they are performing non-exempt/non-excepted functions that must cease in the event of a federal funding hiatus.  This can be accomplished verbally or with a "Notice to Non-Exempt/Non-Excepted Employees;" a template will be maintained and available through the Department's Office of the Chief Human Capital Officer (OCHCO).  This notice informs employees  that they are not designated as exempt or excepted in the event of a federal funding hiatus; it is not a furlough notice.  Servicing Human Resources Offices shall immediately transmit the employee notices that supervisors and managers must distribute to their employees.

   Employee furlough notices must be delivered via email or in person using the template maintained by the Department's OCHCO.  A read receipt or delivery receipt is preferred where feasible.

3. <u>Employees on Travel Performing Non-Exempt/Non-Excepted Functions</u>.  Even with approved travel orders, non-mission critical travel should not commence within three business days of the date of a potential funding lapse.  Employees who do not perform exempt or excepted functions that are planning temporary duty assignments away from their normal duty stations at the time of a lapse in funding should change their travel plans and instead should report to their permanent duty station before the effective date of the funding lapse.  Such employees should work with the Department travel management service provider to affect such changes and should be sure to terminate other reservations such as lodging or rental car.

   Employees who are not performing exempt or excepted functions that are already serving at temporary duty locations at the time of a lapse in funding may hold in place until their employing agency makes a determination that they must return to their permanent duty stations.  Components should determine the reasonableness and practicality of changes to temporary duty travel on the basis of the length of the assignment and the time required for return travel, compared to the anticipated length of the lapse, and should in general minimize the burdens and costs associated with a return to permanent duty stations.

4. <u>Notice to Federal Employees About Unemployment Insurance, Standard Form 8</u>.  It is possible that furloughed employees may become eligible for unemployment

12

compensation and Components should provide them an SF-8 at the same time the furlough letter is issued. State unemployment compensation requirements differ; some states require a one-week waiting period before an individual qualifies for payments. Agencies or employees should submit questions to the appropriate state (or District of Columbia) office. (Also see the Department of Labor website "Unemployment Compensation for Federal Employees" at http://workforcesecurity.doleta.gov/unemploy/unemcomp.asp.)

The SF-8 informs employees of their right to file a claim for Unemployment Compensation, explains the basic eligibility requirements, provides general information as to how, when, and where to file a claim, and describes the documents which the individual should take when filing a claim (20 C.F.R. Part 609.20). Components must annotate the address and Agency Code of the separating federal agency where wage and separation information can be obtained. This document may be posted to an accessible automated information-sharing site used to communicate useful and required information that would normally be attached to the furlough notice.

5. <u>Shutdown Activities</u>.  Employees who perform non-exempt/non-excepted functions may be engaged in shutdown activities during the first four hours of the first working day of a lapse in appropriations, such as:

   a.  Supervisor notifications to employees who perform non-exempt/non-excepted functions that they are furloughed
   b.  Consolidating and organizing employee notices, including email receipt/read notices and employee return emails, for forwarding to the servicing human resources office upon request
   c.  Consolidating and storing files
   d.  Safeguarding classified materials
   e.  Protecting government property
   f.  Notifying the public and other agencies of the shutdown of DHS operations
   g.  Documenting the status of projects to facilitate resumption when regular operations are resumed
   h.  Processing appropriate personnel/payroll actions and filing documentation
   i.  Setting out of office messages

6. <u>Employee Pay.</u>  Component human resource organizations should ensure all employees will receive compensation as regularly scheduled for time worked prior to the lapse. OCHCO will provide Component human resource officers with a special code for input into employee time and attendance systems (such as WebTA) to identify hours not worked because of furlough. Components must ensure such code is utilized to help prevent over-payment of compensation to furloughed employees for time worked prior to the lapse.

   Furloughed employees will receive pay for performing shutdown activities when Congress enacts a full-year appropriation or a Continuing Resolution.

7. <u>End of Furlough</u>.  Furloughed employees will be instructed to monitor the media and to regularly check the DHS website as well as passively monitor their DHS-issued electronic devices for notice on when the furlough has ended and when to return to work. (See Section I(2) for more information).

13

8. <u>Other Considerations.</u>

    a.  Component Employee Assistance Programs (EAP) are expected to continue to operate during a lapse in appropriations.  All employees – including those that are furloughed, may benefit from counseling assistance from their Component EAPs during this stressful time.  In addition, employees may want to contact their financial institutions, credit unions, or learn about other options for financial assistance through the Thrift Savings Plan (www.tsp.gov).

    b.  Regardless of whether an approved Travel Authorization has been obtained, furloughed employees may not start new travel in the event of a lapse in appropriations.

    c.  In light of the uncertainty of the budget situation during a lapse in appropriations, Components should delay the enter-on-duty date for new employees and transfer employees (transferring from another government agency) who are scheduled to enter on duty on the first day or anytime during a furlough.  Components should notify these employees that DHS is under an emergency furlough and they should NOT report for work until they receive further instructions.  New and transfer employees should be in-processed after the furlough ends.

## C. Management Controls

1. <u>General Guidance</u>.  DHS internal control standards will continue for exempt/excepted operations during a temporary federal funding hiatus.  Components with continuing operations must (if possible), modify or develop procedures to ensure adequate controls in a streamlined environment to achieve the same internal control results expected during normal operations.  This includes ensuring adequate reviewing, authorizing, and approving functions are in place.  Additionally, Components must maintain key separation of duties for important business functions such as the following:

    a.  Authorizations
    b.  Records and documenting
    c.  Custody of assets, whether directly or indirectly (e.g., receiving checks in mail)

2. <u>Record Keeping and Reporting</u>.  Special care must be taken throughout the lapse in appropriations to maintain logs, formal records, and file copies of all transactions and expenditures to provide adequate accountability and justification for exempt activities, including the costs expended for exempt activities.

At the conclusion of the hiatus, Components must be able to achieve the same reporting outputs that occur in a normal environment.  For example, at the conclusion of the hiatus, Components will process any backlog of accumulated transactions not entered into the financial system and report compliance with internal control standards.  Examples of activities and documentation includes, but is not limited to, tracking obligation data, exercising contract authority, managing revenue collection activities, and processing exempted travel processing.

Component reporting procedures will include gathering performance metrics data during the hiatus period to capture costs and savings data at the conclusion of the hiatus. Components must have procedures in place such that when appropriations become available to continue Federal Government functions, Components can report all costs incurred due to the lapse in appropriations. See Section V, Reporting of Costs Incurred.

## D. Financial Operations

1. <u>General Guidance</u>.  In the event of a temporary federal funding hiatus, DHS and its Components will stop all financial operations and financial system operations, including processing payments, receipts or performing funds control, except for the following exempt/excepted activities:

   a. U.S. Customs and Border Protection revenue collections
   b. Federal Emergency Management Agency disaster payments
   c. Organizational Program Coordinators needed to support credit card programs for exempt/excepted activities
   d. Financial operations funded by U.S. Citizenship and Immigration Services fees
   e. Electronic travel approvals and processing to support exempt activities

   Per OMB's Update to *Frequently Asked Questions during a Lapse in Appropriations*, attached to *OMB Memorandum M-18-05*, updated January 22, 2019, excepted/exempt employees can also carry out activities necessary to process and make payments to liquidate funded obligations. Funded obligations are those that are properly chargeable either to expired funds available in a lapsed account that were obligated prior to that account lapsing, or a currently available, non-lapsed funding source (e.g., fee revenue or carryover balances in a multi-year or no-year account). NOTE: Funded obligations <u>do not</u> include obligations incurred against lapsed accounts to carry out an excepted function (e.g. contracts necessary to carry out activities necessary for safety of life and protection of property in the absence of an appropriation). <u>No payments may be made to liquidate any obligation that has been incurred in the absence of appropriations</u>. If you have questions or concerns about whether an obligation qualifies as a funded obligation, please consult your component counsel.

   Whether DHS will incur interest due to delays in making payments caused by the funding lapse does not provide a justification to make payments.

2. <u>Accounting Center Operations</u>.  Accounting centers will not run funds availability checks during a hiatus.  Therefore, Components must keep a clear accounting record so that the accounting center may process complete transactions into the financial systems when normal operations resume.

3. <u>Documentation and Reporting</u>.  Ensuring proper documentation and internal controls when conducting financial operations during a federal funding hiatus is mandatory. Components must maintain and control documentation of all transactions initiated and processed during a temporary federal funding hiatus.  When the hiatus is over, Components must be able to account for all activities and meet reporting requirements just as under normal operations.  In addition, Components must collect performance and cost data which can be analyzed for the purposes of determining the impact of a hiatus. Components will provide specific instructions on what data to collect.

15

4. <u>Travel Management</u>.  Minimum travel management support will be available to support exempt/excepted functions.  Travel expense reports will not be processed during a lapse in funding, and reimbursements for travel costs will not be made until the lapse has ended.  Each traveler with an individually billed account is still responsible for the timely payment of their travel card balance.

5. <u>Bank Card Program</u>.  Purchase cards, travel cards, and fleet cards will still be available to fund exempt/excepted activities.  Component Organization Program Coordinators (OPCs) will consider a reduction in spending limits for furloughed cardholders to one dollar for the duration of the furlough.  Each Component will provide support to cardholders for exempt/excepted activities through designated OPCs.  Each Component will provide guidance and specific points of contact to its employees.

   Funding that is available pursuant to a continuing resolution that is credited to a debit card may not be used to procure goods and services during a lapse in appropriations following the expiration of the continuing resolution (CR).  To be certain, this determination does not apply to funds credited to debit cards from other sources of budget authority that remain available for obligation, such as no-year funds derived from fees.

6. <u>Reimbursements</u>.  Reimbursements generally cannot be processed for activities for which DHS Components receive reimbursements from other than annual appropriations (e.g. multi-year or no-year funds) if the servicing Component's activities are funded from a lapsed appropriation.  Because the servicing Component's appropriation is lapsed, there is no account to reimburse until after a full year appropriation or a continuing resolution has been enacted.

7. <u>Transit Benefits</u>.  Each component administers and manages transit subsidy benefit programs differently.  Components affected by the lapse in appropriations should attempt to ensure, where feasible, that there is sufficient funding available through the lapse period for excepted/exempt employees enrolled in transit benefit programs.  The amount of funding provided for the transit benefit is at the discretion of the component.

E.  Contracting

1. <u>General Guidance.</u>  The "Department of Homeland Security Contracting Contingency Plan" shall be maintained and, prior to a lapse in appropriations, distributed to the Heads of the Contracting Activities (HCAs) with a list of frequently asked questions through an Acquisition Alert.  HCAs must work with their Component Heads to proactively survey and identify contracts that, in whole or in part, support activities that will continue to support exempt (See II.B) and excepted (II.C) functions.  This will serve two major purposes for DHS contracting activities:

   a. To identify and maintain a list of contracts for which Stop Work Orders or Partial Terminations for the Convenience of the Government should be issued to contractors, and to allow Contracting Officers sufficient lead time to prepare

modifications to de-scope contracts and prepare any necessary justifications and other supporting documentation for contracts that will be partially terminated.

    b. To allow HCAs to determine an effective distribution of warranted Contracting Officers to support an orderly shutdown and the management of contracts supporting exempted functions.

2. <u>No New Obligations</u>. DHS may not incur a new obligation by signing a new contract, by extending a contract, or by exercising an option when the funding source for that obligation is a lapsed appropriation unless the contract is required to support those functions defined as excepted for DHS, such as safeguarding human life or protecting property.

    a. The ADA prohibits agencies from incurring obligations that are in advance of, or that exceed, an appropriation. Thus, except in limited circumstances, DHS may not incur obligations when the funding source for the obligation would be an appropriation that has lapsed unless the obligation is needed to support those functions defined as excepted for DHS. Even when a contract, order, agreement or other transaction may be awarded or modified in order to preserve life or safeguard property, DHS cannot pay the contractor until appropriations are enacted.

    b. In addition to those contracts directly supporting exempt or excepted functions, many contracts are fully funded. Contractors performing under a fully funded contract may continue to perform unless government oversight, day-to-day interaction with furloughed government employees, or access to government facilities which have been shutdown, is critical to the contractor's continued performance during that period.

3. <u>Federal Employees Supporting Contracting Operations.</u> If there is a lapse in the appropriation that funds the federal employees who supervise or support the performance of a contract, those federal employees cannot continue these activities during the funding lapse unless the contract supports an excepted activity. Routine ongoing activities related to contract administration are not authorized to continue when there has been a lapse in the appropriation that funds the contract administration activities. In other words, during a federal funding hiatus the performance by contracting officers, contracting officer technical representatives and contract administration personnel of routine oversight, inspection, accounting, administration, payment processing and other contracting activity would generally not continue, when there has been a lapse in the appropriation that funds these employees.

    a. In the absence of federal oversight, DHS may, however, allow the contractor to continue performance during the lapse period if the continued oversight is not critical to the contractor's continued performance during that period. This is the case, for example, for all firm fixed price contracts and orders that are fully funded at the time of award. DHS does not have to issue an affirmative direction to the contractor to continue performance. Instead, the contractor continues to perform work in accordance with the contract. However, it is always prudent to communicate with the contractor to avoid potential misunderstandings.

b. Depending on the duration of a funding lapse, the absence of available federal employee oversight may lead DHS to reconsider whether the contract activity should continue to be performed.  In particular, if the continued oversight during the lapse period is critical to the contractor's continued performance during that period then – where consistent with law and the terms of the contract  – DHS should instruct the contractor to suspend performance.

c. Additionally, if continued performance is not statutorily required, then DHS should consider whether having the contracting activity continue is a sensible use of taxpayer funds in light of the lapse of appropriations.  In this regard, there may be situations in which the continued performance of a contract would be wasteful due to the impact that the funding lapse is having on other agency activities.

For example, it may be wasteful to have a contractor perform regular trash collection every day in the offices of a federal building that has closed due to the funding lapse.  Should the relevant Component head decide that continued performance would be wasteful and thus should be suspended during the funding lapse, appropriate contractual action should be taken (which would be part of the agency's orderly-shutdown activities).  Contracting staff will need to work closely with Component procurement counsel in making and implementing these decisions to minimize costs to the Federal Government.

## F. Grants and Other Forms of Financial Assistance

1. General Guidance.  The "Department of Homeland Security Financial Assistance Contingency Plan" shall be maintained and, prior to a lapse in appropriations, distributed to the Heads of the Financial Assistance Activities with a list of frequently asked questions through a Grant Alert.  Heads of the Financial Assistance Activities must work with their Component Heads to proactively survey and identify grants or other forms of financial assistance that, in whole or in part, fund activities that will continue to support exempt or excepted functions.  This will serve two major purposes for DHS financial assistance activities:

   a. To identify and maintain a list of grants and other forms of financial assistance that may be awarded during a federal funding hiatus.

   b. To allow Heads of the Financial Assistance Activity to determine an effective distribution of Financial Assistance/Grant Officers to support an orderly shutdown and the management of grants and other forms of financial assistance supporting exempt or excepted  functions.

2. No New Obligations.  DHS may not incur a new obligation by signing a new grant or other form of financial assistance, by extending a grant or other form of financial assistance, or by exercising an option when the funding source for that obligation is a lapsed appropriation, unless the obligation is required to support those functions defined as excepted for DHS, such as safeguarding human life or protecting property.

   a. The ADA prohibits agencies from incurring obligations that are in advance of, or that exceed, an appropriation. Except in limited circumstances, DHS may not

incur obligations when the funding source for the obligation would be an appropriation that has lapsed, unless the obligation is needed to support those functions defined as excepted for DHS. Even when a grant or other form of financial assistance may be awarded or modified in support of an excepted function, such as in order to protect human life or property, DHS cannot pay the awardee until appropriations are enacted that provide the necessary funding.

    b.  In addition to those grants or other forms of financial assistance directly supporting exempt or excepted functions, grant awards or option periods for continuation awards that have already been awarded are fully funded. Those awardees may continue to perform. In certain cases, existing grants and cooperative agreements require prior approvals or coordination with furloughed government employees. In cases where the terms of the grant or cooperative agreement require prior approvals or coordination before the awardee proceeds, furloughed employees will not be available to provide the required approvals or coordination. In those cases, the awardees' work must cease per the terms of the award until the required approvals can be obtained or the required coordination can take place.

3.  <u>Federal Employees Supporting Financial Assistance Operations.</u>  If there is a lapse in the appropriation that funds the federal employees who supervise or support the performance of a financial assistance program, those federal employees cannot continue these activities during the funding lapse, unless these grants or other forms of financial assistance are necessary to support an excepted activity. Routine ongoing activities, related to a grant or other form of financial assistance administration, are not authorized to continue when there has been a lapse in the appropriation that funds the award administration activities. In other words, during a federal funding hiatus, the performance by financial assistance/grant officers, program officials, and financial assistance administration personnel of routine oversight, monitoring, accounting, administration, payment processing, and other financial assistance activity would generally not continue when there has been a lapse in the appropriation that funds these employees. See General Guidance under section III.D.1.

    a.  In the absence of federal oversight, DHS may, however, allow the awardee to continue performance during the lapse period if the continued oversight is not critical to the awardee's continued performance during that period. This is the case, for example, for all existing financial assistance awards that are fully funded at inception. DHS does not have to issue an affirmative direction to the awardee to continue performance. Instead, the awardee continues to perform work in accordance with the grant or other form of financial assistance. However, it is always prudent to communicate with the awardee to avoid potential misunderstandings.

    b.  Depending on the duration of a funding lapse, the absence of available federal employee oversight may make continued performance by the awardee of a grant or other financial assistance award practically impossible, depending on the terms of the award. In particular, if the continued oversight, during the lapse period, is required by the terms of the award to permit the awardee to perform, then performance must cease. For awards where this is likely to be the case, e.g. those that require prior approvals for certain activities or cooperative agreements that

19

have required coordination with DHS, DHS should remind awardees of these requirements and advise them that they must not perform work without receiving the approvals required by the terms of their awards.

Financial Assistance staff will need to work closely with Component general counsel in making and implementing these decisions to minimize costs and liability to the Federal Government. See Appendix X for additional information regarding specialized guidance to DHS financial assistance organizations prior to, during, and after a lapse in appropriations.

G.  Use of DHS Facilities

1.  <u>General Guidance.</u>  Procedures outlined below provide guidance on the management and disposition of DHS facilities and assets during a lapse in appropriations.  They should be implemented by Component Heads upon receipt of orders from OMB through either the Office of the Secretary or USM.

    a.  Component Heads shall notify the senior real property official to direct real property management personnel to oversee the temporary closure of non-exempt/non-excepted facilities, coordinate and support staff consolidation, and to supervise the establishment of designated facilities for use in support of exempt/excepted functions.

    b.  A federal funding hiatus plan shall be implemented to provide notification and details for appropriate use of facilities.  It should be distributed to the relevant workforces and should include the identification and contact information of real property Points of Contacts (POCs) for operations during and following a lapse in appropriations.  The real property POCs should be designated staff who have the lead responsibility for facility shutdown and start-up operations.

2.  <u>Facilities Occupied with Exempt/Excepted Functions.</u>

    a.  Consolidation – Consolidate exempt/excepted functions in the absolute minimum space needed to maintain exempt/excepted operations.

    b.  Building Operations – Maintain minimum operations to support exempted/excepted functions.

    c.  Security – Maintain physical security for exempted/excepted facilities including monitoring facilities as appropriate.  The Headquarters (HQ) Office of the Chief Security Officer (OCSO) will maintain essential security support and services to DHS HQ's facilities and personnel, as well as appropriate and required service to DHS Components.  Collateral and Sensitive Compartmented Information security support to HQs and Components through the Special Security Office Program and Sensitive Compartmented Information Facilities support will continue.  This includes working closely with the Federal Protective Service to ensure HQ facilities and exempt/excepted personnel are protected.

      d.  General Services Administration (GSA) Notice – Provide notification to GSA Building Management Representative of exempt/excepted activities that will continue normal operations in GSA controlled space.

3.  <u>Facilities Occupied with Non-Exempt/Non-Excepted Functions.</u>

      a.  Discontinue use – Ensure facilities are vacated.  For DHS-owned facilities, ensure essential shutdown and start-up procedures have been defined for the impacted assets, and notifications given to service providers for major systems such as elevators, electrical, mechanical, water and sewer supply, and security.

      b.  Building Operations – Reduce operating systems to minimal requirements needed to ensure asset protection and maintain asset safety measures.  For DHS-owned facilities, utilities should be set to weekend settings, and building systems should be placed in sleep mode/weekend service levels-lowered to minimum levels needed to maintain life, safety and security systems.  Confirm emergency back-up systems are operational.

      c.  Security – Maintain physical security monitoring.  The DHS OCSO will maintain essential security support and services to DHS HQ facilities and personnel as needed.  Non-exempt/non-excepted facilities will be secured and card readers deactivated as needed. This includes working closely with the Federal Protective Service to ensure HQ facilities and exempt/excepted personnel are protected.

      d.  Notifications – Provide notification to GSA Building Management Representative of vacated non-exempt/non-excepted facilities leased by GSA to DHS, and similarly to other lessors if applicable.  For DHS-owned facilities, develop a list of external notifications for use at time of a lapse in appropriations, such as monitoring companies, local safety and security offices, and mail operations.

4.  <u>Mail Operations.</u> – Operational considerations for the Mail Surety exempt/excepted functions are based on assumptions that the primary mail delivery vendors, United Parcel Service (UPS), FedEx, and the United States Postal Service (USPS) will continue to process some level of mail for DHS and its Components.

      a.  In the event of a lapse in appropriations, Components shall determine how to accommodate existing mail surety services for operational functions.  Service levels and arrangements may vary from location to location but should utilize minimum staffing levels.  Designated points of contacts shall be responsible for receiving items identified as registered, sensitive, medical-related, and items requiring refrigeration.

      b.  Mail delivery:  The DHS Consolidated Remote Delivery Site will deliver mail to the designated DHS exempt/excepted facility locations.  The DHS Office of the Chief Readiness Support Officer (OCRSO) in coordination with the DHS OCHCO and the DHS OCSO will provide a list of exempt/excepted personnel during a lapse in appropriations.

5.  <u>Transportation Shuttle Service Operations for Exempt/Excepted Employees.</u>

a. The DHS Shuttle service will continue operations and is available to DHS exempt/excepted employees utilizing the OCRSO HQ shuttle service activity.

b. Shuttle Service support to U.S. Coast Guard, the Federal Emergency Management Agency and the Transportation Security Administration will operate at normal schedules due to limited access to public transportation.

c. Limited shuttle services will be available for the DHS HQ components within the National Capital region (NCR) and the OCRSO will distribute guidance based on exempt functions at specific locations in the NCR.

## H. Use of Mobile Assets and Personal Property

1. <u>Exempt/Excepted Functions</u>.  The guidance provided below regarding DHS Mobile Assets (Fleet, Air, and Marine) and Personal Property functions is intended to reaffirm the continuance of only those functions which are required for exempt/excepted activities.  Component managers responsible for the control, maintenance, and operational readiness of critical assets necessary for the continuance of exempted/excepted activities must take the following actions:

   a. Determine the bare minimum number of support personnel necessary.
   b. Consolidate equipment, operations, and supporting facilities.
   c. Ensure that only the minimum amount of recordkeeping necessary to document the expenditure of funds and disposition of assets.
   d. Acquire only the minimum amount of parts and supplies necessary for continued operation of critical assets.
   e. Secure all property not used for critical activities in a manner that protects the asset and ensures its immediate availability upon reactivation.
   f. Discontinue all contractor support not directly associated with the maintenance of critical assets.
   g. Discontinue the acquisition of new or replacement assets unless the new or replacement asset is critical to the execution of an exempt/excepted activity and cannot be sourced from idle assets within the immediate inventory or located within the organization's or Department's regional inventory.
   h. Utilize shared mobile assets and personal property resources within the Component, Department, and where possible through inter-agency means.

2. <u>Non-Exempt/Non-Excepted Functions</u>.  Maintenance and support activities and personnel whose absence would not cause an unacceptable interruption in the execution of exempted/excepted activities outlined by DHS HQ include:

   a. Air, marine, and fleet assets used for training or administrative functions.
   b. Operations and maintenance activities necessary to support training or administrative functions.
   c. Home-to-Work Transportation not in direct support of exempted/excepted functions (emergency response on a 24×7 basis).
   d. Department and Component management activities which do not directly support exempted/excepted activities.
   e. Recurring inventory for the sole purpose of property accountability;

f. Record keeping including reporting (field level, Component, Component HQ, or DHS HQ).

g. Acquisition and procurement functions (excluding parts and supplies otherwise mentioned in this guidance).

h. Planning.

i. Work order management not associated with the continuance of maintenance activities associated with critical assets.

j. Oversight, audit, and assessment not essential to the mitigation of fraud, waste, and abuse during the lapse in appropriations.

## I. Use of Information Technology (IT) Equipment

1. <u>Exempt/Excepted Functions</u>. DHS exempt/excepted personnel performing exempt/excepted functions may continue to use their DHS-issued information technology resources including portable communication devices, computer software and hardware equipment without restrictions, except that some personnel may need to utilize temporary equipment at consolidated locations.

2. <u>Non-Exempt/Non-Excepted Functions</u>. Once OMB notifies DHS that a lapse in appropriations has commenced, employees who perform non-exempt/non-excepted functions may use their DHS-issued electronic devices, to receive furlough notices, acknowledge delivery receipt and read receipt of furlough notices, and acknowledge receipt of notices via return email.

   During a hiatus, furloughed personnel may continue to retain and passively monitor their DHS-issued electronic devices for status updates and emergency notifications from their supervisors or other management officials; however, employees are prohibited from using this equipment for any other purposes (e.g., employees may only use their DHS electronic devices for one-way communication to monitor the status of the furlough, which is strictly an option (employees are not on standby duty). Failure to follow this policy may result in a violation of law, specifically the ADA, which has a criminal component, and may result in severe penalties.

3. <u>Internet Services and DHS Network Access</u>. The Department and Component public websites will remain accessible, but will not be maintained or updated, except to the extent necessary to provide information, where in the absence of providing such information, there is a reasonable likelihood of imminent compromise in some significant degree to human lives or property. The DHS network will remain accessible to support exempt and excepted functions.

## J. Onboarding New Employees

1. <u>Exempt Positions</u>. If a new employee to DHS who is being appointed to a Federal position for the first time, or is transferring to DHS from another exempt position, is being appointed to an exempt position within a DHS Component, the employee may be onboarded during a lapse in appropriation provided that the personnel needed to complete the onboarding process are also exempt. If the personnel needed to complete the onboarding process are normally furloughed, the employee's onboarding process should

be delayed until congress enacts an appropriation or continuing resolution. If the personnel needed to complete the onboarding process are furloughed, Components can apply the process for "Emergency Excepted Positions" to continue the onboarding process.

If an employee is transferring to an exempt position within DHS from an excepted or non-exempt/non-excepted position in another Agency that is also subject to a lapse in appropriation, the employee's transfer to a DHS position should be delayed until congress enacts an appropriation or continuing resolution to the losing Agency.

2. <u>Excepted and Non-Exempt/Non-Excepted Positions</u>. If a newly appointed employee or a current Federal employee who is transferring to DHS to an excepted or non-exempt/non-excepted position, the employee's appointment and onboarding process with DHS should be delayed until congress enacts an appropriation or continuing resolution for DHS (and the losing agency as applicable).

3. <u>Emergency Excepted Positions</u>.[1] When a Component is funded by an appropriation that has lapsed, the onboarding of new employees to excepted positions should be delayed until funding is restored. However, new employees may be onboarded during a lapse to excepted positions in emergency situations. An emergency situation occurs when: (1) there is a "reasonable and articulable connection between the function to be performed and the safety of human life or the protection of property"; and (2) there is a "reasonable likelihood that the safety of human life or the protection of property would be compromised, in some significant degree, by delay in the performance of the function in question."[2] The threat to human life or protection of property must be "imminent" and the employee is needed to "immediately" respond to that threat.[3]

Components who need to onboard new employees to excepted positions during a lapse in appropriation that meets this criterion must have a process to identify such scenarios, document the requirement to onboard new employees during a lapse in appropriation, and approve such requests on a case-by-case basis. For DHS headquarters support Components, the Under Secretary for Management (USM) approves such "emergency" onboarding requests. DHS Component heads must designate an official who will approve "emergency" onboarding requests within their respective Components.

Support personnel necessary to onboard a new employee (i.e., human resources staff, IT support staff, etc.) generally perform non-exempt/non-excepted work, and will be furloughed during a lapse in appropriation. If a new employee to an excepted position in an "emergency" is approved to be onboarded during a lapse in appropriation, the minimum necessary support personnel (i.e., human resources staff, IT support staff, etc.) may be recalled for the minimum amount of time necessary to complete the onboarding process.

---

[1] See OMB Bulletin 80-14, Shutdown of Agency Operations Upon Failure by the Congress to Enact Appropriations, (August 28, 1980); OMB Memorandum, Agency Operations in the Absence of Appropriations, (November 17, 1981); and OMB Bulletin M-95-18, Agency Plans for Operations During Funding Hiatus (August 22, 1995).
[2] See OMB Bulletin M-95-18, Agency Plans for Operations During Funding Hiatus (August 22, 1995).
[3] See OMB Bulletin M-95-18, Agency Plans for Operations During Funding Hiatus (August 22, 1995).

If the support personnel necessary to onboard a new employee to an exempt position are normally furloughed, the onboarding process should generally be delayed until congress enacts an appropriation or continuing resolution. However, the appropriate DHS official (the USM for DHS headquarters support Components or the designated official for DHS Components) can make a determination that the potential new employee will be performing "emergency" work. In such circumstances, the minimum necessary support personnel (i.e., human resources staff, IT support staff, etc.) may be recalled for the minimum amount of time necessary to complete the onboarding process.

## K. Training Functions

1. <u>New Hire Training</u>. The training of newly hired employees, including those in law enforcement, is generally not permissible unless such training and related support activities are funded by other than annual appropriations or is necessary to continue carrying out an excepted activity. Upon a funding lapse, such training functions and associated facilities should proceed with an orderly closure, unless exempt/excepted. Please note that the mere fact that the new hires at issue have been hired to perform excepted functions necessary for the safety of human life or protection of property (e.g. law enforcement) is not, without more justification, sufficient to qualify such new hire training as excepted.

   If DHS Components, or other Partner Organizations (PO), have employees receiving, or scheduled to receive, new hire training at the Federal Law Enforcement Training Centers (FLETC) during a lapse in appropriations, the Components, or PO, must coordinate with FLETC. Specifically, DHS Components, and POs, must, in coordination with FLETC, ensure that any required FLETC personnel and the justification that the training is necessary to continue a function excepted because it is necessary for the safety of human life or protection of property, are included in the FLETC lapse plan. Justification should clearly articulate the connection between the training function to be performed and the safety of human life or the protection of property, in addition to the reasonable likelihood that the safety of human life of protection of property would be compromised in some significant degree by a delay in the performance of the training function. Coordinating any such justification with your Component Chief Counsel and CFO is required.

2. <u>Skills Training</u>. Training necessary to maintain specific perishable skills associated with excepted law enforcement functions is excepted. Such activities may include training of canine units, Federal Air Marshals marksmanship training, and Secret Service presidential protection exercises.

   General skills training, including such activities provided by the Federal Law Enforcement Training Centers (FLETC), is generally not excepted, although may be exempt where funded by other than annual appropriations. Trainees who are on temporary duty assignment and receiving training at a DHS Component training facility that are furloughed because they are performing a non-exempt/non-excepted function may hold in place until their employing agency makes a determination that they must return to their permanent duty stations, if a federal funding hiatus occurs and only extends for a short period of time (one to two days). Should the determination be made that a federal funding hiatus will continue for an extended period of time, the trainees

should return to their permanent duty station, the planned training should be rescheduled, and the training facility should proceed with an orderly cessation of that training.

Similar to new hire training, if DHS Components, or POs, have employees receiving, or scheduled to receive, skills training at FLETC during a lapse in appropriations, the Components, or PO, must coordinate with FLETC. Specifically, DHS Components, and POs, must, in coordination with FLETC, ensure that any required FLETC personnel and the justification that the training is necessary to continue a function excepted because it is necessary for the safety of human life or protection of property, are included in the FLETC lapse plan. Justification should clearly articulate the connection between the training function to be performed and the safety of human life or the protection of property, in addition to the reasonable likelihood that the safety of human life of protection of property would be compromised in some significant degree by a delay in the performance of the training function. Coordinating any such justification with your Component Chief Counsel and CFO is required.

## L.  Travel Guidance

1. Excepted personnel may travel during a funding lapse only when necessary for excepted activities, such as when necessary for safety of human life or protection of property.  The heads of the Components must approve domestic temporary duty (TDY) travel by their employees for excepted activities in consultation with their chief counsel and chief financial officer (CFO). The guidance does not limit the ability of the Component head to delegate that authority.  As such, if a Component head wishes to delegate approval of domestic travel for Component personnel during a lapse, they may delegate to the CFO or the Deputy CFO in accordance with existing Component delegation procedures. The delegation must be documented. Travel within 50 miles of the employee's official duty station, commonly known as local travel, may be approved per ordinary procedures and does not require component head approval. Any such travel conducted must be limited in duration and performed only when absolutely necessary with no alternative means of carrying out the excepted activity.  Examples of excepted activities for which travel may be taken include travel necessary for:

   - ongoing litigation in Federal court for which a stay has not been issued
   - participation in the Department's security coordination efforts at a Level 1 SEAR event
   - travel related to the conduct of foreign relations

2. Exempt employees whose domestic travel is funded by other than annual appropriations may continue to travel during a general funding lapse.  Travel of exempt employees, which is funded by other than annual appropriations will be approved using the ordinary travel approval process.  Components heads should limit travel funded by other than annual appropriations, where appropriate (i.e. where activities are funded by finite carryover balances as opposed to a permanent, indefinite appropriation), to ensure that non-lapsed funds are not exhausted and remain available, to the extent possible, to carry out operations until the funding lapse ends.

All international travel during a federal funding hiatus, to include travel necessary to carry out exempt/excepted functions, is strongly discouraged.  With the exception of Non-Foreign area

travel that may be approved by Component heads, as discussed below, international travel requires written approval by the USM in advance of incurring any costs related to the travel. International travel is defined as travel Outside the Contiguous United States (OCONUS). It also includes Non-Foreign area travel to Alaska, Hawaii, Puerto Rico, Guam, and other U.S. territories. For Components which may have identifiable categories of international travel that are necessary for the conduct of excepted or exempt functions,  Components heads may submit a request, cleared by the Component CFO and Chief Counsel, to the USM for approval of these categories of travel.  Component heads may approve Non-Foreign area travel to Alaska, Hawaii, Puerto Rico, Guam, and other U.S. territories that is necessary to carry out excepted functions. Additionally, FEMA travel to Alaska, Hawaii, Puerto Rico, and U.S. Territories funded by the non-lapsing Disaster Relief Fund is exempt from the DHS USM approval requirement.  All international travel by Component heads, including Non-Foreign area travel, must be approved by DHS USM.

# IV.  Procedures in the Event of an Incident Requiring Recall

## A.  Essential Employees.

An emergency situation may arise for which federal assistance is needed to supplement State and local efforts and capabilities to save human lives and to protect property and public health and safety, or to lessen or avert the threat of a catastrophe in any part of the United States.  Such emergency situations may require certain DHS essential employees to report for work.  Essential employees generally are employees in jobs that are vital to public health, safety, welfare, and national defense, front line law enforcement, or the operation of essential facilities and functions.

Although some employees identified as "essential" will likely be determined to be "excepted employees," many will not since they do not perform functions or activities that are "excepted" from work restrictions specified in the ADA – e.g., functions/activities that are necessary for the safety of human life or protection of property.

The categories of "essential personnel" within DHS are as follows:

1. Mission Critical Personnel.  Those employees occupying positions and performing functions that must be maintained under all circumstances to ensure the safety and security of the Nation and its citizens.  The critical nature of these positions is inherent in the position description (e.g., securing the Nation's borders, protecting the Nation's transportation system, etc.).  These employees must report for duty regardless of the emergency or operating status.   Employees whose work is critical to the ability of DHS to perform its national or homeland security mission.

2. COOP Personnel.   Personnel occupying positions identified to sustain an organization's primary mission essential functions (PMEFs) and mission essential functions (MEFs). These personnel:

   a.  May conduct these activities at an alternate site, virtually or through the observance of an alternate work schedule.

27

b. Are expected to initiate and remain in contact with their Component during an emergency to maintain continuity of operations (COOP).
c. Are Emergency Relocation Group (ERG) members and alternate ERG members.

3. <u>Contingency/Incident Personnel</u>. Employees who are in positions identified for possible activation, as needed, depending on the emergency, including:

a. Personnel designated in positions that ensure three-deep backup to mission critical or emergency personnel.
b. Subject Matter Experts (SMEs).
c. Personnel in positions pre-identified as part of a Crisis Action Team, and other operational teams established in response to a specific incident or situation.
d. Federal Emergency Response Officials.
e. Reconstitution Personnel in positions identified as Reconstitution Staff.
f. Personnel in positions identified as Devolution Staff.
g. Persons in positions identified in an order of succession.
h. Given that the duration of a lapse in appropriations is inherently uncertain, additional personnel may be subject to recall should a lapse in appropriations extend for a prolonged period of time. Components must identify personnel required for a shutdown lasting 5 days or less and identify additional personnel for a prolonged shutdown lasting longer than 5 days.

4. <u>Emergency Personnel</u>. Employees who are assigned to positions required to sustain a facility or function in the event of a localized situation, such as inclement weather or a dismissal or closure of DHS operations or services. These employees will be expected to work even when DHS applies dismissal or closure procedures. Because of the diversity in Component missions, employee occupations/skills, nature of the emergency, geographic location, and other factors, the designation of emergency personnel will be the responsibility of the Component Heads. It is advised that Component Heads designate, in advance of an emergency, those personnel that provide operational support or perform support functions (including security and maintaining infrastructure) which must continue following the release/non-reporting requirements of other personnel.

5. <u>Exempt/Excepted Employees</u>: Employees who have been designated by their supervisors to perform functions or activities that are exempt/excepted from work restrictions specified in the ADA and may continue to operate during a lapse in appropriations. See Section II of this Plan (*Procedures Relating to a Lapse in appropriations*) for definitions of DHS exempt/excepted functions and employees.

Management Directive 250-05, Designation of Essential and Exempt Personnel, and its associated instructions provide further guidance. Please note that Management Directive 250-05, consistent with prior versions of the DHS Procedures related to a Lapse in Appropriations, uses the term "exempt" to describe both "excepted" and "exempt" employees. The nomenclature adopted by the current version of these procedures is intended to clarify, but not substantively change, the description and designations of covered personnel.

## B. Recall of Furloughed Employees

During a furlough, a situation may arise under which an office or Component may need to recall a furloughed employee to carry out an excepted function. Such situations could include (1) an

unplanned or unexpected project or activity that qualifies as an excepted function; (2) a determination that existing excepted functions require additional personnel; or (3) a need to replace an excepted employee who is unable to work.

In such a situation, DHS may recall from furlough the <u>minimum</u> number of employees required to effectively respond to a specific project.  If recalled to work on a specific excepted project, such an employee may work only on that project.

Each Component must designate a Senior Executive Service employee or Flag Officer, who is already designated as an exempt/excepted employee, to serve as its Recall Approval Official. This individual will have the authority, in consultation with Component OCFO and counsel, to either approve or deny requests for temporary or permanent recalls where the recall is to a) recall an individual to replace an excepted individual who must now be furloughed (i.e. one-for-one), b) recall an additional individual in support of a function listed as excepted in the Component's lapse plan, because the volume of excepted work necessitates an additional individual to perform the excepted function, or c) recall an individual to perform a function listed as "Potentially Excepted in the Event of an Incident or Credible Threat," in the event of an incident or credible threat. Although the Recall Approval Official may approve these three categories of recall requests, the components must notify the USM and DHS OCFO of the recall via a completed Recall Request Memo. The memo should be submitted to DHS OCFO which will coordinate with USM.  A template for the Recall Request Memo can be found in Appendix XIII.

If a component wants to recall an employee whose recall function is not identified as an excepted or potentially excepted function in the plan, the component must submit a Recall Request Memo to USM, who will serve as the approving official.  Recall Request Memos will be submitted to DHS OCFO and must be cleared by DHS OGC before being routed to USM for consideration.

In all cases, the servicing human resources office should be informed.

The specific procedures for both component approvals and USM approvals are as follows:

1. Components must complete a Recall Request Memo and have it signed by the Recall Approval Official. Details on what the Recall Request Memo must include are located just below and a template can be found in appendix VIII. This Recall Request Memo must include a signed certification from the Recall Approval Official that the planned recall has been reviewed and approved by component counsel and the component CFO. Applicable counsel and CFO should be cc'd on the submission to DHS OCFO for transmittal to USM, whether it's being submitted as notice or for approval.

2. For DHS HQ only, prior to recall of one or more DHS HQ personnel, the head of that Office must provide to DHS OCFO for review a Recall Request Memo which must include a signed certification that the recall is needed and that the planned recall has been reviewed by any applicable division counsel. DHS OCFO will coordinate with and seek clearance from DHS OGC and USM shall serve as the Recall Approval Official for headquarters offices and make a determination of either approval or disapproval of the proposed recall.

3. Recall Requests requiring USM approval, should be submitted to DHS OCFO as soon as components identify the need and no later than three business days in advance of the proposed recall date, with the understanding that there may be instances where a sudden and immediate need arises. Requests requiring USM approval should also be submitted in the form of a word document attached to an email. There is no guarantee that requests submitted less than three business days in advance of the proposed recall date will be approved in time. Recall Request Memos provided to DHS OCFO for transmittal to the USM for notice only and not approval, still must be submitted <u>prior to or at the same time as</u> a recall is initiated.

4. Once the Recall Request has been approved by the Component Recall Approval Official or USM, the Component must complete a Return to Work Notice, and have it signed by the Recall Approval Official. In particular, the form must include (a) the purpose for which the employee is to be recalled; and (b) how that function qualifies as an excepted function (e.g., how it is necessary to protect life or property from imminent threat). A copy of a template Return to Work notice is available from Component servicing human resources offices.

5. Complete and send the Return to Work Notice by email to the employee.  If the employee does not have a DHS electronic device, the employee may be notified verbally by telephone and provided with the recall notice upon reporting to duty.

6. Once the project/function that the employee was recalled to support is completed, that employee must be re-furloughed for the duration of the lapse in appropriations.  The employee must be issued a new furlough notice, with a new effective date.

7. The servicing human resources office will be provided a copy of the Return to Work Notice and any new furlough notice (along with all furlough notices).

In order to ensure sufficient information is provided in recall requests submitted, whether for notice or approval purposes, to enable the Department to determine whether the request complies with any of the available legal exceptions that permit personnel to continue working in the absence of an appropriation, recall requests must answer the questions directly below. <u>Requests that do not include the required information, will be rejected by the USM or may be vetoed by the USM in the case of those submitted for notice purposes</u>. A template Recall Request can be found in Appendix VIII.

**<u>Recall Requests Must Answer the Following Questions</u>:**

1. What is the date you wish to recall the employee and the anticipated duration of the recall e.g. "January 18-20, 2025" or "the duration of the lapse"?

2. Is the function you want the employee to perform when he/she is recalled, already listed in the current version of the approved lapse plan you submitted for your organization? In other words, are you simply requesting to recall additional employees to perform a function you've already determined is excepted or potentially excepted in the event of an incident or credible threat? If so, please indicate the exception and function from the plan under which you are requesting the recall and briefly indicate why you need additional employees to perform the excepted function.

3. Where you are not requesting to recall an employee to perform a function already listed in your lapse plan, please indicate under what exception you are requesting the employee to be recalled. Where an employee's salary is sourced out of a lapsed appropriation, they can only continue working during a lapse under one of the available legal exceptions. Pages 4-6 of DHS Procedures Relating to a Lapse in Appropriations describe the available exceptions. <u>As a note, of those DHS employees who have been excepted, most have been excepted under the "Necessary for Safety of Human Life or Protection of Property" exception. The other available exceptions tend to apply to a very narrow group of individuals and functions</u>.

4. Where you are not recalling the employee to perform a function already listed in your lapse plan, please <u>briefly</u> describe, how the function you want to recall the employee to perform, would fit within one of the available exceptions. For example, a recall request might take on the following form:

> "Component wishes to recall Jane Doe under the "Necessary for the Safety of Human Life or Protection of Property" exception to perform Functions A, B, and C from January 18-20. There is a reasonable likelihood that the safety of human life or protection of property would be imminently compromised in some significant degree by a delay in the performance of Functions A, B, and C, <u>because</u> a delay in the performance of Functions A, B, and C would result in Ramifications A, B, and C."

> **<u>Ramifications A, B, and C are the most important part of the description. The information provided for each employee does not need to be lengthy; a paragraph or two will generally suffice</u>. <u>For requests under the lives and property exception, those submitted without a description of the consequences of a delay in recall, will be rejected</u>.**

## C. Emergency Relocation Group

An employee may be designated both as an essential employee and as a member of the ERG. Essential employees and ERG members are not automatically designated as excepted or exempt employees in the event of a federal funding hiatus under the Department's lapse plan and will be furloughed to the extent they are not otherwise performing excepted or exempt functions. Essential employees must be ready, willing, and able to serve during emergency furloughs and continuity events without regard to declarations of unscheduled leave or government closures due to weather, protests, and acts of terrorism or lack of funding. Essential employees may be designated as exempt/excepted employees in such events, and may be recalled to duty if they have been furloughed. Designation as an essential employee requires that the Department Emergency Notification System, the COOP point of contact, and/or the supervisor is able to contact the employee for notification of emergency conditions applicable to the employee's designation.

An employee's manager or supervisor will advise him or her regarding what the employee must do should a continuity event occur during an emergency furlough. The employee should immediately provide all personal contact information to his or her supervisor and provide any changes or updates in contact information as soon as known.

If an employee is on the ERG and his or her position is designated as non-exempt/non-excepted during an emergency furlough, the employee would not remain "on call" and would not be compensated for remaining "on call." However, in the event COOP is activated, ERG personnel may be recalled from furlough and notified to report to duty.

# V.   Procedures Following Conclusion of a Hiatus

## A. Notification Procedures

Upon appropriate notification from OMB, the Secretary will notify DHS officials that the lapse in appropriations has concluded and order them to direct employees to return to work. The DHS Office of Public Affairs will ensure that appropriate employee communications are delivered promptly and efficiently.

Although employees likely will receive an email notifying them when Congress has reached a funding agreement, they will be encouraged to watch the news and regularly check the DHS website for additional information on when to return to work. Typically, employees will be required to return to work at the beginning of their next regular workday following the President signing a continuing resolution or full-year appropriation providing funding for federal agencies. If employees are having issues returning to work on the next regular workday then supervisors have the discretion on the use of accrued annual leave, compensatory time off, or credit hours.

## B. Workforce Compensation

After appropriations are enacted, payroll centers will pay all exempt, excepted, and furloughed employees. NFC will issue additional guidance on payroll processing.

## C. Reporting of Costs Incurred

As soon as appropriations become available to continue Federal Government functions, Components must report all costs incurred due to the lapse in appropriations including, but not limited to the following:

1. Interest incurred for late payments.
2. Amount of discounts lost due to late payments.
3. Unplanned travel expenses to send staff home and to return them to the field.
4. Other costs of stopping then restarting operations, such as shutting down information technology systems.

## D. Program Activities

Components must maintain procedures for resuming program activities, including steps to ensure appropriate oversight and disbursement of funds upon the end of a shutdown.

# VI. Appendix: Exempt/Excepted Employees



## U.S. Department of Homeland Security

## Procedures Relating to a Lapse in Appropriations

### Closure Times and Exempt/Excepted Employees
### by Component

# Office of the Secretary and Executive Management

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, the Office of the Secretary and Executive Management (OSEM) had 1,060 on-board employees including reimbursable attorneys.

## II. Estimated Time to Complete an Orderly Cessation of Activities

OSEM expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

OSEM estimates 158 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

34

# Management Directorate

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, the Management Directorate had 3,691 on-board employees.

## II. Estimated Time to Complete an Orderly Cessation of Activities

MGMT expects to complete an orderly cessation of all other activities not identified as exempt functions within 4 business hours following notification of a lapse in appropriations, with the following exception:

The Office of the Chief Readiness Support Officer expects that it may be necessary to retain 2 employees for a period of an additional 4 business hours (totaling 1 business day) to accomplish the orderly closure of facilities and the government fleet of vehicle functions.  The 2 employees will be required during this period, which is wholly devoted to closing down the vehicle fleet functions and non-exempt/non-excepted government facilities. The additional time is required because of the necessity to close out the DHS vehicle fleet, which will require involvement to protect government-owned property, and because the Department is geographically dispersed with facilities and assets spread over 40 locations across the National Capital Region.  The intent is to close as many DHS facilities as possible and have exempt personnel consolidate at designated exempt facilities in the National Capital Region.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

MGMT estimates 1,557employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

## Office of Intelligence and Analysis

### I. Number of Employees On-Board Prior to a Lapse in Appropriations

The total number of employees in the Office of Intelligence and Analysis (I&A) is classified. As of June 29, 2024, the Department had a total of 810 on-board employees under the Analysis and Operations account (I&A and Ops combined).

### II. Estimated Time to Complete an Orderly Cessation of Activities

I&A expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations.

### III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

I&A has 544 employees who are exempt/excepted and will be retained during a lapse in appropriations.

# Office of Homeland Security Situational Awareness

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

The total number of employees in the Office of Homeland Security Situational Awareness (OSA) is classified.  The total on board numbers for the Office of Homeland Security Situational Awareness as of May 31, 2025, is reported in the Office of Intelligence and Analysis section.

## Estimated Time to Complete an Orderly Cessation of Activities

OSA expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations.

## II.  Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

OSA has 108 total employees who are exempt/excepted and will be retained during a lapse in appropriations.

## Office of Inspector General

### I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, the Office of Inspector General (OIG) had 766 on-board employees.

### II. Estimated Time to Complete an Orderly Cessation of Activities

OIG expects to complete an orderly cessation of all other activities not identified as exempt/excepted  functions within four business hours following notification of a lapse in appropriations.

### III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

OIG estimates 302 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

# U.S. Customs and Border Protection

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of, September 6, 2025, U.S. Customs and Border Protection (CBP) had 67,792 on-board employees.

## II.  Estimated Time to Complete an Orderly Cessation of Activities

CBP expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations, with the following exceptions:

- **Function**: Legal Counsel and Support
  - *Exempt/Excepted Employees*: Employees necessary to perform activities that facilitate the orderly cessation of functions.
  - *Justification*: These employees are needed for no longer than 3 days to assist in expediting the adequate transfer, resolution and/or disposition of pending procurement, contracting, budgetary, information technology, and personnel actions for the Office of Chief Counsel. Specific tasks would include: coordinating shutdown financial procedures with the Enterprise Services Office and Office of Human Resources Management, resolving year end procurement issues, creating necessary purchase card documents, processing necessary PARTS actions, assuring connectivity of all devices to CBP's network, and transitioning the ongoing workload to Chief Counsel employees who are deemed necessary to perform excepted work during the hiatus.

- **Function**: Labor and Employee Relations
  - *Exempt/Excepted Employees*: Employees necessary to perform activities that facilitate the orderly cessation of functions.
  - *Justification*: These employees are needed for no more than 3 days to close out labor and employee relations case files and other documents, ensure that CBP's approximately 67,792 employees are notified of their furlough status, and identify requirements of and render assistance to excepted legal counsel functions in matters such as active litigation in a variety of judicial and administrative venues, which requires additional time due to CBP's large workforce.

- **Function:** Advanced Training Center (ATC) Site Security
  - *Exempt/excepted Employees*: Employees necessary to perform activities that facilitate the orderly cessation of functions.
  - *Justification*: An estimated 1 day is required for ATC to facilitate the orderly relocation of approximately 150-300 law enforcement students that are locally housed attending non-exempt/non-excepted advanced training classes.  Due to the local housing arrangement, ATC requires additional time to execute an orderly cessation of its operations. This process requires coordination with local hotels, Partner Organizations (many of which are not within DHS), and contract employees, as well as the students themselves.

(The students are not employees of the ATC but of CBP's component organizations.) In order to cease operations, ATC must: (1) coordinate with students' employing organizations to facilitate outgoing air transportation; (2) assign, account for, and organize students' transportation to regional airports, sometimes as far as 50 miles away; (3) receive sensitive inventory belonging to ATC that had been signed out to students; and (4) provide food and lodging to students until they depart the training facility.

o A small number of law enforcement students attending exempt perishable skills training includes firearms, less lethal, and pre-deployment threat awareness will remain on-site along with instructors and staff at the bare minimum needed to provide all training activities.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

CBP estimates 63,243 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

# U.S. Immigration and Customs Enforcement

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of September 26,2025, U.S. Immigration and Customs Enforcement (ICE) had 21,028 onboard employees.

## II. Estimated Time to Complete an Orderly Cessation of Activities

ICE expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours on the next business day following notification of a lapse in appropriations.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

ICE estimates 19,626 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

# Transportation Security Administration

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, Pay Period 10, the Transportation Security Administration (TSA) had 64,130 on-board employees. This number does not include Law Enforcement Officers serving in the Federal Air Marshal Service (FAMS), as that number is Sensitive Security Information.

## II. Estimated Time to Complete an Orderly Cessation of Activities

TSA expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

TSA estimates 61,197 employees as the total number of employees exempt/excepted and estimated to be retained during a lapse in appropriations.  This number does not include Law Enforcement Officers serving in the Federal Air Marshal Service (FAMS), who are excepted; as the total employee number is Sensitive Security Information.

# U.S. Coast Guard

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of August 25, 2025, the U.S. Coast Guard (USCG) had 52,377 on-board employees.

## II. Estimated Time to Complete an Orderly Cessation of Activities

USCG expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

USCG estimates 49,622 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

# U.S. Secret Service

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May31, 2025 the U.S. Secret Service (USSS) had 8,269 on-board employees.

## II. Estimated Time to Complete an Orderly Cessation of Activities

USSS expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriation

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

USSS estimates 8,078 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

## Cybersecurity and Infrastructure Security Agency

### I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, the Cybersecurity and Infrastructure Security Agency (CISA) had 2,540 on-board employees.

### II. Estimated Time to Complete an Orderly Cessation of Activities

Following notification of the lapse in appropriations, the non-exempt/non-excepted CISA staff will need four business hours to complete an orderly cessation of all other activities.

### III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

CISA estimates 889 employees as the total number excepted and estimated to be retained during a lapse in appropriations.

## Federal Emergency Management Agency

### I. Number of Employees On-Board Prior to a Federal Funding Hiatus

As of May 31st, 2025, the Federal Emergency Management Agency (FEMA) had 24,925 on-board employees.

### II. Estimated Time to Complete an Orderly Cessation of Activities

FEMA expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations. Recognizing exceptions may occur requiring up to a full day for any employees in travel status.

### III. Exempt/Excepted Functions and Employees Retained During a Federal Funding Hiatus

FEMA estimates 20,975 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

## U.S. Citizenship and Immigration Services

### I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, U.S. Citizenship and Immigration Services (USCIS) had 22,408 on-board employees.

### II. Estimated Time to Complete an Orderly Cessation of Activities

USCIS expects to complete an orderly cessation of all other activities not identified as exempt/excepted functions within 4 business hours following notification of a lapse in appropriations.

### III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

USCIS estimates 21,568 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

# Federal Law Enforcement Training Centers

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of August 31, 2025, the Federal Law Enforcement Training Centers (FLETC) had 1,359 on-board employees.

## II. Estimated Time to Complete an Orderly Cessation of Activities

As outlined In Section III.E. below, certain FLETC training for new public safety personnel and ongoing skills for public safety personnel is excepted. However, non-excepted training programs in session at FLETC that do not meet the criteria for exception will be suspended initially, and applicable students and staff supporting those programs will remain at the training site during the temporary suspension. If a determination is made after several days that the funding lapse will be prolonged, students and instructors involved in non-excepted training programs will be given direction to return to their permanent duty stations.

## III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

FLETC estimates 1,150 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

# Science and Technology Directorate

## I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, the Science and Technology Directorate (S&T) had 529 on-board employees.

## II. Estimated Time to Complete an Orderly Cessation of Activities

S&T expects to complete an orderly cessation of all other activities not identified as exempt/excepted  functions within 4 business hours following notification of a lapse in appropriations.

## III. Exempt Functions and Employees Retained During a Lapse in Appropriations

S&T estimates 31 employees as the total number exempt/excepted and estimated to be retained during a lapse in appropriations.

## Countering Weapons of Mass Destruction Office

### I. Number of Employees On-Board Prior to a Lapse in Appropriations

As of May 31, 2025, the Countering Weapons of Mass Destruction Office (CWMD) had 243 employees (220 on-board CWMD civilian employees, 9 civilian detailees and 14 uniformed services personnel) funded by appropriations

### II. Estimated Time to Complete an Orderly Cessation of Activities

CWMD expects to complete an orderly cessation of all other activities not identified as exempt functions within 4 business hours following notification of a lapse in appropriations.

### III. Exempt/Excepted Functions and Employees Retained During a Lapse in Appropriations

CWMD estimates 14 employees (14 uniformed services) as the total number exempt or excepted and estimated to be retained during a lapse in appropriations.

50

# VII. Total Employees: On-Board vs. Exempt/Excepted

| DHS Component | Total Employees On-Board, 05/31/2025[1] | Total Exempt/ Excepted Employees | Additional Excepted Employees (If More than 5 Days) |
|---|---|---|---|
| OSEM | 1,060 | 158 | 55 |
| MGMT | 3,691 | 1,560 | 516 |
| A&O | 810 | 652 | 37 |
| OIG | 766 | 302 | 20 |
| CBP | 67,792 | 63,243 | 500 |
| ICE | 21,028 | 19,626 | 0 |
| TSA | 64,130 | 61,197 | 26 |
| USCG | 52,377 | 49,622 | 577 |
| USSS | 8,269 | 8,078 | 0 |
| CISA | 2,540 | 889 | 0 |
| FEMA | 24,925 | 20,975 | 0 |
| USCIS | 22,408 | 21,568 | 0 |
| FLETC | 1,359 | 1,150 | 0 |
| S&T | 529 | 31 | 8 |
| CWMD | 243 | 14 | 0 |
| **TOTALS[2]** | **271,927** | **249,065** | **1,739** |

NOTES:

[1] On-Board employees include permanent and temporary employees as of 05/31/2025 (unless otherwise stated in the body of the document); the number of temporary employees changes on a frequent basis. A few Components used more current June 2025 staffing numbers.

[2] These totals do not include additional personnel who may qualify as excepted or exempt/excepted in the event of an emergency. Rough estimates for each component are listed in the body of the document.

# VIII. Appendix: Template Recall Request



## U.S. Department of Homeland Security

## Procedures Relating to a Lapse in Appropriations

## Template Recall Request

**TEMPLATE RECALL REQUEST**

[Date]

MEMORANDUM FOR:      [Name]
                     Deputy Undersecretary for Management

FROM:                [Name]
                     [Regular Title] and Recall Approval Official for [Component]

SUBJECT:             Certification of Recall for [Insert Employee Name]

---

**Purpose:** The purpose of this memorandum is to describe the function we want the employee to perform upon recall and how that function qualifies as an excepted function.

**Date and Duration of Requested Recall:** [Start Date and duration of recall necessary to complete the excepted function e.g. "January 18-20, 2025" or "the duration of the lapse."]

**Justification:**

**OPTION 1:**
We are recalling the employee to perform a function already listed in the lapse plan we submitted to DHS, [because we now need an additional employee to perform the function OR because an incident or credible threat requires us to recall individuals already listed in our lapse plan as potentially exempt]. The function from our plan that we are recalling the individual to perform is [list function from plan here] and we need an additional employee to perform this function because [insert explanation].

**OPTION 2:**
We are requesting to recall the employee under the exception for [indicate under what exception you are requesting the employee to be recalled].

We wish to recall the employee under this exception to perform the following functions: [insert a brief description of the specific functions you want the employee to perform. For any acronym used, spell out the first use.]. The functions we need the employee to perform fit within [insert name of chosen exception] because [explain why the functions fit within the exception].

> EXAMPLE: Component Amazing wishes to recall Jane Doe under the "Necessary for the Safety of Human Life or Protection of Property" exception to repair a broken gas line at Component Amazing Headquarters (CAHQ). There is a reasonable likelihood that the safety of human life or protection of property would be imminently compromised in some significant degree by a delay in Jane repairing this gas line because the leaking gas could result in an explosion."

**REMINDER: The explanation of *why* the activities fit within the chosen exception is the most important part of the description. The description does not have to be lengthy. A paragraph or two will generally suffice. For requests under the lives and property exception, those submitted without a description of the consequences of a delay in recall, will be rejected.**

**Certification:**
 I certify that the planned recall has been reviewed and approved by counsel and the CFO. [Include signature]

53

# IX. Appendix: Memo for DHS Employees Not in a Furlough Status



## U.S. Department of Homeland Security

## Procedures Relating to a Lapse in Appropriations

## Work That May be Performed by Exempt and Excepted Employees during a Lapse in Appropriations

January X, 2025

MEMORANDUM FOR:     DHS Employees Not in a Furlough Status

FROM:                 Ann Tipton, PhD,  PMCEd, CDFM
                              Budget Director, DHS Office of the Chief Financial Officer

SUBJECT:      **Work That May be Performed by Exempt and Excepted Employees during a Lapse in Appropriations**

As DHS is approaching the XX day mark since the lapse in appropriations, and based on recent questions received, this Memorandum is provided to remind employees about work that may be performed by Department of Homeland Security (DHS) employees during a lapse in appropriations. Although we are experiencing a lapse in appropriations, DHS has consistent with the law, retained certain employees to perform "exempt" and "excepted" functions. This memorandum provides guidance on the definition and scope of exempt and excepted functions, in addition to the guidance previously provided in DHS' Procedures Relating to a Lapse in Appropriations which can be found at https://www.dhs.gov/publication/lapse-funding-dhs.

**EXEMPT FUNCTIONS:**
The salaries of some DHS employees are funded from sources other than annual appropriated funds including fee revenue, multi-year, and no-year funds. To the extent that these sources have sufficient funds remaining in the account, activities and salaries funded from these sources can continue and are considered exempt. Employees whose regular salary and benefits are paid from a funding source that has not lapsed will <u>continue to perform their normal duties and be paid during this federal funding hiatus</u>.

Employees should have received notification of their status as an "exempt" employee immediately prior to the lapse in appropriations which took effect on [DATE]. Employees who are uncertain whether they are exempt should consult with their supervisor, or make contact with exempt management personnel within their organization for guidance if their supervisor is furloughed.

**EXCEPTED FUNCTIONS:**
Many DHS employees are funded from lapsed (e.g. annual appropriations) or exhausted appropriations but may nonetheless continue to work because the work they are performing is legally authorized to continue during a lapse in appropriations. These employees are known as excepted. Employees should have received notification of their status as an excepted employee immediately prior to the federal funding hiatus which took effect on [DATE]. Employees that are uncertain whether they are excepted should consult with their supervisor, or make contact with excepted management personnel within their organization for guidance if their supervisor is furloughed.  These employees will not be paid their salary until an appropriation is passed.

As a matter of law, excepted employees can only perform excepted work that is consistent with the exception under which they were authorized to continue working. For example, if an employee has been excepted under what is commonly known as the "necessary for safety of human life or protection of property" exception, they can generally only perform the work that is necessary to protect human life or property.
The four categories of exceptions applicable to DHS are as follows:
1. Authorized under Law to Continue Even without Funding

2. Necessary for Safety of Human Life or Protection of Property

3. Implied by Law as Necessary to Continue Even without Funding

4. Necessary to the Discharge of the President's Constitutional Duties and Powers

The majority of DHS employees who are excepted, have been excepted under Exceptions #1 and #2, which are described below. A small group of employees have been excepted under Exceptions #3 and #4. Employees excepted under Exceptions #3 and #4 should consult with their supervisor, or acting supervisor if their supervisor is furloughed, about the work they are permitted to perform during a lapse in appropriations. <u>Employees who are unsure about which exception they are working under or whether the work they are performing qualifies for the exception, should also consult with their supervisor, or acting supervisor, if their supervisor is furloughed.</u>

**Exception #1: Authorized under Law to Continue Even Without Funding:**
Activities authorized by law to proceed during an appropriations lapse are those functions for which express statutory authority to incur obligations in advance of appropriations has been granted. The group of employees excepted under this exception category is comprised almost exclusively of United States Coast Guard military members. Active duty military members are excepted because their entitlement to pay is provided under 37 U.S.C. § 204. This entitlement means that DHS is authorized by law to incur obligations for active duty service members pay. These active duty service members <u>may perform normal duties during a lapse.</u>

**Exception #2: Necessary for Safety of Human Life or Protection of Property:**
The exception applicable to most excepted DHS employees is commonly known as the "necessary for safety of human life or protection of property" exception. For work to qualify under this exception, there must be some reasonable likelihood that the safety of human life or protection of property would be compromised in some significant degree by the delay in performance of the function/work/activity in question. The risk should be real, not hypothetical or speculative, and must be sufficiently imminent that delay is not permissible. Certain administrative, research, or support functions necessary to maintain the effectiveness of functions/work/activities that are engaged in the protection of life or property at a minimum level may also continue.

<u>Activities NOT included Under This Exception are</u>:

- Strategic planning

- Responding to correspondence

- Long-term project management

- Developing products for future program delivery

- Professional development

- Exercises

- Routine contract and grant administration, to include payment processing

<u>Activities Which May Be Included Under This Exception Include</u>:

- Maintaining law enforcement operations, including drug interdiction and irregular migration management

- Continuing passenger processing and cargo inspection functions at ports of entry

- Providing the protective functions of the U.S. Secret Service

- Maintaining counter-terrorism watches or intelligence gathering or dissemination in support of terrorist threat warnings

- Deployment to a declared major disaster or emergency

- Support for emergency work or individual assistance arising from declared events

- Contract and grant administration necessary to address an imminent threat to life or property (no new grants, contracts, contract modifications, exercise of options, assisted acquisitions, orders, etc. may be made during the lapse unless it is determined to be excepted in accordance with DHS procedures, or, unless such non-exempt/non-excepted activities are performed pursuant to the guidance set forth below:)

Situations may exist where Components have excepted functions to perform but not in a sufficient amount to keep an employee busy for an entire day or multiple days. In such cases, DHS may be required to furlough employees once the excepted function is completed and recall them when there is excepted work to perform again. There may be cases where an employee is required to perform this excepted function intermittently throughout the day and the intervals in between are too short to enable the employee to be furloughed and recalled in time to perform the excepted function. In such cases, the employee may remain at work and perform minimal non-exempt/non-excepted functions during the intervals. However, where excepted functions are intermittent, DHS must consider consolidating functions for performance by a smaller number of employees. This consideration becomes more important in a long period of lapsed appropriations.

If you have any questions about this guidance please contact Ann Tipton, Budget Director, DHS Office of the Chief Financial Officer.

X. Appendix: Financial Assistance Supplemental Information



# U.S. Department of Homeland Security

## Financial Assistance Contingency Plan During a Federal Funding Lapse

Version 1.3

# Table of Contents: Financial Assistance Contingency Plan

I.   Purpose.................................................................................................................60
II.  Relationship to DHS-Wide and Government-Wide Guidance ................................60
III. DHS Financial Assistance Policy Regarding the Issuance of General Guidance to Recipients in the Event of a Federal Funding Lapse ................................................61
IV.  Fundamental Statutory Requirements (Anti-Deficiency Act) ................................61
V.   Imminent Funding Lapse – Identifying Financial Assistance Supporting Exempt/Excepted and Non-Exempt/Non-Excepted Functions.................................62
VI.  Lapse Staffing Plan ..............................................................................................63
VII. Procedures for an Orderly Closure and Support Following Notification of a Lapse in Appropriations .......................................................................................................64
VIII. Actions Necessary to Mitigate the Effects of a Lapse in Appropriations...............65
IX.  Procedures Following Reauthorization of Funds after a Funding Lapse.................66
X.   Examples of Financial Assistance Awards that may be Awarded as a New Award During a Funding Lapse.........................................................................................67
XI.  Continuing or Delaying Performance of a Pre-existing Funded Financial Assistance Award during a Funding Lapse (for a non-exempt/non-excepted activity).............69
Attachment 1 - Sample Informal Notices to Financial Assistance Recipients ...............71
Attachment 2 - Example Letter Template A/Independently Funded ............................72
Attachment 3 - Example Letter Template B/Independently Funded ............................73
Attachment 4 - Example Letter Template/NOTICE OF TERMINATION ...................74

**DHS Financial Assistance Contingency Plan During a Federal Funding Lapse**

## I. Purpose

The purpose of this document is to provide specialized guidance to Department of Homeland Security (DHS) financial assistance organizations to assist in their decision-making and operations during a run-up to a lapse in appropriations, during a lapse in appropriations, and after the end of a lapse in appropriations. This document should be used in conjunction with DHS-wide and government-wide guidance.

The intent of this document is to provide guidance that is particularly applicable to the financial assistance function during a funding lapse, not absolute guidance on determining how to comply with the Anti-Deficiency Act (ADA). DHS Headquarters and Components will identify activities that are either exempt/excepted or not exempt/excepted during a lapse in appropriations and the Heads of Financial Assistance Activities (HFAAs) will implement those decisions with the help of guidance included in this guide.

## II. Relationship to DHS-Wide and Government-Wide Guidance

a) During the run-up period to a lapse in appropriations, the Office of Management and Budget (OMB) provides guidance and direction to all affected agencies; direction may be provided through government-wide conference calls or other types of communications. Any guidance from OMB will be communicated DHS-wide to all components. To the extent it conflicts with this guide, OMB's direction should be followed.

b) Additionally, DHS has prepared a plan for operations during a funding lapse titled, *Department of Homeland Security Procedures Relating to a Lapse in Appropriations,* which was developed and issued in accordance with OMB Circular A-11, *Preparation, Submission, and Execution of the Budget,* Section 124 requirements. To the extent that plan conflicts with this guide, the DHS plan must be followed.

c) OMB has also prepared *Government-Wide Frequently Asked Questions on Contracting, Grant Administration, and Payment Processing during a Lapse in Appropriations.* That guide provides many useful questions and answers plus background material to help in decision-making.

d) The Department uses the terms "exempt" or "excepted" to describe functions and employees who may be required to continue to perform during a federal funding hiatus. Exempt employees or activities are those funded by appropriations that have neither lapsed nor been exhausted, such as unobligated carryover *balances* (e.g. Disaster Relief Fund) and permanent appropriations (e.g. Immigration Examinations Fee Account). Excepted employees or activities are those funded by lapsed (e.g. annual appropriations) or exhausted appropriations which may nonetheless continue because the work or the work they are performing may, by law, continue to be performed during a lapse in appropriations. Such employees include those who are performing work necessary to prevent imminent threats to the safety of human life or the protection of property or other categories of excepted work.

60

### III. DHS Financial Assistance Policy Regarding the Issuance of General Guidance to Recipients in the Event of a Federal Funding Lapse

Upon receipt of orders from either the Office of the Secretary or the Under Secretary for Management (USM) authorizing recipient notification, financial assistance activities will initially provide recipients with general guidance regarding a lapse in appropriations and its impact on recipient activities (see Attachment 1 for sample recipient notifications).  If a funding lapse continues for more than a week, HFAAs should decide whether to issue additional guidance regarding continued recipient performance specific to each award, as appropriate.  Additional information on this process can be found in Section XI, Continuing or Delaying Performance of a Pre-existing Funded Financial Assistance Award during a Funding Lapse. The need to follow-up initial general guidance with more formal and specific financial assistance actions may require the recalling of a limited number of additional financial assistance officers from furlough status to supplement the financial assistance staffs that are providing support for exempt financial assistance.

The rationale for this two-step process is to avoid the initiation of costlier formal financial assistance actions, such as terminations for cause, that may take longer to process, settle, and staff on the part of the recipient and Government, than the duration of a funding lapse.

### IV. Fundamental Statutory Requirements (Anti-Deficiency Act)

#### a) Anti-Deficiency Act Requirements

The discussion in this section is to provide familiarity with terms, not to provide absolute guidance on determining how to comply with the Anti-Deficiency Act (ADA).  DHS HQ and Components will identify activities that are either excepted or not excepted from restrictions of the Anti-Deficiency Act and the HFAA organizations will implement those decisions with the help of guidance included in this guide, DHS Financial Assistance Contingency Plan during a Federal Funding Lapse, and the Department of Homeland Security Procedures Relating to a Lapse in Appropriations

Federal employees who violate the ADA may be subject to two types of sanctions: administrative and criminal.  Employees may be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office.  In addition, employees may also be subject to fines, imprisonment, or both.

#### b) Anti-Deficiency Act Restrictions and Exceptions

The ADA prohibits federal employees from:
- Making or authorizing expenditure or obligation in excess of the amount available in the appropriation or fund unless authorized by law.  31 U.S.C. § 1341(a)(1)(A);
- Involving the Government in any obligation to pay money before funds have been appropriated for that purpose unless otherwise allowed by law.  31 U.S.C. § 1341(a)(1)(B);
- Accepting voluntary services for the United States, or employing personal services not authorized by law, except in cases of emergency involving the safety of human life or the protection of property.  31 U.S.C. § 1342;

61

- Making obligations or expenditures in excess of an apportionment or reapportionment, or in excess of the amount permitted by agency regulations. 31 U.S.C. § 1517(a).

Activities and financial assistance actions that are excepted from ADA restrictions are those:

- Authorized by law to continue even without funding;
- Implied by law as necessary to continue even without funding;
- Necessary for the discharge of the President's Constitutional duties and powers;
- Necessary for safety of human life or protection of property; or
- Necessary for the orderly cessation of functions.

In contrast, essential functions are a limited set of mission-essential or mission-critical functions that must be performed to provide continuity of operations (COOP). While some essential functions overlap with functions and activities that are excepted from ADA restrictions, for instance search and rescue operations at the U.S. Coast Guard, not all functions that are essential are also excepted. Although some financial assistance activities may support essential functions, they may not continue unless they also qualify as necessary to support a function that is excepted under the ADA. Each DHS Component has identified and defined its mission-essential financial assistance areas that support mission essential-functions. Not all of the new mission-essential financial assistance and orders are authorized to be awarded during a funding lapse even though they might be critical to accomplish DHS's mission-essential functions. Only some of these mission-essential financial assistance may be excepted financial assistance. Accordingly, some new DHS mission critical financial assistance might not be authorized to be awarded during the funding lapse period.

Financial assistance that was awarded prior to the funding lapse using previously appropriated funds does not have to be terminated or stopped as a result of the funding lapse. However, continuation of performance of those financial assistance awards should be evaluated for economy and efficiency reasons to determine if recipients can continue performance in the absence of DHS support or oversight, or whether guidance should be issued to recipients to stop or curtail performance during the funding lapse. Additionally, any DHS employee support that is necessary for these funded awards will need to be closely examined to determine whether one of the exceptions applies or whether the DHS employees will be subject to a furlough because of the lapse. Detailed guidance on this evaluation is provided in Section XI, Continuing or Delaying Performance of a Pre-existing Financial Assistance Award during a Funding Lapse (for a non-exempt/non-excepted activity), of this guide.

## V.  Imminent Funding Lapse – Identifying Financial Assistance Supporting Exempt/Excepted and Non-Exempt/Non-Excepted Functions

In the event of an imminent lapse of funding, using the *DHS Procedures Relating to a Lapse in Appropriations*, and any guidance provided by OMB, it is necessary to survey and identify activities and financial assistance that, in whole or in part, support activities that are exempt or excepted from shutdown, and those that do not support exempt or excepted activities. This will serve two major purposes in the event of a lapse in appropriations:

a) To identify the following:

1. Financial assistance supporting exempt/excepted functions, especially those the funding of which is scheduled to lapse;

2. Existing financial assistance awards that do not support exempt/excepted functions and that may require the issuance of guidance to recipients regarding continued performance or termination of the award for cause.

b) To allow HFAA Determinations

1. HFAAs should determine a distribution of financial assistance officers that provides the minimum staffing necessary to: (1) support an orderly shutdown; (2) ensure the effective management of financial assistance awards supporting exempt/excepted activities, including any staff that may be necessary to make payments under existing awards; and, (3) if a furlough continues for more than a week, allow for the call back of a limited number of additional financial assistance officers according to guidance contained in the Department of Homeland Security Procedures Relating to a Lapse in Appropriations.

2. To issue necessary guidance to existing grant recipients or, in extremely rare scenarios where the funding lapse makes it impossible for a recipient to successfully complete the objectives of an award, terminations for cause.  Determining an effective level of management for financial assistance supporting exempt/excepted activities would include consideration of financial assistance program officers and program management support.  HFAAs must coordinate with their Component Heads or other designated personnel to ensure that financial assistance employee staffing information is consolidated along with other Component program information and included in the Department of Homeland Security Procedures Relating to a Lapse in Appropriations.

3. Questions concerning activities that do not meet the requirements in the DHS Procedures Relating to a Lapse in Appropriations, and the OMB guidance on proceeding during a funding lapse should be directed immediately to the DHS OGC.

## VI.    Lapse Staffing Plan

a) The HFAAs will determine a distribution of financial assistance officers that provides the minimum staffing necessary to: (a) support an orderly shutdown; (b) ensure the effective management of financial assistance supporting exempt/excepted activities; and (c) if a furlough continues for more than a week, allow for the call back of a limited number of additional financial assistance officers in accordance with guidance contained in the *DHS Procedures Relating to a Lapse in* Appropriations, to issue necessary guidance to existing grant recipients or terminations for cause.  Determining an effective level of management for financial assistance supporting exempt/excepted activities would include consideration of program management support.

b) HFAAs must ensure that financial assistance employee staffing information is consolidated along with other Component program information as included in the DHS Procedures Relating to a Lapse in Appropriations.

c) HFAAs may except from furlough the minimum number of staff necessary to make payments to grant recipients under awards that are funded by non-lapsing appropriations or under existing awards that were fully funded and obligated prior to the lapse. OMB has determined that personnel who are needed to make payments to grant recipients on funded awards can be excepted. This is because the action of making the payment is necessarily implied by the continued availability of the funding for the payments themselves. As a result, disbursement of valid obligations, including payments to contractors and grantees, may continue during a lapse in appropriations. Note that payments of obligations that are incurred during the lapse in the absence of an appropriation – for example, obligations for new awards that are necessary for the protection of life or property – may not be made until an appropriation is enacted into law.

d) If more than one-half day will be needed for a financial assistance activity to complete an orderly shutdown, OMB Circular A-11 Section 124 requires agencies to submit policy statements and legal opinions supporting those estimates to OMB for consideration. If this is the case for a financial assistance activity, HFAAs must coordinate with their Component Heads or other designated personnel to review and, as appropriate, forward their policy statements and supporting legal opinion to the Chief Financial officer, Office of General Counsel, and Under Secretary for Management for consideration, and, as appropriate, submission to OMB for review.

e) HFAAs shall finalize and activate their plans for an effective distribution of financial assistance officers and program officials within their Components to support an orderly shutdown and the management of financial assistance supporting exempt/excepted activities. Copies of their plans, including point of contact information for primary Component financial assistance personnel supporting shutdown and management of financial assistance supporting exempt activities shall be provided to the DHS Chief Financial Assistance Officer (CFAO) and the OCFO within four hours of receipt of official notification from USM and/or the CFO of a lapse in funding and the need to shut down operations.

## VII. Procedures for an Orderly Closure and Support Following Notification of a Lapse in Appropriations

NOTE: HFAAs and their financial assistance staffs may implement shutdown procedures only upon receipt of orders through either the Office of the Secretary or USM to proceed with an orderly shutdown of operations necessitated by a Federal funding lapse.

a) Timeline: From the date of notification to proceed with orderly shutdown through the end of one week from start of funding lapse:

1. HFAAs shall ensure that financial assistance personnel are notified of their "exempt/excepted" or "non-exempt/non-excepted" status, e.g., those who have been determined to be exempt/excepted in order to provide support for exempt/excepted financial assistance, in accordance with the DHS Procedures Relating to a Lapse in Appropriations.

It is recommended that furloughed employees provide a list of program office and recipient contact information so exempt/excepted employees can easily contact the appropriate points of contact during the shutdown. A best practice is to upload this contact information into a financial assistance management system (if appropriate) or other financial assistance system. This allows non-exempt/non-excepted employees to make quick decisions rather than wasting time looking for hard copy files.

2. Financial Assistance officers shall issue formal notification letters to their recipients informing them of any necessary actions to be taken by the recipient (See Attachment 1 for sample letters). For non-exempt/non-excepted financial assistance programs, Financial Assistance officers should also issue guidance to recipients regarding the unavailability of staff for questions, prior approvals, and any other activities that require manual staff inputs or approvals. If the ability of a recipient to request drawdowns or payments will be impacted, they should be notified.

3. If a financial assistance award or modification is determined to be for an excepted activity or is determined to be necessary to support an excepted activity but funds are not available because of a lapse in appropriations, the financial assistance may be awarded per advice from the Department of Justice (DOJ) and OMB (see OMB Government-wide Frequently Asked Questions on Contracting, Grant Administration, and Payment Processing During a Lapse in Appropriations). This also applies if a financial assistance award was previously awarded, but was incrementally funded because of a Continuing Resolution. In either event, in order to make the financial assistance award or modification to an existing award, a term and condition permitting the Government obligate the award and not make a payment per that obligation until appropriations are provided to DHS must be included in the award. See Section X for a sample term and condition to accomplish this.

b) Timeline: More than One Week from Start of Funding Lapse

1. If a furlough continues for more than a week, HFAAs may allow for the call back of a limited number of additional financial assistance officers following the guidance contained in the DHS Procedures Relating to a Lapse in Appropriations, so that they may issue necessary guidance to recipients or terminations for cause.

2. After determinations have been made as to whether or not performance under a financial assistance award should continue during the funding lapse (see Section XI) financial assistance officers shall finalize and issue any necessary guidance to recipients or terminations for cause.

## VIII.  Actions Necessary to Mitigate the Effects of a Lapse in Appropriations

a) HFAAs must coordinate with Component program officials and using the guidance provided in the DHS Procedures Relating to a Lapse in Appropriations, and Section X to this plan, survey and identify financial assistance that, in whole or in part: (Category 1) support activities that are exempt/excepted from shutdown; and (Category 2) those that do not support exempt/excepted activities.

b) HFAAs are responsible for ensuring financial assistance activity review of Category 1 and Category 2 financial assistance to identify:

1. Financial assistance supporting excepted functions, the funding of which is scheduled to lapse (e.g., is based on annual appropriations); and

2. Financial assistance for which the following types of modifications, and, if a funding lapse continues for more than a week, guidance to recipients regarding continuation of work or terminations for cause should be issued:

    i.   Fully funded/not dependent on additional appropriations;

    ii.  Exempt/excepted and partially exempt/excepted; and

    iii. Delayed activity (suspension).

    See Attachments for sample notification letters

c) In order to identify whether the funding of an exempt/excepted financial assistance award is scheduled to expire during an anticipated funding lapse, financial assistance officers must review their awards to identify and take necessary action on any exempt/excepted awards. For example, if an exempt/excepted award's funding is scheduled to expire on a certain date, and a Continuing Resolution is scheduled to expire shortly before that date, the financial assistance officer must coordinate with the OGC and take immediate action prior to the Continuing Resolution's expiration date to award a continuation or new award to ensure continued performance of the excepted function In Advance of Funds.

d) As appropriate, financial assistance officers should draft notification letters to recipients regarding the unavailability of DHS staff and the impact this could have on continued recipient performance. For example, work under an existing award that requires prior approval will need to be delayed because DHS staff will not be available to provide the required approvals. In rare situations, financial assistance officers should also issue any terminations for cause that may be necessary in advance for awards supporting non-exempt/non-excepted activities (e.g., those not on the Component's listing of awards necessary to continue in whole or in part to support activities that are exempt/excepted from shutdown). See Attachments for sample letters. OMB has determined that the normal winding down of operations should take no more than four hours. Having draft award notifications on hand and ready will facilitate closing down activity within the four-hour OMB shutdown estimate, and if the furlough lasts more than a week, reduce the need to recall financial assistance officers from furlough to supplement the financial assistance staffs that are providing support for exempt/excepted awards to issue additional guidance to recipients and terminations for cause.

## IX. Procedures Following Reauthorization of Funds after a Funding Lapse

Following official notifications that a shutdown is concluded, or that employees are directed to return to work, and that funding is available for obligation:

a) Financial assistance officers will issue written notices to recipients who were sent notification letters indicating funding availability and issue any guidance to recipients that may be necessary for any work under the award to resume.

b) If the funding lapse continued for more than a week and terminations were issued, financial assistance officers shall follow the appropriate termination procedures, as

66

appropriate for awards terminated in whole or in part for cause. In general, terminated financial assistance awards may not be resumed using previously obligated funding after the conclusion of a lapse. Because terminated awards cannot ordinarily be easily resumed or re-awarded, terminations should be issued for existing awards only in extremely rare and unusual circumstances. Any reinstatements of prior awards in whole or in part must be coordinated with OGC.

c) Financial assistance officers shall issue written notices of funding availability for any award or award modification supporting an excepted activity that was issued during the shutdown in which an availability of appropriations term and condition was used.

## X. Examples of Financial Assistance Awards that may be Awarded as a New Award During a Funding Lapse

If a Component determines that a financial assistance award should be made during a funding lapse, that award may be executed only if it is supported by a determination that it is exempt and being funded with non-lapsing appropriations or that is excepted from the restrictions of the ADA that otherwise prohibit making an obligation during a funding lapse. Such determinations are not required to be made on an individual award basis. They can be made on a program basis and applied to awards that must be made to conduct exempt/excepted activities.

a) If an award is made for an excepted activity and there is no funding available to obligate because of the lapse, a Term and Condition similar to the below must be included in the award:

### Sample Term and Condition

*Performance under this award has been designated by the [......] as necessary for the avoidance of imminent threat(s) to the safety of human life or the protection of property and this work is exempt from the restriction under 31 U.S.C. § 1341, Limitations on Expending and Obligating Amounts, Against Creating an Obligation in Advance of Appropriated Funds. Accordingly, despite the fact that appropriated funds are not presently available to make all payments under this award, the recipient is authorized to perform under the award; the government will make payments otherwise required by the award once the Department of Homeland Security is provided appropriated funds for this award. The Financial Assistance Officer shall notify the recipient immediately upon DHS receiving or failing to receive such appropriated funds and shall make such funds received available for payment under this award within [......].*

b) Congressional Notification. When an award is made during a funding lapse, the requirement for Congressional Notification remains in effect. In the event the Office of Legislative Affairs (OLA) is in operation during the funding lapse, submit the notice as normal. In the event the OLA is not in operation during the funding lapse, submit the notice to OCFO/Financial Assistance Policy and Oversight (FAPO) at FAPO.hq.dhs.gov.

c) Funded by Sources Other than Annual Appropriated Funds. Some functions are covered by multi-year, no-year, revolving funds, or advance appropriations; if those accounts have sufficient carry-over balance, they would not be affected by an annual appropriation

lapse. Revolving funds that operate almost entirely on offsetting collections from other Federal entities may also be forced to close, unless sufficient retained earnings are available to forestall the closure. This type of award would not require a clause as noted above.

EXAMPLES:

- Financial assistance funded by a no-year appropriation and may have sufficient balances available to continue operations.
- Fee for service activities such as those performed by U.S. Coast Guard.

d) Authorized by Law to Continue Even Without Funding. Congress provides express authority for some agencies to enter into financial assistance awards or borrow funds to accomplish some of their functions despite an appropriations lapse. We do not know of any DHS financial assistance functions that qualify; however, if your Component believes that it has a function that qualifies, please discuss it with the OGC. This is in addition to the below "safety of life or protection of property" exemption.

e) Necessary for Safety or Human Life or Protection of Property

1. In order to qualify under the exception as necessary for the protection of life or property, there must be some reasonable likelihood that the safety of human life or protection of property would be compromised to some significant degree by the delay in the performance of the function in question. Specifically, the risk should be real, not hypothetical or speculative, and must be sufficiently imminent that delay is not permissible.

2. Any activity and/or function that continues based on a determination that it qualifies for the protection of life or property exception must be limited only to the extent that the Component Head determines that imminent danger to life or property would result from their termination or diminution. As for any administrative, research, or other support function related to an excepted activity, that function should also continue, but only to the extent that the function is essential to maintain the effectiveness of those activities and/or functions that are engaged in the protection of life or property. In particular, administrative, research, and other overhead activities supporting excepted activities should be carefully reviewed to make certain their continuance is essential to carrying out the excepted activities. In addition, there must be some reasonable likelihood that the safety of human life or protection of property would be compromised to some significant degree if there were any delay in the performance of the administrative, research, overhead, or support activity that is in question. This determination can be made on an activity-wide basis and does not need to be made on an award by award basis.

EXAMPLES (Necessary for Safety of Human Life or Protection of Property):

- Maintaining criminal law enforcement operations, including drug interdiction and irregular migration enforcement.
- Continuing passenger procession and cargo inspection functions at ports of entry.

68

- Providing the Presidential protective functions of the Secret Service.
- Maintaining counter-terrorism watches or intelligence gathering or dissemination in support of terrorist threat warnings.
- Retaining minimal personnel to maintain telecommunications as they relate to exempt activities.

f) Necessary for the Orderly Cessation of Functions

Agencies may obligate funds during periods of lapsed appropriations to bring about the orderly shutdown of non-exempt/non-excepted activities. Contingency plans that call for halting operations of an agency after an appropriation lapse should be consistent with the Anti-Deficiency Act. OMB has determined that the normal halt in operations should take no more than four hours. The activities of employees during this period must be wholly devoted to closing down the function and upon completion, these employees would be released.

EXAMPLES (Necessary for the Orderly Cessation of Functions)

- Performing payroll functions for the period just prior to the appropriation lapse.
- Completing inventories of property and records to assure protection of the Government's interests and claims of affected private entities and individuals.
- For "partially exempt/excepted" activities, the transferring of any ongoing work necessary to support an exempt/excepted activity.
- Personnel functions to process furlough/reduction-in-force notices.

## XI. Continuing or Delaying Performance of a Pre-existing Funded Financial Assistance Award during a Funding Lapse (for a non-exempt/non-excepted activity).

There is NO requirement in the ADA to stop, delay or terminate an award during the period of a funding lapse if that award was awarded and funded prior to the onset of the funding lapse.

Financial assistance awards that were awarded prior to a funding lapse and which are funded with funds not impacted by the funding lapse (such as prior year funds) often have periods of performance that cross fiscal years. When this occurs and a previously funded award has a period of performance that includes the period of a funding lapse, the specific terms and conditions of an award may make performance during a lapse impractical or impossible.

Pre-existing financial assistance awards that support an exempt/excepted activity or function should be allowed to continue during the funding lapse and should not be terminated or delayed.

Pre-existing financial assistance awards that do not support an exempt/excepted activity or function must be evaluated individually to decide if work can continue during the funding lapse based on the terms and conditions of the award. This decision on whether or not to permit award performance to continue during a funding lapse should be based whether the terms and conditions of the award permit it to continue in whole or in part without government oversight or participation. Recipient performance under most fully funded grant awards will not be impacted by a lapse in appropriations. Some awards may be impacted,

69

however.  For example, as a practical matter, work under an award that requires the recipient to obtain prior approval to conduct certain work, or cooperative agreements that require substantial involvement from DHS staff may not be able to continue because DHS staff will not be available to provide the required approvals or involvement.

The actual scenario for each award has to be evaluated and the best balance reached.  The decision is one of stewardship.  Financial assistance officers with existing awards where performance would be impacted by a lapse, including by the unavailability of federal staff, should issue appropriate guidance and direction to the recipient prior to the funding lapse to help ensure the most economical outcome.

**Attachment 1 - Sample Informal Notices to Financial Assistance Recipients**

Dear Financial Assistance Recipient,

This is to advise the Department of Homeland Security (DHS) financial assistance recipient community of the DHS plans regarding actions that may be necessary in the event financial assistance award funding is affected by a lapse in appropriations.

As you are aware, the budget for fiscal year 20XX has not been enacted which may result in a lapse in the funds designated for your award. As a consequence of the lapse, certain planned awards may be cancelled or postponed, and work under certain existing awards may need to be stopped or reduced in scope.

Should DHS determine that any of these actions are necessary, the financial assistance officer for each of the affected programs or awards will provide prompt appropriate notice to the recipient in accordance with the terms and conditions of the award. Notices will contain the direction necessary to comply.

If an award will not be affected by the lapse in appropriations, DHS does not plan to provide any separate notifications or communications of that fact. Unless a recipient is provided a formal notification to the contrary, all DHS recipients must continue to comply with all terms, conditions, requirements, and performance goals specified in their financial assistance award.

Thank you for your continued partnership with DHS, and for your cooperation as we work together to manage a potential lapse in appropriations.

Sincerely,

**Attachment 2 - Example Letter Template A/Independently Funded**

Date

Awardee Name
Attn:
Street Address
City, State and Zip Code

Subject:  Financial Assistance Award number:  _____ Continued Performance during a
Lapse in Appropriations

The Continuing Resolution (CR) providing (Agency/Component) appropriations expired on
_____.  As of _____there are no longer annual appropriations for Federal agencies,
including (Agency/Component).

However, the subject financial assistance award is not dependent on additional appropriations.
As a result, we have determined that performance is to continue during the lapse of
appropriations.  Until appropriations again become available, the Government will be working
with a very limited staff, so you may be contacted by another financial assistance officer
within (Agency/Component).  Additionally, due to the funding lapse, staff may not be
available to answer questions, provide prior approvals, or provide any other necessary
coordination required by the terms of your award.  You are still required to comply with all of
the terms and conditions of your award, including any requirements that you receive prior
approval, even if staff are not available.

Name
Financial Assistance Officer

**Attachment 3 - Example Letter Template B/Independently Funded**

Date

Awardee Name
Attn:
Street Address
City, State and Zip Code

Subject: Financial Assistance Award number: _____ Continued Performance during a Lapse in Appropriations

The existing appropriation funding Government operations expires at midnight, _____ if new appropriations legislation is not enacted, only certain exempt and excepted Government operations will continue until such time that appropriations are again available. This letter is to remind you of your obligations during this funding lapse and is not meant to provide specific direction.

During a lapse in funding, the terms and conditions of your fully funded financial assistance award remain in full force and effect. Unless otherwise directed by the financial assistance officer, you will be required to satisfy all requirements under the award, within the existing timeframes, unless otherwise directed.

For those financial assistance awards that are not fully funded (i.e., incremental annual appropriations funding), you are not to incur costs in excess of the amount of funds already awarded to you as described in your financial assistance award. Should you incur costs during the shutdown in excess of the funds already awarded to you, those costs may or may not be considered by your financial assistance officer as allowable costs and/or subject to reimbursement should future appropriations become available. There is no legal liability on the part of the Government for any payment until funds are made available to the financial assistance officer for such an award, and until the financial assistance recipient receives notice of such funding availability in writing by the financial assistance officer.

Finally, staff may not be available to answer questions or provide necessary approvals or coordination during the lapse. If the lack of government personnel to provide oversight or technical direction, access to facilities, or other factors related to the funding lapse impact the satisfaction of your financial assistance award requirements, immediately notify [ provide officer's name and point of contact information here] and a financial assistance officer will provide you with timely direction.

**Attachment 4 - Example Letter Template/NOTICE OF TERMINATION**

Date

Awardee Name
Attn:
Street Address
City, State and Zip Code

Subject:  Financial Assistance Award number: _____ Continued Performance during a Lapse in Appropriations

As you are aware the Government has been operating on a Continuing Resolution (CR).  That CR expired on [insert date] and has not been replaced with another CR or an appropriation. Therefore you are notified that Financial Assistance award number_____ (referred to as "the award") is terminated_____[insert "completely" or "in part"] for the cause as referenced in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards*.  The termination is effective _____[insert "immediately upon receipt of this notice" or "on_____].

You shall take the following steps:

    (1) Stop all work relating to this financial assistance award except for

        (i)      Work-in-progress or other materials that you may wish to retain for your own account; or

        (ii)    Work-in-progress that the financial assistance officer authorizes you to continue (A) for safety precautions, (B) to clear or avoid damage to equipment, (C) to avoid immediate complete spoilage of work-in-process having a definite commercial value, or (D) to prevent any other undue loss to the Government.  (If you believe this authorization is necessary or advisable, immediately notify the Financial Assistance Officer by telephone or personal conference and obtain instructions.)

    (2) Keep adequate records of your compliance with paragraph (1) above, showing the:

        (i)      Date you received the Notice of Termination:

        (ii)    Effective date of the termination; and

        (iii)   Extent of completion of performance on the effective date.

    (3) Furnish notice of termination to each immediate subrecipient that will be affected by this termination.  In the notice:

        (i)      Specify your government financial assistance award number;

        (ii)    State whether the award has been terminated completely or partially;

        (iii)   Provide instructions to stop all work, make no further shipments, place no

further orders, and terminate all subrecipient awards subject to the exceptions in paragraph (1) of this section;

(iv)     Provide instructions to submit any settlement proposal promptly; and

(v)      Request that similar notices and instructions be given to all immediate subrecipients.

(4) Notify the Financial Assistance Officer of all pending legal proceedings that are based on subawards, or in which a lien has been or may be placed against termination inventory to be reported to the Government.  Also promptly notify the Financial Assistance Officer of any such proceedings that are filed after receipt of this notice.

(5) Take any other action required by the Financial Assistance Officer or under the terms and conditions of the award

(a) *Termination of inventory* As instructed by the Financial Assistance Officer, transfer title and deliver to the Government all termination inventory, including subrecipient termination inventory that you have the right to take: [Financial Assistance Officer insert proper identification or "none"].

(b) To settle your proposal, it will be necessary to establish that all prime and subrecipient termination inventories has been properly accounted for.

(c) *Settlements with subrecipients*, You remain liable to your subrecipients and suppliers for proposals arising because of the termination of their subawards. You are requested to settle theses settlement proposals as promptly as possible.

(d) *Completed end items.* Notify the Financial Assistance Officer of the number of items completed under the award and still on hand and arrange for their disposition.

(e) *Patents.* If required by the terms and conditions of the award, promptly forward the following to the Financial Assistance Officer

(i)      Disclosure of all inventions, discoveries, and patent applications made in the performance of the award.

(ii)     Instruments of license or assignment on all inventions, discoveries, and patent applications made in the performance of the award.

(f) *Employees affected:*

(i)      If this termination, together with other outstanding terminations, will necessitate a significant reduction in your workforce, you are urged to:

(a) Promptly inform the local State Employment Service of your reduction-in-force schedule in numbers, and occupations, so that the Service can take timely action in assisting displaced workers;

(b) Give affected employees maximum practical advance notice of the

75

employment reduction and inform them of the facilities and services available to them through the local State Employment Service Office

(c) Advise affected employees to file applications with the State Employment Service to qualify for unemployment insurance, if necessary;

(d) Inform officials of local unions having agreements with you of the impending reduction-in-force; and

(e) Inform the local Chamber of Commerce and other appropriate organizations which are prepared to offer practical assistance in finding employment for displaced workers of the impending reduction-in-force.

(ii)  If practicable, urge subrecipients to take similar actions to those described in the above section.

*Administrative.*  The financial assistance officer name in the award will identify the person who will be in charge of the settlement of this termination and who will, upon request, provide the necessary settlement forms.  Matters not covered by this notice should be brought to the attention of the undersigned.

Please acknowledge receipt of this notice as provided below

_____
Financial Assistance Officer

_____
Name of Office

_____
Address

ACKNOWLEDGEMENT OF NOTICE

The undersigned acknowledges receipt of a signed copy of this notice on _____, 20_____.  Two signed copies of this notice are returned.

_____
Name of Financial Assistance Award Recipient

By_____

_____
Title

(End of notice)
76

# Exhibit 4



Date/Time Posted: September 30, 2025 8:37 PM

https://x.com/KristiNoem/status/1973230844098859376

Date Captured: October 2, 2025

# Exhibit 5



Date/Time Posted: October 1, 2025 1:52 PM

https://x.com/CBPCommissioner/status/1973491275409105150

Date Captured: October 2, 2025

# Exhibit 6

APPEAL

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00128-JJM-AEM

State of Rhode Island, et al. v. Trump et al                Date Filed: 04/04/2025
Assigned to: Chief Judge John J. McConnell, Jr.            Jury Demand: None
Referred to: Magistrate Judge Amy E. Moses                 Nature of Suit: 899 Other Statutes:
Case in other court: First Circuit, 25-01477              Administrative Procedures Act/Review or
Cause: 05:702 Administrative Procedure Act                Appeal of Agency Decision
                                                          Jurisdiction: U.S. Government Defendant

**Plaintiff**

**State of Rhode Island**                    represented by    **Katherine Connolly Sadeck**
                                                              RI Attorney General
                                                              150 South Main St.
                                                              Providence, RI 02903
                                                              401-274-4400
                                                              Fax: 401-222-3016
                                                              Email: ksadeck@riag.ri.gov
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Kathryn M. Sabatini**
                                                              Rhode Island Attorney General
                                                              150 South Main Street
                                                              Providence, RI 02906
                                                              401-274-4400
                                                              Email: KSabatini@riag.ri.gov
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Keith D. Hoffmann**
                                                              Rhode Island Office of the Attorney General
                                                              150 South Main Street
                                                              Providence, RI 02903
                                                              401-274-4400, Ext. 1882
                                                              Email: khoffmann@riag.ri.gov
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Paul Timothy James Meosky**
                                                              RI Department of Attorney General
                                                              Rhode Island Attorney General
                                                              150 South Main Street
                                                              Providence, RI 02903
                                                              401-274-4400
                                                              Fax: 401-222-2995
                                                              Email: pmeosky@riag.ri.gov
                                                              *ATTORNEY TO BE NOTICED*

Case 1:25-cv-00246-JJM-AEM   Document 105-1   Filed 10/03/25   Page 172 of 175

| | | *Motion to Hold Defendants' Obligation to Respond in Abeyance* filed by All Plaintiffs. **Replies due by 9/18/2025.** (Meosky, Paul) (Entered: 09/11/2025) |
|---|---|---|
| 09/11/2025 | 82 | REPLY to Response re 81 Response to Motion, *Defendants' Reply in Support of their Motion for a Status Conference, or, in the Alternative, to Strike Plaintiffs Statement of Undisputed Material Facts, and to Hold in Abeyance Defendants Obligation to Respond* filed by All Defendants. (Heiman, Julia) (Entered: 09/11/2025) |
| 09/12/2025 | | TEXT ORDER: Defendants' Motion to Strike 78 the States' Statement of Undisputed Facts is DENIED. All deadlines on summary judgment briefing are extended by four weeks. Any actions implementing the Executive Order as to USICH, including RIFs, are STAYED until the resolution of Plaintiffs' Motion for Summary Judgment. Defendants' request for a status conference is DENIED AS MOOT. So Ordered by Chief Judge John J. McConnell, Jr. on 9/12/2025. (Simoncelli, Michael) (Entered: 09/12/2025) |
| 10/01/2025 | 83 | MOTION to Stay *Briefing Schedule in Light of Lapse of Appropriations* filed by All Defendants. **Responses due by 10/15/2025.** (Gonzalez, Heidy) (Entered: 10/01/2025) |
| 10/02/2025 | | TEXT ORDER denying 83 Motion to Stay: The Court is required to continue its constitutional functions, and therefore the Motion to Stay is DENIED. Department of Justice contingency plan states: "If a court denies such a request [to stay or continue] and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue." So Ordered by Chief Judge John J. McConnell, Jr. on 10/2/2025. (Jackson, Ryan) (Entered: 10/02/2025) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/02/2025 20:02:10 | | | |
| **PACER Login:** | natalieheim | **Client Code:** | raids |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00128-JJM-AEM |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |

# Exhibit 7

CONSOL,TYPE-A

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:20-cv-03010-APM

UNITED STATES OF AMERICA et al v. GOOGLE LLC            Date Filed: 10/20/2020
Assigned to: Judge Amit P. Mehta                        Jury Demand: None
Cases:   1:20-cv-03158-APM                              Nature of Suit: 410 Anti-Trust
         1:20-cv-03715-APM                              Jurisdiction: U.S. Government Plaintiff
         1:22-cv-00712-APM
         1:20-cv-03057-TNM
         1:22-cv-00937-APM
Related Cases:   1:25-cv-03192-APM
                 1:23-cv-03677-APM
                 1:24-cv-02788-APM
                 1:25-cv-00543-APM
Case in other court:  USCA, 24-05006
                      USCA, 25-05016
Cause: 15:1 Antitrust Litigation

**Plaintiff**

**UNITED STATES OF AMERICA**            represented by   **Jake Marvin Shields**
                                                         DOJ-CIV
                                                         Civil Division, Fraud Section
                                                         175 N Street, NE
                                                         Washington, DC 20002
                                                         202-514-9401
                                                         Email: jake.m.shields@usdoj.gov
                                                         *TERMINATED: 07/15/2022*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kenneth Michael Dintzer**
                                                         U.S. DEPARTMENT OF JUSTICE
                                                         1100 L Street, NW
                                                         Washington
                                                         202-307-0340
                                                         Email: kenneth.dintzer2@usdoj.gov
                                                         *TERMINATED: 05/28/2024*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Matthew C. Hammond**
                                                         U.S. DEPARTMENT OF JUSTICE
                                                         Antitrust Division
                                                         450 Fifth Street, NW
                                                         Washington, DC 20530

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2025 | 1444 | NOTICE of Appearance by Pablo Tufino on behalf of COMMONWEALTH OF PUERTO RICO (Tufino, Pablo) (Main Document 1444 replaced on 9/30/2025) (mg). (Entered: 09/29/2025) |
| 10/01/2025 | 1445 | MOTION to Stay by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Chapman, Travis) (Entered: 10/01/2025) |
| 10/01/2025 | 1446 | MOTION for Leave to File Amicus Brief by DUCK DUCK GO, INC.. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order Text of Proposed Order) (Wick, Ronald) (Entered: 10/01/2025) |
| 10/02/2025 | | MINUTE ORDER denying 1445 Motion for a Temporary Stay of Further Proceedings in Light of Lapse of Appropriations. The United States' request to stay this matter is denied. *See Kornitzky Grp. v. Elwell*, 912 F.3d 637, 638 (D.C. Cir. 2019) (Srinivasan, J., Edwards, J., concurring) (explaining reasons for denying government request to stay oral argument because of government shut down); *United States v. US Airways Grp.*, 979 F. Supp. 2d 33, 34-35 (D.D.C. 2013) (denying government request to stay merger action because of government shut down); *see also* U.S. Department of Justice FY 2026 Contingency Plan 3 (Sept. 29, 2025), https://www.justice.gov/jmd/media/1377216/dl ("If a court denies such a [stay] request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue."). Signed by Judge Amit P. Mehta on 10/2/2025. (lcapm2) (Entered: 10/02/2025) |

<table>
<tr><th colspan="4" align="center">PACER Service Center</th></tr>
<tr><th colspan="4" align="center">Transaction Receipt</th></tr>
<tr><td colspan="4" align="center">10/02/2025 23:14:12</td></tr>
<tr><td>PACER Login:</td><td>natalieheim</td><td>Client Code:</td><td>raids</td></tr>
<tr><td>Description:</td><td>Docket Report</td><td>Search Criteria:</td><td>1:20-cv-03010-APM Start date: 09/25/2025</td></tr>
<tr><td>Billable Pages:</td><td>30</td><td>Cost:</td><td>3.00</td></tr>
</table>