BRETT A. SHUMATE
Assistant Attorney General
Civil Division
SAMUEL P. GO
Assistant Director
MARY L. LARAKERS
Senior Litigation Counsel
OLGA Y. KUCHINS
Trial Attorney
TIM RAMNITZ
Senior Litigation Counsel
CAROLYN D. DILLARD
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-514-7013

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, SECRETARY OF HOMELAND SECURITY, et al.,<br><br>Defendants. | No. 1:25-cv-00246-JLT-CDB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION** |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 2

    A.    Preliminary Injunction..............………………………………………..2

    B.    Reasonable Suspicion Muster………………………………………...3

    C.    Sacramento Operation………………………………………………..4

    D.    Documentation Regarding Sacramento Operation………………………...5

ARGUMENT ....................................................................................................... 6

    I.    Plaintiffs' Motion Seeks to Amend the Preliminary Injunction Which this Court Lacks Jurisdiction to Do Because the Injunction is on Appeal ............................. 6

    II.    The Reasonable Suspicion Muster Complies with the Preliminary Injunction ...... 8

    III.    Border Patrol Complied with the Preliminary Injunction when It Carried Out the Sacramento Operation ................................................................. 14

        A.    The documentation regarding the Sacramento Operation shows particularized facts supporting reasonable suspicion and flight risk………………….…..14

        B.    Plaintiffs' evidence purporting to undermine Border Patrol's claims lacks credibility……………………………………………………………… 17

        C.    Border Patrol's documentation in support of the Sacramento Operation undermines Plaintiffs' claims.  ……………………………………………….……………19

    IV.    The PI Does Not Require Defendants to Supply Plaintiffs with Arrests Reports that are Unrelated to an Immigration Violation. ................................. 21

    V.    The Court Should Deny Plaintiffs' Requested Remedies.................................. 22

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Benitez-Mendez v. INS*,
    752 F.3d 1309 (9th Cir. 1983) ........................................................................ 20

*Califano v. Yamaskai*,
    442 U.S. 682 (1979) ........................................................................................ 22

*California v. U.S. Dep't of the Interior*,
    2020 WL 1496278 (N.D. Cal. 2020) ............................................................... 22

*Cantu Silva v. United States*,
    110 F.4th 782 (5th Cir. 2024) ......................................................................... 20

*Cellulose Material Sols., LLC v. SC Mktg. Grp., Inc.*,
    2024 WL 5114056 (N.D. Cal. 2024) ............................................................... 18

*Chang v. Cnty. Of Siskiyou*,
    2025 WL 408526 (E.D. Cal. 2025) ................................................................... 8

*Contreras v. United States*,
    672 F.2d 307 (2d Cir. 1982) ........................................................................... 16

*Epic Games, Inc. v. Apple, Inc.*,
    73 F.4th 785 (9th Cir. 2023) ........................................................................... 22

*Hernandez v. Garland*,
    52 F.4th 757 (9th Cir. 2022) ...................................................................... 19, 21

*Illinois v Wardlaw*,
    528 U.S. 119 (2000) ................................................................................... 12, 16

*In re Delta Smelt Consol. Cases*,
    2011 WL 2559021 (E.D. Cal. June 24, 2011) .................................................. 6

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017) ............................................................................... 7

*Mendia v. Garcia*,
    874 F.3d 1118 (9th Cir. 2017) ......................................................................... 8

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001) ...................................................................... 6, 7

*Noem v Perdomo*,
    606 U.S.__ , 2025 WL 2585637 (Sep. 8, 2025) .............................. 2, 10, 15, 21

*Peter Millar, LLC v. Peter Millar, LP*,
    2025 WL 2262326 (E.D. Cal. July 30, 2025) ............................................................. 18

*Sanchez v. Sessions*,
    904 F.3d 643 (9th Cir. 2018) ..................................................................................... 18

*Securities and Exchange Comm. v. Xia*,
    2024 WL 3447849 (E.D.N.Y. July 9, 2024) .................................................................. 6

*Sidibe v. Sutter Health*,
    103 F.4th 675 (9th Cir. 2024) ..................................................................................... 19

*Tribal Vill. of Akutan v. Hodel*,
    859 F.2d 662 (9th Cir. 1988) ........................................................................................ 6

*U.S. v. Leyba*,
    627 F.2d 1059 (10th Cir. 1980) ............................................................................ 11, 12

*U.S. v. Magana*,
    797 F.2d 777 (9th Cir. 1986) ........................................................................... 2, 10, 11

*U.S. v. Orozco*,
    191 F.3d 578 (5th Cir. 1999) ...................................................................................... 10

*U.S. v. Rivera*,
    527 F.3d 891 (9th Cir. 2008) ...................................................................................... 19

*U.S. v. Weber*,
    923 F.3d 1338 (9th Cir. 1990) .................................................................................... 19

*United Farm Workers v. United States Dep't of Lab.*,
    2021 WL 1946696 (E.D. Cal. May 14, 2021) .............................................................. 23

*United Farm Workers v. United States Dep't of Lab.*,
    2021 WL 2402244 (E.D. Cal. June 11, 2021) ............................................................... 7

*United States v. Arvizu*,
    534 U.S. 266 (2002) ................................................................................................ 9, 16

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975) ........................................................................................ 2, passim

*United States v. Cortez*,
    449 U.S. 411 (1981) .................................................................................................... 13

*United States v. Dempsey*,
    449 F. App'x 568 (9th Cir. 2011) ............................................................................... 16

iii

*United States v. Inocencio*,
  40 F.3d 716 (5th Cir. 1994) ............................................................................ 13

*United States v. Manzo-Jurado*,
  457 F.3d 928 (9th Cir. 2006) ....................................................................... 9, 11

*United States v. Martinez*,
  2025 WL 785208 (9th Cir. 2025) ..................................................................... 13

*United States. v. Meza-Campos*,
  500 F.2d 33 (9th Cir. 1974) ............................................................................. 16

*United States v. Palos-Marquez*,
  591 F.3d 1272 (9th Cir. 2010) ......................................................................... 13

*United States v. Ramirez*,
  2021 WL 3615379 (9th Cir. 2021) ................................................................... 20

*United States v. Schoenfeld*, No. 2:21-MC-0076 KJM DB,
  2023 WL 170019 (E.D. Cal. 2023) .................................................................... 6

*United States v. Valdes-Vega*,
  738 F.3d 1074 (9th Cir. 2013) .................................................................... 16, 19

*Vasquez Perdomo v. Noem*,
   2025 WL 1915964 (C.D. Cal. July 11, 2025) ................................................. 12

*Vasquez Perdomo*,
  148 F.4th 656 (9th Cir. 2025) .......................................................................... 10

*W. Knight Foster P'ship v. Saratoga Data Sys., Inc.*,
  2018 WL 1000373 (N.D. Cal. 2018) ............................................................... 23

*Wright v. Rodriguez*,
  2025 WL 1490134 (E.D. Cal. May 23, 2025) .................................................... 8

## **STATUTES**

### **Immigration and Nationality Act of 1952, as amended:**

8 U.S.C. § 1357 ..................................................................................... passim

18 U.S.C. § 13 ............................................................................................. 22

19 U.S.C. § 1589a ....................................................................................... 13

## **REGULATIONS**

8 C.F.R. § 287.1 ......................................................................................... 10

iv

## INTRODUCTION

On April 29, 2025, this Court granted Plaintiffs' Motion for a preliminary injunction ("PI") ECF No. 47. On August 29, 2025, Plaintiffs filed a "Motion to Enforce" the PI (ECF No. 81-1 "Plaintiffs' Motion" or "Pls.' Mot."). Although captioned as a motion to enforce, Plaintiffs' Motion seeks to modify the terms of the PI rather than enforce them. Plaintiffs assert the Reasonable Suspicion Muster ("Reasonable Suspicion Muster" or "Muster"), which is the guidance U.S. Border Patrol ("USBP" or "Border Patrol") issued on June 27, 2025, is "wholly deficient" asserting that it is, among other things, overly broad, inaccurate, and relies on factors not relevant to this district. *See* Pls.' Mot. at 1, 12-16. They also allege, without any reliable basis, that an operation USBP conducted on July 17, 2025, in Sacramento, CA ("Sacramento Operation")[1] did not comply with the PI because Border Patrol did not have reasonable suspicion or assess flight risk prior to stopping and arresting individuals. *See id.* at 6-7, 13, 16-21. Plaintiffs further allege the documentation Defendants submitted relating to the Sacramento Operation does not comply with the PI because it is "incomplete, inaccurate, and boilerplate documentation." *Id.* at 1, 21-22. Finally, Plaintiffs allege Defendants have not complied with the PI because Defendants did not provide them with an arrest report of a United States citizen even though USBP arrested that individual *solely* for a criminal offense and did not stop, detain, or arrest that citizen on suspicion of *any* immigration violation. *See id.* at 22-23.

As an initial matter, this Court should deny Plaintiffs' Motion because it lacks jurisdiction to modify the PI because the PI is on appeal. But even if this Court construes Plaintiffs' Motion as a motion to enforce, the Motion should still be denied because Defendants have complied with the PI.

---

[1] Plaintiffs also assert Border Patrol did not have reasonable suspicion or probable cause when they stopped and arrested individuals in Los Angeles, CA, which is in the Central District of California. *See* Pls' Mot. at 1, 6-7. However, Plaintiffs' Complaint is limited to alleged conduct occurring in the Eastern District of California. *See generally* ECF No. 1 ("Compl."). Given that Los Angeles, CA is outside of this Court's jurisdiction and outside the scope of Plaintiffs' Complaint, Defendants do not address Plaintiffs' allegations with respect to any Border Patrol operation conducted in Los Angeles, CA.

The PI does not require Defendants to make the changes and supply the information that Plaintiffs seek. First, the June 27, 2025, Muster is consistent with both Ninth Circuit and Supreme Court precedent. *See United States v. Brignoni-Ponce,* 422 U.S. 873 (1975); *see also Noem v Perdomo*, 606 U.S.__ , 2025 WL 2585637 (Sept. 8, 2025); *U.S. v. Magana*, 797 F.2d 777, 780 (9th Cir. 1986). Second, the Sacramento Operation also complied with the PI because the agents who conducted the operation first determined there was reasonable suspicion prior to stopping anyone. The agents also determined there was probable cause to arrest the aliens and that they were likely to abscond before USBP could obtain a warrant. Finally, with respect to the documentation regarding the Sacramento Operation, nothing in the PI requires Defendants to provide Plaintiffs with information beyond the particularized facts that show the agents acted in accordance with the law, which Defendants have done. Finally, Plaintiffs' demand that Defendants provide the *criminal* arrest report of a United States citizen arrested for a *crime*—not an immigration violation—is beyond the scope of the PI and the relief requested in Plaintiffs' Complaint. Because Defendants have complied with the PI and this Court lacks jurisdiction to make the modifications to the injunction that Plaintiffs request, this Court should deny Plaintiffs' Motion.

## **BACKGROUND**

### *A. Preliminary Injunction*

This Court's April 29, 2025, PI set forth several requirements. First, it ordered Border Patrol to, within 60 days, issue guidance on how its agents should determine whether reasonable suspicion of an immigration violation exists when conducting detentive stops, including vehicle stops, within the Eastern District of California.[2] ECF No. 47 at 87. The PI instructed that the guidance "shall include, among other things, that refusal to answer questions does not, without more, constitute a basis for reasonable suspicion to justify a detentive stop." *Id*.

Second, the PI prohibited BP from conducting detentive stops in this District absent reasonable

---

[2] Hereinafter, "District" refers to the Eastern District of California unless otherwise noted.

suspicion of unlawful presence and from making warrantless arrests absent probable cause that the alien was likely to escape before a warrant could be obtained. ECF No. 47 at 86. With respect to warrantless arrests, it required USBP to comply with all the terms set forth in the Department of Homeland Security ("DHS") "Broadcast Statement of Policy" in *Castanon Nava v. DHS*, No. 1:18-cv-03757 (N.D. Ill., Feb. 7, 2022). *See id*. at 86-87; *see also* ECF No. 15-1 at 16-17.

Third, the PI required agents to "as soon as practicable" document particularized facts supporting each detentive stop and warrantless arrest. *Id*. at 86-87. It further required Border Patrol to provide documentation of all detentive stops made within the District to Plaintiffs every 60 days. ECF No. 47 at 87. It further required Defendants to provide this documentation within seven days if requested by Plaintiffs' counsel concerning specific individual detentive stops or warrantless arrests. *See id*.

Finally, the PI required Defendants to conduct training of all El Centro Sector agents and those operating in this District. *See id*. at 87-89. The Court also ordered that Defendants report on the status of that training. *Id.*

On June 26, 2025, Defendants filed a Notice of Appeal of this Court's preliminary injunction. *See* ECF No. 59-60. On September 26, 2025, Defendants filed its opening brief on the appeal of the preliminary injunction. *See United Farm Workers of America, et al. v. Noem, et al*., No. 25-4047, ECF No. 12 (9th Cir. 2025).

B.  *Reasonable Suspicion Muster*

As noted above, on June 27, 2025, and within 60 days of the Court's order, Defendants provided Plaintiffs' counsel with a Reasonable Suspicion Muster setting forth guidance given to Border Patrol agents concerning how they should determine whether reasonable suspicion for an immigration violation exists. *See* ECF No. 81-3 at 2; *see also* Ex A. The Muster specifically states, "[a]n individual's refusal to answer a BPA's questions does not, without additional articulable facts, constitute a basis for reasonable suspicion to justify an investigative detention." *See* ECF No. 81-4; Ex. A. It further states that the

guidance is "applicable to investigative detentions initiated by El Centro Sector Border Patrol agents pursuant to the Fourth Amendment in the Eastern District of California, and is to be interpreted consistently with all controlling Supreme Court and Ninth Circuit case law." *Id*. It defines an investigative detention as "a temporary seizure of a person to investigate a specific reasonable suspicion of unlawful activity," and it explains that USBP may stop or detain an individual if the agent develops reasonable suspicion prior to initiating the investigative stop. *Id*. It specifically states that USBP may stop or detain an individual who "is, was, or is about to be, engaged in a violation of a law the BPA has the authority to enforce." *Id*. That is, reasonable suspicion that a person is, was, or is will be engaged in unlawful activity. *See id*. The Muster explains that Border Patrol agents "must evaluate the totality of the circumstances when assessing whether they have developed reasonable suspicion," which includes evaluating facts in light of an agent's training and experience. *Id*. The Muster states that the agents may consider reasonable suspicion factors including but not limited to:

> the location of an individual or vehicle in proximity to the border; the characteristics of the area in which the individual or vehicle is encountered; the previous travel patterns of the area, including foot or vehicle traffic; recent illegal border crossings in the area; the time of day an individual or vehicle is encountered; the association of the area with criminal activity; attempts to evade law enforcement, such as flight on foot or dangerous or erratic driving patterns; and details revealed from records checks.

*Id*. It explains that Border Patrol agents may also consider vehicle type and whether a vehicle appears to be heavily loaded with passengers. *Id*.  It also states "[i]n areas where Hispanic individuals are common, an individual's apparent Hispanic race or ethnicity is not a relevant factor supporting reasonable suspicion . . . [but an] individual[']s mode of dress or haircut may be considered . . . along with the presence of other, relevant factors." *Id*.

### C.  Sacramento Operation

On or around July 15, 2025, USBP conducted surveillance of a Home Depot located at 4641 Florin Rd., Sacramento, CA 95823 where the agents were investigating the presence of illegal aliens. *See* ECF No. 81-7 at 0004; *see also* Ex. B ("Manuel Molina Decl."). On-the-ground reconnaissance of

this location identified several individuals with immigration violations. *See* Manuel Molina Decl. ¶6; ECF 81-7 at 0004. On July 17, 2025, USBP carried out an enforcement operation at the same Home Depot on Florin Rd., in Sacramento, CA, the agents had previously surveilled. *See* Manuel Molina Decl. ¶¶6-7; *see also* ECF 81-7 at 0003-0004. Groups of individuals were clustered in the Home Depot parking lot and Border Patrol agents, in unmarked vehicles, entered the parking lot and parked a distance away from these groups. *See* Manuel Molina Decl. ¶7. The Agents exited their vehicles and walked towards the clustered individuals – they did not surround, corral, block-in, or run towards these individuals. *Id.* The agents were wearing agency-issued body armor with Border Patrol identifiers, badge, and clear police markings on the front and back. *Id.* As Border Patrol agents approached the groups, the individuals in these groups immediately fled from the agents in all directions. *See* Manuel Molina Decl. ¶7; ECF No. 81-7 at 0004. The agents ran after the individuals for further investigation and arrested eleven aliens for immigration violations. *See* Manuel Molina Decl. ¶7*; see* ECF 81-7 at 0001-00056*.* Agents also arrested a United States citizen for damage to government property in violation of 18 U.S.C. § 1361. *See* Manuel Molina Decl. ¶8.

    *D.  Documentation Regarding Sacramento Operation*

    On June 27, 2025, as ordered, counsel for Defendants sent counsel for Plaintiffs an email stating ["[r]egarding Part 4.d of the Court's Order, there have been no detentive stops or warrantless arrests by Border Partrol [sic] agents within [the] Eastern District of California between April 29, 2025 – June 21, 2025; hence, no documentation to release." *See* ECF No. 81-3 at 2. On July 18, 2025, after the Sacramento Operation, Plaintiffs' counsel requested documentation required by the PI regarding the individuals arrested during the Sacramento Operation at the Home Depot. *See* Pls.' Mot. at 7; ECF No. 81-6 at 5-6. On July 25, 2025, within seven days of Plaintiffs' request, Defendants' counsel sent Plaintiffs' counsel the Records of Deportable/Inadmissible Alien forms ("Form I-213") which constituted the "documentation describing Border Patrol's detentive stops and warrantless arrests" per

this Court's order. *See* ECF No. 81-6 at 4; ECF No. 47 at 87. The Form I-213s are the documentation used by USBP to document, per the Court's order, "the specific, particularized facts that supported the agent's reasonable suspicion, which was formed in advance of [each] stop . . .[and] the specific, particularized facts supporting the conclusion that the [individual] was likely to escape before a warrant could be obtained." *See* ECF No. 47 at 87.

## ARGUMENT

**I.      Plaintiffs' Motion Seeks to Amend the Preliminary Injunction Which this Court Lacks Jurisdiction to Do Because the Injunction is on Appeal**.

Plaintiffs seek to "enforce, clarify, or **modify** [the preliminary injunction]." *See* Pls.' Mot. at 1 (emphasis added). However, this Court has limited jurisdiction to modify its preliminary injunction while Defendants' appeal is pending. Federal Rule of Civil Procedure 62(d) "codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment." *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988).[3] Courts have interpreted Rule 62(d) as only allowing modification after appeal to preserve the status quo. *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001) ("The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo."); *In re Delta Smelt Consol. Cases*, No. 1:09-CV-00407 OWW, 2011 WL 2559021, at *3 (E.D. Cal. June 24, 2011) ("[A]ny action taken pursuant to Rule 62[(d)] "may not materially alter the status of the case on appeal.") (citation omitted); *see also Securities and Exchange Comm. V. Xia,* No. 21-cv-5350, 2024 WL 3447849 at *7 (E.D.N.Y. July 9, 2024) (collecting cases).

Plaintiffs ask this Court to enter an order requiring USBP to revise its Muster to categorically

---

[3]   *Hodel* cites to Rule 62(c). *See Hodel*, 859 F.2d at 663. "Rule 62(c) has since been renumbered as Rule 62(d)." *United States v. Schoenfeld*, No. 2:21-MC-0076 KJM DB, 2023 WL 170019, at *1 (E.D. Cal. Jan. 12, 2023).

exclude certain reasonable suspicion factors; to prohibit Defendants from using boilerplate phrasing in the documentation supporting their stops and arrests; and to require USBP to provide Plaintiffs' counsel with documentation of non-immigration related arrests. *See generally* Pls.' Mot.; *see also Infra* §§ II, IV-V. They also request this Court to substantially reduce the time in which Defendants provide documentation concerning stops and arrests to Plaintiffs' counsel from seven days to three days. *See* Pls.' Mot. at 25. These requests are plainly beyond the scope of what this Court required in its original preliminary injunction. *See generally* ECF No. 47 at 86-89. Plaintiffs' request an expansion of the injunction that goes beyond the status quo because they seek changes that significantly alter the terms of the PI and cannot be described as "minor adjustments" of the PI. *Nat. Res. Def. Council, Inc.*, 242 F.3d at 1167 (where the Court found the district court had jurisdiction to modify the PI because the district court only made "minor adjustments that effectuated the underlying purposes of the original requirements."); *see United Farm Workers v. United States Dep't of Lab.*, No. 120CV01690DADJLT, 2021 WL 2402244, at *2 (E.D. Cal. June 11, 2021) (where the Court construed a motion that was styled as a motion to enforce compliance with a preliminary injunction as a motion for further injunctive relief); *see also In re Tronox Inc.*, 855 F.3d 84, 97-98 (2d Cir. 2017) (regardless of how an order is captioned, an injunction has been modified when it has been extended beyond its original reach).

Here, Plaintiffs' request for further injunctive relief would go well beyond preserving the status quo; instead, it would impose new mandatory requirements on Defendants by requiring USBP to amend its Muster to categorically exclude certain reasonable suspicion factors in this District, and require Border Patrol to skew its reasonable suspicion analysis in the way that Plaintiffs' desire rather than based on the totality of the circumstances, which is the standard set forth by law. *See Infra* §II. It would also require Border Patrol to include facts that go beyond what is necessary to show reasonable suspicion and probable cause when conducting immigration-related stops and arrests. *See Infra* §III. Finally, it would require USBP to provide Plaintiffs with reports of criminal arrests rather than

immigration related arrests. *See Infra* §IV. And their request for Defendants to provide documentation concerning stops and arrests to Plaintiffs' counsel within three days instead of seven would be extremely burdensome to counsel for Defendants and USBP as well as wholly unnecessary. These changes are not minor. Furthermore, Plaintiffs could have requested this relief in their motion for a PI, but they did not do so. *See generally* ECF No. 15. Therefore, this Court should deny Plaintiffs' request to modify the PI because it lacks jurisdiction to implement the changes Plaintiffs seek while it is on appeal.

Even if this Court had jurisdiction to modify the preliminary injunction, an injunction can only be modified upon significantly changed circumstances. *Chang v. Cnty. Of Siskiyou*, 2025 WL 408526, at *1, *4 (E.D. Cal. 2025) (rejecting plaintiffs' motion to modify injunction because they failed to establish "a significant change in facts or law.") (citing E.D. Cal. L.R. 231(e)). And Plaintiffs have not alleged changed circumstances to justify a modification to the preliminary injunction. *See Infra* §3. In any event, as explained, the Court lacks jurisdiction to modify the terms of the PI as Plaintiffs request.[4]

## II.    The Reasonable Suspicion Muster Complies with the Preliminary Injunction.

Plaintiffs claim that the Muster does not comply with the PI for a number of different reasons. *First*, they allege that the Muster does not state the "standard" Border Patrol agents must apply for determining whether reasonable suspicion exists when the agents are conducting a detentive or Terry stop. *See* Pls.' Mot. at 5. However, the Muster states verbatim that "BPAs must evaluate the totality of

---

[4] Where a district court cannot modify or vacate an order because it has been divested of jurisdiction by a pending appeal, this Court may nonetheless issue an "indicative ruling" indicating how the court would rule in the event the court of appeals dismissed the appeal or remanded the matter. *See e.g., Mendia v. Garcia,* 874 F.3d 1118, 1120 (9th Cir. 2017) (explaining that Federal Rule of Civil Procedure 62.1 "permits a party to request an 'indicative ruling' from the district court when that court lacks jurisdiction in the matter based on a pending appeal.") (quoting Fed. R. Civ. P. 62.1.); *see also Wright v. Rodriguez*, No. 1:23-CV-01586 JLT GSA (PC), 2025 WL 1490134, at *1 (E.D. Cal. May 23, 2025) (where the court issued an indicative ruling "stating its intentions in the event the Ninth Circuit dismissed the appeal or remanded the action[.]"). Accordingly, to the extent that the Court proposes to substantively modify the terms of the PI, it may issue an indicative ruling to that effect pursuant to Rule 62.1.

the circumstances when assessing whether they have developed reasonable suspicion[,]" which is the correct legal standard for assessing reasonable suspicion. ECF No. 81-4; Ex. A; *see, e.g., United States v. Arvizo*, 534 U.S. 266, 274-76 (2002 (describing application of the "totality of the circumstances" standard); *Brignoni-Ponce*, 422 U.S. at 885 n. 10 (noting that "[e]ach case must turn on the totality of the particular circumstances."). Further, the Muster provides guidance on factors that agents may, where relevant, consider in assessing the totality of the circumstances, stating plainly that "[i]nformation that may be considered when developing **reasonable suspicion** includes, but is not limited to . . ." ECF No. 81-4 (emphasis added); Ex. A. The Muster goes on to list a number of factors Border Patrol may consider in determining whether reasonable suspicion exists. *Id*. Thus, Plaintiffs' contention that the Muster does not state the "standard" for reasonable suspicion is plainly false.

     *Second*, while Plaintiffs do not expressly or clearly state what "standard" they believe the Muster should state, they assert that the Muster impermissibly relies on factors from *Brignoni-Ponce* such as "recent illegal border crossings," "proximity to the border," "type of vehicle," and "travel patterns." Pls.' Mot. at 8, 14. Plaintiffs argue the Court should categorically exclude Border Patrol from relying on these factors in this District because, in their estimation, this District is not within the border area. *See id*. at 14 (citing *United States v. Manzo-Jurado*, 457 F.3d 928, 936 (9th Cir. 2006)). This argument is unpersuasive. The PI says nothing about what specific reasonable suspicion factors must be included in the guidance nor does it say that USBP cannot rely on factors related to travel or proximity to the border. The only specific instruction the Court mandated for USBP to include in the Muster was that it must state "that refusal to answer questions does not, without more, constitute a basis for reasonable suspicion to justify a detentive stop." ECF No. 47 at 87. Defendants complied with this order, and that language is included in the Muster. ECF No. 81-4; Ex. A.

     Aside from the Court not requiring Defendants to list or not list certain reasonable suspicion factors in the Muster, Plaintiffs are incorrect in their understanding of how the factors supporting

reasonable suspicion may be applied in this District. Plaintiffs primarily rely on the Ninth Circuit's now defunct decision in *Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025), affirming a district court's injunction forbidding DHS from relying on certain factors[5] when formulating reasonable suspicion. *See generally* Pls.' Mot. Specifically, the Ninth Circuit stated, "the TRO's rule—that Defendants may not rely solely on the four factors to form reasonable suspicion for a detentive stop in the Central District— is entirely consistent with the general principle that reasonable-suspicion determinations must be based on the totality of the circumstances." *Vasquez Perdomo*, 148 F.4th at 681. However, the Supreme Court recently granted a stay of the injunction in *Vasquez Perdomo*, where Justice Kavanaugh stated in his concurring opinion that immigration officers may rely on "[a]ny number of factors' that contribute to reasonable suspicion of illegal presence." *Vasquez Perdomo*, 2025 WL 2585637, at *3 (citing *Brignoni-Ponce*, 422 U.S., at 884–85).

Contrary to Plaintiffs' suggestion and in line with Justice Kavanaugh's concurring opinion, the Ninth Circuit and other courts have consistently applied the *Brignoni-Ponce* factors outside the immediate border area. In *Magana*, 797 F.2d at 780, the Ninth Circuit applied the *Brignoni-Ponce* factors to determine that a stop made some 1,500 miles from the border was lawful and clarified that not *all* of the *Brignoni-Ponce* factors must be present for an officer to make a lawful stop. *See also U.S. v. Orozco*, 191 F.3d 578, 582 n.3 (5th Cir. 1999) (rejecting the argument that the court was "foreclosed from applying the *Brignoni-Ponce* factors in the instant case because the stop occurred beyond the 100-mile 'reasonable distance' zone promulgated in 8 U.S.C. § 1357(a)(3) and 8 C.F.R. § 287.1") (citing *Magana*, 797 F.2d at 780).

The weight each factor carries may certainly differ case-to-case and the Muster, appropriately, does not focus on any one factor as being especially probative of reasonable suspicion. Rather, the

---

[5] The factors at issue in *Vasquez Perdomo* were "(1) apparent race or ethnicity; (2) speaking in Spanish or accented English; (3) presence at a particular location; and (4) the type of work one does." *Vasquez Perdomo*, 148 F.4th at 671.

Muster correctly articulates the "totality of the circumstances" standard which is consistent with Ninth Circuit precedent and does not support Plaintiffs' argument that the Government is *entirely precluded* in this District from considering certain factors. *See Orozco*, 191 F.3d at 581-82 (although the stop took place "some 200-300 miles away from the border," such that "proximity to the border" was not probative of reasonable suspicion of alien smuggling, other *Brignoni-Ponce* factors were probative – "the characteristics of the area in which [the Border Patrol Agent] entered the vehicle, coupled with his previous experience with alien traffic" that "this particular stretch of I-20 was a favored route for illegal alien smugglers"); *Magana*, 797 F.2d at 780-81 (although "the stop took place some 1,500 miles from the border," several *Brignoni-Ponce* factors were probative of unlawful status – type of vehicle, characteristics of vehicle occupants including "haircut" and "type of clothing," and location "on I-5, which is a main artery for the flow of illegal aliens").

Indeed, in *Brignoni-Ponce* the Supreme Court assessed reasonable suspicion factors in the context of the Government's argument that 8 U.S.C. § 1357(a)(3) permitted Border Patrol to "board and search" any vehicle within 100 miles of the border *without* reasonable suspicion, which the Court declined to permit. 422 U.S. at 883. The decision in *Brignoni-Ponce* that reasonable suspicion is required *even within* this border zone does nothing to limit Border Patrol's ability to rely on these factors outside the immediate border area. Meanwhile, *Manzo-Jurado* did not analyze whether certain *Brignoni-Ponce* factors, such as proximity to the border, may be used in a reasonable suspicion inquiry. *See* Pls.' Mot. at 14. Perhaps because the stop in that case took place "near the Canadian border." *Manzo-Jurado*, 457 F.3d at 936. Nonetheless, even under Plaintiffs' proposed test, Bakersfield—which is in Kern County—is less than 100 air miles from Santa Barbara (76 air miles), a coastal city on an external boundary. *U.S. v. Leyba*, 627 F.2d 1059, 1061-62, 1065 (10th Cir. 1980) (rejecting the argument that Border Patrol cannot stop individuals outside of the "100 mile limit" and determining that, in any event,

the stop occurred "less than 100 air miles from the United States-Mexican border," which was the

relevant measurement, and not "124.2 road miles") (citing 8 U.S.C. § 1357(a)(3) and 8 C.F.R. § 287.1))

*Third*, Plaintiffs request that the Court carve-out "limitations" precluding flight from law

enforcement as a factor in the reasonable suspicion inquiry. *See* Pls.' Mot. at 14-15. This request is not

consistent with the PI nor is it consistent with the law. Plaintiffs seemingly acknowledge flight from law

enforcement is permissible in a reasonable suspicion inquiry relating to an immigration violation. *Id.*

(citing *Illinois v Wardlaw*, 528 U.S. 119, 120 (2000) (permitting reliance on flight from law enforcement

as a factor for supporting reasonable suspicion)). Whether there is an "innocent explanation" for the

flight is a probity argument raised in a particular case based on its specific facts—not an argument

appropriate for resolution on a classwide basis. *See* Pls.' Mot. at 15 (citing *Vasquez Perdomo v. Noem*,

No. 2:25-CV-05605-MEMF-SP, 2025 WL 1915964 *23 n.30 (C.D. Cal. July 11, 2025)).

*Fourth*, Plaintiffs ask for Defendants to expressly acknowledge that much of this District has

areas where Hispanic individuals are common. They acknowledge that the Muster correctly restates the

caselaw applicable to ethnicity and the Fourth Amendment: that "in areas where Hispanic individuals are

common, . . .  apparent Hispanic race or ethnicity is not a relevant factor." *See* Pls.' Mot. at 13; Ex. A.

Yet Plaintiffs nonetheless assert that the Muster should more specifically note that "much of the Eastern

District of California *is such an area*." Pls.' Mot. at 13. Defendants do not disagree with the fact that

many areas in this District are areas where Hispanic individuals are common, and Defendants

acknowledged this in their Reply in Support of its Motion to Dismiss. *See* ECF No. 102 at 8. But this

level of detail and description is simply unnecessary for Border Patrol to include in the Muster, and the

original PI did not require inclusion of this *very* specific point. Nor do Plaintiffs demonstrate inclusion

of this point is necessary based on the recent Sacramento Operation wherein there is no evidence that

USBP considered race as a factor supporting reasonable suspicion. It would be impossible for the

Muster to explain every concept pertaining to reasonable suspicion and flight risk; the Court should

decline Plaintiffs' invitation to micromanage the Muster especially in the absence of any recent evidence that USBP in this District has used race as a factor to develop reasonable suspicion.

Plaintiffs argue the Muster is overbroad and ambiguous. *See* Pls.' Mot. at 16. They complain that the Muster says, "[USBP] may briefly detain a person if the agent has reasonable suspicion, based on specific articulable facts, that the person stopped is, was, or is about to be, engaged in a violation of a law the BPA has the authority to enforce," but the Muster does not define what laws USBP has the authority to enforce. *See* at Pls.' Mot. at 16; *see also* Ex. A. However, nothing in the PI requires USBP to state what authority it has to enforce laws. And these factors are, in fact, applicable to both immigration and criminal offenses which Border Patrol has the authority to enforce under 8 U.S.C. § 1357 and 19 U.S.C. § 1589a, including but not limited to federal felony or misdemeanor crimes committed in their presence. *See United States v. Cortez*, 449 U.S. 411, 421-22 (1981) (expanding the *Brignoni-Ponce* "reasonable suspicion" test to encompass stops for any suspected criminal activity); *United States v. Inocencio*, 40 F.3d 716, 722 (5th Cir. 1994) (recognizing that the *Brignoni-Ponce* test has been expanded to include suspicions as to any suspected criminal activity); *United States v. Martinez*, 2025 WL 785208, at *1 (9th Cir. 2025) (proximity to the border, traffic patterns of the area, characteristics of the area, evasive behavior, and type of vehicle are relevant to assessing reasonable suspicion of the criminal offense of alien smuggling) (citing *United States v. Palos-Marquez*, 591 F.3d 1272, 1277 (9th Cir. 2010)). The fact that the Muster does not list the laws Border Patrol has the authority to enforce does not amount to a violation of the PI and is simply impractical where, for example, a Border Patrol Agent's enforcement authority extends to "any offense against the United States, if the offense is committed in the officer's or employee's presence[,]" and "any felony cognizable under the laws of the United States[.]" 8 U.S.C. § 1357(a)(5). Nor have Plaintiffs established that doing so is necessary. Absent that, the Court should again decline to micromanage the lawful guidance USBP issues to its agents.

Finally, Plaintiffs argue that the Muster fails to define an "investigative detention" and

1   "offers no guidance on how to identify that in interaction is or will be a stop or detention." Pls.' Mot. at

2   15. The Muster, however, defines the term: "[a]n investigative detention is a temporary seizure of a

3   person to investigate a specific reasonable suspicion of unlawful activity. The BPA's actions during the

4   stop must be geared toward confirming or eliminating the BPA's reasonable suspicion of unlawful

5   activity." ECF No. 81-4; Ex. A.

6          In sum, the Muster complies with this Court's order to issue guidance on how Border Patrol

7

8   agents should determine whether reasonable suspicion exists before conducting detentive stops,

9   including vehicle stops, within this District. *See* ECF No. 47 at 86*;* Ex. 81-4. Accordingly, there is

10   nothing for the Court to enforce with respect to the Muster Border Patrol issued.

11   **III.    Border Patrol Complied with the Preliminary Injunction When It Carried Out the**
        **Sacramento Operation.**
12

13          *A. The documentation regarding the Sacramento Operation shows particularized facts*
              *supporting reasonable suspicion and flight risk.*
14

15          Plaintiffs assert that Border Patrol did not have reasonable suspicion when it made detentive

16   stops on July 17, 2025, during the Sacramento Operation. *See* Pls.' Mot. 6-7, 16-21. Specifically, they

17   assert that USBP targeted Latinos in and around a Home Depot "with no reason to believe the specific

18   individuals they stopped were in the country unlawfully and arrested them without assessing flight risk."

19   *See.* Pls.' Mot. at 7 (citing ECF Nos. 74-3, 74-4). Plaintiffs' arguments are without merit. The Forms I-

20   213 show that on July 15, 2025, *prior* to the stops and arrests made during the Sacramento Operation, El

21   Centro Sector Border Patrol agents conducted surveillance at a Home Depot located at 4641 Florin Rd.,

22   Sacramento, CA 95823. *See* ECF No. 81-7 at 0004-5. The Forms I-213 state that on-the-ground

23   reconnaissance of this location identified several individuals with immigration violations. *See* ECF 81-7

24   at 0004, 0010, 0014, 0018-0019, 0024, 0029-0030, 0039, 0044, 0049, 0054. The Forms I-213 state that

25   when agents arrived at this same Home Depot on July 17, 2025, to follow up on the surveillance, they

26   observed groups of individuals clustered in the parking lot, loitering, behaving differently than shoppers.

27

28

*See* ECF No. 81-7 at 0004, 0010-0011, 0014-0015, 0019, 0024-0025, 0030, 0034, 0039-0040, 0044-0045, 0049-0050, 0055. The Forms I-213 state that the agents involved in the operation had multiple years of training and experience enforcing federal immigration laws, ranging from 4 years to 19 years, and based on their training and experience, illegal aliens tend to congregate at locations such as Home Depot to look for cash-only work. *See* ECF No. 81-7 at 0004, 0010, 0014, 0019, 0024, 0030, 0034, 0039, 0044, 0049, 0054. The Forms I-213 state that the agents were wearing agency-issued body armor with Border Patrol identifiers, badge, with clear police markings on the front and back and, when they exited their vehicles, individuals in the clustered groups immediately fled from the agents. *See* ECF No. 81-7 at 0003-0004, 0010-0011, 0014-0015, 0018-0019, 0023-0025, 0029-0030, 0034, 0038-0040, 0044-0045, 0049-0050, 0054-0055. In sum: the recent prior surveillance of illegal aliens present at the Florin Rd. Home Depot, the agents' observations on the day of the operation of individuals clustered in groups loitering in the parking lot, the agents' training and experience that illegal aliens tend to congregate at locations such as Home Depots to look for cash-only work, and the fact that the individuals in these groups immediately fleeing from the agents formed the agents' basis for reasonably suspecting that these individuals were unlawfully present in the United States.

Plaintiffs acknowledge the abovementioned information, but dispute that these facts were sufficient to support lawful stops and arrests. *See* Pls.' Mot. at 17-21. Plaintiffs are mistaken. "Reasonable suspicion is a lesser requirement than probable cause and 'considerably short' of the preponderance of the evidence standard." *Vasquez Perdomo*, 2025 WL 2585637, at *3 (quoting *Arvizu*, 534 U.S. at 274). And "[w]hether an officer has reasonable suspicion depends on the totality of the circumstances." *Id*. (citing *Brignoni-Ponce*, 422 U.S. at 885, n. 10). Here, in light of the totality of the circumstances described above, Border Patrol had reasonable suspicion to stop the individuals during the Sacramento Operation.  *See United States v. Valdes-Vega*, 738 F.3d 1074, 1080 (9th Cir. 2013) (citing *Arvizu*, 534 U.S. at 273 (When reviewing an officer's reasonable suspicion, courts "must look at the

'totality of the circumstances'')). Furthermore, the officers also had probable cause to arrest without a warrant because the individuals had just fled. *See Wardlaw,* 528 U.S. at 124 (explaining that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *United States v. Dempsey*, 449 F. App'x 568, 569 (9th Cir. 2011) (explaining that flight among other factors was sufficient to show reasonable suspicion). Thus, Border Patrol had reasonable suspicion to conduct stops and probable cause to make arrests during the Sacramento Operation.

Plaintiffs also assert that the Forms I-213 do not show that the agents ever considered community ties as a factor in the likelihood of escape inquiry, as per the guidance Border Patrol issued on April 4, 2025. *See* Pls.' Mot. at 20-21. First, this was unnecessary in these arrests because, most importantly, each individual fled from Border Patrol which, on its own, sufficiently indicates the individual is likely to abscond before a warrant can be obtained. *See, e.g., United States. v. Meza-Campos*, 500 F.2d 33, 34 (9th Cir. 1974) (finding that an officer "had reason to believe" the defendant was likely to escape where the defendant was extremely nervous, was "looking around to the left and right past me," and the officer, "felt that he was looking for an opportunity to run."); *Contreras v. United States*, 672 F.2d 307, 309 (2d Cir. 1982) (finding that factors including the subject's "attempt to evade custody satisfied the 'likely to escape' criterion."). Second, and in any event, Plaintiffs inconsistently also admit that in five of the eleven Forms I-213, the agents considered whether the individual stopped had ties to the community such as a local "domicile" or "owning a home." *See* Pls.' Mot. at 9; *see also* ECF No. 81-7 at 0020, 0025, 0030, 0035, 0055. Plaintiffs state that this is not enough, however, and that the reports need to show that the agents "affirmatively" asked about community ties, noting the reports state that the alien "made no claims" to community ties.[6] *See* Pls.' Mot. at 21. This kind of proposed

---

[6] Not cited by Plaintiffs is a sixth Form I-213 that likewise considered community ties when assessing likelihood of escape. *See* ECF No. 81-7 at 0015 ("When asked, the subject stated he lived and worked in the area but was unwilling to provide an address for either his home or work location.").

micromanagement of agency operations is unsustainable. The Forms I-213 establish that the agents considered the aliens' community ties. That is highly suggestive, if not conclusive, evidence that the agents asked the aliens about their community ties and is sufficient to comply with the PI and the warrantless arrest requirements.

Despite Plaintiffs' contentions, Defendants have complied with the PI, and the Forms I-213 in support of the Sacramento Operation are supported with particularized facts showing reasonable suspicion of an immigration violation and probable cause for flight risk. ECF No. 47 at 86-87 ("Any Border Patrol agent who conducts a detentive stop in this District **SHALL**, as soon as practicable, document the facts and circumstances surrounding the stop in a narrative form. This documentation **SHALL** include the specific, particularized facts that supported the agent's reasonable suspicion, which was formed in advance of the stop.") (emphasis in original).

B. *Plaintiffs' evidence purporting to undermine Border Patrol's claims lacks credibility.*

Plaintiffs rely on the declarations of Selvin Osbeli Mejia Diaz (ECF No. 81-12, Mejia Diaz Decl.); Isael Lopez Mazariegos (ECF No. 74-8, "Lopez Mazariegos Decl."); and Filiberto de Jesus Rivera-Molina, (ECF No. 74-9, "Rivera-Molina Decl."), who were arrested by USBP during the Sacramento Operation. *See* Pls.' Mot. at 9-10.[7] These declarations are unreliable for several reasons.

First, none of these declarations state that the declarants fled upon seeing Border Patrol agents who were in uniform. However, there is a publicly available video documenting the Sacramento Operation and showing that, contrary to the declarations, and confirming the version of events in line with the Forms I-213 (*see Supra* § III A), individuals at the Home Depot fled from Border Patrol agents who were in uniform.[8] Second, the declarants are interested parties with motive to proffer accusations of suspicionless stops because it could be beneficial to their removal proceedings. *See Sanchez v. Sessions*,

---

[7] Plaintiffs' Motion also relies on the declaration of Francisca Delfina Mejia Castanon (ECF No. 81-13, "Castanon Decl.") who is the Aunt of Mr. Mejia Diaz. *See* Pls.' Mot. at 10.

[8] *See* https://www.foxnews.com/video/6375804078112.

904 F.3d 643, 654 (9th Cir. 2018) (race-based Fourth Amendment violations can result in termination of removal proceedings); *Cellulose Material Sols., LLC v. SC Mktg. Grp., Inc.*, 2024 WL 5114056, at *7 (N.D. Cal. 2024) (testimony from an interested witness "cannot, standing alone, rise to the level of clear and convincing proof").

Third, the declaration of Mr. Mejia Diaz especially lacks credibility as it is unreliable on its face. Mr. Mejia Diaz states that he left his house at approximately 7:30 a.m. on Thursday, July 17, 2025, to shop at the Ross located across from the Home Depot at Florin Road, about a 30-minute walk from his house. Mejia Diaz Decl., ¶ 3. He states that towards the end of his walk to Ross, a "masked man dressed like a soldier jumped out of [his] car and began chasing [him]." *Id*. Given that, according to Mr. Mejia Diaz, it is a 30-minute walk to arrive at Ross from his home, this infers that the "masked men" encountered him around 8:00 a.m. However, the Ross on Florin Road in Sacramento, CA does not open until 9:30 a.m. on Thursdays pursuant to publicly available information through a google search. *Peter Millar, LLC v. Peter Millar, LP*, No. 1:25-CV-00761-CDB, 2025 WL 2262326, at *3 (E.D. Cal. July 30, 2025) (where the Court relied on "[a] search of the California Secretary of State website [to] confirm[]" certain facts stated in a declaration."). This raises a serious question as to whether Mr. Mejia Diaz was, as he claims, intending to shop at the Ross. Moreover, Mr. Mejia Diaz acknowledges that the Home Depot is located across the street from the Ross store he was allegedly in route to patron. Mejia Diaz Decl., ¶ 3; *see also* ECF No. 81-9 at 2. Thus, even if Mr. Mejia Diaz was truly in route to Ross at 8:00 a.m., an hour and a half before the store opened, it would be reasonable for Border Patrol to suspect that he was actually in route to Home Depot searching for work as a day laborer in light of the totality of the circumstances. *See Valdes-Vega*, 738 F.3d at 1080.

1

2

### C. Border Patrol's documentation in support of the Sacramento Operation undermines Plaintiffs' claims.

3

Unlike Plaintiffs' evidence, the Form I-213 reports are reliable because they were prepared

4

contemporaneously to the stops and arrests, whereas the declarations Plaintiffs rely upon in their Motion

5

were prepared over a month later and for the purposes of litigation.

6

> Contemporaneous evidence, particularly written evidence, is commonly understood to be
> more reliable than later recollections because it reduces the risks of defective recollection
> or conscious fabrication - hence why the hearsay rules make an exception for present-sense
> impressions. Accordingly, courts have often emphasized the importance of
> contemporaneous evidence that . . . contradicts later evidence.

7

8

9

*Sidibe v. Sutter Health*, 103 F.4th 675, 701 (9th Cir. 2024). Consequently, simply proffering declarations

10

from three of the subjects of the reports does not clearly and convincingly overcome the I-213 reports

11

and Border Patrol Agents' presumptive reliability. *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir.

12

2022) ("Forms I-213 are entitled to a presumption of reliability . . . regardless of the purpose for which

13

the form is used.").

14

Plaintiffs, however, allege the fact patterns cited in each Form I-213 are nearly all identical –

15

16

"boilerplate." Pls.' Mot. at 7-8, 17-18. Plaintiffs also point to two Forms I-213 among the eleven where

17

an "X" is used as a "placeholder" where the agent preparing the reports missed filling in the placeholder.

18

*See* Pls.' Mot. at 21 (citing ECF No. 81-7 at 0040 and 00055). Placeholders or boilerplate language, on

19

their own, are unremarkable as it is not inappropriate, and indeed common, for government forms, like

20

Forms I-213, that are routinely and frequently produced to have fill-in-the-blanks where the author of

21

the report then fills in the blank and tailors the report to the particularized facts of the case. *U.S. v.*

22

*Rivera*, 527 F.3d 891, 899-900 (9th Cir. 2008) (boilerplate, or "generalized statements," in a government

23

24

document does not undermine the conclusions contained therein so long as the document contains "case-

25

specific detail"); *see also U.S. v. Weber*, 923 F.3d 1338, 1345 (9th Cir. 1990) (search warrant affidavit

26

was invalid because it contained solely "boilerplate recitations designed to meet all law enforcement

27

needs" without any "tailor[ing]" to the particular individual); *United States v. Ramirez*, No. 19-50360,

28

2021 WL 3615379, at *1 (9th Cir. Aug. 16, 2021) ("To be sure, the affidavit [of probable cause] contains some boilerplate conclusions, but as a whole it speaks in case-specific language.") (internal citations omitted). Here, three Forms I-213 of eleven missed a placeholder; but these reports are no less tailored to the specific facts of each case. Specifically, in the I-213s at ECF No. 81-7, 0040 and 0055, where a name placeholder was not filled in for a paragraph addressing the flight risk inquiry, the alien is repeatedly named elsewhere. The Form I-213 at ECF No. 81-7 at 003, where a city name placeholder was not filled in, the city (Sacramento) is named in the very same paragraph, along with the date, name of the officer involved, and the name of the operation. Thus, the agents' use of boilerplate language or placeholders is not indicative of unreliability.

In any event, Plaintiffs do not explain why the fact patterns would materially differ *in this case* when the officers arrived at the site based on the same prior surveillance, when the individuals were all similarly clustered together, loitering, and when it is not unusual for a group of individuals without status to flee upon sight of immigration enforcement. *See Benitez-Mendez v. INS*, 752 F.3d 1309, 1310 (9th Cir. 1983) (group of workers fled on sight of Border Patrol); *Cantu Silva v. United States*, 110 F.4th 782, 785-86 (5th Cir. 2024) (truck pulled off to the side and occupants fled after passing Border Patrol agents). Plaintiffs otherwise cite "boilerplate language" in the Forms I-213 discussing why Border Patrol targets "locations such as Home Depot." Pls'. Mot. at 8, 17-18. But this language is preamble and goes to why Border Patrol chose to surveille the Home Depot parking lot in the first place, not why Border Patrol agents stopped the individuals subject of the reports. The latter, again, was because of recent prior surveillance of illegal aliens present at the Florin Rd. Home Depot, the agents' observations on the day of the operation of individuals clustered in groups loitering in the parking lot, the agents' training and experience that illegal aliens tend to congregate at locations such as Home Depots to look for cash-only work, and that the individuals in these groups immediately fleeing from the agents.

Finally, this Court should reject Plaintiffs' contentions that the Forms I-213 are unreliable. Forms I-213 are presumed reliable and the Border Patrol agents who prepared the Forms I-213 are presumed to "perform their duties properly without motive or interest other than to submit accurate and fair reports." *Hernandez,* 52 F.4th at 766. Indeed, an Agent in Charge present at the Sacramento Operation, and who personally observed the operation unfold, corroborates that the Forms I-213 accurately and fairly report the facts. *See* Manuel Molina Decl. ¶¶7-8.

For the reasons explained above, the Sacramento Operation was consistent with the PI and the law, and the documentation in support of the operation is likewise consistent with the PI. This Court should reject Plaintiffs' attempt to micromanage agency operations where the Forms I-213 here demonstrate that agents had particularized facts that demonstrated reasonable suspicion and that complied with the warrantless arrest requirements. *See Perdomo*, 2025 WL 2585637, at *4 ("[T]he District Court's injunction threatens contempt sanctions against immigration officers who make brief investigative stops later found by the court to violate the injunction. The prospect of such after-the-fact judicial second-guessing and contempt proceedings will inevitably chill lawful immigration enforcement efforts").

## IV.    The PI Does Not Require Defendants to Supply Plaintiffs with Arrests Reports that are Unrelated to an Immigration Violation.

Plaintiffs claim that Defendants are not in compliance with the PI because they did not provide Plaintiffs with a narrative report on a citizen arrested at the Home Depot on July 17, 2025, for a criminal offense, unrelated to immigration law. *See* Pls.' Mot. at 22. Plaintiffs' request for this report should be denied for multiple reasons. The purpose of the PI is to address a specific alleged injury related to the legality of *immigration-related* stops and arrests. *See* ECF No. 47. And this request plainly falls outside the scope of not only the PI but the relief sought in Plaintiffs' Complaint. *See generally* Compl.; *California v. U.S. Dep't of the Interior*, 2020 WL 1496278, at *4 (N.D. Cal. 2020) (denying plaintiffs' motion to enforce because "the allegedly dubious legal basis" for defendant's actions challenged in the

motion were not part of "the relief [plaintiffs] sought" in their complaint and, therefore, were "beyond the scope of the Court's prior Order."). Plaintiffs state that they cannot simply take Defendants' "say-so that an immigration violation was not at issue" in this arrest. Pls.' Mot. at 22. Notwithstanding the fact that Plaintiffs have produced *no evidence* that Border Patrol arrested this U.S. citizen for an immigration violation, Plaintiffs do not have to take Defendants' word for it. In addition to the signed declaration, *see* Manuel Molina Decl. ¶8, there is publicly available information showing the arrest of an individual for damage to government property during the Sacramento Operation. *See* https://www.msn.com/en-us/news/crime/us-citizen-detained-in-sacramento-immigration-raid-charged-with-vandalism/ar-AA1JsuBH.

Moreover, providing Plaintiffs with arrest reports of individuals who committed crimes unrelated to immigration would be unduly burdensome. "Injunctive relief should be no more burdensome than necessary to provide complete relief to the plaintiffs." *Califano v. Yamaskai*, 442 U.S. 682, 702 (1979); *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 787-88 (9th Cir. 2023) (citing *Califano*). Here, arrests of individuals who commit non-immigration related crimes has nothing to do with the relief sought in this case, and this Court should decline to extend the injunction to include reporting on such arrests.[9] Indeed, 8 U.S.C. § 1357(a)(2) pertains only to the arrest of aliens and the PI only enjoins warrantless arrests made pursuant to section 1357(a)(2). *See* ECF No. 47 at 86-87.

**V.    The Court Should Deny Plaintiffs' Requested Remedies.**

Plaintiffs request a number of remedies. *See* Pls.' Mot. at 23-25. However, no remedies are required because Defendants complied and continue to comply with the PI. *See e.g.*, *United Farm*

---

[9] As Plaintiffs note, Border Patrol can execute a warrantless arrest for probable cause of any federal offense committed in their presence, whether a felony or misdemeanor, and for any federal offense outside their presence. *See* Pls. Mot at 16. (citing 8 U.S.C. § 1357(a)(4)-(5)). Plaintiffs allege that USBP's "authority only includes felonies under federal law, not state traffic or criminal laws." *See.* Pls.' Mot. at 16 (citing U.S.C. §§ 1357(a)(4), (a)(5)). Pls.' Mot. at 16.  Not so.  Border Patrol agents have authority to enforce state law on federal land pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13.

*Workers v. United States Dep't of Lab.*, No. 120CV01690DADJLT, 2021 WL 1946696, at *2 n.2 (E.D. Cal. May 14, 2021), *amended in part*, No. 120CV01690DADJLT, 2021 WL 2402244 (E.D. Cal. June 11, 2021) ("The court does not find "that any remedy is warranted under the preliminary injunction," because defendants did comply with the preliminary injunction and "plaintiff[s] cannot [seek this relief] through the present motion to enforce the preliminary injunction.") (quoting *W. Knight Foster P'ship v. Saratoga Data Sys., Inc.*, No. 16-cv-02406-PJH, 2018 WL 1000373, at *2 (N.D. Cal. Feb. 21, 2018)).

## CONCLUSION

The Court should, accordingly, deny Plaintiffs' motion to enforce because Defendants have complied with the preliminary injunction.

DATED: October 10, 2025

Respectfully submitted

BRETT A. SHUMATE
Assistant Attorney General Civil Division

ANTHONY NICASTRO
Acting Director
Office of Immigration Litigation

SAMUEL P. GO
Assistant Director
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 353-9923
Samuel.go@usdoj.gov

MARY L. LARAKERS
Senior Litigation Counsel
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 353-4419
Mary.l.larakers@usdoj.gov

OPPOSITION TO MOTION TO ENFORCE

By:     /s/ Tim Ramnitz
        TIM RAMNITZ
        Senior Litigation Counsel
        United States Department of Justice Civil
        Division
        Office of Immigration Litigation
        P.O. Box 878
        Washington, DC 20044
        (202) 616-2686
        Tim.ramnitz@usdoj.gov


By:     /s/ Carolyn D. Dillard
        CAROLYN D. DILLARD
        Trial Attorney
        P78090 (MI Bar No.)
        United States Department of Justice Civil
        Division
        Office of Immigration Litigation
        P.O. Box 878
        Washington, DC 20044
        (202) 514-7013
        Carolyn.D.Dillard@usdoj.gov

        Attorneys for Defendants

## CERTIFICATE OF SERVICE

On October 10, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of California, using the electronic case filing system of the court. I hereby certify that I have served counsel of record electronically through the Court's filing system.

                    s/Carolyn Dillard
                    Carolyn Dillard
                    Trial Attorney