UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary of the United States Department of Homeland Security, *et al.*, <br><br>  Defendants. | Case No. 25-cv-00246-JLT-CDB <br><br> **DECLARATION OF CARLOS O. CANTÚ** |

I, Carlos O. Cantú, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby declare as follows:

1. I am the Assistant Chief Counsel (San Diego), Office of Chief Counsel (OCC), for U.S. Customs and Border Protection (CBP). I have held this position in both an acting and official capacity since January 2020.

2. As the Assistant Chief Counsel (San Diego), I am the principal legal advisor for all CBP personnel within my office's area of responsibility, which includes the San Diego Office of Field Operations, El Centro Sector Border Patrol, San Diego Sector Border Patrol, and San Diego Air and Marine Branch. I supervise 21 attorneys and support staff within my office in San Diego.

3. I am familiar with the above-captioned case, as attorneys in my office are currently assisting the Department of Justice (DOJ) in defending CBP in this litigation.

4. I am submitting this declaration to describe the extensive discovery efforts CBP will be required to undertake if the Court does not stay discovery pending resolution of the Defendants' appeal of the Preliminary Injunction.

5. As part of discovery in this litigation, Plaintiffs have submitted 27 burdensome Requests for Production. As an example, Plaintiffs' Request for Production No. 1 requests "[a]ll

Documents related to the development, planning, implementation, or carrying out of Operation Return to Sender, including but not limited to: memos, briefing, emails, instructions guidance, directives, PowerPoints, proof of concepts, blueprints, databases, and names of other agencies involved or consulted; pre-operational briefing; worksite operations; operational plans; funding of RTS; and all documents discussing RTS's operational logistics, including names of participating agents, transportation plans, and/or setting up and use of Makeshift Facilities."

6. The document review required by Plaintiffs' 27 Requests for Production is a highly labor-intensive process that occurs in multiple layers. First, in order to respond to these requests, CBP developed the following search terms that are reasonably likely to locate potentially responsive documents in order to respond to these requests: "Return to Sender" or "Bakersfield" or "Kern" or "Home Depot" or "Consent" or "Consensual encounter" or "BLM" or "Bureau of Land Management."

7. Using the eight terms developed by CBP, the CBP Office of Information Technology (OIT) eDiscovery Team conducted a preliminary search and retrieved numerous potentially responsive email communications from potential custodians. OCC's RelativityOne Support Team, comprised of technical experts charged with assisting CBP in using RelativityOne, then uploaded the resulting collection into RelativityOne, a state-of-the-art document review software. Following de-duplication, 4,516 potentially responsive emails and email attachments remained in the collection, totaling approximately 34,891 pages.

8. The 4,516 potentially responsive e-mails reflect only a fraction of the documents likely to result from the complete search necessitated by Plaintiffs' Requests for Production because this initial search comprised only a small portion of potential custodians. Additionally, the search thus far only included a search for responsive email communications and did not include a search for other documents, which may be necessitated by Plaintiffs' Requests for Production.

9. If the same search were conducted for all potential custodians, assuming the average number of e-mails per person remained the same, the number of potentially responsive e-mail records identified via these same search terms is projected to substantially increase. Further, review of any documents other than emails and email attachments would add significantly to the discovery burden.

10. Additionally, I understand that as of the date of this filing, Defendants and Plaintiffs have not yet agreed on search terms or a protocol for searching and producing electronically stored information (ESI). Defendants developed their search terms based on the scope of discovery they believe to be appropriate in this case. However, Plaintiffs' Requests for Production seek documents well beyond this scope and what Defendants believe to be proportionate to the needs of this case. If Defendants are ordered to expand their search for potentially responsive documents to include documents Plaintiffs believe are proportionate to the needs of this case, the number of potentially responsive documents will grow significantly. I understand that Plaintiffs have proposed over 150 additional search terms (including duplicate terms in varying combinations) that they request Defendants use to identify potentially responsive documents.

11. Once potentially responsive documents are gathered and duplicates removed, I understand that OCC's RelativityOne Support Team then typically employs Continuous Active Learning (CAL), also known as Technology Assisted Review 2.0 (TAR 2.0). CAL is a process for predicting responsiveness within a collection of ESI using a computerized system that extrapolates human judgments of the responsiveness of a smaller set of documents to the remaining documents in the collection.

12. Even with the use of CAL, reviewing potentially responsive documents is extremely burdensome. As a general matter, CBP attorneys must first conduct a manual document review of a sufficient sample size of documents, typically numbering in the thousands depending on the size of the collection, until CAL achieves the desired accuracy in detecting potentially responsive documents. CBP attorneys must then review every

document ranked as responsive by CAL in detail to determine first if they are responsive to Plaintiffs' requests for production, a task made more challenging by the fact that Plaintiffs served 27 distinct but often overlapping requests.

13. If a document is deemed responsive to one or more of Plaintiffs' requests, CBP attorneys must then determine whether the document, or a portion thereof, is privileged or subject to the terms of a protective order. This is also an especially difficult process here, as Plaintiffs' Requests for Production overwhelmingly seek documents pertaining to law enforcement activities. As such, I expect that potentially responsive documents in this case may frequently concern law enforcement techniques, procedures, sources, or other matters that must be reviewed carefully for privilege.

14. Particularly with regard to the law enforcement privilege, CBP attorneys may need to discuss the information contained within responsive documents with operators at CBP. Such discussions can be especially time-consuming. Further, privilege review also generally involves consultation with the DOJ litigation team. Despite the often-taxing nature of this review process, conducting a thorough privilege review of every responsive document is essential in order to ensure that critical privileges are not waived, and important law enforcement procedures and techniques, and other privileged or sensitive information, are not inadvertently disclosed.

15. Depending on the documents at issue, review could feasibly take several minutes per page. Estimating a review time of two minutes per page, and assuming for illustrative purposes a manual review queue of 100,000 pages after a search for responsive documents from all potential custodians and the application of CAL, review of the collection would likely take over 200,000 minutes or over approximately 3,333 hours of attorney time to complete, including review for responsiveness, sensitive information, and privileged information, and application of appropriate redactions. This estimate is based in part on the preliminary search described in paragraph seven above.

16. The significant burden imposed by the discovery process would necessitate the assignment of multiple agency attorneys to assist in this process. Assigning CBP attorneys to this matter would inherently divert resources from the numerous other cases and matters that my office is currently defending and handling, including 28 civil litigation cases arising from claims under the Federal Tort Claims Act and other causes of action. In addition to our civil litigation portfolio, my office provides a broad array of legal services to include training, legal advice and review of enforcement operations, urgent immigration cases, and labor and employment matters, and representation in administrative litigation at the Equal Employment Opportunity Commission, Merit Systems Protection Board, and arbitration. Our office supports not only the El Centro and San Diego Border Patrol Sectors, but also the officers and agents manning the seaports, land ports, and airports, and operating in the air and maritime environments in San Diego. Assigning CBP attorneys to the discovery process would detract from this vitally important work.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 9, 2025.

Carlos O. Cantú
Assistant Chief Counsel
Office of Chief Counsel