BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
LAUREN DAVIS - # 357292
ldavis@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
EVA BITRAN - # 302081
ebitran@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5000

BRISA VELAZQUEZ OATIS - # 339132
bvoatis@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

AJAY S. KRISHNAN - # 222476
akrishnan@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA L. GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| UNITED FARM WORKERS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al., <br><br> Defendants. | Case No. 1:25-cv-00246-JLT-CDB <br><br> **REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION** <br><br> Date:     December 1, 2025 <br> Time:     1:30 pm <br> Dept.:    Courtroom 4, 7th Floor <br> Judge:    Hon. Jennifer L. Thurston <br><br> Date Filed: February 26, 2025 <br><br> Trial Date:  None set |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 1

    A.    The Court has jurisdiction to enforce, clarify or modify the preliminary injunction to preserve the status quo. ................................................................. 1

    B.    The Border Patrol Muster mischaracterizes the reasonable suspicion inquiry and provides inadequate guidance to Border Patrol agents ...................... 3

    C.    Border Patrol violated the preliminary injunction during its July 17, 2025 raid on a Sacramento Home Depot. ............................................................ 5

        1.    Border Patrol agents stopped people without reasonable suspicion. ...................................................................................................... 5

        2.    Border Patrol agents failed to perform an individualized assessment of flight risk that considered the totality of the circumstances ................................................................................................ 9

    D.    The Court should grant Plaintiffs' documentation requests to effect the preliminary injunction's purpose. ................................................................. 10

III.  CONCLUSION ..................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Hernandez v. Garland*,
    52 F.4th 757 (9th Cir. 2022) ............................................................................. 7, 8

*Illinois v. Wardlow*,
    528 U.S. 119 (2000) ............................................................................................ 5

*Mayweathers v. Newland*,
    258 F.3d 930 (9th Cir. 2001) ........................................................................... 2, 3

*Melendres v. Arpaio*,
    989 F. Supp. 2d 822 (D. Ariz. 2013) .................................................................. 9

*Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*,
    242 F.3d 1163 (9th Cir. 2001) ............................................................................ 2

*Nava v. DHS*,
    435 F. Supp. 3d 880 (N.D. Ill. 2020) .................................................................. 9

*Noem v. Vasquez Perdomo*,
    606 U.S. __, 2025 WL 2585637 (Sept. 8, 2025) ................................................ 3

*Robinson v. Delgado*,
    2012 WL 4753493 (N.D. Cal. Oct. 4, 2012) ...................................................... 2

*Ruiz v. Walmart Inc.*,
    2022 WL 2199832 (C.D. Cal. Feb. 28, 2022) .................................................... 7

*Thakur v. Trump*,
    2025 WL 2325390 (N.D. Cal. Aug. 12, 2025) ................................................... 2

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025) ........................................................................................ 3

*United States v. Arvizu*,
    534 U.S. 266 (2002) ............................................................................................ 4

*United States v. Brown*,
    925 F.3d 1150 (9th Cir. 2019) ........................................................................ 5, 9

*United States v. Cortez*,
    449 U.S. 411 (1981) ............................................................................................ 9

*United States v. Hansen*,
    40 F.4th 1049 (9th Cir. 2022) ............................................................................. 3

*United States v. Jordan*,
    742 F.3d 276 (7th Cir. 2014) ............................................................................................... 8

*United States v. Magana*,
    797 F.2d 777 (9th Cir. 1986) ............................................................................................... 4

*United States v. Manzo-Jurado*,
    457 F.3d 928 (9th Cir. 2006) ........................................................................................... 3, 4

*United States v. Mendenhall*,
    446 U.S. 544 (1980) ............................................................................................................ 5

*United States v. Montero-Camargo*,
    208 F.3d 1122 (9th Cir. 2000) ........................................................................................ 3, 9

*United States v. Orozco*,
    191 F.3d 578, 581 (5th Cir. 1999) ....................................................................................... 4

*United States v. Ramirez*,
    2021 WL 3615379 (9th Cir. Aug. 16, 2021) ....................................................................... 7

*United States v. Rivera*,
    527 F.3d 891 (9th Cir. 2008) ............................................................................................... 7

*United States v. Rodriguez*,
    976 F.2d 592 (9th Cir. 1992) ....................................................................................... 4, 7, 8

*United States v. Rodriguez-Sanchez*,
    23 F.3d 1488 (9th Cir. 1994) ............................................................................................... 6

*United States v. Taylor*,
    634 F. Supp. 3d 690 (N.D. Cal. 2022) ................................................................................. 7

*Vasquez Perdomo v. Noem*,
    148 F.4th 656 (9th Cir. 2025) ...................................................................................... *passim*

**Federal Statutes**

8 U.S.C. § 1357 ........................................................................................................................ 1, 2

**Rules**

Fed. R. Civ. P. 62 ......................................................................................................................... 2

ii
REPLY IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION
Case No. 1:25-cv-00246-JLT-CDB

## I. INTRODUCTION

The Court's April 29, 2025 order enjoined Border Patrol's pattern and practice of indiscriminately detaining and arresting Latino people in this District in violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2). Dkt. 47 at 86-88 ("PI Order"). Plaintiffs' Motion establishes multiple violations of that order: Border Patrol (1) issued deficient guidance to Border Patrol agents regarding the reasonable suspicion analysis in this District; (2) unlawfully stopped and arrested people in the July 17, 2025 Sacramento Home Depot raid; and (3) failed to adequately document all stops and arrests.

Defendants attempt to evade responsibility for these violations. As a threshold matter, Defendants argue that their appeal of the PI Order erases the Court's jurisdiction to grant relief. But that argument disregards the Court's significant power to enforce, clarify, or even modify its PI Order to preserve the status quo during an interlocutory appeal.

Defendants' other arguments similarly fail. As to the "Muster," Border Patrol's generic list of reasonable suspicion factors does not satisfy the PI Order's requirement to provide "guidance" to Border Patrol agents. The Muster omits relevant legal principles and offers no clear instruction to Border Patrol agents that would address the violations at issue in the PI Order.

As to Border Patrol's July 17, 2025 Sacramento raid, Defendants' position is based on the false assumption that Border Patrol's self-serving, copy-and-pasted descriptions of the raids in I-213s are accurate. Those accounts are not credible and are contradicted by sworn declarations. But even taking the I-213s at face value, Defendants plainly failed to develop reasonable suspicion and did not adequately evaluate flight risk prior to warrantless arrests. The Court should reject Defendants' arguments outright, or at minimum, order immediate discovery.

As to the PI Order's documentation requirements, Defendants do not dispute that they fail to document a broad swath of stops and warrantless arrests, and thus violated the PI order.

The Court should grant Plaintiffs' Motion and provide the requested relief.

## II. ARGUMENT

### A. The Court has jurisdiction to enforce, clarify or modify the preliminary injunction to preserve the status quo.

Defendants argue that their appeal of the PI Order strips this court of jurisdiction. But

"[t]he district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("*NRDC*"). A district court thus "retains jurisdiction to enforce [an] injunction," *Robinson v. Delgado*, 2012 WL 4753493, at *1 (N.D. Cal. Oct. 4, 2012), or "to clarify the meaning of its orders," *Thakur v. Trump*, 2025 WL 2325390, at *6 (N.D. Cal. Aug. 12, 2025) (citation omitted). A district court also "may . . . modify . . . or grant an injunction," Fed. R. Civ. P. 62(d), to "preserve the status quo," *NRDC*, 242 F.3d at 1165, if doing so does "not materially alter the status of the case on appeal." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001).

Here, the Court's PI Order required Defendants to cease detentive stops without reasonable suspicion in violation of the Fourth Amendment and cease warrantless arrests without probable cause of flight risk in violation of 8 U.S.C. § 1357(a)(2). PI Order 86. Plaintiffs' Motion seeks to maintain that status quo. For example, Plaintiffs request a finding that Border Patrol violated the PI Order, which does not alter its scope. Dkt. 81-16 at 1. As to the other relief at issue, Plaintiffs seek enforcement and clarification, not modification. Specifically, Plaintiffs seek to (1) enforce the PI Order's requirement that "guidance" on reasonable suspicion be issued to Border Patrol agents through a revised Muster containing such guidance, PI Order 87; (2) clarify that boilerplate does not satisfy the requirement to document the "specific, particularized facts" supporting reasonable suspicion and probable cause of flight risk, *id.* at 86-87; and (3) enforce the PI Order's requirement that Border Patrol agents document all detentive stops and warrantless arrests in this District regardless of whether Defendants consider them immigration-related, *id.*

To the extent Plaintiffs' requested relief constitutes a "modification," it is in service of preserving the status quo—preventing stops without reasonable suspicion and warrantless arrests without probable cause of flight risk. *See* PI Order 71-72 (discussing PI as maintaining the status quo). This too is proper when an appeal is pending. In *NRDC*, the Ninth Circuit held that the district court had jurisdiction to modify a permanent injunction to "accomplish the purpose" of the injunction's terms, where the modification "left unchanged the core questions before the appellate panel." *NRDC*, 242 F.3d at 1167; *see also Thakur*, 2025 WL 2325390, at *6. The relief potentially viewed as "modifications" here similarly seek modest adjustments, such as by

requiring documentation of stops and warrantless arrests within four days rather than seven days, due to the speed that Defendants have made witnesses unavailable by deporting them from the country. Dkt. 81-1 ("Mot.") at 25. This minor change will not "alter the status of the case on appeal," *Mayweathers*, 258 F.3d at 935, where the "core questions" are standing and mootness, not the PI Order's documentation requirements. *See* Supplemental Declaration of Jason George ("Supp. George Decl.") Ex. H. The Court has jurisdiction to provide the requested relief.

### B. The Border Patrol Muster mischaracterizes the reasonable suspicion inquiry and provides inadequate guidance to Border Patrol agents.

To prevent further violation of the Fourth Amendment, the Court ordered Border Patrol to issue "guidance . . . to Border Patrol agents concerning how they should determine whether 'reasonable suspicion' exists . . . in this District." PI Order at 87. The "Muster" fails to do so.

*First*, the Muster omits the Ninth Circuit's limitation on factors that would "cast suspicion on large segments of the law[-]abiding population." *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006); *see also United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000) (such characteristics have "little or no probative value"). Rather than acknowledge this limitation on reasonable suspicion, the Muster encourages reliance on factors that will cast suspicion broadly, telling Border Patrol agents, for example, that they can rely on "mode[s] of dress or haircut" and other "indicators that an individual is a foreign national," without explaining that such factors are of minimal probative value if they would also apply to a significant number of people lawfully in the country, Dkt. 64-2 at 2-3. Defendants ignore this omission.[1]

For racial profiling specifically, Defendants offer no reasoned basis why the Muster states generally that "apparent Hispanic race or ethnicity is not a relevant factor" where "Hispanic individuals are common," rather than stating expressly that "apparent Hispanic race or ethnicity is not a relevant factor" ***in this District***. *See* Opp. at 12-13. A clear directive on this issue is

---

[1] Defendants aver that Plaintiffs "primarily" rely on the overruled Ninth Circuit order in *Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025). Dkt 112 ("Opp.") 10. But Plaintiffs relied on that order only as an *example*. Mot. 13-14. *Manzo-Jurado* and the other Ninth Circuit precedent cited, *id.*, are not impacted by the Supreme Court's unreasoned and nonprecedential interim stay order in *Noem v. Vasquez Perdomo*, 606 U.S. __, 2025 WL 2585637 (Sept. 8, 2025). *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("[I]nterim orders are not conclusive as to the merits"). Nor is it proper for Defendants to rely on Justice Kavanaugh's concurrence if it conflicts with Ninth Circuit law. *See United States v. Hansen*, 40 F.4th 1049, 1057 (9th Cir. 2022) (Gould, J., concurring) ("[A] concurrence by a single justice does not make precedent.").

necessary where El Centro's Chief Patrol Officer, Gregory Bovino, has publicly stated that stops can be based on "how [people] look," *see* Supp. George Decl. Ex. A, and where Border Patrol agents have a pattern and practice of ignoring limits on racial profiling, PI Order 58, 76; *see generally* Dkt. 81-7 (documenting arrest of only Latino people in the Sacramento raid).

***Second***, the Muster provides no guidance regarding how factors tailored to the border apply in this District. Defendants do not dispute that the analysis differs; nor could they, as the Ninth Circuit has stated that the reasonableness of inferences close to the border may differ. *See Manzo-Jurado*, 457 F.3d at 936 (presumption reasonable that a person "can reach U.S. locations near points of entry more easily"). For example, a heavily loaded vehicle near the border might raise an inference of smuggling, *United States v. Rodriguez*, 976 F.2d 592, 595 (9th Cir. 1992), but might not in this District.[2] *See United States v. Arvizu*, 534 U.S. 266, 276 (2002) (the same conduct likely weighs differently in San Francisco than in "rural southeastern Arizona"). Especially because Border Patrol agents have been ***ignoring*** the distinctions between the border and this District, *see, e.g.*, Dkt. 81-7 at 0035 (Border Patrol agent invoking experience "at and near the border" in Sacramento); Dkt. 15-2 Ex. 7 at 24 (Border Patrol designating Bakersfield as a "dyed in the wool . . . border town"), the Muster should provide guidance on this issue.

Defendants contend that Plaintiffs seek to "categorically exclude" "proximity to the border" and other *Brignoni-Ponce* factors from the reasonable suspicion analysis. Opp. 9-10. Not so. The Muster should "explain" and provide guidance on ***how*** the analysis of border-centric factors differ in this District[3] (or omit them if no explanation exists). Mot. 14. Defendants also claim they were not obligated to discuss an issue unless the Court explicitly ordered it. Opp. 9. But the Court did so order: the PI Order required the issuance of guidance regarding the reasonable suspicion analysis "***in this District***." PI Order 87 (emphasis added). The Muster

---

[2] Even Defendants' cited cases agree: in *United States v. Orozco*, the Fifth Circuit held that if a car is more than 50 miles from the border, it is "too far from the border to support an inference that it originated its journey there," so other factors must be scrutinized "most carefully." 191 F.3d 578, 581 (5th Cir. 1999).

[3] For example, Defendants cite *United States v. Magana*, 797 F.2d 777, 780-81 (9th Cir. 1986), to argue that "type of vehicle" may be relevant away from the border. But that case required a detailed discussion of smuggling routes and facts showing the vehicle was not local to ***overcome*** the distance from the border. *See id.* The Muster provides no guidance regarding such issues.

should thus explain how this District's location affects the reasonable suspicion analysis.[4]

*Third*, the Muster omits relevant guidance regarding "flight." It does not address that people "go[ing] about [their] business" is not "flight." *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000). Nor does it address where flight may be *insufficient* for reasonable suspicion due to reasonable fear of law enforcement personnel. *See United States v. Brown*, 925 F.3d 1150, 1157 (9th Cir. 2019). Defendants say that this is a "probity argument" for specific cases, Opp. 12, but Border Patrol agents should receive guidance so that *they* can evaluate the "probity" of flight.

*Fourth*, the Muster fails to adequately define when a detentive stop has occurred. Defendants rely on the Muster's definition, "a temporary seizure of a person to investigate a specific reasonable suspicion of unlawful activity," Opp. 14, but that definition is underinclusive, as it neither explains that a stop has occurred when "a reasonable person would have believed that he was not free to leave," *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980), nor addresses the types of stops that have occurred in *this* case, *see, e.g.* Dkt. 15-5 ¶ 5 (command to show ID), 15-10 ¶ 5 (command to stop walking away), 15-5 ¶ 4 (surrounding with vehicles).

*Fifth*, the Muster fails to describe the "violation[s] of [] law" that Border Patrol agents have jurisdiction to enforce or the specific standard for civil immigration violations. Dkt. 64-2 at 2-3. Although Defendants claim it would be "impractical" to "list the laws," Opp. 13, Plaintiffs seek no such "list," but rather a clear statement of the limits on Border Patrol agent authority.

Overall, the Court should order Defendants to issue a new Muster that provides clear instruction to Border Patrol agents regarding reasonable suspicion in this District.

**C.     Border Patrol violated the preliminary injunction during its July 17, 2025 raid on a Sacramento Home Depot.**

**1.     Border Patrol agents stopped people without reasonable suspicion.**

During Border Patrol's July 17, 2025 Sacramento Home Depot raid, agents stopped Latino people "without any individualized suspicion of the particular person to be stopped."

---

[4] Defendants raise a red herring argument regarding the statutory 100-mile rule that Defendants acknowledge does not apply to a Fourth Amendment analysis. Opp. 11-12. No authority supports Defendants' suggestion that the same inferences for reasonable suspicion could be drawn to conduct in Santa Barbara (where a person would purportedly arrive by sea), the border region at issue in *Brignoni-Ponce* (where a person would arrive by car or foot), *and* Bakersfield (which is a significant distance from both locations). The Muster should provide guidance grounded in inferences relevant to *this District*.

*United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994). Defendants argue—based solely on Border Patrol agent accounts in I-213 documents, *see* Dkt. 81-7—that the stops were justified by the "totality of the circumstances," comprising: (1) surveillance showing that two undocumented people had been at the Home Depot on a previous day (but not on July 17, 2025); (2) people were loitering in the Home Depot parking lot; (3) Border Patrol agents' "common knowledge" is that undocumented people "congregate" at Home Depot for cash work; and (4) every person ran from the Border Patrol agents in unprovoked flight. Opp. 14–15, 20.

Defendants' "totality" argument fails, however, because many of the listed "circumstances" are false. Selvin Mejia Diaz's declaration, Dkt. 81-12, corroborated by his Aunt's declaration and supporting documents, Dkt 81-13, demonstrate that the I-213 describing his arrest is a fabrication. He is not a "laborer" as his I-213 claims, Dkt. 81-7 at 0016; he is a high school student, Dkt. 81-12 ¶ 2; Dkt. 81-13 ¶ 5 & Ex. A. When stopped, he was not "loitering" at Home Depot; he was walking to Ross to buy clothing. Dkt. 81-12 ¶ 3; Dkt. 81-13 ¶ 6. When Border Patrol stopped him, a creek, the Ross shopping center building, a large parking lot, and a six-lane road separated Selvin from the Home Depot parking lot. *See* Dkt. 81-9. And his "flight" was not "unprovoked," Dkt. 81-7 at 0019—an armed man dressed like a soldier jumped out of an unmarked vehicle and chased him, Dkt. 81-12 ¶ 3. The declarations of Isael Lopez Mazariegos and Filiberto de Jesus Rivera-Molina also show that they did not run away: Mr. Rivera-Molina was "shocked and could not run" when Border Patrol agents surrounded him, Dkt. 74-9 ¶ 2, and Mr. Mazariegos was grabbed before he was aware Border Patrol was present, Dkt. 74-8 ¶ 3.

To try to attack the declarations, Defendants speculate that the declarants are self-interested because Fourth Amendment violations could benefit the declarants in their removal proceedings. Opp. 17-18. Not only is there no evidence that the declarants knew of such a possibility, but Defendants' insinuation is baseless. Mr. Mazariegos has no such interest because he signed his declaration ***after*** he was expelled to Guatemala. Dkt. 74-8 at 3. Meanwhile, Mr. Rivera-Molina's declaration is corroborated by Mr. Mazariegos's account, and Selvin's declaration is corroborated by his Aunt's declaration and other documents showing that he is a high school student, not a day laborer. *See* Dkt. 81-12; Dkt. 81-13.

Next, Defendants argue that the declarations are "contrary" to video evidence because they did not describe people running. But Defendants' belated reference to a highly edited Fox News video purporting to show snippets of the raid offers no reliable evidence of how events actually unfolded and does not contradict the declarants. *See, e.g.*, *Ruiz v. Walmart Inc.*, 2022 WL 2199832, at *7 (C.D. Cal. Feb. 28, 2022) ("[V]ideo or film can sometimes be misleading or incomplete, depending on editing."). Defendants also claim that there is a "serious question" whether Selvin intended to shop at Ross because the store purportedly would have been closed when Selvin arrived. Opp. 18. Even if Defendants' supposition about store hours were true, that minor point is immaterial to Selvin's credibility (who likely did not know Ross's hours), especially when his Aunt corroborates his intent to shop that morning. Dkt. 81-13 ¶ 6.[5]

The I-213s, by contrast, lack credibility. They each rely on identical, boilerplate language to claim that the arrested individuals were "loitering" in the Home Depot parking lot and ran away in "unprovoked flight" with no individualized description—the sort of "incantation in the agent's 'reasonable suspicion' phrase book" that make the I-213s' "credibility . . . open to challenge." *Rodriguez*, 976 F.2d at 595. Indeed, with one exception, Dkt. 81-7 at 0005, no I-213 describes **any** details about the stop, such as where each person was purportedly "loitering," where that person ran, or where the person was apprehended, *see, e.g.*, *id.* at 0011, 0015, 0019.[6]

Defendants' post-hoc attempts to bolster the credibility of the I-213s fail. Defendants claim that I-213s are owed a "presumption of reliability." Opp. 19-20 (quoting *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022)). But the referenced "presumption" applies to **removal proceedings** where no evidence contradicts the I-213s, *Hernandez*, 52 F.4th at 766; it does not

---

[5] Defendants argue in the alternative that Border Patrol agents could reasonably have stopped Selvin because he was **on his way** to "loiter" at Home Depot. Opp. 18. Not only is this an improper attorney-generated "post-hoc rationalization" unsupported by any evidence, *United States v. Taylor*, 634 F. Supp. 3d 690, 701 (N.D. Cal. 2022), it lays bare that the "loitering" justification for stops is just pretext, and that Selvin was yet another example of agents relying solely on "[h]ow people look" (Latino) in deciding to stop them, Supp. George Decl. Ex. A.

[6] To support credibility of "boilerplate" statements, Defendants cite warrant application cases. Opp. 19-20 (citing *United States v. Rivera*, 527 F.3d 891, 899-900 (9th Cir. 2008); *United States v. Ramirez*, 2021 WL 3615379, at *1 (9th Cir. Aug. 16, 2021)). But those cases concerned whether statutory wiretap requirements had been met, and not credibility in the face of contradicting evidence. And unlike the I-213s, the warrant affidavits were found to have a significant "level of detail." *Rivera*, 527 F.3d at 899.

apply to the contradicted and "open to challenge" boilerplate statements in this federal action. *Rodriguez*, 976 F.2d at 595. Moreover, the rationale underlying the *Hernandez* presumption—no "motive or interest other than to submit accurate and fair reports," *Hernandez*, 52 F.4th at 766—is inapplicable here. The Sacramento raid was a high-stakes public relations event after this Court had preliminarily enjoined Border Patrol: on the day of the raid, Officer Bovino posted a video of a speech he filmed on the steps of the state capitol.[7] Days before, the U.S. Attorney for this District, Michele Beckwith, was terminated after reminding Officer Bovino that Border Patrol would need to follow this Court's PI Order in its planned Sacramento raid. Supp. George Decl. Ex. B. Combined with the reported quotas for deportations, *see* Dkt. 74-2, Border Patrol agents had a significant interest (potentially with their jobs on the line) in relaying a lockstep account of the Sacramento raid. Far from presumptively reliable, the I-213s here were "made-for-litigation" documents intended to justify the stops. *Cf. United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014) (police reports may not be reliable if "adversarial in nature" or "advocacy pieces").

Defendants further attempt to support the I-213s with the declaration of a person that purportedly watched a "live video feed" of the raid. Opp. 21; Dkt. 112-2 ¶ 6. But that declaration is the first time the existence of a "video feed" has been disclosed, despite an explicit discovery request seeking such evidence and lengthy meet-and-confer correspondence. Supp. George Decl. Ex. C at 20; Dkts. 81-5, 81-6. Plaintiffs demanded the video after Defendants filed their Opposition, and Defendants *still* have not produced it. Supp. George Decl. Ex. D. Defendants' submission of a vague declaration of a person who was not even there, and who merely recalls seeing some people run in the video feed, Dkt. 112-2 ¶¶ 6-7, is not a reliable account of what occurred. Nor can a statement that some unidentified people ran establish that the people *actually referenced* in the I-213s did.[8] The Court should find that the I-213s lack credibility.

---

[7] *See* https://www.instagram.com/reel/DMOYGspTWI6.

[8] Defendants' belated reveal of new, unproduced evidence that they claim bear on the events during the raid (including a video feed of the July 17, 2025 raid and the previously referenced Fox News video) should have no impact because that evidence has not been properly put before the Court. However, to the extent the Court is inclined to credit the I-213s or finds the record ambiguous based on such videos, Plaintiffs request alternative relief: an order requiring Defendants to immediately produce all videos and other documentary evidence related to the July 17, 2025 raid, after which Plaintiffs can re-raise the issue or seek more discovery as appropriate.

Even assuming the I-213s are credible (they are not), they do not show reasonable suspicion. Regarding Border Patrol's "surveillance," there is no evidence that the two undocumented people who were previously at the Home Depot parking lot were present on the day of the raid. *See, e.g.*, Dkt. 81-7 at 0018-0019; *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) (reasonable suspicion required as to "particular person stopped"). The I-213s also claim that undocumented people "congregate" at Home Depot parking lots for cash work, but Defendants cite no evidence or statistics to support that claim. *See Melendres v. Arpaio*, 989 F. Supp. 2d 822, 909 (D. Ariz. 2013) ("[T]he idea that day laborers are usually unauthorized aliens is unsupported by any statistics presented at trial."); *cf. Montero-Camargo*, 208 F.3d at 1139 & n.32 ("[M]ore than mere war stories are required to establish the existence of a high crime area"). And as noted above, fear-based "flight" does not justify reasonable suspicion when provoked by armed, masked men jumping out of unmarked vehicles. *Brown*, 925 F.3d at 1157.

### 2. Border Patrol agents failed to perform an individualized assessment of flight risk that considered the totality of the circumstances.

As the Court held, warrantless arrests require an "individualized assessment of the person's flight risk" based on the totality of the circumstances, including an individual's community and family ties. PI Order 76; Dkt. 64-1 (April 4, 2025 Muster). As an initial matter, recent statements from DHS and Officer Bovino call into question whether Border Patrol is applying the correct standard to warrantless arrests as a general matter, as both have issued (incorrect) statements that agents only need "reasonable suspicion" for warrantless arrests. *See* Supp. George Decl. Exs. E at 2, F at 1. And for the flight risk analysis at issue here, the I-213s and the declarations Plaintiffs submitted reflect a lack of any good faith assessment of flight risk. Border Patrol agents did not ask any questions of the declarants about their community or family ties, Dkt. 74-8 ¶ 4; Dkt. 74-9 ¶ 3; Dkt. 81-12 ¶ 6, and no such ties are mentioned in the I-213s.

Defendants argue that flight risk was adequately evaluated due to each person's purported flight from agents. Opp. 16-17. As discussed above, however, the claim that each person ran was not credible and, in any event, does not excuse Border Patrol agents from evaluating the "totality of the circumstances," Dkt. 64-1 at 2; *see Nava v. DHS*, 435 F. Supp. 3d 880, 891-92 (N.D. Ill. 2020), which may show that someone is not a flight risk despite running out of fear of harm from

armed masked men. Whether Border Patrol agents were ultimately correct about "flight risk" is not the point—they must conduct the required analysis in the first place.[9] *See* PI Order 61.

### D. The Court should grant Plaintiffs' documentation requests to effect the preliminary injunction's purpose.

Defendants offer no convincing rebuttal to Plaintiffs' requests to enforce or adjust the PI Order's documentation requirements. Other than claiming that boilerplate is common on "government forms," Opp. 19-20, Defendants offer no justification for use of boilerplate in documentation that the Court ordered for the purpose of evaluating Border Patrol agents' conduct. Next, Defendants claim, without evidence, that it would be "burdensome" to serve documentation within "three" days rather than seven days of a request, Opp. 8, but Plaintiffs seek only a ***four-***day turnaround, which is needed to reach witnesses before Defendants deport them, *see* Mot. 25.

Finally, the PI Order plainly requires Border Patrol to document ***all*** stops and warrantless arrests in this District. *See* PI Order 86-87 (stating that "[a]ny Border Patrol agent who conducts a detentive stop in this District" or who "conducts a warrantless arrest" must "document the facts and circumstances surrounding" the stop and warrantless arrest). Defendants contend that the request falls outside of the scope of the relief requested in the Complaint, Opp. 21, but the documentation requirements exist to ensure compliance with the PI Order in light of prior violations, which include the arrest of a U.S. Citizen that Border Patrol agents pretextually justified based on a criminal allegation of "alien smuggling." *See* Mot. 22 (discussing Dkt. 15-4 ¶ 9). This fact pattern appears to have repeated in the July 17, 2025 arrest of a U.S. citizen—Defendants claim he committed a crime, but then dropped the indictment. *See United States v. Castillo*, No. 2:25-mj-00109 (E.D. Cal., terminated 8/19/25). Such tactics are now common. *See* Supp. George Decl. Ex. G (reporting over 170 U.S. citizens detained this year with charges often dropped). The Court should reject Defendants' attempt to unilaterally alter the Court's PI Order.

## III. CONCLUSION

The Court should grant Plaintiffs' Motion and order the requested relief.

---

[9] Defendants argue that for certain arrestees, the I-213s indicate that Border Patrol agents did assess community ties. Opp. 16-17. But those I-213s merely state in boilerplate that "no claims" were made regarding a "domicile" or "owning a home"—indicating that the arrestee was ***never asked*** about those topics (or other topics relevant to community ties). Dkt. 81-7 at 0020, 0025, 0030, 0035, 0055.

| | | |
|---|---|---|
| Dated: October 24, 2025 | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA |
| | By: | */s/ Bree Bernwanger* (as authorized on October 24, 2025) |
| | | BREE BERNWANGER<br>MICHELLE (MINJU) Y. CHO<br>LAUREN DAVIS<br>SHILPI AGARWAL |
| Dated: October 24, 2025 | By: | AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA |
| | | */s/ Mayra Joachin* (as authorized on October 24, 2025) |
| | | MAYRA JOACHIN<br>EVA BITRAN |
| Dated: October 24, 2025 | By: | AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES |
| | | */s/ Brisa Velazquez Oatis* (as authorized on October 24, 2025) |
| | | BRISA VELAZQUEZ OATIS |
| | | Attorneys for Plaintiffs |
| Dated: October 24, 2025 | | KEKER, VAN NEST & PETERS LLP |
| | By: | */s/ Jason George* |
| | | AJAY S. KRISHNAN<br>JASON GEORGE<br>JULIA L. GREENBERG<br>REAGHAN E. BRAUN |
| | | Attorneys for Plaintiffs |

Dated: October 24, 2025         By:   MARTINEZ AGUILASOCHO LAW, INC.

*/s/ Edgar Ivan Aguilasocho* (as authorized on October 24, 2025)
MARIO MARTINEZ
EDGAR IVÁN AGUILASOCHO

Attorneys for Plaintiff United Farm Workers