UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>KRISTI NOEM, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00246-JLT-CDB<br><br>ORDER RESOLVING THE PARTIES' INFORMAL DISCOVERY DISPUTE REGARDING PROTECTIVE ORDER<br><br>(Docs. 127, 128)<br><br>**7-Day Deadline** |

  Pending before the Court is a discovery dispute that the parties have agreed to submit to the Court for adjudication through the Court's informal discovery dispute procedure. (Docs. 126-29). The dispute involves three provisions of the parties' proposed protective order relating to (1) the protection to be afforded the names and job titles of certain senior government officials, (2) whether Plaintiffs' discovery materials may be used by Defendants for purposes besides the litigation of this action, and (3) whether Plaintiffs may share videos designated by Defendants as "Attorney's Eyes Only" to persons believed to be depicted therein to facilitate Plaintiffs' preparation of the case for trial.

  Following their submission of a joint discovery dispute letter brief (Docs. 127, 128), on December 4, 2025, the Court convened on the record with counsel for Plaintiffs (Julia Greenburg, Christina Lee, and Michelle Cho) and counsel for Defendants (Aysha Iqbal and Tim Ramnitz) via Zoom for informal discovery dispute conference. (Doc. 129). At the beginning of the conference, the parties agreed to resolution of the identified discovery disputes outside the Local Rule 251 formal

1

parameters and agreed to abide by an anticipated order of the Court resolving the disputes to the exclusion of seeking relief through a motion to compel or otherwise, reserving only the parties' rights to seek review of the undersigned's order by the assigned district judge pursuant to Fed. R. Civ. P. 72(a).

## I.     Relevant Background

Plaintiffs United Farm Workers ("UFW"), Oscar Morales Cisneros, Wilder Munguia Esquivel, Yolanda Aguilera Martinez, Juan Vargas Mendez, and Maria Guadalupe Hernandez Espinoza (collectively, "Plaintiffs") initiated this action with the filing of a complaint on February 26, 2025, seeking declaratory and injunctive relief related to detentive stops and arrests by U.S. Border Patrol ("USBP"). (Doc. 1). Defendants are Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), Pete R. Flores, in his official capacity as Acting Commissioner of U.S. Border Patrol ("USBP"), Michael W. Banks, in his official capacity as Chief of U.S. Border Patrol, and Gregory K. Bovino, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol (collectively, "Defendants").

In their complaint, Plaintiffs "seek to represent three classes of individuals who have been or will be subjected to the three unlawful practices this lawsuit alleges: detentive stops regardless of reasonable suspicion of unlawful presence, arrests regardless of probable cause of flight risk, and voluntary departure without a knowing and voluntary waiver of rights." (*Id*. at 61-62, ¶ 312). Specifically, Plaintiffs identify the following claims for relief: (1) warrantless arrests without probable cause of flight risk in violation of 8 U.S.C. § 1357(a)(2); (2) warrantless arrests without probable cause of flight risk in violation 8 C.F.R. § 287.8(c)(2)(ii); (3) stops without reasonable suspicion in violation of the Fourth Amendment; and (4) voluntary departure without a knowing and voluntary waiver of rights in violation of the Fifth Amendment. (*Id*. at 65-69). Plaintiffs seek declaratory and injunctive relief, enjoining further violations of their rights under the applicable statutes and the U.S. Constitution. (*Id*. at 69-70).

On April 29, 2025, the Court (1) granted Plaintiffs' motion for provisional class certification of a Suspicionless Stop Class and a Warrantless Arrest Class, and (2) granted Plaintiff's motion for a preliminary injunction. (Doc. 47). Defendants appealed the Court's order to the Ninth Circuit Court

of Appeals on June 26, 2025 (Doc. 59), and that appeal remains pending. They thereafter filed a motion to dismiss (Doc. 64), which remains pending.

On August 29, 2025, Plaintiffs filed a pending motion to enforce judgment in which they assert that Defendants violated the Court's preliminary injunction. (Doc. 81). On October 17, 2025, Defendants moved to stay all proceedings pending disposition of their appeal of the Court's order granting class certification and issuing a preliminary injunction. (Doc. 115). All three motions referenced above are fully briefed; the motion to stay is under submission and the other two motions are scheduled for hearing before the presiding district judge on February 5, 2026. *See* (Docs. 122, 125).

## II.    Governing Legal Standards

Federal Rule of Civil Procedure 26(c), which authorizes the Court to enter protective orders, "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Rule 26(c) states in relevant part that for good cause shown, the court may make an order to protect "a party or person" from "annoyance, embarrassment, oppression, or undue burden or expense." Fed R. Civ. P. 26(c). Rule 26 cites examples of the types of orders a court is authorized to enter, which "include any order prohibiting the requested discovery altogether, limiting the scope of the discovery, or fixing the terms of disclosure." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (citing Fed. R. Civ. P. 26(c)). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Id*. (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id*. at 1063-64 (quotation & citation omitted). The Ninth Circuit has recognized that "the chilling effect" disclosure may cause to a party's ability to effectuate her rights, and in civil rights actions, the resulting burden to

the public interest, may constitute a substantial and particularized harm warranting a protective order. *See id.* at 1064, 1065.

### III. Discussion

#### A. Paragraph 12 - Senior Leadership Names/Titles

Plaintiffs argue that Defendants should not be permitted under the parties' protective order to designate and treat as "Confidential" the names and job titles of federal employees or contractors in a position of Chief Patrol Agent ("CPA") and above. Defendants, in contrast, argue that only the names and job titles of federal and nonfederal employees and contractors below the position of Executive Assistant Commissioner (or below the position of Chief in the case of USBP employees/contractors) should be eligible for confidential status. Resolution of this issue has particular significance as it relates to Defendant Gregory K. Bovino, Chief Patrol Agent within USBP, and whether his name and job title may be deemed confidential, and, thus, protected from disclosure under the parties' proposed protective order.

In support of their bid for authorization to treat the names of CPAs (including Defendant Bovino) and their job title as "Confidential," Defendants proffer the affidavit of Michel M. James, Deputy Assistant Commissioner of CBP's Office of Professional Responsibility. *See* (Doc. 128-2). James attests in general that there has been a reported, marked increase of threats against law enforcement agents and officers and other CBP employees in recent months associated with their perceived involvement in ongoing DHS enforcement initiatives. *Id.* ¶ 5. James notes that the public availability of government employees' identifiers has facilitated the efforts of "bad actors" to harass and intimidate and cause harm to them, including through "doxing." *Id.* ¶¶ 5-8. James also attests to knowledge that unidentified criminal cartels have offered bounties and rewards for information about or for the causing of harm to ICE and CBP employees, including rewards that escalate depending on the seniority of the ICE/CBP official targeted. *Id.* ¶ 10.

First, Defendants' arguments that the names and titles of identified CPAs is "unnecessary to litigate the issues" in the case and otherwise constitutes information that fails to meet the standard of relevance under Rule 26 (Doc. 127 at 5-6) are not compelling. The issue is whether Defendants are entitled to a protective order restricting access and disclosure of information under Rule 26(c), which

implicates a "good cause" standard (not, as Defendants suggest, a standard requiring the party opposing protective status to demonstrate the information is "necessary" to the litigation). Separately, a CPA's name and title need not independently satisfy Rule 26's relevance standard to be discoverable if the name/title appears in an otherwise relevant document subject to discovery. *See Clark v. City of Los Angeles*, No. CV 20-10768 CAS (PVCx), 2023 WL 9687608, at *5 (C.D. Cal. Nov. 20, 2023) (citing cases) (noting "courts in this Circuit typically conclude that the unilateral redaction of documents on the ground that the producing party deems the information irrelevant is generally improper") (citing cases); accord, *Ludlow v. Flowers Foods, Inc.*, No. 18-cv-01190-JO-JLB, 2023 WL 6370903, at *6 (S.D. Cal. Aug. 2, 2023).

Second, CPAs unquestionably are senior officials within CBP and their names and job titles are pervasively known throughout the public domain.[1] Contrary to Defendants' claim that CPAs are not identified on CBP's public-facing website (Doc. 127 at 6), a review of CBP's website reveals scores of media releases and documents, including at least 40 from 2025 alone, identifying CPAs by name and job title and routinely quoting them as they tout their units' operational successes.[2] Significantly, as with years past, CBP has issued media releases upon the promotion of CPAs, including for at least three CPAs promoted during 2025, that publicize not just the CPA's name, but his/her photo and biography.[3]

---

[1] For instance, CPAs occasionally appear as witnesses or otherwise submit testimony before congressional committees. *See, e.g.*, https://www.congress.gov/118/meeting/house/115281/witnesses/HHRG-118-GO00-Bio-ChavezG-20230207.pdf and https://www.congress.gov/118/meeting/house/115281/witnesses/HHRG-118-GO00-Bio-ModlinJ-20230207.pdf.

[2] *E.g.*, "Unprecedented Number of Apprehensions by the U.S. Border Patrol in Maine" (11/20/2025), available at https://www.cbp.gov/newsroom/local-media-release/unprecedented-number-apprehensions-us-border-patrol-maine (quoting CPA Derrick Stamper in connection with CBP apprehensions of members of MS-13, SATG, and Tren de Aragua, as well as an individual with an Interpol Red Notice for murder).

[3] *E.g.*, "Derrick W. Stamper selected Chief Patrol Agent Houlton Sector" (9/16/2025), available at https://www.cbp.gov/newsroom/local-media-release/derrick-w-stamper-selected-chief-patrol-agent-houlton-sector; "Craig Shepley selected as Deputy Chief Patrol Agent of Houlton Sector" (7/14/2025), available at https://www.cbp.gov/newsroom/local-media-release/craig-shepley-selected-deputy-chief-patrol-agent-houlton-sector; "Interim Chief Patrol Agent Walter N. Slosar appointed to lead El Paso Sector" (2/6/2025), available at https://www.cbp.gov/newsroom/local-media-release/interim-chief-patrol-agent-walter-n-slosar-appointed-lead-el-paso.

1  Defendants argue that Congress's provision for a FOIA exemption permitting law enforcement
2  agencies to redact sensitive law enforcement information to protect employees from harassment and
3  retaliation supports their position that CPAs, likewise, should be protected from the same risks
4  inherent in disclosure of their names and job titles.  (Doc. 127 at 7).  But Defendants' analogizing to
5  FOIA is not persuasive.  Like the Court's inquiry here, which requires a balancing of competing
6  interests, a FOIA analysis requires balancing the public's interest in disclosure against an affected
7  government employees' privacy interests.  *See U.S. Dep't of Defense v. Fed. Labor Relations Auth.*,
8  510 U.S. 487, 496 (1994).  Under FOIA, the public interest is implicated where disclosure of the
9  information at issue would contribute significantly "to public understanding of the operations or
10 activities of the government."  *Id*.

11  While the Court shares Defendants' concerns about the potential risks to the safety of law
12 enforcement inherent employees in unrestricted disclosure of discovery materials, here, the narrow
13 issue in dispute involves the treatment that may be afforded in discovery to the names and job titles of
14 publicly identifiable senior government officials – not their addresses, phone numbers, or other facility
15 identifiers, which the parties agree to treat as confidential.  Given the nature of the information at issue
16 and the fact that the details sought to be protected are widely known and available in the public
17 domain, Defendants do not persuasively demonstrate how foreclosing them from designating such
18 names and job titles as "Confidential" will materially increase the likelihood that the various forms of
19 harm addressed in their papers, such as doxing, will occur absent protection.

20  **B.     Paragraph 16 - Designated Materials/Disclosure to Law Enforcement**

21  While the parties agree in general that materials exchanged in discovery may be used only for
22 the purposes of the litigation of this action, Defendants seek a carve-out that would permit them to use
23 and share discovery materials with others "for law enforcement purposes."  Defendants argue that
24 "restrict[ing] DHS' use of Designated Material obtained through discovery in this action remains
25 beyond the scope of Federal Rule of Civil Procedure 26 and beyond the authority of this Court."
26 (Doc. 147 at 10).  Defendants further proclaim that "[p]rotective orders cannot be used to supervise,
27 influence, or limit how the Executive uses information when carrying out its statutory duties, even in a
28 period of heightened enforcement. Immigration enforcement priorities are policy choices made within

the Executive Branch." *Id*. They relatedly assert that protective orders "do not create judicial power that Congress has not given," and analogize a protective order prohibiting them from using discovery materials in furtherance of law enforcement aims as a "backdoor injunction" that would "regulate DHS's ability to make enforcement decisions." *Id*. Defendants also invoke provisions of the Privacy Act and the Intelligence Reform and Terrorism Protection Act of 2004 for the proposition that a court may not enter a protective order that restricts an agency's ability to use and share discovery materials in furtherance of its law enforcement mission because doing so would undermine Congress's intent (as manifest in these statutes) to facilitate the sharing of information across law enforcement agencies.

      Here, Plaintiffs carry their burden of showing good cause for a protective order by demonstrating specific harm or prejudice that would result from disclosure. For example, Plaintiffs proffer that disclosure of putative class members' identifying information, including information about their immigration status, "may chill them from coming forward for fear of jeopardizing family members or friends." (Doc. 127 at 8-9). Courts properly may take this type of harm into account under Rule 26(c) in weighing whether to enter a protective order. *Rivera*, 364 F.3d at 1066-65. Plaintiffs also observe that the "carve out" Defendants seek in the protective order would permit them to use confidential information produced in discovery in furtherance of immigration enforcement operations. Defendants do not disavow this – to the contrary, the arguments Defendants raise in opposition to Plaintiffs' request to prohibit disclosure of discovery materials for purposes unrelated to the litigation of this action tend to confirm their desire and intent to use such information for immigration enforcement purposes.

      Having concluded Plaintiffs' show good cause, the Court balances the public and private interests to determine whether a protective order is necessary. First, although Defendants argued in the parties' briefing (without supporting authority) that Rule 26(c) does not authorize the Court to impose the protective order provision in dispute here (Doc. 127 at 10), counsel for Defendants retreated from that argument during the discovery dispute hearing. Similarly, though Defendants argued in the parties' briefing (without supporting authority) that prohibiting them from using and sharing discovery materials in furtherance of their immigration enforcement mission is "beyond the authority of this Court" (*id*.), counsel clarified Defendants' position during the discovery dispute

7

hearing to be that barring them from using/sharing discovery materials outside of the litigation would conflict or be inconsistent with Defendants' ability to execute their law enforcement missions pursuant to authorizing statutes.

The Court acknowledges the important interest shared by Defendants and the public in seeing the nation's immigration laws enforced faithfully and appreciates that discovery materials at issue in this action might be useful in Defendants' efforts to undertake immigration enforcement operations. But those discovery materials that have been or are expected to be exchanged in this case are "provided for the *sole purpose* of assisting in the preparation and trial, or the settlement, of litigated disputes" here. *Seattle Times Co*., 467 U.S. at 34 (emphasis added). Accord *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."). Notwithstanding their arguments to the contrary, Defendants cite no statutory, regulatory, or other authority requiring a court to permit materials exchanged for the "sole purpose" of discovery to be used by law enforcement for other purposes. As the protective order Plaintiffs seek does not deprive Defendants of accessing information they otherwise do or would have recourse to outside of this litigation, it is not contrary to or inconsistent with Defendants' governing statutory and regulatory authorities. *See Aguilar v. ICE*, No. 07 Civ. 8224(JGK)(FM), 2009 WL 1789336, at *5 (S.D.N.Y. 2009) (barring ICE from using discovery materials in connection with third-party prosecutions, but noting that if "ICE learns from other sources of illegal activity by the Plaintiffs or their witnesses, it certainly may proceed with a prosecution on the basis of that independently-obtained information"). *See also Cazorla v. Koch Foods of Mississippi, L.L.C*., 838 F.3d 540, 547 (5th Cir. 2016) (permitting employer to discover employees'/applicants' visa status pursuant to protective order that barred it from sharing the information with law enforcement "unless a failure to do so would constitute a violation of criminal law.").

On balance, the Court finds that Defendants' and the public's interest in using discovery materials in connection with unrelated immigration enforcement activities is outweighed by Plaintiffs' and the public's interest in ensuring that the parties, their families, and witnesses in this action may fully participate without fear of reprisal or retribution. *E.g., Puente Arizona v. Arpaio*, CV14-1356

1  PHX DGC, 2016 WL 7743406, at *2 (D. Ariz. Jan. 22, 2016) (permitting discovery of identifying
2  information and immigration status of plaintiffs' family members and deponents subject to protective
3  order prohibiting dissemination of such information outside parties' litigation teams; concluding that
4  "legitimate concerns about possible disclosure of information that could lead to criminal prosecution
5  or deportation … are largely addressed by the existence of the protective order as narrowed in this
6  order").

   C.  **Paragraph 18 – Attorneys' Eyes Only Treatment for Law Enforcement Videos**

8  Plaintiffs seek to add a provision to the parties' agreed-upon terms for an "Attorneys' Eyes
9  Only" category of protected information that would permit counsel to show a person counsel believes
10 in good faith is depicted in a photo or video so designated "for purposes of obtaining sworn testimony
11 regarding the events recorded, where the person agrees to be bound by [the] Protective Order."  (Doc.
12 127-1 ¶ 18(g)).  Defendants oppose relaxing "Attorneys' Eyes Only" treatment in the manner
13 proposed by Plaintiffs, noting that video footage may reveal sensitive law enforcement information,
14 including law enforcement tactics, techniques, and procedures about CBP's non-public Small
15 Unmanned Aircraft Systems Program operations and capabilities, that could be used by others to
16 undermine DHS's law enforcement activities.  (Doc. 127 at 12).

17 The Court is unable to resolve this issue presently because neither it nor Plaintiffs have access
18 to Defendants' video footage that reportedly prompted Plaintiffs to seek this exception to the
19 "Attorneys' Eyes Only" provision.  *See* (Doc. 127 at 11).  The Ninth Circuit recognizes that certain
20 law enforcement techniques and procedures are deserving of heightened protection in discovery.  *Cf.*
21 *Pomares v. Dep't of Veterans Affairs*, 113 F.4th 870, 886 (9th Cir. 2024) *with Rosenfeld v. U.S. Dep't*
22 *of Justice*, 57 F.3d 803, 815 (9th Cir. 1995).  Accordingly, Plaintiffs may renew their request for relief
23 from the "Attorneys' Eyes Only" provision after they have received and reviewed the subject video
24 footage.  In any such renewed request, Defendants will bear the burden of demonstrating
25 particularized harm that would result from disclosing the footage to parties or others believed to be
26 depicted in the footage and Plaintiffs will bear the burden of identifying with specificity the reasons
27 why disclosure of the footage is necessary and appropriate and why no alternative arrangements could
28

be pursued to protect any legitimate interests Defendants' hold in protecting the footage from disclosure. *See Rivera*, 364 F.3d at 1063-64.

**IV.  Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED, within seven (7) days of entry of this order, the parties shall submit a stipulated protective order (Doc. 127-1) that incorporates Plaintiffs' proposed language in Paragraph 12 and Paragraph 16 and shall remove Plaintiff's proposed language in Paragraph 18.

IT IS SO ORDERED.

Dated:  **December 9, 2025**                              _____
                                                                                      UNITED STATES MAGISTRATE JUDGE