UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, *et al*., | Case No. 1:25-cv-00246-JLT-CDB |
| Plaintiffs, | ORDER RESOLVING THE PARTIES' INFORMAL DISCOVERY DISPUTES REGARDING PLAINITFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS AND ESI |
| v. | |
| KRISTI NOEM, *et al*., | (Doc. 163) |
| Defendants. | |

Pending before the Court is a discovery dispute that the parties have agreed to submit to the Court for adjudication through the Court's informal discovery dispute procedure.

Following their submission of a joint discovery dispute letter brief (Doc. 163), on March 25, 2026, the Court convened on the record with counsel for Plaintiffs (Natalie Heim, Julia Greenburg, Reaghan Braun, Bree Bernwanger, Jason George, and Franco Muzzio) and counsel for Defendants (Aysha Iqbal, Tim Ramnitz and Olga Kuchins) via Zoom for informal discovery dispute conference.  (Doc. 165).  At the beginning of the conference, the parties agreed to resolution of the identified discovery disputes outside the Local Rule 251 formal parameters and agreed to abide by an anticipated order of the Court resolving the disputes to the exclusion of seeking relief through a motion to compel or otherwise, reserving only the parties' rights to seek review of the undersigned's order by the assigned district judge pursuant to Fed. R. Civ. P. 72(a).

**I.        Relevant Background**

The parties are familiar with the relevant background of the case, which the undersigned has summarized in an order resolving an earlier discovery dispute (Doc. 130) and incorporates here.

Relevant to the parties' pending discovery disputes, on May 23, 2025, the Court entered an order denying Defendants' request to vacate the scheduling conference and to be exempted from Rule 26 discovery obligations.  (Doc. 56).  The Court rejected Defendants' contention that this case is purely an action for review on an administrative record, finding instead that Plaintiffs' claims do not "merely present the question of whether the process at issue was arbitrary and capricious under the APA, but additionally, independent constitutional claims for which the record of the agency's decision making would not comprehensively address." *Id*. at 11.  The Court observed that while it found discovery outside the administrative record is warranted, it was not then "called upon to define the scope and nature of available discovery and expects the parties will, consistent with this order, cooperate to ensure proposed discovery is consistent with the principles of relevance and proportionality.  *See* Fed. R. Civ. P. 26(b)(1)." *Id*.

Although it is abundantly clear from the parties' filings that they have attempted to cooperate to ensure proposed discovery is consistent with the principles of relevance and proportionality, despite months' of effort, they have resolved relatively few of their disagreements about the appropriate nature and scope of discovery in this action.  They now present to the Court for resolution numerous disputes that involve (1) Plaintiffs' first and second sets of requests for production of documents and Defendants' objections and responses thereto (*see* Doc. 163, Declaration of Natalie R. Heim ["Heim Decl."] Exhibit ["Ex."] A-D)), and (2) Plaintiffs' request for entry of an order governing production of electronically stored information ("ESI") that would broaden Defendants' discovery obligations beyond what Defendants are amendable to with respect to search terms, hit reports, and custodians to search.

///

///

2

## II.      Governing Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in evidence to be discoverable. *See, e.g., Ford v. Unknown*, No. 2:21-cv-00088-DMG-MAR, 2023 WL 6194282, at *1 (C.D. Cal. Aug. 24, 2023). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Although relevance is broadly defined, it does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978). Relevant here, in response to a party's request for production of documents, the receiving party "is obliged to produce all specified relevant and nonprivileged documents or other things which are in its 'possession, custody or control' on the date specified in the request." *Jadwin v. Cnty. of Kern*, No. 1:07-cv-0026-OWW-TAG, 2008 WL 2025093, at *1 (E.D. Cal. May 9, 2008) (quoting Fed. R. Civ. P. 34(a)).

Although Rule 26 does not expressly assign to the requesting party the burden of establishing that the information sought is relevant, the natural reading of the text (i.e., providing that a party may obtain discovery if relevant to its claim or defense) suggests as much. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied"). Further, courts (including judges of this Court) routinely apply a rule that the requesting party bears the burden of establishing relevance. *E.g., Owen v. Hyundai*, 344 F.R.D. 531, 535 (E.D. Cal. 2023); *Duenez v. Cty. of Manteca*, No. 2:11–cv–1820 LKK AC, 2013 WL 684654, at *3 (E.D. Cal. Feb. 22, 2013); *Soto v. Cty. of Concord*, 162 F.R.D. 603, 610 (N.D. Cal.1995). Assuming the propounding party carries this burden, "[t]he party who resists discovery has the burden to

3

show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objection." *Jadwin*, 2008 WL 2025093, at *1.

### III.   <u>Discussion</u>

The key question presented for the Court's resolution that is implicated in all of the parties' discovery disputes is whether, as Plaintiffs maintain, discovery should be permitted with respect to all large scale and multi-day immigration enforcement operations nationwide, or whether, as Defendants maintain, discovery should be limited to the immigration enforcement operations that are directly at issue in Plaintiffs' claims (Operation Return to Sender and an operation occurring more recently in Sacramento as part of the nationwide Operation At Large).  To answer this question, the Court considers the scope of Plaintiffs' claims.

Plaintiffs' non-APA claims allege that Defendants violated Plaintiffs' rights under the Fifth Amendment to the U.S. Constitution.  Plaintiffs represent class members of two certified classes, defined as follows:

> <u>Suspicionless Stop Class</u>: All persons since January 6, 2025, who have been or will be subjected to a detentive stop by Border Patrol in this district without a pre-stop, individualized assessment of reasonable suspicion whether the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States.

> <u>Warrantless Arrest Class</u>: All persons since January 6, 2025, who have been arrested or will be arrested in this district by Border Patrol without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

*See* (Doc. 47 at 86).

Among the relevant allegations in the complaint, Plaintiffs assert that U.S. Border Patrol's ("USBP") public statements reflect that they intend to replicate Operation Return to Sender across the state and that the conduct of Defendants and immigration agents/officers/ authorities within their departments and agencies that is at issue in Plaintiffs' Fourth Amendment claims is part of a USBP-wide policy.  (Complaint ¶¶ 247, 249, 264).

Plaintiffs argue that "[e]vidence of similar practices in other locations is clearly relevant to determining whether Defendants implemented and continue to maintain an

unlawful policy or practice in this District." (Doc. 163 at 9) (citing cases).  The Court already has acknowledged that certain information about Defendants' operations in other districts bears on or informs some of Plaintiffs' allegations: for instance, that Defendants conducted an operation similar to and several months after Operation Return to Sender in a neighboring district reinforces USBP's expressed intent to return to the Eastern District of California for additional operations.  *See* (Doc. 47 at 83 & n.16).

However, the relevance of information beyond the immigration enforcement operations that are directly at issue in Plaintiffs' claims (Operation Return to Sender and an operation occurring more recently in Sacramento as part of the nationwide Operation At Large) is mostly tangential.  For instance, the Court's observation when granting Plaintiffs' motion for preliminary injunction that information about out-of-district operations confirms USBP's intent to conduct future operations in this district was germane to the irreparable harm and imminence factors a plaintiff must establish to be entitled to preliminary injunctive relief.  But whether Plaintiffs may prove their claims that Defendants violated their rights under the Fourth Amendment in this district largely is independent of whether Defendants undertook similar operations in other districts.  Likewise, whether and the extent to which Defendants' conduct that allegedly violated Plaintiffs' civil rights in this action is similar to or even an outgrowth of a nationwide policy reflective in Defendants' undertaking of other operations in other districts bears only marginally on Plaintiffs' claims.  *See Oppenheimer Fund, Inc.*, 437 U.S. at 350-51 (noting that while relevance is broadly defined, it does have "ultimate and necessary boundaries.").

Although Plaintiffs allege in the complaint that Defendants' conduct is part of USBP's "policy, pattern, or practice" of undertaking unconstitutional detentive stops, arrests without supporting probable cause, and involuntary removals of noncitizens from the country, the allegations do not expressly state or suggest that the conduct at issue is part of a *nationwide* policy, pattern, or practice.  Importantly, class members are limited to people who were or will be subjected to a detentive stop or warrantless arrest by USBP *in this district*.  Nor must Plaintiffs establish any such nationwide policy/pattern/practice in maintaining their individual

and class action Fourth Amendment claims. For this reason, Plaintiffs' reliance on authorities permitting the taking of broad discovery of an agency's relevant policies and practices in support of a *Monell* claim is mostly unpersuasive because a *Monell* plaintiff *must* establish the existence of a policy or practice to prevail on a municipal liability claim. *See* (Doc. 163 at 9) (citing *Parkinson v. Desormeau*, 22 CV 851 (LDH)(LB), 2024 WL 4973490, at *5 (E.D.N.Y. Dec. 4, 2024) (noting that conduct subsequent to or contemporaneous with challenged conduct can evidence the existence of preceding municipal policy or custom under *Monell*).

Counsel for Defendants acknowledged during the informal discovery dispute conference that a recent immigration enforcement operation in Sacramento (within this district) that is the subject of the Court's order granting in part Plaintiffs' motion to enforce the preliminary injunction (Doc. 176) is part of USBP's nationwide Operation At Large. *See* (Doc. 175 at 12-13, 27). As such, Counsel conceded that information about Operation At Large in general (even, presumably, information not limited to the undertaking of Operation At Large activities in this district) bears at least "circumstantial" relevance to Plaintiffs' claims. *Id*. at 19. Yet, information is discoverable only if it is relevant *and* proportional to the needs of the case. Neither in the parties' joint letter brief nor during argument did counsel for Plaintiffs attempt to undertake or offer an assessment of how the broad discovery they seek concerning all large scale immigration enforcement operations nationwide is proportional to the needs of the case.

Take, for instance, Plaintiffs' request for production ("RFP") No. 3, copied verbatim below:

> All training materials, recordings of trainings, and notes from trainings related to Large- Scale or multi-day immigration enforcement operations that were created, shared, or relied on by DHS, ICE, or CBP since January 1, 2022. These include but are not limited to: training materials concerning how to carry out such enforcement operations; training materials concerning DHS, ICE, or CBP officer conduct during such enforcement operations; training materials concerning establishing the requisite level of suspicion or cause to conduct a Stop or Arrest; training materials concerning what to do once a Stop is initiated; training materials concerning how and/or when to document a Stop; training materials concerning the determination of immigration status or whether someone is in the U.S. in violation of immigration law; training materials concerning probable cause; training material concerning reasonable suspicion; training materials concerning warrantless Arrests; training materials concerning the determination of

flight risk; and training materials concerning the processing of detainees at facilities, such as at a Makeshift Facility or the El Centro Detention Facility.

The Court agrees that agency-wide training materials covering subjects that are squarely at issue in this case (*i.e.*, how to undertake an immigration enforcement operation, what predication is required to stop, detain, and arrest a subject, how to document a detentive stop) are, at least, marginally relevant to Plaintiffs' claims that their constitutional rights were violated during operations undertaken in this district during a defined time period. However, Plaintiffs make no argument, and the Court sees no basis to find that "all" training materials relating to all of Defendants' large-scale or multi-day immigration enforcement operations, including in other districts, is proportional to the needs of this case.

In contrast to the disproportional call of RFP No. 3, Plaintiffs' RFP No. 22 is tailored and limited to materials relating to operations undertaken in this district:

All audio and video recordings taken during enforcement encounters and enforcement actions during Large-Scale or multi-day enforcement operations in the Eastern District of California, including but not limited to Operation Return to Sender, including all audio and video recordings taken by cameras, video recording devices, and cell phones of CBP personnel, and by Incident-Driven Video Recording Systems (IDVRS), including vehicle, non-integrated vessel, and body-worn camera systems by CBP personnel during enforcement encounters and enforcement actions.

While the Court generally agrees with Defendants that the proportionality standard embedded within Rule 26(b)(1), applied here, appropriately should limit the universe of discovery to materials bearing on Operation Return to Sender and Operation At Large as executed in this district,[1] the Court disagrees with Defendants' arguments relating to the parties' disagreements about the relevant time period and relevant collection sources.

Defendants argue that the time period for discoverable materials should be from November 2024 through July 2025 (the date of the Sacramento enforcement operation). Yet,

---

[1] Defendants' separate objection to Plaintiffs' RFPs on overbreadth grounds is well taken. Counsel for Plaintiffs agreed in part at the discovery dispute conference that, with respect to RFP No. 3, they were not seeking, for instance, every single "note" concerning all relevant trainings, notwithstanding RFP No. 3 appears to call for such. The Court commends to Plaintiffs that some of the proportionality and overbreadth issues discussed herein could be mitigated by use of language akin to "Documents sufficient to show …" instead of "All documents …." *See, e.g.*, RFP No. 5.

7

the certified classes consist of members who have been "*or will be*" subjected to a USBP detentive stop or warrantless arrest in the district.  As class members' claims continue to accrue into the future, the Court finds that discovery of responsive materials should be made throughout the period of non-expert discovery and subject to the parties' continuing obligation to supplement their productions.  *See* Fed. R. Civ. P. 26(e).

Defendants also argue that their efforts to search for and collect discoverable materials should be limited to staff custodians within the El Centro Sector (the USBP geographical division responsible for planning and undertaking the immigration enforcement operations at issue in this district).  (Doc. 163 at 6-7).  But the premise of Defendants' argument – that any and all discoverable materials about Operations Return to Sender and the Sacramento execution of Operation At Large – necessarily would be maintained and/or possessed by staff within the El Centro Sector is unconvincing.  The Court cannot presume that other offices within DHS and USBP outside of the El Centro Sector do not have responsive materials, nor that any materials neither transmitted to nor shared with the El Centro Sector necessarily are irrelevant.

In sum, the Court credits Plaintiffs' argument that information pertaining to out-of-district, large-scale immigration enforcement operations is at least marginally relevant to the issue of whether "Defendants implemented and continue to maintain an unlawful policy or practice in this District."  (Doc. 163 at 9).  However, as Plaintiffs fail entirely to address in any meaningful way how their proposed discovery satisfies Rule 26's proportionality standard, for the reasons set forth above, the Court finds that the importance of discovery concerning out-of-district operations in resolving the issues of whether constitutional violations occurred in this district plainly is outweighed by the burden or expense such discovery undoubtedly would entail.

As the Court has observed above, it is possible some of Plaintiffs' RFPs could be rehabilitated by using language that narrows the demand from "all documents" to "documents sufficient to show."  However, it is not the province of the Court to rewrite Plaintiffs' disproportional and overbroad discovery demands.  "Particularly when a party stands on an

overly broad request and does not make a reasonable attempt to narrow it or to explain the need for such a broad range of documents and/or information, the Court will not rewrite a party's discovery request to obtain the optimum result for that party. That is counsel's job." *Sanchez Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2015 WL 12914435, at *3 (S.D. Cal. Mar. 30, 2015) (internal quotation and citation omitted). Accord, *Lallemand v. Cnty. of Los Angeles*, No. CV 17-0781 JAK (SSx), 2018 WL 6136814, at *10 (C.D. Cal. Jan. 12, 2018) ("RFP Nos. 11, 12, 13, 14 and 15 are patently overbroad and disproportionate to the needs of this case. ... The Court is not required to rewrite discovery requests based on speculation about what a party may truly need or want, and declines to do so here.") (citing cases).

\*       \*       \*       \*       \*

Because the parties have clung to materially divergent positions on the appropriate nature and scope of discovery, they not surprisingly have been unable to reach consensus on protocols to govern discovery of ESI, including the breadth of proposed search terms and the related subject of hit reports, as well as the scope of custodians to be searched.

Whereas Plaintiffs argue the Court should compel Defendants to comply with the "expected and customary" practice of providing hit reports for their requested but disputed search terms/strings (Doc. 163 at 13, citing cases), Defendants argue they should not be compelled to provide hit reports for Plaintiffs' facially overbroad proposed search terms (*id*. at 14-15). Contrary to Plaintiffs' characterization of a purported "expected and customary" practice, there is no one-size-fits-all approach to managing the discovery of ESI. In many circumstances, providing early hit reports can assist the parties narrow disputed search terms. *See, e.g., In re Subpoenas to Lyfe Capital, et al.*, No. 25-mc-80399-LJC, 2026 WL 773094, at *3 (N.D. Cal. Mar. 19, 2026) ("the Court is concerned that requiring Respondents to run twenty search terms across four custodial files, and then review and produce responsive documents, will be unduly burdensome. Further meet and confer efforts are necessary for the parties to identify appropriately narrow search terms. To facilitate this, Respondents shall provide hit reports listing the number of documents across the four custodians that hit on

9

Harbour's fourteen proposed search terms"). However, where the disputed search terms are facially overbroad, a requesting party has no entitlement to early hit reports. *See, e.g., Thompson v. Swift Transp. Co. of Ariz.*, LLC, No. 5:25-cv-00503-JLS-SPx, 2025 WL 4058303, at *8 (C.D. Cal. Nov. 25, 2025) ("The court agrees that the search terms and date range are overbroad and will result in an unduly burdensome number of irrelevant hits.").

Consistent with the discussion above concerning proportionality, the undersigned agrees with another court's observation that search terms "do not define proportionality. … Rather, proportionality must be assessed by considering the specific context of the custodian and/or repository against which the search terms will be applied." *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSx), 2019 WL 4544425, at *7 (C.D. Cal. Aug. 19, 2019). Applying that principle here, while some of Plaintiffs' proposed search terms and strings are facially overbroad, other search terms and strings, if applied across a narrow universe of custodians most likely to possess relevant information, can more reasonably be expected to return results that are proportional to the needs of the case, consistent with Rule 26(b).

Defendants already have run narrow search term queries across 22 custodians largely associated with USBP's El Centro Sector (including Defendant Bovino). *See* (Doc. 163, Def. Ex. H). As a starting point, to facilitate continued meet/confer efforts between the parties to reach consensus on ESI discovery, the Court will order Defendants to conduct a further ESI search and collection run and produce hit reports for these 22 custodians using, in addition to Defendants' agreed search terms, Plaintiff's proposed search terms Nos. 1, 6, and 12. *See* (Doc. 163, Appx. A at 19-20). Although Defendants assert that various limitations of their e-discovery platforms would make any overbroad ESI search requirement overly burdensome, including a significant adverse system limitation that would be triggered if any collection project exceeds 5-terabytes, nothing in the supporting declaration of U.S. Customs and Border Protection eDiscovery Team Lead (*see* Doc 163, Def. Ex. H at 165-88) leads the Court to assess that the search and hit report requirement it orders herein will exceed that 5-terabyte

10

threshold.[2]

## IV.   Conclusion and Order

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' objections to Plaintiffs' requests for production of documents ("RFP") on the grounds that the requests are not proportional to the needs of the case and are overbroad are sustained, consistent with this order, as to RFP (First Set, Heim Decl. Ex. B) Nos. 3, 4, 11, 12, 23, 26, and 27; (Second Set, Heim Decl. Ex. D) Nos. 46, 53, and 55.

IT IS FURTHER ORDERED that Defendants shall conduct a further ESI search and collection run and produce hit reports for 22 previously identified custodians (*see* Doc. 163, Def. Ex. H ¶ 21) using Defendants' agreed search terms and Plaintiff's proposed search terms Nos. 1, 6, and 12 (*see* Doc. 163, Appx. A at 19-20).

And IT IS FURTHER ORDERED the Plaintiffs' request for entry of their proposed ESI order (Doc. 164) is denied without prejudice.

IT IS SO ORDERED.

Dated:   **April 17, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] Although the parties also identified in their joint letter brief a dispute concerning Defendants' privilege log (Doc. 163 at 16-17), the parties resolved that dispute during the discovery dispute conference (Doc. 175 at 50-54). Consistent with the parties' agreement, the Court orders Defendants to include in their privilege log (1) operational/non-litigation-related communications postdating commencement of this action that Defendants seek to withhold from production on the grounds of attorney-client communication or work product privilege, and (2) documents and communications Defendants seek to withhold from production on the grounds of other privileges, including official information and/or law enforcement privilege.