BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
LAUREN DAVIS - # 357292
ldavis@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
EVA BITRAN - # 302081
ebitran@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5000

BRISA VELAZQUEZ OATIS - # 339132
bvoatis@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

FRANCO MUZZIO - # 310618
fmuzzio@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al.,<br><br>Defendants. | Case No. 1:25-cv-00246-JLT-CDB<br><br>**JOINT STIPULATION REGARDING ELECTRONIC DISCOVERY AND DOCUMENT PRODUCTION FORMAT**<br><br>Judge:    Hon. Christopher D. Baker<br><br>Date Filed:  February 26, 2025<br><br>Trial Date:  None set |

Unless otherwise agreed in a writing signed by the Parties' counsel of record in this action, this Stipulation Regarding Electronic Discovery and Document Production Format ("Stipulation") shall govern the Parties' discovery related to Electronically Stored Information ("ESI")—as that term is defined below—as well as the form of production of hard copy documents.  The discovery activities covered by this Stipulation are to be conducted as follows:

I.    **DEFINITIONS:**

A. "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed R. Evid. 1001.

B. "Hard Copy Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

C. "Document" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34 and Fed. R. Evid. 1001 and includes both ESI and Hard Copy Discovery.

D. "Email" means digital messages transmitted via email servers and are defined by a standardized set of structured metadata fields (e.g., To, From, CC, BCC, Subject, Date, Message-ID). Emails are usually packaged individually as MSG files or compiled into PST or EML container files. Attachments are embedded and clearly delineated.

E. "Chats" means sequences of time-stamped messages exchanged on platforms like Slack, Microsoft Teams, Bloomberg, SMS, or Skype. Unlike emails, chat data typically lacks a comprehensive metadata structure and is stored in formats such as RSMF, SMS, JSON, TXT, and CSV.

F. "Format" means the internal structure of a file, which defines the way it is stored and used.

G. "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, by way of example, Microsoft Office, Microsoft Access, video and audio files, *.eml,* .pst, and *.pdf files).

H. "Non-custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or

container, such as an enterprise system or database.

I. "Preservation" or "Preserved" shall mean taking reasonable steps to prevent the partial or full destruction, alteration, shredding, incineration, wiping or loss, due to any reason whatsoever, of information, including ESI and hard copy documents.

J. "Producing Party" means a Party that produces documents within its possession, custody and control.

K. "Receiving Party" means a Party to whom documents are produced.

L. "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

M. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") is an example of a Static Image.

N. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

O. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

P. "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

Q. "Structured Data" means data that has been organized into a tabular format with relationships between the different rows and columns, including, but not limited to, Excel spreadsheets, SQL databases, and other relational databases.

II. **GENERAL PROVISIONS**

A. This Stipulation supplements all other discovery rules and orders.  It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as

6094770

required by Rule 1 of the Federal Rules of Civil Procedure.

B.  The Parties agree to consult and cooperate reasonably as discovery proceeds regarding the collection and production of Hard Copy Discovery and ESI pursuant to this protocol.

C.  The Parties have agreed that all electronic materials produced in this action will be exchanged electronically via secure File Transfer Protocol (FTP) or on CD, DVD, flash drive, or hard drive.  To the extent the documents are ordinarily maintained by the Producing Party in a form that is electronically searchable, they must be produced in a form that is electronically searchable, *i.e,* TIFF images with extracted text or in Native format where required by Section IV(E) below.[1][2]

D.  Nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the requesting Party's request.  Further, nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is—in good faith—deemed not responsive to the requesting Party's request for production by the Producing Party.

E.  This Stipulation shall not enlarge or affect the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this Action.

F.  Unless this Court orders otherwise, each Party shall bear the costs of producing its own documents.

G.  Notwithstanding any other provision of this Stipulation, and provided that a copy of the

---

[1] Plaintiffs will not agree to additional terms as a condition of downloading or accessing production materials, beyond those provided by this order, the Court's protective order, the Federal Rules of Civil Procedure, the Eastern District of California local rules, and the Court's standing order. To the extent a Producing Party attempts to impose any additional conditions on downloading or accessing produced materials, those terms shall not be binding.

[2] In accordance with the DOJ Order 0904 (Cybersecurity Program) and DOJ Rules of Behavior, Defendants will continue to produce electronic materials via Department's approved solution Justice Enterprise File Sharing (JEFS) for file sharing.

3

6094770

ESI that is subject to preservation in this matter remains accessible and unaltered, or a new copy is created that preserves the ESI—including any metadata (to the extent it exists)—the Parties may:

1. Move unfiled Documents into files or folders to adhere to an organizational scheme that was created before the Complaint was filed in this matter, provided that doing so does not alter the parent-child relationship (or any other form of unitization) of the Documents. Nothing in this subparagraph prevents the Parties from implementing an organizational scheme that applies only to Documents not subject to preservation in this matter;

2. Copy data from one device to another, or from one location to another.

III.    **PRODUCTION OF HARD COPY DOCUMENTS**

A. **PRODUCTION FORMAT.**  The format of productions of hard copy documents shall comply with the following requirements:

1. **IMAGE FORMAT.**  Documents that exist in hard copy format only shall be scanned and produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi).  Color documents may be produced in .JPG format in lieu of TIFF images; where so produced, color JPG files should also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or JPG files shall show all text and images that would be visible to a user of the hard copy documents.

2. **DATABASE LOAD FILES/CROSS-REFERENCE FILES.**  A production shall be provided with (a) a delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above.  In addition:

i.     The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image

4

6094770

Load file(s) in the production.

   ii.   The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF or JPG in a production must be referenced in the corresponding image load file.

   iii.  In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

3. **OCR TEXT FILES.** A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. The filename for the multi-page text file described above in III(A)(2)(iii) shall correspond to the beginning production number of the document. If a document is redacted, the text files shall not contain the redacted portions of the documents, but should contain the remaining unredacted text.

4. **METADATA.** The Parties will work in good faith to produce the metadata and coding fields set forth in Appendix 1 to the extent such metadata exists (and is relevant to the file type at issue) and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software. The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGDOC#, (b) ENDDOC#, (c) BEGATTACH, (d) ENDATTACH, (e) REDACTED, to the extent a document is tagged as such, (f) CUSTODIAN, and (g) CONFIDENTIALITY, to the extent a document is tagged as such.

5. **UNITIZING OF DOCUMENTS.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will use reasonable efforts to unitize documents correctly to avoid producing large numbers of documents in single "clumps."

5

6094770

IV.    **PROCESSING STANDARDS AND PRODUCTION FORMATTING FOR ALL ELECTRONICALLY STORED INFORMATION (ESI)**

A. **CULLING/FILTERING.** Each Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, C++Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

B. **DE-DUPLICATION.** Each Producing Party shall de-duplicate ESI on a global level (across all custodians) prior to production. The basis for such de-duplication shall be the MD5 or SHA1 Hash values, or some other later agreed to de-duplication method. For generating either the MD5 or SHA1 hash values for email, the Parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation. With respect to documents processed for ingestion into the Producing Party's ESI management software on or after the approval date of this protocol, the custodians of de-duplicated copies of documents should be included in the database load file in the DUPECUSTODIAN field.

C. **STRUCTURED DATA.** The Parties shall meet and confer with respect to structured data sources that contain relevant information to determine what information the reports should contain. As a general rule, data that is stored in a database, whether maintained internally by the Party or through a third-party provider, shall be produced

6

6094770

as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format.

D. **BACKUP DATA**.  Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

E. **PRODUCTION FORMAT FOR ESI**. The format of productions of ESI shall comply with the following requirements:

1. **IMAGE FORMAT**.  All documents covered by Section IV of this Stipulation shall be produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi), unless so excepted elsewhere in this Stipulation. Color documents may be produced in .JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be branded with sequential production numbers and, each image shall be marked for appropriate confidentiality designations under the terms of the Protective Order entered in this case.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or JPG files shall show all text and images that would be visible to a user of the ESI documents.

2. **PRESENTATIONS**.  The Parties shall make reasonable efforts to process presentations (*e.g.*, PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF or JPG image.

3. **iMESSAGE, SHORT MESSAGE SERVICE, AND MULTIMEDIA MESSAGING SERVICE MESSAGES.** The Parties understand and acknowledge that iMessage, Short Message Service (SMS), and Multimedia Messaging Service (MMS) messages may be impractical to produce in their Native format. In such instances, the ESI may be produced as a screenshot, exported report, or another available format, as electronic files without extractable text.

7

6094770

Metadata will only be provided if available and if it can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software.

4. **DATABASE LOAD FILES/CROSS-REFERENCE FILES**.  A production should be provided with (a) a delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above.

   i.    The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

   ii.   The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises.  Each TIFF in a production must be referenced in the corresponding image load file.

   iii.  In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

5. **TEXT FILES**.  The multi-page text files described above in Section III(A)(2)(iii) shall include text extracted from ESI with extractable text.  For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the Producing Party shall use optical character recognition software (OCR) to generate text for the document.  OCR generated text shall be provided for all documents without extractable text in the original Native file unless the document contains notes, drawings or is otherwise not easily convertible into a searchable format.  The filename for the multi-page text file shall correspond to the beginning production number of the document.

6. **NATIVE FILES**.  Any file produced in Native format should be produced with a link in the NativeLink field, along with extracted full text and applicable metadata fields set forth in Appendix 1.  Any file produced in Native format should be

8

named to match the beginning Bates number of their corresponding entries in the database load files.  Additionally, every file produced Natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in Native format.  Only the files discussed below may be produced in Native format unless both Parties agree otherwise in writing.

i.  **SPREADSHEETS**.  TIFF or JPG images of spreadsheets should not be produced unless redactions are needed that cannot be implemented on the Native file directly.

ii.  **VIDEO AND AUDIO FILES**.  Audio and Video files shall be produced in Native format, with TIFF placeholders and available metadata provided in database load files, unless the audio or video files contain privileged material that cannot be redacted in Native format.  Should Audio and Video files containing privileged material that cannot be redacted in Native format be requested by the Receiving Party, the Parties shall meet and confer on the limitations of producing said Audio and Video files.

iii.  **EXCEPTIONS**.  For any file produced that cannot be processed by standard ESI processing tools due to document family relationships, the Producing Party shall provide a placeholder image, a Bates number and a confidentiality designation, in addition to associated metadata.  Hyperlink documents or cloud attachments will not be produced.  Should particular hyperlinked documents or cloud attachments be requested by the Receiving Party, the Parties may meet and confer on the limitations on producing said documents or the material connected.

iv.  **REQUEST(S) FOR ADDITIONAL NATIVE FILES**.  If good cause exists to request production of specified files in Native format, other than those specifically set forth above, the requesting Party may request such production and provide an explanation of the need for Native file review. The parties

9

agree that such a request shall not be unreasonably denied.  Any Native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder.  Any dispute regarding the production of documents in Native format shall be resolved by the provisions set forth in Local Rule 251 and the Court's standing order.

7. **METADATA FIELDS AND PROCESSING**.  The Parties will work in good faith to produce the metadata and coding fields set forth in Appendix 1 to the extent such metadata exists, and is relevant to the file type at issue, and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operations of such software.

F. **FORMAT & FOLDER STRUCTURE**.  The production data may be exchanged between counsel in encrypted form (*e.g.* TrueCrypt, password-protected Zip, or RAR files).  Productions of 10GB or less may be made via FTP or secure server; larger productions may be made on hard media (e.g., hard drives, DVD, etc.).  Each production shall be provided in the following folder structure:

1. Top-level folder: This folder will indicate the production volume;

2. Sub-folders: Subfolders should be organized as follows:

   i. **IMAGES**: This folder will contain multiple sub-folders with ONLY TIFF (or .jpg) files in them.  No other type of file should reside in the "IMAGES" folder.  Sub-folders shall not contain more than 10,000 images per folder.

   ii. **TEXT:** This folder will contain the full text files in UNICODE, UTF8 or ANSI format in a separate folder labeled TEXT.  Sub-folders shall not contain more than 10,000 text files per folder.

   iii. **DATA:** This folder will contain load files compatible with Concordance version 8 or above and Opticon.

   iv. **NATIVES:** This folder will contain Native files that the Parties agree to produce during the course of this litigation.  Sub-folders shall not contain more

10

6094770

than 10,000 Native files per folder.

**V.    CUSTODIAL ESI**

    A. **DEFINITION AND GENERAL REQUIREMENTS.**  For purposes of this Stipulation, Custodial ESI refers to ESI associated with a particular individual, such as an individual's workplace email account or loose ESI stored in the individual's assigned workplace computer or individual cloud-based storage.  Custodial ESI does not include information stored in a repository not associated with a particular individual, such as a shared drive, document storage system, or wiki.  The Parties shall take reasonable steps to identify and preserve Custodial ESI relevant to the claims and defenses in this action

    B. **CUSTODIAN AND SEARCH TERM IDENTIFICATION**. After the service of any request for production, the Requesting Party and the Producing Party shall meet and confer on custodians, search terms, custodial and non-custodial repositories at issue, and any other search methodology to be used. The Parties shall have an initial exchange of proposed custodians and search terms within a reasonable time of service of any request for production calling for the production of ESI.  Following the production of documents, the Parties may continue to meet and confer regarding the custodians and search terms as necessary. The parties may also meet and confer on the relevant time periods for documents collected for custodial searches.

    C. **EXCHANGE OF SEARCH TERM HITS**.  After the service of any request for production, the Requesting Party and the Producing Party shall meet and confer on search terms or search methodology to be used. The Producing Party will provide a search term report for terms agreed upon by the Parties or search terms the Producing Party is ordered to search by the Court. The Producing Party, in its discretion, may produce a search term report for disputed terms as a part of the meet and confer process.

**VI.    PRIVILEGE LOGS**

    A. Consistent with the Federal Rules of Civil Procedure, a party withholding or redacting

any responsive document on the grounds of privilege, immunity, or any similar claim shall provide to the Receiving Party a privilege log.

B. The following privileged items need not be included in the privilege log: (1) communications undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) that are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B); (2) communications or documents relating to litigating this matter post-complaint; and (3) communications between any party and counsel for that party, whether in-house counsel (including agency counsel) or outside counsel (including the Department of Justice), if the communications were created after the date when the original Complaint in this case was filed and were made entirely for the purpose of seeking or receiving legal advice. However, otherwise responsive privileged communications that relate to immigration enforcement actions in the Eastern District of California and were created after the date when the original Complaint was filed must be included in the privilege log. The above-mentioned exceptions are made without prejudice to any Party's ability and right to assert that materials are discoverable and not privileged or otherwise protected.

C. For all other documents withheld on the basis of privilege, a statutory or regulatory limitation on disclosure, or any other applicable basis under law, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

    i. A unique privilege log identifier.

    ii. The date of document, if available. For emails this should be the sent date of the document and for other ESI this should be the last-modified or create date of the document to the extent such metadata exists (and is relevant to the file type at issue), and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software.

6094770

iii. The Author of the document.  For emails this should be populated with the metadata extracted from the "Email From" field associated with the file.  For other ESI, this should be populated with the metadata extracted from the "Author" field to the extent such metadata exists (and is relevant to the file type at issue), and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

iv. Recipient(s) of the document where reasonably ascertainable.  For emails this should be populated with the metadata extracted from the "Email To" field associated with the file.  Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

v. A description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity.

vi. The type of privilege being asserted: *e.g.,* (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest, (d) LEP for Law Enforcement Privilege, and (e) D for Deliberative Process Privilege.

vii. For redacted documents, the Bates numbers corresponding to the first and last page of any document redacted.

D. The Party providing the Privilege Log shall keep, maintain, and provide to the Party receiving the Privilege Log, a list of attorneys with their respective component office (e.g., CBP Office of Chief Counsel) for any attorney named in any Privilege Log or any Document that is withheld or redacted on the basis of attorney-client privilege or attorney work product doctrine protections.  Nothing in this paragraph shall prevent the Party receiving the Privilege Log from otherwise requesting information about author(s) and recipient(s), or subject matter, in order to reasonably assess the basis or

6094770

bases for withholding or redacting a Document.  The Party providing the Privilege Log retains its ability to object to any such request.  Where a party or non-party determines in good faith that any of the privilege log disclosures called for by this paragraph would be privileged themselves, the party or non-party shall disclose as much non-privileged information called for by this paragraph as possible.

E. **DEADLINE FOR FURNISHING PRIVILEGE LOGS**. Privilege logs must be produced two weeks after the deadline for substantial completion of document production in the operative scheduling order.  The Receiving Party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

F. **CONTESTING CLAIM OF PRIVILEGE OR WORK PRODUCT PROTECTION**. Nothing in this Order shall limit the Receiving Party's right to challenge the Producing Party's claim that a document is protected from disclosure by an applicable privilege or by the work product doctrine.  If, after the Receiving Party notifies the Producing Party of specific documents for which it is challenging privilege and after undertaking a subsequent meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of the documents in question, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any briefing related to a motion to compel, as well as any other briefing by any party, shall not publicly disclose the documents claimed to be privileged if the privilege claim remains unresolved or is resolved in the Producing Party's favor.

G. **TAR GENERALLY.** A Producing Party may use technology-assisted review ("TAR"), continuous active learning ("CAL"), email threading, other advanced analytic tools, and/or artificial intelligence tools methodologies, to identify, search, collect, filter, cull, review, and produce ESI, subject to (1) notifying the Receiving Party that it intends to use such tool(s) and disclosing the name of the tool(s), and (2) providing a general description of the tool(s) and the method by which the tool(s) will

14

be used.  If a Party objects to the method by which the tool(s) will be used, or the use of the tool, the Parties shall meet and confer to resolve the dispute.  If the Parties cannot agree on usage of the tool or method of use, the objecting Party may initiate the Court's process for resolving any disputes regarding the use of such technology. Defendants' use of TAR will be governed by the attached TAR Protocol.

H. **SEARCH TERM CULLING AND KEYWORD CULLING:** A Producing Party may use search term or keyword culling, subject to the agreement of the Receiving Party of all search term(s) and/or keyword(s).  If a Party objects to use of a search term or keyword for any purpose, the Parties shall meet and confer to resolve the dispute.  If the Parties cannot agree on a mutually agreeable search term or keyword, either Party may initiate the Court's process for resolving any disputes regarding the use of such methods.

## VII.    MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.  Nothing in this Stipulation shall be construed to prohibit the undersigned Parties from agreeing to modify any provision of this Stipulation or seeking relief from the Court.  Nor shall anything in this Stipulation or any Party's compliance be construed as a waiver of any Party's rights under the Federal Rules of Civil Procedure. Nor shall anything in this Stipulation be interpreted to require disclosure of information that is not relevant to the claims or defenses in this case or that is protected by any applicable privilege.  Nor shall anything in this Stipulation be construed to waive any objections as to the production, discoverability, proportionality, technical impracticality, or the protected status of ESI.

/ / /

/ / /

/ / /

/ / /

/ / /

15

**IT IS SO STIPULATED.**

Dated: May 6, 2026

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

By: */s/ Bree Bernwanger*

BREE BERNWANGER
MICHELLE (MINJU) Y. CHO
LAUREN DAVIS
SHILPI AGARWAL

Dated: May 6, 2026

By: AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA

*/s/ Mayra Joachin*

MAYRA JOACHIN
EVA BITRAN

Dated: May 6, 2026

By: AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES

*/s/ Brisa Velazquez Oatis*

BRISA VELAZQUEZ OATIS

Dated: May 6, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Julia L. Greenberg*

FRANCO MUZZIO
CHRISTINA LEE
JASON GEORGE
JULIA L. GREENBERG
REAGHAN E. BRAUN
NATALIE R. HEIM

*Attorneys for Plaintiffs*

16

Dated:  May 6, 2026

/s/ Tim Ramnitz
BRETT A. SHUMATE
Assistant Attorney General

SAMUEL P. GO
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

TIM RAMNITZ
Senior Litigation Counsel

AYSHA T. IQBAL
Trial Attorney

OLGA Y. KUCHINS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(771) 202-1392
Olga.Y.Kuchins@usdoj.gov

*Attorneys for Defendants*

IT IS SO ORDERED.

Dated:  **May 6, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

17

JOINT STIPULATION REGARDING ELECTRONIC DISCOVERY AND DOCUMENT PRODUCTION FORMAT
Case No. 1:25-cv-00246-JLT-CDB

6094770

**Appendix 1:  ESI Metadata and Coding Fields**

**A.**    **Imagebase Load File (.opt) shall be in Concordance Image/Opticon (.opt) format and include a record for each page.**

**B.**    **Metadata Load File (.dat)** shall include a record for each document and use Concordance default delimiters, as follow:
Field Delimiter        =        (ASCII 020)
Text Delimiter         =        þ (ASCII 254)
Line Delimiter         =        ® (ASCII 174)

**C.**    The following fields will appear in the metadata load file in the order displayed below: A "✓" denotes that to the extent the indicated field exists for a Document it should be present in the load file produced.  The Parties will only provide fields that can be populated automatically as described in paragraph IV(E)(5) above.  A Producing Party may assert privilege over provided metadata.

| Field Name | Field Description | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|
| BEGDOC# | Start Bates (including prefix) – No spaces | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) – No spaces | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent in a family | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates Number of last attachment in a family | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source – format: Last, First or ABC Dept. | ✓ | ✓ | ✓ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | | ✓ | ✓ |
| REDACTED | Should be populated with Y for records with redactions and N for records without redactions | ✓ | ✓ | ✓ |
| SUBJECT | Subject line of email | | ✓ | |
| DATE TIME SENT | Date and time sent (use UTC time zone) Numbers | | ✓ | |

18

6094770

| Field Name | Field Description | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|
| | must be populated. If date is unknown, leave blank. | | | |
| DATE TIME RCVD | Date received (use UTC time zone) Numbers must be populated. If date is unknown, leave blank. | | ✓ | |
| FROM | Sender (i.e.: Email address, Last name, First name) | | ✓ | |
| TO | Recipient (i.e. Email address, Last name, First name) | | ✓ | |
| CC | Carbon Copy Recipients (i.e.: Email address, Last name, First name) | | ✓ | |
| BCC | Blind Carbon Copy Recipients (i.e.: Email address, Last name, First name) | | ✓ | |
| CONVINDEX | Email system ID used to track replies, forwards, etc. | | ✓ | |
| AUTHOR | Creator of the document | | | ✓ |
| FILE NAME | Name of file as it appeared in its original location | | | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | | ✓ | ✓ |
| FILESIZE | Native File Size in KBs | ✓ | ✓ | ✓ |
| DATE TIME MOD | Date an electronic document was last modified. (Use UTC Time zone.) Numbers must be populated. If date is unknown, leave blank. | | ✓ | ✓ |

19

6094770

| Field Name | Field Description | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|
| DATE TIME CRTD | Date the document was created. (Use UTC Time zone.) Numbers must be populated. If date is unknown, leave blank. | | ✓ | ✓ |
| CONFIDENTIALITY | Confidentiality designations, to the extent a document is tagged as confidential. | ✓ | ✓ | ✓ |
| PGCOUNT | The number of pages of the produced document | ✓ | ✓ | ✓ |
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to the Parties. | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | ✓ | ✓ | ✓ |
| NATIVEPATH/NATIVELINK | Relative file path location to the native file | | ✓ | ✓ |

JOINT STIPULATION REGARDING ELECTRONIC DISCOVERY AND DOCUMENT PRODUCTION FORMAT
Case No. 1:25-cv-00246-JLT-CDB

6094770

### Appendix 2: TAR Protocol

This protocol describes Defendants' use of Technology Assisted Review (TAR) on or after the effective date of this protocol to respond to the requests for production propounded by Plaintiffs in this matter.

**A. Applicability & Scope**
1. The review population will consist of custodial documents of the agreed-upon custodians within the agreed-upon time periods, and that hit on one or more of the search terms agreed upon by the parties, plus family members of those documents.

**B. Exclusions**
1. **File Types Not Suitable for TAR.** Documents of certain file types, including file types that have little-to-no textual content, corrupted textual content, or purely numerical content are not suitable for analysis using TAR—e.g., screenshots, photos, audio/video files, graphics files, system files, zero-byte files, empty container files, and corrupt files.
   i. For the avoidance of doubt, spreadsheets and presentation files containing sufficient textual content are suitable for analysis using TAR.

2. **De-Duplication; Culling; Filtering.** Pursuant to Section IV(A) and (B), in the above ESI Protocol, Defendants will deduplicate and conduct any culling or filtering of the ESI collection prior to beginning the Active Learning Process.

**C. Active Learning**
1. **Reviewers.** Attorneys representing Defendants who have been trained on the issues in this matter and discovery requests ("TAR Reviewers") will conduct all review necessary for training and validation.

2. **Training.**
   i. **Process.** After documents are loaded into the Active Learning platform, TAR Reviewers will review a series of documents within the Review Population for responsiveness. TAR Reviewers will code documents as responsive or non-responsive until the Active Learning model can be built. Once the Active Learning model is built, the priority review will commence. During the priority review, the Active Learning system presents the TAR Reviewers with documents to code as responsive or non-responsive. This process continues until the model reaches stability. Stability is demonstrated by consistent, high-confidence results over time where the model's responsiveness prediction consistently matches the TAR Reviewer's responsiveness determination. Once stability is reached, a Validation Test is conducted as defined in Section E(1) below.

   ii. **Termination.** Training will continue until the target Elusion Rate is reached as described in Section D(1) below.

   iii. **Quality Control.** Quality Control measures will be used to identify certain documents within the review population that appear likely to have been

6094770

coded incorrectly.  TAR Reviewers will conduct a Quality Control review of select documents where the model's ranking does not match TAR reviewers coding to ensure documents are coded appropriately.

### D. Review Set

1. **Elusion Rate.** The goal of the Active Learning process is to achieve the target Elusion Rate.  The Elusion Rate measures the percentage of uncoded, predicted non-responsive documents that are in fact responsive.  TAR Reviewers will continue training the model until the target Elusion Rate is met through a Validation Test.  The target Elusion Rate aims for below 3% to match accepted human error rates.

2. **Scoring.** Once the TAR training commences, the Active Learning model will assign a score between 0 and 100 to each document subject to TAR and will continue to update this score as more documents are coded.  A higher score reflects a higher likelihood that the document is responsive.

3. **Cutoff Rank.** Based on the distribution of scores, Defendants will determine the minimum document score necessary to achieve the Cutoff Rank.  Every document on or above the Cutoff Rank receives a responsive prediction, while every document below the Cutoff Rank receives a non-responsive prediction.

4. **Review of Documents Above the Cutoff Rank.** Attorneys for Defendants will review the documents scoring above the Cutoff Rank, plus their family members, for responsiveness and privilege.  Documents identified as not responsive and/or wholly privileged will be excluded from production.

### E. Validation Process

1. **Validation Test.** To confirm the performance of the model, TAR Reviewers will review a random sample of documents scoring both above and below the Cutoff Score.  Defendants will provide an Elusion Rate for the model.  To provide this Elusion Rate, Defendants will manually review a statistically valid sample of unreviewed documents that were not identified as relevant by the model (the elusion set).  A statistically valid sample will have a 95% confidence interval, with a margin of error plus or minus 5%.  Defendants will provide the number of documents in this elusion set, and the number of relevant documents identified as relevant by manual review (true positives).

2. **Metrics.** At the conclusion of training and review, Defendants will provide Plaintiffs with the following metrics: (a) number of documents subject to TAR; (b) number of documents deemed not suitable for TAR; (c) the Cutoff Rank; (d) number of documents ranked above and below the Cutoff Rank; (e) the Recall Rate; (f) the Precision Rate, and (g) the Elusion Rate.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: _____    _____
                                   HONORABLE CHRISTOPHER D. BAKER
                                   United States Magistrate Judge

JOINT STIPULATION REGARDING ELECTRONIC DISCOVERY AND DOCUMENT PRODUCTION FORMAT
Case No. 1:25-cv-00246-JLT-CDB

6094770