BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-5000

BRISA VELAZQUEZ OATIS - # 339132
bvoatis@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

FRANCO MUZZIO - # 310618
fmuzzio@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA L. GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al.,

Defendants.

Case No. 1:25-cv-00246-JLT-CDB

**POST-REMAND SUPPLEMENTAL BRIEF RE STANDING FOR PLAINTIFFS' PRELIMINARY INJUNCTION**

Dept.: Courtroom 4, 7th Floor
Judge: Hon. Jennifer L. Thurston

Date Filed: February 26, 2025

Trial Date: None set

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1

II. NINTH CIRCUIT REMAND AND LEGAL BACKGROUND ....... 2

III. FACTUAL BACKGROUND ....... 4

IV. ARGUMENT ....... 6

A. Plaintiffs have standing for injunctive relief. ....... 6

1. Absent the preliminary injunction, Plaintiffs face a sufficient likelihood of future harm from Border Patrols' unlawful practices. ....... 6

a. Defendants' officially sanctioned practices created a realistic threat of recurring injury. ....... 6

b. These unlawful practices do not relate solely to past harm. ....... 10

2. Plaintiffs' threatened injuries are likely to arise from Border Patrol's challenged practices. ....... 13

3. Plaintiffs' remedies sought in their motion for preliminary injunction are likely to minimize the risk of future injuries. ....... 13

B. Plaintiff UFW has also established associational standing. ....... 14

1. UFW's members face a sufficient likelihood of future harm. ....... 14

2. UFW's mission includes protecting its members from unlawful immigration practices. ....... 15

3. UFW's members need not participate in this suit. ....... 15

V. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*California Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ....................14, 15

*City and Cty. of San Francisco v. U.S. Citizenship & Imm. Servs.*,
944 F.3d 773 (9th Cir. 2019) ....................3

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................10, 11, 12

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) ....................9

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008) ....................14

*Garro Pinchi v. Noem*,
813 F. Supp. 3d 973 (N.D. Cal. 2025) ....................9

*Gladstone Realtors v. Village of Bellwood*,
441 U.S. 91 (1979)....................3

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) ....................3, 13

*Immigr. Ctr. for Women & Child. v. Noem*,
351 F.R.D. 324 (C.D. Cal. 2026)....................9

*Imperial Sovereign Court of Montana v. Knudsen*,
170 F.4th 820 (9th Cir. 2026) ....................13

*Index Newspapers LLC v. United States Marshals Service*,
977 F.3d 817 (9th Cir. 2020) ....................7

*Jacobs v. Clark County School Dist.*,
526 F.3d 419 (9th Cir. 2008) ....................3

*K.J. by & through Johnson v. Jackson*,
127 F.4th 1239 (9th Cir. 2025) ....................3

*Kariye v. Mayorkas*,
No. 23-55790, 2024 WL 4403870 (9th Cir. Oct. 4, 2024) ....................7

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ....................11

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ....................3, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................13

*M-J-M-A- v. Hermosillo*,
822 F. Supp. 3d 1147 (D. Or. 2026) ....................6, 9

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) ....................3

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .................... *passim*

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) ....................12

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) ....................15

*Murthy v. Missouri*,
603 U.S. 43 (2024) ....................3

*Noem v. Vasquez Perdomo*,
No. 25A169, 2025 WL 2585637 (2025) ....................12

*Noem v. Vasquez Perdomo*,
No. 25A169, 2025 WL 2606729 (2025) ....................12

*Ortega-Melendres v. Arpaio*,
836 F. Supp. 2d 959 (D. Ariz. 2011) ....................2

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ....................3

*Sterling v. Feek*,
150 F.4th 1235 (9th Cir. 2025) ....................6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ....................14, 15

*Thomas v. County of Los Angeles*,
978 F.2d 504 (9th Cir. 1992) ....................7, 11, 12

*United States v. Hansen*,
40 F.4th 1049 (9th Cir. 2022) ....................12

*United States v. Thrasher*,
483 F.3d 977 (9th Cir. 2007) ....................3

*Vasquez Perdomo v. Mulllins*,
No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 2, 2026) (Dkt. 738)....................................14

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ...................................................................................6, 12

**Statutes**

8 U.S.C. § 1357(a)(2)..........................................................................................................4, 5, 11

## I. INTRODUCTION

In January 2025, Border Patrol agents traveled hundreds of miles inland to the Eastern District of California to indiscriminately detain and arrest people of color in and around Kern County as part of a pilot program called "Operation Return to Sender." *See* Dkt. 47 (Preliminary Injunction Order ("PI Order")) at 2-4, 83-84. Border Patrol made these detentions and arrests—including of U.S. citizens and lawful permanent residents—on assumptions about skin color or occupation and without the individualized assessments that the Constitution and federal law require. *See id.* They publicly hailed the operation a "success from day one" and vowed to continue. *See id.* at 20.

Shortly thereafter, in February 2025, Plaintiffs sued. *See* Dkt. 1. They also moved for provisional class certification and a preliminary injunction to stop Defendants' unlawful stop and arrest practices. *See* Dkt. 15. Defendants did not meaningfully dispute that they had adopted immigration enforcement practices resulting in widespread violations of the U.S. Constitution and federal law. *See* Dkt. 31. Nor did they "object to the declarations or exhibits submitted by Plaintiffs" or "deny the factual allegations made" in them. *See* PI Order at 2 n.1. This Court provisionally granted class certification and enjoined further unlawful stops and arrests. *Id.* at 2.

Defendants appealed this Court's order, largely on procedural grounds, and did not challenge the core underlying facts. Upon review, the Ninth Circuit determined this Court had not addressed "standing to seek prospective injunctive relief," which Defendants "did not raise in the district court." Dkt. 204 at 2-3. The Ninth Circuit issued a "limited remand" to this Court solely "for the limited purpose of determining in the first instance whether Plaintiffs have standing to seek prospective relief." *Id.* at 3.

Plaintiffs have standing to seek prospective relief. Indeed, in its PI Order, relying on an unrebutted record, this Court made factual findings on other issues that squarely support this conclusion. This Court determined that (1) Border Patrol has a pattern and practice of conducting detentive stops without reasonable suspicion, PI Order at 76; (2) Border Patrol has a pattern and practice of effecting warrantless arrests without evaluating flight risk, *id.*; and (3) Border Patrol expressed an intent to conduct additional operations applying those practices in the Eastern

District, *id.* at 83-84. Nothing in the Ninth Circuit's limited remand invites the Court to revisit these factual findings—which Defendants never contested and did not appeal.

Defendants' argument that Plaintiffs lack standing is irreconcilable with those findings and the robust record that supports them. Plaintiffs have prospective relief standing under binding Ninth Circuit law, because the facts show that, at the time of the Complaint, they faced a realistic threat that their rights will again be violated because they live, work, and travel in the Latino neighborhoods and common roadways Defendants' unlawful practices target. Where, as here, the harm a plaintiff suffers is "part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' federal rights," then plaintiff has standing to seek prospective relief. *Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012). That is because "exposure to [the challenged] policy is both itself an ongoing harm and evidence that there is 'sufficient likelihood' that Plaintiffs' rights will be violated again." *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).[1]

The Court should make explicit what the PI record and its prior factual findings already establish: absent a PI, there is a likelihood that Plaintiffs' constitutional and statutory rights will once again be violated. That is, Plaintiffs face a likelihood of being stopped without reasonable suspicion and/or arrested without probable cause in violation of their legal rights.

Accordingly, the Court should find Plaintiffs have standing for prospective relief.

## II. NINTH CIRCUIT REMAND AND LEGAL BACKGROUND

The Ninth Circuit remanded "for the limited purpose of determining in the first instance whether Plaintiffs have standing to seek prospective relief." Dkt. 204 at 3. It otherwise retained "jurisdiction over [the] appeal" and "stay[ed] further proceedings in [the Ninth Circuit] while th[e] matter is before the district court on remand." *Id.* at 3-4.

Article III standing requires: (1) an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) "that the injury was caused by the defendant"; and (3) that "the injury will likely be redressed by judicial relief." *Id.* at 2 (citing *TransUnion LLC v. Ramirez*, 594 U.S.

---

[1] Unless otherwise indicated, internal punctuation, footnotes, emphases, and citations were omitted and emphases were added.

413, 423 (2021)). Claims for prospective injunctive relief implicate Article III's requirement that a plaintiff "establish a sufficient likelihood of future injury." *Id.* (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)).

"At the preliminary injunction stage, plaintiffs are required to show only that they are 'likely to establish each element of standing.'" *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026). "To make such a showing, plaintiffs . . . may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their preliminary-injunction motion to meet their burden." *Meinecke v. City of Seattle*, 99 F.4th 514, 520 (9th Cir. 2024). "[T]hey need only establish a *risk* or *threat* of injury to satisfy the . . . requirement." *City and Cty. of San Francisco v. U.S. Citizenship & Imm. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019).

It is well-established that the existence of Article III standing—including standing for prospective injunctive relief—"turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007); *see Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (same); *cf. Jacobs v. Clark County School Dist.*, 526 F.3d 419, 425 (9th Cir. 2008) (Unlike mootness, "standing is determined based on the facts 'as they existed at the time the complaint was filed'"). Where, as here, "the scope of the reman is clear," the district court is limited to the issue remanded. *United States v. Thrasher*, 483 F.3d 977, 982-83 (9th Cir. 2007).

Here, the Ninth Circuit remanded solely for this Court to determine "whether Plaintiffs have standing to seek prospective relief." Dkt. 204 at 3. The Court's recent order on supplemental briefing helpfully clarifies that the Parties may submit additional evidence bearing on that question. *See* Dkt. 205. Any such evidence, however, must bear on whether Plaintiffs had standing ***at the time the action was filed***. *See Skaff*, 506 F.3d at 838. Although "the manner and degree of evidence required at the successive stages of the litigation" changes as the case progresses, *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 (1979) (similar), the relevant factual inquiry remains whether standing existed at the outset. Post-filing developments may bear on mootness, but they cannot retroactively establish or defeat standing. *See K.J. by & through Johnson v. Jackson*, 127 F.4th

1239, 1251-54 (9th Cir. 2025) (describing differences in how standing and mootness apply where there are post-filing developments). Plaintiffs would therefore respectfully object to the consideration of post-filing events on this narrow remand. As discussed below, the evidence establishes that Plaintiffs had standing to seek prospective relief when they filed this action.

## III. FACTUAL BACKGROUND

In January 2025, Border Patrol conducted "Operation Return to Sender," a coordinated, three-day pilot campaign in Kern County and surrounding areas. PI Order at 2-3. Agents put into operation three unlawful practices: stop without reasonable suspicion, arrest without assessing flight risk, and coerce "voluntary" departures to remove as many people as possible. *Id.*

Border Patrol targeted Latino neighborhoods and farm roads in agricultural areas, indiscriminately stopping individuals and pulling over cars with people of color. *See, e.g.*, PI Order at 2-20, 55-57; Compl. ¶¶ 51-55, 90-94, 128-36, 165-69, 187-191; Dkt. 15-8 ("Hernandez Espinoza Decl.") ¶¶ 4, 22; Dkt. 15-6 ("Vargas Mendez Decl.") ¶ 4; Dkt. 15-3 ("Strater Decl.") ¶¶ 26, 37-38; Campos Gutierrez Decl. ¶¶ 2, 15. In each incident, Border Patrol agents stopped vehicles that were properly registered, driving well within the speed limit, and obeying traffic laws without the necessary reasonable suspicion. *See, e.g.*, PI Order at 10, 15, 17, 56; Compl. ¶¶ 91, 105, 166, 188, 205; Campos Gutierrez Decl. ¶ 3; Vargas Mendez Decl. ¶ 5; Hernandez Espinoza Decl. ¶ 4; Strater Decl. ¶¶ 26, 38; Dkt. 15-11 ("Aguilera Martinez Decl.") ¶ 4. Similarly, agents approached people of color in parking lots of businesses in Latino neighborhoods without warrants and questioned them about their immigration status. *See, e.g.*, Compl. ¶¶ 71-77, 195-97; Dkt. 15-5 ("Ramirez Decl.") ¶¶ 4, 7 (stopped while standing in Home Depot parking lot); Dkt. 15-10 ("Munguia Esquivel Decl.") ¶¶ 5-8 (same); Dkt. 15-7 ("Perez Cruz Decl.") ¶¶ 3-4 (same). Agents provided no explanation for their stops except to demand "papers." *See* PI Order at 7, 9, 5, 13, 17, 55-56; Compl. ¶¶ 51, 58, 73, 92, 167-68 197.

Following these unlawful stops, Border Patrol carried out warrantless arrests without performing any individualized evaluation of flight risk pursuant to 8 U.S.C. § 1357(a)(2). PI Order at 58-62; Compl. ¶¶ 8, 239, 249, 280, 283, 327. None of the declarants conceivably posed a flight risk—each of them had families, jobs, and residences in the community for which they

were financially responsible. *See id*.; Compl. ¶¶ 26-31. Nevertheless, Border Patrol failed to ask any of the questions needed to perform the requisite individualized inquiry. For example, Border Patrol arrested Plaintiff Vargas Mendez, without a warrant and without asking about his family or community ties. PI Order at 9-11. They then continued to detain him even after he explained that he had lived in the area for 20 years and that his wife and children are U.S. citizens. *Id.;* Compl. ¶¶ 103-13; Vargas Mendez Decl. ¶¶ 2, 3, 10-11. Likewise, Border Patrol arrested Mr. Jesus Ramirez, who is the primary caretaker of his minor son, without conducting any inquiry regarding his family or gathering any information to perform an assessment of his flight risk. PI Order at 12-13; Compl. ¶¶ 195-199; Ramirez Decl. ¶¶ 6-7. These are not outliers. *See also* Compl. ¶¶ 8, 239, 249, 280, 283, 327; Perez Cruz Decl. ¶ 4; Morales Cisneros Decl. ¶ 6; Campos Gutierrez Decl. ¶¶ 4, 9; Strater Decl. ¶¶ 29, 41.

Based on the preliminary-injunction record, this Court found that the operation involved two unlawful practices: (1) “a pattern and practice of agents performing detentive stops without reasonable suspicion in this District,” and (2) “a pattern and practice of warrantless arrests” without individualized assessments of whether the persons arrested were “likely to escape,” as required by 8 U.S.C. § 1357(a)(2). PI Order at 59, 76. These practices affected Latino residents, farmworkers, and day laborers engaged in routine activities, including driving on public roads and visiting businesses in Latino neighborhoods. *See, e.g.*, *id.* at 57; Strater Decl. ¶¶25-44; Campos Gutierrez Decl. ¶¶ 1-16; Ramierez Decl. ¶¶ 1-16; Vargas Mendez Decl. ¶¶ 1-11 ; Perez Cruz Decl. ¶¶ 1-8; Hernanadez Espinoza Decl. ¶¶ 1-24; Morales Cisneros Decl. ¶¶ 1-23; Esquivel Decl. ¶¶ 1-22; Aguilera Martinez Decl. ¶¶ 1-12.

Defendants’ own statements confirm that the challenged practices were not confined to a completed, one-time operation. *See* PI Order at 20, 83-84. Immediately after the January raids, the El Centro Sector stated that it would continue deploying “dozens of Border Patrol Agents in Kern County and surrounding area looking for more of the same.” Dkt. 15-2, Ex. 11. It announced plans for operations in Fresno and Sacramento, stated that agents “plan on coming back” to Bakersfield, and promised a “Return to sender round 2.” PI Order at 83; Dkt. 15-2, Exs. 1, 3, and 10. Defendant Bovino and the El Centro Sector similarly stated that there was “more to come,”

that agents would arrest "anyone" encountered who lacked lawful status, and that the El Centro Sector would "try and catch even more people next time." Dkt. 15-2, Exs. 1, 4.

The Court relied on this evidence in finding "imminent, irreparable harm" and concluding that "[t]he uncontroverted evidence shows the El Centro Sector repeatedly expressed an intent to perform additional operations in the Eastern District," during which the agency would likely further employ its unlawful practices. PI Order at 83-84. The Court therefore enjoined Defendants from continuing their unlawful stop-and-arrest practices and imposed related guidance, training, and documentation requirements. *Id.* at 86-87. Defendants appealed. The Ninth Circuit remanded "for the limited purpose of addressing prospective relief standing." Dkt. 204 at 1.

## IV. ARGUMENT

### A. Plaintiffs have standing for injunctive relief.

#### 1. Absent the preliminary injunction, Plaintiffs face a sufficient likelihood of future harm from Border Patrols' unlawful practices.

"To establish standing for prospective relief, [a plaintiff] must show [that] there is a sufficient likelihood that he will again be wronged in a similar way." *Sterling v. Feek*, 150 F.4th 1235, 1246 (9th Cir. 2025) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "To meet this requirement, a plaintiff generally must show that the threat of injury is actual and imminent, not conjectural or hypothetical." *Id.* Where, as here, "the plaintiff was injured by an alleged violation that occurred in the past, he must demonstrate that he is realistically threatened by a repetition of the violation." *Id.* The likelihood of repetition need not be "high." *Id.*

##### a. Defendants' officially sanctioned practices created a realistic threat of recurring injury.

A plaintiff can show he is "realistically threatened by a repetition of the violation" if the harm suffered "is part of a pattern of officially sanctioned . . . behavior[.]" *Melendres*, 695 F.3d at 997-8 (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)); *see Vasquez Perdomo v. Noem*, 148 F.4th 656, 674 (9th Cir. 2025) (finding standing where plaintiffs demonstrated a "pattern of conduct" of unlawful stop-and-arrest practices); *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1174 (D. Or. 2026) (applying *Melendres* and *Vasquez Perdomo* to analogous circumstances for prospective relief). This is a well-established approach to prospective standing

in the Ninth Circuit. *See, e.g., Kariye v. Mayorkas*, No. 23-55790, 2024 WL 4403870, at *2 (9th Cir. Oct. 4, 2024) (finding standing where plaintiffs described "ten incidents" of unconstitutional conduct, which "plausibly" established an "unwritten, officially sanctioned pattern or practice"); *Index Newspapers LLC v. United States Marshals Service,* 977 F.3d 817, 826 (9th Cir. 2020) (finding standing where pattern of unconstitutional conduct alleged); *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) (finding standing where pattern of "misconduct is purposefully aimed at minorities and that such misconduct was . . . tacitly authorized").

*Melendres* is on all fours. There, the plaintiffs alleged that the defendants had a "custom, policy and practice of racial profiling toward Latino persons," including "stopping Latino drivers and passengers pretextually and without individualized suspicion[.]" 695 F.3d at 994. The plaintiffs also presented evidence that defendants engaged in "'saturation patrols' or 'sweeps' targeting Latinos." *Id.* at 998. In these sweeps, "five named plaintiffs [were] stopped by defendant officers during one of three traffic incidents." *Id.* at 995. Each plaintiff was only stopped once. *Id.* Although defendants argued the plaintiffs failed to establish "a 'credible' and 'genuine' threat of future traffic stop[s]," the Ninth Circuit disagreed. *Id.* at 997. While "the likelihood of a future stop of a particular individual plaintiff may not be 'high,'" it determined that the "future injury was nevertheless 'sufficiently likely' given the [d]efendants' stated policy and practice." *Id.* at 998. In addition, it acknowledged that exposure to the indiscriminate sweeps "while going about one's daily life" can "constitute[] ongoing harm and evidence that there is sufficient likelihood that the Plaintiffs' rights will be violated again." *Id.*

Like in *Melendres,* individual plaintiffs and UFW members face a sufficient likelihood that, absent the PI, their rights will continue to be violated by Defendants. *Melendres*, 695 F.3d at 998 (prospective relief standing where sheriff's office "engaged in a pattern or practice of conducting traffic stops as part of 'saturation patrols' or sweeps'"). This Court found that Plaintiffs' "evidence establishes a pattern and practice of agents performing detentive stops without reasonable suspicion in th[e] [Eastern] District." PI Order at 76. It also found Plaintiffs' "evidence shows a pattern and practice of warrantless arrests without Border Patrol agents performing individualized flight risk assessments to have probable cause for the arrest as

required." *Id.* These findings are supported by the detailed record considered by the Court. *See, supra*, Section III; PI Order at 4-18.

In their appeal, Defendants suggested that "a handful of unlawful stops and arrests isolated to a single 3-day period" does not "realistically support a finding of a general and ongoing pattern or practice." Appeal Op. Br. at 25. But Plaintiffs identified far more than a "handful" of unlawful stops and arrests: the three-day pilot involved nearly 80 total arrests and about 200 stops. *See* Compl. ¶ 4 (local reports suggesting 200 stops); *see also Melendres*, 695 F.3d at 998 (finding "three traffic incidents" of challenged conduct enough to establish "pattern or practice"). And, while Defendants initially claimed in public media that they were focused on "catching criminals," that claim was later undermined when government records showed that Border Patrol did not have any information on targets' criminal history before their arrests. *See* PI Order at 58; Dkt. 38-1 (77 arrests where immigration status was unknown prior to arrest).

In addition, Plaintiffs submitted specific declarations detailing Defendants' unlawful practices in nearly a dozen stops and arrests, and Defendants submitted nothing to justify their conduct in those encounters. *See* PI Order at 4-18. For example, Defendants never explained why they smashed car windows, slashed tires, and forcefully dragged people of color on the ground after a stop. *See id.* at 18; Strater Decl. ¶¶ 37-40. Defendants never explained why they arrested a longtime resident who repeatedly informed them that he had lived in the community for more than 20 years. *See* PI Order at 10; Vargas Mendez Decl. ¶¶ 4-11. Nor did Defendants ever explain why agents grabbed a lawful permanent resident from her vehicle, placed her in handcuffs, and detained her in the back of an SUV—all without giving her an opportunity to present evidence of her immigration status. *See* PI Order at 9; Aguilera Martinez Decl. ¶¶ 6-10.

Rather, Plaintiffs' evidence shows, as this Court found, that Defendants publicly expressed an intent to replicate their unlawful detentive stops and warrantless arrests in this District (and, in fact, did so in Sacramento in July 2025). *See* PI Order at 20, 83-84; Compl. ¶ 246-59; Dkt. 15-2, Ex. 3, 10, and 11; *see also* Dkt. 176 (granting in part Plaintiffs' motion to enforce PI). As this Court previously found, "[t]he uncontroverted evidence shows the El Centro Sector repeatedly expressed an intent to perform additional operations in the Eastern District." PI

Order at 83. This is no surprise: Defendants made repeated public statements, like, "We plan on coming back!!" and confirmed they would soon carry out "Return to sender round 2." PI Order at 83; *see* Dkt. 15-2, Ex. 1. Defendant Bovino called the operation "an overwhelming success from day one." Compl. ¶ 246.[2]

Moreover, the limited evidence produced to date in discovery ***by Defendants*** further confirms the ubiquity of their unlawful practices and their blatant disregard for civil rights.[3] For example, [redacted] *See* Decl. of Julia L. Greenberg ISO Post-Remand Suppl. Br. ("Greenberg Decl."), Ex. A at United_Farm_Workers-0000708. [redacted] *Id.* at United_Farm_Workers-0000711; *see id.* at United_Farm_Workers-0000708 [redacted]; *id.* at United_Farm_Workers-0000714 [redacted] And, [redacted] *Id.* Similarly, contemporaneous records, [redacted] *See, e.g.,* Greenberg Decl., Ex. B at AR148-49 [redacted]); Ex. C at AR-162-63 (same); Ex. D at AR-487 (same).

---

[2] Indeed, other district courts that have made similar factual findings at the preliminary injunction stage have repeatedly held that plaintiffs subjected to that practice have standing to seek prospective relief. *See, e.g.*, *Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324, 370–71 (C.D. Cal. 2026) (granting in part PI barring policy governing immigration enforcement against certain noncitizen survivors of crime and trafficking); *M-J-M-A-*, 822 F. Supp. 3d at 1175 (granting PI barring policy of effecting warrantless arrests without individualized flight risk determination); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 32–37 (D.D.C. 2025) (same); *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1004 (N.D. Cal. 2025) (granting preliminary relief barring policy of re-detaining previously released noncitizens).

[3] The PI record on its own is more than sufficient to satisfy Plaintiffs' burden to show prospective relief standing here, but Plaintiffs provide additional evidence from the limited discovery produced to date to corroborate their own accounts.

Finally, unlike in the cases where standing has been rejected because the plaintiffs can avoid a likelihood of future injury, the very nature of Defendants' practices—indiscriminate dragnet sweeps in Latino neighborhoods, agricultural areas, and on common roadways used by Latinx Plaintiffs and individual UFW members—makes that impossible. Under *Melendres*, exposure to an officially sanctioned unlawful practice "while going about one's daily life" establishes a sufficient likelihood of future injury even if the probability that any particular plaintiff will be stopped on any particular day is not "high." 695 F.3d at 998; *see also Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1188 (9th Cir. 2026) (holding plaintiffs had standing by showing "fear of reprisal and physical injury" because "Defendants have inflicted such injuries on Plaintiffs as they engaged in First Amendment activities at varied locations on different days").

Here, Plaintiffs must continue to commute to work, bring their children to school, attend doctor appointments, go to school events, and run errands in the same areas where operations occurred—and where Defendants expressed intent to continue those unlawful practices. *See, e.g.*, Strater Decl. ¶¶ 21-27. For example, Latina UFW member Alicia continues to work as a farmworker in the Kern County area and cannot commute to work without passing through the highways targeted by Border Patrol. *Id.* ¶ 35. Similarly, another Latina UFW member, Gabriela, a grandmother who helps her daughter with childcare, must travel through areas targeted by Border Patrol to commute to work. *Id.* ¶¶ 42-43. Thus, absent the PI Order, Plaintiffs would have little choice but to expose themselves to a substantial likelihood of recurring harm from Defendants' unlawful practices simply by continuing to live in the district.

**b. These unlawful practices do not relate solely to past harm.**

In their appeal, Defendants primarily argued that "Plaintiffs' [theory of] standing is a redux of *Lyons*," Appeal Op. Br. 17, ignoring the longstanding Ninth Circuit precedent that applies *Lyons* to cases like this one. In *Lyons*, a single plaintiff was "stopped by the defendant officers for a traffic or vehicle code violation," "seized," and put in a "chokehold" position. 461 U.S. at 97. The Supreme Court determined he could not pursue injunctive relief, because he had not "credibly allege[d] that he faced a realistic threat" of future application of the policy. *Id.* at 106 n.7. But *Lyons* noted as meaningful the absence of "any [record] evidence showing a pattern

of police behavior that would indicate" an official policy sanctioning ***unconstitutional*** chokeholds. *Id.* at 110 n. 9; *see LaDuke*, 762 F.2d at 1324 (noting reasoning).

This case is not *Lyons* for several reasons. ***First***, in *Lyons*, the city chokehold policy did not expressly sanction unconstitutional police enforcement activity; rather, a more general, neutral policy had been applied to *Lyons* in an unconstitutional way. 461 U.S. at 97. Here, the facts are different: this Court found that Defendants have specific practices—which were officially sanctioned to violate the Fourth Amendment and § 1357(a)(2). PI Order at 76; *see LaDuke*, 762 F.2d at 1324 ("The Supreme Court has repeatedly upheld the appropriateness of federal injunctive relief to combat a 'pattern' of illicit law enforcement behavior.").

***Second*,** the individual Plaintiffs and UFW members were targeted indiscriminately while going about their daily lives, while in *Lyons*, the plaintiff was subject to the alleged policy only after being lawfully stopped for committing a traffic violation. *See* 461 U.S. at 105. By contrast, Defendants' practices do not depend on Plaintiffs engaging in unlawful conduct. Here, the indiscriminate, unprovoked stop ***is*** the injury—and Plaintiffs are powerless to avoid it. Thus, unlike in *Lyons*, but similar to those cases where the Ninth Circuit has found standing discussed above, Plaintiffs' injuries are likely to recur as they cannot avoid Defendants' harmful practices by "simply avoiding criminal activity." *Melendres*, 695 F.3d at 998.

***Third***, the Ninth Circuit has regularly found standing in circumstances similar to those of Plaintiffs, and in each case distinguished *Lyons*. In *Thomas v. County of Los Angeles*, for example, the Ninth Circuit held that plaintiffs had prospective relief standing where they alleged minorities were "repeatedly subject to police brutality and harassment" "on account of their race." 978 F.2d at 507. Similarly, in *LaDuke v. Nelson*, the Ninth Circuit held that plaintiffs had prospective relief standing where they alleged Border Patrol agents engaged in a "standard practice" of warrantless searches of migrant farm laborers' homes. 762 F.2d at 1331. So too in *Melendres*, as discussed above. Finally, ***fourth***, the breadth of the violations at issue is different too. In *Lyons*, plaintiff faced only one incident of a chokehold, but here individual Plaintiffs and UFW members were personally affected by nearly a dozen unlawful incidents—plus, there were nearly 80 total arrests (and many more detentive stops) within the three-day campaign, with

promises to continue the unlawful conduct. *See Thomas*, 978 F.2d at 507-08 (distinguishing *Lyons* because it involved "one citizen").

In their appeal, Defendants also cited Justice Kavanaugh's unjoined concurrence in an interim Supreme Court stay order from another case, *Noem v. Vasquez Perdomo*, which does not apply here. Appeal Op. Br. 19-21.[4] The *Vasquez Perdomo* order stayed a temporary restraining order entered by the Central District of California while appellate proceedings were pending. *Noem v. Vasquez Perdomo,* No. 25A169, 2025 WL 2585637, at *1 (2025). That stay order is not precedential. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (explaining "[a] stay order d[id] not make or signal any change to . . . [the] law" and was not "a ruling on the merits"). Nor did the majority decision provide any reasoning or analysis, or address standing at all. *Vasquez Perdomo,* 2025 WL 2585637, at *1.[5]

Moreover, the stay order in *Vasquez Perdomo* was based on a factual record in a different procedural posture and the district court findings materially differ. There, the plaintiffs alleged that the Government had a practice of relying on four specific factors (alone or combined) that were insufficient to develop reasonable suspicion. Appellant Br., *Noem v. Vasquez Perdomo*, (2025) (No. 25A169), 2025 WL 2606729, at *3. By contrast, here the Court found that Defendants maintained a "practice of conducting stops without conducting ***any individualized assessment*** of reasonable suspicion" at all. PI Order at 54 (emphasis in original). That distinction makes a difference. Unlike *Vasquez Perdomo*, ***any*** stop pursuant to the challenged practice here would dispense entirely with individualized suspicion and thus be unlawful.

Accordingly, like in *Melendres* and absent a PI, Plaintiffs face a realistic threat of future harm from Border Patrol's continuing unlawful stop-and-arrest practices.

---

[4] Indeed, Defendants' counsel conceded the stay order does not "control[] or bind[]" the Ninth Circuit (or this Court). *See* Oral Arg. at 9:50-10:00, *United Farm Workers v. Noem*, No. 25-4047 (9th Cir. Apr. 22, 2026) ("I'm not here to suggest that the Supreme Court's stay decision necessarily controls or binds this court."), available here: https://www.youtube.com/watch?v=IxKCURzph1w.

[5] Justice Kavanaugh's unjoined concurrence in this separate case with a different record does not disturb the controlling circuit precedent here. *See United States v. Hansen*, 40 F.4th 1049, 1057 (9th Cir. 2022) (Gould, J., concurring) ("To state the obvious, a concurrence by a single justice does not make precedent for the Supreme Court or for inferior courts like the Ninth Circuit.").

**2. Plaintiffs' threatened injuries are likely to arise from Border Patrol's challenged practices.**

The second element of standing requires a showing that there is "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (cleaned up). "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation are not hypothetical or tenuous and remain plausible." *Imperial Sovereign Court of Montana v. Knudsen*, 170 F.4th 820, 840 (9th Cir. 2026) (quotations omitted). Plaintiffs easily satisfy this requirement: Plaintiffs' threatened injuries of being the subject of unlawful stops and arrests arise from the two challenged Border Patrol practices. As such, they are fairly traceable to the Defendants who are responsible for implementing and supervising those policies, and Plaintiffs thus satisfy the causation element of standing.

**3. Plaintiffs' remedies sought in their motion for preliminary injunction are likely to minimize the risk of future injuries.**

The final element of standing requires a showing that it must be "likely" that the injury be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561; *Imperial Sovereign*, 170 F.4th at 841 ("A plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself."). "If a court decision can provide a small incremental step to reduce the risk of harm to the plaintiffs to some extent, that is enough to show causation as well as redressability." *Id.* Again, Plaintiffs plainly satisfy this requirement: the remedies sought in Plaintiffs' PI—including enjoining the unlawful practices and requiring guidance, training, and documentation—materially reduce the risk of these future injuries. *See* PI Order at 87-88. Because Plaintiffs faced "ongoing and prospective" harm from Border Patrol's practices when they "commenced suit," their injuries were "at that moment capable of being redressed through injunctive relief." *Gonzalez*, 975 F.3d at 806.

Accordingly, Plaintiffs have standing here to seek prospective relief.

**B. Plaintiff UFW has also established associational standing.**[6]

Plaintiff UFW has also independently established standing to bring claims on behalf of its members. To establish associational standing, an association must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023); *see, e.g.,* PI Order (Dkt. 738), *Vasquez Perdomo v. Mulllins,* No. 2:25-cv-05605-MEMF-SP, at 22-30 (C.D. Cal. Sept. 2, 2026) (finding associational standing in support of PI for ongoing policy and practice of conducting warrantless arrests). UFW satisfies each.

**1. UFW's members face a sufficient likelihood of future harm.**

To show that its members have standing to sue in their own right, an organization need only demonstrate that at least one of its members has suffered an injury. *See California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1099 (9th Cir. 2024); *see Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1163 (11th Cir. 2008) (concluding associations had standing to seek prospective relief where it was "highly unlikely" that not a single member would be harmed).

UFW has demonstrated that its members satisfy the injury requirement for the same reasons discussed above for the individual plaintiffs: UFW members face an increased risk that their rights will be violated in future raids due to Defendants' unlawful practices that specifically target Latinos, day laborers, and farm workers. *See, supra*, Section IV.A.1; *see* Strater Decl., ¶¶ 15-24. UFW has thousands of similarly situated members with many residing in the Eastern District. *See* Compl. ¶¶ 21-22; Strater Decl., ¶ 6. This thus "increases the threat of future harm to [the association plaintiffs'] members." *Cal. Rest. Ass'n*, 89 F.4th at 1100. Indeed, the specific experiences of UFW members Alicia, Benjamin, Carlos, Fernando, and Gabriela demonstrate the harm and ongoing fear felt across the UFW membership. *See* Compl. ¶¶ 25-26, 165-86, 290-301; Strater Decl., ¶¶ 25-44. For instance, Latina UFW members, such as Alicia and Gabriela cannot

[6] The Court need not reach associational standing if it finds Plaintiffs have standing for prospective relief (which they do). *See Melendres*, 695 F.3d at 999.

avoid frequenting the locations targeted by Defendants' ongoing operations due to the location of their jobs. *See* Strater Decl., ¶¶ 35, 43-44. Thus, Defendants' practices inherently "increase[] the threat of future harm to [the association plaintiffs'] members." *Cal. Rest. Ass'n*, 89 F.4th at 1100. Given it is likely that at least one UFW member will be subject to Defendants' challenged practices absent the PI, Plaintiff UFW has satisfied the first element of associational standing.

**2. UFW's mission includes protecting its members from unlawful immigration practices.**

Plaintiffs UFW also satisfied the second element: the interests UFW seeks to protect are "germane to [its] purpose." *Students for Fair Admissions, Inc.*, 600 U.S. at 199; *see Mi Familia Vota v. Fontes*, 129 F.4th 691, 709 (9th Cir. 2025) (holding organization's "core activities" of "registering voters, educating voters, and turning out the vote" shows "protecting the voting rights of its members" was germane to its purpose). UFW's mission is to improve the lives, wages, and working conditions of agricultural workers and their families. Strater Decl., ¶ 11. It is also a leader in the national movement for immigration reform and immigrants' rights. *See* Compl. ¶ 21. Thus, UFW's stated institutional goal of protecting a broad range of rights for its members, including rights related to their immigration statuses, satisfies this prong.

**3. UFW's members need not participate in this suit.**

Finally, "[a]s a general rule . . . , when it is clear and not speculative that a member of a group will be adversely affected by a challenged action and a defendant does not need to know the identity of a particular member to defend against an organization's claims, the organization does not have to identify particular injured members by name." *Mi Familia Vota*, 129 F.4th at 708. Plaintiffs allege an ongoing pattern of unconstitutional detentive stops and warrantless arrests, which does not require the participation of individual members to litigate them. Indeed, the intense fear of discriminatory stops that Defendants' indiscriminate sweeps have provoked may prevent UFW's members from active participation in the lawsuit.

Accordingly, all Plaintiffs—individuals and UFW—have established standing.

## V. CONCLUSION

For all these reason, the Court should find that Plaintiffs have standing to seek injunctive relief against Defendants.

Dated: September 17, 2026

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA

By: */s/ Bree Bernwanger*
BREE BERNWANGER
MICHELLE (MINJU) Y. CHO
LAUREN DAVIS
SHILPI AGARWAL

Dated: September 17, 2026

By: AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA

*/s/ Mayra Joachin*
MAYRA JOACHIN

Dated: September 17, 2026

By: AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

*/s/ Brisa Velazquez Oatis*
BRISA VELAZQUEZ OATIS

*Attorneys for Plaintiffs*

Dated: September 17, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Julia L. Greenberg*
FRANCO MUZZIO
CHRISTINA LEE
JASON GEORGE
JULIA L. GREENBERG
REAGHAN E. BRAUN
NATALIE R. HEIM

*Attorneys for Plaintiffs*

Dated: September 17, 2026

By: MARTINEZ AGUILASOCHO LAW, INC.

*/s/ Mario Martinez*
MARIO MARTINEZ
EDGAR IVÁN AGUILASOCHO

*Attorneys for Plaintiff United Farm Workers*