BRETT A. SHUMATE
Assistant Attorney General
Civil Division
SAMUEL P. GO
Assistant Director
MARY L. LARAKERS
Senior Litigation Counsel
OLGA Y. KUCHINS
Trial Attorney
AYSHA T. IQBAL
Trial Attorney
JAIME DURR
Trial Attorney
TIM RAMNITZ
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-616-2686

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY, et al.,

Defendants.

No. 1:25-cv-00246-JLT-CDB

**DEFENDANTS' POST-REMAND REPLY BRIEF REGARDING STANDING FOR PLAINTIFFS' PRELIMINARY INJUNCTION**

Dept.: Courtroom 4, 7th Floor
Judge: Hon. Jennifer L. Thurston

Date Filed: February 26, 2025

Trial Date: None Set

**TABLE OF CONTENTS**

A. Plaintiffs' Standing for Preliminary Injunctive Relief ........ 1

1. Plaintiffs Have No Meaningful Reply to Defendants' Evidence Refuting Their Prosepective Standing ........ 1

2. Waived Arguments ........ 7

B. UFW's Associational Standing ........ 8

CONCLUSION ........ 9

CERTIFICATE OF SERVICE ........ 10

## TABLE OF AUTHORITIES

## CASES

*AK Futures LLC v. Boyd St. Distro*, LLC,
35 F.4th 682 (9th Cir. 2022) ........ 6

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) ........ 8

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ........ 6

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ........ 5

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ........ 6

*K-2 Ski Co. v. Head Ski Co.*,
467 F.2d 1087 (9th Cir. 1972) ........ 6

*Kennedy for & on Behalf of N. L. R. B. v. Sheet Metal Workers Int'l Ass'n Loc. 108*,
289 F. Supp. 65 (C.D. Cal. 1968) ........ 5

*Martindale v. MegaStar Fin. Corp.*,
2022 WL 1129223 (E.D. Cal. Apr. 15, 2022) ........ 6

*Moreno v. Zuckerman Fam. Farms, Inc.*,
No. 2:25-CV-01574-CKD, 2025 WL 2207414 (E.D. Cal. Aug. 4, 2025) ........ 6

*Motus, LLC v. CarData Consultants, Inc.*,
23 F.4th 115 (1st Cir. 2022) ........ 5

*Roflow v. Commissioner of Social Security*,
No. 2:25-CV-2838-ICD, 2026 WL 3082898 (E.D. Cal. Oct. 15, 2026) ........ 7

*United Farm Workers v. Noem*,
823 F. Supp. 3d 1112 (E.D. Cal. 2026) ........ 4, 7

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ........ 6

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ........ 7

### A. Plaintiffs Lack Standing for Preliminary Injunctive Relief[1]

#### 1. Plaintiffs Have No Meaningful Reply to Defendants' Evidence Refuting Their Prospective Standing

Plaintiffs' Reply, in part, rehashes their opening arguments relying on *Melendres*, *LaDuke*, other district court decisions "applying *Melendres*," and distinguishing *Lyons* and *Vasquez Perdomo*. *Compare* ECF No. 222 (Plaintiffs' Reply at 2-3 ("*Melendres* is on all fours"), 7 ("this is not *Lyons*"), 8 (relying on *LaDuke*, *Escobar-Molina*, and *M-J-M-A*), 9 ("*Vasquez Perdomo* order also rests on a different factual record with materially, different district court findings") *with* ECF No. 210 (Plaintiffs' Supplemental Brief) at 6-8 ("*Melendres* is on all fours"), (relying on *Escobar Molina* and *M-J-M-A*), 10-11 ("This case is not *Lyons*"), 11 (relying on *LaDuke*), 12 ("*Vasquez Perdomo* was based on a factual record in a different procedural posture and the district court findings materially differ"). Defendants have responded to these arguments. ECF No. 215 at 7-11.

In other part, Plaintiffs reply to Defendants' argument that supplemental evidence refutes any clear showing that Operation Return to Sender, as executed, was imminently likely to be replicated at the time of Plaintiffs' complaint and PI motion. ECF No. 222 3-5; ECF No. 215 at 8-9. Specifically, Defendants' argument that supplemental evidence shows Operation Return to Sender was approved as a targeted operation and, when execution of Operation Return to Sender also involved non-targeted consensual encounters and warrantless arrests at local establishments, U.S. Border Patrol ("USBP")-headquarters ("HQ")-level authorities intervened on the morning of the second day, ordered the

[1] Plaintiffs preliminarily ask the Court to take judicial notice of recent media articles reporting on ICE activities in central California. ECF No. 222 at 2 n.1. Plaintiffs do not explain how ICE activity is relevant to a Preliminary Injunction ("PI") in this case, which concerns interior operations by U.S. Border Patrol. *See id.*; ECF No. 81-1 (Plaintiffs' Motion to Enforce) at 1 ("This lawsuit challenges the unlawful policies, patterns, and practices of U.S. Border Patrol in the Eastern District of California as shown by the El Centro Border Patrol Sector (El Centro Border Patrol) raid referred to as 'Operation Return to Sender.'"). In any event, as Plaintiffs have conceded, post-complaint events are not relevant to their PI standing. ECF No. 210 (Plaintiffs' Supplemental Brief) at 8.

consensual encounters to stop, and ordered only targeted arrests and vehicle stops. ECF No. 215 at 8-9. Plaintiffs' reply emphasizes that former Chief Bovino, as the former head of El Centro Sector, did not like the order he was given from USBP-HQ, forcefully complained about it, and pointed to his and El Centro's social media commentary. *See* ECF No. 222 at 4-5, 7, 9. But Plaintiffs do not explain how this is relevant. Because Plaintiffs do not dispute that former Chief Bovino was "subject to, and complied with, the orders to alter the execution of Operation Return to Sender," ECF No. 215 at 8-9, and Plaintiffs point to nothing indicating USBP-HQ was imminently likely to reverse course and agree with or approve "replicating Operation Return to Sender in the same manner it unfolded" at the time of their complaint, *see id.*

Plaintiffs alternatively point to the fact that, despite the order to halt consensual encounters at local establishments early on the second day, two individuals were stopped and arrested after a consensual encounter. ECF No. 222 at 4. But this does not change the fact that USBP-HQ issued an order to halt the consensual encounters on the morning of the second day and, that consequently, Operation Return to Sender as executed was not imminently likely to be replicated at the time of Plaintiffs' complaint. In any event, there were 34 consensual encounters that escalated into arrests on the first day, and only 2 on the second day, which is consistent with the fact that the order to stop consensual encounters was followed and these 2 consensual encounters were outliers. ECF No. 222, Ex. I. Moreover, these two consensual encounters took place early on the morning of the second day, according to the Forms I-213 for these subjects in the Administrative Record (at 0236 and 0307) served on Plaintiffs, shortly after USBP-HQ issued the order, further indicating these were outliers and occurring before the directive reached agents (and per ECF No. 215, Ex. D, there were some directional communication issues). The rest were vehicle stops. And as Plaintiffs' Exhibit H shows, one of the two individuals arrested appears to be the relative of a targeted arrest, *compare* ECF No. 222, Ex. H (last name of "second target"), *with* ECF No. 222, Ex. I (same last name, second individual listed as a

"consensual encounter" on day 2, January 8, 2026, row 66), which is consistent with USBP-HQ's order to "target only those on the submitted target deck and *any target of opportunity that are developed from these efforts* (no family unit should be on the target deck)." *See* ECF No. 215, Ex. B (emphasis added). In other words, this arrest was the result of a targeted consensual encounter, not the result of a "consensual encounter at local establishments (Home Depot, convenience stores, restaurants, etc)". *See id.*

Plaintiffs otherwise point to the fact that, although Operation Return to Sender in large part halted after the first day, vehicle stops continued on the second and third days. ECF No. 222 at 3-4 (citing ECF No. 15-3 (declaration of Elizabeth Strater), 15-4 (declaration of Campos Guiterez), 15-6 (declaration of Vargas Mendez), 15-11 (declaration of Aguilera Martinez), 6 (noting vehicle stops on the second and third days)). But this concedes the core point: Operation Return to Sender, as executed and challenged, depended substantially on consensual encounters at businesses. Removing that component eliminates half the asserted "pattern" or "practice" on which Plaintiffs' prospective-harm theory relies. *See* ECF No. 74 at 2-3 (describing the practices alleged in the PI as vehicle stops without reasonable suspicion and consensual encounters at businesses, including "Home Depot parking lots," that escalated into stops without reasonable suspicion); Plaintiffs' Answering Brief at 6-7 (same); ECF No. 15-1 (Plaintiffs' motion for preliminary injunction) at 2-4, 10-13 (asserting "during 'Operation Return to Sender.' Border Patrol repeatedly and consistently targeted moving vehicles" and "repeatedly performed pedestrian and parking lots stops without reasonable suspicion"). Plaintiffs themselves emphasize that "*most* of the unlawful conduct upon which Plaintiffs s[ought] relief" in their PI pertained to "detentive stops of pedestrians," rather than "vehicle stops." ECF No. 38 (Plaintiffs' Reply to Motion to Dismiss) at 3 (emphasis added). Consequently, any recurrence limited to vehicle stops would not be consistent with Plaintiffs' pattern and practice claim, would not replicate the challenged operation, and cannot establish prospective standing. Half of the "playbook" for Operation Return to Sender, *i.e*, the part

relying on consensual encounters, was ripped out and, consequently, not imminently likely to recur. ECF No. 74 (Plaintiffs' Opposition to Motion to Dismiss) at 13 (describing the Operation Return to Sender "playbook"); *see also* Plaintiffs' Answering Brief, No. 25-4047 at 3-7 (describing the "tactics" used in Operation Return to Sender to include vehicle stops and encounters in the parking lots of businesses), 25 (distinguishing *Lyons* based on the total number of arrests from both consensual encounters and vehicle stops in Operation Return to Sender). Plaintiffs' "pattern and practice" claim, already deficient on the record to show a pattern for prospective standing purposes, *see United Farm Workers v. Noem*, 823 F. Supp. 3d 1112, 1129 n.9 (E.D. Cal. 2026), now more deficient, and the stops and arrests more "isolated," *id.* at 1128-29. Thus, it remains true that the evidence shows Operation Return to Sender, as it unfolded and is challenged by Plaintiffs, was not imminently likely to be replicated at the time of Plaintiffs' complaint and PI motion; that when Plaintiffs assert that a PI is warranted because Operation Return to Sender is going to be replicated, the evidence shows this is not the case.

Lastly, Plaintiffs, in a footnote, cursorily object to Defendants' evidence as "curated" and vaguely accuse Defendants of "stonewalling." ECF No. 222 at 5 n.5 (citing ECF No. 163, Ex. A at 9-10 (RFPs 1, 2), Ex. B at 6-7 (agreeing to produce nonprivileged documents responsive to RFPs 1-2); ECF No. 194, Ex. A at 3 (Further Narrowed RFPs 4 and 11), ECF No. 198 (overruling Defendants' objections to those RFPs)). But the cited history shows only ordinary discovery disputes—two discovery disputes resolved by Judge Baker, none resulting in findings of stonewalling or obstruction. And Plaintiffs omit mentioning that Judge Baker sustained Defendants' objections to Plaintiffs' June 2026 RFPs in the first discovery dispute resolved in April 2026. *See* ECF No. 178 at 11; ECF No. 163. Meanwhile, Plaintiffs' claim is overall at odds with the fact that Exhibits A and B were produced in response to Plaintiffs' requests for electronic custodial discovery. Exhibit D had not yet been produced, to be sure, but submitting Exhibit D is neither striking nor remarkable as it simply

supplements Exhibit A, and with discovery necessarily incomplete in this case, Defendants completed review of this document to correspond with the briefing schedule here. Plaintiffs identify no authority suggesting supplementation in this context is improper. And Defendants were not knowingly withholding any documents.[2]

Plaintiffs request that, if the Court agrees with Defendants on Plaintiffs' lack of prospective standing, the Court should order Defendants to produce former Chief Bovino's electronically stored information for additional supplemental briefing. *See* ECF No. 222 at 5 n.5. The Court should reject this request as untimely and unsupported. While jurisdictional discovery may sometimes be appropriate, it is improper where—as here—it is a "last ditch effort" presented in Plaintiffs' opposition to Defendants' evidence contradicting their standing allegations. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 127-28 (1st Cir. 2022). Plaintiffs never sought discovery before filing their PI motion, despite bearing the burden of establishing standing, and instead represented to this Court that the existing record was "more than enough" to support standing. ECF No. 207 at 1. Jurisdictional discovery should be denied where the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Moreno v. Zuckerman Fam. Farms, Inc.*, No. 2:25-CV-01574-CKD, 2025 WL 2207414, at *3 (E.D. Cal. Aug. 4, 2025) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), and here, Plaintiffs do not even offer as much as a "hunch" about what this discovery might reveal. Instead, they provide no explanation for how this discovery might generate facts that could overcome the fact that former Chief Bovino was ordered to, in large part, halt Operation Return to

[2] Indeed, the parties are still at the pleading stage without a discovery schedule. Discovery is necessarily incomplete at this juncture, and both sides operate on limited information without the full evidentiary development typical of summary judgment or trial. *Kennedy for & on Behalf of N. L. R. B. v. Sheet Metal Workers Int'l Ass'n Loc. 108*, 289 F. Supp. 65, 90 (C.D. Cal. 1968) (in PI proceedings, "both the movant and the opposing party are often unable to obtain and marshal their evidence in a manner that would be proper for a summary judgment hearing or for an actual trial"); *see also Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (it is well recognized that, in the preliminary injunction context, "time pressures limit adversarial testing").

Sender after the first day by USBP-headquarters and that he followed this order. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023) (no jurisdictional discovery granted where Plaintiff's allegations were "trumped" by evidence "to the contrary"); *Martindale v. MegaStar Fin. Corp.*, 2022 WL 1129223, at *3 (E.D. Cal. Apr. 15, 2022) (no jurisdictional discovery "if the request amounts to a 'fishing expedition'"); *see* ECF No. 222 at 5 n.5.

Because Plaintiffs' evidence in support of their PI is controverted by Defendants' counter evidence, the Court should not grant relief. *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972) ("if the facts so appearing consist largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant such [injunctive] relief"); *contra AK Futures LLC v. Boyd St. Distro*, LLC, 35 F.4th 682, 691-92 (9th Cir. 2022) (injunction proper where "AK Futures has provided a sworn declaration that remains uncontradicted regarding the factual particulars of its delta-8 THC products") (citing *K-2 Ski Co.*, 467 F.2d at 1088-98). It is Plaintiffs' burden to establish standing. Because Plaintiffs cannot clearly show their evidence for prospective standing is uncontradicted and they have not pointed to any evidence that meaningfully responds to Defendants' counter evidence[3] *see* ECF No. 215 at 11-13, the Court should find they have failed to meet that burden.

**2. Waived Arguments**

While Plaintiffs largely rehash their prior arguments relying on *Melendres*, they have now added a request that the Court take judicial notice of Google-maps coordinate comparisons purporting to show two arrests occurred within .2 miles of another on different days. *See* ECF No. 222 at 6. This is to counter Defendants' argument that Plaintiffs' evidence underscores how any likelihood of future harm is speculative given that no individual has been subject to repeated stops and no location repeatedly visited. *Id.*; ECF 215 at 7-8. First, arguments raised for the first time in a reply brief that could have

[3] Plaintiffs do not dispute that, if they lack prospective standing, the Court must dismiss their PI. *See* ECF No. 215 at 9 n.2.

been raised in an opening brief are deemed waived. *Roflow v. Commissioner of Social Security*, No. 2:25-CV-2838-ICD, 2026 WL 3082898, at *9 (E.D. Cal. Oct. 15, 2026) ("The Court need not consider arguments raised for the first time in a reply brief") (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)). That is all the more true here where, as the Court has noted, Defendants first made this argument in September 2025, in their opening brief to the Ninth Circuit, *see United Farm Workers*, 823 F. Supp. 3d at 1129 n.9, and Plaintiffs did not include this argument in their Ninth Circuit Answering Brief or in their initial standing brief here, even though Plaintiffs relied on Defendants' Ninth Circuit arguments in their opening standing brief. *See* ECF No. 210 at 8 (citing Defendants' Ninth Circuit Opening Brief), 12 (same). Plaintiffs have been in possession of the evidence from which these coordinates are taken (the Certified Administrative Record) since July 2025, prior to the appellate briefing[4] and provide no justification for raising this new argument now.

Second, and in any event, these two stops were vehicle stops, not consensual encounters, *see* ECF No. 222, Ex. I (Rows 52 and 71), which, as explained in Part A.1 *supra*, does not refute Defendants' arguments that Plaintiffs lack prospective standing.

Third, Plaintiffs' Exhibit I shows the locations for these vehicle stops were miles apart along Highway 99 (approximately 2.5 miles apart), not proximate. *See* ECF No. 222, Ex. I (Row 52, "Location" Column ("Highway 99/Olive [Road]") and Row 71, "Location" Column ("35118 McMurtrey Ave, Bakersfield, CA 93308").

Plaintiffs similarly waive or forfeit any reliance on post-complaint events—Operation at Large as executed in Sacramento—to support their standing. *See* ECF No. 222 at 7 n.8. Plaintiffs' attempt to rely on Operation at Large to support standing is directly contrary to their prior position thrice conceding that the Court can only consider pre-complaint events for standing. ECF No. 210 at 8. In any event,

[4] Plaintiffs' Exhibits E and F are from the "June 2026 Administrative Record" because Defendants reproduced the Administrative Record in June 2026 with less redactions, none of which are implicated here.

Plaintiffs' citation to the July 2025 events in Sacramento only as support for Plaintiffs' subjective "fears that Defendants would return to the Eastern District," is not evidence showing Operation Return to Sender was imminently likely to be replicated at the time of their complaint—a fact Plaintiffs would need to establish for standing. ECF No. 222 at 7 n.8. Meanwhile, Defendants have addressed the posture of this case in relation to events in Sacramento in July 2025, *see* ECF No. at 215 9 n.2, which Plaintiffs do not dispute, *see supra* n.3, and Plaintiffs ultimately ask the Court not to address post-complaint events, *see* ECF No. 222 at 7 n.8 ("the Court need not reach the issue"), effectively conceding they do not support prospective standing.

**B. UFW's Associational Standing**

Lastly, as Defendants explained, UFW's associational standing fails for the same reasons. ECF No. 215 at 13. To the extent Plaintiff UFW based its prospective standing on a likelihood of harm to its unidentified members, Plaintiff UFW has withdrawn that argument and asserts its prospective standing relies only on those UFW members specifically mentioned in the Strater Declaration. ECF No. 222 at 10. As is the case for individual Plaintiffs, any risk of future harm to these specific UFW members is equally speculative. ECF No. 215 at 13. Plaintiffs' response to Defendants' reliance on *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024), is that the Ninth Circuit was not addressing standing. ECF No. 222 at 10. But that does not meaningfully respond to the reasoning that, if a Fourth Amendment claim is too fact specific for class certification, it is likewise too fact-specific for associational standing. ECF No. 215 at 14. Plaintiffs fail to meaningfully counter Defendants' arguments, demonstrating Plaintiff UFW's lack of standing.

## CONCLUSION

For these reasons, and for the reasons in Defendants' Supplemental Brief, Plaintiffs have failed to demonstrate a non-speculative, imminent likelihood that the challenged practices were likely to recur at time of their complaint and PI motion. The Court should deny Plaintiffs' Motion for Preliminary Injunction for lack of standing.

Respectfully submitted

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SAMUEL P. GO
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

AYSHA T. IQBAL
Trial Attorney

OLGA Y. KUCHINS
Trial Attorney

JAIME DURR
Trial Attorney

By: /s/ *Tim Ramnitz*
TIM RAMNITZ
Senior Litigation Counsel
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 616-2686
Tim.ramnitz@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On October 22, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of California, using the electronic case filing system of the court. I hereby certify that I have served counsel of record electronically through the Court's filing system.

s/Tim Ramnitz
Tim Ramnitz
Senior Litigation Counsel