BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
EMILY CHENGXI ZHU - # 366697
ezhu@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-5000

ANDRES HOLGUIN-FLORES - # 305860
aholguinflores@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

FRANCO MUZZIO - # 310618
fmuzzio@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
CHRIS S. SUN - # 308945
csun@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA L. GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al.,

Defendants.

Case No. 1:25-cv-00246-JLT-CDB

**POST-REMAND SUPPLEMENTAL REPLY BRIEF RE STANDING FOR PLAINTIFFS' PRELIMINARY INJUNCTION**

Dept.: Courtroom 4, 7th Floor
Judge: Hon. Jennifer L. Thurston

Date Filed: February 26, 2025

Trial Date: None set

**TABLE OF CONTENTS**


| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. Individual Plaintiffs have standing for prospective relief. | 2 |
| | B. Plaintiff UFW also has associational standing | 9 |
| III. | CONCLUSION | 10 |

**TABLE OF AUTHORITIES**

**Page(s)**

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) ....................10

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) ....................7

*City & Cty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
944 F.3d 773 (9th Cir. 2019) ....................8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................2, 7, 8

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013)....................8, 9

*Coalition on Homelessness v. City & County of San Francisco*,
758 F. Supp. 3d 1102 (N.D. Cal. 2024) ....................9

*D'Lil v. Best Western Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008) ....................7

*Dairy, LLC v. Milk Moovement, Inc.*,
No. 2:21-cv-02233 BS AC, 2022 WL 378838 (E.D. Cal. Feb. 8, 2022)....................5

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025)....................8, 10

*Garcia v. City of Los Angeles*,
No. CV19-6182 DSF, 2020 WL 6586303 (C.D. Cal. Sept. 15, 2020) ....................9

*Hodgers-Durgin v. De La Vina.*,
199 F.3d 1037 (9th Cir. 1999) (en banc) ....................9

*Kalani v. Starbucks Coffee Co.*,
698 F. App'x 883 (9th Cir. 2017) ....................6

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ....................8

*M-J-M-A v. Hermosillo*,
822 F. Supp. 3d 1147 (D. Or. 2026) ....................8

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .................... *passim*

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) ....................10

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) ........................................................................ 10

*Vasquez Perdomo v. Mullin*,
2026 WL 2751388 (C.D. Cal. Sept. 2, 2026) ........................................ 9

*Vasquez Perdomo v. Mullin*,
No. 2:25-cv-05605-MEMF-SP, 2026 WL 2752137 (C.D. Cal. 2026) ........ 8, 9

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ........................................................... 2

*Vasquez Perdomo v. Noem*,
Case No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Oct. 17, 2025) ................ 9

## I. INTRODUCTION

After nearly two years of litigation, Defendants have offered no evidence showing that the dozen stops and arrests that Plaintiffs documented with sworn declarations in support of their motion for a preliminary injunction were lawful. Defendants also have offered no evidence showing that the officers involved in these unlawful stops and arrests were in any way rebuked or reprimanded in the weeks that followed. And Defendants have offered no evidence that their repeated promises to return to Kern County and conduct additional operations deploying similar practices across the Eastern District were not serious.

Instead, Defendants argue that Plaintiffs' evidence amounts to merely "isolated past encounters" that are insufficient to establish a realistic risk of future harm for the purpose of prospective standing. Opp. at 1. Defendants are wrong. As this Court has already found and the record shows, Defendants planned to continue in this District to (1) conduct unlawful detentive stops without reasonable suspicion, and (2) effectuate warrantless arrests without the individualized assessments required by federal law, absent the Court's intervention. Dkt. 47 ("PI Order") at 76, 83-84. That alone establishes that Plaintiffs have standing for injunctive relief. *See Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012).

Because Defendants cannot dispute that they repeatedly engaged in practices of unlawful stops and arrests, they instead try to argue that those practices were "halted after the first day" of Operation Return to Sender ("RTS"). Opp. at 8-9. This argument—made for the first time now after nearly two years of litigation—is not supported by the record. Indeed, Plaintiffs documented unlawful stops and arrests that occurred ***after*** the first day. *See, e.g.*, Dkt. 15-4 (Campos Gutierrez Decl.), ¶¶ 2-6, 8, 9, 15 (on the second day of the operation, U.S. citizen who has lived in Bakersfield for 20 years, pulled over and arrested without a warrant or probable cause); Dkt. 15-11 (Aguilera Martinez Decl.), ¶¶ 4-10 (on the second day of the operation, lawful permanent resident who has lived in Kern County for 45 years, pulled over, dragged from vehicle, and handcuffed without a warrant or probable cause); Dkt. 15-3 (Strater Decl.) ¶¶ 37-41 (on the third day of the operation, UFW member who has lived in Kern County for around 20 years pulled over, had car windows smashed, and dragged from his car without a warrant or probable cause).

Defendants' own evidence submitted on remand illustrates that then-El Centro Sector Chief Patrol Agent Gregory Bovino—who led Operation RTS—considered any instruction to desist from indiscriminate stop and arrest practices "repreh[e]nsible." Dfts. Ex. C at 2. Rather than publicly repudiate these unlawful practices in the weeks that followed Operation RTS, Defendants, including Chief Bovino, proudly declared the operation "an overwhelming success from day one" and promised to conduct additional similar operations in Kern County and throughout the Eastern District. Dkt. 15-2, Ex. 11; *see* PI Order at 83-84.

Accordingly, this Court should find—consistent with its PI order—that this record plainly establishes Plaintiffs have standing for prospective relief under binding Ninth Circuit law.[1]

## II. ARGUMENT

### A. Individual Plaintiffs have standing for prospective relief.[2]

"To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Melendres*, 695 F.3d at 997 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). A plaintiff may do so by showing "the harm is part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights." *Id.* at 998; *see Vasquez Perdomo v. Noem*, 148 F.4th 656, 674 (9th Cir. 2025) (holding plaintiffs had injunctive relief standing where evidence supported "a pattern of" unlawful conduct and "a plethora of statements suggest[ing] approval" of them). That is

---

[1] Plaintiffs respectfully request that the Court consider these issues expeditiously, given that ongoing raids in the Eastern District appear to be employing the same unlawful practices that are at issue in this case. While Plaintiffs do not rely on the following reports for the purpose of establishing standing, they underscore the need for an immediate re-entry of the PI. *See, e.g.*, Ruby Rivera, "'Operation Safe California' raises immigration enforcement concerns across Central Valley," *ABC 23: Bakersfield* (Oct. 9, 2026) ("[E]nforcement activity around Fresno," which "mirrors what Kern County saw in 2025"), https://www.turnto23.com/news/in-your-neighborhood/bakersfield/operation-safe-california-raises-immigration-enforcement-concerns-across-central-valley; Wendy Fry, "Sudden surge in ICE arrests empties streets in California's San Joaquin Valley," *CalMatters* (Oct. 9, 2026), https://calmatters.org/justice/2026/10/fresno-immigration-arrests/ ("Why did they stop me? Because I'm Latino. . . But I had my papers with me so they couldn't do anything to me. . . The whole community is terrified. . . . No one is going out to work."); Erik Galicia, "Over 70 ICE arrests this week in Fresno area as laborers are profiled, watch groups say," *The Fresno Bee* (Oct. 9, 2026), https://www.fresnobee.com/news/local/article317542396.html ("With these roving patrols, they're looking (for) brown people who look like workers[.]").

[2] Defendants do not challenge the causation or redressability requirements of standing, so Plaintiffs address them only in their opening brief. *See* Suppl. Br. at 13.

precisely what Plaintiffs have shown here.

*Melendres* is on all fours. There, the plaintiffs challenged a "practice of stopping Latino drivers and passengers pretextually and without individualized suspicion." 695 F.3d at 994. These unlawful stops were carried out through "'saturation patrols' or 'sweeps' targeting Latinos." *Id.* at 998. In these sweeps, each named plaintiff was ***stopped only once.*** *Id.* at 995. The Ninth Circuit nonetheless held that, although "the likelihood of a future stop of a particular . . . plaintiff may not be 'high,'" "future injury was nevertheless 'sufficiently likely' given the [d]efendants' stated . . . practice," which plaintiffs could not avoid. *Id.* at 997-98.

So too here. This Court has already made several findings that establish Plaintiffs' likelihood of future harm, and the record provides ample additional support for each. The Court found that Plaintiffs' "evidence establishes a pattern and practice of agents performing detentive stops without reasonable suspicion in th[e] [Eastern] District." PI Order at 76.[3] This Court also found Plaintiffs' "evidence shows a pattern and practice of warrantless arrests without Border Patrol agents performing individualized flight risk assessments to have probable cause for the arrest as required." PI Order at 76.[4] Moreover, the Court found that Defendants intended to conduct additional operations applying those same unlawful practices again. *See* PI Order at 83-84. The Court should now hold that those findings, under *Melendres*, establish that Plaintiffs are likely to suffer future harm. *See* Suppl. Br. at 4-10.

Defendants' attempts to distinguish *Melendres* are unavailing. Opp. at 8. ***First***, Defendants point to new supplemental evidence which they claim shows "CBP headquarters-level authorities . . . intervened on the morning of the second day, ***ordered the consensual encounters***

---

[3] *See, e.g.,* Dkt. 15-9 (Morales Cisneros Decl.), ¶¶ 4-5 (stopped while lawfully parked in his vehicle); Campos Gutierrez Decl. ¶¶ 3-4 (stopped while lawfully driving vehicle); Dkt. 15-6 (Vargas Mendez Decl.) ¶¶ 3-5 (same); Aguilera Martinez Decl. ¶ 4 (same); Dkt. 15-8 (Hernandez Espinoza Decl.), ¶¶ 4-5 (passenger stopped while partner was lawfully driving vehicle); Dkt. 15-10 (Munguia Esquivel Decl.), ¶¶ 4-5 (stopped while lawfully standing outside a Home Depot with other day laborers); *see also* Dkt. 15-2, Ex. 23 ("It was profiling . . . They didn't stop people with FedEx uniforms, they were stopping people who looked like they worked in the fields").

[4] *See, e.g.,* Morales Cisneros Decl. ¶¶ 6, 22 (arrested without a warrant or questions about community ties; believes he was arrested "because of the color of [his] skin"); Campos Gutierrez Decl. ¶¶ 2, 9 (U.S. citizen arrested without a warrant or an explanation; never questioned about community ties); Vargas Mendez Decl., ¶¶ 9-10 (dragged out of vehicle and handcuffed; no explanation for why he was being arrested, no warrant provided, no questions about community ties); Aguilera Martinez Decl. ¶¶ 7-8 (similar); Hernandez Espinoza Decl. ¶¶ 7, 9 (similar).

***to stop***, and ***ordered only targeted arrests and vehicle stops***." Opp. at 8-9 (emphasis added). But this evidence does not establish that Defendants discontinued their unlawful practices after day one. Indeed, Plaintiffs and class members Ernesto Campos Gutierrez, Yolanda Aguilera Martinez, and Juan Vargas Mendez were all unlawfully stopped on the ***second day***. *See* Campos Gutierrez Decl. ¶ 3 (stopped around 9:40am on 1/8/25); Aguilera Martinez Decl. ¶ 4 (stopped around 4:30pm on 1/8/25); Vargas Mendez Decl., ¶ 4 (stopped around 5pm on 1/8/25). UFW member Fernando was unlawfully stopped on the ***third day***. *See* Strater Decl., ¶¶ 38-41.

In addition, the El Centro Sector's own contemporaneous records show only "two pre-identified targets were arrested" in the January operation, *see* Greenberg Declaration ISO Reply Brief ("Greenberg Decl.")., Ex. H, and "consensual encounter[s]" continued into day two with "vehicle stop[s]" all three days, *see id.*, Ex. I (final column in spreadsheet). These "consensual encounter[s]" and "vehicle stop[s]" were anything but consensual: they are precisely the non-targeted, suspicionless stops, which grabbed Latinos off the streets and pulled them from their vehicles indiscriminately. *See* Greenberg Declaration ISO Post-Remand Supplemental Brief, Ex. A at 714 (plan to use "hunters" to "spot targets of opportunity").

Rather than support Defendants' position, the newly submitted emails show that the unlawful practices were officially sanctioned by Chief Bovino. He rebuked CBP headquarters' instruction to stop "consensual encounters," responding that the instruction was ***"repreh[e]nsible"*** because Border Patrol "NEED[ED] TO BE DOING CONSENSUAL ENCOUNTERS IN CONJUNCTION WITH TARGETED." Dfts. Ex. C at 2 (emphasis added, capitalization in original). Later that day, Chief Bovino reasserted his control over the operation and emphasis on conducting broad sweeps that resulted in as many arrests as possible:

> ***I am the by God on ground commander*** here in the now better and safer Kern County/Bakersfield area. . . . As we operate and put bad guys in jail, . . . , ***not having to sift through various levels of administrative or limiting bureaucracy is essential***. This operation runs through Friday and our agents are ***working hard to arrest AS MANY BAD PEOPLE AND BAD THINGS AS IS POSSIBLE.***

Dfts. Ex. D at 1 (emphasis added, capitalization in original). And rather than acknowledge the constitutional and legal violations that occurred during the first day of the operation, Mr. Bovino

requested that his agents be rewarded with "Border Patrol Commendation Medals … on ***our next planned operation*** [in] Sacramento, CA." Dfts' Ex. D at 1 (emphasis added). Contrary to Defendants' spin now, these emails and Plaintiffs' unrebutted declarations show that Chief Bovino set the strategy in this District and unlawful stops and arrests continued after the first day.

Defendants' new theory appears to be nothing more than a made-for-litigation post-hoc rationalization. Immediately after the January raids, the El Centro Sector repeatedly stated that it intended to return to Bakersfield, *see* Dkt. 15-2, Ex. 3 ("We plan on coming back!!"), and extend its unlawful practices throughout the Eastern District, *see id.*, Ex. 2 ("Our agents go wherever the threats and crime take us, whether that's #SanBernardino #LosAngeles #Riverside #Barstow #Bakersfield or beyond"); Ex. 10 ("We are planning operations for other locals (sic) such as Fresno and especially Sacramento."). The Sector was unambiguous: "Operation Return to Sender was an overwhelming success from day one," *id.*, Ex. 11, and "we will try and catch even more [people]. . ." and "arrest more" in "our next operation," *id.*, Ex. 4. The comments were not limited to the El Centro Sector or Chief Bovino: then-Border Czar Tom Homan stated at the end of January, "We're going to . . . arrest as many as we can." *Id.*, Ex. 15. Moreover, in the days following Operation RTS, no one associated with Defendants publicly acknowledged that the operation involved widespread unlawful stops and arrests. That record belies any suggestion that Defendants internally repudiated the practices. [5]

---

[5] Plaintiffs object to Defendants' curated selection of internal Border Patrol communications. After stonewalling Plaintiffs' requests for electronic custodial discovery for the past year and a half, Defendants produced Exhibit D for the first time just days before filing their opposition. The inclusion of this exhibit is striking given that Defendants have produced very few of Chief Bovino's emails and text messages concerning Operation RTS, despite Plaintiffs having requested those communications in ***June 2025***. *See* Dkt. 163, Ex. A at 9-10 (RFPs 1, 2), Ex. B at 6-7 (agreeing to produce nonprivileged documents responsive to RFPs 1-2); *see also* Dkt. 194, Ex. A at 3 (Further Narrowed RFPs 4 and 11); Dkt. 198 (overruling Defendants' objections to those RFPs). Defendants should not be permitted to selectively present what they consider favorable evidence while withholding other relevant documents. To the extent the Court finds this limited evidence persuasive, it should order Defendants to immediately produce, at a minimum, all of Chief Bovino's email, text, and instant message communications concerning Operation RTS and permit supplemental briefing. *See Dairy, LLC v. Milk Moovement, Inc.*, No. 2:21-cv-02233 BS AC, 2022 WL 378838, at *3 (E.D. Cal. Feb. 8, 2022) (finding good cause for expedited document discovery to aid in resolution of pending PI motion).

***Second***, Defendants next contend that Plaintiffs cannot show standing because the record "shows no repeated stops" and "no repeated locations." Opp. at 1, 7-8. But no authority requires that, to show standing for injunctive relief, Plaintiffs must be "subjected to the challenged conduct on numerous occasions[.]" To the contrary, the *Melendres* plaintiffs were each stopped only once, 695 F.3d at 995,[6] and Defendants do not cite anything that suggests otherwise. Furthermore, news reports show that Border Patrol returned to Highway 99 in Bakersfield at least on the first and second days of the operation, thereby creating a clear threat of repeat encounters for anyone stopped and then released. *See* Dkt. 15-2 at 3. This is corroborated by Defendants' own documents, which show that agents made arrests in the same areas on multiple days. *Compare, e.g.*, Ex. F (showing arrest on 1/7/25 at coordinates 35.4451, -119.07582), *with* Ex. E (showing arrest on 1/8/25 at coordinates 35.44563, -119.07615)[7]; *see also* Ex. I (showing arrets along Highway 99 across the first two days). And, in any event, Plaintiffs travel in and around Bakersfield to conduct their daily lives, so they faced a likely threat of future injury, even if Defendants did not return to the exact same location.

Similarly, Defendants contend that the "limited operation in January 2025" which was "large[ly] halted midway after the first day" is too short to show a pattern or practice. Opp. at 10. But the three-day operation (which was not halted, as shown above) was just the beginning. Defendants' repeated statements show an intent to continue those practices in Bakersfield and the broader District as described above. *See* PI Order at 83-84. Nor were the unlawful practices limited to a few individuals: nearly a dozen people provided sworn corroborating testimony, *see*

---

[6] In doing so, Defendants also misrepresent this Court's prior order. *See* Opp. at 8. There, the Court distinguishes between different lines of standing cases, and notes that "theoretically" it might be "possible" for Plaintiffs to show standing without relying on *Melendres*. But the footnote does not contradict this Court's earlier findings of patterns and practices of federal "agents performing detentive stops without reasonable suspicion" and "of warrantless arrests without Border Patrol agents performing individualized flight risk assessments to have probable cause for the arrest as required." PI Order at 76.

[7] A comparison of these coordinates by using Google Maps shows that the locations are approximately .2 miles (or one minute via car) away from one another. *See* Greenberg Decl., Ex. G. Courts may take judicial notice, pursuant to Rule 201(b) of the Federal Rules of Evidence, of Google Maps depictions of locations. *See Kalani v. Starbucks Coffee Co.*, 698 F. App'x 883, 886 n.2 (9th Cir. 2017). Plaintiffs respectfully request that the Court do so here.

Dkt. 15-3 to 15-11, and Defendants were unaware of the "[c]riminal and/or immigration history" for 77 of the 78 arrestees "prior to the encounter[s]," Dkt. 38-1, Ex. 1. Indeed, Defendants' own records show the agents did not know who they were encountering. *See id.*; Greenberg Decl., Ex. H (noting only "two pre-identified targets were arrested"). In addition, Defendants' reliance on the Eastern District's size is a red herring: Defendants targeted Latino individuals—based on race and perceived occupation—along farmworkers' roadways and in Latino neighborhoods.

***Third,*** Defendants contend that Plaintiffs' "handful of rhetorical social media posts" do not show that the operation was likely to recur. Opp. at 9. But Defendants' own supplemental evidence shows that, on January 8, 2025, Chief Bovino stated that the "next planned operation" would take place in "Sacramento, CA."[8] Dfts. Ex. D at 1. This is corroborated by the uncontested public statements in the record as discussed above. *See* PI Order at 83-84. And Defendants ignore that many of those public posts came directly from Chief Bovino, who led El Centro's strategy.

***Finally***, Defendants' cases are inapposite. For one, this is not *Lyons*. *See* Suppl. Br. at 10-11. That case involved a neutral chokehold policy applied unconstitutionally to one individual, not officially sanctioned unlawful conduct. 461 U.S. at 97. Here, the Court found (and the robust record shows) Defendants used sanctioned practices, which violate the Fourth Amendment and federal law. PI Order at 76. Moreover, Lyons was subjected to the chokehold only after a traffic violation, so he could avoid future encounters by obeying the law. 461 U.S. at 105. Here, the indiscriminate, unprovoked stop ***is*** the harm, and Plaintiffs remain at risk of injury while going about their daily lives around Bakersfield. *See Melendres*, 695 F.3d at 998; *see also Church v. City of Huntsville*, 30 F.3d 1332, 1339 (11th Cir. 1994) (standing where practice of "arresting . . . homeless people for engaging in the ordinary and essential activities of daily life"). For the same reason, Defendants' attack on Plaintiffs' "fears," Opp. at 10 n.3, misses the mark: Plaintiffs do

---

[8] Although Defendants' July 2025 operation in Sacramento occurred after the filing of the Complaint, those raids (which happened ***while the PI was in place***) serve as corroborating evidence that Plaintiffs' fears that Defendants would return to the Eastern District are credible. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1038-39 (9th Cir. 2008) (plaintiff had standing, because evidence of plaintiff's continued intent to return to a hotel after action was filed created an "obvious and most reasonable inference" that she intended to return to the hotel ***at the time*** complaint was filed). Regardless, the Court need not reach this issue.

not rely on "subjective apprehension," but rather demonstrated practices and stated intent.

*LaDuke v. Nelson* confirms this point. 762 F.2d 1318 (9th Cir. 1985). There, the Ninth Circuit held that farmworkers had standing to challenge immigration raids conducted without reasonable suspicion, probable cause, or a warrant, because "defendants engaged in a standard pattern of officially sanctioned officer behavior." *Id.* at 1324. *Lyons*—where there was no policy of inflicting unlawful chokeholds, and the record was devoid of evidence showing a pattern of the same—was thus distinguishable. *See id.*; *see also* Suppl. Br. at 10-11. Moreover, Plaintiffs fall within the classes specifically targeted by Defendants. *See Melendres*, 695 F.3d at 998 (standing for Latino plaintiffs where unlawful sweeps were meant to "target[] Latinos as part of their immigration enforcement plan"); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 33-34 (D.D.C. 2025) (similar).

Other district courts have consistently distinguished *Lyons* and applied *Melendres* to find standing in similar cases. *See, e.g.*, *Vasquez Perdomo v. Mullin,* No. 2:25-cv-05605-MEMF-SP, 2026 WL 2752137, at *12 (C.D. Cal. 2026) (finding *Lyons* "should be distinguished when a district court 'ma[kes] an explicit finding of likelihood of recurrence'" of an unlawful practice); *Escobar Molina*, 811 F. Supp. 3d at 33-34 (finding *Lyons* distinguishable because defendants unlawfully target Latino residents that "cannot avoid repeating the quotidian conduct that led to their original arrests"); *M-J-M-A v. Hermosillo,* 822 F. Supp. 3d 1147, 1174-75 (D. Or. 2026) (finding *Melendres*, not *Lyons*, controls where "Plaintiffs present evidence of Defendants' targeted pattern and practice of violating Plaintiffs' constitutional rights, and Plaintiffs are vulnerable to that practice simply by their presence in the United States").

*Clapper v. Amnesty International USA* also does not require a different outcome. In *Clapper*, the plaintiffs challenged a surveillance statute on the day it was enacted, and their injury depended on a "highly attenuated chain of possibilities": that the Government would choose to target their specific communications, invoke the statute to do so, obtain court authorization, and succeed in intercepting them. 568 U.S. 398, 410 (2013). No such chain exists here. Defendants already targeted Plaintiffs in sweeping raids, and stated their intent to continue them. *See City & Cty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019)

(finding reliance on *Clapper* unfounded where prior harms shown and expected to continue).

Nor is this case *Hodgers-Durgin v. De La Vina*. There, the court did not find an officially authorized pattern of unlawful behavior, because plaintiffs drove hundreds of miles across the region, saw Border Patrol agents nearly every day, and yet were only stopped once in 10 years. 199 F.3d 1037, 1039 (9th Cir. 1999) (en banc). By contrast, Defendants' course of operations in Kern County (and planned for other locations there and in the Eastern District), is to drive around while looking for, stopping, and arresting "targets of opportunity." Greenberg Decl., Ex. A at 714.

Lastly, as explained in Plaintiffs' opening brief, *see* Suppl. Br. at 12, Justice Kavanaugh's unjoined concurrence in an interim Supreme Court stay order from another case is not binding, nor precedential. *See Vasquez Perdomo*, 2026 WL 2752137, at *12 (noting the logic behind the order is "unspoken," and so the order does not provide "binding authority"). The Supreme Court's *Vasquez Perdomo* order also rests on a different factual record with materially different district court findings. Even so, after remand to the district court, the parties engaged in expedited discovery, *see* Order Granting Motion for Limited Expedited Discovery, *Vasquez Perdomo v. Noem*, Case No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Oct. 17, 2025), Dkt. 223, and the district court granted a new preliminary injunction after finding the plaintiffs have standing for injunctive relief, *Vasquez Perdomo v. Mullin*, 2026 WL 2751388, at *12-17, *31 (C.D. Cal. Sept. 2, 2026).

As such, Individual Plaintiffs have standing to seek prospective relief.

**B. Plaintiff UFW also has associational standing.**

Plaintiff UFW also has associational standing to enjoin Defendants' unlawful practices. Courts routinely find associational standing for similar claims. *See, e.g., Vasquez Perdomo,* 2026 WL 2751388, at *13-16 (organization had standing for claims asserting violations of its members' Fourth Amendment rights); *Coalition on Homelessness v. City & County of San Francisco*, 758 F. Supp. 3d 1102, 1122-25 (N.D. Cal. 2024) (same); *Garcia v. City of Los Angeles*, No. CV19-6182 DSF, 2020 WL 6586303, at *2-3 (C.D. Cal. Sept. 15, 2020) (same).

On the first requirement, UFW's members have standing to sue for the same reasons the individual Plaintiffs do: they are exposed to the same officially sanctioned practices targeting Latinos, day laborers, and farmworkers, and, absent a PI, they cannot avoid Defendants while

going about their daily lives. *See, supra*, Section II.A; Suppl. Br. at 14-15. Moreover, UFW has identified specific members who were unlawfully stopped and arrested during the operation and remain at risk for recurring injuries because they must travel through the same agricultural routes Defendants previously targeted to attend work. *See* Strater Decl., ¶¶ 35, 37-41. As to the second and third requirements, protecting agricultural workers is germane to UFW's purpose, and its members need not participate in this litigation to obtain an injunction. *See* Suppl. Br. at 14-15.

Defendants contend that any risk of future harm to UFW's members is speculative. Opp. at 13. But as addressed above, Plaintiffs present substantial evidence of a likelihood that residents of the Eastern District will continue to be subject to Defendants' unlawful practices absent court intervention. *See, supra,* Section II.A. Unlike the plaintiffs in *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143-44 (9th Cir. 2024), UFW members face a concrete threat of future harm, because they cannot avoid locations frequented by Defendants. Strater Decl. ¶ 36.

In addition, Defendants argue that "pure statistical inferences and anecdotes from certain members' uncorroborated statements" do not show an "imminent threat of injury." Opp. at 13 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009)). But UFW does not rely on statistical probabilities. It does exactly what *Summers* requires: provides "specific allegations establishing that at least one identified [UFW] member . . . would suffer [future] harm." 555 U.S. at 498; *see* Strater Decl. ¶¶ 25-44. Defendants do not offer evidence to meaningfully rebut this.

Finally, Defendants contend that "claims of unlawful stops and arrests are too fact-specific and context-dependent to satisfy . . . associational standing." Opp. at 14. But Defendants' only cited authority is inapposite. *Id.* In *Black Lives Matter L.A. v. City of Los Angeles*, the Ninth Circuit addressed Rule 23 commonality and predominance factors, ***not standing***. 113 F.4th 1249, 1258 (9th Cir. 2024). Indeed, there, Defendant did not challenge associational standing on appeal, nor did the Ninth Circuit address it. *Id.* at 1265 n.3. And because Plaintiffs seek only prospective relief, members' participation is unnecessary. *Escobar Molina*, 811 F. Supp. 3d at 37.

Accordingly, UFW has associational standing to seek prospective relief.

## III. CONCLUSION

For the foregoing reasons, the Court should find that Plaintiffs have standing.

Dated: October 22, 2026

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA

By: */s/ Bree Bernwanger*
BREE BERNWANGER
MICHELLE (MINJU) Y. CHO
SHILPI AGARWAL
EMILY CHENGXI ZHU

Dated: October 22, 2026

By: AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA

*/s/ Mayra Joachin*
MAYRA JOACHIN

Dated: October 22, 2026

By: AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

*/s/ Andres Holguin-Flores*
ANDRES HOLGUIN-FLORES

*Attorneys for Plaintiffs*

Dated: October 22, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Julia L. Greenberg*
FRANCO MUZZIO
CHRISTINA LEE
CHRIS S. SUN
JASON GEORGE
JULIA L. GREENBERG
REAGHAN E. BRAUN
NATALIE R. HEIM

*Attorneys for Plaintiffs*

Dated: October 22, 2026

By: MARTINEZ AGUILASOCHO LAW, INC.

*/s/ Mario Martinez*
MARIO MARTINEZ
EDGAR IVÁN AGUILASOCHO

*Attorneys for Plaintiff United Farm Workers*