BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
EMILY CHENGXI ZHU - # 366697
ezhu@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-5000

ANDRES HOLGUIN-FLORES - # 305860
aholguinflores@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

FRANCO MUZZIO - # 310618
fmuzzio@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al.,

Defendants.

Case No. 1:25-cv-00246-JLT-CDB

**JOINT DISCOVERY LETTER RE: SEARCH TERMS, DHS CUSTODIANS, AND PLAINTIFFS' NARROWED REQUESTS FOR PRODUCTION**

Date: November 6, 2026
Time: 10:00 a.m.
Dept.: 510 19th Street, Suite 200
Judge: Hon. Christopher D. Baker

Date Filed: February 26, 2025

Trial Date: None set

November 3, 2026

**VIA ECF & EMAIL**

The Honorable Christopher D. Baker
United States District Court, Eastern District of California
United States Courthouse
510 19th Street, Suite 200
Bakersfield, California 93301
CBoren@caed.uscourts.gov

Re: *United Farm Workers, et al. v. Mullin, et al.*, Case No. 1:25-cv-00246-JLT-CDB

Dear Magistrate Judge Baker:

Plaintiffs United Farm Workers, Oscar Morales Cisneros, Wilder Munguia Esquivel, Yolanda Aguilera Martinez, Juan Vargas Mendez, and Maria Guadalupe Hernandez Espinoza ("Plaintiffs") and Defendants Markwayne Mullin, Pete R. Flores, Rosario Vasquez, and Daniel Parra, in their official capacity, ("Defendants") (collectively, the "Parties") hereby jointly submit this letter brief regarding Search Terms, DHS Custodians, and Plaintiffs' Narrowed Requests for Production.

Respectfully,

*/s/ Christopher S. Sun*
Christopher S. Sun
KEKER, VAN NEST & PETERS LLP
*Attorney for Plaintiffs*

*/s/ Bree Bernwanger*
Bree Bernwanger
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
*Attorney for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General

SAMUEL P. GO
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

OLGA Y. KUCHINS
Trial Attorney

JAIME DURR
Trial Attorney

*/s/ Asyha Iqbal*
AYSHA T. IQBAL
Trial Attorney

*/s/Tim Ramnitz*
TIM RAMNITZ
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

## I. PLAINTIFFS' OPENING STATEMENT

More than ***14 months*** after serving their RFPs, Plaintiffs seek the Court's intervention to overcome Defendants' renewed objections to the RFPs on which this Court has already compelled production, unjustified restrictions on custodial document collection and review, and refusal to search the files of the DHS Secretary—tactics that continue to delay discovery and skew the record in Defendants' favor. Thus far, Defendants have produced just 705 documents and have refused to even begin reviewing and producing custodial files on agreed search terms until these disputes are resolved. Those delays have caused real prejudice. In recent briefing before the District Court regarding Plaintiffs' standing to seek injunctive relief, Defendants relied on cherry-picked emails from Gregory Bovino's custodial files that have never been produced. *See* Dkt. 215 at 10-13 & Ex. D. Defendants should not be allowed to continue creating a skewed record through discovery delays.

There are three disputes. ***First***, Defendants have asserted new objections to the exact same six Narrowed RFPs on which this Court already granted a motion to compel in July. ***Second***, the Parties agreed to a custodial document process to lessen the burden on Defendants in which, at step one, documents were to be identified using broad "collection" search terms, and then at step two, as necessary, narrower proximity search terms would be negotiated and applied to create a proportional review set. Yet, Defendants have sought to impose unjustified limitations on the step one ***collection*** of documents, while using the Parties' disputes to excuse themselves from reviewing and producing any custodial documents in the meantime. ***Third***, Defendants refuse to designate the DHS Secretary or any formal DHS officer as a custodian and instead have agreed to search the custodial files of a ***single*** temporary DHS advisor as a custodian who was not employed by DHS throughout the entire relevant time period.

### A. Defendants' Improper Objections to Narrowed RFPs 3, 4, 11, 23, 46, and 55.

In July, the Court granted Plaintiffs' request to compel responses to their Narrowed RFP Nos. 3, 4, 11, 23, 46, and 55 (agency-level training, policies, practices, and goals concerning the challenged operations). Dkt. 198 at 3-5. Yet, weeks later, Defendants served ***new*** objections to those ***exact same RFPs***, asserting vagueness, ambiguity, burden, and proportionality objections and adding limitations to their agreement to produce documents despite this Court's order. Braun Decl., Ex. A (New R&Os); Ex. B (Pltfs. Resp.). The New R&Os are improper:

***First,*** several objections retread those this Court overruled. In its July Order, the Court held that the Narrowed RFPs seek relevant and proportional discovery. Dkt. 198 at 4-5. Yet, Defendants continue to improperly object based on relevance, burden, and proportionality. *See, e.g.*, Braun Decl., Ex. A at 3-6, 8, 10-13, 15, 24; *Port-A-Pour, Inc. v. Peak Innovations, Inc.*, 2014 WL 1515588, at *1 (D. Colo. Apr. 17, 2014) ("Continuing to assert objections previously overruled certainly is improper, and defense counsel knows it.").

***Second,*** Defendants raise ***new*** **untimely and waived** objections, including claiming ordinary words are vague and ambiguous and imposing new limits on the scope of their production. *See, e.g.*, Braun Decl., Ex. A at 8, 11, 13, 15, 18, 19, 22, 23, and 25. Defendants' failure to assert these objections in Rule 34's response period constitutes a waiver. *Smith v. Cnty. of Sacramento*, 2021 WL 826238, at *1 (E.D. Cal. Mar. 4, 2021); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). And Defendants likewise did not raise these objections during briefing and argument on the Narrowed RFPs, including when the Court expressly asked what other objections justified Defendants' position. *See* Braun Decl., Ex. C at 8:12–9:19. Defendants waived these issues by failing to raise them in response to Plaintiffs' prior motion. *See Puckett v. Cnty. of Sacramento*, 2024 WL 1332264, at *2 (E.D. Cal. Mar. 28, 2024).

***Finally,*** the objections independently fail on their merits. Defendants improperly claim common words such as "before," "standard," and "directives" are ambiguous without explaining why their ordinary meanings prevent the production of documents. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010) (requiring more than a bare assertion that ordinary terms are vague). Defendants also wrongly condition their production on "negotiated search terms and parameters." Braun Decl., Ex. A. The ESI Order requires searching "custodial and ***noncustodial*** repositories at issue[.]" Dkt. 183 at 11 (emphasis added). Defendants cannot use limited search terms and custodians to exclude categories of responsive documents in noncustodial repositories

or identified via targeted collection. *See Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 801 (W.D. Wash. 2020) (holding that "reasonably accessible electronic document[s]" must be produced regardless of search term process).

It has already been over a year since Plaintiffs served their initial requests. The Parties will never complete discovery if they must litigate the same requests multiple times. The Court should order Defendants to withdraw the New R&Os and begin producing documents responsive to the Narrowed RFPs **within no more than 60 days**.

**B. Defendants Improperly Attempt to Limit Document Collection Using Narrow Search Terms.**

Plaintiffs seek relief because Defendants have added improper limitations to their threshold collection of custodial documents from CBP and DHS custodians. Although a producing party normally ingests its custodians' files over the relevant time period into a review platform, like Relativity, where search terms can be run and hit counts generated, Palm Decl. ¶ 5, Defendants claimed they could not do so. To accommodate these claimed limitations of Defendants' document collection systems (Purview), the Parties negotiated a two-step compromise. Braun Decl., Ex. D. At step one, Defendants agreed to collect a set of custodial documents in Purview using broad collection search terms ("Collection Terms" or "Superset" terms). At step two, Defendants agreed to ingest the collected documents in their review platform (CORA, a version of Relativity), where the Parties could apply more targeted searches ("Review Set Terms") as needed, to identify documents for actual review and production with the benefit of the proximity terms and hit count reports available in Relativity (but not Purview). *See* Braun Decl. Ex. E at 1-2. Defendants expressed a preference for this approach. *See id.*, Ex. E at 10.

As a result, Plaintiffs proposed Collection Terms that would encompass relevant documents, and despite months of negotiations and narrowing of these terms, *see* **Appendix 1**, Defendants have continued to demand improper restrictions on their initial collection of custodial documents without identifying any discernable burden even though this initial broad collection was ***their preferred approach***. In the meantime, Defendants have refused to review or produce ***any*** custodial documents that hit on agreed terms while the Parties negotiate search terms. Braun Decl. Ex. E at 6. The Court should order Defendants to immediately collect custodial DHS and CBP documents using the Collection Terms set forth in **Appendix 1** and, due to Defendants' undue delay, set a schedule for the negotiation of Review Set Terms.

**1. Defendants lack any basis to argue overbreadth or undue burden.**

As a threshold matter, the Court should reject any attempt by Defendants to argue that the Collection Terms are overbroad, disproportionate, or would create an undue burden. Indeed, the Collection Terms are, by design and agreement of the Parties, ***supposed to be overbroad.*** Narrowing to a proportionate review set happens at the second step, where the Parties will have the benefit of a more sophisticated search platform with targeted proximity searches. Palm Decl. ¶¶ 6-9. Defendants' claim that the terms will impact their eventual review volume is entirely speculative. *See Garner v. Amazon.co, Inc.*, No. C21-0750RSL, 2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) (rejecting speculative burden arguments and granting motion to compel ESI search strings). Instead, they appear to be trying to double-dip on their burden objection at both step one and step two. They shouldn't be permitted to do so. *Cf. Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 198 (D.D.C. 2019) ("The Court refuses to allow Defendants to unnecessarily create their own burden and then attempt to use it as a reason to limit discovery that is relevant and appropriate").

Meanwhile, Plaintiffs will be prejudiced by limitations on the proposed Collection Terms at step one, when the lack of sophisticated search mechanisms in Purview mean that Defendants' broad (and blunt) search limitations will likely exclude relevant documents. Palm Decl. ¶¶ 10-17. As discussed below, Plaintiffs' Collection Terms target responsive and relevant documents, and absent re-collection, any documents that Defendants fail to collect from custodians now will never be reviewed or produced, even if they would hit on targeted Review Set Terms. *Id.* ¶¶ 9, 13, 18. Defendants cannot carry their "heavy burden" to avoid collection of relevant documents. *Molina v. Adams*, 2025 WL 1650270, at *2 (E.D. Cal. May 1, 2025) (Baker, J.).

**2. The Collection Terms target relevant and responsive documents.**

Plaintiffs' proposed Collection Terms seek the collection of relevant and responsive documents. Attached as **Appendix 1** is the complete list of the seven disputed Collection Terms. Those terms seek collection of documents from CBP and DHS custodians involving core issues to this case, such as documents discussing policies, trainings, and musters related to stops and arrests (Term D1); operations focused on stopping and arresting people in the country's interior (Term D2); racial profiling (Term D3); goals or quotas (Term D4); and involvement of high-level decisionmakers (Term D5). And Plaintiffs seek the use of terms with DHS custodians that Defendants agreed to use for CBP custodians regarding policies and trainings on relevant constitutional requirements (Term D6) and the names and locations of the operations at issue in this case (Term D7). As noted, these terms define the scope of ***collection*** from custodians, and the Parties' subsequent negotiation of targeted Review Set Terms will, to the extent needed to cull hit counts, define the scope of review and production.

Defendants refuse the seven disputed Collection Terms as requested, and instead demand the addition of stringent limitations to the terms for CBP and DHS. For CBP terms, for example, they add "AND" limiters that would require every document hitting on the Collection Term to ***also*** hit on the names of the operations at issue (*e.g.*, Operation Return to Sender) or their geographic locations (*e.g.*, Bakersfield). As a threshold matter, the "alternatives" Defendants offer to the disputed terms are not genuine counterproposals: because Defendants have already agreed to collect and review custodial CBP documents that independently hit on the operation and geographic terms they add, *see* Terms A1-A7, adding those same terms as limiters will not result in any new document hits for collection. Palm Decl. ¶ 11. Instead, the proposed limitations work to exclude responsive and relevant documents at the collection phase. *Id*. ¶¶ 12-17. Defendants' addition of operational and geographic specifics does not acknowledge, for example, how people communicate in real time about ongoing events (*e.g.*, not every email about an operation refers to it by its full name). *See, e.g.*, Braun Decl., Ex. C at 13:16-15:5 (Defendants conceding that policy documents need not say "Sacramento" to be relevant). That is why the proposed two-step approach contemplates an overly inclusive collection set. The Parties can then use more sophisticated terms to identify responsive documents at step two. Palm Decl. ¶ 9.

For each term, Defendants' proposed limitations would exclude relevant documents:

- **Term D1 (policies) (CBP only)**: Plaintiffs propose searching for policies, training, and guidance concerning stops, arrests, detention, and deportation, including generally applicable directives governing the challenged enforcement practices. Defendants' proposed operation and geographic limiters would arbitrarily exclude relevant documents that reference, *e.g.*, "training on warrantless arrests" or "deportation policies," that do not mention the specific operations or locations at issue here.
- **Term D2 (enforcement operations) (CBP and DHS as narrowed):** Plaintiffs propose searching for documents concerning how agents conduct immigration enforcement operations, including stops, detentions, and warrantless arrests, and DHS involvement in those practices. Defendants insist on operation-specific or geographic limitations for CBP and the words "Bovino" and "El Centro" near each other for DHS. These limiters would exclude relevant documents discussing, for example, "warrantless arrests during enforcement actions" (CBP) or "CBP detention practices during enforcement operations" (DHS).
- **Term D3 (race and occupation-based profiling) (CBP and DHS as narrowed):** Plaintiffs propose searching for documents linking race, ethnicity, or occupation to stops, arrests, and other enforcement actions, directly targeting documents related to Plaintiffs' allegations of discriminatory enforcement. For CBP, Defendants seek to impose operation-specific or geographic limitations, thus, effectively rejecting ***any*** searches for race, ethnicity, or occupation-based profiling; for DHS, they eliminate the term almost in its entirety. Defendants' alterations would improperly narrow collection of documents to those mentioning specific operations and locations and would prevent key discovery on the core issue of CBP's and DHS's policy, pattern, and practice of conducting stops and warrantless arrests based on improper profiling.
- **Term D4 (enforcement goals and quotas) (CBP and DHS):** Plaintiffs propose searching for documents connecting enforcement goals, quotas, and numerical targets to stops, arrests,

detention, and deportation—subjects the Court has already found relevant to standing. Dkt. 198 at 4 n.1. Defendants' proposed operation-specific and geographic limiters would exclude relevant documents regarding the sort of nationwide goals and quotas for arrests that have been widely publicized. Dkt. 74-2.

- **Term D5 (leadership directives) (CBP and DHS):** Plaintiffs propose searching for policies, training, guidance, and enforcement goals involving Bovino, Miller, or Noem, including directives issued by leadership and discussions concerning their implementation. Defendants oppose, insisting on, for CBP, operation-specific or geographic limitations and reference to both Bovino and Miller and, for DHS, a narrow proximity search connecting Miller to goals or quotas. These proposals would exclude relevant documents mentioning, for example, "Bovino's enforcement policy" (CBP) or "Noem's guidance on arrest procedures" (DHS).
- **Term D6 (legal terms and training) (disputed for DHS only):** Plaintiffs propose extending to DHS the searches Defendants already agreed to conduct for CBP concerning policies, training, and guidance on reasonable suspicion, warrantless arrests, voluntary departure, and related legal standards. Defendants oppose, proposing instead to search for "El Centro" within 20 words of "voluntary departure." This proposal would exclude relevant documents referencing, for example, "voluntary departure training procedures" or "reasonable suspicion guidance," without an express reference to El Centro.
- **Term D7 (E.D. Cal. operation locations) (disputed for DHS only):** Plaintiffs propose searching DHS headquarters records for references to Sacramento, Bakersfield, and other locations implicated in this litigation, consistent with geographic terms Defendants already agreed to search for CBP. Defendants oppose, arguing that Sacramento-area references must be linked to OAL and Bakersfield/Kern references to RTS. Defendants' proposal, however, arbitrarily excludes documents referencing, for example, "Sacramento enforcement plans" or "Bakersfield arrest operations," without expressly identifying the operation by name.

Defendants' proposed restrictions all share the same fundamental flaw: they would exclude potentially responsive documents at the collection stage simply because they do not mention specific operations, locations, or officials. Palm Decl. ¶¶ 11-12. The Court should require Defendants to collect the full scope of documents hitting on Plaintiffs' Collection Terms.

**3. The Court should set a schedule for finalization of Review Set Terms.**

Given the lack of progress on ESI discovery to date, the time it has taken for Defendants to respond to Plaintiffs' good-faith efforts to resolve these disputes informally, and Defendants' repeated roadblocks and delays, entry of firm deadlines is necessary. After more than a year of discovery, Defendants have produced just 705 documents and continuously obstruct Plaintiffs' attempts to move custodial discovery forward. For example, after the Court ordered Defendants to provide a search term report on certain terms in April 2026, Dkt. 178, Defendants took two months to comply. *See* Braun Decl. Ex. E at 6. And since that time, Plaintiffs have revised their search term proposals at least six times to accommodate Defendants and their purported technical burdens, only to be met each time with delays and wholesale and unsubstantiated objections. For example, after months of negotiating global search terms for all custodians, Defendants derailed that process by insisting on separate terms for DHS custodians at the end of June, and then three months later, for the first time, raised unexplained technical limitations for DHS collections. *Id.*, Ex. E at 2, Ex. G at 10. Meanwhile, Defendants have refused to even begin collecting and reviewing (let alone producing) custodial files for even the agreed Collection Terms until the full scope of search terms and custodians are settled. The Parties cannot negotiate indefinitely while Defendants continue to withhold critical discovery.

Thus, Plaintiffs request an order setting the following schedule: (1) within 21 days following the Court's order, Defendants collect documents hitting on Plaintiffs' Collection Terms and provide a search term report on those terms; (2) seven days following the service of the search term report, Plaintiffs propose Review Set Terms; (3) seven days after Plaintiffs serve the Review Set Terms, Defendants provide their position and counterproposals, and a search term report for both Parties' proposed Review Set Terms; (4) following the Parties' good faith attempts to meet and confer, the Parties submit a joint letter brief regarding search term disputes no later than 14 days following Defendants' service of objections and counterproposals; and (5)

the Court hears the Parties' Review Set Term dispute within one week of the Parties' submission of a joint letter brief, or as soon thereafter as is convenient for the Court.

**C. Defendants' Failure to Identify a Reasonable Set of DHS Custodians.**

Defendants' proposed collection of documents from DHS is also deficient because they have offered to run their deficient collection terms against just a **single** "DHS" custodian—Corey Lewandowski, a DHS "adviser" who did not even serve in that role throughout the Court-approved discovery period. Defendants, meanwhile, have refused to search the DHS Secretary's files[1] or identify any other official DHS decisionmaker, employee, or official involved in the relevant policies, practices, trainings, guidance, directives, or quotas. Braun Decl. ¶ 7 & Ex. G at 7, 10. This Court has already rejected the premise that DHS custodians are unlikely to have responsive material in April and approved Plaintiffs' narrowed DHS-specific RFPs in July. Dkts. 178 at 8; 198 at 4-5. Defendants' attempt to limit custodial discovery to a single temporary DHS adviser is an attempted end run around those rulings.

Lewandowski is a necessary but insufficient DHS custodian. He began serving at DHS in February 2025—after Operation Return to Sender—as a special government employee, a temporary role generally expected to last no more than 130 days. Braun Decl. Ex. H at 3. Reporting indicates that due to his tenuous employment status, he often passed messages through other officials rather than sending emails. *Id.*, Ex. I at 6. Defendants have refused to confirm his decision-making authority, the relevant decisions he participated in, or who handled relevant issues when he was not serving. *Id.*, Ex. F at 1-2. These gaps matter because Defendants continue to argue that Plaintiffs lack standing because "nothing demonstrates a pattern of officially sanctioned . . . behavior." Dkt. 215 at 10. DHS cannot argue that no officially sanctioned policy of constitutional violations exists while refusing discovery into officials and decisionmakers beyond a single adviser of unclear authority. Indeed, the custodial files of senior decisionmakers are regularly searched in cases addressing challenges to agency policies and practices such as this one. *See, e.g.*, *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 235, n.28 (E.D.N.Y. 2006) (granting request for emails of "senior officials ultimately responsible for the [challenged] decisions," including two FDA Commissioners).

Because Defendants have made a claimed lack of "sanctioned" conduct central to their defense, the DHS Secretary (Ms. Noem in particular) is a relevant additional custodian. This Court has already stated: "***[O]f course, the Secretary of the Department is going to need to be searched for responsive records*** because, after all, if this is a nationwide platform, as you've said, it required some approval." Braun Decl., Ex. J. Public reporting links Noem to Operation at Large and Return to Sender, both of which impacted this District. *Id.*, Ex. K at 2, 7. Reporting and Bovino's deposition testimony from a related case further confirm that he reported directly to Noem; she was also closely involved in his promotion to Commander at Large and approved of his "aggressive tactics to catch and deport as many immigrants in the country illegally as possible." *Id.* at 2; *id.*, Ex. L at 47:13–17; Ex. M at 2. The DHS Secretary's files have been collected and searched in similar cases. *See id.*, Ex. N at 2-3 (ordering Defendants to include the Office of the Secretary, Kristi Noem, Corey Lewandowski, and Kara Voorhies among their custodians in a similar case); *see id.*, Ex. O at 7 (Noem selected as a custodian in parallel Central District of California proceedings concerning Operation at Large).

Defendants' resistance to additional custodians appears to be based solely on an improperly narrow view of relevance that this Court already rejected in the context of Plaintiffs' Narrowed RFP Nos. 3, 4, 11, 23, 46, and 55. Dkt. 198 at 4-5. Defendants claim, for example, that they see "no reason to believe" Noem had "local involvement in the local USBP operations." Braun Decl. Ex. G at 10. That response misses the point: this Court has already ruled that DHS custodians may be searched for *generally applicable* DHS-level policy, training, guidance,

[1] The Court has held the relevant time period extends "throughout the period of non-expert discovery and subject to the Parties' continuing obligation to supplement their productions." Dkt. 178 at 7-8. Plaintiffs' request extends to each Secretary who served during that period.

directives, and quotas in the context of a nationwide operation. Dkt. 198 at 4-5.

Moreover, Defendants' identification of just a single custodian and refusal to include the DHS Secretary suggests a broader failure to conduct a diligent, good-faith inquiry to identify and disclose custodians likely to hold records responsive. *See* Dkt. 183 (ESI Order) § V.B; *Worley v. Avanquest N. Am. Inc.*, 2013 WL 6576732, at *2 (N.D. Cal. Dec. 13, 2013) (requiring defendant to "identify custodians likely to have relevant information" per Rule 26); *EEOC v. Exxon Mobil Corp.*, 347 F.R.D. 451, 468 (M.D. La. 2024) (requiring disclosure of custodians searched and efforts to locate responsive ESI per Rule 34). Defendants have refused to tell Plaintiffs the steps they took to identify possible custodians, but it is implausible that Lewandowski is the only DHS employee with responsive records concerning DHS-level policies and a nationwide operation.

Plaintiffs' request is also proportional. Plaintiffs request custodial searches of the officials likely to hold records responsive to the upheld Narrowed RFPs concerning agency policy, training, guidance, directives, and quotas, including the DHS Secretary (and any other involved officials). Those records bear directly on Defendants' principal claim that no agency policy allowed the challenged conduct. And DHS has failed to identify any specific cost, volume, or technical constraint preventing the identification and collection of documents from relevant custodians. *See Garcia*, 331 F.R.D. at 198–99 (rejecting unsupported assertions of burden from searching additional agency custodians). Defendants should include the DHS Secretary and any additional DHS officials likely to hold responsive documents as custodians for ESI searches.

## II. DEFENDANTS' RESPONSE IN OPPOSITION

### A. Defendants' DHS Custodian Selection Reflects a Reasonable Search Strategy

Plaintiffs have failed to demonstrate how adding former Secretary Noem as an additional DHS custodian is necessary, appropriate, or proportionate to the needs of this case. *See In re Facebook, Inc. Consumer Priv. User Profile Litig*., 2021 WL 10282213, at *14 (N.D. Cal. Nov. 14, 2021) ("It is generally the party seeking disclosure of additional ESI custodians who has the burden of showing that the current selection of custodians is deficient."). Plaintiffs seek documents from DHS regarding "policies, practices, trainings, guidance, directives, or quotas" relevant to Operation Return to Sender ("RTS") and Operation at Large ("OAL") as executed in Sacramento. Pls. Arg. at 5. This is because Plaintiffs assert officials in DHS, the parent department for U.S. Customs and Border Protection ("USBP"), may have been the "key-decision-makers" for the policies and practices implemented by U.S. Border Patrol in these Operations. *See* ECF No. 163 (Joint Discovery Letter Brief) at 5 (Plaintiffs' argument for including DHS in discovery); *see* ECF No. 193 (Joint Discovery Letter Brief) at 5 (Plaintiffs' asserting the need to search for evidence that the Operations "in this District were conducted pursuant to unlawful DHS policies.").

Producing parties need only develop a reasonable search strategy, which—for documents not located in a central repository—generally involves "identifying key employees" whose files "are likely to be relevant to the claims in the litigation." *See Lauris v. Novartis AG*, No. 1:16-cv-00393-LJO-SAB, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016). "Absent agreement among the parties, [] the responding party is entitled to select the custodians *most likely* to possess responsive information and to search the files of those individuals." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (emphasis added). This is because "'[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'" *Hastings v. Ford Motor Co.*, 2021 WL 1238870, at *3 (S.D. Cal. Apr. 2, 2021) (citation omitted). This is what Defendants have done here. Defendants have proposed Corey Lewandowski, Senior Advisor in the Office of the Secretary, as the DHS custodian most likely to possess documents regarding "policies, practices, trainings, guidance, directives, or quotas" relevant to RTS and OAL as executed in Sacramento. *See* Pls. Ex. F at 1. Plaintiffs' arguments and exhibits confirm this is a reasonable search strategy.[2]

Plaintiffs' discovery has focused on former Chief Bovino, the "leader of RTS" and "architect" for OAL. *See* ECF No. 163 (Joint Discovery Letter Brief) at 6 (Plaintiffs' argument); *see* ECF No. 194 (Joint Discovery Letter Brief) Ex. D at 4-6 (Narrowed RFPs seeking

---

[2] Plaintiffs state that, despite "live meet and confers," Defendants "declined to explain the steps they took to identify DHS custodians with potentially relevant information." Pls. Decl. at 2; Pls. Arg. at 6 ("Defendants have refused to tell Plaintiffs the steps they took to identify possible custodians"). This is not Defendants' recollection of events, and Plaintiffs' support here, Pls. Decl. at 2, is noticeably vague as to detail. Defendants explained, at a meet and confer on May 21, 2026, that Mr. Lewandowski's role as senior advisor to the Secretary made him an appropriate custodian and why, on the other hand, former Secretary Noem was not an appropriate custodian. *See* Pls. Ex. D (Pls. May 22, 2026 email confirming Defendants' proposed Mr. Lewandowski as DHS custodian). Defendants were given the impression their explanations were satisfactory because thereafter, in June 2026, Plaintiffs sought confirmation that Mr. Lewandowski would be the DHS custodian for both RFP sets. *See* Pls. Ex. E at 12. Plaintiffs did not express any further interest in former Secretary Noem as an additional custodian, or express any indication that Mr. Lewandowski alone was insufficient, until September 11, 2026, simultaneously stating that if the parties could not agree on DHS terms, Plaintiffs would include this issue in the already scheduled discovery briefing. *See* Pls. Ex. G at 11. And even then, Plaintiffs did not assert Defendants failed to explain or identify why Mr. Lewandowski was an appropriate custodian, and rather "agree[d] he should be included." *See* Pls. Ex. G at 11.

documents or communications about operations "Bovino planned or participated in") (RFPs Nos. 3, 4, 11, 12, 27, 53); Ex. F at 25 (March 25, 2026 Transcript of Hearing) ("We are looking for discovery about operations led by Defendant Bovino . . . . He was the architect of Return to Sender"). According to an article submitted by Plaintiffs, Mr. Lewandowski put former Chief Bovino in charge of the interior operations conducted by Border Patrol across the country. *See* Pls. Ex. I at 9. Mr. Lewandowski assisted former Chief Bovino in these "big operations," even "chewed [Bovino] out a few times," and the two had a "close working relationship." *Id.* at 9-10. Mr. Lewandowski "quizzed [Bovino] about his method of 'consensual encounters,' in which Mr. Bovino's agents would walk into parking lots, begin conversations with people, then ask about their nationality and immigration status." *Id.* at 10; ECF No. 38 at 3 (Plaintiffs' Reply to Defendants' Opposition to PI) ("most of the unlawful conduct upon which Plaintiffs seek relief" in their motion for preliminary injunction pertains to "detentive stops of pedestrians"). When former Chief Bovino first "outlin[ed] a plan" for a "nationwide . . . city-hopping campaign, an interior-operations campaign," it was to Mr. Lewandowski and former Secretary Noem. Pls. Ex. K at 7. And despite what was "supposed to be a limited, part-time role," Mr. Lewandowski "exerted power far beyond the scope of his role" and had "wide influence over . . . the department's operations on the ground . . ." Pls. Ex. I at 1. Indeed, he played an "outsize role" in DHS and had the "ability to veto . . . high-level decisions." *See* Pls. Ex. H at 2-3. Thus, where Plaintiffs assert that Mr. Lewandowski is insufficient because of his temporary role, or undefined decision-making authority, or because it is unknown whether he participated in the immigration operations, their own exhibits belie their claim, Pls. Arg. at 5, and instead confirm that Mr. Lewandowski is the custodian most likely to have documents responsive to Plaintiffs' document requests.[3]

Secretary Noem, on the other hand, as Cabinet head indisputably receives a significant number of incoming emails concerning the operations of the many different law enforcement components under the DHS umbrella. *See* https://www.dhs.gov/sites/default/files/2026-05/26_0519_mgmt_dhs-public-org-chart-508.pdf (last visited October 23, 2026). And Plaintiffs propose search terms for DHS that broadly seek any "encounter" by "Border Patrol," *see* Dfs. Ex. C, D1, any "immigrant" "encountered" by "Border Patrol," *id.*, D2, "goals" or "quotas" for all "arrests" by any law enforcement component, *see* id., D3, any "memo" with Secretary "Noem," *id.*, D4, any "Fourth Amendment" "policy or "guidance," in any law enforcement component, *id.* at D5, or any DHS activity in "Sacramento," *id.* at D7. This would necessarily yield a significant number of documents from the wide-ranging law enforcement operations overseen by the Secretary. Even when Plaintiffs purport to account for what they acknowledge are proportionality concerns with searching a DHS-HQ custodian, *see* Pls. Ex. G at 11, their proposed DHS terms still include general law enforcement terms "AND . . . Border Patrol OR CBP," *see* Dfs. Ex. C, D1-D2, retrieving every "encounter" by Border Patrol.[4] Meanwhile,

---

[3] Plaintiffs claim, based on their Exhibit I, that "due to his tenuous employment status, [Mr. Lewandowski] often passed messages through other officials rather than sending emails." Pls. Arg. at 5 (citing Ex. I at 6). This is a mischaracterization. The article cited does not link Mr. Lewandowksi's practice of "passing messages through other officials instead of sending emails" to a function of his temporary employment, much less proffer this as a constraint on his employment, as Plaintiffs appear to suggest. *See* Ex. I at 6. Rather, if the article links this practice to anything, it is to Mr. Lewandowski generally having power in DHS far beyond the scope of his role as a limited advisor. *See id.* at 6, 1.

[4] Plaintiffs argue, in a declaration, that DHS could use "proximity restrictions" to remove what they admit would otherwise be "likely irrelevant results" retrieved by their proposed DHS search terms. Pls. Palm Decl. at 6. First, the Court should strike this declaration. The declarant does not hold himself out as an expert on ESI technology and, on the contrary, is plainly and simply an additional lawyer for Plaintiffs offering additional legal arguments and briefing disguised as technical expertise, *see generally* Pls. Palm Decl., but outside the confines of Plaintiffs' briefing page limits. *See* Local Rule 251(c)(3). Second, Plaintiffs proposal is, in any event, unworkable.

Defendants have agreed to run former Secretary Noem's (and Stephen Miller's) work email addresses within former Chief Bovino's ESI. *See* Dfs. Ex. B, D5; *see also* Pls. Ex. G at 10. Defendants have also agreed to run former Chief Bovino's work email address within Corey Lewandowski's ESI. *See* Dfs. Ex. C. Between Mr. Lewandowski as custodian, running former Chief Bovino's work email address within Mr. Lewandowski's ESI, and running former Secretary Noem's work email address within former Chief Bovino's ESI, Plaintiffs cannot explain how Defendants have not offered a reasonable search strategy. *See Lauris*, 2016 WL 7178602, at *5 (requiring "more than mere speculation to order Defendants to include [] apex custodians in the search protocol").

Moreover, Plaintiffs' justification for former Secretary Noem as a custodian makes little sense. Plaintiffs state that "because Defendants have made a claimed lack of 'sanctioned' conduct central to their defense, the DHS Secretary (Ms. Noem, in particular) is a relevant additional custodian." Pls. Arg. at 5. But the claim to which Plaintiffs refer is Defendants' recent standing briefing. Pls. Arg. at 1 (citing ECF No. 215 at 10-13 & Ex. D), citing evidence showing USBP-headquarters in large part halted RTS after the first day. Based on Plaintiffs' theory, Alejandro Majorkas, who was the DHS Secretary during RTS would have evidence "relevant" to "sanctioning" RTS, though the evidence at issue in the standing briefing refers only to USBP-HQ authorities. Plaintiffs do not explain how Secretary Noem's ESI could be "relevant" to RTS, the operation challenged in Plaintiffs' complaint and PI motion, when RTS occurred *prior* to her joining the federal government. Indeed, Plaintiffs assert that Mr. Lewandowski is an insufficient DHS custodian *because* he was not part of the federal government at the time of RTS. Pls. Arg. at 5 (asserting Mr. Lewandowski is an insufficient custodian, in part, because "[h]e began serving at DHS in February 2025 – after Operation Return to Sender…"). Meanwhile, although Plaintiffs now, in the first instance, state their custodian request "extends to each Secretary who served during [the relevant discovery time period]," Pls. Arg. at 5 n.1, Plaintiffs have not previously raised this claim to Defendants in either live or written conferrals. Rather, Plaintiffs have requested only former Secretary Noem, *see* Pls. Ex. G at 11; *infra* n.1, and their arguments and exhibits are fact-specific to Noem, *see* Pls. Arg. at 5.

Plaintiffs lastly state that Defendants' custodian selection is based on Defendants' failing to recognize that Plaintiffs seek generally-applicable DHS-level policy, training, guidance, directives, and quotas applicable to the operations in this District. Pls. Arg. at 5-6. There is no misapprehension as Defendants have proposed a DHS-HQ custodian and, as explained, the DHS HQ custodian most likely to have documents with DHS-level policy regarding Chief Bovino's operations in this District. Defendants' reference, in an email, opposing former Secretary Noem, in part, because Defendants have no reason to believe DHS was involved in planning the operations in this District was meant to underscore there is otherwise no additional reason to add former Secretary Noem as a custodian. Pls. Arg. at 5-6 (citing Ex. G at 10); *Wadeea v. Mercedes-Benz USA, LLC*, 2025 WL 2309025, at *2 (S.D. Cal., 2025) (denying a motion to compel additional custodians where "[t]he record indicates that Defendant considered the additional custodians proposed by Plaintiff and ultimately elected to utilize the custodians Defendant deemed most likely to possess information responsive to Plaintiff's requests for production.").

## B. Defendants' Selection of Search Terms Represents a Reasonable Search Strategy

### 1. Search Terms for U.S. Border Patrol

Plaintiffs' complaint challenges RTS and alleges it involved U.S. Border Patrol engaging in a pattern of (1) vehicle stops without reasonable suspicion and consensual encounters at

---

Plaintiffs tellingly do not describe how such a proximity limitation would be accomplished; how Defendants could anticipate and list (after the "AND NOT") every other DHS law enforcement component that use these terms, not to mention the various different ways individuals refer or abbreviate these other law enforcement components, in order to exclude ESI from these other components.

certain types of businesses that escalated into stops without reasonable suspicion, and (2) warrantless arrests without consideration of likelihood of escape and (3) coerced voluntary return. ECF No. 1 at 1-3. Plaintiffs filed a motion to enforce the PI, alleging USBP engaged in additional suspicionless stops and improper warrantless arrests during OAL as executed in Sacramento. ECF No. 81-1. Accordingly, the USBP terms to which Defendants have agreed:

- Target the specific operations and locations (RTS; OAL);
- Capture policies, practices, guidance, musters, and memorandums related to Fourth Amendment stops, warrantless arrests, likelihood of escape, consensual encounters, voluntary returns, and quotas;
- Incorporate all common aliases and abbreviations of the operations;
- Already include terms Plaintiffs claim are missing (e.g., race/ethnicity), *infra*;
- Search former Chief Bovino's ESI for former Secretary Noem's and Stephen Miller's work email addresses, and Bovino as a custodian for both RFP Sets One and Two (along with 25 other custodians for RFP Set One and 22 other custodians for RFP Set Two); and
- Avoid sweeping "all law enforcement activity" searches.

Dfs. Ex. B at 1, 4. These terms are the result of Defendants diligently negotiating and responding to Plaintiffs' proposals on June 24, 2026, July 13, 2026, August 24, 2026, and October 7, 2026, with counter proposals and concessions. And these terms target and fully address all the core issues identified in Plaintiffs' RFPs. The terms that remain disputed are overbroad, general law enforcement and demographic terms that will return an extraordinarily large amount of non-responsive information. *See* Dfs. Ex. B at D1-D5.

Preliminarily, Plaintiffs assert that superset terms are "supposed to be overbroad." Pls. Arg. at 2. This is incorrect. The terms are supposed to be broad, but not overbroad. The initial step involving data collection must have *some* reasonable measures to limit the amount of data that needs to be collected. This is because CBP searches involving significant data preclude using the system for the many other open matters concerning "civil litigation requests, trade issues, congressional fact finding, criminal matters, and FOIA requests and internal investigations by the Cyber Forensics Team." *See* ECF No. 163, Ex. H at 4, 12-13. Indeed, Plaintiffs acknowledge that this was why Defendants proposed a CBP superset search data collection, followed by transfer of that data to DOJ for a more narrowly tailored search in DOJ's Relativity—because of the "limitations of Defendants' document collection systems (Purview)." Pls. Arg. at 2. As the Court observed at the March 25, 2026, hearing when discussing search terms, it is reasonable to impose some limitations "at the outset" to bring the data "into a more manageable or reasonable level." ECF No. 194, Ex. F (Transcript of March 25, 2026 hearing) at 39, lines 15-10; *see Thompson v. Swift Transp. Co. of Ariz., LLC*, No. 5:25-cv-00503-JLS-SPx, 2025 WL 4058303, at *8 (C.D. Cal. Nov. 25, 2025) ("The court agrees that the search terms and date range are overbroad and will result in an unduly burdensome number of irrelevant hits.").

As the Court also observed at the March 25, 2026 hearing, "it's safe to say that [search terms like] operation or raid coupled with immigration, **deportation**, **removal**, illegal **alien**, criminal smuggling, border **arrest**, detained, **detent**, **stop**, catch, **warrant**, there can't be any dispute that that's going to return an extraordinarily large number of hits." ECF No. 194, Ex. F (Transcript of March 25, 2026 hearing) at 38, lines 9-14 (emphasis added). The hit report the Court subsequently ordered Defendants to produce confirmed this, showing these terms drove higher and higher hit counts. *See* Dfs. Ex. A. Plaintiffs' disputed superset terms are these same overbroad, general law enforcement and demographic terms:

- D1 searches for any and all "deportation" or "detention" "guidance." *See* Dfs. Ex. B at 2;
- D2 searches for any "stop" or "arrest" or "warrant" that occurred during any law "enforcement." *Id.* at 3;
- D3 searches for any "alien" who was ordered "deported" or "removed." *Id.* at 4;
- D4 searches for any "goal" in the same document as "deportations." *Id.* at 5; and
- D5 searches for any "memo" and the former Secretary of Homeland Security. *Id.*

These terms are sure to return an "extraordinarily large" amount of data. Consequently, Defendants proposed that, if Plaintiffs continued to want these search terms, the most reasonable course of action is to add a connector to relevant operational and geographic terms. *See* Dfs. Ex. C, D1-D5, Column 4 (highlighted terms).

Plaintiffs claim that this is not a "genuine counterproposal" because Defendants have already agreed to operational and geographic terms. Pls. Arg. at 3. But it is a reasonable proposal: it accommodates Plaintiffs' want to search with overbroad, general law enforcement and demographic terms, but reasonably connects those searches to the operations and locations relevant to this case and Plaintiffs' RFPs, otherwise it is an unreasonable amount of data.

Plaintiffs assert that including the operational and geographic terms "risks arbitrarily excluding otherwise responsive documents" which "may not explicitly" reference RTS or OAL as executed in Sacramento. Pls. Arg. at 3 (citing the Palm Decl. ¶¶12-17). First, as Defendants have explained, Plaintiffs should not be permitted to rely on arguments in the Palm declaration, and it should be struck. *Supra* n.3. Second, and in any event, it is highly speculative and unlikely that custodians discussing RTS or OAL would not anywhere mention the name of the operation. Perhaps this is true for casual conservation (but even there unlikely), but in ESI, which includes email threads and document families, it is highly unlikely that correspondence about a particular operation would not include the name of the operation or location anywhere in the thread or document families. And where Plaintiffs suggest that perhaps correspondence about the operations will not refer to the operation "by its full name," Pls. Arg. at 3, Defendants have accounted for this by including all known common permutations of these operations' names—"RtS," "OAL," or "OpAtLarge." *See* Dfs. Ex. B, A1, A7, A12. Moreover, Plaintiffs' RFPs request documents "sufficient to show," rather than "all" documents, which does not require eliminating all "risk" of excluding responsive documents. *See* Pls. Ex. A.

Plaintiffs' examples do not refute any of this. Pls. Arg. at 3-4. For D1, Plaintiffs object to including the operational and geographic terms because documents might "not mention the specific operations or locations at issue here" and, therefore, exclude "training on warrantless arrests" or "deportation policies." Pls. Arg. at 3. As explained, relevant ESI not mentioning the operation is highly unlikely. But D1 *would* include any and all "deportation" ("deport* . . .AND") "guidance" or "procedure," *see* Dfs. Ex. B, D1, and other broad terms that drive hits, *see* Dfs. Ex. A. Meanwhile, the parties have search terms targeting policy, practice, training, guidance, musters, and memorandums pertaining to warrantless arrests and likelihood of escape *without connection to operation or location*. *See* Dfs. Ex. B, A9 (RFP Set Two), A11 (RFP Set One).

For D2, Plaintiffs object to including the operational and geographic terms because it might exclude "warrantless arrests during enforcement actions" or "CBP detention practices during enforcement operations" (i.e., voluntary return practices). Pls. Arg. at 3. But Plaintiffs do not explain why they need every "detention" or "warrantless arrest" by Border Patrol during any and every "enforcement" action." And "it's safe to say that [enforcement] coupled with . . . detained, detent . . . warrant . . .that's going to return an extraordinarily large number of hits." ECF No. 198, Ex. F at 38, lines 9-14, confirmed by the cross-tab, *see* Dfs. Ex. A. The parties have search terms targeting policy, practice, training, guidance, musters, and memorandums pertaining to warrantless arrests and likelihood of escape, and terms for voluntary return or voluntary departure, *without connection to operation or location. See* Dfs. Ex. B, A9-A11 (RFP Set One), A8-A9 (RFP Set Two).

For Term D3, Plaintiffs object to Defendants' proposal because it "reject[s] any searches for race, ethnicity, or occupation-based profiling." Pls. Arg. at 3. But Plaintiffs' chart for Defendants' proposal here (their chart as presented to Defendants with their opening brief) is not accurate, omits the race and ethnicity terms, and Plaintiffs appear to have overlooked that on August 24, 2026, Defendants sent Plaintiffs a counter proposal for this term that includes race and ethnicity terms. *Compare* Pls. Appendix 1, D3 *with* Dfs. Ex. B, D3. It is unclear whether Plaintiffs would still object to this term had they correctly recounted the course of negotiations. Meanwhile, Plaintiffs do not have RFPs seeking occupation for RtS (RFP Set One), *see* ECF No. 163, Ex. A (RFP Set One) (RFPs 16, 31), and only seek this information for Sacramento, *see* Ex.

C (RFP Set Two (RFP 41). In any event, it is safe to say that searching for any "alien" ("alien*") who was ordered "deported," ("AND . . . deport*), *see* Dfs. Ex. B, D3, is going return an extraordinarily large number of hits, as confirmed by the cross-tab. *See* Dfs. Ex. A. The parties have search terms targeting policy, practice, training, guidance, musters, and memorandums pertaining to Fourth Amendment stops and roving patrols, and terms for consent and consensual encounter, *without connection to operation or location*. *See* Dfs. Ex. B, A6-7, A11 (RFP Set One), A9 (RFP Set Two).

For D4, Plaintiffs object to geographic and operational terms because they would "exclude . . . nationwide goals and quotas that have been widely publicized." Pls. Arg. at 4. First, the publicized quotas Plaintiffs cite pertain to ICE, a non-defendant in this case, not Border Patrol. Pls. Arg. at 4 (citing ECF 74-2). Second, Plaintiffs do not explain how quotas for every other place Border Patrol operates, and for any other type of enforcement action involving an "arrest," are relevant to the two operations in this District. The parties have search terms targeting quotas for Operation at Large, *see* Dfs. Ex. B, A12 (RFP Set One), A7 (RFP Set Two), and have agreed to search former Chief Bovino's ESI for former Secretary Noem's and Stephen Miller's work email addresses, *id.* at 4.

For D5, Plaintiffs object to geographic and operational terms because it would exclude "Bovino's enforcement policy" and "Noem's guidance on arrest procedures." Pls. Arg. at 4. But it is implausible that Defendants' search strategy would exclude any Bovino enforcement policy, or any guidance from former Secretary Noem on interior immigration operations, considering former Chief Bovino is a custodian for both RFP sets, Defendants are searching former Secretary Noem's and Stephen Miller's email addresses within Bovino's ESI, and searching Mr. Lewandowski's ESI for Bovino's work email address. Not to mention that former Secretary Noem oversaw multiple law enforcement agencies, *see* Part A, such that searching so broadly for "Noem's guidance on arrest procedures" simply does not make sense and would be unduly burdensome.

Plaintiffs in reply are likely to hypothesize new and different information that Defendants' proposed CBP terms will purportedly miss. But there are no gaps in Defendants' reasonable search strategy. And to the extent there are any gaps, they will not preclude producing documents "sufficient to show" the information requested.

Lastly, because Defendants are allegedly "obstructionists" and put up "repeated roadblocks and delays," *see* Pls. Arg. at 4, Plaintiffs ask the Court to issue an order setting an expedited schedule for completion of search term finalization. *See also* Pls. Arg. at 1 (asserting Defendants employ "tactics that continue to delay discovery"). But a brief examination of their supporting examples for these allegations reveal this is a manufactured narrative dependent on lack of scrutinizing their claims. First, Plaintiffs point to the fact that it took Defendants two months to provide Plaintiffs with the Court-ordered hit report. Pls. Arg. at 4. But Plaintiffs' exhibits well document Defendants diligent pursuit of preparing this hit report, which was unexpectedly hindered by technological challenges:

> As Defendants' emails on May 22, June 3, June 5, and June 11 explained, the STR produced on May 15 to comply with the Court's April 17, 2026 order was inadvertently inaccurate due to the vast size of the dataset and, since then, Defendants have been diligently working through technical hurdles in order to produce an accurate STR. The accurate STR was provided to both Defendants and Plaintiffs (via Defendants) Monday, June 15. As Defendants have also noted, Defendants reached out to Plaintiffs in the first instance, on April 23, 2026, to address the Court's April 17, 2026 order and stated that Defendants were working on producing the ordered hit report. Meanwhile, the parties have had one meet and confer, on May 21, 2026, since the Court's April 17, 2026 order, that appeared to have been productive and to have moved the parties forward on negotiations, but which have, since May 22, been pending correction of the ordered STR. Defendants understand Plaintiffs believe this process has not been sufficiently expedient. But the process has nonetheless been diligent, without undue delay, and in keeping with Judge Baker's order.

Pls. Ex. E at 5. Second, Plaintiffs claim that "Defendants have refused to review or produce any custodial documents that hit on agreed terms." *See* Pls. Arg. at 1, 2. But this is contradicted by their opening statement and admission in other filings that they have, in fact, received multiple productions of custodial ESI, *compare* Pls. Arg. at 2 *with* ECF No. 207 at 2-5 (Joint Status Report), and their exhibits showing these productions were the result of searches of CBP custodians using the "Parties' Agreed Search Terms" for RFP Set One, *see* Pls. Appendix 1 at 1; Pls. Ex. E at 7-8 (Defendants explaining they are producing "documents responsive to RFP Set 1 based on the agreed-upon search terms at the time").[5] Third, Plaintiffs state that Defendants' "continuous obstruction of Plaintiffs' attempts to move discovery forward" has caused these discovery issues to remain after "more than a year." Pls. Arg. at 4. But Plaintiffs omit that, approximately a year after they filed their complaint, the Court sustained Defendants' threshold objections to their initially served RFPs. ECF No. 178 at 11; *see* Pls. Arg. at 2 (requesting the Court order responsive documents produced within 60 days because "it has already been over a year since Plaintiffs served their initial requests"). That discovery has taken this long then is in large part, or least in part, because Plaintiffs initially propounded improper RFPs. Finally, Defendants have refuted any claims of prejudice to Plaintiffs' standing arguments in briefing at ECF No. 215 and ECF No. 232. *See* Pls. Arg. at 1. Though it is unclear, as explained in Part A, how Plaintiffs' proposals in any event pertain to assisting their standing argument.

Defendants equally desire to finalize the search terms to continue document production. But since the Court first observed Plaintiffs proffered overbroad, general terms, Plaintiffs have subsequently repeatedly— six times, Pls. Arg. at 4, Braun Declaration ¶ 4—proffered overbroad, general law enforcement and demographic search terms, which drive hits and are unnecessary given the terms to which the parties have already agreed and Defendants' search strategy.

**2. Search Terms for the Department of Homeland Security**

Search terms' "proportionality must be assessed by considering the specific context of the custodian and/or repository against which the search terms will be applied." *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSx), 2019 WL 4544425, at *7 (C.D. Cal. Aug. 19, 2019) ("[S]imply because the same search terms were run against the emails of Facebook's engineers [does not] necessarily mean[] that discovery sought by running ESI Search Terms 8-11 and 13 against Zuckerberg's emails is de facto relevant and proportionate"). Defendants have proposed separate search terms for DHS. *See* Dfs. Ex. C. This is because Plaintiffs seek a DHS HQ custodian and, as explained in Part A, a DHS-HQ custodian indisputably receives a large number of incoming emails concerning the operations of the many different law enforcement components under the DHS umbrella. Plaintiffs' proposed search terms for DHS have limitless reach to all the different DHS law enforcement components, all encounters by Border Patrol, any memo "AND" Secretary Noem, and any DHS activity in Sacramento. *Supra* Part A. Defendants explained this to Plaintiffs in their DHS counter proposal sent to Plaintiffs on October 7, 2026. Plaintiffs object to separate DHS search terms, Pls. Arg. Decl. Braun ¶6, but their only substantive response appears to be that which appears in their Palm Decl. at ¶17, asserting DHS could use "proximity restrictions" to remove what they admit would otherwise be "likely irrelevant results" retrieved by their proposed DHS search terms. As explained *supra* n.5, the Court should strike this declaration. Plaintiffs' argument is, in any event, unworkable, and any argument challenging separate DHS search terms for the first time in reply has been waived. *See*

---

[5] To the extent Plaintiffs mean to assert that Defendants have declined to search and produce based on the disputed terms, this is accurate. Pls. Arg. at 1. Defendants have reasonably explained to Plaintiffs, however, that it does not make sense to "pursue duplicative efforts, *i.e*, multiple rounds of searches. For there could be three potential rounds of searches: one conducted now for Defendants' proposed search terms, a second round for any additional terms the that the parties agreed upon after evaluation of the [Court-ordered hit report], and a third round should the parties submit any additional disputes [to] the court and the court orders additional search terms." Pls. Ex. E at 7. Defendants' approach is efficient case management.

*Roflow v. Commissioner of Social Security*, No. 2:25-CV-2838-ICD, 2026 WL 3082898, at *9 (E.D. Cal. Oct. 15, 2026) ("The Court need not consider arguments raised for the first time in a reply brief"). Further, DHS's search capabilities are more limited than CBP's. *See* Pls. Ex. G at 2-3. Thus, when Plaintiffs state Defendants' DHS's search term will exclude "CBP detention practices during enforcement operations," documents pertaining to "discriminatory enforcement," "reasonable suspicion guidance," and "Sacramento enforcement plans," Pls. Arg. at 3-4, searching DHS-HQ necessarily requires more targeted terms because of its large umbrella. *See also* Dfs. Ex. C, D3 and D4 (Plaintiffs' proposals to search for goals or quotas for any law enforcement agency and any "memo" and "Noem"). Meanwhile, Defendants have proposed a reasonable search strategy capturing policy and practice documents at the DHS-HQ level for the two Border Patrol interior operations in this District. *See* Dfs. Ex. C, Column 4.

**C. Defendants' August 17, 2026, RFP Objections**

Plaintiffs reiterate the arguments in their August 31, 2026 letter, Pls. Ex. B, responding to Defendants' August 17, 2026, RFP objections, Pls. Ex. A. In a letter sent to Plaintiffs on September 16, 2026, Defendants responded to these arguments. Dfs. Ex. D. Defendants stand by these responses.

First, Defendants have acknowledged the Court's July 2025 order overruled Defendants' relevancy objection and Defendants did not reassert this objection in their August 17, 2026 Objections and Responses. *See* Dfs. Ex. D at 4; Pls. Arg. at 1.

Second, Defendants acknowledged their vagueness objections were not proffered within 30 days of service of Plaintiffs' June 4, 2026, Further Narrowed RFPs, but explained courts can find "good cause" for delay in responding. Dfs. Ex. D at 2 (citing *Smith*, 2021 WL 826238, at *1); Pls.' Arg. at 1 (citing *Smith*). And there is good cause for Defendants responding on August 17, 2026, with vagueness objections rather than by July 6, 2026 (30 days from June 4, 2026). When Plaintiffs propounded their revised RFPs on June 4, 2026, it was the near-end of negotiations that began on May 11, 2026, concerning the permissible scope of these particular RFPs. *See* ECF No. 194, Exhibits A-E. The fruit of the negotiations was that, by June 4, 2026, Plaintiffs had narrowed the scope of the RFPs at issue to request OAL documents relevant to operations in this District, rather than request documents into out-of-district operations. *See* generally ECF No. 194. But the parties next disputed what constitutes a relevant document for purposes of these particular RFPs and, on June 22, 2026, ultimately requested the Court to resolve this remaining issue, which the Court did on July 23, 2026. *See* ECF No. 198. The RFPs served on June 4, 2026, meanwhile, remained in flux, still being shaped by resolution of these negotiations either by the parties or (as here) the Court.

There is meanwhile no bad faith and no prejudice to Plaintiffs—Defendants have, to date, not withheld any documents based on the vagueness objections. *Miller v. Econ. Preferred Ins. Co.*, No. 3:25-CV-05518-GJL, 2026 WL 1846672, at *3 (W.D. Wash. June 26, 2026) ("the Court finds good cause to excuse Plaintiff's late response [to Defendants' document requests]" because "there is no evidence Plaintiff acted in bad faith or that Defendants have been prejudiced"). Moreover, this is not a case where a party has not responded despite court intervention or failed entirely to respond." *Id.* Indeed, "[w]here a waiver of objections by failure to serve a timely response has been found, it usually has been because the party required to serve a response failed to make any response whatsoever within the time allowed." *Mike's Novelties, Inc. v. PIV Enterprises, Inc.*, (E.D. Cal. May 12, 2025), No. 1:23-CV-01309-JLT-SAB, 2025 WL 1368904, at *2 (quoting *Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 670 (C.D. Cal. 1998).

On the merits, Defendants made these objections because there could be disagreement at a deposition, for example, about whether a lower-level supervisor's guidance to an agent constitutes "endorsed or approved by "USBP, CBP or the El Centro Border Patrol." *See* Pls. Ex. A at 10-11 (RFP 4). "Conduct" training materials could include various non-operational conduct standards that are always in place such as trainings prohibiting drug use. *Id.* at 8-9 (RFP 3). "Relied upon" could include training an agent from El Paso Sector recalled during deposition, but which search terms reasonably excluded, but not intentionally withheld. *Id.* A "leader" of CBP could include any position that reports to headquarters and what constitutes a "directive" about a "directive" is difficult to gauge. *Id.* at 23-24 (RFP 55).

## III. PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION

This dispute reflects a recurring pattern: Plaintiffs repeatedly narrow their requests to address the Court's concerns, while Defendants recycle the same unsubstantiated objections, preventing meaningful progress in discovery. This is evident across all three disputes. ***First,*** Defendants are relitigating the same six Narrowed RFPs the Court upheld in July. Dkt. 198 at 4-5. ***Second***, Defendants invoke outdated search term reports to challenge narrower proposals without substantiating any actual burden. ***Third***, Defendants' proposal to search only a single DHS adviser effectively circumvents the Court's rulings permitting DHS discovery throughout the relevant period and excludes senior decisionmakers likely to possess responsive information. Dkt. 178 at 7-8. The Court should order the relief set forth in Plaintiffs' Proposed Order.

### A. Defendants' objections to the RFPs the Court upheld in July are improper.

Defendants' position on the Narrowed RFPs is emblematic of a broader troubling pattern of obstruction. Defendants concede that the RFPs at issue are ***identical*** to those litigated in July but insist their objections are justified. They are not.

Defendants claim they are not reasserting overruled objections because the Court's prior ruling addressed only "relevancy" and they claim that they do not reassert relevance objections in their New R&Os. Def. Opp. at 14. Neither premise is true. In July, this Court expressly addressed relevance ***and proportionality***. Dkt. 198 at 5 (overruling objections); Dkt. 194 at 6, 9 (parties' arguments). Yet, Defendants' New R&Os continue to assert relevance, proportionality, and burden objections. *See, e.g*., Braun Decl., Ex. A at 23 ("Defendants ... object to this RFP [55] as ... ***irrelevant, overly broad, unduly burdensome, and disproportionate***[.]").

On the other hand, Defendants concede that their New R&Os also assert ***new*** untimely objections that were not (but could have been) raised earlier. Indeed, Defendants concede that they neither raised these new objections within 30 days of service nor in response to Plaintiffs' prior motion, even though the Court expressly asked what other objections justified withholding production. Braun Decl., Ex. C at 8:12-9:19. Defendants cannot litigate these exact requests, lose, and then assert new grounds for withholding the discovery the Court ordered. *See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 661 (D. Kan. 1999) ("If defendants intended to rely upon objections … they had the burden to assert them in opposing the motion to compel. Their failure precludes them from now relying upon the objections. They abandoned them."). Defendants' suggestion that the prior litigation of these RFPs supplies "good cause" for their delay is untenable. If true, it would permit parties to indefinitely resist discovery through successive objections after each adverse ruling. None of Defendants' cases support that outcome. Rather, the cases say the opposite. *See Puckett,* 2024 WL 1332264, at *2 (objections not raised in opposing a MTC are waived). There is also clear prejudice: Plaintiffs and the Court must expend time and resources relitigating the same exact requests. And Defendants' claim that they have not withheld documents under their new objections rings hollow as they have not yet produced ***any*** documents responsive to the Narrowed RFPs. The Court should overrule the objections, order production, and admonish counsel for wasting judicial resources.

### B. Defendants have no legitimate basis to oppose Plaintiffs' Collection Terms.

Defendants' search term response confuses the issues and fails to substantiate any burden from using the Collection Terms at step one of the agreed two-step ESI process. In March, the parties disagreed on how best to collect ESI. Plaintiffs proposed collecting the complete ESI files of custodians for the relevant period, and then conducting targeted searches in Relativity, consistent with ordinary ESI practice. Palm Decl. ¶¶ 5, 8. Defendants instead insisted on restricting their ***initial collection*** through search terms based on purported technical limitations. In April, the Court did not resolve this disagreement but ordered search term reports ("STRs") on three terms to facilitate further negotiations. Dkt. 178 at 9-11. Defendants now rely on those outdated STRs as Defendants' Exhibit A, without acknowledging that Plaintiffs used them to ***eliminate*** high-volume terms and reach agreement on narrower searches. For example, Defendants' Exhibit A identifies 65,192 hits for "border*" and "train*," 37,193 hits for "immigr*" and "train*," and 36,423 for "arrest*" and "train*." Defs. Ex. A. Based on those results, Plaintiffs eliminated the terms driving excessive hits, enabling the parties' ultimate agreement on narrower Term A11 as reflected in Plaintiffs' Appendix 1. Braun Decl., Appx. 1,

A11. This demonstrates precisely why STRs are essential to informed negotiations.

The ***current dispute***, however, does ***not*** involve the terms in Defendants' outdated STRs. Instead, it concerns Disputed Terms D1–D7 in Plaintiffs' Appendix 1, which reflect months of unsuccessful compromise efforts. At the onset, to accommodate Defendants' technical limitations, the parties agreed in May to a two-step process: (1) use broad search terms in Purview to limit the documents initially collected; (2) use STRs, targeted searches, and technology-assisted review in Relativity to reduce the documents Defendants will actually review and produce. Defendants now conflate these steps even though **the only dispute before the Court is the initial Collection Terms**. They also fail entirely to acknowledge the ways Plaintiffs have substantially narrowed even those initial Collection Terms. For example:

- **CBP:** Plaintiffs narrowed terms with AND limitations, including D1 (enforcement actions AND policies or training), D2 (enforcement actions AND operations), D3 (demographic characteristics AND enforcement actions), and D4 (quotas AND enforcement actions); eliminated terms (*e.g.*, executive order, voluntary removal, AVD, VD, smugg*, border*); and accepted several of Defendants' proposals, *e.g.*, A11 ("sanctuary" added rather than standalone), A12 (limited to specific custodians), A10 (fox news coordination limited by operation type).
- **DHS:** Plaintiffs eliminated disputed CBP Term D1 from the DHS searches entirely, omitted numerous agreed CBP terms (including "Walmart," "Consent," and "Voluntary Return"), and imposed additional AND requirements on DHS Terms D2 and D3, linking the relevant conduct to Bovino, Border Patrol, CBP, or El Centro.

Defendants offer **no evidence** whatsoever of the burden associated with collecting documents based on Plaintiffs' current proposals. Their Opposition supplies no updated STRs, no substantiation of excessive collection volume, and no explanation why the agreed two-step process cannot adequately address subsequent review burden. Instead, all Defendants offer is speculation: that unspecified terms are "sure to return" a large amount of data or that it is "highly unlikely" responsive documents would not mention relevant operations by name. Defs. Opp. at 11. But the agreed process provides a concrete way to test those assertions: collect the documents at step one, then collect hit counts and apply further search terms at step two. Collection would enable the parties to generate STRs, assess actual search volumes, and determine whether limiting searches to documents that name the relevant operations is justified. Palm Decl., ¶ 7. Instead, Defendants seek to cut that inquiry off at the knees by invoking speculative burdens to avoid collecting the very data needed to test their objections. That thwarts the agreed process and substitutes conjecture for evidence. As this Court has reminded Defendants, they bear a "heavy burden of showing why discovery was denied." Dkt. 198 at 4-5 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Unsupported speculation does not suffice.

Defendants' remaining arguments lack merit. Defendants' complaint that Plaintiffs' Appendix 1 misstates their D3 counterproposal by omitting certain race and ethnicity terms is misleading. Plaintiffs circulated Appendix 1 to confirm its accuracy and Defendants failed to identify any error until their Opposition. Braun Decl., Ex. G at 1. More importantly, the omitted terms in Defendants' D3 do not impact Plaintiffs' position: as with Defendants' proposals for D1–D5, Defendants' D3 proposal requires references to specified operations or locations, yielding no additional documents for collection beyond those already captured by agreed terms (a point Defendants do not dispute). Palm Decl. ¶¶ 11–12. Defendants also seek to strike the Palm declaration even though Defendants previously relied on a similar declaration. Dkt. 163, Ex. H. Palm's declaration provides firsthand professional experience concerning ESI searches and should be considered if helpful to the Court. Finally, Defendants incorrectly suggest the Court imposed a blanket "documents sufficient to show" limitation. But the Court upheld certain CBP requests seeking all responsive documents. Dkt. 178 at 6-7. Plaintiffs narrowed the DHS terms to reflect the "sufficient to show" limitation on those RFPs and address proportionality.

Finally, the handful of documents Defendants produced does not prove their compliance with their discovery obligations nor excuse their explicit refusal to search or produce documents under the newly agreed terms. *See* Braun Decl, Ex. E at 6. That Defendants just recently relied

on ***unproduced emails*** in district court briefing concerning standing makes clear that they are sitting on and improperly withholding critical evidence. *See* Dkt. 215, Ex. D.

**C. Defendants fail to identify a reasonable set of DHS custodians.**

Defendants defend their designation of Mr. Lewandowski as a custodian by attacking a strawman, arguing that Mr. Lewandowski is a ***necessary*** custodian without ever addressing the relevant question of whether he is, alone, ***sufficient***. Plaintiffs do not dispute that Mr. Lewandowski possesses relevant documents. But his inclusion does not justify excluding other DHS officials—particularly when Defendants leave the conspicuous gaps in the length of his tenure and scope of his authority unaddressed. For example, Defendants concede Mr. Lewandowski was not working at DHS when RTS occurred, thus leaving Plaintiffs without a DHS custodian with contemporaneous knowledge of that operation. Defendants have also declined to confirm the scope of Mr. Lewandowski's authority when asked directly in conferrals. Braun Decl., Ex. F. And they still do not represent that he had decision-making authority over the operations in their Opposition. Defendants also do not contest that other DHS employees likely possess relevant, nonduplicative materials nor offer evidence of incremental burden.

Secretary Noem would fill at least some of the gaps. She was indisputably involved in and/or condoned the relevant operations. Indeed, Defendants ***admit*** that she discussed those operations with Mr. Bovino. Defs. Opp. at 8. And the DHS Secretary (unlike Mr. Lewandowski) unquestionably had ultimate decision-making authority over the operations, as this Court has already recognized. Braun Decl., Ex. J. The Secretary's authority over the operations therefore provides a concrete reason to expect that she possesses relevant, unique documents.

Defendants' own argument reinforces that conclusion. They object that "as Cabinet head [she] indisputably receives a significant number of incoming emails concerning the operations of the many different law enforcement components under the DHS umbrella." Defs. Opp. at 8. That's precisely the point. Given the Secretary's role, she is likely to have an array of documents about the relevant operations no other singular custodian will have. The possibility that her files contain unrelated documents supports using search terms, not excluding her altogether.

Defendants' proposal to search Bovino's emails for communications involving Noem does not cure the problem. That search would capture communications ***with*** Bovino but miss those ***about*** Bovino, his tactics, or the decisions DHS leadership made that did not include him. Indeed, this Court has ***already rejected*** this exact argument when it held DHS is subject to discovery in this case. Dkt. 178 at 8.

The Court should require Defendants to designate as custodians the DHS Secretary, along with other key decision makers, throughout the relevant time period.

# Plaintiffs' Opening Brief Exhibits

BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
LAUREN DAVIS - # 357292
ldavis@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-5000

ANDRES HOLGUIN-FLORES - # 305860
aholguinflores@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

FRANCO MUZZIO - # 310618
fmuzzio@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al.,

Defendants.

Case No. 1:25-cv-00246-JLT-CDB

**DECLARATION OF REAGHAN E. BRAUN ISO JOINT DISCOVERY LETTER RE: SEARCH TERMS, DHS CUSTODIANS, AND NARROWED REQUESTS FOR PRODUCTION**

Date: November 6, 2026
Time: 10:00 a.m.
Dept.: 510 19th Street, Suite 200
Judge: Hon. Christopher D. Baker

Date Filed: February 26, 2025

Trial Date: None set

I, Reaghan E. Braun, declare:

1. I am an attorney in the firm of Keker, Van Nest & Peters LLP, and am one of the counsel representing Plaintiffs in this lawsuit. I am a member of the California State Bar, and I am admitted in the United States District Court for the Eastern District of California. I have personal knowledge of the facts contained in this Declaration and, if called to testify, could and would competently testify thereto. I make this declaration in support of Plaintiffs' Opening Statement in the Parties' Joint Discovery Letter Brief re: Plaintiffs' Proposed Search Terms, DHS Custodians, and Narrowed Requests for Production ("Plaintiffs' Opening Statement").

2. Following the Court's April 17, 2026 Order Resolving Discovery Disputes, Dkt. 178, Defendants provided search term reports ("STRs") for the three Court-ordered terms, and the Parties exchanged proposed terms and counter proposals. On May 15, 2026, Defendants provided Plaintiffs a STR for the three court-ordered terms, along with Defendants' proposed search terms for Plaintiffs' second set of Requests for Production. Defendants sent a corrected STR of the Court-ordered terms on June 15, 2026 after notifying Plaintiffs that the initial STR was inaccurate.

3. To accommodate the purported technical limitations of Defendants' document collection system, Purview, and to reach a workable compromise that would allow the parties to move forward, Plaintiffs proposed a two-step process: first, the use of broad collection or "superset" terms to collect a bounded universe of custodial documents; and second, the use of narrower review-set terms in Defendants' document review platform, CORA (a version of Relativity), as necessary, to create a review set of documents. The Parties' correspondence dated May 22, June 3, and July 6, 2026, reflects Plaintiffs' proposal, Defendants' preference for this approach, and Defendants' agreement to proceed using a two-step process.

4. On June 17, 2026, counsel for Defendants stated that Defendants would not run a superset search while the Parties continued to evaluate and negotiate additional search terms, and that Defendants would not agree to multiple rounds of searches.

5. Between May and October 2026, Plaintiffs sent at least six search term proposals, including on May 20, May 22, July 6, August 14, September 2, September 11, and most recently

on October 9, 2026, and have continually narrowed their proposed terms in an effort to reach agreement and resolve the dispute informally. The Parties also met and conferred live to discuss search terms on May 21, 2026 and July 27, 2026.

6. On June 25, 2026, over Plaintiffs' objections, Defendants stated their intent to negotiate proposals for each set of custodians separately and would send separate proposals for search terms for DHS custodians. On September 21, 2026, Defendants raised, for the first time, additional unspecified technical limitations concerning DHS document collection systems.

7. The parties also met and conferred regarding DHS custodians. Defendants agreed to search the files of Corey Lewandowski, but declined to search the files of the DHS Secretary or identify another DHS decisionmaker, employee, or official whose files would be searched. When asked during live meet and confers the basis for their identification, Defendants declined to explain the steps they took to identify DHS custodians with potentially relevant information.

8. The exhibits attached hereto are highlighted and organized in the order they are referenced in Plaintiffs' Opening Statement.

9. Attached as **Appendix 1** is a chart containing the complete list of the seven disputed Collection Terms and the Parties' positions as to each of the disputed Collection Terms.

10. Attached as **Exhibit A** is a true and correct copy of Defendants' Responses and Objections to Plaintiffs' Narrowed Requests for Production served on Plaintiffs on August 17, 2026.

11. Attached as **Exhibit B** is a true and correct copy Plaintiffs' response to Defendants' August 17 Responses and Objections to Plaintiffs' Narrowed Requests for Production, served on Defendants on August 31, 2026.

12. Attached as **Exhibit C** is a true and correct copy of a highlighted excerpt of the Transcript of the July 21, 2026 Informal Discovery Dispute Conference in this matter.

13. Attached as **Exhibit D** is a true and correct copy of highlighted email correspondence from counsel for Plaintiffs, dated May 22, 2026, reflecting Plaintiffs' initial proposal for a two-step search term process.

14. Attached as **Exhibit E** is a true and correct copy of highlighted email correspondence between counsel for the Parties from June 3, 2026 through July 7, 2026 regarding the negotiated two-step process for search terms and Defendants' position on running multiple searches.

15. Attached as **Exhibit F** is a true and correct copy of highlighted email correspondence from counsel for Defendants, dated October 9, 2026, regarding DHS custodians.

16. Attached as **Exhibit G** is a true and correct copy of highlighted email correspondence between counsel for the Parties from September 11, 2026 through October 9, 2026 regarding DHS search terms and custodians.

17. Attached as **Exhibit H** is a true and correct highlighted copy of a POLITICO article by Eric Bazail-Eimil, dated March 27, 2026, titled "*DHS confirms that Lewandowski left the department along with Noem*," available at: https://www.politico.com/news/2026/03/27/dhs-lewandowski-left-with-noem-00849313.

18. Attached as **Exhibit I** is a true and correct highlighted copy of a New York Times article by Hamed Aleaziz, Alezandra Berzon, Nicholas Nehmas, Zolan Kanno-Youngs, and Tyler Pager, dated March 21, 2026, titled "*While he was supposed to serve in a limited role as an adviser to Kristi Noem, Mr. Lewandowski had wide influence over contracts, personnel and operations inside the agency over the last year*," available at: https://www.nytimes.com/2026/03/21/us/politics/corey-lewandowski-noem-dhs.html.

19. Attached as **Exhibit J** is a true and correct copy of a highlighted excerpt of the Transcript of the March 25, 2026 Informal Discovery Dispute Conference in this matter.

20. Attached as **Exhibit K** is a true and correct highlighted copy of a Wall Street Journal article by Joshua Chaffin and Michelle Hackman, dated January 29, 2026, titled "*Greg Bovino Was Trump's Rising Star. Then He Arrived in Minneapolis*." available at: https://www.wsj.com/us-news/bovino-ice-border-patrol-minneapolis-3b803543%20.

21. Attached as **Exhibit L** is a true and correct highlighted copy of an excerpt of the deposition of Gregory Bovino in the matter titled *Chicago Headline Club v. Noem*, No. 25 C 12173, Dkt. 191-3 (Bovino Dep. Tr.) 47:13–17 (N.D. Ill. Nov. 20, 2025).

22. Attached as **Exhibit M** is a true and correct highlighted copy of an Atlantic article by Nick Miroff, dated January 26, 2026, titled "*Greg Bovino Loses His Job*[,]" available at: https://www.theatlantic.com/politics/2026/01/greg-bovino-demoted-minneapolis-border-patrol/685770/.

23. Attached as **Exhibit N** is a true and correct highlighted copy of a March 9, 2026 Order regarding Expedited Discovery Disputes in the matter *Am. Fed'n of Gov't Emps. v. Trump*, No. 3:25-cv-03698-SI, Dkt. 328 at 2–3 (N.D. Cal. Mar. 9, 2026).

24. Attached as **Exhibit O** is a true and correct highlighted copy of a May 20, 2026 Joint Stipulation and Order in the matter titled *Vasquez Perdomo, et al., v. Mullin*, Dkt. 508 (Joint Stip.), Case No. 2:25-cv-05605-MEMF-SP (C.D. Cal. May 20, 2026).

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed October 14, 2026 in San Francisco, California.

REAGHAN E. BRAUN

# APPENDIX 1

## CBP and DHS Search Terms

| CBP — RFP Set 1 | CBP — RFP Set 2 | DHS — RFP Sets 1 and 2 |
|---|---|---|
| **Parties' Agreed Search Terms**<br>A1. Return to Sender OR RtS<br>A2. Bakersfield<br>A3. Kern<br>A4. Home Depot<br>A5. Walmart<br>A6. Consent<br>A7. Consensual Encounter<br>A8. BLM OR "bureau of land management"<br>A9. "voluntary return" | **Parties' Agreed Search Terms**<br>A1. Sacramento<br>A2. Florin<br>A3. Truxel<br>A4. "SAC"<br>A5. Stockton<br>A6. Capitol | **Parties' Agreed Search Terms**<br>A1. Return to Sender OR RtS<br>A2. (BLM or "bureau of land management") w/10 "parking lot"<br>A3. [Bovino's email address]<br>A4. Bovino w/20 (Capitol w/10 (speech or interview))<br>A5. ("ride along" or ridealong) w/20 fox AND Sacramento |
| **Parties' Agreed Superset Search Terms**<br>A10. "voluntary departure" OR I-826<br>A11. ("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide")<br>A12. ("Operation at Large" OR OAL OR OpAtLarge) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide)[1] | **Parties' Agreed Superset Search Terms**<br>A7. ("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number")<br>A8. "voluntary departure" OR I-826<br>A9. ("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide")<br>A10. "fox news" AND ("ridealong" OR "ride along") AND ("enforcement operation" OR "immigration enforcement") | **Parties' Agreed Superset Search Terms**<br>A6. ("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number" OR stop OR arrest OR warrant) |

[1] Defendants have agreed to run Term 1 on 14 specific RFP Set 1 custodians only. For all other RFP Set 1 terms, Defendants agree to run the terms across the complete set of custodians they identified for those RFPs.

## Plaintiffs' Proposed Additional Collection Terms — Disputed

Purview Collection Terms (also referred to as "Superset" terms) define the initial collection for subsequent targeted searches in CORA (Relativity).

In Plaintiffs' proposed DHS terms, underlining shows additions for the DHS term not present in the CBP term; strikethrough shows deletions of portions of the terms not used in the DHS search.

Red text shows AND connectors Defendants propose adding to Plaintiffs' terms.

| No. | Subject | RFP Set | Plaintiffs' Proposed Collection Terms | Defendants' Proposed Collection Terms | Custodians |
|---|---|---|---|---|---|
| D1 | Actions + Policies | 1 and 2 | **CBP**<br>(deport* OR remov* OR arrest* OR detain OR detention OR stop* OR warrant OR "Title 8") AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide") | **CBP**<br>(deport* OR remov* OR arrest* OR detain OR detention OR stop* OR warrant OR "Title 8") AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide")<br>AND (Bakersfield OR "RtS" OR "Return to Sender" or Sacramento OR "SAC" or Stockton OR Florin OR Capitol) | All CBP custodians |
| D2 | Actions + Generally Applicable Operation Terms | 1 and 2 | **CBP**<br>(stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (enforcement OR operation OR raid) | **CBP**<br>(stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (enforcement OR operation OR raid) AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol) | All CBP and DHS custodians |

| No. | Subject | RFP Set | Plaintiffs' Proposed Collection Terms | Defendants' Proposed Collection Terms | Custodians |
|---|---|---|---|---|---|
| | | | **DHS (underline/strikethroughs show modification of CBP term)**<br>(stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop" OR "Home Depot") AND (enforcement OR operation OR raid) AND (Bovino OR "Border Patrol" OR CBP OR "El Centro") | **DHS**<br>Bovino AND "El Centro" w/10 (operation or enforcement) | |
| D3 | Race/Profiling + Actions | 1 and 2 | **CBP**<br>(race OR ethnicity OR nationality OR demographic* OR immigr* OR illegal* OR alien* OR latin* OR hispan* OR Mexic* OR brown* OR "day labor*" OR farm* OR agri* OR field* OR "bad people" OR "bad things") AND (stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") | **CBP**<br>(stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (enforcement OR operation OR raid)<br>AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol) | All CBP and DHS custodians |

| No. | Subject | RFP Set | Plaintiffs' Proposed Collection Terms | Defendants' Proposed Collection Terms | Custodians |
|---|---|---|---|---|---|
| | | | **DHS (underline/strikethroughs show modification of CBP term)**<br>(race OR ethnicity OR nationality OR demographic* OR immigr* OR illegal* OR alien* OR latin* OR hispan* OR Mexic* OR brown* OR "day labor*" OR farm* OR agri* OR field* OR "bad people" OR "bad things" OR "Home Depot") AND (stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (Bovino OR "Border Patrol" OR "CBP" OR "El Centro") | **DHS**<br>*See* DHS Agreed Term 6<br>Bovino AND El Centro w/10 (operation or enforcement) | |
| D4 | Goals/Quotas + Actions | 1 and 2 | **CBP and DHS**<br>(Goal OR quota OR "minimum number") AND (stop* OR arrest* OR deport* OR detent* OR detain* OR custod*) | **CBP and DHS**<br>(Goal OR quota OR "minimum number") AND (stop* OR arrest* OR deport* OR detent* OR detain* OR custod*)<br>AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol) | All CBP and DHS custodians |

| No. | Subject | RFP Set | Plaintiffs' Proposed Collection Terms | Defendants' Proposed Collection Terms | Custodians |
|---|---|---|---|---|---|
| D5 | Leadership + Policies/Training/ Quotas | CBP: 2<br>DHS: 1 and 2 | **CBP**<br>(Bovino OR "Stephen Miller" OR Noem) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number")<br><br>**DHS**<br>(Bovino OR "Stephen Miller" OR Noem) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number") | **CBP**<br>(Bovino AND "Stephen Miller" OR Noem) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number") AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol or "operation at large" or "OAL" or "OpAtLarge"))<br><br>**DHS**<br>(miller w/20 (quota OR goal OR minimum) | All CBP and DHS custodians |
| D6 | Legal Claims + Policies/Training | 1 and 2 | **CBP**<br>Parties agree to this term for CBP. *See* CBP RFP Set 1, A10 and A11 and CBP RFP Set 2, A8 and A9 | **CBP**<br>Parties agree to this term for CBP. *See* CBP RFP Set 1, A10 and A11 and CBP RFP Set 2, A8 and A9 | All DHS custodians |

| No. | Subject | RFP Set | Plaintiffs' Proposed Collection Terms | Defendants' Proposed Collection Terms | Custodians |
|---|---|---|---|---|---|
| | | | **DHS (underline/strikethroughs show modification of agreed CBP term)**<br>("voluntary departure" OR "I-826" OR "reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless OR stop OR arrest OR warrant) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide") | **DHS**<br>"El Centro" w/20 "voluntary departure" | |
| D7 | E.D. Cal. Operation Locations | 1 and 2 | **DHS**<br>Bakersfield OR Kern OR "Sacramento" OR "Florin" OR "Truxel" OR "SAC" OR "Stockton" | **DHS**<br>("Operation at Large" OR OAL OR OpAtLarge) AND Sacramento OR SAC OR Florin OR Truxel.<br>Return to Sender OR RtS AND Bakersfield OR kern | All DHS custodians |

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, *et al.*,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, Secretary of the United Stat Department of Homeland Security, *et al.*,[1]<br>Defendants. | Case No. 25-cv-00246-JLT-CDB |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' PROPOSED FURTHER NARROWING OF RFP NOs. 3, 4, 11, 23, 27, 46, 53, 55, AND 56**

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Defendants substitute U.S. Secretary of Homeland Security Kristi Noem for Markwayne Mullin, and Chief Patrol Agent Gergory K. Bovino for Daniel Parra, Acting Chief Patrol Agent for El Centro Sector.

Defendants, pursuant to Federal Rule of Civil Procedure 26 and Local Rule 250.3, hereby provide Defendants' objections and responses to Plaintiffs' Proposed Narrowing of Requests for Production ("RFPs"), Nos. 3, 4, 11, 12, 23, 26, 27, 46, 53, 55, and 56, propounded on May 11, 2026, and further narrowed on June 4, 2026.

**PRELIMINARY STATEMENT**

On May 11, 2026, Plaintiffs sent Defendants a letter ("Ltr.") pursuant to the Court's April 17 Order (ECF No. 178) with their proposed narrowing of RFPs Production Nos. 3, 4, 11, 12, 23, 26, 27, 46, 53, 55, and 56.[2] Defendants responded to Plaintiffs' narrowed RFPs on June 1, 2026. On June 4, 2026, Plaintiffs served Defendants with a second letter in response to Defendants' June 1, 2026, RFP responses and objections and further narrowed the aforementioned RFPs. Via email exchange conferral efforts, Defendants sought clarification and to determine whether the parties' positions ultimately aligned and the Court's order limited Plaintiffs to Operation at Large documents "relevant to immigration enforcement operations in the Eastern District of California", eventually agreeing to litigate the remaining disputes concerning the scope of relevancy and proportionality before the Court. ECF No. 194. Plaintiffs sought review before the Court of Defendants' objections to further narrowed RFP Nos. 3, 4, 11, 23, 46, 55 and did not move to compel responses to further narrowed RFP Nos. 27, 53, 56, but "reserve[d] all rights[] to compel further responses on those RFPs." *Id*. at 4. On July 23, 2026, the Court entered an order overruling Defendants' "anticipated objections" to RFP Nos. 3,[3] 4, 11, 23, 46, and 55 "on the grounds that the requests are not relevant or proportional to the needs of this case." ECF No. 198 at 5. The Court explained that it was overruling Defendants' "relevancy objection" to RFP Nos. 3, 4, 11, 23, 46, and 55 because Defendants could not describe a document that "was not relevant to operations in this District but otherwise responsive" to the further narrowed RFPs. *Id.* at 3-4.

---

[2] In this letter, Plaintiffs also asserted that they are entitled to discovery into "Large-Scale immigration enforcement operations in other districts" because they are "relevant" and "proportional." Ltr. at 2-3. On May 22, 2026, Defendants responded to Plaintiffs' assertion, explaining that Judge Baker "plainly" rejected, ECF No. 178 at 8, Plaintiffs' assertion that they are entitled to discovery into "Large-Scale immigration enforcement operations in other districts" because they are "relevant" and "proportional." Ltr. at 2-3. Discovery is limited to "Operation Return to Sender and Operation At Large as executed **in this district**." ECF. No. 178 at 7 (emphasis added).

[3] Regarding RFP No. 3, the Court noted that "[a]lthough there is no dispute that the identified training topics are relevant to Plaintiffs' claims, it is unclear whether other training topics not identified in RPD No. 3 might be irrelevant. Thus, Defendants' anticipated relevancy and proportionality objections will be overruled as to the identified training topics, and sustained as to any unidentified training topics." ECF No. 198 at 5.

Accordingly, Defendants provide objections and responses on behalf of Defendants Department of Homeland Security ("DHS") and U.S. Border Patrol ("USBP"), and non-party U.S. Immigration and Customs Enforcement ("ICE").

Defendants have, and will continue, to make diligent and good faith efforts to obtain information responsive to the RFPs. Defendants' responses are based on their knowledge, information, and documents acquired and reviewed to date. Defendants' objections and responses shall not be deemed to constitute admissions that (a) information or any document or thing exists or is relevant, non-privileged, or admissible in evidence; or (b) any statement or characterization by Plaintiffs in the RFPs is accurate or complete.

Defendants expressly reserve the right to supplement, clarify, revise, or correct any or all of the responses herein at any time. By making the following objections and responses to Plaintiffs' RFPs, Defendants do not waive, and hereby expressly reserve, the right to assert any and all objections to the admissibility of such responses into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege. Defendants' objections are based on the information known to Defendants at this time and are made without prejudice to assertion of additional objections should Defendants identify additional grounds for objection. Furthermore, Defendants respond herein without, in any manner, admitting or implying that Plaintiffs' Requests (or Defendants' responses) are relevant to any party's claim or defense or proportionate to the needs of the case. Any response contained herein is subject to the protective order entered in this case. Defendants will continue to supplement responses consistent with the requirements of Rule 26(e) as additional information becomes available.

**OBJECTIONS THAT APPLY TO ALL REQUESTS FOR PRODUCTION**

Defendants assert and incorporate by reference the following initial objections:

1. Defendants object to each and every request to the extent it is vague, ambiguous, overly broad, and seeks information protected from disclosure by the attorney-client privilege, law enforcement privilege, deliberative process privilege, attorney work product protection, or any statutory or legal basis precluding disclosure. Defendants object to

Plaintiffs' requests to the extent that they call for Defendants to produce information or documents to which Plaintiffs have equal or greater access than Defendants. Defendants object to Plaintiffs' RFPs to the extent they call for documents that are publicly available, are already in custody or control of Plaintiffs or Plaintiffs' counsel, are readily accessible to Plaintiffs, or that would otherwise be less burdensome for Plaintiffs to obtain than Defendants. See Fed. R. Civ. P. 26(b)(2)(C)(i).

2. Defendants object to Plaintiffs' RFPs to the extent that they purport to impose any obligations other than those required by the Federal Rules of Civil Procedure or the Local Rules of this Court. Defendants further object to the extent that the RFPs seek information which is not "relevant to any party's claim or defense and proportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

3. Defendants object to Plaintiffs' definition of the terms "including" and "includes" to mean "without limitation or includes without limitation" on the ground that is overly broad and unduly burdensome. This objection is incorporated to all of Plaintiffs' definitions that use the term "including," for example, "Documents," Communications," "Training," "Governmental and/or law enforcement entities," "Electronically Stored Information," and "Target Folders."

4. Defendants object to Plaintiffs' definition of the terms "Defendants," "You," or "Your," on the grounds that they are vague, overly broad and unduly burdensome, and improperly invades the attorney/client privilege or the attorney work-product doctrine. Specifically, Plaintiffs' definition includes all components, entities, affiliates, and divisions within DHS, CBP and Border Patrol. Plaintiffs' definition is overly broad and disproportional to the needs of this case in that it would include components of the DHS that are not relevant to the claims and defenses in this case. Asking DHS to search and produce documents from

the whole of its agency, including predecessor agencies and all subcomponents, including Immigration and Customs Enforcement ("ICE") and U.S. Citizenship and Immigration Services ("USCIS"), would be unduly burdensome. Defendants further object to the extent it purports to require the disclosure of information in the possession, custody, or control of entities other than USBP and DHS Headquarters, falls outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seeks information that can and should be sought from another entity. Defendants interpret the definition of "You" and "Defendants," to refer to USBP and DHS Headquarters.

5. Defendants object to Plaintiffs' definition of "Communications," which is defined so broadly as to include verbal or non-written communications and is beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items). Defendants also object to Plaintiffs' definition of the term "Documents" on the ground that it is overly broad and unduly burdensome to the extent that Plaintiffs request such documents as "books of accounts, invoices, time sheets or logs, diaries, or papers similar to the foregoing," which are not proportional or relevant to the needs of the case. Defendants interpret the term "documents" to include all writings, recordings, and photographs as defined in Rule 1001 of the Federal Rules of Evidence related to the discrete issues in this case.

6. Defendants object to Plaintiffs' definition of "policy, procedure, or practice" to the extent it includes "unofficial" and "unwritten" policies, procedures, or practices. This language is vague, ambiguous, and subject to reasonable interpretation. Defendants will construe this definition as meaning official, written policies, procedures, or practices. This objection is incorporated into each of the Defendants' responses to the RFPs.

7. Defendants object to Plaintiffs' definition of "training" to the extent it includes "unofficial" and "unwritten" training, education, musters, or guidance. This language is vague, ambiguous, and subject to reasonable interpretation. Defendants will construe this definition as meaning official, written training, education, musters, or guidance. This

objection is incorporated into each of the Defendants' responses to the RFPs.

8. Defendants object to Plaintiffs' definition of "supervision" to the extent it includes "unofficial" or "unwritten" supervision, monitoring, evaluation, feedback, or discipline. This language is vague, ambiguous, and subject to reasonable interpretation. Defendants will construe this definition as meaning official, written supervision, monitoring, evaluation, feedback, or discipline. This objection is incorporated into each of the Defendants' responses to the RFPs.

9. Defendants object to Plaintiffs' definition of "Governmental and/or law enforcement entities" as overly broad and unduly burdensome on the grounds that it includes "any and all federal, state, and local governmental or law enforcement entities . . . " and, moreover, includes entities operating in Ridgecrest, Arvin, Delano, Shafter, Taft, Tehachapi, and "California Highway Patrol, and/or any other entities operating in Kern, Fresno, Sacramento, and surrounding regions," entities which are not proportional or relevant to the needs of the case. Defendants object to Plaintiffs' definition as vague and ambiguous to the extent it includes the "surrounding regions."

10. Defendants object to Plaintiffs' definition of "warrants" to the extent it purports to require the disclosure of information in the possession, custody, or control of entities other than the Defendants, which falls outside the scope of permissible discovery under Fed. R. Civ. P. 34, or seeks information that can and should be sought from another entity.

11. Defendants object to Plaintiffs' definition of ESI to the extent it conflicts with the definition in ECF No. 183. Defendants also object to this definition to the extent it includes databases irrelevant to the claims at issue in this case, or for which Defendants do not have custody or control of the records located within such databases. Defendants also object to this definition to the extent that it purports to impose any obligations other than those required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

12. Defendants object to Plaintiffs' definition of "target folders" on the grounds that it improperly invades the attorney/client privilege, the attorney work-product doctrine, or the

law enforcement privilege.

13. Defendants object to Plaintiffs' definition of "target profile" on the grounds that it improperly invades the attorney/client privilege, the attorney work-product doctrine, or the law enforcement privilege.

14. Defendants object to Plaintiffs' definition of "target list" on the grounds that it improperly invades the attorney/client privilege, the attorney work-product doctrine, or the law enforcement privilege.

15. Defendants object to Plaintiffs' definition of "Operation at Large" as overbroad, vague, and ambiguous. Defendants construe "Operation at Large" consistent with the Court's Order, ECF No. 178 at 7 (providing that discovery is limited to "Operation Return to Sender and Operation At Large as executed in this district") and Plaintiffs' footnote 2, ECF No. 194, Ex. A, RFP No. 3 & fn. 2 ("For the avoidance of doubt, this RFP would include generally applicable training materials for Operation at Large that apply regardless of the location in which a specific raid was carried out, but would not include training materials that applied solely to a location outside the Eastern District of California.").

16. Defendants object to Plaintiffs' definition of "Sacramento Operation" as overbroad to the extent that Plaintiffs definition includes locations outside of Sacramento, California.

17. Defendants object to Plaintiffs' definition of "stop," "stopping," "arrest," "arresting," "detain," "detention," and "detaining" to the extent the terms apply to stops, arrests, or detentions for non-immigration offenses.

18. Defendants object to these RFPs (and to the definitions and instructions that accompany them) to the extent they purport to impose obligations in addition to those imposed by the Federal Rules of Civil Procedure and the Local Civil Rules. Defendants reserve the right to supplement these responses as discovery continues in this matter. Subject to and without waiving the foregoing objections, Defendants provide the following responses.

**PLAINTIFFS' PROPOSED FURTHER NARROWED REQUESTS FOR PRODUCTION**

**Proposed Further Narrowed RFP No. 3:**

Documents sufficient to show any training materials concerning Operation Return to Sender and Operation at Large[4] that were created, shared, or relied on by DHS, CBP, USBP, or the El Centro Sector of USBP since November 1, 2024.[5] These include training materials concerning how to carry out such enforcement operations; officer conduct during such enforcement operations; the requisite level of suspicion or cause to conduct a Stop or Arrest; what to do once a Stop is initiated; how and/or when to document a Stop; the determination of immigration status or whether someone is in the U.S. in violation of immigration law; the standards used to establish probable cause reasonable suspicion, or to conduct warrantless Arrests; the determination of flight risk; and the processing of detainees at facilities, such as at a Makeshift Facility or the El Centro Detention Facility; and the administration of voluntary departures.

**Defendants' Objections and Response to Proposed Narrowed RFP No. 3:**

Defendants object to this RFP as unduly broad, overly burdensome, and disproportionate to the needs of the case to the extent it seeks documents from agencies other than U.S. Border Patrol and DHS Headquarters.

Defendants incorporate their objection to Plaintiffs' definition of "training" and will construe this request as meaning official, written training.

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California. Defendants object to this RFP as the terms "El Centro Detention Facility", "officer", "concerning", "created", "shared", "relied", "carry out", "enforcement operations", "conduct", "requisite level", and "cause" are vague, overly burdensome, and subject to reasonable interpretation.

---

[4] These requests incorporate by reference the definitions included in the original requests for production. For the avoidance of doubt, as defined in Plaintiffs' Second Set of RFPs, Plaintiffs' reference to "Operation at Large" includes but is not limited to the Sacramento Operation in July 2025.

[5] For the avoidance of doubt, this RFP would include generally applicable training materials for Operation at Large that apply regardless of the location in which a specific raid was carried out, but would not include training materials that applied ***solely*** to a location outside the Eastern District of California.

Defendants object to Plaintiffs' definition of "Stop" and "Arrest" to the extent the terms apply to stops or arrests for non-immigration offenses.

Defendants object to "training materials" to the extent that "training materials" include "training topics not identified" in this RFP, ECF No. 198 at 5.

Defendants object to this RFP to the extent it requests documents protected by attorney-client privilege, attorney work-product, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and produce responsive nonprivileged documents and a privilege log identifying the responsive documents Defendants are withholding or redacting based on privilege and a basis for invoking the privilege.

**ICE**:

Responding non-party U.S. Immigration and Customs Enforcement ("ICE") incorporates Defendants' Preliminary Statement and General Objections in response to this Request. ICE also incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

ICE objects to this Request to the extent it seeks documents or information outside ICE's possession, custody, or control.

ICE further objects to the Request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, ICE states that it had specific involvement with one operation relating to this lawsuit that took place on July 17, 2025, in Sacramento, CA. ICE states that it was not the operational or arresting agency for the July 17th operation. ICE's involvement was limited to administrative support associated with detainee book-in processing and the processing of certain Forms I-213 and detainee processing generated in connection with

arrests made by Border Patrol during that operation and was not present at the operation. To the extent ICE possesses nonprivileged documents specifically relating to its limited administrative processing role, ICE will conduct a reasonable search for responsive materials within its possession, custody, or control.

Accordingly, ICE defers to the named parties and agencies directly involved in any operation and enforcement activities not related to the July 17, 2025, operation in Sacramento, CA. Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 4:**

Documents sufficient to show internal guidance, policy, practice, or procedures for or concerning Stopping and/or Detaining an individual during Operation Return to Sender and Operation at Large, that were created, shared, relied on, endorsed, or approved by or with DHS, CBP, USBP or the El Centro Border Patrol since November 1, 2024.[6] These include Documents reflecting policies, practices, procedures, guidance, or other memoranda related to the standard for Stops and/or Detentions of persons suspected of a civil immigration violation; the circumstances in which such a Stop or Detention may be made for a suspected civil immigration violation; or the factual or legal basis for Stopping or Detaining an individual for a suspected civil immigration violation.

**Defendants' Objections and Response to Proposed Narrowed RFP No. 4:**

Defendants incorporate their objection to Plaintiffs' definition of "policy, procedure, or practice" and construe this request as meaning official, written policies, procedures, or practices.

Defendants incorporate their objection to Plaintiffs' definition of "training" and construe this request as meaning official, written training.

Defendants object to this RFP as unduly broad, overly burdensome, and disproportionate to the needs of the case to the extent it seeks documents from agencies other than U.S. Border Patrol and DHS Headquarters.

---

[6] For the avoidance of doubt, this RFP would include generally applicable internal guidance, policy, practice, or procedures for Operation at Large that apply regardless of the location in which a specific raid was carried out, but would not include guidance, policy, practice, or procedures that applied ***solely*** to a location outside the Eastern District of California.

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

Defendants object to this RFP as the terms "El Centro Border Patrol", "concerning", "internal guidance, policy, practice, or procedures", "created, shared, relied on, endorsed, or approved by or with", "reflecting policies, practices, procedures, guidance, or other memoranda related to", "standard", "circumstances", and "factual or legal basis" are vague, overly broad, and subject to reasonable interpretation.

Defendants object to this RFP to the extent it requests documents protected by attorney-client privilege, attorney work-product, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and produce responsive nonprivileged documents and a privilege log identifying the responsive documents Defendants CBP and DHS are withholding or redacting based on privilege and a basis for invoking the privilege.

**ICE**:

Responding non-party ICE incorporates Defendants' Preliminary Statement and General Objections in response to this Request. ICE also incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

ICE objects to this Request to the extent it seeks documents or information outside ICE's possession, custody, or control. ICE further objects to the Request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, ICE states that it had specific involvement with one operation relating to this lawsuit that took place on July 17, 2025, in Sacramento, CA. ICE

states that it was not the operational or arresting agency for the July 17th operation. ICE's involvement was limited to administrative support associated with detainee book-in processing and the processing of certain Forms I-213 and detainee processing generated in connection with arrests made by Border Patrol during that operation and was not present at the operation. To the extent ICE possesses nonprivileged documents specifically relating to its limited administrative processing role, ICE will conduct a reasonable search for responsive materials within its possession, custody, or control.

Accordingly, ICE defers to the named parties and agencies directly involved in any operation and enforcement activities not related to the July 17, 2025, operation in Sacramento, CA. Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 11:**

Documents sufficient to show internal guidance, policy, practice, or procedures for or concerning Arresting someone without a Warrant pursuant to a civil immigration violation, during Operation Return to Sender and Operation at Large, that were created, shared, relied on, endorsed, or approved by or with DHS, CBP, USBP or El Centro Border Patrol since November 1, 2024.[7] These include Documents reflecting policies, practices, procedures, guidance, or other memoranda relating to the circumstances in which an Arrest may be made for a civil immigration violation and/or the factual or legal basis for Arresting an individual without a Warrant for a civil immigration violation, including any internal guidance, policies, procedures, or other memoranda for or concerning the assessment of flight risk for individuals Arrested without a Warrant.

**Defendants' Objections and Response to Proposed Narrowed RFP No. 11:**

Defendants incorporate their objection to Plaintiffs' definition of the term "Documents."

Defendants incorporate their objection to Plaintiffs' definition of "include."

---

[7] For the avoidance of doubt, this RFP would include generally applicable internal guidance, policy, practice, or procedures for Operation at Large that apply regardless of the location in which a specific raid was carried out, but would not include guidance, policy, practice, or procedures that applied ***solely*** to a location outside the Eastern District of California.

Defendants incorporate their objection to Plaintiffs' definition of "policy, procedure, or practice" and construe this as requesting official, written policies, procedures, or practices.

Defendants incorporate their objection to Plaintiffs' definition of "training" and construe this request as meaning official, written training.

Defendants object to this RFP as unduly broad, overly burdensome, and disproportionate to the needs of the case to the extent it seeks documents from agencies other than U.S. Border Patrol and DHS Headquarters.

Defendants object to this RFP as the terms "El Centro Border Patrol", "concerning", "internal guidance, policy, practice, or procedures", "created, shared, relied on, endorsed, or approved by or with", "reflecting policies, practices, procedures, guidance, or other memoranda related to", "standard", "circumstances", and "factual or legal basis" are vague, overly broad, and subject to reasonable interpretation.

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

Defendants object to this RFP to the extent it requests documents protected by attorney-client privilege, attorney work-product, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendant CBP provided Plaintiffs a Certified Administrative Record on July 14, 2025, responsive to this RFP, Administrative Record 583- 89. Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and produce any additional nonprivileged documents responsive to this RFP and provide a privilege log identifying the responsive documents Defendants CBP and DHS are withholding or redacting based on privilege and a basis for invoking the privilege. Defendants will not re-produce anything already produced in the Certified Administrative Record.

**ICE**:

Responding non-party ICE incorporates Defendants' Preliminary Statement and General Objections in response to this Request. ICE also incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

ICE objects to this Request to the extent it seeks documents or information outside ICE's possession, custody, or control.

ICE further objects to the Request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, ICE states that it had specific involvement with one operation relating to this lawsuit that took place on July 17, 2025, in Sacramento, CA. ICE states that it was not the operational or arresting agency for the July 17th operation. ICE's involvement was limited to administrative support associated with detainee book-in processing and the processing of certain Forms I-213 and detainee processing generated in connection with arrests made by Border Patrol during that operation and was not present at the operation. To the extent ICE possesses nonprivileged documents specifically relating to its limited administrative processing role, ICE will conduct a reasonable search for responsive materials within its possession, custody, or control.

Accordingly, ICE defers to the named parties and agencies directly involved in any operation and enforcement activities not related to the July 17, 2025, operation in Sacramento, CA. Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 23**:

All Documents and Communications from or to Border Patrol or DHS agents involved in the administration of voluntary departures of individuals Stopped, Arrested, and/or Detained in the Eastern District of California pursuant to Operation Return to Sender or the Sacramento Raid, and Documents

sufficient to show internal guidance, policy, practice, or procedures for or regarding the administration of voluntary departure, during Operation Return to Sender and Operation at Large, that were created, shared, relied on, endorsed, or approved by or with DHS, CBP, USBP or El Centro Border Patrol since November 1, 2024, including documents concerning the process for securing a knowing and voluntary waiver of rights before expelling an individual via voluntary departure.[8]

**Defendants' Objections and Response to Proposed Narrowed RFP No. 23:**

Defendants incorporate their objections to Plaintiffs' definitions of the terms "Documents" and "Communications."

Defendants incorporate their objection to Plaintiffs' definition of "including."

Defendants incorporate their objection to Plaintiffs' definition of "policy, procedure, or practice" and will construe this as requesting official, written policies, procedures, or practices.

Defendants object to "All Documents and Communications" as overbroad and disproportional. ECF No. 178 at 7 n.1 (noting that requesting "all documents" is overbroad and disproportional).

Defendants object to this RFP as the terms "El Centro Border Patrol", "Sacramento Raid", "involved in", "the administration of voluntary departures of individuals", "internal guidance, policy, practice, or procedures", "regarding", "administration of voluntary departure", "created, shared, relied on, endorsed, or approved by or with", "the process for securing a knowing and voluntary waiver of rights", "before", and "expelling" are vague, overly broad, and subject to reasonable interpretation.

Defendants object to this RFP as unduly broad, overly burdensome, and disproportionate to the needs of the case to the extent it seeks documents from agencies other than U.S. Border Patrol and DHS Headquarters.

[8] For the avoidance of doubt, with regard to Operation at Large, this RFP would include generally applicable internal guidance, policy, practice, or procedures that apply regardless of the location in which a specific raid was carried out, but would not include guidance, policy, practice, or procedures that applied ***solely*** to a particular location outside the Eastern District of California.

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

Defendants object to this RFP to the extent it requests documents and communications protected by attorney-client privilege, attorney work-product, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendant CBP provided Plaintiffs a Certified Administrative Record on July 14, 2025, responsive to this RFP, Administrative Record 588-89. Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and will produce any additional nonprivileged documents responsive to this RFP and a privilege log identifying the responsive documents Defendant CBP is withholding or redacting based on privilege and a basis for invoking the privilege. Defendant CBP will not re-produce anything already produced in the Certified Administrative Record.

**ICE**:

Responding non-party ICE incorporates Defendant's Preliminary Statement and General Objections in response to this Request. ICE also incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

ICE objects to this Request to the extent it seeks documents or information outside ICE's possession, custody, or control.

ICE further objects to the Request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, ICE states that it had specific involvement with one operation relating to this lawsuit that took place on July 17, 2025, in Sacramento, CA. ICE states that it was not the operational or arresting agency for the July 17th operation. ICE's involvement was limited to administrative support associated with detainee book-in processing

and the processing of certain Forms I-213 and detainee processing generated in connection with arrests made by Border Patrol during that operation and was not present at the operation. To the extent ICE possesses nonprivileged documents specifically relating to its limited administrative processing role, ICE will conduct a reasonable search for responsive materials within its possession, custody, or control.

Accordingly, ICE defers to the named parties and agencies directly involved in any operation and enforcement activities not related to the July 17, 2025, operation in Sacramento, CA. Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 27:**

Documents sufficient to show the involvement of former El Sector Chief Patrol Agent Defendant Gregory Bovino, in the planning, implementation, or carrying out of immigration operations in Los Angeles County, Riverside County, Ventura County, Orange County, Santa Barbara County, and San Bernadino County from January 1, 2025 to present, including memos, briefing, emails, instructions, guidance, directives, PowerPoints, proof of concepts; preoperational briefing; operational plans, and operational evaluations or reports.

**Defendants' Objections and Response to Proposed Narrowed RFP No. 27:**

Defendants incorporate their objections to Plaintiffs' definitions of the term "Documents." Defendants object to this RFP as overly broad, unduly burdensome, and not proportionate to the needs of this case as it requests documents pertaining to operations outside of the Eastern District of California. ECF No. 178 at 8 ("[T]he importance of discovery concerning out-of-district operations in resolving the issues of whether constitutional violations occurred in this district plainly is outweighed by the burden or expense such discovery undoubtedly would entail."); *id.* at 7 (providing that discovery is limited to "Operation Return to Sender and Operation At Large as executed in this district"); ECF No. 56 at 11 (directing the parties to engage in "limited discovery outside of the administrative record" that is "consistent with the principles of relevance and proportionality" concerning Plaintiffs' allegations that Defendants engaged in a pattern and

practice of Fourth and Fifth Amendment violations). The expense of producing documents in response to this RFP outweighs its potential benefit and relevance to this litigation. Defendants will confine their response to U.S. Border Patrol documents related to immigration enforcement operations within the Eastern District of California.

Defendants object to "all documents" as overbroad and disproportional. ECF No. 178 at 7 n.1 (noting that requesting "all documents" is overbroad and disproportional).

Defendants object to this RFP as the terms "planning", "implementation", "carrying out", and "memos, briefing, emails, instructions, guidance, directives, PowerPoints, proof of concepts, preoperational briefing, operational plans and operational evaluations or reports", are vague, overly broad, and subject to reasonable interpretation.

Defendants object to this RFP to the extent it requests documents protected by attorney-client privilege, attorney work-product, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and produce responsive nonprivileged records and a privilege log identifying the responsive documents Defendant CBP is withholding or redacting based on privilege and a basis for invoking the privilege.

**ICE**:

Responding non-party ICE object to this Request because it seeks documents concerning matters that are not within ICE's operational responsibility and, to the extent such documents exist, are more appropriately directed to U.S. Customs and Border Protection, including U.S. Border Patrol. The Request appears to concern the alleged involvement of former El Centro Sector Chief Patrol Agent Gregory Bovino in immigration operations in specified California counties. ICE further objects to the extent the Request seeks documents outside their possession, custody, or control, including records maintained by CBP or another DHS component.

ICE incorporates Defendants' objection to this RFP as overly broad, unduly burdensome, and not proportionate to the needs of this case as it requests documents pertaining to operations outside of the Eastern District of California.

Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 46:**

Documents and Communications sufficient to show Defendants DHS's, CBP's, and USBP's goals, quotas, or intended outcomes of Operation at Large, including documents and communications that reflect how those goals, quotas, or intended outcomes applied to the Sacramento Operation.[9]

**Defendants' Objections and Response to Proposed Narrowed RFP No. 46:**

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

Defendants incorporate their objection to Plaintiffs' definitions of the terms "Documents" and "Communications."

Defendants object to this RFP on the grounds that the phrase "goals, quotas, or intended outcomes" is vague and subject to reasonable interpretation.

Defendants object to this request to the extent it seeks documents based on speculation, assumptions, or hypothetical facts not supported by evidence.

Defendants object to this RFP as unduly broad, overly burdensome, and disproportionate to the needs of the case to the extent it seeks documents from agencies other than U.S. Border Patrol and DHS Headquarters.

Defendants object to this RFP to the extent it requests documents and communications protected by attorney-client privilege, attorney work-product doctrine, law enforcement, deliberative process privilege, or any other applicable privilege or protection

[9] For the avoidance of doubt, this RFP would include generally applicable goals, quotas, or expected outcomes for Operation at Large that apply regardless of the location in which a specific raid was carried out but would not include goals, quotas, or expected outcomes that applied ***solely*** to a location outside the Eastern District of California.

Subject to and without waiving the objections above, Defendant CBP provided Plaintiffs with Form I- 213s on July 25, 2025, responsive to this RFP, Preliminary Injunction Order 4(d) 0001-0056. Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and will produce any additional nonprivileged documents that are responsive to this request and provide a privilege log identifying the responsive documents Defendants CBP and DHS are withholding or redacting based on privilege and a basis for invoking the privilege. Defendants will not re-produce anything already produced in compliance with the Preliminary Injunction.

**ICE**:

Responding non-party ICE incorporates Defendant's Preliminary Statement and General Objections in response to this Request. ICE also incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

ICE objects to this Request to the extent it seeks documents or information outside ICE's possession, custody, or control.

ICE further objects to the Request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, ICE states that it had specific involvement with one operation relating to this lawsuit that took place on July 17, 2025, in Sacramento, CA. ICE states that it was not the operational or arresting agency for the July 17th operation. ICE's involvement was limited to administrative support associated with detainee book-in processing and the processing of certain Forms I-213 and detainee processing generated in connection with arrests made by Border Patrol during that operation and was not present at the operation. To the extent ICE possesses nonprivileged documents specifically relating to its limited administrative processing role, ICE will conduct a reasonable search for responsive materials within its possession, custody, or control.

Accordingly, ICE defers to the named parties and agencies directly involved in any operation and enforcement activities not related to the July 17, 2025, operation in Sacramento, CA. Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 53:**

All audio and video recordings of Defendant Bovino, including body-worn camera footage, vehicle-mounted camera footage, drone footage, surveillance recordings, and handheld or stationary recordings, taken, received, or otherwise known to Defendants, depicting, referring to, or otherwise capturing Defendant Bovino's immigration enforcement activities conducted as part of Operation at Large.

**Defendants' Objections and Response to Proposed Narrowed RFP No. 53:**

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to this RFP as duplicative, overly broad, unduly burdensome, and not proportionate to the needs of this case as it requests documents pertaining to operations outside of the Eastern District of California. ECF No. 178 at 8 ("[T]he importance of discovery concerning out-of-district operations in resolving the issues of whether constitutional violations occurred in this district plainly is outweighed by the burden or expense such discovery undoubtedly would entail."); *id.* at 7 (providing that discovery is limited to "Operation Return to Sender and Operation At Large as executed in this district"); ECF No. 56 at 11 (directing the parties to engage in "limited discovery outside of the administrative record" that is "consistent with the principles of relevance and proportionality" concerning Plaintiffs' allegations that Defendants engaged in a pattern and practice of Fourth and Fifth Amendment violations). Defendants will confine their response to documents related to immigration enforcement operations within the Eastern District of California.

Defendants object to the terms "immigration enforcement activities", "audio and video recordings", "body-worn camera footage, vehicle-mounted camera footage, drone footage, surveillance recordings, and handheld or stationary recordings", "taken received or otherwise

known", and "depicting referring to or otherwise capturing" as vague, overly broad, and subject to reasonable interpretation.

Defendants object to this RFP as unduly broad, overly burdensome, and disproportionate to the needs of the case to the extent it seeks documents from agencies other than U.S. Border Patrol and DHS Headquarters.

Defendants object to this RFP to the extent it requests documents and communications protected by attorney-client privilege, attorney work-product, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendant CBP provided Plaintiffs with Form I-213s on July 25, 2025, responsive to this RFP, Preliminary Injunction Order 4(d) 0001-0056. Defendants CBP and DHS agree to search for responsive documents based on negotiated search terms and parameters and will produce any additional nonprivileged documents that are responsive to this request and provide a privilege log identifying the responsive documents Defendants CBP and DHS are withholding or redacting based on privilege and a basis for invoking the privilege. Defendants will not re-produce anything already produced in compliance with the Preliminary Injunction.

**ICE**:

Responding non-party ICE object to this Request because it seeks documents concerning matters that are not within ICE's operational responsibility and, to the extent such documents exist, are more appropriately directed to U.S. Customs and Border Protection, including U.S. Border Patrol. The Request appears to concern the alleged involvement of former El Centro Sector Chief Patrol Agent Gregory Bovino. ICE further objects to the extent the Request seeks documents outside their possession, custody, or control, including records maintained by CBP or another DHS component.

ICE incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to this RFP as duplicative, overly broad, unduly burdensome, and not proportionate

to the needs of this case as it requests documents pertaining to operations outside of the Eastern District of California.

Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 55:**

Documents and Communications sufficient to show the discussions, attendees, and directives provided in a meeting on or about May 21, 2025, between the White House deputy chief of staff, Stephen Miller, the DHS secretary (Defendant Noem), and leaders of CBP, Border Patrol and/or ICE, regarding immigration enforcement activities, strategies, policies, goals, and directives.[10]

**Defendants' Objections and Response to Proposed Narrowed RFP No. 55:**

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large" and object to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

Defendants incorporate their objection to Plaintiffs' definitions of the terms "Documents" and "Communications."

Defendants object to this RFP on the grounds that the terms "immigration enforcement activities, strategies, policies, goals, and directives", "discussions, attendees, and directives" "leaders", and "activities strategies policies goals and directives" are vague, overly broad, and subject to reasonable interpretation.

Defendants object to this RFP to the extent it seeks documents not within the custody or control of U.S. Border Patrol or DHS Headquarters.

Defendants also object to this RFP as duplicative, irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the case particularly given the Court's May 23,

[10] For the avoidance of doubt, this RFP would include generally applicable directives or quotas for Operation at Large that apply regardless of the location in which a specific raid was carried out but would not include directives that applied ***solely*** to a location outside the Eastern District of California. For example, if a DHS directive or quota is clearly delineated as Los Angeles-specific (*e.g.*, if Mr. Miller instructed DHS to detain at least 100 immigrants in Los Angeles per day) it would not be responsive; if the directive/quota applied to both Los Angeles and Sacramento, or applied regardless of geographic location (*e.g.*, if Mr. Miller directed DHS to detain 3,000 immigrants per day nationwide as news reports suggest), it would be responsive because it would directly relate to the Operations performed in this District and that threaten the class in this case.

2025 Order, which directs the parties to engage in "limited discovery outside of the administrative record" "that is "consistent with the principles of relevance and proportionality" concerning Plaintiffs' allegations that Defendants engaged in a pattern and practice of Fourth and Fifth Amendment violations. ECF No. 56 at 11.

Defendants object to this RFP to the extent it requests documents and communications protected by the attorney-client privilege, attorney work-product doctrine, law enforcement privilege, presidential communications privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendants agree to search for responsive documents based on negotiated search terms and parameters and will produce any additional nonprivileged documents that are responsive to this request and provide a privilege log identifying the responsive documents Defendants are withholding or redacting based on privilege and a basis for invoking the privilege.

**ICE**:

Responding non-party ICE object to this Request because it seeks documents concerning matters that are not within ICE's operational responsibility and, to the extent such documents exist, are more appropriately directed to U.S. Customs and Border Protection, including U.S. Border Patrol, the Department of Homeland Security, and the White House. ICE further objects to the extent the Request seeks documents outside their possession, custody, or control, including records maintained by CBP or another DHS component.

ICE incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large" and objection to the extent this RFP seeks documents applicable to locations solely outside the Eastern District of California.

Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

**Proposed Narrowed RFP No. 56**[11]**:**

Documents and Communications sufficient to show any Memoranda of Understanding (MOUs) or similar agreements, guidance, memoranda, notices or other documents related to Operation at Large between DHS, CBP, and any state or local governmental and/or law enforcement entities that apply to immigration enforcement operations in the Eastern District of California.

**Defendants' Objections and Response to Proposed Narrowed RFP No. 56:**

Defendants incorporate their objection to Plaintiffs' definition of "Operation at Large."

Defendants object to this request as duplicative of RFP Nos. 14 and 38.

Defendants object to this RFP to the extent it seeks documents not within the custody or control of U.S. Border Patrol or DHS Headquarters.

Defendants object to "similar agreements, guidance, memoranda, notices or other documents" "related" "between" "state or local government" "law enforcement entities" "apply to" as vague, overly broad, and subject to reasonable interpretation.

Defendants object to this RFP to the extent it requests documents and communications protected by the attorney-client privilege, attorney work-product doctrine, law enforcement privilege, deliberative process privilege, or any other applicable privilege or protection.

Subject to and without waiving the objections above, Defendants agree to search for responsive documents based on negotiated search terms and parameters and will produce any additional nonprivileged documents that are responsive to this request and provide a privilege log identifying the responsive documents Defendants are withholding or redacting based on privilege and a basis for invoking the privilege.

**ICE**:

Responding non-party ICE incorporates Defendant's Preliminary Statement and General Objections in response to this Request. ICE also incorporates Defendants' objection to Plaintiffs' definition of "Operation at Large."

---

[11] Note Plaintiffs' sua sponte narrowed RFP No. 56 as it was not included in the list of RFPs for which the Court sustained Defendants' objections. However, narrowing RFP No. 56 was otherwise consistent with the Court's guidance so Plaintiffs have narrowed it in an effort to proactively address any proportionality concerns.

ICE objects to this Request to the extent it seeks documents or information outside ICE's possession, custody, or control.

ICE further objects to the Request to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, ICE states that it had specific involvement with one operation relating to this lawsuit that took place on July 17, 2025, in Sacramento, CA. ICE states that it was not the operational or arresting agency for the July 17th operation. ICE's involvement was limited to administrative support associated with detainee book-in processing and the processing of certain Forms I-213 and detainee processing generated in connection with arrests made by Border Patrol during that operation and was not present at the operation. To the extent ICE possesses nonprivileged documents specifically relating to its limited administrative processing role, ICE will conduct a reasonable search for responsive materials within its possession, custody, or control.

Accordingly, ICE defers to the named parties and agencies directly involved in any operation and enforcement activities not related to the July 17, 2025, operation in Sacramento, CA. Discovery is ongoing and ICE reserves the right to supplement or amend this Response in accordance with the applicable rules.

Dated: August 17, 2026

Respectfully,

SAMUEL P. GO
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

OLGA KUCHINS
Trial Attorney

AYSHA T. IQBAL
Trial Attorney

JAIME DURR
Trial Attorney

By: */s/ Tim Ramnitz*
TIM RAMNITZ
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-2686
tim.ramnitz@usdoj.gov

*Attorneys for Defendants*

# EXHIBIT B

KEKER
VAN NEST
& PETERS

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 391 5400
keker.com

**Natalie R. Heim**
(415) 962-8802
nheim@keker.com

August 31, 2026

Tim Ramnitz
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-2686
tim.ramnitz@usdoj.gov

Re: *United Farm Workers, et al. v. Markwayne Mullin, et al.*; Case No. 25-cv-246-JLT-CDB

Dear Mr. Ramnitz:

We write regarding Defendants' August 17, 2026 Objections and Responses to Plaintiffs' Further Narrowed Requests for Production ("August 17 R&Os"). The August 17 R&Os improperly assert numerous untimely objections that Defendants did not raise in their June 1 responses, identify in any meet and confer correspondence to date, or present in opposing Plaintiffs' motion to compel. They also reassert relevance, proportionality, and burden objections that the Court expressly overruled.

These requests were first served in June and December 2025. The parties have spent months conferring, twice briefed these issues, and argued them at two hearings. The issues have been exhaustively litigated, and the Court conclusively resolved the disputes as to Narrowed RFP Nos. 3, 4, 11, 23, 46, and 55. Defendants ignore that ruling and erect newfound hurdles to obstruct properly sought discovery.

Unfortunately, this is just the latest example of Defendants' improper obstruction. The last round of briefing on these exact requests was necessitated by Defendants' unreasonable reading of the Court's April Order and an "arbitrary desire to cling to a relevance objection, although [Defendants] ha[d]n't described a single way that such a relevance objection could operate on the facts of this case."). *See* 7.21.26 Hr. Tr. at 23:5-12. And, at the July 21, 2026, informal

discovery hearing Defendants repeatedly suggested that they have not even begun to *review* any documents that may be responsive to several of Plaintiffs' RFPs. *See* Tr. 12:112-13 ("We haven't seen these documents yet); 18:10-11 (same); 20:15-16 ("We just don't know what's in these, what's in these documents yet."). Defendants have likewise continued to delay with respect to the production of custodial ESI, despite the Court's April 17, 2026 Order, Dkt. 178, which ordered Defendants to "conduct a further ESI search and collection run and produce hit reports for 22 previously identified custodians[.]" Dkt. 178 at 11. This troubling pattern of obstruction not only unnecessarily delays discovery but requires Plaintiffs' counsel to expend excessive time and resources on unwarranted disputes.

Defendants should immediately withdraw their improper objections and serve amended responses confirming that they will produce nonprivileged documents responsive to the narrowed requests as written without qualification. Plaintiffs reserve all rights to seek relief if this issue is not promptly resolved, including recovery of fees incurred in addressing any further resistance to these requests.

## I. Defendants' Waived Objections Not Raised in Their June 1 Responses and Objections

A party waives objections that it does not timely assert in its discovery responses. *Smith v. Cnty. of Sacramento*, No. 2:19-CV-01426-TLN-CKD, 2021 WL 826238, at *1 (E.D. Cal. Mar. 4, 2021); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.") (discussing Rules 33 & 34).

Defendants' August 17 R&Os object for the first time that numerous ordinary words and phrases are vague, ambiguous, overbroad, or burdensome. For example, and without limitation:

- In response to RFP No. 3, Defendants newly object to "concerning," "created," "shared," "relied," "carry out," "enforcement operations," "conduct," "requisite level," and "cause."

- In response to RFP Nos. 4 and 11, Defendants newly object to "created, shared, relied on, endorsed, or approved by or with," "standard," "circumstances," and "factual or legal basis."

- In response to RFP No. 23, Defendants newly object to "involved in," "regarding," "administration of voluntary departure," "created, shared, relied on, endorsed, or approved by or with", "the process for securing a knowing and voluntary waiver of rights," and even the word "before."

- In response to RFP No. 55, Defendants newly object to "discussions, attendees, and directives" and "leaders."

These objections do not respond to new or different language. The challenged terms appeared in Plaintiffs' May 11 Letter (which contained Plaintiffs' initially narrowed RFPs), to which Defendants responded on June 1. Plaintiffs' June 4 revisions further narrowed the same requests; they did not introduce the supposed ambiguities Defendants now identify.

The same is true of RFP Nos. 27, 53, and 56:[1]

- In response to RFP No. 27 Defendants newly object to "planning," "implementation," "carrying out," and to each listed document type ("memos, briefing, emails, instructions, guidance, directives, PowerPoints, proof of concepts, preoperational briefing, operational plans and operational evaluations or reports").

- In response to RFP No. 53 Defendants newly object to terms such as "audio and video recordings", "body-worn camera footage, vehicle-mounted camera footage, drone footage, surveillance recordings, and handheld or stationary recordings", "taken received or otherwise known", and "depicting referring to or otherwise capturing."

- In response to RFP No. 56, Defendants newly object to terms such as "similar agreements," "related," "between," and "apply to."

These added vagueness, ambiguity, and burden objections to unchanged language are plainly waived. They are also baseless. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases.") (internal citation omitted). This is particularly true given Defendants themselves use several of the same words they claim to be vague and ambiguous in their own RFPs. *See, e.g.*, Defs. Request for Production No. 1 (seeking "video or audio recordings" "relating to immigration enforcement stops, encounters, or arrests"). Further, Plaintiffs have defined several of the disputed terms, such as "regarding" and "involving," in their originally served RFPs.

Defendants also newly limit several of their responses to documents held by USBP and "DHS ***Headquarters***" (rather than USBP and DHS generally); added request-specific objections based on privilege and burden; and have claimed ambiguous limitations based on ICE's asserted responsibilities and involvement. Each of these objections were available on June 1 and Defendants have waived their right to claim them.

## II. Defendants Also Waived Objections Not Raised in Opposing Plaintiffs' Motion to Compel

[1] Although Plaintiffs did not move on these Narrowed RFPs in the July briefing, it reserved all rights to do so based on Defendants' June 1st Objections. *See* Dkt. 194 at 4 n.2.

A party abandons objections that it does not rely on in opposing a discovery motion concerning the relevant requests. *See Puckett v. County of Sacramento*, No. 2:22-cv-0350-KJM-DB, 2024 WL 1332264, at *2 (E.D. Cal. Mar. 28, 2024) ("[O]bjections asserted in discovery responses but not raised in briefing on a discovery motion are also waived."); *Associated Indus. Ins. Co. v. San Joaquin Hills Transp. Corridor Agency*, No. 8:18-CV-01776-PSG-JDEX, 2023 WL 2347387, at *3 (C.D. Cal. Feb. 13, 2023) ("[O]bjections asserted in discovery responses but not raised in briefing on a discovery motion are also waived.")

Here, there is little question that Defendants waived all objections other than those based on relevance, proportionality, and burden with respect to Narrowed RFP Nos. 3, 4, 11, 23, 46, and 55. On July 17, 2026, the Parties submitted a joint letter brief, wherein Plaintiff asked the Court "to compel Defendants to produce responsive documents to Final Narrowed RFPs Nos. 3, 4, 11, 23, 46, and 55." Dkt. 194 at 12. Defendants opposed based on their objections to relevance, proportionality, and burden. *Id.* at 7-11. On July 21, 2026, the Court held a hearing on the motion. When the Court asked what "other objections" Defendants would assert, Defendants identified only their position that they should be permitted to withhold responsive documents they deemed irrelevant to operations in this District. *See* 7.21.2026 Hr. Tr. at 8:12-9:19. Accordingly, the Court overruled the only objections that Defendants maintained. *See* Dkt. 198 (7.23.26 Order) ("Defendants' anticipated objections to Plaintiffs' requests for production of documents ("RFP") Nos. 3, 4, 11, 23, 46, and 55 as reflected in the parties' joint submission (Doc. 194, Heim Decl., Exhibit A) on the grounds that the requests are not relevant or proportional to the needs of the case are OVERRULED consistent with this order.")

Thus, Defendants waived all objections it failed to raise in its Opposition including (but not limited to) Defendants' newly asserted objections based on the claimed vagueness or ambiguity of the requests; that the requests seek DHS/ICE materials; or any categorical claims of privilege.[2] *See Mollica v. Cnty. of Sacramento*, No. 2:19-CV-2017 KJM DB, 2021 WL 2417118, at *1 (E.D. Cal. June 14, 2021) ("The party resisting discovery 'has the burden to show that discovery should not be allowed, and the burden of clarifying, explaining, and supporting its objections."); *see also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 661 (D. Kan. 1999) ("That plaintiffs never raised the issue of privilege to the court has no materiality. The duty rested with defendants, not plaintiffs. If defendants intended to rely upon objections of privilege or work product, they had the burden to assert them in opposing the motion to compel. Their failure precludes them from now relying upon the objections. They abandoned them."); *Core Health & Fitness, LLC v. Transmedik Specialized Inc.*, No. 8:24-cv-02481-AB (JDE), 2025 WL 3691958, at *3 (C.D. Cal. Nov. 24, 2025) ("The Court previously

[2] Plaintiffs do not seek privileged documents and do not object to Defendants withholding or redacting documents based on a timely, properly substantiated claim of privilege identified in a privilege log with specificity. But Defendants' new, categorical privilege objections cannot be used to narrow the scope of their searches or excuse production without a particularized showing.

ordered Defendants to produce the records responsive to these requests . . . . It is too late now to raise objections to the scope of the discovery requests.”).

**III. The Court Overruled Defendants’ Relevance and Proportionality Objections**

In addition to re-asserting and newly asserting objections that have been waived, Defendants’ August 17 R&Os continue to assert objections that have been decisively ***overruled.***

In its July 23 Order, the Court unambiguously held that Narrowed RFP Nos. 3, 4, 11, 23, 46, and 55 seek relevant information and that Plaintiffs’ further narrowing resolved the proportionality concerns underlying its earlier ruling. Dkt. 198 at 4-5. The Court found that Defendants had not presented, in their briefing or at the hearing, any meritorious objection to the Narrowed RFPs. *See* 7.21.26 Hr. Tr. at 23:5-12 (“I would have expected three months after we were gathered here on a discovery dispute that some effort has been made to flesh this out a bit. But instead, I’m just left with what, in some respects, is an arbitrary desire to cling to a relevance objection, although you haven’t described a single way that such a relevance objection could operate on the facts of this case.”). It therefore explicitly overruled Defendants’ relevance and proportionality objections. Dkt. 198 at 5.

Defendants nevertheless continue to object that the six RFPs are irrelevant, overly broad, unduly burdensome, and disproportionate. *See, e.g.*, August 17th R&Os at 3-6, 8, 10-13, 15, 24. Defendants’ continued assertion of overruled objections is improper and should be immediately withdrawn. *See Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-CV-01511-WYD-BNB, 2014 WL 1515588, at *1 (D. Colo. Apr. 17, 2014) (“Continuing to assert objections previously overruled certainly is improper, and defense counsel knows it.”).

**IV. The Court’s Reference to “Anticipated” Objections Did Not Invite New Objections**

The reference to Defendants’ “anticipated” objections in the Court’s July 23 Order does not preserve objections Defendants never raised. The word “anticipated” reflected that Defendants told the Court they had not yet completed their review of documents or withheld particular documents based on their relevance objection. *See* 7.21.26 Hr. Tr. At 12:13 (“We haven't seen these documents yet.”). The Court nevertheless ruled on the objection to the requests themselves, explaining that it was “not ruling document-by-document” but was “ruling on the objection as asserted in response to the discovery request.” Dkt. 198 at 3; Hr. Tr. at 24:8-16 (“I’m preempting the dispute by asking how a training document about the requisite level of suspicion or cause to conduct a stop or arrest could not be relevant. How could you assert a relevance objection to that? And my fear is that, ***once the production occurs, presumably at some point in the future, in the coming months, you’re going to assert a relevance objection***. I’m going to have the same question. How could it possibly -- I’m not, I’m not ruling document-by- document. I’m ruling on the objection as asserted in response to the discovery request.”).

The “anticipated” language of course did not reopen the time for Defendants to formulate new objections after the motion to compel was litigated and decided.

**IV. Defendants May Not Condition Their Production on the Negotiation of Search Terms**

Defendants' agreement to search only "based on negotiated search terms and parameters" improperly conditions their obligation to search for responsive documents. *See, e.g.*, August 17 R&Os at 9.

The ESI Order confirms that the parties have a responsibility to search "***custodial and non-custodial repositories*** at issue." Dkt. 183 at 11 (emphasis added). Defendants therefore have a parallel obligation to identify and search responsive non-custodial sources. In addition, the ESI Order acknowledges that certain discovery requests may necessitate an alternative search methodology, such as targeted searches and collection for particularized documents. *See id.*; *see also, e.g.,* Narrowed RFP No. 55 (seeking "discussions, attendees, and directives provided in a meeting on or about May 21, 2025"). Defendants cannot limit their production of documents by proposing a set of limited search terms and custodians that necessarily excludes entire categories of relevant and responsive documents. *See Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 801 (W.D. Wash. 2020) (noting party's position "that if the information was stored electronically, it need not be collected until the parties agreed on search terms pursuant to the ESI Agreement" relied on an "incorrect interpretation of a responding party's duty under Rule 34 and the ESI Agreement" and "[a] reasonably accessible electronic document that is responsive to a discovery request … must be produced without regard to the parties' agreement to use search terms.").That limitation is particularly unreasonable here given Defendants' identification of only ***one*** DHS custodian for requests directed specifically to DHS. Defendants' identification of a single DHS custodian, combined with their express limitation of DHS-specific searches to negotiated search terms and parameters, does not provide a reasonable basis to conclude that Defendants will search all sources likely to contain responsive DHS documents.

***

Accordingly, please serve amended responses by no later than **September 9, 2026**, that:

1. Withdraw objections based on relevance, overbreadth, burden, or proportionality, which were already overruled by the Court as to Narrowed RFP Nos. 3, 4, 11, 23, 46, and 55;

2. Withdraw objections not timely asserted or preserved, including the newly asserted vagueness, overbreadth, burden, DHS/ICE-related, and categorical privilege objections;

3. Confirm that Defendants will conduct reasonable searches for and produce all nonprivileged documents responsive to the RFPs as written, including documents located in non-custodial sources, without conditioning production on the negotiation of search terms; and

4. Identify whether Defendants are withholding any documents based on any objection they continue to maintain and, if so, state the specific objection and RFP.

5. State Defendants' basis for adding new objections to unchanged language in the requests and after the Court ruled on Plaintiffs' Motion to Compel production and provide an explanation as to why those objections were not raised previously.

Plaintiffs reserve all rights to challenge the sufficiency of Defendants' searches or productions, seek enforcement of the Court's Order, or pursue other appropriate relief.

Sincerely,

KEKER, VAN NEST & PETERS LLP

Natalie Heim

Natalie R. Heim

NRH:jml

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED FARM WORKERS, *et al.*, : Case No. 1:25-cv-00246-JLT-CDB

Plaintiffs, : Bakersfield, California
Tuesday, July 21, 2026
v. : 10:04 a.m.

KRISTI NOEM, *et al.*, : INFORMAL CONFERENCE RE:
DISCOVERY DISPUTE

Defendants. :

: : : : : : : : : : : : : : : :

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER D. BAKER,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (via videoconference):

For the Plaintiffs: Keker, Van Nest & Peters LLP
BY: CHRISTOPHER S. SUN, ESQ.
NATALIE HEIM, ESQ.
633 Battery Street
San Francisco, CA 94111

ACLU of Southern California
BY: MAYRA B. JOACHIN, ESQ.
Post Office Box 811370
Los Angeles, CA 90081

Court Recorder: COURT PERSONNEL

Transcript prepared by: JANICE RUSSELL TRANSCRIPTS
1418 Red Fox Circle
Severance, CO 80550
(757) 422-9089
trussell31@tdsmail.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

that's at issue here, true?

MR. RAMNITZ: Correct.

THE COURT: No. 23 is slightly different. No. 23 is a, I read to be a two-part request. The first part in the first sentence, or the first three lines specifically, calls out the Eastern District of California pursuant to Operation Return to Sender or the Sacramento Raid. But separately then, documents sufficient to show the administration of voluntary departure. That's alleged in the complaint. There's no dispute that that's relevant to the claims, true?

MR. RAMNITZ: Correct.

THE COURT: So what is, what, what is the defense lingering objection to just saying the defense will produce documents responsive to this request? What, what other object, what objections would the defense assert?

MR. RAMNITZ: We have said in the Exhibit E and emails that we will produce Operation At Large policy documents relevant to the operations in EDCal. And I think we got to the point in those exhibits where there's a timeline starting in May, but you get to that point in June with the further narrowed RFPs and there's no dispute at that point. They have to be relevant to EDCal. Plaintiffs seem to agree with that position in those communications at that point.

So what the defendants are disputing at that point is plaintiffs' assertion that defendants are going to make

arbitrary relevance calls about these Operation At Large documents and whether they are, in fact, relevant to EDCal. And so you see in Page 2 of their brief, they're asking for what seems like a bright-line rule that certain of these, certain Operation At Large documents that fit certain parameters will be necessarily deemed relevant. And that's documents that do not have a geographic limit they want necessarily deemed relevant. And that's the fine point. I think that's the very narrow issue that came down to, ultimately, after those months of that back and forth.

And that's what the defendants push back on because we believe as a producing party, we go document-by-document. We determine the relevance of a document. We are not familiar, or I don't see case law supporting the, a bright-line rule that before production even occurs, you can have a certain subset of documents automatically deemed relevant. And we believe there's not support for that. And that's what we're pushing back on when it got down to the, after the, the narrow point of this case. That, that's how defendants view it, at least.

THE COURT: So returning to No. 4, we've already established there's no dispute that documents concerning guidance and policy about stopping and detaining an individual during Operation at Large is relevant.

MR. RAMNITZ: We have agreed -- you saw Exhibit E and the emails. We have said that we will produce policy documents

So we say there's no authority for taking that out of the producing party's hands.

THE COURT: And the same question for No. 23, which is, can you think of a document that would generally involve guidance or policy about administering voluntary departure in connection with Operation At Large in general, but which you would consider to be not responsive or not discoverable because it's not relevant to immigration enforcement operations in EDCA?

MR. RAMNITZ: Cannot think of a document, but that does not mean it does not exist.

THE COURT: All right.

Ms. Heim, any response before I turn to the three remaining requests that I haven't touched on? That's 3, 46, and 55.

MS. HEIM: Yes, your Honor.

I think you've hit on the, the problem, as we see it, and the difficulty is that defendants have never agreed clearly to produce documents in response to the narrowed RFPs as they're written. So we don't understand what work the added language every time they respond, "as long as it's appplical, applicable, operative, and relevant to this District" is adding other than, potentially, a limit that it has to mention Sacramento on its face. And we don't think that is the right scope for the discovery since we know it was a nationally

planned operation.

Once the parties agree on the scope and the request itself, we don't dispute that defendants will make the responsiveness calls. But we need clarity and agreement on the scope of the request at the onset.

THE COURT: All right.

Turning to No. 3, Mr. Ramnitz, this could be the same issue, but the Requested No. 3 first directs production of nondescript training materials. In the second sentence, it, the plaintiffs have articulated specific topics, how to carry out enforcement operations; officer conduct during such enforcement operations; requested level of suspicion to cause, or cause to conduct a stop and arrest; what to do once a stop is initiated; how to document a stop; determination of immigration status; or whether someone is in the U.S. in violation of the immigration law.

Do you dispute that all of these subjects are at least, generally, at issue and relevant to the claims as articulated in the complaint?

MR. RAMNITZ: No.

THE COURT: Tell me more about that.

MR. RAMNITZ: Well, as Ms. Heim has mentioned, she said that what they had the problem -- we're talking about here, the dispute about these RFPs, is how to do this Operation At Large determination. And Ms. Heim said that we need,

according to defendants, we need a document that says Sacramento on it before we deem it relevant. And that's not what we're arguing. We're not saying that it has to say Sacramento on it or even Return to Sender. We're just saying we haven't seen these documents yet.

And so when we agree to produce these Operation At Large documents, and I think we, we go through the RFPs and what they're asking for, apart from this operational limitation or this Op, Operation At Large, that's, the dispute here really is that narrow question. That's what you see in the correspondence in Exhibit E, is whether or not they get to have this idea that if it doesn't have a geographic scope in the document, then that's automatically relevant or not. Because we're not saying that it has to say Sacramento. And that's just, want to reiterate that. We're not saying it has to say Return to Sender. You could have policy documents that don't say those things, but we look at them and we say, "Yes, that's relevant to warrantless arrest as executed in Sacra, Sacramento."

What we're saying is we don't want our hands bound by some automatic rule before we even see these documents. And that's the narrow issue, is we're going RFP-by-RFP, but when you look at the dispute that's before the Court and their let, and how we got here through the let, letters and correspondence, that's really the narrow issue. We're, we

good rest of your week.

MS. HEIM: Thank you.

MR. RAMNITZ: Thank you, your Honor.

THE COURT: You're welcome.

MR. SUN: Thank you, your Honor.

(Proceedings concluded at 10:41 a.m.)

CERTIFICATE

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Janice Russell* July 23, 2026

Janice Russell, Transcriber Date

# EXHIBIT D

**From:** Reaghan E. Braun
**To:** Iqbal, Aysha T. (CIV); Natalie R. Heim; Ramnitz, Tim (CIV); Julia L. Greenberg; Jason George; Christina Lee; Bree Bernwanger; Mayra Joachin; Minju Cho; Franco Muzzio
**Cc:** Go, Samuel (CIV); Kuchins, Olga Y. (CIV); Grant, Nicole P. (CIV); Durr, Jaime (CIV)
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice
**Date:** Friday, May 22, 2026 9:46:07 PM
**Attachments:** Pltfs Proposed Search Terms (RFP Set 1) - 5.22.26(6215461.1).docx
Pltfs Proposed Search Terms (RFP Set 2) - 5.22.26(6215460.1).docx

---

Counsel,

We write to follow up regarding our discussion of search terms during our 5/21 meet and confer. Outlined below are the topics covered during our discussion, along with our proposal for next steps. Please confirm Defendants' position as to the items listed below by Friday May 29.

1. **RFP Set 1 Search Terms**

Based on our discussion yesterday, we now understand that the full set of custodial documents for the relevant time period has not yet been ingested into RelOne from Purview. We propose the following order of operations for search terms in RFP Set 1 in light of that information.

First, for the three terms that the Court already ordered Defendants to run / where we have hit reports, Plaintiffs request that Defendants confirm the terms for which they will start review and production.

- **Term 1 ("Operation at Large" OR OAL OR OpAtLarge OR #OpAtLarge).** Please confirm Defendants' position on reviewing and producing the documents that hit on this term, or a subset thereof.
- **Term 6 ("voluntary departure").** Defendants agreed to confirm whether they will review and produce documents for this term. Please provide Defendants' position.
- **Term 12 ("reasonable suspicion").** Defendants acknowledged willingness to review and produce a certain subset of this term, and we have proposed an initial narrowing of this term.

| | |
|---|---|
| 12 | ("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "investigative detent*~~ion~~" OR "investigative detentions" OR "detentive stop*" ~~OR "detentive stops"~~ OR "terry stop*" OR ~~"terry stops"~~ OR "flight risk" ~~OR immigr*~~ OR deport* OR remov* ~~OR illegal* OR alien* OR crim* OR smugg* OR border*~~ OR arrest* OR detain* OR detent* OR stop* ~~OR catch*~~ OR warrant* OR "Title 8") w/15~~20~~ (train* OR polic* OR practice OR memo* OR procedure*) |

We understand from Aysha's email today, however, that the hit reports that we received for this term may not be accurate. Please (1) provide the corrected hit counts on the original term; (2) provide a hit count on the revised narrowed version of the narrowed term above (changes shown in red); and (3) confirm whether Defendants would agree to review and produce documents responsive to the narrowed term.

Second, for Plaintiffs' proposed additional, narrowed terms (and the portion of the ordered terms Defendants will not agree to review in the first instance), we discussed yesterday that the most efficient way to provide hit counts on the proposed terms would likely be for Defendants to run broader "superset" terms in Purview and upload the results of that search into RelOne before running more targeted terms with connectors for hit reports. In that regard, Plaintiffs have provided in the attached document both (1) a set of Purview terms to govern the initial pull of documents in order to create a superset to be ingested into RelOne, and (2) more targeted terms with connectors to be used on the superset of documents ingested into RelOne. Please confirm Defendants' position as to the proposed terms in the attached document.

As noted during our call, Plaintiffs agree that Defendants' agreement to run broader Purview terms for the purpose of culling to a superset of documents in RelOne is not a concession of relevance or proportionality and is intended solely as a means of narrowing the broader universe of custodial files to be uploaded to RelOne so that hit counts can be run efficiently.

Third, for Defendants' originally agreed terms for RFP Set 1, in light of Judge Baker's order, please confirm that Defendants are reviewing hits on those agreed terms for the full time period at issue (November 2024 to present).

2. **RFP Set 2 Search Terms**

**Defendants' Proposed Terms.** We understand from our conversation yesterday that Defendants have not yet ingested any custodial files for the custodians identified in Defendants' RFP Set 2 list of custodians and thus have not yet run any of their proposed terms for RFP Set 2. Please confirm that Defendants will run Defendants' proposed search terms, collect, and begin review and production of documents for those terms by no later than June 12.

**Plaintiffs' Proposed Additional Terms.** Similar to Set 1 above, Plaintiffs propose both (1) a set of Purview terms to govern the initial pull of documents, and (2) more targeted terms with connectors that will be run on that superset of documents after they are ingested into RelOne. Please confirm Defendants' position as to the proposed additional terms in the attached document.

3. **Purview Updates**

Defendants noted that they may have access to an updated version of Purview and agreed to confirm. Please confirm which version of Purview Defendants have access to, and whether the technical details and limitations discussed in their declaration, Dkt. 163, Ex. H have changed. To the extent this information has changed, please let us know what limitations, if any, currently exist for running hit counts on terms with connectors.

4. **Hit Reports**

As noted above, we are in receipt of your 5/22 email regarding technical issues related to the hit reports Defendants provided on 5/15. Plaintiffs reserve all rights to modify the search term proposals discussed herein based on updated hit reports. Please confirm that Defendants will provide updated, accurate hit reports as soon as practicable and no later than May 29. In doing so, please also provide a hit report for Plaintiffs' modified Term 12, as discussed above.

In addition, we discussed de-duplication of hit reports and request answers to the following questions:

- First, are hit reports de-duplicated across custodians? For example, if multiple custodians are recipients of the same email, is that counted as a single hit or multiple hits?
- Second, we have proposed various "additional" terms in addition to those Plaintiffs have agreed to for RFP Sets 1. When running hit reports, Plaintiffs request that Defendants remove hits for documents Defendants have already agreed to review for production because they hit on previously agreed terms.

5. **Custodians**

Defendants confirmed that Corey Lewandowski will be included in the list of custodians provided for RFP Set 1, and that they are continuing to investigate a second DHS custodian for RFP Set 2. Please confirm Defendants' position as to DHS custodians for Set 1 and Set 2.

Thanks,
Reaghan

**Reaghan E. Braun**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8891 direct | 415 391 5400 main
rbraun@keker.com | vcard | keker.com
*pronouns: she, her, hers*

# EXHIBIT E

**From:** Ramnitz, Tim (CIV)
**To:** Reaghan E. Braun
**Cc:** Kuchins, Olga Y. (CIV); Iqbal, Aysha T. (CIV); Natalie R. Heim; Julia L. Greenberg; Jason George; Christina Lee; Bree Bernwanger; Mayra Joachin; Minju Cho; Franco Muzzio; Go, Samuel (CIV); Grant, Nicole P. (CIV); Durr, Jaime (CIV)
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice
**Date:** Tuesday, July 7, 2026 1:37:20 PM

**[EXTERNAL]**

Please see responses in green below.

**From:** Reaghan E. Braun <RBraun@keker.com>
**Sent:** Monday, July 6, 2026 9:10 PM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Counsel,

Thanks for sending your response to our proposed search terms. Please find attached Plaintiffs' proposed search terms for RFP Sets 1 and 2. The attached documents incorporate (i) Defendants' responses, and (ii) Plaintiffs' responses and additional proposed revisions (reflected in redline). Terms for which the parties are in agreement are highlighted in green.

In addition, included below are a few follow-up questions and requests for clarification.

- Custodians (RFP Sets 1 and 2).
  - You indicated DHS intends to respond to search terms separately. Plaintiffs disagree that search terms should be negotiated piecemeal, and object to Defendants' continued delay in providing a complete response to Plaintiffs' proposed terms. Please provide DHS's proposed search terms and substantive responses to Plaintiffs' proposed terms no later than Thursday (July 9, 2026) and explain the basis for Defendants' position that DHS search terms must be negotiated separately.

    Defendants are conferring with DHS and will respond as soon as possible.

  - Setting aside DHS, RFP Set 1 and Set 2 custodians include CBP and USBP, and RFP Set 2 custodians also include ICE. However, Defendants' responses to both Set 1 and Set 2 terms only explicitly reference CBP. Please confirm whether the responses you provided also cover USBP and ICE custodians. If they do not, please explain the basis and provide the agencies' positions as to Plaintiffs' proposed terms no later than July 9, 2026.

    Defendants are conferring with their clients and will respond as soon as possible.

- Search Term Process.
  - Defendants have not clearly confirmed their agreement with the two-step process, as discussed in Plaintiffs' June 18 email below. Please confirm or immediately notify us if our understanding of the parties' agreement to conduct searches according to this process is incorrect.

    Defendants confirm their agreement with a two-step search process: (1) negotiating "Superset Terms" and then, after agreement on these terms, running the "Superset Terms" in Purview, and (2) ingesting the Superset dataset into CORA (DOJ's Relativity), then after negotiating more targeted search terms, running the agreed-to targeted search terms over that Relativity dataset.

  - In that same June 18 email, Plaintiffs also stated our understanding that Defendants would prefer to agree upon a final set of "Superset Terms" before running additional narrowed searches in RelOne, and that Plaintiffs are willing to proceed on that basis, provided that the parties move this negotiation forward at a reasonable pace. In order to efficiently move this process forward, please provide your availability to meet and confer on any remaining issues with respect to the "Superset Terms."

    Defendants are available to meet and confer next Wednesday or Thursday. Perhaps Wednesday at 2 pm EST?

  - Defendants' responses indicate that they propose using CORA. Please explain how Defendants plan to use CORA and if this is intended to be a part of the search process for only the specific term for which Defendants' response references CORA, all terms, or any subset thereof. Please provide additional information as to how Defendants propose integrating CORA into their search process so that Plaintiffs can evaluate Defendants' proposal.

> CORA is DOJ's version of Relativity. Defendants use CORA for document review and production once the relevant data from a collection is ingested into CORA. When we talk about the two-step process above, CORA is used for step two. Defendants will run the more narrow search in CORA, over the ingested superset data, provide STRs from that search through CORA, and ultimately review and produce documents from the agreed upon searches through CORA. CORA is not RelOne, since RelOne is a cloud-based version of Relativity, and CORA is a Relativity version that is based on servers.

Please provide a complete response on behalf of all Defendants no later than July 9, 2026, and promptly provide your availability to meet and confer.

Thanks,
Reaghan

**Reaghan E. Braun**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8891 direct | 415 391 5400 main
rbraun@keker.com | vcard | keker.com
*pronouns: she, her, hers*

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Thursday, June 25, 2026 1:57 PM
**To:** Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

Hi Reaghan – DHS intends to negotiate separate search terms for its custodian. Defendants are working on a set of proposed search terms for DHS but, meanwhile, the parties can continue to move forward negotiating search terms for CBP.

Thanks

Tim

**From:** Ramnitz, Tim (CIV)
**Sent:** Wednesday, June 24, 2026 5:47 PM
**To:** 'Reaghan E. Braun' <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; 'Natalie R. Heim' <NHeim@keker.com>; 'Julia L. Greenberg' <JGreenberg@keker.com>; 'Jason George' <JGeorge@keker.com>; 'Christina Lee' <CLee@keker.com>; 'Bree Bernwanger' <bbernwanger@aclunc.org>; 'Mayra Joachin' <mjoachin@aclusocal.org>; 'Minju Cho' <mcho@aclunc.org>; 'Franco Muzzio' <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Hi Reaghan – attached please find substantive responses to Plaintiffs' proposed search terms.

Also, Defendants anticipate providing a response to Plaintiffs' June 5, 2026 Discovery Letter by tomorrow.

Thanks,

Tim

**From:** Ramnitz, Tim (CIV)
**Sent:** Tuesday, June 23, 2026 4:52 PM
**To:** Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Hi Reaghan – apologies for not responding earlier. Your prior email arrived after hours before a federal holiday. We have been working with our client agencies on substantive responses since receiving the June 15 STR, and anticipate getting substantive responses to you by tomorrow, June 24.

Thanks

Tim

**From:** Reaghan E. Braun <RBraun@keker.com>
**Sent:** Monday, June 22, 2026 7:32 PM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Tim,

We write to follow up on the below. We still have not received a response, nor have Defendants provided any indication as to *when* Plaintiffs can expect to receive a substantive response. Defendants' continued delay is prejudicing Plaintiffs.

We again request that Defendants promptly provide a substantive response to Plaintiffs' proposed search terms **no later than end of day tomorrow** (June 23, 2026).

Thanks,
Reaghan

**Reaghan E. Braun**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8891 direct | 415 391 5400 main
rbraun@keker.com | vcard | keker.com
*pronouns: she, her, hers*

**From:** Reaghan E. Braun
**Sent:** Thursday, June 18, 2026 4:11 PM
**To:** 'Ramnitz, Tim (CIV)' <Tim.Ramnitz@usdoj.gov>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Tim,

Thanks for sending the STR for the modified and narrowed version of Term 12.

We understand from your response that Defendants confirm their agreement with the two-step search process Plaintiffs proposed—*i.e.*, first running the "Superset Terms" in Purview and then ingesting this dataset into RelOne, followed by the parties' negotiation and use of more targeted search terms within that RelOne dataset. Please let us know immediately if that understanding is incorrect.

We also understand from your email that Defendants would prefer to agree upon a final set of "Superset Terms" before running additional narrowed searches in RelOne. Plaintiffs are willing to proceed on that basis, provided that the parties move this negotiation forward at a reasonable pace. Defendants still have not provided a substantive response to Plaintiffs' proposed "Superset Terms" for RFP Sets 1 or 2, and Plaintiffs cannot wait indefinitely. Plaintiffs proposed these terms nearly a month ago. Accordingly, please provide a substantive response to Plaintiffs' proposed search terms **by the end of this week** so that the parties can promptly meet and confer on any remaining issues with respect to the "Superset Terms."

Thanks,
Reaghan

**Reaghan E. Braun**

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8891 direct | 415 391 5400 main
rbraun@keker.com | vcard | keker.com
pronouns: she, her, hers

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Wednesday, June 17, 2026 1:38 PM
**To:** Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** FW: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

Hi Reaghan – please find Defendants' responses in green below.

Thanks

Tim

**From:** Reaghan E. Braun <RBraun@keker.com>
**Sent:** Tuesday, June 16, 2026 12:31 AM
**To:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>
**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Counsel,

Thank you for providing an updated hit report for the three court-ordered search terms. However, the report does not include hit counts for the modified and narrowed version of Term 12 that Plaintiffs proposed on May 22. Please rerun the report using the narrowed version of Term 12 and provide the resulting hit counts no later than **Thursday, June 18**.

> Defendants had not agreed to provide an additional STR for Plaintiffs narrowed version of Term 12. But with compliance with the Court-ordered STR complete, Defendants have run this requested hit report with the narrowed version of Term 12, attached. *See* ECF No. 183, V.C.

In addition, Defendants have yet to provide a substantive response to the other issues raised in Plaintiffs' May 22 correspondence (attached). We need a response without further delay. Nearly a year has passed since Plaintiffs served their initial RFPs, and Defendants have yet to agree to a workable search process, conduct reasonable searches of custodial documents, and produce responsive documents. Indeed, despite extensive meet-and-confer efforts, the parties remain at the threshold stage of negotiating search terms and Defendants took nearly two months to provide hit reports for only three court-ordered search terms. The ongoing delay is prejudicing Plaintiffs.

Most importantly, Plaintiffs require immediate confirmation as to whether Defendants will agree to the two-step search process outlined in our May 22 correspondence:
1. Run the proposed "Superset Terms" for RFP Sets 1 and 2 in Purview; and
2. Upload the resulting document population into RelOne so that the parties can negotiate and test more targeted search terms within that review set using RelOne's functionality.

As discussed previously, we understand this to be the most efficient and practical approach for negotiating search terms, exchanging hit counts, and identifying responsive documents. Under this process, Defendants would initially apply broader "Superset Terms" in Purview to create a review population, after which the parties could use RelOne to refine that population through more targeted searches and connectors to ensure that the searches are proportional to the needs of the case. To avoid any misunderstanding, and as Plaintiffs have previously made clear, Defendants' agreement to run broader Purview terms for purposes of creating a review population in RelOne would not constitute any concession as to relevance or proportionality. Rather, it would serve solely as a mechanism for narrowing the broader universe of custodial files so that targeted searches can be developed and search-term negotiations can proceed efficiently. For your convenience, I have copied below the proposed "Superset Terms" for RFP Sets 1 and 2. These proposed terms incorporate the three search terms Judge Baker previously ordered Defendants to run.

Please confirm by **Thursday, June 18**, whether Defendants will agree to run the proposed "Superset Terms" and transfer the resulting

documents into RelOne so that the parties can begin negotiating targeted search terms. If we do not receive confirmation by that date, Plaintiffs intend to raise the issue with the Court.

**Proposed RFP Set 1 Superset Terms**

| **Superset Search Terms for Plaintiffs' First Set of RFPs** |
|---|
| **Search Term** |
| “Operation at Large” OR OAL OR OpAtLarge OR #OpAtLarge |
| “enforcement operation*” OR “immigration enforcement” OR raid* |
| Bakersfield OR Bako OR Kern OR “Los Angeles” OR LA OR Riverside OR Ventura OR “Orange County” OR “Santa Barbar” OR Bernardino OR Fresno OR Stockton OR Sacramento |
| “El Centro” OR Bovino OR “Gregory Bovino” OR “premier sector” OR “#premiersector” |
| Muster* OR train* OR polic* OR practice* OR memo* OR procedure* OR guidance* |
| enforce* OR stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR “investigative detention” OR “investigative detentions” OR “detentive stop” OR “detentive stops” OR “terry stop” OR “terry stops” OR “roving patrol stop” |
| race OR ethnicity OR nationality OR demographic* OR immigr* OR illegal* OR alien* OR latin* OR hispan* OR Mexic* OR brown* OR black* OR “day labor*” OR farm* OR agri* OR field* OR “bad people” OR “bad things” OR “bad hombre*” OR smugg* OR crim* |
| Goal OR quota OR “minimum number” |
| “voluntary departure” OR VD OR AVD OR “voluntary removal” OR I-826 |
| sanctuary OR “executive order” OR “executive orders” OR EO OR EOs OR “fox news” OR “ridealong” OR “ride along” |
| “reasonable suspicion” OR “Fourth Amendment” OR “4th Amendment” OR “Fifth Amendment” OR “5th Amendment” OR 1357 OR “probable cause” OR “flight risk” OR “likelihood of escape” OR warrant* OR “Title 8” OR warrantless |

**Proposed RFP Set 2 Superset Terms**

| **Superset Search Terms for Plaintiffs' Second Set of RFPs** |
|---|
| **Search Term** |
| Home Depot OR Ross |
| “Operation at Large” OR OAL OR OpAtLarge OR #OpAtLarge |
| “enforcement operation*” OR “immigration enforcement” OR raid* |
| “Los Angeles” OR LA OR Riverside OR Ventura OR “Orange County” OR “Santa Barbar” OR Bernardino OR Fresno |
| “El Centro” OR Bovino OR “Gregory Bovino” OR “premier sector” OR “#premiersector” OR Miller OR Noem OR Beckwith |
| Muster* OR train* OR polic* OR practice* OR memo* OR procedure* OR guidance* |
| enforce* OR stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR “investigative detention” OR “investigative detentions” OR “detentive stop” OR “detentive stops” OR “terry stop” OR “terry stops” OR “roving patrol stop” |
| race OR ethnicity OR nationality OR demographic* OR immigr* OR illegal* OR alien* OR latin* OR hispan* OR Mexic* OR brown* OR black* OR “day labor*” OR farm* OR agri* OR field* OR “bad people” OR “bad things” OR “bad hombre*” OR smugg* OR crim* |
| Goal OR quota OR “minimum number” |
| “voluntary return” OR “voluntary departure” OR VD OR AVD OR “voluntary removal” OR I-826 |
| sanctuary OR “executive order” OR “executive orders” OR EO OR EOs OR “fox news” OR “ridealong” OR “ride along” |
| “reasonable suspicion” OR “Fourth Amendment” OR “4th Amendment” OR “Fifth Amendment” OR “5th Amendment” OR 1357 OR “probable cause” OR “flight risk” OR “likelihood of escape” OR warrant* OR “Title 8” OR warrantless |

As Defendants’ emails on May 22, June 3, June 5, and June 11 explained, the STR produced on May 15 to comply with the Court’s April 17, 2026 order was inadvertently inaccurate due to the vast size of the dataset and, since then, Defendants have been diligently working through technical hurdles in order to produce an accurate STR. The accurate STR was provided to both Defendants and Plaintiffs (via Defendants) Monday, June 15. As Defendants have also noted, Defendants reached out to Plaintiffs in the first instance, on April 23, 2026, to address the Court’s April 17, 2026 order and stated that Defendants were working on producing the ordered hit report. Meanwhile, the parties have had one meet and confer, on May 21, 2026, since the Court’s April 17, 2026 order, that appeared to have been productive and to have moved the parties forward on negotiations, but which have, since May 22, been pending correction of the ordered STR. Defendants understand Plaintiffs believe this process has not been sufficiently expedient. But the process has nonetheless been diligent, without undue delay, and in keeping with Judge Baker’s order.

Defendants are reviewing the updated STR, received on June 15, to prepare substantive responses to Plaintiffs’ proposed search terms, and in preparation for a second meet and confer subsequent to Judge Baker’s April 17, 2026 order.

But as Defendants previously explained, Defendants do not want to run a “superset terms” search until the parties evaluate the updated STR and determine whether they agree upon any additional search terms. Defendants will not agree to multiple rounds of searches: one conducted now for Defendants’ proposed search terms, a second round for any additional terms that the parties agree upon after evaluation of the STR, and a third should the parties submit any additional disputes to the Court and the Court orders additional search terms. We can eliminate the second search if we merely wait until the parties evaluate the STR and determine whether they agree upon any additional search terms.

Over the course of the past year, Defendants have proposed and conducted reasonable searches, begun production of responsive documents, and simultaneously participated in ongoing negotiations in a continued effort to incorporate Plaintiffs’ recommended approach, all the while litigating discovery disputes, motions, and an appeal. If the parties’ agreed upon, workable search process consisting of the search and ingestion of the “Superset Terms” dataset coupled with the final agreed upon narrowed search terms is something Plaintiffs reject, please let us know.

Best,
Reaghan

**Reaghan E. Braun**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8891 direct | 415 391 5400 main
rbraun@keker.com | vcard | keker.com
*pronouns: she, her, hers*

**From:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>
**Sent:** Monday, June 15, 2026 9:36 AM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>
**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

Hi Reaghan,

Thank you for your patience. Please find attached the accurate hit report, per the Court’s order (ECF No. 178), and the pivot table.

Best,
Olga

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Thursday, June 11, 2026 3:22 PM
**To:** Reaghan E. Braun <RBraun@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>
**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Hi Reaghan - there is an update on the STR but, unfortunately, it is that Monday or Tuesday next week is more likely for the STR, than tomorrow Friday June 12, although tomorrow is still a possibility. Our lab has been working diligently, utilizing all available resources, but is still processing the data.

Thanks

Tim

**From:** Ramnitz, Tim (CIV)
**Sent:** Friday, June 5, 2026 7:24 PM
**To:** 'Reaghan E. Braun' <RBraun@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>

**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Hi Reaghan – please find our responses in green, below.

---

**From:** Reaghan E. Braun <RBraun@keker.com>
**Sent:** Thursday, June 4, 2026 8:01 PM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>
**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Tim,

Thanks for your response. We appreciate the additional information provided regarding Purview (item 3) and deduplication of hit reports (item 4), and your confirmation that Corey Lewandowski is a DHS custodian for both RFP Set 1 and RFP Set 2 (item 5).

**Hit Reports.**
Regarding hit reports (discussed below at 1, 2, and 4), it has already been nearly two weeks since Defendants notified Plaintiffs of the potential inaccuracy of the hit reports previously provided. Please confirm that Defendants will provide updated, accurate hit reports no later than **end of this week**. In doing so, please confirm that Defendants will provide a hit report for Plaintiffs' modified Term 12, as previously requested below (*see* items 1 and 4). To the extent that Defendants' position is that they cannot or will not do so within this timeframe, please promptly explain the basis for delay and provide a date by which we can expect to receive the updated reports.

> Defendants' Response: we anticipate providing an updated STR by the end of next week. Our lab is in the process of loading the first of the re-uploaded data to Relativity and expect to have that data loaded into Relativity early next week. The lab is processing over 220 GB of data, which expands to approximately 286 GB of data that is then ingested to Relativity, thereby causing the delay.

**Search Terms.**
As to your request for clarification regarding Plaintiffs' "Additional Proposed Search Terms" for both RFP Set 1 and RFP Set 2, Plaintiffs' position is that the additional terms to be run over RelOne ingested documents are intended to further narrow the data after the initial Purview pull. Plaintiffs expect that these terms would also be used to generate hit count reports. Given this added clarification, please confirm that Defendants will provide a substantive response to Plaintiffs' search term proposals for RFP Set 1 and RFP Set 2 **no later than June 10**.

> Defendants' Response: thank you for the clarification. Our position is pending an updated STR.

For Defendants' agreed search terms for RFP Set 1, thanks for confirming that Defendants will run an additional search based on Judge Baker's order that encompasses the full time period at issue. Please confirm that Defendants will conduct this search and begin to review and produce responsive documents as soon as possible. Given the protracted search terms negotiations to date, there is no reason to further delay conducting this search pending resolution of the remaining Set 1 terms. To the extent Defendants do not agree to do so, please explain the basis for Defendants' refusal.

> Defendants' Response: the search Judge Baker ordered was to facilitate negotiations for search terms, rather than review and production of this search. Dkt. 178 at 10 ("As a starting point, to facilitate continued meet/confer efforts between the parties to reach consensus on ESI discovery, the Court will order Defendants to conduct a further ESI search and collection run and produce hit reports for these 22 custodians suing, in addition to Defendant's agreed search terms, Plaintiffs' proposed search terms Nos. 1, 6, and 12") (citing Dkt. 163, Appx. A at 19-20)). While reaching a consensus on search terms remains ongoing, there is no undue delay. There have been technical hurdles, as noted above, but as Defendants have also noted, Defendants reached out to Plaintiffs in the first instance to address the Court's order and set a meet and confer and, in the first instance, agreed to conduct an ESI search and produce hit reports ahead of the meet and confer. *See* Section VI.B.1.b of May 13, 2026 Draft Joint Scheduling Report, Olga Kuchins May 13, 2026 email. Defendants understand Plaintiffs believe this process has not been sufficiently expedient. But the process has nonetheless been diligent and in keeping with Judge Baker's order. This all being said, Defendants also note the meet and confer on May 21, 2026, appeared to have been productive and to have moved the parties forward on negotiations, but now pending correction of the STRs. Defendants meanwhile do want to pursue duplicative efforts, i.e., multiple rounds of searches. For there could be three potential rounds of searches: one conducted now for Defendants' proposed search terms, a second round for any additional terms that the parties agree upon after evaluation of the STR, and a third should the parties submit any additional disputes the court and the court orders additional search terms. We can eliminate the second search if we merely wait until the parties evaluate the STR and determine whether they agree upon any additional search terms.

For Defendants' proposed search terms for RFP Set 2, Plaintiffs proposed RFP Set 2 terms are intended to be run *in addition to* Defendants' proposed terms. There is no reason for Defendants to delay the collection and review of documents responsive to the terms that Defendants themselves have proposed for RFP Set 2 pending resolution of the remaining proposed terms for Set 2. Please confirm that Defendants will run Defendants' proposed search terms, collect, and begin review and production of documents for those terms by **no later than June 12**. To the extent that Defendants are refusing to search and produce documents responsive to their own proposed search terms for Set 2, please explain the basis for Defendants' refusal.

> Defendants' Response: similar to RFP Set 1, reaching a consensus on search terms for RFP Set 2 remains ongoing. Defendants reiterate they are prioritizing rolling production on the documents responsive to RFP Set 1 based on the agreed-upon search terms at the time, while simultaneously negotiating search terms for RFP Set 1 and RFP Set 2. As such, we cannot commit to a production schedule at this time. If, after the updated STR we agree on terms, we can discuss producing on those terms. And as noted, we believe negotiations are moving forward, but now pending correction of the STR. But meanwhile we do not want to pursue duplicative efforts, i.e., multiple rounds of searches, as explained above.

Thanks,
Reaghan

**Reaghan E. Braun**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8891 direct | 415 391 5400 main
rbraun@keker.com | vcard | keker.com
*pronouns: she, her, hers*

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Wednesday, June 3, 2026 4:31 PM
**To:** Reaghan E. Braun <RBraun@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>
**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

Hi Reaghan – please find our responses in green, below.

Thanks

Tim

---

Counsel,

We write to follow up regarding our discussion of search terms during our 5/21 meet and confer. Outlined below are the topics covered during our discussion, along with our proposal for next steps. Please confirm Defendants' position as to the items listed below by Friday May 29.

1. **RFP Set 1 Search Terms**

Based on our discussion yesterday, we now understand that the full set of custodial documents for the relevant time period has not yet been ingested into RelOne from Purview. We propose the following order of operations for search terms in RFP Set 1 in light of that information.

First, for the three terms that the Court already ordered Defendants to run / where we have hit reports, Plaintiffs request that Defendants confirm the terms for which they will start review and production.

- **Term 1 ("Operation at Large" OR OAL OR OpAtLarge OR #OpAtLarge).** Please confirm Defendants' position on reviewing and producing the documents that hit on this term, or a subset thereof.
- **Term 6 ("voluntary departure").** Defendants agreed to confirm whether they will review and produce documents for this term. Please provide Defendants' position.

**Term 12 ("reasonable suspicion").** Defendants acknowledged willingness to review and produce a certain subset of this term, and we have proposed an initial narrowing of this term.

| | |
|---|---|
| 12 | ("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "investigative detent*~~ion~~" OR "investigative detentions" OR "detentive stop*" ~~OR "detentive stops"~~ OR "terry stop*" OR ~~"terry stops"~~ OR "flight risk" ~~OR immigr*~~ OR deport* OR remov* ~~OR illegal* OR alien* OR crim* OR smugg* OR border*~~ OR arrest* OR detain* OR detent* OR stop* ~~OR catch*~~ OR warrant* OR "Title 8") w/15~~20~~ (train* OR polic* OR practice OR memo* OR procedure*) |

We understand from Aysha's email today, however, that the hit reports that we received for this term may not be accurate. Please (1) provide the corrected hit counts on the original term; (2) provide a hit count on the revised narrowed version of the narrowed term above (changes shown in red); and (3) confirm whether Defendants would agree to review and produce documents responsive to the narrowed term.

Defendants' response: our position is pending an updated search term report ("STR").

Second, for Plaintiffs' proposed additional, narrowed terms (and the portion of the ordered terms Defendants will not agree to review in the first instance), we discussed yesterday that the most efficient way to provide hit counts on the proposed terms would likely be for Defendants to run broader "superset" terms in Purview and upload the results of that search into RelOne before running more targeted terms with connectors for hit reports. In that regard, Plaintiffs have provided in the attached document both (1) a set of Purview terms to govern the initial pull of documents in order to create a superset to be ingested into RelOne, and (2) more targeted terms with connectors to be used on the superset of documents ingested into RelOne. Please confirm Defendants' position as to the proposed terms in the attached document.

Defendants' response: our position is pending an updated STR. But can Plaintiffs clarify, for your "Additional Proposed Search Terms [to be run over RelOne ingested documents from (1) superset terms; and court-ordered terms]," whether these terms are for further narrowing the data after the Purview pull, or just for STRs?

As noted during our call, Plaintiffs agree that Defendants' agreement to run broader Purview terms for the purpose of culling to a superset of documents in RelOne is not a concession of relevance or proportionality and is intended solely as a means of narrowing the broader universe of custodial files to be uploaded to RelOne so that hit counts can be run efficiently.

Third, for Defendants' originally agreed terms for RFP Set 1, in light of Judge Baker's order, please confirm that Defendants are reviewing hits on those agreed terms for the full time period at issue (November 2024 to present).

Defendants' response: Defendants will run an additional search based on Judge Baker's order that encompasses the time period at issue, but Defendants do not plan to run that search until we have the remaining search terms for RFP Set One resolved.

2. **RFP Set 2 Search Terms**

**Defendants' Proposed Terms.** We understand from our conversation yesterday that Defendants have not yet ingested any custodial files for the custodians identified in Defendants' RFP Set 2 list of custodians and thus have not yet run any of their proposed terms for RFP Set 2. Please confirm that Defendants will run Defendants' proposed search terms, collect, and begin review and production of documents for those terms by no later than June 12.

Defendants' response: Defendants are prioritizing rolling production on the documents responsive to RFP Set 1 based on the agreed upon search terms at the time, which simultaneously negotiating search terms for RFP Set 1 and RFP Set 2. As such, we cannot commit to a production schedule at this time.

**Plaintiffs' Proposed Additional Terms.** Similar to Set 1 above, Plaintiffs propose both (1) a set of Purview terms to govern the initial pull of documents, and (2) more targeted terms with connectors that will be run on that superset of documents after they are ingested into RelOne. Please confirm Defendants' position as to the proposed additional terms in the attached document.

Defendants' response: our position is pending an updated STR. But can Plaintiffs clarify, for your "Additional Proposed Search Terms [to be run over RelOne ingested documents from (1) superset terms; and court-ordered terms]," whether these terms are for further narrowing the data after the Purview pull, or just for STRs?

3. **Purview Updates**

Defendants noted that they may have access to an updated version of Purview and agreed to confirm. Please confirm which version of Purview Defendants have access to, and whether the technical details and limitations discussed in their declaration, Dkt. 163, Ex. H have changed. To the extent this information has changed, please let us know what limitations, if any, currently exist for running hit counts on

terms with connectors.

Defendants' response: we understand CBP has Purview Premium, aka G5. For G5 capabilities, see https://learn.microsoft.com/en-us/purview/edisc-ref-limits#search-limits. This link, however, does not address wildcards or proximity searches. For wildcards or proximity searches, the limits discussed in Dkt. 163, Ex. H, at paragraphs 11 and 13, are still correct. For wildcards used in proximity searches, each wildcard has to be broken out into its various forms and searched separately. Due to the burden associated with wildcards used in proximity searches, proximity searches should only be used for comparing one search term to another search term, without utilizing wildcards. Additionally, while Dkt. 163, Ex. H, did not reach this issue, we have learned that the maximum proximity search for emails is within 10 terms ("w/10"). Consequently, Defendants were not able to run the email search for No. 12, Dkt. 163, Appendix A, as ordered by Judge Baker, to include the proximity "w/20." Defendants instead are running the email search to "w/10" for No. 12. However, to resolve this particular limitation, Defendants' propose, for negotiation purposes going forward, that "AND" could be used to connect terms. Then a closer proximity search could be run later in Relativity to cull the data for review. There is no maximum proximity search for Teams, Sharepoint, and OneDrive files in Purview, so long as the proximity search only compares one term to another term. We have requested identification of any other hard limitations and will let you know if any are identified.

4. **Hit Reports**

As noted above, we are in receipt of your 5/22 email regarding technical issues related to the hit reports Defendants provided on 5/15. Plaintiffs reserve all rights to modify the search term proposals discussed herein based on updated hit reports. Please confirm that Defendants will provide updated, accurate hit reports as soon as practicable and no later than May 29. In doing so, please also provide a hit report for Plaintiffs' modified Term 12, as discussed above.

In addition, we discussed de-duplication of hit reports and request answers to the following questions:

- First, are hit reports de-duplicated across custodians? For example, if multiple custodians are recipients of the same email, is that counted as a single hit or multiple hits?

  Defendants' response: the STR data was processed with the standard "media" deduping. Media deduping removes duplicates within the container or production set.

- Second, we have proposed various "additional" terms in addition to those Plaintiffs have agreed to for RFP Sets 1. When running hit reports, Plaintiffs request that Defendants remove hits for documents Defendants have already agreed to review for production because they hit on previously agreed terms.

  Defendants' response: Defendants can remove any documents that hit on the first set of search terms from the universe od documents we run against the second set of search terms.

5. **Custodians search**

Defendants confirmed that Corey Lewandowski will be included in the list of custodians provided for RFP Set 1, and that they are continuing to investigate a second DHS custodian for RFP Set 2. Please confirm Defendants' position as to DHS custodians for Set 1 and Set 2.

Defendants' response: confirmed. Corey Lewandowski is a DHS custodian for RFP Set 1 and RFP Set 2. DHS is still investigating any additional custodian.

Thanks,
Reaghan

---

**From:** Reaghan E. Braun <RBraun@keker.com>
**Sent:** Tuesday, June 2, 2026 1:00 PM
**To:** Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>
**Cc:** Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Counsel,

Following up on the below. We have yet to receive any response to our 5/22 email. Please confirm that you will provide Defendants' position as to the items outlined below no later than **this week**.

# EXHIBIT F

**Natalie R. Heim**

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Friday, October 9, 2026 4:11 PM
**To:** Natalie R. Heim; Iqbal, Aysha T. (CIV); Reaghan E. Braun
**Cc:** Kuchins, Olga Y. (CIV); Julia L. Greenberg; Jason George; Christina Lee; Bree Bernwanger; Mayra Joachin; Minju Cho; Franco Muzzio; Go, Samuel (CIV); Grant, Nicole P. (CIV); Durr, Jaime (CIV); Christopher S. Sun
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

---

Hi Natalie, Defendants' responses are in green below:

**Custodians**: Can you please provide the following information about Corey Lewandowski (the DHS custodian you have identified) to inform Plaintiffs' assessment of your position?

a. What was Mr. Lewandowski's official title within DHS?

Senior Advisor, Office of the Secretary. *See* Defendants' (Ramnitz) May 14, 2026 email, Attachment ("Defendants' Supplemental Discovery – Custodians for RFPs Set Two May 2026)

b. Was Mr. Lewandowski a full-time DHS employee?

Defendants respectfully believe this information is irrelevant. Selecting Mr. Lewandowski as a DHS HQ custodian for purposes of Plaintiffs' pattern or practice claim, as opposed to Secretary Noem as Plaintiffs request, is a reasonable search strategy given his senior position in DHS HQ, which Plaintiffs have referred to, in a citation, as a "top aide" to Secretary Noem. *See* Plaintiffs' (Heim) September 23, 2026 email (citing https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b29….). Defendants also reiterate that DHS HQ asserts it had little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento.

c. Was Mr. Lewandowski a Special Government Employee? If so, what is the formal definition of such an employee?

Defendants respectfully believe this information is irrelevant. Selecting Mr. Lewandowski as a DHS HQ custodian for purposes of Plaintiffs' pattern or practice claim, as opposed to Secretary Noem as Plaintiffs request, is a reasonable search strategy given his senior position in DHS HQ, which Plaintiffs have referred to, in a citation, as a "top aide" to Secretary Noem. *See* Plaintiffs' (Heim) September 23, 2026 email (citing https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b29….) Defendants also reiterate that DHS HQ asserts it had little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento.

d. Do Defendants contend that Mr. Lewandowski had official decision-making authority for DHS?

Defendants respectfully believe this information is irrelevant. Selecting Mr. Lewandowski as a DHS HQ custodian for purposes of Plaintiffs' pattern or practice claim, as opposed to Secretary Noem as Plaintiffs request, is a reasonable search strategy given his senior position in DHS HQ, which Plaintiffs have referred to, in a citation, as a "top aide" to Secretary Noem. *See* Plaintiffs' (Heim) September 23, 2026 email (citing https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b29….). Moreover, Plaintiffs do not provide an explanation for why only a decision-maker would have sufficiently responsive ESI, as opposed to a senior advisor to a decision-maker. *See* Plaintiffs Further Narrowed RFPs 3, 4, 11 (seeking documents "sufficient to show" policy and practice for the challenged operations, rather than "all" documents). Defendants also reiterate that DHS HQ asserts it had little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento.

e. Did Mr. Lewandowski have authority to bind DHS?

Defendants respectfully believe this information is irrelevant. Selecting Mr. Lewandowski as a DHS HQ custodian for purposes of Plaintiffs' pattern or practice claim, as opposed to Secretary Noem as Plaintiffs request, is a reasonable search strategy given his senior position in DHS HQ, which Plaintiffs have referred to, in a citation, as a "top aide" to Secretary Noem. *See* Plaintiffs' (Heim) September 23, 2026 email (citing https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b29….). Moreover, Plaintiffs do not provide an explanation for why only a final decision-maker would have sufficiently responsive ESI, as opposed to a senior advisor to a final decision-maker. *See* Plaintiffs Further Narrowed RFPs 3, 4, 11 (seeking documents "sufficient to show" policy and practice for the challenged operations, rather than "all" documents). Defendants also reiterate that DHS HQ asserts it had little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento.

f. Did Mr. Lewandowski have authority to speak on behalf of Secretary Noem and DHS

Defendants respectfully believe this information is irrelevant. Selecting Mr. Lewandowski as a DHS HQ custodian for purposes of Plaintiffs' pattern or practice claim, as opposed to Secretary Noem as Plaintiffs request, is a reasonable search strategy given his senior position in DHS HQ, which Plaintiffs have referred to, in a citation, as a "top aide" to Secretary Noem. *See* Plaintiffs' (Heim) September 23, 2026 email (citing https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b29….). Moreover, Plaintiffs do not provide an explanation for why only a final decision-maker would have sufficiently responsive ESI, as opposed to a senior advisor to a final decision-maker. *See* Plaintiffs Further Narrowed RFPs 3, 4, 11 (seeking documents "sufficient to show" policy and practice for the challenged operations, rather than "all" documents). Defendants also reiterate that DHS HQ asserts it had little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento.

g. Was Mr. Lewandowski involved in all correspondence regarding the relevant policies? Was he exclusively responsible for communicating with Noem about the policies?

Defendants respectfully believe this information is irrelevant. Selecting Mr. Lewandowski as a DHS HQ custodian for purposes of Plaintiffs' pattern or practice claim, as opposed to Secretary Noem as Plaintiffs request, is a reasonable search strategy given his senior position in DHS HQ, which Plaintiffs have referred to, in a citation, as a "top aide" to Secretary Noem. *See* Plaintiffs' (Heim) September 23, 2026 email (citing https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b29….). Moreover, Plaintiffs Further Narrowed RFPs 3, 4, 11 which seek policy and practice documents for the challenged operations request documents "sufficient to show," rather than "all" documents. Defendants also reiterate that DHS HQ asserts it had little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento.

# EXHIBIT G

**From:** Natalie R. Heim
**Sent:** Friday, October 9, 2026 3:07 PM
**To:** Ramnitz, Tim (CIV)
**Cc:** Reaghan E. Braun; Iqbal, Aysha T. (CIV); Kuchins, Olga Y. (CIV); Julia L. Greenberg; Jason George; Christina Lee; Bree Bernwanger; Mayra Joachin; Minju Cho; Franco Muzzio; Go, Samuel (CIV); Grant, Nicole P. (CIV); Durr, Jaime (CIV); Christopher S. Sun
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice
**Attachments:** CBP and DHS Search Term Proposals Consolidated - 10.9.26(6414667.1).docx

Tim,

Thanks for sending over the DHS counter proposal on search terms. We believe the Court will expect the parties to be able to cooperate to submit a joint chart that clearly consolidates all search term positions. To that end, in the attached, we've revised and cleaned up the original chart the parties have been using to exchange proposals to reflect what we understand to be the parties' final positions. If we have incorrectly captured any of your positions, please let us know so we can revise. Please confirm whether Defendants agree to use this chart as a joint exhibit by **10/13** so we can identify it accurately in our materials due to you on 10/14.

Plaintiffs have made the following additional compromises to their proposals to narrow the disputes:

Compared with our last proposals:

- **Dropped two CBP searches:** Bovino's involvement in specified out-of-district operations (former Term 6) and Beckwith/Bovino communications concerning termination or court compliance (former Term 13).
- **Further narrowed the DHS operations search (D2):** now requires both an enforcement/operation/raid reference **and** a reference to Bovino, Border Patrol, CBP, or El Centro. Previously.
- **Clarified the DHS race/profiling search (D3):** corrected an inadvertent error in the parentheses so the Bovino/Border Patrol/CBP/El Centro limitation applies to the entire search.
- **Accepted Defendants' narrower DHS ridealong search (A5):** requires Sacramento and proximity between "ride along"/"ridealong" and "fox."
- **Consolidated DHS voluntary departure into the policy/training search (D6):** replaced the standalone "voluntary departure"/I-826 search with the search string requiring policy/training terminology. Also added "stop," "arrest," and "warrant" to the legal/enforcement concepts in that string.
- **Reflects the DHS OAL agreement (A6):** the agreed string now includes "stop," "arrest," and "warrant" alongside policy/training/goals terminology.

Plaintiffs' reserve all rights to raise any issues that have been dropped for purposes of this hearing at a subsequent time and based on additional information and conferrals between the parties.

As for the limited additional information about the DHS platform, unfortunately, we still do not have enough information to meaningfully adjust the proposals. We are not familiar with how the NEAR connector works nor do we know how broad the proximity is able to extend, and the parties are unable to

effectively negotiate using new limiters when Plaintiffs' brief is due next week. As Defendants themselves proposed in their June 3rd email, we will proceed using AND connectors, but we of course agree that the parties can and will further narrow high hit counts using proximity connectors once the collection set is ingested. *See* T. Ramnitz 6.3.26 Email ("Defendants' propose, for negotiation purposes going forward, that "AND" could be used to connect terms. Then a closer proximity search could be run later in Relativity to cull the data for review."). We also note that Plaintiffs propose using the "AND NOT" limiter to address DHS's concerns about other DHS agencies such as TSA. We understand such connectors are only available in Relativity.

Finally, note that we may use additional pages for our opening than originally allocated in the parties' scheduling agreement (while reserving what remains of our 8 total pages for the Reply). Since both sides get 8 pages total regardless, we assume Defendants will not object to how Plaintiffs choose to allocate their pages but please let us know of any concerns.

Thanks,

**Natalie R. Heim**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8802 direct | 415 391 5400 main
nheim@keker.com | keker.com
Pronouns: she/her/hers

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Wednesday, October 7, 2026 9:41 AM
**To:** Natalie R. Heim <NHeim@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

Hi Natalie – please find attached Defendants' responses to Plaintiffs' DHS search term proposals. Also, in response to Plaintiffs' questions about DHS's document-search platform:

> The document-search platform used by DHS is Microsoft Purview eDiscovery. It can run search terms using connectors including proximity searches, but for proximity searches it uses "NEAR", i.e. NEAR(20), instead of "w/20." The platform can only provide very basic hit count information for simple keyword searches, not the robust reporting like Relativity. DHS's platform does not provide accurate hit counts, number of documents, email threading, deduplication, etc. Consequently, in order to get accurate reporting on any search term proposal, DHS has to perform the document pull and send the data to DOJ to upload to Relativity each time Plaintiffs request new terms.

Thanks

Tim

---

**From:** Natalie R. Heim <NHeim@keker.com>
**Sent:** Friday, October 2, 2026 6:09 PM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Thanks, Tim. We continue to look forward to receiving Defendants' substantive responses.

Your account of the parties' proposals and efforts to compromise does not accurately reflect the record.

Defendants' August 24 proposal concerned CBP custodians only. Plaintiffs responded to that proposal on September 2, including by making revisions to the CBP search terms to narrow the parties' disputes.

The only proposal Plaintiffs have received from Defendants concerning DHS search terms was sent in July. Plaintiffs have consistently maintained that DHS and CBP search terms should be negotiated together. Nonetheless, in another effort to compromise, Plaintiffs sent substantially modified terms for DHS custodians on September 11 and explained why those terms were appropriate and why Defendants' July proposal was unworkable. Defendants' **August 24 CBP proposal** was not (and could not have been) a response to **Plaintiffs' September 11 DHS proposal**. We have yet to receive any compromise offer in response to our September 11 proposal.

Plaintiffs remain willing to consider genuine, substantiated platform limitations and good-faith, reasoned compromise proposals concerning DHS terms and custodians. We reserve all rights, including to respond to Defendants' forthcoming position and to raise Defendants' delays in conferring, which make it difficult to resolve these disputes in a timely manner and without Court intervention.

Thank you,

**Natalie R. Heim**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8802 direct | 415 391 5400 main
nheim@keker.com | keker.com
Pronouns: she/her/hers

---

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Friday, October 2, 2026 12:08 PM

**To:** Natalie R. Heim <NHeim@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

---

Hi Natalie,

Please find responses in green

1. Final Search-Term Proposal. Our September 11th proposal simply modifies and narrows the terms we have been negotiating for CBP for months; Defendants have had ample time to review. Please let us know if there are any additional terms DHS will agree to run. Otherwise, we assume your July 2026 terms are your final position unless we hear otherwise by the end of this week. Plaintiffs reserve all rights to modify their proposal in light of any new information from Defendants and in the interest of narrowing the disputes for the Court.

   Defendants anticipate having responses to Plaintiffs' DHS search term counter proposals by early to mid next week. Defendants reserve the right to include this information in briefing.

2. Custodians: Can you please provide the following information about Corey Lewandowski (the DHS custodian you have identified) to inform Plaintiffs' assessment of your position?
   a. What was Mr. Lewandowski's official title within DHS?
   b. Was Mr. Lewandowski a full-time DHS employee?
   c. Was Mr. Lewandowski a Special Government Employee? If so, what is the formal definition of such an employee?
   d. Do Defendants contend that Mr. Lewandowski had official decision-making authority for DHS?
   e. Did Mr. Lewandowski have authority to bind DHS?
   f. Did Mr. Lewandowski have authority to speak on behalf of Secretary Noem and DHS
   g. Was Mr. Lewandowski involved in all correspondence regarding the relevant policies? Was he exclusively responsible for communicating with Noem about the policies?

Defendants are reviewing these questions, received September 29, 2026, and anticipate providing a response by the end of next week.

3. **Local USBP operations:** Thank you for confirming your proposal is not meant to exclude policy, practice, and training documents for Operation at Large. However, the narrow scope of your terms is necessarily underinclusive of those topics at least because it does not include words central to Plaintiffs' claims such as "stop" "arrest" or "warrant." It also assumes all relevant documents will necessarily include the name of the operation. Our modified Terms 7 and 10 account for documents that might not identify the operation by name while still accounting for proportionality through limiters that are relevant to this district (e.g., "El Centro"). We also again note that our proposals are meant to be "superset" terms that would then be further narrowed through additional connectors in Relativity (as Defendants requested).

Defendants explained their objections to Plaintiffs' modified Terms 7 and 10 in their August 24, 2026 search term proposal. Also on August 24, 2026, Defendants moreover proffered compromises for both Plaintiffs' modified Terms 7 and 10. Plaintiffs have not engaged with the proposed compromises.

4. DHS's Document-Search Platform: On September 21, Defendants represented that DHS search platform has additional constraints that CBP's platform does not. We assume Defendants had a basis to make that representation. Please inform us of any and all constraints that would prevent Defendants from running Plaintiffs' proposed terms or from providing search term hit count reports by the end of this week if Defendants wish to include such information in the upcoming briefing.

Defendants anticipate having responses to Plaintiffs' DHS ESI questions by early to mid next week. Defendants reserve the right to include this information in briefing.

---

**From:** Natalie R. Heim <NHeim@keker.com>
**Sent:** Tuesday, September 29, 2026 9:34 PM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Tim,

Thanks for your response. To provide Plaintiffs sufficient time to consider Defendants' positions and brief these issues on the agreed-upon schedule, please provide the below information by the **end of this week** if Defendants wish to include such information in the upcoming briefing.

1. **Final Search-Term Proposal.** Our September 11th proposal simply modifies and narrows the terms we have been negotiating for CBP for months; Defendants have had ample time to review. Please let us know if there are any additional terms DHS will agree to run. Otherwise, we assume your July 2026 terms are your final position unless we hear otherwise by the end of this week. Plaintiffs reserve all rights to modify their proposal in light of any new information from Defendants and in the interest of narrowing the disputes for the Court.

2. **Custodians**: Can you please provide the following information about Corey Lewandowski (the DHS custodian you have identified) to inform Plaintiffs' assessment of your position?
    a. What was Mr. Lewandowski's official title within DHS?
    b. Was Mr. Lewandowski a full-time DHS employee?
    c. Was Mr. Lewandowski a Special Government Employee? If so, what is the formal definition of such an employee?
    d. Do Defendants contend that Mr. Lewandowski had official decision-making authority for DHS?
    e. Did Mr. Lewandowski have authority to bind DHS?
    f. Did Mr. Lewandowski have authority to speak on behalf of Secretary Noem and DHS?

g. Was Mr. Lewandowski involved in all correspondence regarding the relevant policies? Was he exclusively responsible for communicating with Noem about the policies?

3. **Local USBP operations:** Thank you for confirming your proposal is not meant to exclude policy, practice, and training documents for Operation at Large. However, the narrow scope of your terms is necessarily underinclusive of those topics at least because it does not include words central to Plaintiffs' claims such as "stop" "arrest" or "warrant." It also assumes all relevant documents will necessarily include the name of the operation. Our modified Terms 7 and 10 account for documents that might not identify the operation by name while still accounting for proportionality through limiters that are relevant to this district (e.g., "El Centro"). We also again note that our proposals are meant to be "superset" terms that would then be further narrowed through additional connectors in Relativity (as Defendants requested).

4. **DHS's Document-Search Platform:** On September 21, Defendants represented that DHS search platform has additional constraints that CBP's platform does not. We assume Defendants had a basis to make that representation. Please inform us of any and all constraints that would prevent Defendants from running Plaintiffs' proposed terms or from providing search term hit count reports by the **end of this week** if Defendants wish to include such information in the upcoming briefing.

Thank you,

**Natalie R. Heim**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8802 direct | 415 391 5400 main
nheim@keker.com | keker.com
Pronouns: she/her/hers

---

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Thursday, September 24, 2026 1:12 PM
**To:** Natalie R. Heim <NHeim@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

---

Hi Natalie, please find responses in red.

1. Final proposal

   a. Plaintiffs: Your email does not respond to Plaintiffs' proposed additional search terms. Please confirm that the attached proposal sent by Ms. Kuchins constitutes Defendants'

final offer regarding DHS search terms and that DHS refuses to search any of the additional terms proposed in Plaintiffs' September 11, 2026 letter.

b. Defendants: Plaintiffs' September 11 email stated Plaintiffs intended to address DHS search terms in the upcoming briefing, should the parties not come to an agreement on DHS search terms between September 11 and the agreed-to start of briefing on October 14. Given this brief window provided by Plaintiffs in which to come to an agreement on DHS search terms, Defendants provided a response that would represent our position in this interim. We will continue to correspond with Plaintiffs meanwhile regarding DHS search terms.

2. Custodians

   a. Plaintiffs: Please confirm that Corey Lewandowski is the only DHS custodian Defendants intend to identify. Please also confirm whether Defendants' offer to search for "Noem" would capture every email sent or received by Mr. Bovino in which Secretary Noem appears as a sender, recipient, copied recipient, or blind-copied recipient.

   b. Defendants:

      i. Corey Lewandowski is our proposed DHS custodian, confirmed. Not also former Secretary Noem and Tricia McLaughlin.

      ii. Defendants clarify that their prior reference to " 'Noem' as a search term" refers to Defendant's prior written proposals to search former Secretary Noem's work email address within former Chief Bovino's ESI for RFP Set 2.

         1. Defendants confirm that its search for Secretary Noem's email address within former Chief Bovino's ESI would capture every email sent or received by Bovino in which former Secretary Noem was a sender, recipient, copied recipient, or blind-copied recipient.

         2. Plaintiffs, in their DHS counter proposal, separately ask Defendants to clarify whether, for DHS's proposed term to search former Chief Bovino's work email address, Defendants are "agree[ing] to produce all emails to/from Bovino with the DHS custodians? If so, Plaintiffs agree with this term."

            a. Defendants: For the proposed DHS custodian, Defendants agree to produce responsive emails to/from former Chief Bovino, subject to privilege.

3. DHS search terms

   a. Plaintiffs: Your email repeatedly references "local USBP operations." As you know, Plaintiffs RFPs seek documents sufficient to show agency-level information governing Operation at Large training, policies, practices, procedures, operational goals/quotas, and leadership directives. The Court has expressly overruled Defendants' objections to those requests and Defendants, including DHS, must produce responsive materials. See Dkt.

198. To the extent your email suggests that Defendants are continuing to raise overruled objections, that of course is improper.

b. Defendants:

i. Defendants have proposed DHS search terms in line with the Court's discovery orders indicating that policy, practice, and training documents for Operation at Large are relevant to operations in this District. For example, please see Defendant's proposed DHS terms "miller w/20 (quota OR goal OR minimum)," "Operation at Large" OR OAL OR OpAtLarge) w/10 (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota OR 'minimum number')," and searching former Chief Bovino's work email address over custodian Corey Lewandoski's ESI.

ii. Defendants reference to "local USBP operations" was to underscore that Defendants' proposed search terms for DHS HQ are appropriately tailored to search for Operation at Large policy documents, while there is meanwhile no reason to believe DHS HQ was involved in the operations in Bakersfield or Sacramento.

4. DHS's Document-Search Platform.

a. Plaintiffs: Your September 21 email marks the first time in six months of negotiations that Defendants have disclosed that DHS's document-search platform has different constraints than CBP's. The parties have engaged in multiple rounds of negotiations aimed at accommodating the purported limitations of CBP's platform, yet Defendants did not previously disclose that those limitations may not apply equally to DHS.

b. Defendants: The parties did not start negotiating DHS search terms until late June 2026, approximately three months ago. While Defendants acknowledge that Defendants did not earlier present Plaintiffs with separate DHS search terms, this was because prior to the Court's April 17, 2026 order overruling Defendant's objection, Defendants argued DHS was not subject to discovery. Defendants sent Plaintiffs proposed DHS search terms on July 20, 2026, and Plaintiffs first counter proposal was on September 11, 2026. Defendants, when provided Plaintiffs opposition on September 11, 2026, timely countered with DHS search limitations. Defendants are continuing to review Plaintiffs' questions about DHS search capabilities.

---

**From:** Natalie R. Heim <NHeim@keker.com>
**Sent:** Wednesday, September 23, 2026 11:55 AM
**To:** Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>; Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel

(CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Aysha,

Your response neither clearly states Defendants' positions nor reflects a good-faith effort to confer.

To crystallize and narrow the disputes for the Court, Plaintiffs need the information below. Please provide a complete written response by **September 28.**

1. **Final Search-Term Proposal.** Your email does not respond to Plaintiffs' proposed additional search terms. Please confirm that the attached proposal sent by Ms. Kuchins constitutes Defendants' final offer regarding DHS search terms and that DHS refuses to search any of the additional terms proposed in Plaintiffs' September 11, 2026 letter.

2. **Custodians.** Please confirm that Corey Lewandowski is the only DHS custodian Defendants intend to identify. Please also confirm whether Defendants' offer to search for "Noem" would capture every email sent or received by Mr. Bovino in which Secretary Noem appears as a sender, recipient, copied recipient, or blind-copied recipient.

3. **Local USBP operations:** Your email repeatedly references "local USBP operations." As you know, Plaintiffs RFPs seek documents sufficient to show agency-level information governing Operation at Large training, policies, practices, procedures, operational goals/quotas, and leadership directives. The Court has expressly overruled Defendants' objections to those requests and Defendants, including DHS, must produce responsive materials. *See* Dkt. 198. To the extent your email suggests that Defendants are continuing to raise overruled objections, that of course is improper.

4. **DHS's Document-Search Platform.** Your September 21 email marks the first time in six months of negotiations that Defendants have disclosed that DHS's document-search platform has different constraints than CBP's. The parties have engaged in multiple rounds of negotiations aimed at accommodating the purported limitations of CBP's platform, yet Defendants did not previously disclose that those limitations may not apply equally to DHS.

Despite this belated disclosure, Plaintiffs remain willing to consider whether the terms can be further tailored to accommodate any genuine technical limitations. To permit that assessment (and to substantiate Defendants' burden assertions), please provide the following:

a. The name and version of the document-search platform used by DHS;
b. Whether that platform can run search terms and, if so, the full extent of that functionality, including whether it supports proximity connectors, any limits on the permissible proximity between terms, and AND/OR operators;
c. Whether any DHS custodial files have been preserved and uploaded to Relativity;
d. If not, why the DHS custodial files cannot be uploaded to Relativity and searched there; and
e. Why DHS's system is purportedly unable to generate a search-term hit-count report.

Defendants should not present this information for the first time in opposition to Plaintiffs' motion. If Defendants fail to provide information responsive to these inquiries before Plaintiffs' opening brief is due, Plaintiffs will ask the Court to disregard any evidence or technical details that Defendants disclose for the first time thereafter.

Please provide a written response to the above inquiries by the 28th. Plaintiffs have not agreed to a specific scope for Plaintiffs' October motion to compel and reserves all rights to address the DHS and CBP terms and DHS custodian issues together in the October motion, or by separate motions. Plaintiffs remain willing to confer live to narrow the disputes.

Thanks,

**Natalie R. Heim**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8802 direct | 415 391 5400 main
nheim@keker.com | keker.com
Pronouns: she/her/hers

**From:** Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>
**Sent:** Monday, September 21, 2026 1:37 PM
**To:** Natalie R. Heim <NHeim@keker.com>; Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

Good afternoon,

First, DHS declines to name Secretary Noem and Tricia McLaughlin as custodians because there is no reason to believe that they would have had involvement in the local USBP operations that are the subject of the claims in the complaint and are therefore unlikely to have documents responsive to the RFPs. Defendants, instead, agree to search "Noem" as a search term over Bovino's ESI to respond to Plaintiffs' allegations regarding public reporting that "indicates that Mr. Bovino reported directly to Secretary Noem and that she was closely involved with his promotion to commander-at-large."

As to DHS search terms, Defendants have proposed DHS search terms considering the RFPs, that there is no reason to believe there was DHS involvement in the local USBP operations, and DHS's document search capabilities. The burden on DHS to negotiate pursuant to CBP parameters is constrained by DHS's document search platform, which does not itself provide metrics such as hit counts. As such, given the RFPs at issue and the unique technology needs of DHS, the search term negotiation process is properly bifurcated.

Defendants provide the aforementioned position on the attached proposal in writing, which satisfies the meet and confer process. Defendants are prepared to move forward with briefing on the issues of DHS search terms, DHS custodians, and CBP search terms in late October as agreed upon by the parties.

Best,

Aysha Iqbal

---

**From:** Natalie R. Heim <NHeim@keker.com>
**Sent:** Friday, September 11, 2026 6:42 PM
**To:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>; Reaghan E. Braun <RBraun@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>; Christopher S. Sun <CSun@keker.com>
**Subject:** [EXTERNAL] RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

Counsel,

We have considered DHS's proposed search terms and attached a revised proposal that uses the current CBP proposal as the starting point.

We do not agree that the parties should negotiate an entirely separate search-term protocol for DHS. The parties have already spent substantial time negotiating terms applicable to the RFPs at issue, including numerous terms Defendants have agreed are appropriate for CBP custodians. And DHS's role in the operations does not counsel otherwise. Defendants assert that Headquarters had "little to no involvement in Operation Return to Sender or Operation at Large as executed in Sacramento." If so, terms directed specifically to those operations and locations should generate relatively fewer hits for DHS custodians. Any burden is further reduced by the substantially smaller number of DHS custodians being searched. If hit counts show that a particular term generates substantial false positives, Plaintiffs are willing to meet and confer regarding targeted modifications to the terms.

With that said, Plaintiffs have also accounted for proportionality in the attached proposal by substantially limiting and materially modifying certain of the CBP terms. Plaintiffs do not seek materials that apply exclusively to enforcement operations in other locations, but rather materials that are generally applicable or that apply to operations within the Eastern District of California. To that end, Plaintiffs have adopted certain limitations proposed by DHS and narrowed certain broader disputed supersets for DHS custodians. We also reiterate that the proposal includes superset terms that would be further culled through targeted searches in Relativity (i.e., the two step approach that Defendants explicitly requested).

As for DHS custodians, Plaintiffs appreciate that Defendants have agreed to search Corey Lewandowski as a DHS custodian and agree that he should be included in Defendants' search. However, Mr. Lewandowski alone is insufficient. Public reporting indicates that Mr. Bovino reported directly to Secretary Noem and that she was closely involved with his promotion to commander-at-large. *See, e.g.*,

https://abc7chicago.com/post/top-border-patrol-official-gregory-bovino-criticized-conduct-chicago-retiring-sources/18721992/. Secretary Noem's files are thus likely to contain responsive communications that would not necessarily be captured through a search of Mr. Lewandowski's files alone. Indeed, the Court has already recognized that former Secretary Noem would be subject to a search for responsive materials. *See* 3.25.26 Tr. 29:5-10 (The Court: "***[O]f course, the Secretary of the Department is going to need to be searched for responsive records*** because, after all, if this is a nationwide platform, as you've said, it required some approval."). The Court has since twice found that DHS approval of the relevant operations is relevant to the claims in this case. *See* Dkt. 178 at 8; *see also* Dkt. 198 at 4 n.1, 5. Defendants have yet to articulate any reasoned basis for excluding Noem from the search. In addition, public reporting indicates that Tricia McLaughlin, DHS Assistant Secretary for Public Affairs, may have responsive materials as she served as Secretary Noem's principal adviser on both internal and external communications, and publicly communicated on DHS's immigration-enforcement activities and Mr. Bovino's role. *See, e.g.*, https://www.the-independent.com/news/world/americas/us-politics/greg-bovino-border-patrol-trump-b2908318.html. Thus, Plaintiffs believe **Noem and McLaughlin** should be added to the initial search. Plaintiffs reserve all rights to seek other custodians.

Please let us know Defendants' position on the attached proposal and additional custodians including any basis for disagreement by no later than **September 18** and provide your availability to confer for the week of September **21.** Note, to the extent we cannot reach agreement on the DHS terms, we will address them together with the CBP disputes in the upcoming discovery brief.

Thank you,

**Natalie R. Heim**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8802 direct | 415 391 5400 main
nheim@keker.com | keker.com
Pronouns: she/her/hers

---

**From:** Ramnitz, Tim (CIV) <Tim.Ramnitz@usdoj.gov>
**Sent:** Thursday, September 10, 2026 12:59 PM
**To:** Reaghan E. Braun <RBraun@keker.com>; Iqbal, Aysha T. (CIV) <Aysha.T.Iqbal@usdoj.gov>
**Cc:** Kuchins, Olga Y. (CIV) <Olga.Y.Kuchins@usdoj.gov>; Natalie R. Heim <NHeim@keker.com>; Julia L. Greenberg <JGreenberg@keker.com>; Jason George <JGeorge@keker.com>; Christina Lee <CLee@keker.com>; Bree Bernwanger <bbernwanger@aclunc.org>; Mayra Joachin <mjoachin@aclusocal.org>; Minju Cho <mcho@aclunc.org>; Franco Muzzio <FMuzzio@keker.com>; Go, Samuel (CIV) <Samuel.Go@usdoj.gov>; Grant, Nicole P. (CIV) <Nicole.P.Grant@usdoj.gov>; Durr, Jaime (CIV) <Jaime.Durr@usdoj.gov>
**Subject:** RE: 1:25-cv-00246, United Farm Workers, et al. v. Noem, et al. - Privilege Notice

**[EXTERNAL]**

---

Hi Reaghan – that schedule works for us

Thanks,

Tim

# EXHIBIT H

POLITICO

SPONSORED SURVEY | QUESTION 1/2
Which of the following providers offer AI capabilities that support public sector organizations? S

Anthropic (Claude) Microsoft Azure (Copilot) Google Cloud (Gemini) OpenAI (ChatGPT

None of the above

# DHS confirms that Lewandowski left the department along with Noem

**Still unexplained is why he accompanied the former secretary to Guyana.**



Controversy swirled around former Trump campaign manager Corey Lewandowski's role at the Department of Homeland Security during former Secretary Kristi Noem's stormy tenure. | Rebecca Blackwell/AP

By ERIC BAZAIL-EIMIL
03/27/2026 3:19 PM PDT

+ Add POLITICO on Google

Corey Lewandowski, the Trump 2016 campaign manager who served as an unpaid adviser to former Homeland Security Secretary Kristi Noem for the past year, is no longer working at DHS, the department said Friday.

A statement confirmed his departure from DHS but did not specify any future government role for Lewandowski, who was photographed with Noem this week in Guyana during an official visit she made to the South American country.

Top Stories from POLITICO




"Mr. Lewandowski no longer has a role at DHS," the statement said.

The confirmation of his status at DHS comes amid speculation about his future after Noem was named a special envoy for Western Hemisphere security issues. Lewandowski appeared with her in photos released by the U.S. Embassy in Guyana.

Controversy swirled around Lewandowski's role at DHS during Noem's stormy tenure leading the department at the forefront of the administration's aggressive immigration enforcement operations.

Lewandowski started working as political adviser to Noem while she was South Dakota governor and lobbied President Donald Trump to name her DHS chief. He played an outsize role at the department once she joined the Cabinet.

Lewandowski came into the Trump administration as a "special government employee," raising questions about how he was counting his days at the agency. U.S. law limits temporary government employees to 130 days per year of unpaid work, but Lewandowski has worked at DHS since the start of Noem's tenure in February 2025.

He did not respond to an earlier request for comment about whether he'd be staying in government. The White House did not immediately respond to a request for comment about Lewandowski's employment status Friday.

Advertisement

Despite his informal status, Lewandowski had the ability to veto any contract exceeding $100,000 at the agency, as well as other high-level decisions. An administration official, granted anonymity to speak candidly, also told POLITICO that Lewandowski was already facing heat over DHS's short-lived move last month to shut down TSA PreCheck. The move was seen as a way to pressure Democrats to fund the department, which has been shut down since February of this year over a funding impasse.

Noem earlier this month refused to answer questions from House Democrats about her relationship with Lewandowski amid media reports that the two have had an affair.

Lewandowski, who served as Trump's campaign manager in 2016, was widely credited with the tactical decisions that led to the president's win in the New Hampshire primary that year. His star faded after he was accused of grabbing a female reporter by the arm at a campaign event. He was removed from his post during an internal power struggle with then-campaign chair Paul Manafort. The Trump ally denied any wrongdoing for the incident.

Despite Lewandowski's rocky efforts in 2016, Trump and Lewandowski have remained close. Trump briefly named Lewandowski as a senior adviser to the 2024 presidential campaign, though he was moved into a surrogate role by October in the face of displeasure from Trump.

Related Tags

**Corey Lewandowski** **Kristi Noem** **Donald Trump** **DHS**

## POLITICO Forecast

Global power is in flux. Your daily guide to what comes next.

Email

Your Email

Employer

Employer

* All fields must be completed to subscribe

SIGN UP

By signing up, you acknowledge and agree to our Privacy Policy and Terms of Service . You may unsubscribe at any time by following the directions at the bottom of the email or by contacting us here . This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

Advertisement

SPONSORED CONTENT

**Biggest Sale Of The Year: Get 50% Off Now! Designed wit...**

MV.Health



**Ask A Pro: "How Long Does $2.5M Last in Retirement?"**

This quiz matches nearly 50,000 people each month with vetted...

SmartAsset



**Experts think this could be like buying Amazon at $0.77.**

The Motley Fool



**I Copied a Trillionaire's Daily Habit for 30 Days. I Wasn't...**



**SpaceX Is Public -- but Is There a Better Stock to Buy?**



**Why Trump's Appointment Of Erika Kirk Is Raising...**

The Motley Fool

Blavity

It's not a morning routine, a cold shower, or meditation. The one...
Blinkist



© 2026 POLITICO LLC

# EXHIBIT I

While he was supposed to serve in a limited role as an adviser to Kristi Noem, Mr. Lewandowski had wide influence over contracts, personnel and operations inside the agency over the last year.

Listen · 14:13 min



**By Hamed Aleaziz, Alexandra Berzon, Nicholas Nehamas, Zolan Kanno-Youngs and Tyler Pager**

The reporters interviewed current and former administration officials and reviewed internal government records to document Mr. Lewandowski's influence at the Department of Homeland Security.

March 21, 2026

Inside Kristi Noem's spacious office on the second floor of the Department of Homeland Security's headquarters, where a painting of the secretary astride a horse decorated the wall, Corey Lewandowski would hold court.

Over the last year, Ms. Noem's top aide and confidant hosted meetings in the office without her present, grilling agency officials and issuing orders as he flexed his vast influence over President Trump's efforts to detain and deport millions of immigrants, people with knowledge of the sessions told The New York Times.

Presiding over gatherings in the secretary's office was just one way Mr. Lewandowski exerted power far beyond the scope of his role as unpaid adviser. While he joined the department early last year in what was supposed to be a limited, part-time role, the longtime Republican operative used his perch to build an expansive portfolio in which he had wide influence over personnel, contracts and the department's operations on the ground, according to nearly 20 current and former administration officials, many of whom spoke on the condition of anonymity out of fear of retaliation.

Mr. Lewandowski helped elevate Gregory Bovino, a midlevel U.S. Border Patrol leader, to a senior position commanding militarized deportation raids across the United States, three people familiar with Mr. Lewandowski's actions said.

He was among the top officials alongside Ms. Noem involved in the process of approving government contracts, according to interviews and documents reviewed by The Times. He berated Immigration and Customs Enforcement leaders when their officers failed to meet daily arrest quotas set by the White House, flashing a quick temper that left officials across the department afraid that any perceived slight could cost them their jobs, according to people familiar with the episodes.

On several occasions, he is said to have ordered employees to be placed on administrative leave over what they considered trivial matters.

There were also mounting concerns among homeland security officials that Mr. Lewandowski was trying to enrich himself through his role, according to people familiar with internal discussions. Some of those complaints ultimately reached the White House, two people said.

Mr. Lewandowski's actions have come under renewed scrutiny since Mr. Trump abruptly ousted Ms. Noem this month amid the growing unpopularity of the administration's aggressive deportation tactics, as well as allegations that a lucrative contract benefited her associates and allies. NBC News reported Thursday that Mr. Lewandowski had demanded payments from GEO Group, a major contractor that runs private detention facilities, based on its business with the Department of Homeland Security.

"Mr. Lewandowski adamantly denies ever demanding any payment or compensation from any potential, former or current government contractor," said Adam Trigg, a lawyer for Mr. Lewandowski, adding that "such allegations are not supported by a single piece of evidence."

Mr. Trigg also said that Mr. Lewandowski had "no role" in reviewing or approving contracts.

He added, "We will be preparing a formal response to these reckless allegations."



Mr. Lewandowski served as a top aide and confidant to Homeland Security Secretary Kristi Noem. Eric Lee for The New York Times

Inside the White House, the president has expressed growing anger with Mr. Lewandowski as the media focus on his activities has intensified, according to people familiar with Mr. Trump's remarks. Mr. Lewandowski is seen as being on precarious ground with Mr. Trump, those people said, even though he is a longtime ally who has managed to retain the president's favor through a series of political and personal scandals over the last decade.

When Ms. Noem leaves her post at the end of the month for a new role as a special envoy, Mr. Lewandowski is not expected to land another job in the administration, officials said.

In a statement, Mr. Lewandowski said: “All personnel decisions are made by the White House.”

A spokeswoman for the White House declined to comment. A spokeswoman for the Department of Homeland Security did not respond to requests for comment.

## Enduring Loyalty

For Mr. Lewandowski, ascending to the upper ranks of the Department of Homeland Security represented a remarkable return to power after repeatedly being cast out of Mr. Trump’s orbit, an illustration of the rewards the president bestows for enduring loyalty.

Mr. Lewandowski served as Mr. Trump’s first manager for the 2016 campaign before being fired amid internal strife. He later angled for a job in the first Trump administration but was rebuffed. He set up a lobbying shop, spending years as an informal White House adviser. He began advising Republicans around the country, including Ms. Noem, then the governor of South Dakota, introducing her and others to Trump officials and national donors.

In 2021, while Mr. Lewandowski was running the political action committee that was expected to serve as Mr. Trump’s upcoming campaign super PAC, a donor at a G.O.P. event accused him of making unwanted sexual advances. He was ousted from his perch, and other G.O.P. officials, including Ms. Noem, said they were cutting ties with him, although he would later advise her again. (Mr. Lewandowski was initially charged with misdemeanor battery over the allegations from the donor. He did not admit wrongdoing and ultimately agreed to a plea deal with Nevada prosecutors.)

Mr. Trump brought him back once more, hiring him onto his presidential campaign in the summer of 2024 as an unpaid adviser, against the wishes of some of his top advisers. Mr. Lewandowski spent weeks in a bitter power struggle for control of the campaign and ultimately lost.

Mr. Lewandowski served as a campaign adviser to Mr. Trump in 2024. Doug Mills/The New York Times

After Mr. Trump's election, Mr. Lewandowski had hoped to become Ms. Noem's chief of staff at the Department of Homeland Security, despite reports — denied by both of them — that they were involved in a romantic relationship.

Instead, he joined the department as a senior adviser to Ms. Noem, taking no salary and serving as a special government employee, a designation that allows people to work for the government "for a period not to exceed 130 days" during a one-year period, according to federal law.

While Mr. Lewandowski maintained a constant presence at D.H.S. throughout last year, he appeared to sidestep the 130-day limit. People familiar with his activities said that he rarely used his badge to enter the building, instead arriving or departing alongside Ms. Noem, who is ushered through security by her Secret Service detail.

**Sign up for the On Politics newsletter.** It's a pivotal moment for American politics. Join us for 2026 and beyond. Get it sent to your inbox.

He often passed messages through other officials instead of sending emails, some people said.

In minutes of internal department meetings, officials frequently would write "the chief" instead of his name, according to people with knowledge of the practice.

## Big Business

Despite the mandate that he serve in a limited capacity, Mr. Lewandowski has had wide latitude across the department. He has attended numerous classified briefings and weighed in on contracts being approved by the agency, people familiar with his work said.

He even had access to a version of the President's Daily Brief prepared for Ms. Noem, according to two people familiar with the matter. The summary of national intelligence is so sensitive that it goes only to a small number of high-ranking people.

Mr. Lewandowski also had regular access to Mr. Trump, speaking with him by phone frequently, according a person with knowledge of the interactions. That added to the perception among some White House and D.H.S. officials that Mr. Lewandowski was powerful and would be problematic to cross.

The reach that Ms. Noem granted Mr. Lewandowski drew intense scrutiny from congressional lawmakers, who during two days of hearings this month pressed her on a range of issues related to his role. Among the questions she fielded was whether they had a sexual relationship, a question she angrily dismissed as "tabloid garbage."

Inside the Department of Homeland Security, Mr. Lewandowski's intense focus on contracts drew the attention of top officials.

As secretary, Ms. Noem had instituted a policy requiring her approval of all contracts over $100,000, a move the agency said was intended to reduce wasteful spending.

Some contract approvals were reviewed by Mr. Lewandowski, who signed memos greenlighting the spending alongside Ms. Noem and included his title, "chief adviser to S1," a reference to the homeland security secretary, according to people familiar with his role and documents seen by The Times. Politico and ProPublica had earlier reported on Mr. Lewandowski's role in the process.

The approval process slowed down critical spending, including for airport security and disaster relief, The Times previously reported. Some White House officials were furious at the slow handling of contracts, fielding complaints from local leaders about their inability to get disaster assistance.

At a congressional hearing shortly before Mr. Trump announced her removal as secretary, Ms. Noem flatly denied that Mr. Lewandowski had played a role in approving contracts.

Mr. Lewandowski was known within the department for closely scrutinizing contractors.

During meetings with other officials, Mr. Lewandowski and Ms. Noem expressed skepticism about two major companies: GEO Group and CoreCivic, competitors in the immigration detention industry, according to a person familiar with their comments. Mr. Lewandowski expressed particular objection to ICE's reliance on GEO Group, saying it was overcharging the agency, another official said.

GEO Group did not respond to requests for comment.

CoreCivic said in a statement that it had a number of "constructive" meetings with Mr. Lewandowski and other homeland security officials. "We discussed a wide range of topics related to our services, including opportunities to further deliver cost savings," the company said.

GEO Group and CoreCivic have dominated the immigration detention market for decades, and the two companies and their investors were anticipating enormous business in the new Trump administration. In the early months of 2025, both companies benefited from new contracts to reopen detention facilities that had been closed under previous administrations.

But in recent months, neither company has been awarded a major new detention contract, even as the administration scrambles to secure more space for a record number of detainees. Both companies say they have thousands of beds still available in closed facilities that they could reopen, but some detention contracts have gone to companies with minimal experience.

Wall Street analysts who cover the companies have expressed confusion about the strategy. In an interview, Joe Gomes, an equity analyst with Noble Capital Markets, questioned why the Department of Homeland Security was "trying to reinvent the wheel" by handing contracts to companies "with little to no experience in the space."

Detainees at an ICE processing center run by the Geo Group in Tacoma, Wash. David Ryder/Getty Images

## ‘A Sharp Cat’

Ms. Noem’s willingness to empower Mr. Lewandowski throughout the department frustrated and demoralized many officials there, who said he created a culture of fear.

At the Federal Emergency Management Agency, a part of the department that Mr. Trump has sought to drastically scale back, Mr. Lewandowski even scrutinized employees’ travel requests.

When one official asked Mr. Lewandowski on a phone call to approve a travel request to prepare for hurricane season, the official said that he responded, “What part of ‘We’re shutting FEMA down’ don’t you understand?’”

Mr. Lewandowski also put immense pressure on ICE to increase arrests of immigrants, threatening to fire officials at the agency who did not meet White House demands, according to two people.

But he found an ally in Mr. Bovino, the Border Patrol official he put in charge of immigration sweeps across the country, who told The Times that he had a close working relationship with Mr. Lewandowski. He described Mr. Lewandowski as a "sharp cat" and as someone who supported his aggressive tactics.

"He was able to help navigate things I needed. I needed a lot of things for a big operation like that," he said. Mr. Bovino said that he and Mr. Lewandowski were "Type As."

He noted that Mr. Lewandowski "chewed" him out a few times, and would tell him to make sure the operations were "airtight." But he said that Mr. Lewandowski also gave him a long leash.

Mr. Bovino said Mr. Lewandowski quizzed him about his method of "consensual encounters," in which Mr. Bovino's agents would walk into parking lots, begin conversations with people, then ask them about their nationality and immigration status. The practice has been criticized as a veiled form of racial profiling.

"OK, you know what, have at it — good job," he recalled Mr. Lewandowski saying in response to his explanation of the tactic.

Mr. Lewandowski would also share praise from the top, regularly telling Mr. Bovino that Mr. Trump was happy with his work on the ground.

"I found him to be one effective leader," Mr. Bovino said.

Mr. Lewandowski, however, repeatedly clashed with Tom Homan, the White House border czar, according to people familiar with their interactions.

Before joining the second Trump administration, Mr. Homan had worked for companies seeking immigration-related contracts, including GEO Group. He did not respond to a request for comment.

After federal agents killed two U.S. citizens during deportation operations in Minneapolis in January, Mr. Homan took a more prominent role leading the enforcement campaign, replacing Mr. Bovino.

He is known to favor less confrontational tactics than both Mr. Lewandowski and Mr. Bovino, who now plans to retire.

Maxine Joselow and Christopher Flavelle contributed reporting. Alain Delaquérière contributed research.

**Hamed Aleaziz** covers the Department of Homeland Security and immigration policy for The Times.

**Alexandra Berzon** is an investigative reporter covering American politics and elections for The Times.

**Nicholas Nehamas** is a Washington correspondent for The Times, focusing on the Trump administration and its efforts to transform the federal government.

**Zolan Kanno-Youngs** is a White House correspondent for The Times, covering President Trump and his administration.

**Tyler Pager** is a White House correspondent for The Times, covering President Trump and his administration.

---

A version of this article appears in print on , Section A, Page 1 of the New York edition with the headline: Flexing Power, Lewandowski Put D.H.S. on Edge

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA (BAKERSFIELD)

UNITED FARM WORKERS, ET AL., Plaintiffs,

vs.

KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, ET AL., Defendants.

Case No. 1:25-CV-00246-JLT-CDB

Wednesday, March 25, 2026
10:01 A.M

TRANSCRIPT OF INFORMAL CONFERENCE RE: DISCOVERY DISPUTE
**BEFORE THE HONORABLE CHRISTOPHER D. BAKER**
**UNITED STATES MAGISTRATE COURT JUDGE**

APPEARANCES:

For the Plaintiffs: Keker, Van Nest & Peters LLP
BY: NATALIE HEIM, ESQUIRE
633 Battery Street
San Francisco, California 94111
(415) 962-8802
nheim@keker.com

APPEARANCES CONTINUED ON NEXT PAGE.

Electronic Court Recording Operator: Otilia Rosales
Bakersfield Federal Courthouse
510 19th Street
Bakersfield, California 93301

Transcription Service: Liberty Transcripts
9107 Topridge Drive
Austin, Texas 78750
(847) 848-4907
DBPATEL1180@GMAIL.COM

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

with respect to searching the named Defendants, one, if the discovery request is directed towards DHS, then that includes -- it's not a search for custodians. It's a search of DHS to include the named Defendant.

So if the Court concludes that documents relating to the design, approval, and implementation and execution of "Operation At Large," of course, the Secretary of the Department is going to need to be searched for responsive records because, after all, if this is a nationwide platform, as you've said, it required some approval.

And if in fact, the defense or one of the defenses is going to be that what we saw in "Return To Sender" was an anomaly of, not your words, rogue but was not on script, then of course the Plaintiffs should have recourse to knowing whether "Operation At Large" was reviewed in its planning stages and was ultimately approved.

So if we arbitrarily say well the named Defendant, the Defendant of -- the Department of Homeland Security's Secretary is off limits then how do Plaintiffs prove up that this was not something that was created at the margins, this was something that was the product of a deliberative agency process of let's plan an operation, let's get approval and let's implement it on a national -- a nationwide basis?

Do you see my point? I guess I'm a little troubled by your what I perceive to be your argument, which is that the

CERTIFICATE

I, DIPTI PATEL, court approved transcriber, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and transcribed to the best of my ability.

____________________________

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

Liberty Transcripts                Date: March 30, 2026

# EXHIBIT K

# Greg Bovino Was Trump's Rising Star. Then He Arrived in Minneapolis.

WSJ wsj.com/us-news/bovino-ice-border-patrol-minneapolis-3b803543

Joshua Chaffin, Michelle Hackman

January 29, 2026




Gregory Bovino, head of U.S. Customs and Border Protection, in Minneapolis on Jan. 8. Michelle Gustafson for WSJ

Updated Jan. 29, 2026 11:44 am ET

MINNEAPOLIS—For six months, Gregory Bovino was the tip of the Trump administration's deportation spear, a spiky-haired Border Patrol agent from the John Wayne school of law-and-order who commanded the rolling immigration raids in Los Angeles, Chicago and other Democratic-run cities that netted thousands of arrests. They also prompted public backlash and complaints from terrified immigrant communities.

On Monday, nearly a month into Bovino's Minneapolis campaign, he was pulled from the field less than 48 hours after referring to border agents who killed a 37-year-old nurse as "victims."

"Operation Metro Surge" was supposed to be Bovino's most ambitious mission yet, a new kind of urban takeover by federal law enforcement. Instead, it descended into scenes of tear gas, pepper spray and civil unrest on the streets of a proudly progressive Midwestern city.



Federal agents point weapons as tear gas is fired at protesters in Minneapolis on Jan. 24. Stephen Maturen/Getty Images

It culminated on Saturday with the shooting death of Alex Pretti that shook much of the nation. It has also provoked a clash in the White House over the future of President Trump's signature policy.

With Bovino's removal, some are anticipating an end to the maximalist enforcement strategy he championed alongside his boss, Kristi Noem, the Department of Homeland Security chief. Rather than targeted raids on known criminals, they favored a wide net and aggressive tactics to catch and deport as many immigrants in the country illegally as possible.

Minneapolitans cheered the departure of a man some top Democrats described as a "cartoon villain." One indelible image of Metro Surge was of Bovino, emerging from an SUV into a wintry melee, like a general stepping onto a battlefield, and launching a canister that released green smoke at protesters.

Bovino didn't respond to a request to be interviewed for this story. Tricia McLaughlin, a DHS spokeswoman, said Bovino would remain with the government, and called him "a key part of the President's team and a great American."

Trump said on Fox News on Tuesday, "Bovino is very good, but he's a pretty out-there kind of a guy, and in some cases, that's good, maybe it wasn't good here."





Law-enforcement officers and protestors near a hotel that Bovino was reported to be staying at in Maple Grove, Minn., Monday. Seth Herald/Reuters; Shannon Stapleton/Reuters

In Minnesota, locals would agree. “Glad to see him go,” Keith Ellison, the state’s attorney general, told CNN after the news broke. Demonstrators held gleeful goodbye signs like “Bovino Ciao.”

Previously, Bovino and his crew had been refused service at a local Speedway gas station, and swarmed by hecklers. The hotel where he stayed had become a regular site of protest.

Bovino's removal marks the sidelining—at least for now—of a longtime Border Patrol agent who rose from relative obscurity to swashbuckling MAGA star. He did so by displaying the same knack as his ultimate boss for social-media theatrics and personal mythmaking.

While serving in California as a Border Patrol sector chief along the southern border, Bovino was fond of posting pictures of himself on horseback and heavily armed. He made short films touting his agents' derring do. One, called "The Gotaway," showed a fictional migrant sneaking across America's southern border. He stabs the first person he encounters and leaves him for dead. "Every apprehension matters," was the tagline. In a more recent one, Darth Vader is depicted as a Border Patrol agent wreaking havoc on sanctuary cities.

Then there's the coat. In frigid Minneapolis, Bovino was seen wearing a long olive overcoat with an oversize collar that looked to some a bit too much like it came from Hermann Göring's closet. "It's as if he literally went on eBay and purchased SS garb," said California Gov. Gavin Newsom. Bovino later said he'd owned the coat for 25 years, and that it had been issued by the Border Patrol.




Bovino, flanked by fellow federal agents and wearing a coat that attracted criticism, during a protest against ICE outside the Whipple Federal Building in Minneapolis on Jan. 15. Octavio Jones/Agence France-Presse/Getty Images

## ‘The fight’

Bovino, 55, grew up in small-town North Carolina, the son of a bar owner. He went on to graduate from Western Carolina University, and then earn a master’s degree at Appalachian State University. He joined the Border Patrol in 1996, serving from the edge of California to the Gulf Coast.

In a 2013 incident, he displayed a softer side. Bovino’s men encountered a Spanish-speaking man who claimed to be an American citizen; his father had abducted him as a two-year-old and taken him to Mexico. He’d been separated from his American mother for 35 years. She thought he was dead. Bovino and his men raised money to help reunite them.

“Too often our Border Patrol Agents deal with the darker aspects of border security—violence, drugs, and smuggling,” Bovino said in a statement at the time. “But David’s case was a welcome respite for all involved.”

In 2020, he became sector chief for the El Centro region, a sleepy California stretch considered a backwater because so few immigrants attempt to cross illegally there. He served throughout Joe Biden’s term and his career looked as though it was set to stall. He wanted to find more for his agents to do.

“We don’t want border patrol agents quiet,” he recalled in an October interview with The Wall Street Journal. “We want them engaged in the fight. So I asked several times, ‘Well, how about, you know, I go up north?’”

Soon after Trump was declared the winner of the 2024 election, Bovino did something innovative. He sent idling agents traditionally tasked with guarding the border hundreds of miles into the interior of California to carry out three days of raids, including on farms and at Home Depot parking lots. In a preview of what was to come, some drove unmarked cars. Bovino named the operation “Return to Sender.”

The new type of operation would protect Americans “from bad people and bad things,” Bovino said. But it rattled communities. In the agricultural areas around Bakersfield, reports mounted of parents keeping kids home from schools and farmworkers not showing up for fear of being snagged. “It seemed as if we took a step back as a society,” Joseph Brennan, the Bishop of the Diocese of Fresno, wrote in an early 2025 op-ed in The Fresno Bee.

There, according to a lawsuit filed last year by the American Civil Liberties Union, Bovino’s agents also started employing tactics that have since become commonplace. Some covered their faces or removed identifying badges. They made arrests without showing warrants, and used unusual force against anyone they perceived to be resisting them. And, the ACLU alleged, they used racial profiling to decide when to stop and question people about their immigration status.

Of 78 people arrested in Return to Sender, the Border Patrol had no prior knowledge of criminal or immigration history for 77 of them, according to an investigation by CalMatters, a nonprofit news organization. Judge Jennifer L. Thurston granted a temporary injunction, stating: “You just can’t walk up to people with brown skin and say, ‘Give me your papers.’” The Supreme Court would later rule some consideration of race and ethnicity was permitted in enforcement stops.

Bovino produced sleek action videos of the operation for social media.

Noem and her top adviser, Corey Lewandowski, liked what they saw, according to people familiar with their thinking. The pair wanted large immigration operations in so-called sanctuary cities.

Last spring, Bovino wrote a memo to Noem and Lewandowski, outlining a plan to take his strategy—using the Border Patrol for an urban immigration crackdown—nationwide and pitching himself as the right person to lead it, according to people who were briefed on it.

“A city-hopping campaign, an interior-operations campaign,” he told the Journal in the October interview. “Let’s take it to ’em everywhere in the United States.”

## ‘Good job’

In June, Bovino got his big break when Noem tapped him to lead operations in Los Angeles. His agents traveled in “roving patrols,” arresting people off the street. In one of the more unusual episodes, Bovino and his men descended on the city’s MacArthur Park on horseback.

All the while, Bovino kept up his social media activities, at one point posting a photo of himself and his agents posing with the city’s iconic Hollywood sign in the background. “The mean green team is not going anywhere,” said the caption.

After Los Angeles came Chicago, where Bovino led Operation Midway Blitz. Locals gawked as his agents patrolled the Chicago River in a Border Patrol boat armed with long guns.

“Part of what a police officer does is deter crime by his presence. Why should it be any different with us?” Bovino said about his highly visible approach.

His top boss seemed to approve. Noem had called him with positive news, Bovino told the Journal last fall.

“She goes…I got a surprise for you. The big man wants to talk to you,” Bovino recalled. President Trump, he noted gleefully, had said, “good job.”

Bovino’s approach, however, rankled many career officials at DHS and especially inside ICE, the agency primarily responsible for arresting and deporting immigrants in the country illegally, according to people familiar with the matter.

They complained Bovino's tactics were unnecessarily aggressive, ginning up opposition that put agents at higher risk. Some also pointed out Bovino's agents were doing sloppy work, arresting numerous people in street sweeps who would later be released because they had some sort of legal status—or were even U.S. citizens.

Chief among those critics was White House border czar Tom Homan, who argued for sticking to tried-and-true police tactics of developing and pursuing specific targets, which he said would prove more efficient, according to people familiar with the matter.

But voices like Homan's were disregarded. In the fall, at least half-a-dozen top ICE officers leading operations in regions across the country were reassigned and replaced with Border Patrol officials working for Bovino. Soon, ICE officers began employing many of the same aggressive tactics that Bovino had popularized.

White House spokeswoman Abigail Jackson, responding to a request for comment to Homan, rejected the idea of any dissension on the team. "The President's entire immigration enforcement team—including Secretary Noem and Border Czar Homan—are on the same page. They are working together seamlessly to implement the President's agenda, protect the American people, and deport criminal illegal aliens," she said.

The Minneapolis campaign began after a welfare-fraud scandal focused national attention on Minnesota's Somali community. In recent weeks, some 3,000 agents deployed in and around a city of 430,000 where police numbered only about 600. DHS called it "the largest immigration enforcement operation ever carried out."

But it quickly went sideways. Locals, having seen Los Angeles and Chicago, were prepared. They organized in neighborhood cells, connected by messaging apps, and blew whistles to warn of ICE's presence. They filmed agents' every move, often while yelling at them.

Minneapolis Mayor Jacob Frey and Minnesota's Democratic Gov. Tim Walz encouraged peaceful protest. Some critics accused them of stoking disorder. Nevertheless, a city torn apart by the 2020 police killing of George Floyd seemed to find a new sense of solidarity in resisting ICE.



Protesters engaged in standoff with ICE and Border Patrol agents on Jan. 15. Holden Smith/Zuma Press

Then came two fatal shootings. On Jan. 7, an ICE agent shot Renee Good, a 37-year-old mother. Saturday morning, Pretti was recording federal agents. He carried a concealed legally permitted 9mm handgun.

Bovino said, “This looks like a situation where an individual wanted to do maximum damage and massacre law enforcement.” The DHS said he “violently resisted” disarmament before agents fired “defensive shots.” A video analysis by the Journal suggests otherwise, and preliminary findings by CBP’s internal office of professional responsibility, seen by the Journal, corroborated the Journal’s findings.

Trump decided to change course.

By Monday, Homan was on his way to Minneapolis. Commander Bovino was out.

Copyright ©2026 Dow Jones & Company, Inc. All Rights Reserved.
87990cbe856818d5eddac44c7b1cdeb8

Appeared in the January 30, 2026, print edition as 'The Rise and Fall of Gregory Bovino'.

Joshua Chaffin is senior special writer for The Wall Street Journal's National Affairs team in New York. Joshua's reporting covers a wide range of domestic issues and figures shaping business, politics and society. He joined the Journal after more than two decades at the Financial Times, where as a foreign correspondent in the U.K. and Brussels he covered the Eurozone crisis, the rise of populism and Brexit, among other topics. He also wrote extensively on New York City developers and U.S. politics.

Michelle Hackman is a reporter in The Wall Street Journal's Washington bureau, where she covers U.S. immigration policy. Her coverage includes writing about the southern border, legal and employment-based immigration, refugee resettlement, care of unaccompanied children, immigration enforcement and relevant legislation on Capitol Hill. Previously, she wrote about health and education policy in Washington.

Michelle first joined the Journal in 2016 and is a graduate of Yale University. She can be reached on Signal at the username mhackman.59.

# EXHIBIT L

LOUISVILLE LEXINGTON LONDON FLORENCE CINCINNATI INDIANAPOLIS ORLANDO JACKSONVILLE TAMPA

KENTUCKIANA
COURT REPORTERS

**NO. 25-CV-12173**

**CHICAGO HEADLINE CLUB, BLOCK CLUB CHICAGO, CHICAGO NEWSPAPER GUILD LOCAL 34071, NABET-CWA LOCAL 54041, RAVEN GEARY, CHARLES THRUSH, STEPHEN HELD, DAVID BLACK, WILLIAM PAULSON, AUTUMN REIDY-HAMER, and LEIGH KUNKEL, on behalf of themselves and others similarly situated**

**V.**

**KRISTI NOEM, Secretary, ET AL.**

[redacted]

**DEPONENT: GREGORY BOVINO**

**DATE: October 30, 2025**

a courtroom powerhouse

schedule@kentuckianareporters.com
877.808.5856 | 502.589.2273

www.kentuckianareporters.com

operation of Midway Blitz that there will be additional agents assigned?

MR. KHOJASTEH: Object to form. I instruct you not to answer to the extent that doing so would reveal law enforcement privileges.

BY MR. BOWMAN:

Q. Okay. So there has been an invocation, Mr. Bovino, of a privilege called the law enforcement privilege, and an instruction to you not to answer the question. Do you intend to follow your counsel's advice and not answer that question?

A. Yes.

Q. To whom do you report in regards to Operation Midway Blitz?

A. Secretary Kristi Noem.

Q. And you are a direct report to the Secretary?

A. Yes.

Q. How often do you speak with Secretary Noem regarding the operations of Midway Blitz?

MR. KHOJASTEH: We're going to -- I'm going to instruct you not to answer. This is beyond the scope of this deposition as your way -- there's no foundation -- nothing foundational about this. You want to make an argument? Make an argument to the judge about it. I'm happy to do that. We're not

CERTIFICATE OF DIGITAL REPORTER

STATE OF ILLINOIS

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Stipulation page hereof, by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded digitally by me and then reduced to typewritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel and that I am in no way interested financially, directly or indirectly, in this action.

OFFICIAL SEAL
MEGAN MILA NOLASCO WEINER
Notary Public, State of Illinois
Commission No. 1012738
My Commission Expires June 27, 2029

Megan Weiner

MEGAN WEINER
DIGITAL REPORTER/NOTARY
MY COMMISSION EXPIRES: 06/27/2029
SUBMITTED ON: 11/01/2025

# EXHIBIT M

# Greg Bovino Loses His Job

theatlantic.com/politics/2026/01/greg-bovino-demoted-minneapolis-border-patrol/685770

Nick Miroff January 26, 2026

Politics

The Border Patrol chief has been ousted from his role as “commander at large,” and will return to El Centro.




Stephen Maturen / Getty



Listen1.0x

Seek

0:004:11

*Sign up for Inside the Trump Presidency, a newsletter featuring coverage of the second Trump term.*

Gregory Bovino has been removed from his role as Border Patrol “commander at large” and will return to his former job in El Centro, California, where he is expected to retire soon, according to a DHS official and two people with knowledge of the change.

Bovino’s sudden demotion is the clearest sign yet that the Trump administration is reconsidering its most aggressive tactics after the killing Saturday of 37-year-old Alex Pretti by Border Patrol agents under Bovino’s command.

Earlier today, President Trump appeared to signal in a series of social-media posts a tactical shift in the administration’s mass-deportation campaign. Trump wrote that he spoke with Minnesota Governor Tim Walz—whom the White House has blamed for inciting violence—and the two men are now on “a similar wavelength.” Tom Homan, the former ICE chief whom Trump has designated “border czar,” will head to Minnesota to assume command of the federal mobilization there, Trump said.

Homeland Security Secretary Kristi Noem and her close adviser Corey Lewandowski, who were Bovino’s biggest backers at DHS, are also at risk of losing their jobs, two of the people told me.

For the past seven months, Bovino has been the public face of a traveling immigration crackdown on cities governed by Democrats. Noem and other Trump officials gave Bovino the “commander” title and sent him and his masked border agents to Chicago, Charlotte, New Orleans, and then Minneapolis. Bovino became a MAGA social-media star as he traveled the country with his own film crew and used social media to hit back at Democratic politicians and random critics online. Veteran ICE and CBP officials grew more and more uneasy as Bovino worked outside his agency’s chain of command and appeared to relish his role as a political actor.

In Minneapolis, the Trump administration used Bovino as its lead spokesperson, scheduling daily press conferences where he defended agents’ rough tactics and cast blame on protesters and local officials. Border Patrol commanders typically avoid engaging in political arguments with elected officials.

Bovino’s fall comes two days after Border Patrol agents in Minneapolis fatally shot Pretti, an intensive-care nurse who worked with veterans. Hours after the shooting, Bovino appeared at a press conference and echoed statements by the Department of Homeland Security alleging Pretti sought to “massacre” the federal agents. Bovino repeatedly claimed that Border Patrol agents, not Pretti, were the victims.

Videos of the encounter showed no evidence for his claims. Pretti, who was licensed to carry a concealed weapon, did not draw a firearm or attack the agents. The videos show one agent disarming Pretti in the moments just before another agent shot him in the back.

DHS and U.S. Customs and Border Protection officials did not immediately respond to questions about Bovino’s departure from Minnesota and his current role. Asked about Bovino and Noem, a White House spokesperson referred to Press Secretary Karoline Leavitt’s statement today that Noem has the

president’s “utmost confidence and trust.”

In another post, Trump said he also spoke with Minneapolis Mayor Jacob Frey. “Lots of progress is being made!” the president wrote. “Tom Homan will be meeting with him tomorrow in order to continue the discussion.”

## About the Author

Nick Miroff is a staff writer at *The Atlantic* who covers immigration, the Department of Homeland Security, and the U.S.-Mexico border. He can be reached on Signal at NickMiroff.78




## Ideas That Matter

Subscribe and support more than 160 years of independent journalism.

Subscribe

TheAtlantic.com © 2026 The Atlantic Monthly Group. All Rights Reserved.

# EXHIBIT N

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE), et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 25-cv-03698-SI

**ORDER RE: EXPEDITED DISCOVERY DISPUTES**

On March 3, 2026, following a hearing on plaintiffs' motion for preliminary injunction, the Court ordered four categories of expedited discovery:

1. Defendants shall produce documents related to the renewals/nonrenewals of CORE employees.

2. Defendants shall produce communications from DHS and FEMA, including email communications, regarding the renewals/nonrenewals of CORE employees as well as "target" reductions of FEMA and CORE employee staffing.

3. Plaintiffs shall be permitted to depose DHS Secretary Kristi Noem, SOPDA Karen Evans, and the Chief Human Capital Officers of both DHS and FEMA.

4. By **March 5, 2026**, defendants shall identify to plaintiffs' counsel—in a declaration signed under penalty of perjury—the individual(s) involved in the decisions regarding the renewal of the CORE employees whom defense counsel referenced at the hearing.

Dkt. No. 321. On March 6, 2026, parties filed a statement regarding disputes as to the timing and scope of expedited discovery. Dkt. No. 327. Defendants attached as an exhibit to that statement a declaration from La'Toya Prieur, Chief Human Capital Officer ("CHCO") at FEMA, stating which individuals at FEMA and DHS were involved in the decisions related to the renewals/nonrenewals of CORE employees "to the best of [her] knowledge." Dkt. No. 327-1.

United States District Court
Northern District of California

A district court may permit expedited discovery "upon a showing of good cause." *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273 (N.D. Cal. 2002). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* To determine whether good cause justifies expedited discovery, courts often consider factors including whether a preliminary injunction is pending, the breadth of the discovery requests, the purpose of the request, and the burden on the defendants to comply with the requests. *See American LegalNet, Inc. v. Davis,* 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

Parties raise several unresolved discovery disputes in their joint statement. Having found good cause exists to justify expedited discovery, the Court ORDERS the following:

**Timeframe of Production:** Plaintiffs take the position that responsive documents and a privilege log should be produced by March 12, 2026. Dkt. No. 327 at 1, 2-3. Defendants propose producing non-privileged responsive documents within 30 days of the Court's order. *Id.* at 9. Defendants shall produce documents and communications responsive to the first two categories of expedited discovery by **March 17, 2026**. Defendants shall also produce a privilege log on that date.

**Scope of Production:** Defendants have agreed to a timeframe of December 1, 2025 to March 6, 2026 for production of documents and communications responsive to the first two categories of expedited discovery. *Id.* at 9. Plaintiffs argue that a March 6, 2026 cut-off date is arbitrary. *Id.* at 3. The Court agrees with defendants that a March 6, 2026 discovery cut-off date is reasonable and sets the discovery cut-off date as such.

Defendants argue that production should be limited to custodial records of individuals identified in Ms. Prieur's declaration. *Id.* at 9-10; *see* Dkt. No. 327-1. Plaintiffs argue that production must include searches of the entire DHS Office of Secretary, DHS Office of the Chief Human Capital Officer (OCHCO), FEMA leadership, FEMA OCHCO, and FEMA supervisors of programs/offices involved in the CORE renewals. *Id.* at 1. Plaintiffs state that these searches should specifically include Kristi Noem, Corey Lewandowski, and Kara Voorhies. *Id.* The Court agrees with plaintiffs that there is no basis for limiting searches to only those decisionmakers identified in Ms.Prieur's declaration and orders defendants to search the custodial records of the aforementioned

United States District Court
Northern District of California

offices and individuals.

**Depositions:** Plaintiffs contend that depositions should take place the week of March 16, 2026. *Id.* at 5-6. Defendants propose depositions take place one week after production. *Id.* at 10. Defendants argue that any deposition of Karen Evans should occur after depositions of the FEMA and DHS CHCOs. *Id.* Depositions shall be scheduled for the week of **March 30, 2026**. The Court permits plaintiffs to choose the order of the depositions.

**IT IS SO ORDERED**.

Dated: March 9, 2026

SUSAN ILLSTON
United States District Judge

# EXHIBIT O

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN A. ROBBINS (VA 73366)
Assistant Director
NANCY N. SAFAVI
STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
TOLA MYCZKOWSKA
LAURIE WISENER
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-8275
Fax: (202) 305-7211
Email: Jonathan.A.Robbins@usdoj.gov

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Tel: (213) 894-2574 | 3992
E-mail: Alexander.Farrell@usdoj.gov
Pauline.Alarcon@usdoj.gov

*Counsel for Defendants*

*(Additional counsel listed next page)*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

PEDRO VASQUEZ PERDOMO, *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,

Defendants.

***DISCOVERY MATTER***

No. 2:25-cv-05605-MEMF-SP

**JOINT STIPULATION TO EXTEND CERTAIN PRODUCTION DEADLINES SET FORTH IN ECF NOS. 370, 486**

Hon. Maame Ewusi-Mensah Frimpong
United States District Judge

Referred to Hon. Sheri Pym
United States Magistrate Judge

STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-9500

*Counsel for Stop/Arrest Plaintiffs*

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Telephone: (949) 824-9894

*Counsel for Stop/Arrest Plaintiffs*

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

JESSICA K. BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

HYDEE FELDSTEIN SOTO (SBN 106866)
City Attorney
hydee.feldsteinsoto@lacity.org
VALERIE L. FLORES (SBN 138572)
valerie.flores@lacity.org
MICHAEL J. DUNDAS (SBN 226930)
mike.dundas@lacity.org
MARIA LOUISE COUSINEAU (SBN 122280)
maria.cousineau@lacity.org
RANDALL G. SOMMER (SBN 214099)
randall.sommer@lacity.org
SHUBHRA SHIVPURI (SBN 295534)
shubhra.shivpuri@lacity.org
OFFICE OF THE LOS ANGELES CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012-4130
Tel.: 213-922-8382; Fax: 213-978-7957

*Counsel for Intervenor City of Los Angeles*

E. MARTIN ESTRADA (SBN 223802)
martin.estrada@mto.com
DANIEL B. LEVIN (SBN 226044)
daniel.levin@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
V. GRACE DAVIS (SBN 336732)
grace.davisfisher@mto.com
V. ROMAN LEAL (SBN 348892)
roman.leal@mto.com
WENDY QIUYU XIAO (SBN 342702)
wendy.xiao@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Tel.: 213-683-9100; Fax: 213-687-3702

*Counsel for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915

*Counsel for Intervenor County of Los Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190

*Counsel for Intervenor City of Pasadena*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Counsel for Intervenor City of Los Angeles*

* Admitted pro hac vice

WHEREAS, on October 17, 2025, the District Court granted Plaintiffs' and Intervenors' motion to serve four requests for production (ECF No. 211);

WHEREAS, Plaintiffs and Intervenors served the requests on October 21, 2025;

WHEREAS, the Court, Hon. Sheri Pym, ordered Defendants to respond to the requests by November 21, 2025 (ECF No. 227);

WHEREAS, on December 23, 2025, Plaintiffs filed a motion to compel asserting inadequacies in Defendants' productions and searches (ECF No. 320);

WHEREAS, on January 16, 2026, the Court, Hon. Sheri Pym, entered an Order granting the motion to compel, holding, *inter alia*, that Defendants must "[f]orensically image any cell phone used by any agent present at any of the 15 operations [in expedited discovery] and review these devices for material responsive to RFP Nos. 2 and 3; and [p]rovide affidavits detailing their document collection process." (ECF No. 370 at 9 [the "Order"]);

WHEREAS, Judge Pym denied Defendants' request for a stay of the Order but granted Defendants an extension on compliance with the Order until February 13, 2026 (ECF No. 387);

WHEREAS, on January 30, 2026, Defendants filed an Objection to the Order on the motion to compel (ECF No. 395), which Plaintiffs have opposed, and which is currently pending before the District Judge;

WHEREAS, on February 12 and 25; March 13; and April 3, 10 and 27, the parties agreed to further extensions of time as to certain production deadlines set by the Order, which Judge Pym subsequently granted;

WHEREAS, the parties met and conferred and agree to set rolling production deadlines for the further production of responsive ESI from government-issued cellular

phones[1], and that all data forensically collected from cellular phones should be exported and produced in RSMF format;

NOW, THEREFORE, in light of the foregoing, the Parties stipulate and respectfully request that the Court enter the following order:

1. The Court vacates the deadline with respect to the forensic imaging of government phones and production of responsive ESI collected from those phones, which was set forth in its Order on the parties' most recent stipulation, ECF No. 496;
2. Defendants will produce responsive ESI collected from three phones every two weeks for the "priority custodians" identified in ECF 461 (initiating agents, supervisors, and team leads), prioritizing by custodians selected by Plaintiffs;
3. The parties reserve the right to re-evaluate the pace of production based on technological capabilities;
4. With respect to the Order's requirement to image government phones other than for the priority custodians identified in ECF 461, that requirement is to be stayed by an additional ninety (90) days, from June 2 to August 31, 2026;
5. Defendants will produce as soon as possible, but no later than May 29, an OM2 report from January 1, 2025 until November 2025, a Daily Apprehension Log to cover the time period of January 2025 to May 2026 with arresting officer information, and an ERO arrest report with arrestee names for the Los Angeles Area of Responsibility for Aug 2025 to May 2026;
6. Defendants will produce by May 20 the updated ICE OPLA Fourth Amendment training (RFP No. 14 [UFW Set 2]);
7. Defendants will produce by May 29 documents responsive to RFP Nos. 7 and 9 [UFW Set 2], for a date range extending to May 9, 2026;

[1] Plaintiffs' motion for sanctions with respect to the imaging of personal cellular phones has been fully briefed, and nothing in this stipulation changes the parties' positions with respect to such imaging.

8. Defendants will produce documents responsive to RFP No. 18 [UFW Set 3], by May 29;
9. Defendant will collect documents potentially responsive to RFP No. 20 [UFW Set 3], for custodians Todd Lyons, Kristi Noem, and the ICE ERO FOD(s), for a date range of May 19, 2025 to Sept 15, 2025, using objective criteria, review the documents for responsiveness, and submit such documents for vetting with White House counsel by June 10, 2026.

IT IS SO STIPULATED AND AGREED:

Dated: May 20, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

NANCY N. SAFAVI
STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
TOLA MYCZKOWSKA
Trial Attorneys

*/s/ Jonathan A. Robbins*
JONATHAN A. ROBBINS
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-8275
Jonathan.A.Robbins@usdoj.gov

*Counsel for Defendants*

DATED: May 20, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Sara Worth*
Sara Worth
*Counsel for Stop/Arrest Plaintiffs*

DATED: May 20, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Grace Davis Fisher*
GRACE DAVIS FISHER
*Counsel for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

## ATTESTATION OF FILER

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 20, 2026

Respectfully submitted,

*/s/ Jonathan A.Robbins*
JONATHAN A. ROBBINS
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
LAUREN DAVIS - # 357292
ldavis@aclunc.org
SHILPI AGARWAL - # 270749
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

MAYRA JOACHIN - # 306065
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-5000

ANDRES HOLGUIN-FLORES - # 305860
aholguinflores@aclu-sdic.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Attorneys for Plaintiffs*

FRANCO MUZZIO - # 310618
fmuzzio@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
JULIA GREENBERG - # 333864
jgreenberg@keker.com
REAGHAN E. BRAUN - # 340526
rbraun@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Plaintiffs*

MARIO MARTINEZ - # 200721
mmartinez@farmworkerlaw.com
EDGAR IVÁN AGUILASOCHO - # 285567
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Avenue, Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

*Attorneys for Plaintiff United Farm Workers*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; et al.,

Defendants.

Case No. 1:25-cv-00246-JLT-CDB

**DECLARATION OF JASON PALM ISO JOINT DISCOVERY LETTER RE: SEARCH TERMS, DHS CUSTODIANS, AND NARROWED RFPS**

Date: November 6, 2026
Time: 10:00 a.m.
Dept.: 510 19th Street, Suite 200
Judge: Hon. Christopher D. Baker

Date Filed: February 26, 2025

Trial Date: None set

I, Jason Palm, declare:

1. I am an attorney licensed to practice in the State of California and am a staff attorney specializing in e-discovery matters at Keker, Van Nest, & Peters LLP ("KVP"), counsel for Plaintiffs in the above-referenced action.

2. Except where expressly stated, I have knowledge of the facts set forth herein, and if called upon to testify as a witness thereto, I could do so competently under oath. My descriptions of discovery practices are based on my professional experience. I could testify competently to those matters if called as a witness. I have not administered or inspected Defendants' Microsoft Purview, Archive360, or Relativity environments.

3. I hold a bachelor's degree from Stanford University and a juris doctor from the University of California College of the Law, San Francisco. After law school, I worked as a contract attorney for approximately eight years before becoming a staff attorney at then Keker & Van Nest in 2008. My current title is eDiscovery Counsel.

4. As eDiscovery Counsel, I am typically responsible for overseeing the collection, review, and production of client documents from beginning to end. Specifically, my responsibilities include, among other things, (i) overseeing document collections, (ii) working with the litigation case teams at KVP to develop, test and revise search terms to identify documents that are likely relevant and responsive to issued document requests, (iii) drafting the document review protocol used by the contract attorneys assigned to review client documents; (iv) managing the document review process, including quality control review and finalizing document productions; and (vi) working with in-house staff and outside vendors in all phases of the document collection, review and production process. In my time at Keker, I have managed well over 100 document reviews and generated hundreds of document productions in cases ranging from complex commercial litigation, such as patent litigation and trade secret matters, to criminal and government investigations and civil rights litigation involving various government agencies. With respect to this litigation, I am consulting on document collection and search questions as well as managing the review and production of documents alongside colleagues working under my supervision.

5. In the numerous cases I have worked on, to respond to custodial discovery requests, the producing party typically broadly ingests the available electronically stored information ("ESI") for identified custodians likely to have responsive records ("Custodial ESI") within a specified time frame into a review platform, such as RelativityOne ("Relativity").The parties then negotiate targeted search terms to identify a narrower set of documents for review and production from within Relativity. I understand Defendants in this litigation use a version of Relativity also referred to as Civil Online Relativity Application ("CORA").

6. Relativity has advanced search features that allow parties to target potentially responsive documents while reducing false positives, *i.e.*, irrelevant documents captured by search terms that are otherwise related to the claims. For example, Relativity's dtSearch functionality permits parties to construct more targeted searches using at least the following methods and, more importantly, using combinations of these methods:

i) The **AND** connector requires both specified words or concepts to appear in a document, while **OR** permits either to appear and **NOT** excludes specified terms.

ii) Parentheses group terms so that these connectors apply to the intended combinations. For example, (training OR guidance) AND (arrests OR stops) require at least one word from each group.

iii) **Phrase searching** identifies words appearing together as a phrase, such as "voluntary departure."

iv) **Proximity searching** using W/x requires terms to appear within a specified number of words of each other, in either order. For example, training W/20 arrests searches for "training" within 20 words of "arrests."

v) **Wildcards** capture variations of a word. For example, arrest* can identify "arrest," "arrests," "arrested," and "arresting."

7. Once documents are ingested into Relativity, parties can efficiently generate search term reports ("STRs") that identify hit counts and allow both sides to evaluate whether individual terms may be producing disproportionate numbers of results. STRs can generally be generated as soon as within hours of documents being into Relativity with minimal additional

administrative effort. STRs report the number of documents matching each search term as well as "unique" hits, meaning documents matching only a single search term and none of the other terms included in the report. In a good set of search terms, the "unique" hit counts will be low because most documents will hit on multiple search terms; high "unique" counts flag the need to refine search terms. Iterating modifications to search terms and sharing results via STRs allow parties to assess whether proposed search term modifications reduce the likelihood of false hits without excluding responsive material. For example, by testing individual words within a search string, parties can identify words that disproportionately contribute to high hit counts and may be generating false positives. The producing party can also spot check the documents excluded by that refinement to determine whether it reduces irrelevant results without eliminating responsive documents.

8. In this case, I understand that Defendants have declined to ingest the complete, date-limited custodial files for the identified custodians over the relevant time period based on unspecified burdens or technical constraints and that, to accommodate these asserted constraints, the parties have instead agreed to a two-step process. First, Defendants will run broad search terms in Microsoft Purview or Outlook ("Collection Terms") to identify the initial set of custodial documents to be collected and ingested into Relativity. Second, once ingested the parties will run more targeted terms as necessary, which will be informed and by Relativity's more advanced features ("Review Set Terms"). The Collection Terms should not be so specific as to leave potentially relevant documents un-collected. I understand that the parties dispute the appropriate scope of the Collection Terms.

9. The Collection Terms must necessarily be broader than the Review Set Terms. This is because (a) Purview has more limited search and refinement capabilities; (b) it does not deduplicate documents across searches or across custodians to yield a true starting population on which Review Set Terms can be tested; and (c) it does not provide the same detailed STRs needed to evaluate search results and develop targeted refinements. And absent re-collection, any potentially responsive document excluded from the initial collection for failure to hit on the

Collection Terms will never make it into Relativity for more advanced searching, review and production.

10. I understand the parties have largely agreed to use **AND** connectors between terms that connect two or more concepts for initial collection searches in Purview, followed by proximity connectors and other advanced targeting techniques in Relativity to narrow searches producing high hit counts. However, each additional mandatory **AND** condition in the Collection Terms increases the risk of excluding potentially responsive documents, particularly where the required terms may not appear together in ordinary communications.

11. I have reviewed the parties' competing proposals as detailed in Appendix 1 to the relevant briefing. Defendants' proposals for disputed CBP Terms D1–D5 would capture no additional documents beyond those already captured by the agreed-upon terms. Adding agreed terms as AND connectors to the Plaintiff's proposed D1-D5 terms would result in entirely duplicative documents. In other words, this approach effectively eliminates Plaintiffs' additional proposed terms in D1-D5, as it guarantees that Defendants will not collect any documents beyond those documents already captured by the agreed upon terms.

12. For example, Plaintiffs' proposed Term D1 seeks documents concerning training, policies, and practices regarding deportations, stops, and arrests. Defendants propose limiting that search by adding "AND (Bakersfield OR 'RtS' OR 'Return to Sender' OR Sacramento OR 'SAC' OR Stockton OR Florin OR Capitol)." Under Defendants' proposal, a document would have to contain both the training, policy, or practice terms in D1 **and** at least one of the additional geographic or operation-specific terms. But Defendants have already agreed to search for each of those geographic or operation-specific terms independently. Because "Bakersfield" is an agreed-upon standalone search term (Term A2), any document containing "Bakersfield" would already be captured by A2, whether or not it also contains the training, policy, or practice terms in Plaintiffs' D1. Thus, adding Defendants' proposed limitation to D1 would capture no documents that are not already captured by other agreed-upon search terms. It would, however, *exclude* documents that Plaintiffs' proposed D1 would capture, such as a generally applicable policy memoranda concerning approved arrest practices or documents concerning particular operations

that do not happen to specifically mention Bakersfield (or the other agreed-upon standalone terms).

13. Defendants appear to generally contend that each Collection Term should include an operation name, geographic location, or specific Border Patrol unit connected to other subject-matter terms using **AND**. In my experience, requiring these explicit references in every initial search for documents to be collected risks arbitrarily excluding otherwise responsive documents. Even if the parties agree that responsive documents must concern particular operations, locations, or agency units, relevant documents related to those particular operations, locations, or agency units may not explicitly use any of the terms in that limited set.

14. For example, a policy or directive applicable to Operation at Large or Return to Sender may not mention either operation by name, such as documents about an operation that were created before the operation was formally named. It is standard practice to use varied, partially overlapping search terms, usually in an iterative process, to discover different ways in which relevant subjects may be discussed, rather than require every potentially responsive document to use a particular, predetermined combination of words.

15. I understand Defendants' principal objection to the disputed Customs and Border Patrol (CBP) Collection Terms that are listed in Appendix 1 is that they *might* capture documents concerning unrelated operations or operations outside this District. In my experience, these are precisely the types of concerns that are more effectively addressed through targeted searches in Relativity after initial collection and STRs. Once documents are ingested, the parties can generate STRs in an iterative process to identify searches or individual words contributing disproportionately to high hit counts. They can then test proximity restrictions, geographic limitations, and **AND NOT** exclusions, etc., to reduce false positives concerning unrelated operations.

16. I understand Defendants recently informed Plaintiffs' counsel that DHS uses Microsoft Purview eDiscovery, which unlike CBP's Microsoft Purview eDiscovery platform, supports proximity searching through a NEAR connector, such as NEAR(20). But imposing such a connector at the collection stage is an overly restrictive method of identifying potentially

relevant materials, particularly where the words in the search string may not inherently appear close together in ordinary communications. Proximity connectors should be proposed, tested, and revised as needed once the documents are in Relativity.

17. I understand Defendants' principal objection to the Plaintiffs' proposed Department of Homeland Security (DHS) Collection Terms that are listed in Appendix 1 is that they *might* capture documents concerning unrelated DHS components, such as TSA. This concern can likewise be addressed more effectively through targeted searches in Relativity after collection. For example, the parties could search for "TSA" within the collected documents to assess whether TSA-related materials are contributing significantly to the results. If they are, the parties could then use proximity restrictions, more precise agency-specific connectors, or exclusions such as **AND NOT TSA**, etc., to remove likely irrelevant results from the review and production process. These refinements can and should be tested in Relativity against actual documents to assess whether they appropriately exclude unrelated DHS materials without eliminating responsive records.

18. Broad collection at the outset also minimizes the burden on Defendants by reducing the possible need to recollect documents from the same custodians using different search terms later. Going back to the original sources to collect more data later on would be more burdensome than using broad Collection Terms at the outset, then refining search terms and generating STRs after a sufficiently broad set of documents has already been ingested into Relativity.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed October 14, 2026, in San Francisco, California.

JASON PALM

# Defendants' Exhibits

# Defendants' Exhibit A

| STR - Crosstab 1 - 6.14 S | memo* | polic* | practice | procedure* | train* |
|---|---|---|---|---|---|
| “terry stops” | 1 | 58 | 5 | 5 | 41 |
| “terry stop” | 20 | 68 | 14 | 19 | 42 |
| “investigative detentions” | 136 | 206 | 47 | 143 | 206 |
| “detentive stop” | 309 | 461 | 179 | 433 | 483 |
| “detentive stops” | 316 | 508 | 175 | 501 | 540 |
| “investigative detention” | 373 | 905 | 57 | 343 | 896 |
| “Fourth Amendment” | 600 | 1,417 | 406 | 809 | 1,511 |
| “reasonable suspicion” | 949 | 2,370 | 494 | 1,224 | 2,086 |
| catch* | 1,471 | 4,204 | 550 | 1,148 | 4,434 |
| “flight risk” | 798 | 3,747 | 325 | 734 | 6,346 |
| “Title 8” | 1,637 | 6,586 | 951 | 1,780 | 6,572 |
| deport* | 2,549 | 10,000 | 1,082 | 3,069 | 7,705 |
| detain* | 4,560 | 14,356 | 2,026 | 4,348 | 12,249 |
| warrant* | 5,170 | 18,342 | 2,574 | 5,413 | 14,704 |
| remov* | 7,326 | 21,346 | 2,754 | 6,836 | 20,302 |
| detent* | 7,246 | 24,979 | 1,834 | 4,630 | 23,402 |
| crim* | 8,280 | 27,217 | 3,234 | 8,672 | 24,525 |
| stop* | 8,632 | 28,912 | 2,587 | 5,947 | 29,617 |
| smugg* | 8,225 | 32,416 | 2,179 | 6,393 | 32,054 |
| illegal* | 9,318 | 36,287 | 2,949 | 7,174 | 34,666 |
| alien* | 9,961 | 36,274 | 2,601 | 7,787 | 34,694 |
| arrest* | 9,940 | 40,826 | 3,067 | 7,633 | 36,423 |
| immigr* | 10,678 | 38,920 | 3,037 | 8,310 | 37,193 |
| border* | 18,349 | 49,134 | 4,227 | 12,654 | 65,192 |

# Defendants’ Exhibit B

Ex. B

## USBP Search Terms

| USBP — RFP Set 1 | USBP — RFP Set 2 |
| --- | --- |
| **Parties' Agreed Search Terms**<br>A1. Return to Sender OR RtS<br>A2. Bakersfield<br>A3. Kern<br>A4. Home Depot<br>A5. Walmart<br>A6. Consent<br>A7. Consensual Encounter<br>A8. BLM OR "bureau of land management"<br>A9. "voluntary return" | **Parties' Agreed Search Terms**<br>A1. Sacramento<br>A2. Florin<br>A3. Truxel<br>A4. "SAC"<br>A5. Stockton<br>A6. Capitol |
| **Parties' Agreed Superset Search Terms**<br>A10. "voluntary departure" OR I-826<br>A11. ("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide")<br>A12. ("Operation at Large" OR OAL OR OpAtLarge) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide)[1] | **Parties' Agreed Superset Search Terms**<br>A7. ("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number")<br>A8. "voluntary departure" OR I-826<br>A9. ("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide")<br>A10. "fox news" AND ("ridealong" OR "ride along") AND ("enforcement operation" OR "immigration enforcement") |

[1] Defendants have agreed to run Term 1 on 14 specific RFP Set 1 custodians only. For all other RFP Set 1 terms, Defendants agree to run the terms across the complete set of custodians they identified for those RFPs.

Ex. B

## Plaintiffs' Proposed Additional USBP Superset Terms with Defendants' Proposed Superset Terms— Disputed

Purview Collection Terms (also referred to as "superset" terms) define the initial collection for subsequent targeted searches in CORA (Relativity).

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D1 | RFP 12 (policies training warrantless) | 1 and 2 | (deport* OR remov* OR arrest* OR detain OR detention OR stop* OR warrant OR "Title 8") AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide") AND (Bakersfield OR "RtS" OR "Return to Sender" or Sacramento OR "SAC" or Stockton OR Florin OR Capitol)<br>And:<br>("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide") | (deport* OR remov* OR arrest* OR detain OR detention OR stop* OR warrant OR "Title 8") AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide") |

Ex. B

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D2 | RFP 6 (stop arrest detain target profile), 7 (stopped but not arrested), 8 (stopped arrested detained), 10 (warrants stop arrest detain), 23 (voluntary departure) | 1 and 2 | (stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (enforcement OR operation OR raid) AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol)<br>And:<br>("reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide")<br>And:<br>"voluntary departure" OR I-826<br>And:<br>"voluntary return" | (stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (enforcement OR operation OR raid) |

Ex. B

| No. | RFP No. | RFP Set | Defendants’ Proposed Purview Collection Terms | Plaintiffs’ Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D3 | RFP 6 (stop arrest detain target profile), 7 (stopped but not arrested), 8 (stopped arrested detained), 16 (demographic info of stop arrest detain) | 1 and 2 | (race OR ethnicity OR nationality OR demographic OR latin* OR hispan* OR Mexic* OR brown* OR black OR “day labor*” OR farm* OR agri* OR field* OR “bad people” OR “bad things”) AND (“Return to Sender” or “RtS” or Bakersfield or Kern or Sacramento or “SAC” or Stockton or Florin or Capitol)<br>And:<br>(“reasonable suspicion” OR “Fourth Amendment” OR “4th Amendment” OR “Fifth Amendment” OR “5th Amendment” OR 1357 OR “probable cause” OR “investigative detention*” OR “detentive stop” OR “terry stop” OR “roving patrol” OR “flight risk” OR “likelihood of escape” OR “sanctuary” OR warrantless) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR “muster” OR “guidance” OR “guide”)<br>And:<br>Consent<br>And:<br>Consensual Encounter | (race OR ethnicity OR nationality OR demographic* OR immigr* OR illegal* OR alien* OR latin* OR hispan* OR Mexic* OR brown* OR “day labor*” OR farm* OR agri* OR field* OR “bad people” OR “bad things”) AND (stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR “investigative detention” OR “detentive stop” OR “terry stop” OR “roving patrol stop”) |

Ex. B

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D4 | RFP 46 (quotas), 9 (goals quotas), 10 (warrants stop arrest detain) | 1 and 2 | (Goal OR quota OR "minimum number") AND (stop* OR arrest* OR deport* OR detent* OR detain* OR custod*) AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol)<br>And:<br>("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number")<br>And:<br>Search Bovino's ESI for Stephen Miller's and Kristi Noem's work email addresses. | (Goal OR quota OR "minimum number") AND (stop* OR arrest* OR deport* OR detent* OR detain* OR custod*) |
| D5 | RFP 4 (policies), 11 (policies training), 27 (Bovino), 46 (quotas), 53 (Bovino), 55 (Miller/Noem/whit e house), 9 (goals quotas) | 2 | (Bovino AND ("Stephen Miller" OR Noem) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number") AND (Sacramento OR "Return to Sender" OR "RtS" OR Bakersfield or Kern OR "SAC" or Stockton or Florin or Capitol or "operation at large" or "OAL" or "OpAtLarge"))<br>And:<br>Search Bovino's ESI for Stephen Miller's and Kristi Noem's work email addresses. | (Bovino OR "Stephen Miller" OR Noem) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number") |

# Defendants' Exhibit C

Ex. C

## DHS Search Terms

| DHS — RFP Sets 1 and 2 |
| --- |
| **Parties' Agreed Superset Search Terms**<br>A1. Return to Sender OR RtS<br>A2. (BLM or "bureau of land management") w/10 "parking lot"<br>A3. [Bovino's email address]<br>A4. Bovino w/20 (Capitol w/10 (speech or interview))<br>A5. (miller w/20 (quota OR goal OR minimum)<br>A6. ("ride along" or ridealong) w/20 fox AND Sacramento<br>A7. Bovino AND "El Centro" w/10 (operation or enforcement)<br>A7. "El Centro" w/20 "voluntary departure"<br>A9. ("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number" OR stop OR arrest OR warrant) |
| |

Ex. C

## Plaintiffs’ Proposed Additional Superset Terms — Disputed

Purview Collection Terms (also referred to as “superset” terms) define the initial collection for subsequent targeted searches in CORA (Relativity).

In DHS comparisons, underlining shows additions to the CBP string; strikethrough shows deletions and is not part of the DHS search.

| No. | RFP No. | RFP Set | Defendants’ Proposed Purview Collection Terms | Plaintiffs’ Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D1 | RFP 6 (stop arrest detain target profile), 7 (stopped but not arrested), 8 (stopped arrested detained), 10 (warrants stop arrest detain) | 1 and 2 | Return to Sender OR RtS<br><br>And:<br><br>(“Operation at Large” OR “OAL” OR “OpAtLarge”) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or “minimum number” OR stop OR arrest OR warrant)<br><br>And:<br><br>[Bovino’s email address]<br><br>And:<br><br>Bovino AND “El Centro” w/10 (operation or enforcement) | (stop* OR arrest* OR detent* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR “investigative detention” OR “detentive stop” OR “terry stop” OR “roving patrol stop” OR “home depot”) AND (enforcement OR operation OR raid) AND (Bovino OR “Border Patrol” OR CBP OR “El Centro”) |

Ex. C

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D2 | RFP 6 (stop arrest detain target profile), 7 (stopped but not arrested), 8 (stopped arrested detained), 16 (demographic info of stop arrest detain) | 1 and 2 | Return to Sender OR RtS<br><br>And:<br><br>("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number" OR stop OR arrest OR warrant)<br><br>And:<br><br>[Bovino's email address]<br><br>And:<br><br>Bovino AND "El Centro" w/10 (operation or enforcement) | (race OR ethnicity OR nationality OR demographic* OR immigr* OR illegal* OR alien* OR latin* OR hispan* OR Mexic* OR brown* OR "day labor*" OR farm* OR agri* OR field* OR "bad people" OR "bad things" OR "Home Depot") AND (stop* OR arrest* OR detent* OR detain* OR catch* OR warrant* OR flight* OR flee* OR escape* OR depart* OR deport* OR remov* OR collateral* OR consen* OR encounter* OR question* OR "investigative detention" OR "detentive stop" OR "terry stop" OR "roving patrol stop") AND (Bovino OR "Border Patrol" OR "CBP" OR "El Centro") |

Ex. C

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D3 | RFP 46 (quotas), 9 (goals quotas) | 1 and 2 | ("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number" OR stop OR arrest OR warrant)<br><br>And:<br><br>(miller w/20 (quota OR goal OR minimum)<br><br>And:<br><br>[Bovino's email address] | (Goal OR quota OR "minimum number") AND (stop* OR arrest* OR deport* OR detent* OR detain* OR custod*) |

Ex. C

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D4 | RFP 46 (quotas), 53 (Bovino), 55 (Miller/Noem/white house), 9 (goals quotas) | 1 and 2 | ("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number" OR stop OR arrest OR warrant)<br><br>And:<br><br>(miller w/20 (quota OR goal OR minimum)<br><br>And:<br><br>[Bovino's email address] | (Bovino OR "Stephen miller" OR Noem) AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number") |

Ex. C

| No. | RFP No. | RFP Set | Defendants' Proposed Purview Collection Terms | Plaintiffs' Additional Proposed Purview Collection Terms |
|---|---|---|---|---|
| D5 | RFP 6 (stop arrest detain target profile), 7 (stopped but not arrested), 8 (stopped arrested detained), 10 (warrants stop arrest detain), 23 (voluntary departure) | 1 and 2 | Return to Sender OR RtS<br><br>And:<br><br>("Operation at Large" OR "OAL" OR "OpAtLarge") AND (muster OR training OR trained OR policy OR policies OR practice OR memo OR procedure OR guidance OR guide OR goal OR quota or "minimum number" OR stop OR arrest OR warrant)<br><br>And:<br><br>[Bovino's email address]<br><br>And:<br><br>Bovino AND "El Centro" w/10 (operation or enforcement)<br><br>And:<br><br>"El Centro" w/20 "voluntary departure" | ("voluntary departure" OR "I-826" OR "reasonable suspicion" OR "Fourth Amendment" OR "4th Amendment" OR "Fifth Amendment" OR "5th Amendment" OR 1357 OR "probable cause" OR "investigative detention*" OR "detentive stop" OR "terry stop" OR "roving patrol" OR "flight risk" OR "likelihood of escape" OR "sanctuary" OR warrantless OR stop OR arrest OR warrant) AND (training OR trained OR policy OR policies OR practice OR memo OR procedure OR "muster" OR "guidance" OR "guide") |
| D6 | RFP 4 (policies), 11 (policies training), | 1 and 2 | ("Operation at Large" OR OAL OR OpAtLarge) AND Sacramento OR SAC OR Florin OR Truxel<br>AND<br>Return to Sender OR RtS AND Bakersfield OR kern | Bakersfield OR Kern OR "Sacramento" OR "Florin" OR "Truxel" OR "SAC" OR "Stockton" |

# Defendants' Exhibit D

**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

SG:TR
39-11E-1900

September 16, 2026

**Via email** to nheim@keker.com
Natalie Heim
Keker, Van Nest, and Peters
633 Battery Street
San Francisco, CA 94111

Re: Plaintiffs' August 31, 2026 Letter Regarding Plaintiffs Further Narrowed RFPs in *United Farm Workers, et al. v. Mullin, et al.*, 1:25-cv-00246-JLT-CDB

Dear Ms. Heim,

We write in response to your August 31, 2026 letter ("Pls.' Ltr."), which Plaintiffs submitted in Response to Defendants' August 17, 2026 Objections and Responses ("Dfs.' Rsp.") to Plaintiffs' Further Narrowed Requests for Production for Nos. 3, 4, 11, 12, 23, 26, 27, 46, 53, 55, and 56 ("FNRFPs").

## I. Vagueness Objections

Preliminarily, to the extent Plaintiffs reiterate their general allegations concerning Defendants' discovery obligations, of refusal, delay, and noncompliance, Defendants have provided Plaintiffs a thorough account of the discovery progress in this case refuting these allegations. *See generally* Defendants' August 18, 2026 Letter to Plaintiffs (responding to Plaintiffs' July 10, 2026, and August 4, 2026 Letters). And an adverse ruling on a discovery-specific dispute is not demonstrative of refusal, delay, or noncompliance. *See* Pls.' Ltr. at 1-2 (referring to ECF No. 198). It is simply an adverse ruling. The Court did not find, as Plaintiffs suggest, that Defendants' objections constituted unreasonable delay made for the purposes of "improper obstruction." *Compare* Pls.' Ltr. at 1-2 with ECF No. 198. Defendants have also thoroughly refuted Plaintiffs' allegations that Defendants have not produced custodial ESI. *See* Pls.' Ltr. at 2; Defendants' August 18, 2026 Letter to Plaintiffs at 6-7.[1]

Plaintiffs' new allegations are that Defendants have untimely raised vagueness objections to Plaintiffs' Further Narrowed Requests for Production and, therefore, waived them. Plaintiffs served their Further Narrowed RFPs on Defendants on June 4, 2026. *See* Dfs.' Rsp. at 2; Fed. R. Civ. P. 34(b)(2)(A) (a party has 30 days to respond after "being served" with a production request). Defendants served the challenged vagueness objections on August 17, 2026. Plaintiffs note that,

[1] And since Defendants' August 18, 2026, Defendants served a fifth document production, totaling 659 pages, on September 11, 2026.

**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

SG:TR
39-11E-1900

pursuant to Federal Rules of Civil Procedure 34(b)(2), objections to RFPs can be deemed waived if not raised within 30 days of being served with RFPs. Waiver under 34(b)(2) is discretionary, however, not automatic. Courts can find "good cause" for delay in responding. *Smith v. Cnty. of Sacramento*, No. 2:19-CV-01426-TLN-CKD, 2021 WL 826238, at *1 (E.D. Cal. Mar. 4, 2021); Pls.' Ltr. at 3 (citing *Smith*). And there is good cause for Defendants responding on August 17, 2026, with vagueness objections rather than by July 6, 2026 (30 days from June 4, 2026). When Plaintiffs propounded their revised RFPs on June 4, 2026, it was the near-end of negotiations that began on May 11, 2026, concerning the permissible scope of these particular RFPs. *See* Dfs.' Rsp. at 2; ECF No. 194, Exhibits A-E. The fruit of the negotiations was that, by June 4, 2026, Plaintiffs had narrowed the scope of the RFPs at issue to request documents from Operation at Large relevant to operations in this District, rather than request documents into out-of-district operations. *See generally* ECF No. 194. But the parties next disputed what constitutes a relevant document for purposes of these particular RFPs and, on June 22, 2026, ultimately requested the Court to resolve this remaining issue, which the Court did on July 23, 2026. *See* ECF No. 198. The RFPs served on June 4, 2026, meanwhile, remained in flux, still being shaped by resolution of these negotiations either by the parties or (as here) the Court. And within 30 days of the Court's decision resolving the parties' dispute and overruling Defendants' relevancy objection, Defendants provided responses and objections to the RFPs at issue. There was no undue delay—in fact, Defendants timely responded following the Court's order—and, as demonstrated, there is good cause for responding after the Court's order.

Caselaw supports Defendants' approach. "To determine whether there is good cause to find objections [under Rule 34] are not waived, courts consider (1) the length of delay, (2) the reason for delay, (3) the existence of bad faith, (4) the prejudice to the party seeking waiver, (5) the nature of the request, and (6) the harshness of imposing sanctions." *Smarter HOA Solutions, Inc., v. Carmen Pena & Casanet Property Management, LLC*, No. 24-cv-1781-JAH-MMP, 2026 WL 2446029, at *5 (S.D. Cal. August 20, 2026). Here, the length of delay was minimal, approximately one month. And this delay was particularly minimal considering the reason for the delay—the parties, having immediately raised the dispute to Court on the June 4, 2026 RFPs, awaited the Court's resolution. There is no bad faith—there was a threshold relevancy objection—and, indeed, the fact that Defendants served their objections within 30 days of the Court resolving the relevancy dispute demonstrates good-faith compliance with their discovery obligations. Defendants' objections moreover reflect good-faith efforts to clarify ambiguities in Plaintiffs' framing and ensure discovery proceeds efficiently and accurately. Plaintiffs meanwhile cite no prejudice. And vague, undefined terms in RFPs, by their nature, are inherently problematic because such terms leave the producing party guessing as to what to produce. Imposing waiver in these circumstances would be unduly harsh.

Plaintiffs assert that waiver is particularly appropriate because, of the many terms to which Defendants objected, Plaintiffs have defined two of them in their originally served RFPs—

U.S. Department of Justice
Civil Division
Office of Immigration Litigation

SG:TR
39-11E-1900

"regarding" and "involving." Pls.' Ltr. at 2. First, Plaintiffs are mistaken. Plaintiffs' originally served RFPs defined "including," not "involving," and Defendants' response to Plaintiffs' originally served RFPs objected to their definition of "including." Defendants' August 25, 2025 Responses and Objections at 3. Second, "regarding" and "including" are used in the same request, RFP No. 23, as Plaintiffs note, such that the request could not be answered until "including" was resolved.[2]

Meanwhile, it is nonsensical that Plaintiffs assert that "DHS generally" should respond to the RFPs, rather than DHS Headquarters. Pls. Ltr. at 2. DHS is a large umbrella agency with many components. The claims here do not involve, for example, the Transportation Security Administration, the Federal Emergency Management Agency, Countering Weapons of Mass Destruction Office, or the Office of Health Security. The claims involve only one of DHS' components—United States Customs and Border Protection—and, as the parties have discussed in their Meet and Confers, Defendants are providing a DHS HQ custodian, corresponding to Plaintiffs' suggestion that directives to U.S. Border Patrol may have been sent by senior level officials in DHS. *See* ECF No. 163 at 5-6. Meanwhile, FRCP 34 does not apply to ICE, a non-party, *see* FRCP 34(c), and it is unclear what Plaintiffs mean by "added request-specific objections based on privilege and burden." Pls.' Ltr. at 3.

## II. The Scope of Plaintiffs' June 2026 Discovery Dispute Brought Before the Court

As explained, *supra* Section I, the discovery dispute brought before the Court in June 2026, which the Court resolved in July 2026, concerned a narrow issue—what constitutes a relevant document for purposes of the RFPs Plaintiffs propounded on June 4, 2026, seeking documentation about Operation at Large. The Court overruled Defendants' relevancy objection. *See* ECF No. 198.

Plaintiffs assert that, despite bringing only this narrow issue before the Court for adjudication, Defendants were required, in their briefing to the Court, to nonetheless address and argue each and every other objection they had to Plaintiffs' RFPs and, because Defendants did not, these objections are waived. Pls.' Ltr. at 3. This is patently wrong. Courts address the discovery disputes brought before them. The opposing party does not waive their other objections, unrelated to the particular dispute brought, because they failed to seek, in essence, an advisory opinion from the court on all their other objections that Plaintiffs did not ask the Court to adjudicate. *See Harris*

[2] Defendants do not rely on anything in the transcript of the July 21, 2026 hearing for their August 17, 2026 Responses and Objections. Pls.' Ltr. at 5, Section IV.

(Plaintiffs' August 31, 2026 Letter has two sections labeled Section IV. *See* Pls.' Ltr. at 5-6. Here Defendants refer to Plaintiffs' Section IV at page 5).

U.S. Department of Justice
Civil Division
Office of Immigration Litigation

SG:TR
39-11E-1900

*v. Arden*, et al., No. 1:21-cv-00818, 2026 WL 2295460, at *6 (E.D. Cal., Aug. 10, 2026) ("the burden to establish that the objections are unjustified] requires the moving party to inform the court which discovery requests are the subject of the motion to compel, and, f*or each disputed response*, why the information sought is relevant and why the objections lack merit.") (emphasis added), *id.* ("The party seeking the motion to compel discovery has the burden of informing the court why the defendants' objections are not justified or why the defendants' responses are deficient."); *see also L.A. Alliance v. City of Los Angeles*, No. 2:20-cv-2291-DOC, 2023 WL 5505037, at *2 (C.D. Cal., Aug. 2, 2023) (internal citations omitted) ("The party moving to compel bears the burden of demonstrating why the information sought is relevant and why the responding party's objections lack merit."). Plaintiffs' caselaw does not state otherwise nor do Plaintiffs decontextualized, cherry-picked citations to the transcript and the Court's order. Pls.' Ltr. at 3.

## III. The Court's July 23, 2026 Order

As explained, *supra* Sections I & II, the discovery dispute brought before the Court in June 2026, which the Court resolved on July 23, 2026, concerned a narrow issue—what constitutes a relevant document for purposes of the RFPs Plaintiffs propounded on June 4, 2026, seeking documentation about Operation at Large. The Court overruled Defendants' relevancy objection. *See* ECF No. 198. Defendants did not reassert this objection in their August 17, 2026 Objections and Responses and, as Defendants have stated in a Meet and Confer subsequent to the July 2026 order, will follow the footnote appended to the June 4, 2026 RFPs ("For the avoidance of doubt, this RFP would include generally applicable goals, quotas, or expected outcomes for Operation at Large that apply regardless of the location in which a specific raid was carried out but would not include goals, quotas, or expected outcomes that applied solely to a location outside the Eastern District of California"), the objection to which the Court overruled. Pls.' Ltr. at 5 (claiming Defendants' August 17, 2026 Objections and Responses reassert what the Court overruled in its July 23, 2026 order).

## IV. Non-Custodial Repositories

Plaintiffs assert that, where Defendants' August 17, 2026 Objections and Responses refer to producing pursuant to negotiated search terms, this means Defendants are not searching non-custodial sources. Pls.' Ltr. at 6. Defendants, however, have agreed to search non-custodial repositories, *see* May 20, 2026 Email from Aysha T. Iqbal, and have produced the I-213s from Operation Return to Sender and Operation At Large as executed in Sacramento, Forms I-826, I-862, I-871, I-205, I-294, I-220A, and I-286, from Operation Return to Sender, in addition to body camera videos from Sacramento and Operation Return to Sender. Further, in the spirit of compromise, Defendant CBP has conducted a search of former Chief Bovino's ESI using the locality-based search terms the parties have so far agreed upon for Plaintiffs' RFP Set 2 custodians.

**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

SG:TR
39-11E-1900

DATED: September 16, 2026

Respectfully,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SAMUEL P. GO
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

OLGA K. KUCHINS
Trial Attorney

Aysha T. Iqbal
Trial Attorney

*/s/ Tim Ramnitz*
Tim Ramnitz
United States Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel. (202) 616-2686
Email: tim.ramnitz@usdoj.gov

*Attorneys for Defendants*