BRETT A. SHUMATE
Assistant Attorney General
Civil Division
SAMUEL P. GO
Assistant Director
MARY L. LARAKERS
Senior Litigation Counsel
OLGA Y. KUCHINS
Trial Attorney
AYSHA T. IQBAL
Trial Attorney
JAIME DURR
Trial Attorney
TIM RAMNITZ
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-616-2686

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED FARM WORKERS, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY, et al.,

Defendants.

No. 1:25-cv-00246-JLT-CDB

**DEFENDANTS' POST-REMAND SUPPLEMENTAL BRIEF REGARDING STANDING FOR PLAINTIFFS' PRELIMINARY INJUNCTION**

Dept.: Courtroom 4, 7th Floor
Judge: Hon. Jennifer L. Thurston

Date Filed: February 26, 2025

Trial Date: None Set

**TABLE CONTENTS**

INTRODUCTION…. .......... 1

BACKGROUND .......... 1

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

A. Plaintiffs' Standing for Preliminary Injunctive Relief .......... 5

B. UFW's Associational Standing .......... 13

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025)… 4, 9

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) 14

City of Los Angeles v. Lyons,
461 U.S. 95 (1983) 5, 6, 7, 8, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) 4, 5, 6, 11, 12

*Do No Harm v. Pfizer, Inc.*,
126 F.4th 109 (2d Cir. 2025) 9

*FDA v. All. for Hippocratic Med.*.,
602 U.S. 367 (2024) 4

*Food and Water Watch, Inc. v. Vilsack.*,
808 F.3d 905 (D.C. Cir. 2015) 9

*Garica v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) 4

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) (en banc) 12

*Horne v. Flores*,
557 U.S. 433 (2009) 4

*Hunt v. Washington State Apple Advertising Comm'n,*
432 U.S. 333 (1977) 13

*Jackson v. Josiah*,
2021 WL 2417511 (E.D. Cal. June 14, 2021) 9

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) 10

*LaDuke v. Nelson*,
560 F. Supp. 158 (E.D. Wash. 1982) 10

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012) 4

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026)........................................................................................ 4

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)........................................................................ 7, 8, 10, 11

*O'Shea v. Littleton*,
414 U.S. 488 (1974).. ............................................................................................. 11, 12

*Ortega-Melendres v. Arpaio*,
836 F. Supp. 2d 959 (D. Ariz. 2011)............................................................................. 10

*Salazar by Salazar v. D.C.*,
896 F.3d 489 (D.C. 2018) ................................................................................................ 4

*Simon v. E. Kentucky Welfare Org.*,
426 U.S. 26 (1976) ......................................................................................................... 12

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024)....................................................................................... 13

*Steel Co. v. Citizens for a Better Env't.*,
523 U.S. 83 (1998) ......................................................................................................... 11

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ....................................................................................................... 14

*Thomas v. County of Los Angeles*,
976 F.2d 504 (9th Cir. 1992).......................................................................................... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ......................................................................................................... 5

*Trump v. Boyle.*,
145 S. Ct. 2653 (2025)..................................................................................................... 12

*Vasquez Perdomo v. Noem.*,
148 F.4th 656 (9th Cir. 2025)......................................................................................... 11

*White v. City & Cnty. of West Sacramento*,
2023 WL 4560211 (E.D. Cal. 2023) ................................................................................ 5

*United Farm Workers v. Noem*,
823 F. Supp. 3d 1112 (E.D. Cal. 2026)........................................................... 8, 11, 12

## INTRODUCTION

Plaintiffs' preliminary injunction sought prospective relief based solely on a three-day U.S. Border Patrol operation in January 2025. But isolated, past encounters do not establish Article III standing for forward-looking relief. The record at the time of filing shows no repeated stops, no repeated locations, and no subsequent incidents involving Plaintiffs or UFW members. Plaintiffs' fears and generalized assertions of an ongoing "policy" are insufficient. Plaintiff UFW likewise lacks associational standing because its members face no concrete, imminent threat, and the individualized nature of the claims would require member participation. Because Plaintiffs cannot show a certainly impending future injury, their request for extraordinary prospective relief fails at the threshold. The Court should deny Plaintiffs' motion for a preliminary injunction for lack of standing.

## BACKGROUND

Between January 7 and January 9, 2025, United States Border Patrol El Centro Sector conducted an operation in Kern County in south-central California. *See* ECF No. 47 at 2-3, 18-19. As part of that operation, it stopped and arrested Plaintiffs Oscar Morales Cisneros, Wilder Munguia Esquivel, and Yolanda Aguilera Martinez. *Id.* at 5-9. Morales Cisneros and Munguia Esquivel are unlawfully present and were placed in removal proceedings. *Id.* at 6-8, 29. Aguilera Martinez is a lawful permanent resident and was released minutes after her arrest, once agents saw her green card. *Id.* at 8-9.

Almost two months later, on February 26, 2025, Morales Cisneros, Munguia Esquivel, and Aguilera Martinez, along with an organizational plaintiff, United Farm Workers ("UFW"), filed a complaint in the U.S. District Court for the Eastern District of California seeking declaratory and injunctive relief. *See generally* ECF No. 1. Plaintiffs claimed that Border Patrol agents had stopped them based on their race and without reasonable suspicion, in violation of the Fourth Amendment; that Border Patrol agents had arrested them without a warrant despite a lack of flight risk, in violation of 8 U.S.C. 1357(a)(2); and that Border Patrol agents had engaged in a pattern of such violations. *Id.* at 48-51. Plaintiffs further alleged that, after Border Patrol transferred arrestees to the El Centro Station,

agents engaged in a pattern and practice of coercing them into accepting voluntary return to Mexico. *Id.* at 51-52. Plaintiffs also claimed to represent two classes under Federal Rules of Civil Procedure 23(b)(2): a Suspicionless Stop Class and a Warrantless Arrest Class. *Id.* at 60-62.

On March 7, 2025, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Border Patrol from conducting further operations in violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2). *See generally* ECF No. 15-1. Plaintiffs asserted an injunction was necessary because Operation Return to Sender involved a pattern or practice of indiscriminate stops and arrests, *see id.* at 7-19, and Border Patrol intended to replicate Operation Return to Sender, *see id.* at 1, 6-7, 14-15, 18-19, 22. As support, Plaintiffs relied on eight declarations from individuals arrested during Operation Return to Sender wherein they described their encounters with Border Patrol, *see* ECF Nos. 15-4 through 15-11, a declaration from a UFW employee recounting two reports she had received describing encounters with Border Patrol, *see* ECF No. 15-3, January 2025 media statements (including social media statements) from former U.S. Border Patrol, El Centro Sector Chief Patrol Agent Gregory Bovino and El Centro Sector Border Patrol, and a statement from Tom Homan, an official in the current Administration, *see* ECF No. 15-2. *See* ECF No. 15-1 at 1 (citing ECF No. 15-2, Exs. 2, 3, 4, 10, 11, 15, 17), 6-7 (citing ECF No. 15-2, Exs. 1, 3, 4, 10, 12, 14, 15, 17), 10-12 (citing ECF No. 15-3 through 15-11), 14-15 (citing ECF No. 15-2, Exs. 4, 7, 11), 18-19 (citing ECF No. 15-2, Exs. 1, 8, 13, 15), 22 (citing ECF No. 15-2, Exs. 1, 3, 4, 10, 12, 14)).

On April 29, 2025, the Court granted class certification of two classes and issued a preliminary injunction. *See generally* ECF No. 47. The Court found that Plaintiffs had standing, that Border Patrol's actions since the filing of the suit had not mooted the case, and that it had authority to resolve Plaintiffs' claims. *Id.* at 24-36, 39-41, 76-82. It then found that Plaintiffs were likely to succeed on the merits of their claims that Border Patrol's stop and arrest practices violated the Fourth Amendment and

8 U.S.C. § 1357(a)(2). *Id.* at 73-76. And Border Patrol's intent to perform more enforcement operations within the Eastern District was evidence of imminent, irreparable harm to Plaintiffs. *Id.* at 83-84.

The Court also certified two classes:

> Suspicionless Stop Class: All persons since January 6, 2025, who have been or will be subjected to a detentive stop by Border Patrol in this district without a pre-stop, individualized assessment of reasonable suspicion whether the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States.
>
> Warrantless Arrest Class: All persons since January 6, 2025, who have been arrested or will be arrested in this district by Border Patrol without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

ECF No. 47 at 86.

The Court granted preliminary injunctive relief to both district-wide classes. *Id.* at 71-73, 86-88.

On June 26, 2025, Defendants filed an appeal of the Court's order granting a Preliminary Injunction with the Ninth Circuit Court of Appeals. ECF No. 59; *United Farm Workers of America, et al. v. Noem, et al.*, Case No. 25-4047 (9th Cir.). Defendants argued, in part, that when assessing the standing, the Court "only looked retrospectively at past alleged 'violations' of Plaintiffs' constitutional and statutory rights, without examining a sufficient likelihood that Plaintiffs [themselves] will imminently suffer similar violations in the future." No. 25-4047, ECF No. 12 at 10. And there was no good basis to believe that, at the time Plaintiffs filed their Complaint, Border Patrol would imminently again stop and arrest them, let alone do so unlawfully. *Id.* at 9. The Ninth Circuit, on August 24, 2026, agreed that the Court did not engage in a prospective standing analysis before granting preliminary injunctive relief, remanded for the limited purpose of addressing standing, and lifted the preliminary injunction. No. 25-4047, ECF No. 69. The Ninth Circuit explained that the Court "considered only Plaintiffs' allegations of past harm" and, "[a]lthough past harm may support standing to seek damages, it does not, on its own, establish standing to seek prospective injunctive relief." *Id.* Rather, "[c]laims for

prospective relief implicate Article III's requirement that a plaintiff 'establish a sufficient likelihood of future injury.'" *Id.* (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) (holding that plaintiffs challenging government's authority to conduct surveillance of individuals abroad lacked standing because an "injury must be *certainly impending*" and plaintiffs could only speculate that their communications would be intercepted (emphasis in original)). The Ninth Circuit otherwise retained jurisdiction over the appeal. *Id.*

On September 14, 2026, the Court issued an order setting a briefing schedule to address whether Plaintiffs had standing for their preliminary injunction. ECF No. 208. On September 17, 2026, Plaintiffs filed their Post-Remand Supplemental Brief Re Standing. ECF No. 210.

## LEGAL STANDARD

Injunctive relief "is an extraordinary and drastic remedy," *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks and citation omitted), that is "never awarded as of right," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks and citation omitted). "Doubly so when the judicial branch undertakes to restructure the operations of an executive branch of government and to superintend its operations on an ongoing basis." *Salazar by Salazar v. D.C.*, 896 F.3d 489, 497 (D.C. Cir. 2018) (citing *Horne v. Flores*, 557 U.S. 433, 449, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009)). Accordingly, this relief "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez*, 680 F.3d at 1072 (internal quotation marks and citation omitted); *see Garcia*, 786 F.3d at 740 (mandatory injunctions are "particularly disfavored" and the "district court should deny such relief unless the facts and law clearly favor the moving party." (internal quotation marks omitted)). "Thus, at the preliminary injunction stage, the plaintiff must make a clear showing that she is likely to establish each element of standing." *Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025) (cleaned up); *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026) (citing *Am. Encore*, 152 F.4th at 1110).

## ARGUMENT

### A. Plaintiffs' Standing for Preliminary Injunctive Relief

Plaintiffs cannot establish standing for a prospective preliminary injunctive relief. Standing to seek an injunction against future unlawful conduct does not exist merely because Plaintiffs experienced past harm and fear its recurrence. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *see also White v. City and Cnty. of West Sacramento*, No. 2:20-cv-0238, 2023 WL 4560211, at *3 (E.D. Cal., July 17, 2023) (citing *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991) (citation omitted) ("A plaintiff must do more than merely allege imminent harm . . . he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."). Rather, Plaintiffs must show "a sufficient likelihood that [they] will again be wronged in a similar way." *Id.* The "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at, 409 (emphasis in original). Under those standards, Plaintiffs cannot establish standing here.

In support of their motion, Plaintiffs submitted declarations from eight individuals, each alleging a single interaction with Border Patrol involving an allegedly suspicionless stop and unlawful arrest between January 7 and 9, 2025. ECF Nos. 15-4, 15-5, 15-6, 15-7, 15-8, 15-9, 15-10, 15-11. Plaintiffs submitted another declaration, from an employee of organizational Plaintiff UFW, proffering reports she heard from others about an unlawful vehicle stop on January 7, 2025, and an unlawful vehicle stop on January 9, 2025. ECF No.15-3.

As explained above, however, standing to obtain future injunctive relief does not exist merely because Plaintiffs experienced past harm; nor are "plaintiffs' subjective apprehensions" of recurrent injury relevant. *Lyons*, 461 U.S. at 105, 107 n.8. Only a sufficiently "concrete, particularized, and actual or imminent" injury warrants forward-looking injunctive relief, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021), and a showing of mere increased risk of harm is inadequate when the risk is speculative, *Clapper*, 568 U.S. at 410. Thus, to obtain a preliminary injunction here, Plaintiffs had to

show not only that they personally were likely to be stopped or arrested in the future by Border Patrol, but also that they would likely be stopped or arrested in the unlawful manner relevant to their requested relief—*i.e.*, stopped without reasonable suspicion or arrested without consideration of flight risk. Plaintiffs' single interactions with Border Patrol, all of which occurred over the same 3-day period, months before the preliminary injunction issued, establish neither.

Plaintiffs' case is *Lyons*. There, police officers stopped the plaintiff for a traffic violation, seized him, and placed him in a chokehold, assertedly in violation of the Fourth Amendment. 461 U.S. at 97. The Supreme Court held that, while the plaintiff could pursue a damages claim for the retrospective injury, he lacked standing for prospective relief because he had not shown that "he was likely to suffer future injury from the use of chokeholds by police officers." *Id.* at 105. There was no "immediate threat" that he would again be "choke[d] . . . without any provocation or resistance on his part." *Id.* That was so even though the Court accepted that the police department had a policy of "routinely appl[ing] chokeholds in situations where they are not threatened by the use of deadly force." *Id.* That is, it was irrelevant to standing whether the police department was generally likely to continue to employ chokeholds; what mattered was whether the plaintiff, himself, would likely be subject to a chokehold again.

Like in *Lyons*, Plaintiffs alleged that they were the subjects of unlawful enforcement actions in the past—namely, being stopped for immigration questioning allegedly without reasonable suspicion of unlawful presence and arrested without a warrant or consideration of flight risk. ECF No. 1, 15-1. And like in *Lyons*, Plaintiffs seek a forward-looking preliminary injunction to enjoin law enforcement from again stopping them without reasonable suspicion or arresting them without considering flight risk. But like in *Lyons*, Plaintiffs have no concrete basis, beyond speculation, to believe that Border Patrol will subject them to suspicionless stops or unlawful arrests in the future—and certainly no basis for believing that any stop and/or arrest of Plaintiffs is imminent. It was insufficient in *Lyons* that the police

department was generally likely to continue to employ chokeholds; what mattered was whether the plaintiff there would likely be subject to a chokehold again. *Lyons*, 461 U.S. at 105. And it is insufficient here to allege that Border Patrol is likely engaging in an unstated policy of suspicionless stops and warrantless arrests without consideration of flight risk. ECF 47 at 54-62, 68. What matters is that Plaintiffs cannot show they will likely be again subject to a suspicionless stop and/or unlawful warrantless arrest.

Indeed, Plaintiffs' evidence underscores how any likelihood of future harm to them is irredeemably speculative. Plaintiffs have not identified a single instance of anyone being stopped more than once by Border Patrol. ECF No. 15-3, 15-5 through 15-11. Nor have Plaintiffs alleged even a single instance of Border Patrol visiting the same place repeatedly. And in the two months between their alleged injuries and filing their complaint, Plaintiffs cited no further instances of stops or arrests. *Lyons*, 461 U.S. at 105 (noting, while discussing the lack of imminent injury, that Lyons' complaint alleged an injury from "five months before"). Moreover, Plaintiffs are but a handful of the 8 million or so residents within the Eastern District of California and nothing demonstrates that these Plaintiffs (whether individuals or unnamed members of UFW) would likely be stopped again. *See* U.S. Attorney's Office for the Eastern District of California, available at https://www.justice.gov/usao-edca (noting the Eastern District of California has 8 million residents); ECF No. 15-3; 2-ER-303-304 (at time of complaint, UFW had approximately 7,000 members "throughout the country" but unstated how many in the Eastern District of California).

Plaintiffs' case is not *Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012). First, Plaintiffs state that, like in *Melendres*, this Court found that their PI record established a pattern and practice of unlawful stops and arrests. ECF No. 210 at 12-13 (relying on the Court's PI Order finding that the evidence establishes a pattern and practice of the alleged violations). But as the Court has noted here, subsequent to its PI order, the record in fact does not show, for prospective standing purposes, that

"class members have been subjected to the challenged conduct on numerous occasions" and "the present record does not suggest such a pattern is likely to develop." *United Farm Workers v. Noem*, 823 F. Supp. 3d 1112, 1129 n.9 (E.D. Cal. 2026) ("*See* Def. Opening Appellate Brief at 1-2 (government appellate brief arguing 'Plaintiffs' evidence underscores how any likelihood of future harm to them is irredeemably speculative. *Plaintiffs have not identified a single instance of anyone being stopped more than once by Border Patrol. Nor is there even a single instance of Border Patrol visiting the same place repeatedly.* And in the two months between their alleged injuries and filing their complaint, Plaintiffs cited no further instances of stops or arrests.')") (emphasis added); *see Lyons*, 461 U.S. at 108 (observing that five months had passed without incident between Lyons' injury and the filing of the complaint). Plaintiffs dispute Defendants' characterization of the number of unlawful stops and arrests as a "handful," but do not dispute that the present record lacks any instance of anyone being stopped more than once by Border Patrol or Border Patrol visiting the same place repeatedly.[1] ECF No. 210 at 13.

Plaintiffs next state that, like in *Melendres*, the Court found the PI record shows an intent to replicate the events in January 2025. ECF No. 210 at 13-14. Supplemental evidence, however, shows that at the time of Plaintiffs' February 2025 complaint and March 2025 PI motion, the events, as they occurred in January 2025, were isolated and not likely to recur. Operation Return to Sender was approved as a targeted operation. Exhibit A. When execution of Operation Return to Sender also involved non-targeted consensual encounters and warrantless arrests at local establishments, CBP headquarters-level authorities, relying on policy, intervened on the morning of the second day, ordered

[1] Moreover, Plaintiffs rely on the total number of stops and arrests during Operation Return to Sender. ECF No. 210 at 13, 16-17. Their evidence, however, alleged only ten unlawful stops and arrests. *See* ECF No. 15-3 to 15-11. There is no evidence that the other 66 arrestees and hundreds allegedly stopped during the Operation were subject to unlawful stops or arrests. The total number of arrests and stops, therefore, would appear to only underscore how disproportionately small the number of alleged injuries were considering the entire operation, and undermine that there was any pattern of unlawful stops or arrests.

the consensual encounters to stop, and ordered only targeted arrests and vehicle stops. Exhibit B. The order was followed and a request for recission of the order denied. Exhibit C; Exhibit D. This evidence indicates the events in January 2025 were isolated in nature or, at the very least, that it was unclear, at the time of the complaint and PI motion, that Border Patrol would concretely "replicate" Operation Return to Sender in the same manner it unfolded, given the Operation as executed was halted after the first day. *Am. Encore*, 152 F.4th at 1110 (at the preliminary injunction stage, the plaintiff must make *a clear showing* that she is likely to establish each element of standing) (emphasis added). A "handful" of rhetorical social media posts do not change this, *Am. Encore*, 152 F.4th at 1112, particularly where the social media posts came from accounts for the individual and sector who were subject to, and complied with, the orders to alter the execution of Operation Return to Sender. ECF No. 210 at 13-14 (citing ECF No. 15-2 to assert "Defendants publicly expressed an intent to replicate their unlawful detentive stops and warrantless arrests in this District (and, in fact, did so in Sacramento in July 2025)).[2] The evidence Plaintiffs cite pertains to events on or before the first day of the Operation; before the operation was, in large part, halted. ECF No. 210 at 14.

[2] Plaintiffs point to events in July 2025, Operation at Large as executed in Sacramento, as evidence of replication. ECF 210 at 13. But as Plaintiffs otherwise emphasize, "standing for prospective relief . . . turns on the facts as they existed at the time the plaintiff filed the complaint[;]" "evidence . . . must bear on whether Plaintiffs had standing *at the time the action was filed*" (emphasis in original); "the relevant factual inquiry remains whether standing existed at the outset. Post-filing developments may bear on mootness, but they cannot retroactively establish or defeat standing." ECF 210 at 8. The evidence at the time Plaintiffs filed the complaint and PI motion; the evidence at the outset, "when they filed this action," *id.*, does not clearly show the events in January 2025 were likely to recur. This is not to say that a complaint cannot be, for example, amended to cure a standing deficiency citing subsequent events. *See Jackson v. Josiah*, 2021 WL 2417511, at *10 (E.D. Cal. June 14, 2021) (citing *Northstar Financial Advisors Inc v. Schwab Investments*, 779 F.3d 1036, 1044-48 (9th Cir. 2015) (holding that Rule 15(d) permits a supplemental pleading to cure a jurisdictionally deficient complaint with events after the original complaint was filed). But the consequence of seeking a preliminary injunction on incomplete evidence is dismissal of the preliminary injunction, even if prospective standing is ultimately remedied through an amended complaint. *Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 122 (2d Cir. 2025); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("an inability to establish a substantial likelihood of standing *requires* denial of the motion for preliminary injunction" even if not dismissal of the case) (emphasis added). That is, even if an amended complaint cures standing, the precedent preliminary injunction remains jurisdictionally flawed, issued without Article III authority, and an amendment does not retroactively validate it. Finally, July 2025 in any event still did not involve any individual stopped twice by Border Patrol or locations visited repeatedly. *See* ECF 176.

Moreover, *Melendres* involved an expressly stated legally erroneous policy that the Sheriff's Office could enforce immigration laws, and the plaintiffs had each been subject to stops over a span of six months. *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 969, 979-80. (D. Arizona 2011). *LaDuke v. Nelson* too involved repeated, expressly authorized warrantless entries into farm labor housing areas over multiple years. 762 F.2d 1318, 1323 (9th Cir. 1985); *LaDuke v. Nelson,* 560 F. Supp. 158, 160-63 (E.D. Wash. 1982); ECF No. 210 at 11 (relying on *LaDuke*). *Thomas v. County of Los Angeles* involved plaintiffs repeatedly subjected to the harm and repeatedly in the same small section of the city of Lynwood. 978 F.2d 504, 507 (9th Cir. 1992); ECF No. 210 at 11 (relying on *Thomas*). Plaintiffs' allegations, on the other hand, concern a limited operation in January 2025 that officials by and large halted midway after the first day after which no one has been repeatedly stopped and no location repeatedly visited. *Lyons*, 461 U.S. at 10 (to have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate "that he is realistically threatened by a repetition of [the violation]"). In short, nothing demonstrates a "pattern of officially sanctioned . . . behavior." ECF No. 210 at 11 (quoting *Melendres*, 695 F.3d at 997-98). It is consequently speculative to assert that Border Patrol would allegedly violate any constitutional and statutory rights again, even if it were to return to the same location and encounter the same Plaintiffs. *See Lyons*, 461 U.S. at 108 ("[I]t is untenable to assert . . . that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped.").

Plaintiffs next assert that, like in *Melendres*, and unlike *Lyons*, they cannot avoid the harm because "going about one's daily life" exposes them to alleged unlawful practices. ECF No. 210 at 15-16. But where the feared harm is irredeemably speculative, this does not matter.[3] Courts have long

[3] To the extent Plaintiffs rely on ongoing "fears" to support standing, when the Supreme Court has discussed "continuing, present effects," it was referring to ongoing unlawful treatment of the plaintiffs, not the lingering effects of the plaintiffs' injuries such as fear, anxiety, or emotional distress. *See, O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Clapper*, 568 U.S. at 418-19 (rejecting respondents' argument that the "chilling effect" on their activities to avoid greater injuries provided standing); ECF No. 210 at 15.

rejected the past must be prologue theory of standing for an injunction against future conduct based on fears and speculation that unlawful government conduct will happen in the future because it happened in the past. When a party seeks prospective equitable relief, their grievances must contain "allegations of future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). And Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper*, 568 U.S. at 416. Further, general presence in an immense jurisdiction like here that encompasses thirty-three counties (as opposed to a singular county, like *Melendres*) does not create the necessary "certainly impending" imminent threat of unlawful enforcement to Plaintiffs. *Clapper*, 568 U.S. at 409; *Lyons*, 461 U.S. at 111 ("[A] federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.").

Finally, and in any event, although the Ninth Circuit in *Vasquez Perdomo v. Noem*, 148 F.4th 656, 674 (9th Cir. 2025), relied on *Melendres* and "a pattern of officially sanctioned . . . behavior" to find prospective standing, as the Court observed, "the Supreme Court stayed operation of the preliminary injunction, with the only written explanation suggesting that at least one justice is not convinced by the Ninth Circuit's reliance on *Melendres* in substantially identical standing circumstances."[4] *United Farm Workers*, 823 F. Supp. 3d at 1129. And the Supreme Court's "interim order[]" in this case must "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). But the evidence of a pattern or practice of unlawful stops and arrests is, in any event, unconvincing under any standard, *supra*.

[4] Plaintiffs nonetheless assert that there is a difference, for standing purposes, between this case and *Perdomo* because *Perdomo* involved alleged unlawful stops based on (alone or in combination) four specific factors, whereas here Plaintiffs allege indiscriminate stops. ECF No. 210 at 17. This is a distinction without meaning. Both cases allege unlawful stops without the requisite reasonable suspicion, based instead on Hispanic or Latino ethnicity, and therefore involve "substantially identical standing circumstances." *United Farm Workers*, 823 F. Supp. 3d at 1129.

Plaintiffs' case is meanwhile *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037 (9th Cir. 1999) (en banc). There, two plaintiffs sought to bring a class action for injunctive relief against the U.S. Border Patrol to prohibit the agency from continuing to engage in "roving patrol operations" that involved allegedly unlawful seizures under the Fourth Amendment. *Id.* at 1038-39. The two plaintiffs alleged they had each been stopped once by Border Patrol over the span of 10 years. *Id.* at 1039. The Ninth Circuit found that it was "not sufficiently likely" that the plaintiffs would be stopped again. *Id.* at 1044. Thus, there was no basis for an injunction "that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision normally, and properly, overseen by the executive branch." *Id.* So too here. And if anything, given the enormous geographic area covered by this District and the larger number of Border Patrol agents near the border, the likelihood of meeting a roving patrol near the border in *Hodgers-Durgin* was much greater than the likelihood that Plaintiffs in this case will be subjected to a future stop without reasonable suspicion further away from the border than the events in *Hodgers-Durgin*.[5]

The Supreme Court has made clear that "mere[ ] speculat[ion] and . . . assumptions about" how the government will act is not a sufficiently particularized harm to meet the injury-in-fact requirement. *Clapper*, 568 U.S. at 411. The evidence does not provide any basis to believe that Border Patrol will allegedly unlawfully stop and arrest Plaintiffs in the future, and certainly no good basis for believing that any stop of the Plaintiffs is imminent.

---

[5] "That a suit may be a class action . . . adds nothing to the question of standing[.]" *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *O'Shea*, 414 U.S. at 494 ("[I]f none of the named plaintiffs purporting to represent a classes establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class." (citations omitted)).

**B. UFW's Associational Standing**

UFW's associational standing fails for the same reason.[6] Associational standing requires proof (*inter alia*) that an organization's "members would otherwise have standing to sue in their own right" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). But as is the case for the individual Plaintiffs here, any risk of future harm for the organizations' members is speculative. *See id.* at 381 (citing *Clapper*, 568 U.S. at 409). Absent any nonspeculative probability of injury to their members, UFW lacks standing. *See Stavrianoudakis v. United States Fish & Wildlife Serv.*, 108 F.4th 1128, 1143-44 (9th Cir. 2024) (citing *Lyons*, 461 U.S. at 101) (no associational standing for warrantless searches because it was speculative that any members would be harmed in the future).

Moreover, Plaintiffs are incorrect to argue that UFW members face an imminent threat of injury based on pure statistical inference and anecdotes from certain members' uncorroborated statements. UFW includes thousands of unidentified organizational members across the entirety of California who assert some risk of being detained by Border Patrol in a district populated by 8 million people. ECF No. 210 at 19 (asserting the fact that "UFW has thousands of similarly situated members with many residing in the Eastern District . . . increases the threat of future harm to [association plaintiffs'] members") (citations omitted); https://www.justice.gov/usao-edca (noting 8 million residents in the Eastern District of California). However, the Supreme Court has held that organizational standing based on the mere "statistical probability that some of [the organization's thousands of] members are threatened with concrete injury" would "make a mockery of [the Court's] prior cases," and it has instead required specific, concrete allegations of harm to one or more "identified member[s]" of an organizational plaintiff. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

---

[6] United Farm Workers does not proffer any organizational injury.

Meanwhile, claims of unlawful stops and arrests are too fact-specific and context-dependent to satisfy the requirements of associational standing. For instance, the Ninth Circuit in *Black Lives Matter L.A. v. City of Los Angeles* addressed Fourth Amendment claims from a group of plaintiffs and held that [w]hether the use of tight handcuffs violates the Fourth Amendment, like other excessive force issues, is usually fact-specific and likely to turn on the credibility of the witnesses[,]" and is ill situated for a class-action claim. 113 F.4th 1249, 1258-62 (9th Cir. 2024) ("The allegation that the suspicion must be individualized by definition render these claims poor candidates for class-wide resolution."). The same is true for statutory warrantless claims asserting the officer did not consider likelihood of escape—it requires fact-finding specific to the individual concerning the conditions of this arrest. *Id.* at 1261. The fact-specific nature of these inquiries necessarily requires the participation of the individual members of the organizations, thus precluding associational standing under *Hunt*.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction for lack of standing.

Respectfully submitted

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SAMUEL P. GO
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

AYSHA T. IQBAL
Trial Attorney

OLGA Y. KUCHINS
Trial Attorney

JAIME DURR
Trial Attorney

By: /s/ *Tim Ramnitz*
TIM RAMNITZ
Senior Litigation Counsel
United States Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
(202) 616-2686
Tim.ramnitz@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On October 1, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of California, using the electronic case filing system of the court. I hereby certify that I have served counsel of record electronically through the Court's filing system.

s/Tim Ramnitz
Tim Ramnitz
Senior Litigation Counsel